## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DEUTSCHER TENNIS BUND (GERMAN
TENNIS FEDERATION) and ROTHENBAUM
SPORTS GMBH,

               Plaintiffs,

    against

ATP TOUR, INC., JOHN DOE 1, JOHN DOE 2,
JOHN DOE 3, JOHN DOE 4, JOHN DOE 5,
JOHN DOE 6, JOHN DOE 7, JOHN DOE 8,
JOHN DOE 9,

               Defendants.

Civil Action No.   07-0178 (GMS)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## ANSWER AND AFFIRMATIVE DEFENSES

Defendant ATP Tour, Inc. ("ATP"), by its undersigned attorneys Proskauer Rose LLP

and Ashby & Geddes, for its Answer and Affirmative Defenses to the Complaint filed by

Plaintiffs Deutscher Tennis Bund (German Tennis Federation) and Rothenbaum Sports GMBH

(collectively, "GTF" or "Plaintiffs"), hereby responds to each numbered paragraph as follows:

1.      Defendant denies the allegations in paragraph 1, except admits that ATP is a

Delaware non-profit membership corporation.

2.      Defendant denies the allegations in paragraph 2.

3.      Defendant denies the allegations in paragraph 3, except admits that ATP is in the

process of formulating changes to its current tour schedule and structure, and the plan as

currently drafted, which is not final, sometimes has been referred to as the "Brave New World"

plan.

4.      Defendant denies knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 4.

5.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5, except admits GTF operates a men's professional tennis tournament ("Hamburg"), that Hamburg is played on clay, and for several years, it has been held in the weeks prior to the French Open, and that some highly ranked players, including some players from the United States, have played Hamburg.

6.     Defendant admits the allegations in paragraph 6, except denies that ATP governs all men's professional tennis tournaments other than the four Grand Slams and that the Grand Slams are mandatory tournaments.

7.     Defendant denies the allegations in paragraph 7.

8.     Defendant denies the allegations in paragraph 8.

9.     Defendant admits that GTF has brought a civil action purporting to assert claims arising under federal and state law.

10.     The allegations of paragraph 10 state legal conclusions as to which no answer is required.

11.     The allegations of paragraph 11 state legal conclusions as to which no answer is required.

12.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12.

13.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

14.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.

15. Defendant denies the allegations in paragraph 15.

16. Defendant denies the allegations in paragraph 16, except admits that the GTF Tournament has had a Masters Series level sanction.

17. Defendant denies the allegations in paragraph 17.

18. Defendant denies the allegations in paragraph 18, except admits that ATP was formed in response to market conditions at the time.

19. Defendant denies the allegations of paragraph 19, except admits that, during the 1980s, the Men's International Professional Tennis Counsel ("MIPTC") organized a circuit of tennis tournaments, and admits that certain parties initiated a lawsuit titled *Volvo North America Corp. v. Men's International Professional Tennis Council*, and respectfully refers the Court to the Second Circuit Court of Appeals decision for a full statement of its contents.

20. Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20, except admits that ATP was created as a non-profit membership corporation whose members are players and tournaments.

21. Defendant denies the allegations in paragraph 21, except admits that ATP has a seven-member Board of Directors with the structure alleged in paragraph 21.

22. Defendant admits the allegations in paragraph 22, and respectfully refers the Court to the ATP's Bylaws for its statement of ATP's purposes.

23. Defendant denies the allegations in paragraph 23.

24. Defendant denies the allegations in paragraph 24, except admits that the ATP currently sanctions the following four primary categories of men's professional tennis tournaments: (1) the ATP Masters Series, (2) the International Series Gold, (3) the International Series, and (4) the Challenger Series.

25.     Defendant denies the allegations in paragraph 25, except admits that ATP has awarded Hamburg its top-tier sanction, which is currently the Masters Series level.

26.     Defendant denies the allegations in paragraph 26.

27.     Defendant denies the allegations in paragraph 27, except admits that the ATP has certain rights in the Tennis Masters Cup tournament, and that ATP and the operators of certain tournaments, including Hamburg, entered into an agreement with ISL for certain broadcast and media rights, that ISL eventually declared bankruptcy, and that the agreement was terminated.

28.     Defendant denies the allegations in paragraph 28.

29.     Defendant denies the allegations in paragraph 29, except admits that a lawsuit titled *Indianapolis Tennis Championships, Inc., et al. v. Mark Miles, et al.* was filed against ATP and others, that a lawsuit titled *Michael Bryan, et al. v. ATP Tour, Inc., et al.*, was filed against ATP and others, and that both lawsuits were dismissed pursuant to voluntary settlement agreements.

30.     Defendant denies the allegations in paragraph 30, except admits that the Brave New World plan has not been finalized and that certain tournaments were required to submit applications by March 16, 2007 to bid for sanctions starting in 2009 for the proposed Masters 1000 events.

31.     Defendant denies the allegations in paragraph 31 to the extent that it alleges the Brave New World plan only started being developed in the fall of 2006 and to the extent that it alleges that the plan was developed only in ATP Board meetings.

32.     Defendant denies the allegations in paragraph 32, except denies knowledge or information sufficient to form a belief as to the truth of the allegations with respect to the allegation that "historically the vast majority of men's professional tennis tournaments have been

reasonably profitable."

33.     Defendant denies the allegations in paragraph 33, except admits that Plaintiffs purport to quote Mr. de Villiers and refer the Court to the referenced document for its full content.

34.     Defendant denies the allegations in paragraph 34, except admits that Brave New World plan as currently drafted, which is not final, contemplates four potential tiers of tournaments in the ATP Circuit: (1) the ATP Masters 1000; (2) the ATP Open 500; (3) the ATP 250; and (4) the Challenger Series.

35.     With respect to the following subparagraphs, Defendant states that the Brave New World plan is not yet finalized, but as currently drafted:

    a.  Defendant denies the allegations in paragraph 35(a), except admits that the plan contemplates eight Masters 1000 tournaments calendared under ATP's discretion and also contemplates requirements that certain highly-ranked players play all eight Masters 1000 tournaments or potentially be sanctioned;

    b.  Defendant denies the allegations in paragraph 35(b), except admits that the ATP Board has awarded one of the Masters 1000 sanctions to an entity in Shanghai, China subject to finalization of the Brave New World plan;

    c.  Defendant denies the allegations in paragraph 35(c);

    d.  Defendant denies the allegations in paragraph 35(d);

    e.  Defendant admits the allegations in paragraph 35(e), except denies that "all media rights" will be pooled, and denies that the current plan contemplates sixteen ATP Open 500 tournaments;

    f.  Defendant admits the allegations in paragraph 35(f);

g.   Defendant denies the allegations in paragraph 35(g).

36.   Defendant denies the allegations in paragraph 36, except admits that the Brave New World plan, as currently drafted, which is not final, contemplates that there will be eight Masters 1000 tournaments, and also contemplates requirements that certain highly-ranked players play all eight Masters 1000 tournaments or potentially be sanctioned.

37.   Defendant denies the allegations in paragraph 37.

38.   Defendant denies the allegations in paragraph 38.

39.   Defendant denies the allegations in paragraph 39.

40.   Defendant denies the allegations in paragraph 40, except admits that the ATP has awarded top-tier sanctions  to tournaments based on a number of different factors.

41.   Defendant denies the allegations in paragraph 41.

42.   Defendant denies the allegations of paragraph 42.

43.   Defendant denies the allegations in paragraph 43.

44.   Defendant denies the allegations in paragraph 44, except admits that the ATP sought applications from current Masters Series operators for Masters 1000 sanctions, and admits that the ATP awarded a Masters Series 1000 sanction to an entity in Shanghai, China subject to finalization of the Brave New World plan.

45.   Defendant denies the allegations in paragraph 45;

a.   Defendant denies the allegations in paragraph 45(a), except states that the Brave New World plan, as currently drafted, is not final, and admits that GTF was permitted to apply for a Masters 1000 sanction for a combined tournament, admits that the operators of the Madrid Masters Series tournament have applied for the sanction to operate a combined men's and women's tournament, and admits that

GTF did not apply for this sanction.

    b.   Defendant denies the allegations in paragraph 45(b), except states that the Brave New World plan, as currently drafted, is not final, and states that the ATP invited GTF and others to apply for a sanction for a Masters 1000 tournament to be played indoors during the fall, and that GTF submitted an application to hold such a tournament.

    c.   Defendant denies the allegations in paragraph 45(c), except admits that representatives from ATP and the Monte Carlo and Hamburg tournaments met in London and discussed a number of issues including potential financial compensation to the two tournaments.

46.    Defendant denies the allegations in paragraph 46.

47.    Defendant denies the allegations in paragraph 47, except admits that Plaintiffs purport to quote from a document concerning a January 2007 meeting and refer the Court to the document for its full content.

48.    Defendant denies the allegations in paragraph 48, except admits that a Masters 1000 sanction was awarded to an entity based in Shanghai, China after substantial negotiations, and subject to final approval of the Brave New World plan, and admits that as part of a multi-year agreement, the Shanghai operator has agreed to pay the ATP a certain amount of money and to become an ATP member.

49.    Defendant denies the allegations in paragraph 49.

50.    Defendant denies the allegations in paragraph 50, except admits that players are a necessary component of men's professional tennis tournaments.

51.    Defendant denies the allegations in paragraph 51, except admits that the number

of tournaments that a player plays may be affected by physical constraints.

52.    Defendant denies the allegations in paragraph 52, except admits that the Brave New World plan, as currently drafted, which is not final, contemplates a requirement that certain highly-ranked players play all 8 Masters 1000 tournaments, and admits that Plaintiffs purport to quote a statement from a news article and refers the Court to the article for its full content.

53.    Defendant denies the allegations in paragraph 53.

54.    Defendant denies the allegations in paragraph 54, except admits that the Brave New World plan, as currently drafted, which is not final, contemplates a requirement that certain highly-ranked players play all 8 Masters 1000 tournaments or potentially be sanctioned.

   a.    Defendant denies the allegations of paragraph 54(a);

   b.    Defendant denies the allegations in paragraph 54(b), except admits that the Brave New World plan, as currently drafted, which is not final, contemplates that the Masters 1000 tournaments will provide 1000 ranking points, the ATP Open 500 tournaments will provide 500 ranking points, and the ATP 250 tournaments will provide 250 ranking points, and the plan contemplates that top players who do not play in a Masters 1000 tournament may be subjected to potential financial and non-financial penalties, and denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning the basis upon which sponsors enter into endorsement contracts with professional tennis players.

   c.    Defendant denies the allegations in the paragraph 54(c), except admits that the Brave New World plan, as currently drafted, which is not final, contemplates the creation of a bonus pool to encourage the top players to play all eight Masters 1000 tournaments.

     d.   Defendant denies the allegations of paragraph 54(d), except admits that the Brave New World plan, as currently drafted, which is not final, contemplates potential financial and non-financial sanctions substantially similar to those alleged for failure to meet minimum player participation requirements.

55.    Defendant denies the allegations in paragraph 55.

56.

     a.   Defendant denies the allegations in paragraph 56(a), except admits that the ATP has rules regarding Special Events, and respectfully refers the Court to the ATP Rulebook for a full statement of the rules relating "Special Events."

     b.   Defendant denies the allegations in paragraph 56(b), except admits that the ATP Rules prohibit Masters tournaments from offering players appearance fees or other non-prize money compensation to induce appearances.

57.    Defendant denies the allegations in paragraph 57.

58.    Defendant denies the allegations in paragraph 58, except admits that Hamburg existed prior to the creation of ATP, and admits that the Brave New World plan, as currently drafted, which is not final, contemplates that the ATP tournament members will be required to submit periodic requests to ATP for a sanction to operate a tournament and that it is ATP's decision whether to grant a sanction and to schedule when and where ATP events are held.

59.    Defendant denies the allegations in paragraph 59, except admits tennis tournaments have not always been organized into a circuit, and admits that, for several years, the Hamburg tournament has been held on clay courts two weeks prior to the French Open.

60.    Defendant denies the allegations in paragraph 60, except admits that the ATP Board, pursuant to its powers under the ATP's Articles of Incorporation and its Bylaws,

previously moved the dates during which the Washington and Indianapolis hard court tournaments were to be played, and respectfully refers the Court to the Complaint filed in *Indianapolis Tennis Championships, Inc., et al. v. Mark Miles, et al.* for a full statement of the allegations therein.

61.     Defendant denies the allegations in paragraph 61.

62.     Defendant denies the allegations in paragraph 62.

63.     Defendant denies the allegations in paragraph 63, except admits that certain current Master's Series Tournaments were required to submit applications to ATP if they wanted to bid for a Masters 1000 sanction, that the applications process was limited to current Masters Series Tournaments, and that the current Brave New World plan, which is not final, contemplates that there will be eight Masters 1000 tournaments.

64.     Defendant denies the allegations in paragraph 64.

65.     Defendant denies the allegations in paragraph 65.

66.     Defendant denies the allegations of paragraph 66 and respectfully refers the Court to the ATP Masters 1000 Application for a full statement of its contents.

67.     Defendant denies the allegations in paragraph 67.

68.     Defendant denies the allegations in paragraph 68, except admits that GTF (or its predecessor) was a willing participant in the ISL broadcast pooling agreement.

69.     Defendant denies the allegations in paragraph 69, except admits that ATP and the operators of each of the Masters Series tournaments, including plaintiffs, collectively agreed to sell certain broadcast and media rights to ISL and refers the Court to the documentation of that agreement for a full statement of its contents.

70.     Defendant denies the allegations in paragraph 70, except admits that the Brave

New World plan, as currently drafted, which is not final, contemplates the pooling of certain broadcast and media rights, and denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning the value of worldwide television sports rights.

71.    Defendant denies the allegations in paragraph 71, except admits that the Brave New World plan, as currently drafted, which is not final, contemplates that certain broadcast and media rights for the Masters 1000 and Open 500 tournaments will be administered under the name ATP Media through Tennis Properties Ltd.

72.    Defendant denies the allegations in paragraph 72.

73.    Defendant denies the allegations in paragraph 73.

74.    Defendant denies the allegations in paragraph 74.

75.    Defendant denies the allegations in paragraph 75, except admits that certain highly-ranked tennis players are citizens or residents of the United States but denies knowledge or information sufficient to form a belief as to the specific numbers and individuals alleged.

76.    Defendant denies the allegations in paragraph 76.

77.    Defendant denies the allegations in paragraph 77.

78.    Defendant denies the allegations in paragraph 78.

79.    Defendant denies the allegations in paragraph 79.

80.    Defendant denies the allegations in paragraph 80 and in each of subparagraphs (a) through (e).

81.    Defendant denies the allegations in paragraph 81, except admits that certain top U.S. players have played the GTF Tournament and that the GTF Tournament has been broadcast in the U.S. and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations concerning GTF's state of mind.

82.     Defendant denies the allegations in paragraph 82.

83.     Defendant denies the allegations in paragraph 83.

84.     Defendant denies the allegations in paragraph 84.

85.     Defendant denies the allegations in paragraph 85.

86.     Defendant denies the allegations in paragraph 86, except admits that Plaintiffs purport to have quoted from the decision in the *Volvo* case and refers the Court to that decision for its full content.

87.     Defendant denies the allegations in paragraph 87.

## COUNT I

88.     Repeats its answers to paragraphs 1 through 87 above as if fully set forth herein.

89.     Defendant denies the allegations in paragraph 89.

90.     Defendant denies the allegations in paragraph 90 and in each of subparagraphs (a) through (f).

91.     Defendant denies the allegations in paragraph 91.

92.     Defendant denies the allegations in paragraph 92.

93.     Defendant denies the allegations in paragraph 93.

94.     Defendant denies the allegations in paragraph 94.

95.     Defendant denies the allegations in paragraph 95.

96.     Defendant denies the allegations in paragraph 96.

## COUNT II

97.     Repeats its answers to paragraphs 1 through 96 above as if fully set forth herein.

98.     Defendant denies the allegations in paragraph 98.

99.     Defendant denies the allegations in paragraph 99.

100.    Defendant denies the allegations in paragraph 100.

101.    Defendant denies the allegations in paragraph 101.

102.    Defendant denies the allegations in paragraph 102.

103.    Defendant denies the allegations in paragraph 103.

104.    Defendant denies the allegations in paragraph 104 and in each of subparagraphs

(a) through (f).

105.    Defendant denies the allegations in paragraph 105.

106.    Defendant denies the allegations in paragraph 106.

107.    Defendant denies the allegations in paragraph 107.

**COUNT III**

108.    Repeats its answers to paragraphs 1 through 107 above as if fully set forth herein.

109.    Defendant denies the allegations in paragraph 109.

110.    Defendant denies the allegations in paragraph 110.

111.    Defendant denies the allegations in paragraph 111.

112.    Defendant denies the allegations in paragraph 112.

113.    Defendant denies the allegations in paragraph 113.

**COUNT IV**

114.    Repeats its answers to paragraphs 1 through 113 above as if fully set forth herein.

115.    Defendant denies the allegations in paragraph 115.

116.    Defendant denies the allegations in paragraph 116.

117.    Defendant denies the allegations in paragraph 117.

118.    Defendant denies the allegations in paragraph 118.

119.    Defendant denies the allegations in paragraph 119.

120.    Defendant denies the allegations in paragraph 120.

## COUNT V

121.    Repeats its answers to paragraphs 1 through 120 above as if fully set forth herein.

122.    The allegations of paragraph 122 state legal conclusions as to which no answer is required.

123.    Defendant denies the allegations in paragraph 123, except admit that one of the ATP's purposes is to administer a men's professional tennis circuit.

124.    Defendant denies the allegations in paragraph 124.

125.    Defendant denies the allegations in paragraph 125.

126.    Defendant denies the allegations in paragraph 126.

127.    Defendant denies the allegations in paragraph 127.

128.    Defendant denies the allegations in paragraph 128.

129.    Defendant denies the allegations in paragraph 129.

## COUNT VI

130.    Repeats its answers to paragraphs 1 through 129 above as if fully set forth herein.

131.    The allegations of paragraph 131 state legal conclusions as to which no answer is required.

132.    Defendant denies the allegations in paragraph 132.

133.    Defendant denies the allegations in paragraph 133.

## COUNT VII

134.    Repeats its answers to paragraphs 1 through 133 above as if fully set forth herein.

135.    The allegations of paragraph 135 state legal conclusions as to which no answer is required.

136.    Defendant denies the allegations in paragraph 136.

137.    Defendant denies the allegations in paragraph 137.

## COUNT VIII

138.    Repeats its answers to paragraphs 1 through 137 above as if fully set forth herein.

139.    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 139.

140.    Defendant denies the allegations in paragraph 140.

141.    Defendant denies the allegations in paragraph 141.

142.    Defendant denies the allegations in paragraph 142.

## COUNT IX

143.    Repeats its answers to paragraphs 1 through 142 above as if fully set forth herein.

144.    Defendant denies the allegations in paragraph 144.

145.    Defendant denies the allegations in paragraph 145.

146.    Defendant denies the allegations in paragraph 146.

147.    Defendant denies the allegations in paragraph 147.

## AFFIRMATIVE DEFENSES

1.    The Complaint fails in whole or in part to state a claim for relief.

2.    The Complaint and the relief sought therein are barred because the alleged conduct will not lessen, destroy, or prevent competition, tend to create a monopoly, or create a dangerous probability of success of creating a monopoly in any relevant market.

3.    The Complaint and the relief sought therein are barred because the procompetitive benefits of the conduct alleged outweigh any alleged anticompetitive effect.

4.    The Complaint and the relief sought therein are barred, in whole or part, because

ATP is a single entity and is legally incapable of conspiring with its officers, directors, or members.

5.      The Complaint and the relief sought therein are barred to the extent the Plaintiffs seek damages under a *per se* theory; the alleged conduct is not appropriately analyzed by a *per se* analysis.

6.      The Complaint and the relief sought therein are barred to the extent the Plaintiffs seek damages under a "quick look" theory; the alleged conduct is not appropriately analyzed by a "quick look" analysis.

7.      The Complaint and the relief sought therein under Section 1 of the Sherman Act are barred because Defendant ATP Tour, Inc. was and is lawfully formed to enhance efficiencies in and the overall standing and profitability of men's professional tennis for the benefit of player and tournament members; as such, ATP's decisions with respect to the pricing and output of its product, ATP tennis, cannot form the basis for any claim under Section 1 of the Sherman Act.

8.      The Complaint and the relief sought therein are barred because there is no causal connection between the alleged conduct and any alleged harm to competition or to consumers.

9.      The Complaint and the relief sought therein are barred because Plaintiffs have suffered no antitrust injury as a result of the alleged conduct

10.     The Complaint and the relief sought therein are barred to the extent that Plaintiffs are seeking to recover claims for indirect injuries.

11.     The Complaint and the relief sought therein are barred, in whole or in part, because Plaintiffs lack standing to bring these claims.

12.     To the extent that Plaintiff is seeking damages for both direct and indirect purchases or effects, these claims should be barred as seeking duplicative recovery.

13.    The Complaint and the relief sought therein are barred, in whole or in part, because Plaintiffs have failed to mitigate damages, if any, allegedly suffered as a result of the alleged conduct.

14.    The Complaint and the relief sought therein are barred by the doctrines of laches, waiver, estoppel, unclean hands, and other applicable equitable doctrines, including because Plaintiffs have benefited from, requested, endorsed, and/or ratified the very conduct of which they complain.

15.    The Complaint and the relief sought therein are barred because Defendant's conduct was justified or privileged.

16.    The Complaint and the relief sought therein are barred, in whole or part, by the applicable statute of limitations.

17.    The Complaint and the relief sought therein are barred because the claims are premature and not ripe for review.

18.    The Complaint and the relief sought therein are barred because, pursuant to 15 U.S.C. § 6a, the Sherman and Clayton Acts, 15 U.S.C. § 1-7 do not apply to some or all of the conduct alleged to be unlawful.

19.    Some or all of Plaintiff's alleged damages are speculative and not recoverable.

20.    Plaintiffs are not entitled to any equitable relief because, assuming that Plaintiffs were able to prove one or more of their alleged claims for relief, Plaintiffs have an adequate remedy at law.

21.    The Complaint and the relief sought therein are barred because the practices challenged in the complaint are reasonable and lawful because they are ancillary to the legitimate structure and purpose of ATP.

-17-

22.    The Complaint and the relief sought therein are barred because Defendants have acted lawfully and reasonably to advance and enhance the staging, production, and distribution of the sport of tennis worldwide and to ensure the ability of ATP and tennis to compete effectively with other sports and entertainment alternatives.

23.    Defendants reserve the right to assert additional defenses that they learns of through discovery or other investigation.


Dated:          May 4, 2007                    ASHBY & GEDDES

                                               Lawrence C. Ashby (I.D. #468)
                                               Philip Trainer, Jr. (I.D. #2788)
                                               Carolyn Hake (I.D. #3839)
                                               500 Delaware Avenue, 8th Floor
                                               P.O. Box 1150
                                               Wilmington, Delaware 19899
                                               302-654-1888
                                               lashby@ashby-geddes.com
                                               ptrainer@ashby-geddes.com
                                               chake@ashby-geddes.com


                                               PROSKAUER ROSE LLP
                                               Bradley I. Ruskin
                                               Colin A. Underwood
                                               Jennifer R. Scullion
                                               Jordan B. Leader
                                               1585 Broadway
                                               New York, NY  10036-8299
                                               Phone: (212) 969-3000

                                               *Attorneys for Defendants*

180243.1