IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

---

| | | |
|---|---|---|
| DEUTSCHER TENNIS BUND (GERMAN TENNIS FEDERATION) and ROTHENBAUM SPORTS GMBH, | : : : : : | Civil Action No. 07-178 (GMS) |
| Plaintiffs, | : : | |
| v. | : : | |
| ATP TOUR, INC., | : : | |
| Defendant. | : | |

---

**ATP TOUR, INC.'S NOTICE TO TAKE A RULE 30(B)(6) DEPOSITION OF PLAINTIFFS DEUTSCHER TENNIS BUND AND ROTHENBAUM SPORTS GMBH**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant ATP Tour, Inc. will take the deposition by oral examination of Plaintiffs Deutscher Tennis Bund and Rothenbaum Sports GMBH on October 4, 2007 at the offices of Proskauer Rose LLP, 1585 Broadway, New York, NY 10036, or as otherwise agreed. The deposition will begin at 10 a.m. and will continue day-to-day until completed.

Plaintiffs are directed, pursuant to Rule 30(b)(6), to designate one or more representatives who are knowledgeable or consent to testify on their behalf with respect to each of the subjects set forth in the attached Schedule A. Defendant requests that Plaintiffs provide to it on or before September 24, 2007 a written designation of those who will testify on their behalf as to each of the subjects identified on Schedule A.

The deposition will be conducted before a duly qualified notary public or other officer qualified to administer oaths, will be recorded stenographically, may be videotaped, and will be

taken for the purposes of discovery and for any other purposes authorized by the Federal Rules of Civil Procedure. You are invited to attend and participate.

Dated: August 9, 2007

                               ASHBY & GEDDES

                               */s/ Carolyn S. Hake*

                               Lawrence C. Ashby (I.D. #468)
                               Philip Trainer, Jr. (I.D. #2788)
                               Carolyn Hake (I.D. #3839)
                               500 Delaware Avenue, 8th Floor
                               P.O. Box 1150
                               Wilmington, Delaware 19899
                               302-654-1888
                               lashby@ashby-geddes.com
                               ptrainer@ashby-geddes.com
                               chake@ashby-geddes.com


                               PROSKAUER ROSE LLP
                               Bradley I. Ruskin
                               Jennifer R. Scullion
                               1585 Broadway
                               New York, NY 10036-8299
                               Phone: (212) 969-3000

                               *Attorneys for Defendants*

183153.1

## SCHEDULE A

1. The ownership structure of each of DTB, Rothenbaum and the Hamburg Tournament, including the names of all individuals and entities who own an interest in DTB, Rothenbaum, and/or the Hamburg Tournament, and the terms and percentages of such ownership, both financial and otherwise, including amounts of money invested.

2. The names and positions of all executives of DTB, Rothenbaum and the Hamburg Tournament.

3. Any and all actual or potential agreements with any entity or individual concerning ownership rights or investment in, or financing of, the Hamburg Tournament since 2000, and specifically including the acquisition of an ownership interest by the Qatar Tennis Federation, and including negotiations of such agreements and any competitive or financial or other analyses performed, provided, or received in connection with the consideration or negotiation of such agreements.

4. The finances of the Hamburg Tournament since 2000, including (i) both projected and actual financial results (including all revenue and expenses), (ii) the amounts of any loans or donations made to the Hamburg Tournament since 2000 and the names of all individuals and entities who made such loans or donations, and (iii) the amounts of yearly financial support provided by any government or government-related entity.

5. The finances of each of DTB and Rothenbaum since 2000, including (i) both projected and actual financial results (including all revenue and expenses), (ii) the amounts of any loans or donations made to DTB since 2000 and the names of all individuals and entities who made such loans or donations, and (iii) the amounts of yearly financial support provided by any government or government-related entity.

6. Fan attendance at the Hamburg Tournament since 2000, all projections for attendance since 2000, and all analyses performed, provided, or received by Hamburg concerning Fan attendance or satisfaction concerning the Hamburg Tournament.

7. Pricing for tickets for the Hamburg Tournament since 2000, including, but not limited to, decisions on the number of tickets distributed at discounted prices or for no cost.

8. Participation by Top 10 players at the Hamburg Tournament since 2000, all analyses performed, provided, or received by Hamburg concerning participation by Top 10 players at the Hamburg Tournament.

9. Efforts to secure or increase participation by Top 10 players at the Hamburg Tournament since 2000, all analyses performed, provided, or received by Hamburg concerning participation by Top 10 players at the Hamburg Tournament.

10. Hamburg's experience with player commitments and withdrawals from the Hamburg Tournament, and Hamburg's support for or opposition to the current ATP Rules concerning player commitments and withdrawals, and any proposed or actual changes to those rules since 2000.

11. Any and all analyses, studies, surveys, investigations, or discussions concerning what other sporting or entertainment events have competed for Media coverage, Sponsorship, or Fan attendance with the Hamburg Tournament since 2000.

12. Any and all analyses, studies, surveys, or investigations concerning player, public, or media interest in the Hamburg Tournament, tennis in Germany, tennis in Europe, or tennis globally.

13. DTB's promotional and marketing efforts, plans, or proposals since 2000, including the amount of money spent on such promotional and marketing efforts.

14. Hamburg's efforts to organize, promote, host or run any non-ATP tennis events, including any Special Events, as that term is used in the Complaint.

15. Media rights concerning the Hamburg Tournament, including any agreements concerning such rights and any financial analyses of such rights.

16. Prize money or other player compensation (financial or otherwise) provided to players who have played in the Hamburg Tournament since 2000, and all decisions concerning such compensation to players.

17. The formation of TPL, negotiation of any actual or potential agreements concerning TPL, and Hamburg's participation in TPL.

18. Hamburg's participation in negotiations and agreements with ISL, and any alleged injuries flowing from any dealings with ISL.

19. Any actual or potential sponsorship of the Hamburg Tournament, including all agreements with sponsors, all financial or other analyses performed, produced or received in connection with the discussion of any actual or potential sponsorship of the Hamburg Tournament.

20. DTB's decision to become a member of ATP, its decision to continue to be a member of ATP, and its relationship with ATP and other members of ATP.

21. DTB's support for or opposition to any proposed or actual restructuring plans for the ATP's calendar and/or format.

22. DTB's application for an ATP Masters 1000 sanction, including its decisions with respect to whether to apply for the European Combined clay-court event or the European indoor event.

23. Any injury or damages Hamburg alleges it has suffered or will suffer due to the actions of ATP as alleged in the Complaint.

24. Any and all capital investments made in the facilities where the Hamburg Tournament is played since 2000 and any planned capital investments.

25. The physical facilities of the site where the Hamburg Tournament is played, and any changes to the facilities since 2000 and any planned changes.

26. The Relevant Markets alleged in the Complaint, including DTB's ability to compete in any such Relevant Market.

27. Each of the allegations in the Complaint.

28. The collection of documents in connection with this litigation and in response to ATP's First and Second Sets of Document Requests To Plaintiffs Deutscher Tennis Bund and Rothenbaum Sports GMBH.

**DEFINITIONS**

1. As used herein, the term "ATP" shall mean ATP Tour, Inc. and its agents, employees, officers, directors, attorneys, affiliates, parents, subsidiaries, predecessors, successors, or anyone acting or purporting to act on its behalf.

2. As used herein, the term "ATP Rules" shall mean the rules, regulations, and grievance procedures as established from time to time by the ATP.

3. As used herein, the term "Complaint" shall mean the complaint filed on or about March 23, 2007 in the United States District Court for the District of Delaware and captioned *Deutscher Tennis Bund (German Tennis Federation) and Rothenbaum Sports GMBH v. ATP Tour, Inc., et al.*, Civil Action No. 07-178 (GMS).

4. As used herein, the terms "Fan" or "Fans" mean individuals that watch tennis either live or by Television broadcast.

5. As used herein, the term "DTB" means Deutscher Tennis Bund, and its agents, employees, officers, directors, attorneys, affiliates, parents, subsidiaries, predecessors, successors, or anyone acting or purporting to act on their behalf.

6. As used herein, the term "Hamburg" means, collectively, Deutscher Tennis Bund and Rothenbaum Sports GMBH.

7. As used herein, the term "Hamburg Tournament" means the ATP Tournament operated by Hamburg.

8. As used herein, the term "ISL" means International Sport and Leisure and its agents, employees, officers, directors, attorneys, affiliates, parents, subsidiaries, predecessors, or successors or anyone acting or purporting to act on its behalf.

9. As used herein, the term "Media" is used in the broadest sense and includes the

meaning as that term is used in the Complaint, as well as (to the extent not already included with the meaning used in the Complaint) (a) all visual forms (whether by Television, movies, through the internet, by satellite, or any other means), (b) all audio forms (whether by radio, by satellite, through the internet, by satellite, or any other means), (c) all print forms (whether distributed physically or through the internet or any other means, including newspapers, magazines, journals, websites, blogs, or chatrooms), and (d) all methods for recording any of the foregoing.

10. As used herein, the term "Player" has the same meaning as that term is used in the Complaint.

11. As used herein, the term "Relevant Market" has the same meaning as that term is used in the Complaint.

12. As used herein, the term "Rothenbaum" means Rothenbaum Sports GMBH, and its agents, employees, officers, directors, attorneys, affiliates, parents, subsidiaries, predecessors, successors, or anyone acting or purporting to act on their behalf.

13. As used herein, the terms "Sponsor" and "Sponsorship" shall have the same meaning as those terms are used in the Complaint.

14. As used herein, the term "TPL" means Tennis Properties Limited and its agents, employees, officers, directors, attorneys, affiliates, parents, subsidiaries, predecessors, successors, or anyone acting or purporting to act on its behalf.