# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

October 17, 2007

The Honorable Gregory M. Sleet
United States District Court
844 North King Street, Lockbox 19
Wilmington, Delaware 19801

**REDACTED**
**PUBLIC VERSION**

Re:    *Deutscher Tennis Bund, et al v. ATP Tour, Inc. et al.*, C.A. No. 07-178-GMS

Dear Chief Judge Sleet:

Defendant ATP Tour, Inc. ("ATP") respectfully submits this letter opposing Plaintiffs' (collectively, "Hamburg") request for an *in camera* review of documents reflecting negotiations of the terms of the Settlement Agreement between ATP and the former Monte Carlo Plaintiff. Hamburg fails to carry its burden of making a particularized showing that these materials are calculated to lead to any admissible evidence.

*First*, ATP produced the actual ATP/Monte Carlo Settlement Agreement to Hamburg in August.  Thus, to the extent that the terms of the settlement are relevant, Hamburg knows them. *Second*, the additional materials that Hamburg now demands – the communications between ATP and Monte Carlo's outside counsel to work out the specific terms and language of the Settlement Agreement – are irrelevant.  As recognized in this Circuit, allowing another party to retroactively parse settlement negotiations would have a chilling effect on such negotiations.  *See Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, 562 (D.N.J. 1994).  *Third*, if the reasons for or anticipated effects of the Settlement Agreement are relevant – for example, because the settlement provides for continuing with 9 tier one "1000" events (instead of the 8 that Hamburg complains of) – Hamburg has had and will have the opportunity to explore those issues in depositions.[1]  What Hamburg actually seeks through this application is a fishing expedition.

Hamburg certainly cannot make its required "particularized showing" by merely labeling virtually all of the conduct and operations of ATP as a "conspiracy."  In fact, ATP operates a worldwide men's professional tennis tour in over 30 countries on behalf of its player and tournament members.  Since its inception, ATP has at all times acted to develop and implement a yearly tennis tour format, establish and sanction various tiers of tournaments, develop an annual

---

[1] We submit that Hamburg has no genuine interest in doing so: when Hamburg had the chance to depose the Monte Carlo representative in this action after receiving a copy of the Settlement Agreement, it did not ask him a single question about the why's or wherefores of that agreement, nor of its anticipated effects.

The Honorable Gregory M. Sleet
October 17, 2007
Page 2 of 4

calendar, and otherwise seek to enhance the attractiveness and popularity of ATP tennis to consumers.

Consistent with its historical mission and function, and as it has done in the past, ATP is undertaking certain changes to its tour calendar and format to try to meet the demands of the marketplace by enhancing the quality and cohesiveness of the tour.  These changes – referred to as the "Brave New World" plan – are to be implemented in 2009 and respond to substantial market and consumer research, as well as internal consideration and debate among ATP's constituents.  As part of this process, ATP conducted an application procedure to determine which tournaments should be placed into the various tiers ATP created in connection with the plan.  Both Hamburg and Monte Carlo submitted applications to become part of the top tier of tournaments (the "1000" series).

Before ATP reached any final decisions regarding which tournaments would be placed into the "1000" series, Hamburg and Monte Carlo sued ATP in separate actions, bringing claims under the U.S. antitrust laws, as well as tort claims.  Both tournaments alleged, among other things, that they would lose their current status as top-tier ATP events, and that ATP's design for the 2009 season would restrict output by producing eight top-tier tournaments instead of the nine that exist on the current tour.[2]

On July 18, 2007, ATP and Monte Carlo executed an agreement to settle Monte Carlo's claims.  Pursuant to that agreement, Monte Carlo will be titled, promoted, presented and branded as a "1000" event, and will receive 1000 ranking points like all other events in the "1000" series.  On August 31, 2007, ATP announced that eight other tournaments were awarded "1000" status starting in 2009.[3]  Monte Carlo will feature different player participation rules from these eight other "1000" tournaments, but will otherwise possess all of the characteristics of a "1000" tournament.

The essential terms of the ATP/Monte Carlo Settlement Agreement are publicly known, and ATP produced the agreement to Hamburg in August in response to Hamburg's discovery

---

[2] Without responding to each of Hamburg's unsupported arguments that discovery "establishes" that ATP has entered into an antitrust conspiracy with various entities (Hamburg Ltr., at 1), it suffices to say for present purposes that ATP steadfastly asserts that no such antitrust conspiracy exists, and that all of ATP's actions in structuring its annual tour are reasonable and pro-competitive.

[3] Hamburg was not selected to be one of the "1000" tournaments.  However, contrary to Hamburg's assertion that ATP has conspired "to take [Hamburg's] ATP membership for its own" (Hamburg Ltr., at 1) and to sell it to "co-conspirators in China, London and Madrid" (*id.*, at 2), ATP has taken no action to terminate or sell Hamburg's membership.  To the contrary, ATP announced on October 4, 2007 that it has reserved a space for Hamburg in the "500" tier of the ATP Tour.  As to ATP's contracts with tournament members and organizers in Shanghai, Madrid and London – which included granting a new "1000" tournament membership to an entity based in Shanghai – courts have recognized that the value of expansion opportunities belongs to a league as a whole, not to any individual member of the league.  *See Los Angeles Mem'l Coliseum Comm'n v. NFL*, 791 F.2d 1356, 1371 (9th Cir. 1986); *Mid-South Grizzlies v. NFL*, 720 F.2d 772, 786-87 (3d Cir. 1983); *see also Chicago Prof. Sports Ltd. v. NBA*, 95 F.3d 593, 599 (7th Cir. 1996).

The Honorable Gregory M. Sleet
October 17, 2007
Page 3 of 4

demands in this matter. Hamburg has not made and cannot carry its burden to now also obtain discovery of the drafts of the final Settlement Agreement.

It is well-established that Fed. R. Evid. 408(a) prohibits the use of settlement agreements and discussions to prove liability for a disputed claim. This rule is designed to promote the public policy of encouraging litigants to settle their claims by enabling parties to be frank and open in their settlement negotiations, without worrying that their negotiations will be used against them at trial. *See* Fed. R. Evid. 408 (Advisory Committee note). For the same reason, courts in this Circuit protect settlement negotiations from discovery unless and until the party seeking discovery makes a "more particularized showing" that the evidence is both relevant *and* calculated to lead to the discovery of admissible evidence. *Block Drug Co. v. Sedona Labs.*, 2007 WL 1183828, at *1 (D. Del. Apr. 19, 2007) (emphasis supplied). Hamburg agrees that this is the legal standard.

Hamburg has failed to make any showing (much less a "particularized showing") that negotiations of the final terms of the Settlement Agreement would lead to the discovery of admissible evidence. To the extent that Hamburg now claims that "the Monte Carlo settlement is a key part" of some theorized, but unspecified, vast "Conspiracy" (Hamburg Ltr., at 2), ATP has already provided the Settlement Agreement to Hamburg. As such, Hamburg is fully aware of the terms of the agreement and will have the opportunity to make an offer of proof at trial as to whether it is relevant or admissible under FRE 408.[4]

Hamburg also vaguely proffers that ATP's "reasons" for entering into the Settlement Agreement are relevant and calculated to lead to admissible evidence. Hamburg's speculations only confirm that it is engaged in a pure fishing expedition and, therefore, has not made anything close to a "particularized showing" of need required to discover settlement negotiations. Moreover, evidence as to ATP's "reasons" for settling with Monte Carlo almost certainly would not be admissible under FRE 408 to prove liability – which is exactly what Hamburg proposes. Finally, as a practical matter, even if ATP's "reasons" for the settlement were relevant or admissible at all, there is no reason to believe that parsing through the back and forth among outside counsel on the specific language and terms of the final Settlement Agreement would be probative of those "reasons" or any anticipated "effects" of the settlement.

Based on the foregoing, ATP respectfully requests that the Court deny Hamburg's request for an *in camera* examination of the documents exchanged between counsel for ATP and counsel for Monte Carlo in connection with the ATP/Monte Carlo settlement.

---

[4] There also is no basis for Hamburg's highly-attenuated claim that documents obtained from former ATP CEO Mark Miles somehow support Hamburg's present request for documents concerning the ATP/Monte Carlo settlement. First, Hamburg completely mischaracterizes the nature of these documents. Second, to the extent those documents refer to issues relating to establishing a tier one event in Madrid, Hamburg fails to articulate how this supports its request to obtain an *in camera* review of settlement communications between ATP and Monte Carlo.

The Honorable Gregory M. Sleet
October 17, 2007
Page 4 of 4

Respectfully Submitted,

Philip Trainer, Jr. (No. 2788)

cc:    Clerk of the Court (via electronic filing/hand delivery)
       C. Barr Flinn, Esquire (via electronic filing/hand delivery)
       Robert D. MacGill, Esquire (via e-mail)

185060.1