**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                        :
DEUTSCHER TENNIS BUND (GERMAN           :
TENNIS FEDERATION), ROTHENBAUM          :    C.A. No.  07-178 (GMS)
SPORT GMBH, and QATAR TENNIS            :
FEDERATION,                             :
                                        :
              Plaintiffs,               :
                                        :
       v.                               :
                                        :
ATP TOUR, INC., ETIENNE DE VILLIERS,    :
CHARLES PASARELL, GRAHAM PEARCE,        :
JACCO ELTINGH, PERRY ROGERS, and IGGY   :
JOVANOVIC,                              :
                                        :
              Defendants.               :
                                        :
                                        :
                                        :
                                        :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

**ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT**

Defendant Graham Pearce ("Pearce"), by his undersigned attorneys Proskauer Rose LLP and Ashby & Geddes, for his Answer and Affirmative Defenses to the Complaint filed by Plaintiffs Deutscher Tennis Bund (German Tennis Federation), Rothenbaum Sport GMBH (collectively, "GTF"), and the Qatar Tennis Federation ("QTF") (all collectively, "Plaintiffs") hereby responds to each numbered paragraph as follows:

1.      Defendant denies the allegations in paragraph 1, except admits that Defendant ATP Tour, Inc. ("ATP") is a Delaware non-profit membership corporation under Section 501(c)(6) of the Internal Revenue Code.

2.      Defendant denies the allegations in paragraph 2.

3.      Defendant denies the allegations in paragraph 3.

4.      Defendant denies the allegations in paragraph 4.

5.      Defendant denies any knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5, except upon information and belief understands that GTF is the majority owner (50.2%) of Rothenbaum Sport GmbH and a 75% owner of the Plaintiffs' ATP Membership (the "Hamburg Membership").

6.      Defendant denies any knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6, except upon information and belief understands that QTF operates an ATP event that is staged annually in Doha, Qatar known as the Qatar Exxon Mobil Open (the "Qatar Tournament"), that QTF is the minority owner (49.8%) of Rothenbaum Sport GMBH and has owned 25% of its Hamburg Membership, and that QTF also presently owns an ATP International Series Membership (the "Qatar Membership").

7.      Defendant denies any knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7, except admits that GTF operates a men's professional tennis tournament ("Hamburg"), that Hamburg is played on clay, and, for several years, it has been held in the weeks prior to the French Open, and that some highly ranked players, including some players from the United States, have played Hamburg.

8.      Defendant admits the allegations in paragraph 8, except denies that ATP governs all men's professional tennis tournaments other than the four Grand Slams and that the Grand Slams are mandatory tournaments.

9.      Defendant admits the allegations of paragraph 9, except denies any knowledge or information sufficient to form a belief as to the truth of the allegations concerning Mr. Pasarell's employment or his place of residence or citizenship.

10.    Defendant admits the allegations of paragraph 10.

11.    Defendant admits the allegations of paragraph 11, except denies any knowledge or information sufficient to form a belief as to the truth of the allegations regarding Mr. Eltingh's retirement from professional tennis or his place of residence or citizenship.

12.    Defendant admits the allegations of paragraph 12, except denies any knowledge or information sufficient to form a belief as to the truth of the allegations regarding Mr. Rogers' employment or his place of residence or citizenship.

13.    Defendant admits the allegations of paragraph 13, except denies any knowledge or information sufficient to form a belief as to the truth of the allegations regarding Mr. Jovanovic's employment or his place of residence or citizenship.

14.    Defendant admits the allegations of paragraph 14, but denies that Mr. de Villiers began serving as non-executive Chairman of ATP in June 2005 and denies any knowledge or information sufficient to form a belief as to the truth of the allegations regarding Mr. de Villiers' place of residence or citizenship.

15.    Defendant admits that Plaintiffs have brought a civil action purporting to assert claims arising under federal and state law.

16.    The allegations of paragraph 16 state legal conclusions as to which no answer is required.

17.    Defendant denies the allegations in paragraph 17.

18.    The allegations of paragraph 18 state legal conclusions as to which no answer is required.

19.    The allegations of paragraph 19 state legal conclusions as to which no answer is required.

20.     Defendant denies any knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20.

21.     Defendant denies any knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21.

22.     Defendant denies the allegations in paragraph 22, except admits that the GTF Tournament has been held in the weeks prior to the French Open and is played on a clay surface and denies any knowledge or information sufficient to form a belief as to the truth of the allegations concerning the state of mind of men's professional tennis players.

23.     Defendant denies any knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23.

24.     Defendant denies the allegations in paragraph 24, except admits that the GTF Tournament has had a Masters Series-level sanction.

25.     Defendant denies any knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25, except admits that the Qatar Tournament has been played in the weeks prior to the Australian Open.

26.     Defendant denies the allegations in paragraph 26, except admits that ATP was formed in response to market conditions at the time.

27.     Defendant denies the allegations of paragraph 27, except admits that, during the 1980's, the Men's International Professional Tennis Council ("MIPTC") organized a circuit of tennis tournaments, and admits that certain parties initiated a lawsuit titled *Volvo North Am. Corp. v. Men's Int'l Prof. Tennis Council*, and respectfully refers the Court to the Second Circuit Court of Appeals decision for a full statement of its contents.

28.     Defendant denies any knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 28, except admits that ATP was created as a non-profit membership corporation whose members are players and tournaments.

29.     Defendant denies the allegations in paragraph 29, except admits that ATP has a seven-member Board of Directors with the structure alleged in paragraph 29.

30.     Defendant denies the allegations in paragraph 30, except admits that ATP has operated as a service organization on behalf of its player and tournament members under the ATP By-Laws and Articles of Incorporation.

31.     Defendant denies the allegations in paragraph 31, except admits that the ATP By-Laws set forth the following two primary categories of men's professional tennis tournaments: (1) the Championship Division and (2) the World Series Division.

32.     Defendant denies the allegations in paragraph 32, and respectfully refers the Court to the ATP Bylaws for a full statement of their contents.

33.     Defendant denies the allegations in paragraph 33, except admits that World Series Division tournaments on certain occasions have been and continue to be held in the same calendar week as Championship Division tournaments.

34.     Defendant denies the allegations in paragraph 34, except admits that certain ATP officers, ATP directors, and others met in October, 1997 in Vienna, Austria.

35.     Defendant denies the allegations in paragraph 35.

36.     Defendant denies any knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36, except admits that the GTF Tournament has been played in the weeks prior to the French Open, and upon information and belief understands that the GTF Tournament has been broadcast in Germany and the United States and that GTF entered agreements with United States-based IMG.

37.    Defendant denies any knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37.

38.    Defendant denies the allegations in paragraph 38, except admits that ATP and the operators of certain tournaments, including Hamburg, negotiated with ISL for the sale of certain broadcast and media rights.

39.    Defendant denies the allegations in paragraph 39, except admits that Plaintiffs purport to quote from letters written by ATP and Proskauer Rose, LLP, and respectfully refer the Court to the referenced documents for a full statement of their contents.

40.    Defendant denies the allegations in paragraph 40, except admits that GTF agreed to pool certain broadcast and media rights and to sell these pooled rights to ISL in 1999.

41.    Defendant denies the allegations in paragraph 41, except admits that ISL declared bankruptcy, and denies any knowledge or information sufficient to form a belief as to the truth of the allegations concerning ATP member tournaments' finances.

42.    Defendant denies knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 42.

43.    Defendant denies the allegations in paragraph 43.

44.    Defendant denies the allegations in paragraph 44, except admits that Tennis Properties Limited ("TPL") was created prior to the transaction with ISL as a separate entity and has held, among other things, certain intellectual property rights relating to the Masters Series.

45.    Defendant denies the allegations in paragraph 45, except admits that McKinsey & Co. created a report submitted to the ATP (the "McKinsey Report"), and respectfully refers the Court to the referenced document for a full statement of its contents.

46.    Defendant denies the allegations in paragraph 46.

47.    Defendant denies the allegations in paragraph 47.

48.    Defendant denies the allegations in paragraph 48, except admits that Plaintiffs purport to quote from the McKinsey Report, and respectfully refers the Court to the referenced document for a full statement of its contents.

49.    Defendant denies the allegations in paragraph 49.

50.    Defendant denies the allegations in paragraph 50.

51.    Defendant denies the allegations in paragraph 51.

52.    Defendant denies the allegations in paragraph 52, except admits that a lawsuit titled *Michael Bryan, et al. v. ATP Tour, Inc., et al.* was filed against ATP and others, and that this lawsuit was dismissed pursuant to a voluntary settlement agreement.

53.    Defendant denies the allegations in paragraph 53.

54.    Defendant denies the allegations in paragraph 54, except admits that in 2005 Mark Miles resigned as CEO of ATP.

55.    Defendant denies the allegations in paragraph 55, except admits that on January 18, 2006 the ATP Board of Directors appointed Mr. de Villiers Executive Chairman and President of ATP.

56.    Defendant denies any knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 56, and respectfully refers the Court to the referenced documents for a full statement of their contents.

57.    Defendant denies the allegations of paragraph 57, except admits that Mr. de Villiers is a former executive of a for-profit corporation.

58.    Defendant denies the allegations of paragraph 58, except admits that ATP has examined restructuring plans under various names, including the "Brave Real World" and "What

a Wonderful World."

59.    Defendant denies the allegations in paragraph 59, except admits that certain ATP member tournaments have agreed to pool certain media and sponsorship rights in TPL, which operates in part under the name ATP Media, and that Plaintiffs purport to quote an ATP-produced document, and respectfully refers the Court to the referenced document for a full statement of its contents.

60.    Defendant denies the allegations in paragraph 60.

61.    Defendant denies the allegations in paragraph 61, except admits that certain documents refer to an "open and transparent bidding process," and respectfully refers the Court to the referenced documents for a full statement of their contents.

62.    Defendant denies the allegations in paragraph 62.

63.    Defendant denies the allegations in paragraph 63, except admits that Mark Webster is an executive of TPL, which operates in part under the name ATP Media, and that Plaintiffs purport to quote Mr. de Villiers, and respectfully refers the Court to the referenced documents for a full statement of their contents.

64.    Defendant denies the allegations in paragraph 64.

65.    Defendant denies the allegations in paragraph 65, except admits that Shanghai, Indian Wells, Miami, Canada, Cincinnati, Madrid, Paris, Rome, and Monte Carlo have all been awarded ATP Masters 1000 positions in 2009.

66.    Defendant denies the allegations in paragraph 66, except admits that Plaintiffs purport to quote Mr. de Villiers, and respectfully refers the Court to the referenced documents for a full statement of their contents.

67.    Defendant denies any knowledge or information sufficient to form a belief as to

the truth of allegations in paragraph 67.

      68.      Defendant denies the allegations in paragraph 68.

      69.      Defendant denies the allegations in paragraph 69.

      70.      Defendant denies the allegations in paragraph 70, except admits that on August 31, 2007 the ATP made a statement regarding the 2009 calendar, and respectfully refers the Court to the referenced document for a full statement of its contents.

      71.      Defendant denies the allegations in paragraph 71, except admits that Plaintiffs purport to quote Mr. Jovanovic, and respectfully refers the Court to the referenced documents for a full statement of their contents.

      72.      Defendant denies the allegations in paragraph 72, except admits that the Austrian Open tournament has been played in Kitzbühel, Austria on a clay surface, and upon information and belief understand that the Austrian Open's membership is owned by Evington Finance Corporation, of which Ion Tiriac is a principal, and denies any knowledge and information sufficient to form a belief as to the truth of whether there will be a professional tennis tournament in Kitzbühel, Austria after January 1, 2009.

      73.      Defendant denies the allegations in paragraph 73, except admits that Plaintiffs purport to quote Mr. de Villiers and respectfully refers the Court to the referenced document for its full content.

      74.      Defendant denies the allegations in paragraph 74, except admits that the Brave New World plan as currently drafted, which is not final, contemplates four potential tiers of tournaments in the ATP Circuit:  (1) the ATP Masters 1000; (2) the ATP 500; (3) the ATP 250; and (4) the Challenger Series.

      75.      Defendant denies the allegations in paragraph 75, except admits that Plaintiffs

purport to quote from an ATP-produced document, and respectfully refers the Court to the referenced document for its full content.

76.    Defendant denies the allegations in paragraph 76, except admits that Plaintiffs purport to quote from an ATP-produced document, and respectfully refers the Court to the referenced document for its full content.

77.    Defendant denies the allegations in paragraph 77.

78.    With respect to the following subparagraphs, Defendant states that the Brave New World plan is not yet finalized, but as currently drafted:

Defendant denies the allegations in paragraph 78(a), except admits that the plan currently contemplates nine ATP Masters 1000 tournaments calendared under ATP's discretion and also currently contemplates certain requirements for certain highly-ranked players to play in the ATP Masters 1000 and ATP 500 tournaments or potentially be sanctioned;

Defendant denies the allegations in paragraph 78(b);

Defendant denies the allegations in paragraph 78(c), except admits the Brave New World plan, as currently drafted, which is not final, includes an increase in prize money and the creation of a bonus pool, and payment of fees to ATP;

Defendant denies the allegations in paragraph 78(d);

Defendant denies the allegations in paragraph 78(e), except admits that certain media rights of the ATP Masters 1000 and ATP 500 tournaments will be pooled and sold through TPL, which operates in part under the name ATP Media;

Defendant admits the allegations in paragraph 78(f);

Defendant denies the allegations in paragraph 78(g);

Defendant denies the allegations in paragraph 78(h), except admits that the Brave New World plan, as currently drafted, which is not final, requires player participation in four of eleven ATP 500 events.

79.    Defendant denies the allegations in paragraph 79, except admits that under the Brave New World plan, as currently drafted, which is not final, contemplates that there will be nine ATP Masters 1000 tournaments.

80.    Defendant denies the allegations in paragraph 80.

81.    Defendant denies the allegations in paragraph 81.

82.    Defendant denies the allegations in paragraph 82.

83.    Defendant denies the allegations in paragraph 83, except admits that players are a necessary component of men's professional tennis tournaments.

84.    Defendant denies the allegations in paragraph 84, except admits that the number of tournaments that a player plays may be affected by physical constraints.

85.    Defendant denies the allegations in paragraph 85, except admits that Plaintiffs purport to quote a statement from a news article and respectfully refers the Court to the article for its full context.

86.    Defendant denies the allegations in paragraph 86.

87.    Defendant denies the allegations in paragraph 87, except admits that the Brave New World plan, as currently drafted, which is not final, contemplates requirements for certain highly-ranked players to play in the ATP Masters 1000 and ATP 500 tournaments or potentially be sanctioned.

Defendant denies the allegations of paragraph 87(a);

Defendant denies the allegations in paragraph 87(b), except admits that the Brave

11

New World plan, as currently drafted, which is not final, contemplates that the ATP Masters 1000 tournaments will provide 1000 ranking points to the winner of the respective event, the ATP 500 tournaments will provide 500 ranking points to the winner of the respective event, and the ATP 250 tournaments will provide 250 ranking points to the winner of the respective event, and the plan contemplates that top players who do not play in an ATP Masters 1000 tournament may be subjected to potential financial and non-financial penalties, and denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning the basis upon which sponsors enter into endorsement contracts with professional tennis players.

Defendant denies the allegations in paragraph 87(c), except admits that the Brave New World plan, as currently drafted, which is not final, contemplates the creation of a bonus pool to encourage the top players to play in the ATP Masters 1000 tournaments.

Defendant denies the allegations in paragraph 87(d), except admits that the Brave New World plan, as currently drafted, which is not final, contemplates potential financial and non-financial sanctions substantially similar to those alleged for failure to meet minimum player participation requirements.

88.  Defendant denies the allegations in paragraph 88.

89.

Defendant denies the allegations in paragraph 89(a), except admits that the ATP has rules regarding Special Events, and respectfully refer the Court to the ATP Rulebook for a full statement of the rules relating to "Special Events."

12

Defendant denies the allegations in paragraph 89(b).

90.    Defendant denies the allegations in paragraph 90.

91.    Defendant denies the allegations in paragraph 91, except admits that Hamburg existed prior to the creation of the ATP, and admits that the Brave New World plan, as currently drafted, which is not final, contemplates that the ATP tournament members will be required to submit periodic requests to ATP for a sanction to operate a tournament and that it is ATP's decision whether to grant a sanction and to schedule when and where ATP events are held.

92.    Defendant denies the allegations in paragraph 92, except admits tennis tournaments have not always been organized into a circuit, and admits that, for several years, the Hamburg tournament has been held on clay courts in the weeks prior to the French Open.

93.    Defendant denies the allegations in paragraph 93.

94.    Defendant denies the allegations in paragraph 94.

95.    Defendant denies the allegations in paragraph 95.

96.    Defendant denies the allegations in paragraph 96, except admits that certain current Master's Series Tournaments were required to submit applications to ATP if they wanted to bid for an ATP Masters 1000 sanction, that the application process was limited to current Masters Series Tournaments, and that the current Brave New World Plan, which is not final, contemplates that there will be nine ATP Masters 1000 tournaments.

97.    Defendant denies the allegations in paragraph 97.

98.    Defendant denies the allegations in paragraph 98.

99.    Defendant denies the allegations in paragraph 99 and respectfully refers the Court to the ATP Masters 1000 Application for a full statement of its contents.

100.    Defendant denies the allegations in paragraph 100.

101.     Defendant denies the allegations in paragraph 101, except admits that GTF (or its predecessor) was a willing participant in the ISL broadcast pooling agreement.

102.     Defendant denies the allegations in paragraph 102, except admits that ATP and the operators of each of the Masters Series tournaments, including GTF (or its predecessors), collectively agreed to sell certain broadcast and media rights to ISL and respectfully refers the Court to the documentation of that agreement for a full statement of its contents.

103.     Defendant denies the allegations in paragraph 103, except admits that the Brave New World plan, as currently drafted, which is not final, contemplates the pooling of certain broadcast and media rights, and denies any knowledge or information sufficient to form a belief as to the truth of the allegations concerning the value of worldwide television sports rights.

104.     Defendant denies the allegations in paragraph 104, except admits that the Brave New World plan, as currently drafted, which is not final, contemplates that certain broadcast and media rights for the ATP Masters 1000 and ATP 500 tournaments will be administered under the name ATP Media through Tennis Properties Ltd.

105.     Defendant denies the allegations in paragraph 105.

106.     Defendant denies the allegations in paragraph 106.

107.     Defendant denies the allegations in paragraph 107.

108.     Defendant denies the allegations in paragraph 108, except admits that certain highly-ranked tennis players are citizens or residents of the United States but denies any knowledge or information sufficient to form a belief as to the specific numbers and individuals alleged.

109.     Defendant denies the allegations in paragraph 109.

110.     Defendant denies the allegations in paragraph 110.

111.     Defendant denies the allegations in paragraph 111.

112.     Defendant denies the allegations in paragraph 112.

113.     Defendant denies the allegations in paragraph 113 and in each of subparagraphs (a) through (e).

114.     Defendant denies the allegations in paragraph 114, except admits that certain top U.S. players have played the Hamburg Tournament and that the Hamburg Tournament has been broadcast in the U.S. and denies any knowledge or information sufficient to form a belief as to the truth of the remaining allegations concerning the GTF's state of mind.

115.     Defendant denies the allegations in paragraph 115.

116.     Defendant denies the allegations in paragraph 116.

117.     Defendant denies the allegations in paragraph 117.

118.     Defendant denies the allegations in paragraph 118.

119.     Defendant denies the allegations in paragraph 119, except admits that Plaintiffs purport to have quoted from the decision in the *Volvo* case and respectfully refers the Court to that decision for its full content.

120.     Defendant denies the allegations in paragraph 120.

121.     Defendant admits the allegations in paragraph 121.

122.     The allegations in paragraph 122 state legal conclusions as to which no answer is required, and Defendant respectfully refers the Court to the ATP By-laws for a full statement of their contents.

123.    The allegations of paragraph 123 state legal conclusions as to which no answer is required.

124.    Defendant denies the allegations in paragraph 124.

125.    Defendant denies the allegations in paragraph 125, except admits that the ATP Board of Directors has voted to implement  the Brave New World plan as currently drafted, which is not final.

126.    Defendant denies the allegations in paragraph 126.

127.    Defendant denies the allegations in paragraph 127.

128.    Defendant denies the allegations in paragraph 128, and respectfully refers the Court to the agreement between the ATP and Indian Wells for a full statement of its contents.

129.    Defendant denies the allegations in paragraph 129, except admits that Mr. Pearce is the Tournament Director of the Heineken Open tournament and that it has been held in Auckland, New Zealand.

130.    Defendant denies the allegations in paragraph 130, except upon information and belief understands that Mr. Jovanovic has performed certain tennis-related consulting work.

131.    Defendant denies the allegations in paragraph 131.

132.    Defendant denies the allegations in paragraph 132, except admits that Plaintiffs purport to quote Mr. Miles and respectfully refers the Court to the referenced document for a full statement of its contents.

133.    Defendant denies the allegations in paragraph 133, except admits that the Brave New World plan, as currently drafted, which is not final, contemplates the creation of a

tournament-funded bonus pool.

134.    Defendant denies the allegations in paragraph 134, except denies any knowledge or information sufficient to form a belief as to the allegations regarding Mr. Pasarell's conversation with TPL's ATP tournament members on October 3, 2007.

135.    Defendant denies the allegations in paragraph 135.

136.    Defendant denies the allegations in paragraph 136.

137.    Defendant denies the allegations in paragraph 137.

138.    Defendant denies the allegations in paragraph 138, except admits that certain ATP officers and directors received bonuses over the past two years.

139.    Defendant denies the allegations in paragraph 139.

140.    Defendant denies the allegations in paragraph 140.

141.    Defendant denies the allegations in paragraph 141, except admits that the Hamburg Tournament member applied for an ATP Masters 1000 Membership for the 2009 season.

142.    Defendant denies the allegations in paragraph 142, except admits that the Hamburg Tournament member was not awarded an ATP Masters 1000 sanction in the 2009 season.

143.    Defendant denies the allegations in paragraph 143.

144.    Defendant denies the allegations in paragraph 144.

145.    The allegations in paragraph 145 state legal conclusions as to which no answer is required, and Defendant respectfully refers the Court to the ATP By-laws for a full statement of their contents.

146.    Defendant denies the allegations in paragraph 146, except admits that Plaintiffs

purport to quote Mr. Jovanovic and respectfully refers the Court to the referenced document for a full statement of its contents.

147.    Defendant denies the allegations in paragraph 147, except admits that the Hamburg Tournament member was not awarded an ATP Masters 1000 sanction in the 2009 season.

148.    Defendant denies the allegations in paragraph 148, and to the extent Plaintiffs purport to quote from ATP documents Defendant respectfully refers the Court to the referenced documents for a full statement of their contents.

149.    Defendant denies the allegations in paragraph 149.

150.    Defendant denies the allegations in paragraph 150, and respectfully refers the Court to the ATP Bylaws for a full statement of their contents.

151.    Defendant denies the allegations in paragraph 151.

152.    Defendant denies the allegations in paragraph 152.

## COUNT I

153.    Repeats its answers to paragraphs 1 through 152 above as if fully set forth herein.

154.    Defendant denies the allegations in paragraph 154.

155.    Defendant denies the allegations in paragraph 155 and in each of subparagraphs (a) through (f).

156.    Defendant denies the allegations in paragraph 156.

157.    Defendant denies the allegations in paragraph 157.

158.    Defendant denies the allegations in paragraph 158.

159.    Defendant denies the allegations in paragraph 159.

160.    Defendant denies the allegations in paragraph 160.

161.    Defendant denies the allegations in paragraph 161.

### COUNT II

162.    Repeats its answers to paragraphs 1 through 161 above as if fully set forth herein.

163.    Defendant denies the allegations in paragraph 163.

164.    Defendant denies the allegations in paragraph 164.

165.    Defendant denies the allegations in paragraph 165.

166.    Defendant denies the allegations in paragraph 166.

167.    Defendant denies the allegations in paragraph 167.

168.    Defendant denies the allegations in paragraph 168.

169.    Defendant denies the allegations in paragraph 169 and in each of subparagraphs (a) through (f).

170.    Defendant denies the allegations in paragraph 170.

171.    Defendant denies the allegations in paragraph 171.

172.    Defendant denies the allegations in paragraph 172.

### COUNT III

173.    Repeats its answers to paragraphs 1 through 173 above as if fully set forth herein.

174.    Defendant denies the allegations in paragraph 174.

175.    Defendant denies the allegations in paragraph 175.

176.    Defendant denies the allegations in paragraph 176.

177.    Defendant denies the allegations in paragraph 177.

178.    Defendant denies the allegations in paragraph 178.

### COUNT IV

179.    Repeats its answers to paragraphs 1 through 178 above as if fully set forth herein.

180.     Defendant denies the allegations in paragraph 180.

181.     Defendant denies the allegations in paragraph 181.

182.     Defendant denies the allegations in paragraph 182.

183.     Defendant denies the allegations in paragraph 183.

184.     Defendant denies the allegations in paragraph 184.

185.     Defendant denies the allegations in paragraph 185.

## COUNT V

186.     Repeats its answers to paragraphs 1 through 185 above as if fully set forth herein.

187.     The allegations of paragraph 187 state legal conclusions as to which no answer is required.

188.     Defendant denies the allegations in paragraph 188, except admits that one of the ATP's purposes is to administer a men's professional tennis circuit.

189.     Defendant denies the allegations in paragraph 189.

190.     Defendant denies the allegations in paragraph 190, except admits that the Hamburg Tournament member was not awarded an ATP Masters 1000 sanction in the 2009 season.

191.     Defendant denies the allegations in paragraph 191.

192.     Defendant denies the allegations in paragraph 192.

193.     Defendant denies the allegations in paragraph 193.

194.     Defendant denies the allegations in paragraph 194.

195.     Defendant denies the allegations in paragraph 195.

196.     Defendant denies the allegations in paragraph 196.

197.     Defendant denies the allegations in paragraph 197.

## COUNT VI

198.    Repeats its answers to paragraphs 1 through 197 above as if fully set forth herein.

199.    The allegations of paragraph 199 state legal conclusions as to which no answer is required.

200.    Defendant denies the allegations in paragraph 200.

201.    Defendant denies the allegations in paragraph 201, and respectfully refers the Court to the ATP's Bylaws for a full statement of their contents.

202.    Defendant denies the allegations in paragraph 202.

## COUNT VII

203.    Repeats its answers to paragraphs 1 through 202 above as if fully set forth herein.

204.    The allegations of paragraph 204 state legal conclusions as to which no answer is required.

205.    Defendant denies the allegations in paragraph 205.

206.    Defendant denies the allegations in paragraph 206.

207.    Defendant denies the allegations in paragraph 207.

## COUNT VIII

208.    Repeats its answers to paragraphs 1 through 207 above as if fully set forth herein.

209.    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 209.

210.    Defendant denies the allegations in paragraph 210.

211.    Defendant denies the allegations in paragraph 211.

212.    Defendant denies the allegations in paragraph 212.

## COUNT IX

213.    Repeats its answers to paragraphs 1 through 212 above as if fully set forth herein.

214.    Defendant denies the allegations in paragraph 214.

215.    Defendant denies the allegations in paragraph 215.

216.    Defendant denies the allegations in paragraph 216.

## COUNT X

217.    Repeats its answers to paragraphs 1 through 216 above as if fully set forth herein.

218.    Defendant denies the allegations in paragraph 218.

219.    Defendant denies the allegations in paragraph 219.

220.    Defendant denies the allegations in paragraph 220.

## AFFIRMATIVE DEFENSES

1.    The Amended Complaint fails in whole or in part to state a claim for relief.

2.    The Amended Complaint and the relief sought therein are barred because the alleged conduct will not lessen, destroy, or prevent competition, tend to create a monopoly, or create a dangerous probability of success of creating a monopoly in any relevant market.

3.    The Amended Complaint and the relief sought therein are barred because the procompetitive benefits of the conduct alleged outweigh any alleged anticompetitive effect.

4.    The Amended Complaint and the relief sought therein are barred, in whole or part, because ATP is a single entity and is legally incapable of conspiring with its officers, directors or members.

5.    The Amended Complaint and the relief sought therein are barred to the extent the Plaintiffs seek damages under a *per se* theory; the alleged conduct is not appropriately

analyzed by a *per se* analysis.

6.      The Amended Complaint and the relief sought therein are barred to the extent the Plaintiffs seek damages under a "quick look" theory; the alleged conduct is not appropriately analyzed by a "quick look" analysis.

7.      The Complaint and the relief sought therein under Section 1 of the Sherman Act are barred because Defendant ATP Tour, Inc. was and is lawfully formed to enhance efficiencies in and the overall standing and profitability of men's professional tennis for the benefit of player and tournament members; as such, ATP's decisions with respect to the pricing and output of its product, ATP tennis, cannot form the basis for any claim under Section 1 of the Sherman Act.

8.      The Complaint and the relief sought therein are barred because there is no causal connection between the alleged conduct and any alleged harm to competition or to consumers.

9.      The Complaint and the relief sought therein are barred because Plaintiffs have suffered no antitrust injury as a result of the alleged conduct.

10.     The Complaint and the relief sought therein are barred to the extent that Plaintiffs are seeking to recover claims for indirect injuries.

11.     The Complaint and the relief sought therein are barred, in whole or in part, because Plaintiffs lack standing to bring these claims.

12.     To the extent that Plaintiff is seeking damages for both direct and indirect purchases or effects, these claims should be barred as seeking duplicative recovery.

13.     The Complaint and the relief sought therein are barred, in whole or in part, because Plaintiffs have failed to mitigate damages, if any, allegedly suffered as a result of

the alleged conduct.

14.      The Complaint and the relief sought therein are barred by the doctrines of laches, waiver, estoppel, unclean hands, and other applicable equitable doctrines, including because Plaintiffs have benefited from, requested, endorsed, and/or ratified the very conduct of which they complain.

15.      The Complaint and the relief sought therein are barred because Defendant's conduct was justified or privileged.

16.      The Complaint and the relief sought therein are barred, in whole or part, by the applicable statute of limitations.

17.      The Complaint and the relief sought therein are barred because the claims are premature and not ripe for review.

18.      The Complaint and the relief sought therein are barred because, pursuant to 15 U.S.C. § 6a, the Sherman and Clayton Acts, 15 U.S.C. § 1-7 do not apply to some or all of the conduct alleged to be unlawful.

19.      Some or all of Plaintiff's alleged damages are speculative and not recoverable.

20.      Plaintiffs are not entitled to any equitable relief because, assuming that Plaintiffs were able to prove one or more of their alleged claims for relief, Plaintiffs have an adequate remedy at law.

21.      The Complaint and the relief sought therein are barred because the practices challenged in the complaint are reasonable and lawful because they are ancillary to the legitimate structure and purpose of ATP.

22.      The Complaint and the relief sought therein are barred because Defendants have acted lawfully and reasonably to advance and enhance the staging, production, and

distribution of the sport of tennis worldwide and to ensure the ability of ATP and tennis to compete effectively with other sports and entertainment alternatives.

23.     The Complaint fails to state a claim for relief under the doctrine established by the United States Supreme Court's decision in *Texaco Inc. v. Dagher*, 547 U.S. 1 (2006). Specifically, the conduct alleged constitutes decisions made regarding the core activities of a legitimate venture which are not restraints of trade in the antitrust sense.

24.     The Complaint and the relief sought therein are barred because at all relevant times GTF consented to ATP's authority to determine which tournaments receive a top-tier sanction.

25.     The Complaint and the relief sought therein are barred because intangible property, such as the right to continued possession and control of a top-tier sanction, may not be the subject of an action for conversion.

26.     The Complaint and the relief sought therein are barred because Plaintiffs agreed to release Defendants from liability.

27.     Defendants reserve the right to assert additional defenses that they learn of through discovery or other investigation.

Dated:          December 6, 2007

ASHBY & GEDDES

*/s/ Carolyn S. Hake*

_____
Lawrence C. Ashby (I.D. #468)
Philip Trainer, Jr. (I.D. #2788)
Carolyn S. Hake (I.D. #3839)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
302-654-1888
lashby@ashby-geddes.com
ptrainer@ashby-geddes.com
chake@ashby-geddes.com

PROSKAUER ROSE LLP
Bradley I. Ruskin*
Jennifer R. Scullion*
1585 Broadway
New York, NY  10036-8299
Phone: (212) 969-3000

*Attorneys for Defendants*
(*admitted *pro hac vice*)

186483.1

26