# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

February 1, 2008

The Honorable Gregory M. Sleet  
United States District Court  
844 King Street  
Wilmington, DE 19801

**BY HAND DELIVERY**  
**and ELECTRONIC FILING**

Re: <u>Deutscher Tennis Bund, et al. v. ATP Tour, Inc., et al.</u>, C.A. No. 07-178-GMS

Dear Chief Judge Sleet:

ATP Tour, Inc. ("ATP") and each of the individual ATP Director Defendants (collectively, "Defendants") hereby request permission to file summary judgment motions dismissing each of the claims alleged in Plaintiffs' First Amended Complaint ("FAC").

ATP is a non-profit membership organization that operates a worldwide men's professional tennis tour to encourage interest in professional tennis, promote and protect the future of the sport, and further the interests of its player and tournament members. Plaintiffs operate a tennis tournament in Hamburg, Germany. Plaintiffs chose to be ATP members and to operate the Hamburg tournament as part of ATP's annual tour.[1] ATP's current tour structure has three tournament "tiers," with Hamburg in the highest tier, the "Masters Series."

ATP chose to restructure the tour beginning in 2009 to make it more attractive and responsive to consumers, to better compete with other tennis, sports, and entertainment products, and to better promote and grow the sport. The new structure creates a more coherent calendar, expands into the growing sports market in Asia, increases prize money, enhances "player commitments," and encourages investment in facilities. As part of the new tour structure, ATP will place Hamburg in the second "tier" – the "ATP 500" – and not in its new highest tier, the "Masters 1000." Plaintiffs allege that ATP's modification of the tour structure violates the federal antitrust laws. FAC 153-185. They also allege certain tort and fiduciary duty claims.

After more than seven months of costly discovery (including more than 40 depositions and the production of more than 600,000 pages of documents from ATP Defendants alone), the undisputed facts show that this case has nothing to do with protecting free-market "competition." Plaintiffs' representatives agreed in deposition that ATP tournaments do not "compete" with each other, let alone with ATP. Plaintiffs' witnesses also agree that interdependence, cooperation, and submission to a centrally designed and administered tour structure and regulations are necessary to produce the product at issue – the annual ATP Tour. Indeed,

---

[1] Plaintiff Rothenbaum Sport is licensed by the other Plaintiffs to operate the Hamburg tournament and has agreed to be bound by ATP's rules and agreements. Plaintiff Qatar Tennis Federation also operates a tournament in Qatar. The FAC does not claim any injury with respect to that tournament. Nor does Plaintiffs' expert opine on any damage concerning that tournament.

Plaintiffs' witnesses believe even more cooperation, consensus, and agreement is needed – the polar opposite of what Plaintiffs purport to allege in their antitrust claims.

Significantly, Plaintiffs' representatives admit that the supposedly unlawful elements of ATP's new tour structure – including a "tiered" system of tournaments, calendar "exclusivity" for the highest tier, mandatory player participation in the highest tier events, revenue sharing, and pooling of broadcast rights – are elements that the Hamburg tournament either currently embraces (and benefits from) as a Masters Series event or are changes that Plaintiffs expressly urged upon the ATP as "integral" to a viable tour product. DX 26; *see also* DX 20, DX 134. Thus, Plaintiffs' complaint is not that the new tour structure is anticompetitive; rather, Plaintiffs want to be part of the new structure – but at their preferred "top-tier." As the President of Plaintiff DTB, Georg von Waldenfels ("GvW"), agreed in his deposition, Plaintiffs seek "the resumption of Hamburg as a 1000 event, as a Masters event in May," with the benefits of being "the only event during its tournament week" and "the benefit of the player commitment that is being proposed for the 1000 events starting in 2009." GvW at 386:8-387:8.

Not surprisingly, the undisputed facts show that the ATP's restructuring is the antithesis of anticompetitive "cartel" behavior. Far from offering less output at a greater margin – *i.e.* competition reducing behavior of a rational "cartel" – ATP's restructuring will:

- Maintain the total number of tournaments in ATP's top tier at nine events;
- Enlarge the second tier to eleven events and increase player commitments for that tier;
- Expand ATP's top tier events to the growing sports market in Asia;
- Increase the prize money offered to players at all levels; and
- Increase costs to tournaments, investments in infrastructure and marketing expenditures.

Summary judgment is appropriate where, as here, antitrust claims "make[] no economic sense" (*Eastman Kodak v. Image Tech. Servs.*, 504 U.S. 451, 467 (1992)) or the record as a whole provides no "rational" support for the claims. *Matsushita v. Zenith*, 475 U.S. 574 (1986).

Defendants are entitled to summary judgment on Plaintiffs' antitrust claims on at least three grounds: (1) ATP is a "single" or integrated entity whose internal decisions about its "core functions" are not actionable under § 1, (2) modifications to ATP's internal structure are, at best, restraints on "intrabrand" competition that do not cause any "antitrust injury," and (3) Plaintiffs' "relevant market" definition is both arbitrary and circular.[2]

The undisputed facts likewise compel summary judgment on Plaintiffs' tort and fiduciary duty claims.[3] Plaintiffs have acknowledged and agreed in signed contracts that they have no right to any particular place within the ATP Tour or calendar. DX 54; DX 56. It is left to ATP to structure the tour to create a viable and attractive product. Even if Plaintiffs' criticisms of

---

[2] Expert discovery is not yet complete. Such discovery likely will reveal additional grounds and support for summary judgment, including potential exclusion of the opinions of Plaintiffs' sole economic expert, Mr. Zimbalist, as unreliable and unproven. *See Ky. Speedway v. NASCAR*, 2008 WL 113987 (E.D.Ky. 2008) (excluding Zimbalist opinions concerning relevant market).

[3] The Court has only supplemental jurisdiction over the non-federal claims. Diversity jurisdiction is lacking because there are alien parties on both sides of the case.

ATP's restructuring were based on the merits (and not self-serving protection), such disagreements do not overcome the business judgment rule. It is for the marketplace, not the courts, to judge whether ATP's restructuring will produce the tour product consumers demand.

### I. ATP is a "Single Entity"

The internal decisions of a unified business interest – a "single entity" – do not give rise to claims under § 1 of the Sherman Act. *Copperweld v. Independence Tube*, 467 U.S. 752 (1984). As explained in the "*Bulls II*" case (concerning NBA rules on league telecasts):

> antitrust law permits, indeed encourages, cooperation inside a business organization the better to facilitate competition between that organization and other producers. To say that participants in an organization may cooperate is to say that they may control what they make and how they sell it . . . .

*Chicago Prof'l Sports v. NBA* ("Bulls II"), 95 F.3d 593, 598 (7th Cir. 1996). This fundamental tenet of modern antitrust law – that a sufficiently integrated organization is deemed to be a single entity (*Am. Needle. v. New Orleans Saints*, 496 F. Supp. 2d 941, 943 (N.D. Ill. 2007)) – extends to all "core" functions of a single or joint economic entity, even agreements as to price. *Texaco. v. Dagher*, 547 U.S. 1, 6 (2006) (agreement to price of venture's gasoline "not price fixing in the antitrust sense."). "The primary concern of antitrust law" is "interbrand," not "intrabrand," competition. *Continental v. GTE Sylvania*, 433 U.S. 36, 52 n. 19 (1977).

As in *Bulls II*, the recent trend in antitrust law is to treat sports leagues, circuits, and tours as "single" or integrated entities. Despite any superficial independence or "competition," each member is interdependent on the other to produce a common product – a marketable annual tour or season. Thus, *Bulls II* found that the NBA acts like a single entity in selling broadcast rights for league games despite internal "competition" among and "ownership" rights of league members. *Id.* at 600. The NFL, PGA, and NHL too have been found to be such integrated entities. *Am. Needle*, 496 F.Supp. 2d at 944 (NFL acts as a single entity with respect to branded clothing); *Seabury v. PGA*, 878 F. Supp. 771 (D. Md. 1994) (PGA acts as integrated entity); *Lokomotiv Yaroslavl v. NHL*, 06 CV 9421, slip op. at 86 (S.D.N.Y. Nov. 15, 2006) (NHL rules on negotiation for transfer of foreign players are "core activities of a joint venture . . . and thus, would not constitute a combination in restraint of trade" under *Dagher*).[4]

Here, ATP is a "single entity." ATP is a single, non-stock corporation comprised of player and tournament members that have joined together to produce an annual professional tennis tour. Plaintiffs' witnesses testified that ATP tournament members do not "compete" among themselves, nor with ATP. GvW at 38-39; AA at 173-74. Rather, ATP members have agreed to be governed by a set of Bylaws and to delegate the responsibility for producing the annual ATP Tour to an elected Board of Directors. ATP Bylaws, Article XII.

Even if Plaintiffs were able to avoid ATP's status as a single entity, they cannot avoid the Supreme Court's teaching in *Dagher, supra* that the "core" activities of a legitimate joint venture

---

[4] *See also Ky. Speedway, supra* at *1 (NASCAR is "a producer of a product" free under the antitrust laws to decide which racetracks will host which races); *Madison Square Garden v. NHL*, 2007 WL 3254421 (S.D.N.Y. 2007) (NHL uniform website requirement "is a key element of the League's new growth strategy to enhance the NHL's 'national brand' and to compete better against other sports and entertainment products and their websites.").

are presumptively not anticompetitive. Plaintiffs' own witnesses agree that the production of a viable tour requires central coordination of a rational calendar for and location of events, the use of "tiers", mandatory player commitments, and ranking points to create a product that is exciting and attractive to fans, telecasters, and sponsors, as well as the use of "pooling" arrangements for selling tour telecasts. WK at 498; AA at 68-73. As Plaintiffs' long-time tournament director, Walter Knapper, testified, "Everybody has to be successful and not only one has to be successful." WK at 91; *see also* WK at 96-97 (bad for Hamburg if there are empty seats at other tournaments); AA at 205-06 (problems for one tournament are a concern for the whole "family" requiring a solution). As in *Bulls II*, *supra*, Plaintiffs agree that such functions are pro-competitive because they allow ATP to deliver a better product to consumers. WK at 142.

Under the controlling caselaw, ATP's internal decisions about how to define its product – *e.g.* how many "tiers" to have, how to define the "tiers," which tournaments to include in which "tier," and when to schedule its tournaments – as well as how to brand and sell its product are not subject to scrutiny under § 1 of the Sherman Act as an "agreement" to restrict competition. Rather, as explained in *Bulls II*, "Courts must respect a league's disposition of these issues, just as they respect contracts and decisions by a corporation's board of directors." 95 F.3d at 597.

### II. Plaintiffs Cannot Show Any "Antitrust Injury"

Private antitrust plaintiffs must prove "antitrust injury," meaning injury "of the type the antitrust laws were intended to prevent" and that "flows from that which makes defendants' acts unlawful" – *i.e.* injury that reflects an "anticompetitive effect" or an "anticompetitive act[]." *Brunswick v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 489 (1977). The antitrust laws "were enacted for 'the protection of *competition, not competitors.*'" *Id.* at 488.

Here, any "injury" to Plaintiffs from ATP's decision to place Hamburg in the second tier is not an "antitrust" injury. First, the changes that ATP is making are permissible changes to "intrabrand" competition within the ATP tour that are intended to and will facilitate the ability of the ATP tour to compete on an "interbrand" basis with other tennis, sports, and entertainment products. Any "injury" to Plaintiffs does not reflect any reduction in "interbrand" competition. Second, likewise, Plaintiffs cannot claim any reduction in their own ability to "compete." Third, if anything, Plaintiffs want to maintain the benefits of Hamburg's intrabrand position *vis a vis* other ATP tournaments, having been propped up by ATP's existing tour structure and rules. Indeed, Plaintiffs urge that ATP should <u>ignore</u> current market conditions – *i.e.* that the popularity of tennis has declined in Germany, but risen in Spain and Asia – and economic realities – *i.e.* that Hamburg has been losing money for years (DX 5) – and instead protect – give "priority" to – incumbent, traditional events over newer, commercial events. DX 12; DX 100. Such considerations have no place in an antitrust case. The absence of any "antitrust injury" compels summary judgment on each of the antitrust claims.[5]

---

[5] Plaintiffs' definition of the "relevant market" is doomed for the same reason. Plaintiffs' expert posits that the "relevant market" is tournaments in which more than 50% of top men's players generally play. Zimbalist at 7-8. As in *Ky. Speedway, supra* n. 2, the definition can be excluded as lacking any sound economic basis. The definition also is patently circular: the number of top players who play in a tournament within a tour is largely dictated by the "player commitment" rules that Plaintiffs now purport to attack – but which previously steered top players to Hamburg.

### III. Plaintiffs' State Law Claims Also Fail

<u>Fiduciary Duty Claims</u>: Plaintiffs' "fiduciary duty" claims essentially rehash their antitrust attack on ATP's restructuring plan. There is no evidence that ATP's restructuring is the product of bad faith or gross negligence, nor that it is "irrational" – the proof required to set aside the business judgment rule. *Brehm v. Eisner*, 746 A.2d 244, 263-64 (Del. 2000); *Oberly v. Kirby*, 592 A.2d 445, 462 (Del. 1991).[6] The record shows that ATP's restructuring during more than a year of analyses and internal debates.[7] Any disagreement as to merits of the ATP Board's eventual decision are "foreign to the business judgment rule." *Brehm*, 746 A.2d at 264.[8]

<u>Tortious Interference</u>: Plaintiffs fail to identify any contract or business opportunity that has been impaired as a result of ATP placing the Hamburg tournament in the second "tier" beginning in 2009. Plaintiffs' existing sponsorship agreements remain unaffected by the upcoming restructuring. GvW at 282-83, 398; CS at 99-100; AK at 107; UK at 107, 241-244.

<u>Conversion</u>: Plaintiffs also have no basis to claim that ATP's restructuring is a "conversion" of Plaintiffs' "ATP Membership." ATP tournament members in good standing have the right to perpetual membership in ATP and participation in the tour. ATP Bylaw 5.7. There is no "right," however, for Plaintiffs perpetually to remain in the "top-tier" of the tour. *Cf.* FAC 214. The ATP Bylaws expressly give ATP the unilateral right to recategorize tournaments. ATP Bylaw 12.9.[9] Indeed, Plaintiffs have expressly acknowledged – in binding written agreements – that ATP has "sole discretion" to reclassify and schedule the Hamburg tournament. DX 32; DX 54; DX 56. There is no "conversion" of an interest that Plaintiffs never had.

\* \* \*

For all of the above reasons, Defendants respectfully request permission to move for summary judgment dismissing each of Plaintiffs' claims in their entirety.

Respectfully submitted,

Philip Trainer, Jr.

cc: Clerk of the Court (by electronic filing/hand delivery)
C. Barr Flinn, Esq. (by electronic filing/hand delivery)
Robert D. MacGill, Esq. (by e-mail)

---

[6] Despite the derivative nature of their claims (*i.e.* violating the non-profit status of the corporation and alleged "self-dealing"), Plaintiffs made no pre-suit demand on ATP and do not allege excuse of this requirement. Plaintiffs also claim no money damages on these claims.

[7] The business judgment rule applies when a director resolves conflicting member interests, even if the director arguably is in a benefitted class, such as Plaintiffs allege concerning Director Pasarell. *Solomon v. Armstrong*, 747 A.2d 1098, 1118 (Del. Ch. 1999); *Gilbert v. El Paso Co.*, 1988 WL 124325 at \*9-10 (Del. Ch.), aff'd 575 A.2d 1131 (Del. 1990).

[8] Certain of the fiduciary duty claims also fail as to certain of the individual directors because, even if there were any merit to the claim, those individuals were not even members of the ATP Board at the time of the alleged breach.

[9] Given this right, Plaintiffs' claim that ATP pre-determined to recategorize Hamburg and subject it to a sham application process is irrelevant (and wrong).