# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

February 15, 2008

The Honorable Gregory M. Sleet  
United States District Court  
844 King Street  
Wilmington, DE 19801

**BY HAND DELIVERY  
AND ELECTRONIC FILING**

Re:   Deutscher Tennis Bund, et al. v. ATP Tour, Inc., et al., C.A. No. 07-178-GMS

Dear Chief Judge Sleet:

Defendants submit this reply in response to Plaintiffs' February 8 letter and in further support of Defendants' request to move for summary judgment dismissing Plaintiffs' claims.

Plaintiffs' letter underscores that this case is an ideal candidate for summary judgment. While Plaintiffs' lawyers and proffered experts offer shifting theories of "competition," "relevant markets," and the supposed "cartel," the actual record evidence does not support their broad-brush theories – and more often than not contradicts them. For example, Plaintiffs' submissions portray Plaintiffs as wanting to "compete" with the ATP Tour, but Plaintiffs' witnesses testified to the opposite – that Plaintiffs want to be a part of ATP's tiered structure, as they are now. And whereas the pleadings purport to object to ATP's restructuring and rules as unlawful "agreements," Plaintiffs' witnesses testified that their real beef is that they want more agreement – "consensus" – within the ATP membership, not less, and that they want structured calendars, ranking points, player commitments, etc. This chasm between the lawyers' theories and the actual evidence cries out for summary judgment to avoid a lengthy and unnecessary trial.

**Antitrust Claims**:  Plaintiffs do not actually dispute any of the facts (outlined in our 2/8/08 ltr. at 2) showing that ATP's restructuring will expand output, increase player compensation, and increase costs to the supposed "cartel" members – the exact opposite of what a "cartel" controlling players and tournaments would do. Indeed, Plaintiffs admit that ATP's plan will substantially increase player compensation. Pltfs. ltr. at I(1). Plaintiffs' legal argument only shows this is an issue for summary judgment. Likewise, any testimony concerning "competition" among ATP tournaments spoke only to "competition" within the ATP Tour structure – *i.e.* intrabrand competition. These undisputed facts and others (and Plaintiffs' actual testimony), compel dismissal of Plaintiffs' claims, including under a Rule of Reason analysis.[1]

---

[1] Plaintiffs' wrongly imply that the Rule of Reason precludes summary judgment. Where, as here, the material facts are undisputed, courts dismiss such claims on summary judgment, including challenges to intraleague rules and structures. *See, e.g., Orson v. Miramax*, 79 F.3d 1358, 1370 (3d Cir. 1996) (summary judgment dismissing antitrust claims); *Toscano v. PGA*, 201 F. Supp.2d 1106 (E.D. Cal. 2002) (summary judgment dismissing antitrust challenge to tour media rights, scheduling, and player eligibility rules); *see also Toscano*, 258 F.3d 978 (9th Cir.

Again, as reflected in *Copperweld*, *Dagher*, and a host of other cases, "the primary concern of antitrust law" is "interbrand," not "intrabrand," competition. *Continental*, 433 U.S. at 52 n. 19.

Plaintiffs also do not refute Defendants' showing that summary judgment is proper because Plaintiffs' "relevant market" definition is arbitrary and circular. Plaintiffs' definition of "top-tier" tournaments based on player participation rates ignores that participation in a "top tier" tournament is itself largely dictated by "player commitment" rules that Plaintiffs now attack, but that previously ensured that the Hamburg tournament had top players. Plaintiffs' claim that Hamburg is a "top-tier" tournament is based on historical player participation rates that resulted from "player commitment" rules, not unfettered "competition" among ATP Tournaments. This is but one example of why summary judgment is appropriate and will avoid trial of Plaintiffs' hopelessly confused and contradictory theories.

Plaintiffs themselves – as opposed to their lawyers and experts – embrace player commitment rules as a benefit to "top-tier" tournaments and the Tour. While Plaintiffs' submissions here purport to assail such rules, the record evidence is that Plaintiffs (a) urged ATP to adopt a mandatory, "8 of 8" commitment for top-tier tournaments (DX 26 at 2, demanding "mandatory player commitment for ALL of the events") and (b) want a "top-tier" position for Hamburg with the benefit of "the player commitment that is being proposed for the 1000 events starting in 2009" and being "the only event during its tournament week" (GvW at 386:8-387:8).

As we explained in our first letter, Plaintiffs' pre-lawsuit support for and insistence on a "tiered" structure, player commitments, pooling, etc., as well as Plaintiffs' current desire to be part of the ATP Tour structure (not compete with it) and insistence on more (not less) intrabrand structures precludes any claim of "antitrust injury," let alone recovery of treble damages. *See, e.g. Sullivan*, 34 F.3d at 1107 (cited by Plaintiffs) (plaintiff's "equal involvement" in disputed policies was "complete defense"). Also, Plaintiffs must prove an injury of the "type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Brunswick*, 429 U.S. at 489. Because Plaintiffs seek the protection of individual "competitors," and not "competition" – meaning interbrand competition – there is no antitrust injury and, thus, dismissal is required. *Tunis Bros.*, 952 F.2d at 728 (3d Cir. 1992) (cited by Plaintiffs) (dismissing antitrust claims; no injury arising from harm to interbrand competition).[2]

Finally, with respect to ATP's status as an integrated entity (whether as a "single entity," "joint venture," or otherwise sufficiently integrated organization), Plaintiffs cite (a) outdated, inapposite cases that pre-date the Supreme Court's seminal decision in *Copperweld* (1984), not to mention its more recent extension of *Copperweld* in *Dagher* (2006),[3] (b) cases that expressly

---

2001) (affirming summary judgment dismissing antitrust claims); *Rothery Storage v. Atlas Van Lines*, 792 F.2d 210 (D.C. Cir. 1986) (affirming summary judgment dismissing claims).

[2] Plaintiffs reference possible testimony from "non-deposed officers of plaintiffs." Pltfs. ltr. at n. 4. Defendants deposed the officers identified in Plaintiffs' initial disclosures. Testimony from undisclosed officers is precluded under at least FRCP 26 and the Coordinated Scheduling Order.

[3] *Los Angeles Mem. Coliseum*, 726 F.2d 1381 (9th Cir. 1984); *N. Am. Soccer*, 670 F.2d 1249 (2d Cir. 1982); *but see id.*, 459 U.S. 1074, 1077-78 (Rehnquist, J. dissent from denial of cert.) ("NFL owners are joint ventures who produce a product, professional football, which competes with other sports and other forms of entertainment in the entertainment market. Although

declined to decide whether the defendant was a "single entity,"[4] and (c) cases that relied on an overly restrictive reading of *Copperweld* and other precedent.[5] *Bulls II* and the other cases cited by Defendants are in line with the Supreme Court's functional focus on intrabrand versus interbrand competition, as shown in its recent decision in *Dagher*. In any event, the actual record facts of ATP's integrated structure and the interdependence of its tournaments are undisputed. The Court, therefore, will determine how the law applies to those facts.

**Fiduciary Duty**: Plaintiffs claim that the "action challenged here" is ATP's restructuring. Plaintiffs' claims are thus derivative: they cannot prevail absent "injury to the corporation" – *i.e.* that the plan is bad for ATP's membership as a whole, not just these particular Plaintiffs. *Tooley*, 845 A.2d at 1036 (Del. 2004). In any event, the restructuring is protected by the business judgment rule. With respect to Plaintiffs' claim that Mr. Pasarell's vote was "interested," the testimony does not establish that he will materially benefit from the restructuring. *See* Pltf. ltr. at 5, n. 6 ("interest" requires personal, material benefit to director). The tournament in which Mr. Pasarell indirectly holds only a 24% interest, Indian Wells, already had an agreement to be in the ATP's highest tier. That agreement pre-dates the current Board, was approved by then-disinterested directors, and was executed before the three year statute of limitations that governs here. Plaintiffs' argument also proves too much. Any change in ATP's rules and structures "affects" tournaments, including Indian Wells. It cannot be that Mr. Pasarell, who is on the Board as a tournament representative, is disqualified from voting on all such core matters.

**Tortious Interference and Conversion**: Plaintiffs do not identify any business relationship lost due to ATP's restructuring. The testimony Plaintiffs cite confirms sponsors are renewing or in negotiations; no sponsor has terminated an agreement. On the supposed "conversion" of ATP Membership "rights," Plaintiffs do not dispute that the principal document embodying any intangible "rights" – the ATP Bylaws – does not grant classification or calendar slots in perpetuity. Plaintiffs ignore their recent written contracts acknowledging that ATP has "sole discretion" to reclassify and schedule the Hamburg tournament. There is no "conversion" of intangible rights that have not been reduced to a written instrument. *Carlton Inv.*, 1995 WL 694397, at *16 (Del. Ch. 1995) (cited by Plaintiffs) (dismissing conversion claims).

Respectfully submitted,

/s/ Philip Trainer, Jr. (#2788)

Philip Trainer, Jr. (#2788)

cc:    Clerk of Court (by e-filing/hand); Mr. Flinn (by e-filing/hand); Mr. MacGill (by e-mail)

---

individual NFL teams compete with one another on the playing field, they rarely compete in the market place. . . . If the teams were entirely independent, there could be no consistency of staffing, rules, equipment, or training. All of these are at least arguably necessary to permit the league to create an appealing product in the entertainment market.").

[4] *Fraser*, 284 F.3d at 59 (not reaching *Copperweld*; defense verdict under rule of reason); *St. Louis Conv. & Visitors*, 154 F.3d at 864 n. 9 (not reaching single entity; defense judgment for lack of antitrust injury: "The Sherman Act does not require competitive bidding: it prohibits unreasonable restraints on competition."); *but see Mt. Pleasant v. Assoc. Elec. Coop.*, 838 F.2d 268 (8th Cir. 1988) (treating electrical cooperative as a single firm).

[5] *McNeil*, 790 F. Supp. 871, 880 (D. Minn. 1992); *Sullivan*, 34 F.3d 1091, 1099 (1st Cir. 1994).