# YOUNG CONAWAY STARGATT & TAYLOR, LLP

C. BARR FLINN
DIRECT DIAL: (302) 571-6692
DIRECT FAX: (302) 576-3292
bflinn@ycst.com

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

February 15, 2008

**REDACTED – PUBLIC VERSION**

The Honorable Gregory M. Sleet
Chief Judge
United States District Court for the District of Delaware
844 North King Street, Lockbox 19
Wilmington, Delaware 19801

Re:   *Deutscher Tennis Bund, et al v. ATP Tour, Inc. et al.*
      Civil Action No. 07-178 (GMS)

Dear Chief Judge Sleet:

Plaintiffs respectfully submit that trial, not summary judgment, is the most just, expedient and efficient way to address all of these issues. The parties may move for, and the Court may grant, a Fed.R.Civ.P. 50 directed verdict if only one legal conclusion can be drawn from the evidence as to any count at trial. *See Los Angeles Memorial Coliseum Comm'n v. NFL*, 726 F.2d 1381 (9th Cir. 1984) (upholding grant of directed verdict to plaintiffs on NFL's claim that it was a single economic entity for purposes of § 1 analysis). Regardless, in the event the Court authorizes filing of motions for summary judgment, as set forth in Plaintiffs' Feb. 1, 2008 letter and below, Plaintiffs are entitled to summary judgment as to their Sherman Act, § 1 and breach of fiduciary duty claims.

I.   **Trial Is The Most Just, Economic and Expeditious Way To Address The Issues Before The Court.**

The record evidence in this matter includes nearly one million pages of documents, testimony from more than thirty fact witnesses, and the reports and testimony of five experts. Questions of market definition, antitrust injury and the consideration of anticompetitive effects or alleged pro-competitive justifications are all questions of fact. *Le Page's, Inc. v. 3M*, 324 F.3d 141, 168-69 (3d Cir. 2003) (antitrust injury is question of fact for jury); *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 952 F.2d 715, 722 (3d Cir. 1991) (market definition is question of fact for jury); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust*, 906 F.2d 432, 449 n.15 (9th Cir. 1990) (procompetitive justifications are question of fact for jury); *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 899 F.2d 951, 973-74 (10th Cir. 1990) (pro- and anticompetitive effects are questions of fact for jury); *Graphic Prods. Distribs., Inc. v. ITEK Corp.*, 717 F.2d 1560, 1575-76 (11th Cir. 1983) (procompetitive justifications are question of fact for jury).

Plaintiffs respectfully submit that it will be most just, efficient and inexpensive for the Court to resolve the claims at the ten-day trial set to begin on July 21, 2008. Nevertheless, Plaintiffs are entitled to partial summary judgment on their § 1 and fiduciary duty claims, and such partial summary judgment is procedurally correct. *See* Fed. R. Civ. P. 56; *Lomax v. Nationwide Mut. Ins. Co.*, 964 F.2d 1342 (3d Cir. 1992) (remanding for entry of partial summary

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Gregory M. Sleet
Chief Judge
February 15, 2008
Page 2

judgment in favor of plaintiff). Plaintiffs reserve their right to seek partial summary judgment in the event that such motions are deemed appropriate by the Court, but Plaintiffs again respectfully submit that such motions would here be inappropriate pursuant to Fed.R.Civ.P. 1 and 56.

### II.   Summary Judgment Is Appropriate On Count I.

The Brave New World ("BNW") is illegal *per se*. "[T]he likelihood that horizontal price and output restrictions are anti-competitive is generally sufficient to justify application of the per se rule without inquiring into the special characteristics of a particular industry." *NCAA v. Bd. of Regents of University of Oklahoma*, 486 U.S. 85, 101 n.21 (1984). Generally, courts have been hesitant to apply the *per se* analysis to sports leagues because some horizontal restrictions, *i.e.*, the rules of the game, are necessary for the product's existence. *Id.* at 101. Horizontal restrictions, however, are not necessary to the existence of professional tennis. In fact, men's professional tennis existed from the late 1960's to the mid 1970s without a centralized governing body.

Second, Defendants have admitted that they have taken artificial, monopolistic control of the relevant markets. Yesterday, Defendants' economic expert testified that: [REDACTED]

Third, Plaintiffs have suffered antitrust injury. It is undisputed that the ATP--not by competition but by legislative fiat--is channeling players to a small subclass of its membership, thereby precluding Hamburg and Doha from competing for player services, and that this will have a negative effect on their ability to compete in the relevant markets, *i.e.*, that Plaintiffs have suffered an antitrust injury. *See Tunis Bros.*, 952 F.2d at 728.

Fourth, the express intent of the ATP in requiring the pooling of broadcast rights is to artificially inflate the value of those rights and preclude competition with the ATP's "Premium Tour," in which the ATP has a financial interest and which includes cartel members such as Madrid and Shanghai [REDACTED] Again, this disadvantage is not a result of proper competitive development but rather of the ATP's legislated top-down market fiats. As such, it is illegal pursuant to the antitrust laws of the United States.

### III.  Fiduciary Duty.

Defendants' assertions regarding Plaintiffs' fiduciary duty claims are legally and factually incorrect, for the specific reasons which follow. *See also* Plaintiffs' Resp. Ltr. at 5 n.6.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Gregory M. Sleet
Chief Judge
February 15, 2008
Page 3

- The undisputed record evidence demonstrates a long line of self-dealing transactions between the ATP and Pasarell, a director since the ATP's inception. These culminate in benefits accruing specifically to his tournament under the BNW, for which he voted, including guaranteed player participation and increased revenue. Defendants' letter focuses solely on the long-term sanction agreement between Pasarell's Indian Wells tournament and the ATP, arguing that it was executed outside the applicable statute of limitations. Plaintiffs, however, have not brought a specific action challenging that specific agreement. Rather, Plaintiffs timely seek relief from the self-dealing transactions relating to the BNW, which reflect the pattern of special treatment afforded by the ATP to board member Pasarell and his tournament over a number of years through a series of improper financial transactions and self-dealing conduct.

- Defendants' letter reinforces Plaintiffs' argument that they are channeling player services only to support "top tier" tennis, including Pasarell's Indian Wells event, to the detriment of the non-top-tier events. 

- Defendants argue that directors acting within the scope of their agency may vote to breach a corporation's contract without incurring liability. Here, however, the directors' vote intentionally to downgrade Hamburg, given their knowledge of the TPL agreement's prohibition against such a downgrade, fell outside the scope of their agency and constituted a breach of their fiduciary duties, because it was not "entirely fair" to all members of the ATP. See *Weinberger v. UOP*, 457 A.2d 701, 710 (Del. 1983).

- Defendants' insistence that they were entitled to award a "500" sanction to the Dubai tournament instead of the Doha tournament ignores the context in which the selection occurred. The ATP Tour announced that the applications would be subjected to an "open, fair, and transparent bidding process." The undisputed material facts demonstrate that, to the contrary, the process entailed a secret negotiation between the ATP and the cartel-owned, preferred Dubai tournament to permit Dubai the opportunity to improve its application over the superior Doha application in violation of the methodology the ATP explicitly represented to its fiduciaries would govern the application process.

Respectfully submitted,

C. Barr Flinn (No. 4092)

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
The Honorable Gregory M. Sleet
Chief Judge
February 15, 2008
Page 4

cc:   Clerk of the Court (Redacted version by electronic filing)
      Philip Trainer, Jr., Esquire (Redacted version by e-mail )
      Bradley I. Ruskin, Esquire (by e-mail)

DB02:6564362.1                                                              066145.1001

# EXHIBITS A AND B

## REDACTED IN THEIR ENTIRETY