IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------- X
DEUTSCHER TENNIS BUND (GERMAN      :
TENNIS FEDERATION), ROTHENBAUM    :    C.A. No. 07-178-GMS
SPORT GMBH, and QATAR TENNIS      :
FEDERATION,                        :
                                   :
               Plaintiffs,         :
                                   :
     against                       :
                                   :
ATP TOUR, INC., ETIENNE DE VILLIERS, :
CHARLES PASARELL, GRAHAM PEARCE,   :
JACCO ELTINGH, PERRY ROGERS, and IGGY :
JOVANOVIC,                         :
                                   :
               Defendants.         :
------------------------------- X
```

**DEFENDANTS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE
EXPERT OPINIONS PROFFERED BY CHARLES ELSON**

ASHBY & GEDDES
Philip Trainer, Jr. (I.D. #2788)
Carolyn S. Hake (I.D. #3839)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
ptrainer@ashby-geddes.com
chake@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

Bradley I. Ruskin
Colin A. Underwood
Jennifer R. Scullion
Evan S. Greene
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036-8299
(212) 969-3000

Dated: May 13, 2008

{00216375;v1}

Pursuant to Federal Rules of Evidence 402, 403, 702 and the *Daubert* standard, defendants respectfully move to exclude the opinion testimony proffered by plaintiffs' corporate governance expert, Charles Elson ("Elson"), under *Daubert* and Fed. R. Evid. 402, 403, and 702.

## PRELIMINARY STATEMENT

ATP Tour, Inc. ("ATP") operates a worldwide men's professional tennis tour. Plaintiffs are members of ATP and currently operate a tennis tournament in Hamburg, Germany. ATP decided to restructure the tour beginning in 2009 in order to make it more attractive to consumers, and to better compete with other tennis, sports, and entertainment products. The new structure is designed to create a more coherent annual-season tournament calendar, expand ATP's reach into the growing sports market in Asia, strengthen its top tiers, increase player prize money, enhance player commitments, enhance marketing and production of the tour, and encourage significant investment by ATP members in tournament facilities. As part of the new tour structure, ATP has determined to place the Hamburg tournament into the tour's second tier as of 2009. (The top two tiers comprise approximately the top third of the tour.)

Plaintiffs have brought claims for breach of fiduciary duty against ATP and its directors, alleging that, through the creation and implementation of the restructuring plan (and/or through various other actions bearing no relationship to the restructuring), defendants have violated their duties of loyalty and due care. In support of these claims, plaintiffs have proffered the expert testimony of Elson, who submitted a report purporting to set forth the "generally accepted customs and practice for officers and directors of Delaware corporations." (Ex. 1, p. 3.)[1] Although Elson expressly recognizes that "[c]onclusions as to scope and nature of fiduciary duties of officers and directors are the exclusive province of the Court," (*id.* at 2-3), his report is

---

[1] Citations to "Ex.__" refer to exhibits attached to and submitted with this memorandum of law.

nothing more than an effort to instruct the Court and jury on his understanding of the legal standards of fiduciary duty. All Elson does in his report is state propositions of law. He does not even attempt to make any application of what he describes as the general standards of "custom and practice" (which merely track the dictates of the law) to any specified conduct whatsoever, let alone to the facts of this case. Indeed, it appears that he did not even review any record evidence in connection with reaching his opinions.

Given his obvious attempt to usurp the role of the Court in instructing the jury as to the law and his complete failure to relate his "opinions" to any of the facts of the case, Elson's proposed testimony is irrelevant, misleading, needlessly cumulative, and of no possible assistance to the jury, and should be excluded under *Daubert* and Rules 402, 403, and 702.

## ARGUMENT

Under the "fit" component of Fed R. Evid. 702, expert testimony must assist the trier of fact in understanding the evidence or determining a fact at issue in the case. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993); *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000). The "[a]dmissibility [of expert testimony] depends in part upon the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case." *Oddi*, 234 F.3d at 145 (citation omitted). This requirement ensures that the expert's opinions are relevant, and thus helpful to resolving factual disputes at issue. *Daubert*, 509 U.S. at 591; *cf.* Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible.").

Moreover, experts are not permitted to render opinions purporting to define legal standards, since such testimony would usurp the court's pivotal role in explaining the law to the jury. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217-218 (3d Cir. 2006) (expert not

permitted to testify as to what was required under federal securities law); *see also In re Intel Corp. Microprocessor Antitrust Litig.*, 2007 WL 4323007, at *4 (D. Del. Dec. 6, 2007) (excluding expert declarations that merely provided legal interpretations of Fed R. Civ. P. 23); *Pfizer Inc. v. Teva Pharm. USA, Inc.*, 2006 WL 3041097, at *2 (D.N.J. Oct. 26, 2006) (precluding expert testimony explicating patent law generally).

Here, Elson's proposed testimony fails to meet these evidentiary requirements. His report sets forth seven "opinions" that essentially track Delaware's legal standards for breach of fiduciary duty claims — but Elson fails to apply or connect these "opinions" to any facts or record evidence. As such, Elson is circuitously and inappropriately attempting to define the law that purportedly governs defendants' conduct as directors of ATP. Although Elson couches his opinions in the language of "generally accepted custom and practice," he plainly seeks to infringe upon the Court's exclusive domain of setting forth and explaining the law to the jury. For example, Elson's "Opinion 3" provides that:

> "It is generally accepted custom and practice for the directors of a corporation not to place their personal interests, or the interests of persons they are affiliated with personally or in business, ahead of those of the non-profit corporation and its members."

(Ex. 1, p. 4.) This "opinion" is nothing more than a roundabout attempt to instruct the jury as to Delaware's legal standard for the fiduciary duty of loyalty.[2]

Given Elson's complete failure to provide any meaningful context for this "opinion" — by applying it to actual facts at issue in this case, or to hypothetical or illustrative conduct — the proposed testimony amounts to nothing more than an assertion that it is "generally accepted custom and practice" for corporate directors to follow the requirements of the law. Such a

---

[2] The remainder of Elson's report follows the same format. Elson sets forth six other "opinions" tracking various purported components of Delaware's fiduciary duty standards for corporate directors and officers, and simply proclaims that it is "generally accepted custom and practice" for directors and officers to adhere to these standards.

proposition is not in dispute, and is not relevant to this lawsuit. Whether or not Delaware corporate directors generally adhere to their legal duties has no probative value concerning the issue of whether defendants complied with their fiduciary obligations in designing and implementing ATP's 2009 restructuring plans.

Elson's opinion cannot possibly assist the jury in performing its task of understanding and weighing the evidence at trial. He is simply trying to substitute himself for the Court as the legal instructor to the jury. Permitting Elson to do so creates a serious risk of confusing the jury, and will needlessly delay the trial. *See In re Intel Corp.*, 2007 WL 4323007, at *4 ("The prohibition against allowing expert witnesses to opine on legal issues is most significant in the context of a jury trial where such opinions may confuse the jury"); *Pfizer, Inc.*, 2006 WL 3041097, at *2 (expert opinions approximating legal argument hinder the court by unnecessarily prolonging trial with "non-evidential testimony").[3]

Indeed, highly similar expert opinions have been disregarded as providing virtually no benefit to the trier of fact. In *In re The Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 740-41 (Del. Ch. 2005), the court held that plaintiffs' expert's effort to opine concerning fiduciary requirements imposed upon Delaware corporate directors — by "couch[ing] her opinion in terms of custom and practice" — was of "very little, if any" value to the court. The court noted that "the relevant question is not whether the defendants complied with the custom and practice of other Delaware corporations during the relevant time frame, but whether they complied with their fiduciary duties." *Id.* at 741.

---

[3] Accordingly, even if it were relevant to any issues in the case (it is not), Elson's testimony should be excluded under Rule 403 since its probative value would be substantially outweighed by its likelihood of misleading the jury and wasting the Court's time.

Elson's proposed testimony fails to provide even the minimal value attributed to the *Walt Disney* expert testimony, as Elson does not set forth any actual or hypothetical "customs and practices" of Delaware corporate directors, or opine as to whether defendants' action complied with such "customs and practices." Instead, Elson's report sets forth a series of purported legal standards dressed-up as the "custom and practice" of Delaware corporate directors.

In sum, Elson's proposed testimony is an improper attempt to usurp the Court's role of instructing the jury as to the law of fiduciary duty. Elson's opinions are completely disjoined from the facts of the case, and as such, are irrelevant and offer no prospect of aiding the jury in understanding the evidence. Moreover, allowing an expert to advise the jury as to the law bears a significant risk of confusing the jury, and will needlessly delay the trial.

## CONCLUSION

For all the foregoing reasons, defendants respectfully request that the Court grant their motion to exclude the expert opinions proffered by Charles Elson pursuant to Rules 402, 403, 702 and the *Daubert* standard.

                              ASHBY & GEDDES

                              */s/ Tiffany Geyer Lydon*

                              _____
Philip Trainer, Jr. (I.D. #2788)
Carolyn S. Hake (I.D. #3839)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
ptrainer@ashby-geddes.com
chake@ashby-geddes.com
tlydon@ashby-geddes.com

PROSKAUER ROSE LLP
Bradley I. Ruskin
Colin A. Underwood
Jennifer R. Scullion
Evan S. Greene
1585 Broadway
New York, NY 10036-8299
(212) 969-3000

*Attorneys for Defendants*

Dated: May 13, 2008

# EXHIBIT 1

Deutscher Tennis Bund (German Tennis Federation), Rothenbaum Sports GMBH, Qatar Tennis Federation

    Plaintiffs

v.

ATP Tour, Inc., Etienne de Villiers, Charles Pasarell, Graham Pearce, Jacco Eltingh, Perry Rogers, Iggy Jovanovic

    Defendants

## EXPERT REPORT OF CHARLES ELSON

January 14, 2008

    Counsel representing the German Tennis Federation ("GTF"), Rothenbaum Sports GmbH ("Rothenbaum,") and the Qatar Tennis Federation ("QTF") (collectively, the "Plaintiffs"), has engaged me on behalf of the Plaintiffs in the above referenced dispute between the Plaintiffs and the ATP Tour, Inc. and certain of its directors (collectively, the "ATP").

**I.    My Professional Background.**

    I am the Edgar S. Woolard, Jr., Chair in Corporate Governance and the Director of the John L. Weinberg Center for Corporate Governance at the University of Delaware. I formerly served as a Professor of Law at Stetson University College of Law in St. Petersburg, Florida from 1990 until 2001. My fields of expertise include corporations, securities regulation and corporate governance. I am a graduate of Harvard College and the University of Virginia Law School. I have been a Visiting Professor at the University of Illinois College of Law, the Cornell Law School, and the University of Maryland School of Law. Further, I am a Salvatori Fellow at the Heritage Foundation in Washington, D.C. and a member of the American Law Institute. I have written

extensively on the subject of boards of directors, and I am a frequent contributor on corporate governance issues to various scholarly and popular publications.

I served on the National Association of Corporate Directors' Commissions on Director Compensation, Director Professionalism, CEO Succession, Audit Committees, Strategic Planning and Director Evaluation, was a member of its Best Practices Council on Coping With Fraud and Other Illegal Activity, and presently serve on that organization's Advisory Council. I am Vice Chairman of the ABA Business Law Section's Committee on Corporate Governance and a formerly served as a member of its Committee on Corporate Laws. Additionally, I served as an adviser and consultant to Towers Perrin, the international human resource management consultants, a director of Circon Corporation, a medical products maker and Sunbeam Corporation, the consumer products manufacturer, Nuevo Energy Company, an independent oil and natural gas producer, the Investor Responsibility Research Center, a non-profit corporate governance research organization, Alderwoods Group, an international death care services provider, and am presently a member of the Board of Directors of AutoZone, Inc., the national automobile parts retailer and HealthSouth Corporation, a healthcare services provider. A current copy of my curriculum vitae is attached hereto as Exhibit A.

II.     **My Opinions And Conclusions.**

Officers and directors of a Delaware non-profit, membership corporation have fiduciary duties which will be enumerated in the Court's instructions and delineated in specifics in relation to any and all applicable duties of, *inter alia*, loyalty, good faith or due care. Conclusions as to scope and nature of the fiduciary duties of officers and

directors are the exclusive province of the Court and exceed the scope of my engagement and this report.

My experience as an academic, educator, lawyer and corporate director over 17 years has enabled me to ascertain generally accepted customs and practice for officers and directors of Delaware corporations. My opinions delineate the generally accepted customs and practices of officers and directors of a Delaware nonprofit corporation; the generally accepted practices for how a Board of Directors fulfills its purposes; the generally accepted practices of how a Board of Directors functions; the generally accepted practices for how officers fulfill their functions; and the generally accepted practices for how officers report to and work with a Board of Directors. Within this conceptual framework, my opinions are as follows:

**Opinion 1**: It is the generally accepted custom and practice that the management of a Delaware corporation is overseen by its Board of Directors. Officers generally operate the corporation on a day-to-day basis. The Board of Directors will oversee the actions of the officers as they carry out their responsibilities.

**Opinion 2**: It is generally accepted custom and practice for the directors of a corporation to act in accordance with a corporation's governing documents, corporate tax status and enumerated purpose.

To the extent directors act in favor of or take actions which violate a Delaware non-profit corporation's enumerated purpose(s); that contradict the corporation's governing documents; or that violate the corporation's tax status, such actions are inconsistent with generally accepted custom and practice in Delaware, unless the

purposes, governing documents and/or tax status are explicitly and appropriately amended.

**Opinion 3**: It is generally accepted custom and practice for the directors of a corporation to not place their personal interests, or the interests of persons they are affiliated with personally or in business, ahead of those of the non-profit corporation and its members. Stated another way, directors act, as a matter of general custom and practice, in a manner that is unselfish and that is intended to benefit the enterprise and its members rather than the officers and directors personally.

To the extent directors act in favor of or take actions which place their own personal interests, or the interests of persons they are affiliated with personally or in business, ahead of those of the corporation or its members, collectively or individually, such actions are inconsistent with generally accepted custom and practice in Delaware.

**Opinion 4**: It is generally accepted custom and practice for the directors of a corporation to be fully informed as to facts that are material to their oversight of the operation and management of the corporation. More specifically, it is generally accepted custom and practice of the directors to ensure that they obtain sufficient information so as to be reasonably informed as to the corporate structure, purpose, business activities, non-business activities, holdings, assets and liabilities of the corporation so as to be able to reasonably oversee management in their operation of the corporation.

To the extent directors fail to act so as to be fully and reasonably informed as to the corporate structure, purpose, business activities, non-business activities, holdings, assets and liabilities of the corporation so as to be able to reasonably oversee

management in their operation the corporation, such failure is inconsistent with generally accepted custom and practice in Delaware.

**Opinion 5:** Where a Delaware non-profit corporation provides information to a member, its membership, or some representative body thereof, whether in the context of submitting matters to the membership for approval, review and/or a vote or otherwise, it is generally accepted custom and practice for the directors of that corporation to assure themselves that the information is provided in a forthright and honest manner. In doing so the directors, or the officers acting under their supervision, as a matter of custom and practice, will refrain from providing information that the directors know or reasonably should have known was misleading or false in any material respect.

**Opinion 6:** It is generally accepted custom and practice for directors of a corporation to act in accordance with applicable law and to avoid knowing violations of law.

To the extent directors act in favor of or take actions that constitute knowing violations of law such actions are inconsistent with generally accepted custom and practice in Delaware.

**Opinion 7:** Where a director has a personal business or financial interest in a decision being contemplated by the Board of Directors, it is generally accepted custom and practice for that director to fully disclose such interest to the Board of Directors and to recuse him or herself from the decision making process relating thereto.

To the extent a director fails to disclose a personal business or financial interest in a decision being contemplated by the Board of Directors and/or fails to recuse himself

or herself from the decision making process relating thereto, such action is inconsistent with generally accepted custom and practice in Delaware.

**III.    Additional Information.**

My services on this engagement are billed at an hourly rate of $950 per hour, plus reasonable out-of-pocket expenses. This engagement has not been completed, so a disclosure of total compensation is not possible at this time. My compensation is not dependent upon my arriving at any specific opinions or conclusions during this engagement or on the outcome of this litigation.

This report is furnished solely for use in connection with the litigation of the matter *Deutscher Tennis Bund, et al. v. ATP Tour, Inc., et al.* and is not to be distributed to anyone else or used for any other purpose.

_____
Charles M. Elson

Edgar S. Woolard, Jr. Chair in Corporate Governance
Director of the John L. Weinberg Center for Corporate Governance
Weinberg   Center
104 Alfred Lerner Hall
University of Delaware
Newark, DE 19716-2709