IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEUTSCHER TENNIS BUND (GERMAN TENNIS FEDERATION), ROTHENBAUM SPORT GMBH, and QATAR TENNIS FEDERATION,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>ATP TOUR, INC., ETIENNE DE VILLIERS, CHARLES PASARELL, GRAHAM PEARCE, JACCO ELTINGH, PERRY ROGERS, and IGGY JOVANOVIC,<br><br>　　　　　Defendants. | C.A. No. 07-178-GMS<br><br>**TRIAL BY JURY DEMANDED** |

**PLAINTIFFS' MOTION *IN LIMINE* NO. 1
TO EXCLUDE EVIDENCE RELATING TO PLAINTIFFS' OWNERSHIP OF
TOURNAMENTS ON THE WOMEN'S TENNIS ASSOCIATION ("WTA") TOUR**

Pursuant to Federal Rules of Evidence 401, 402, and 403, Plaintiffs respectfully move this Court for an order *in limine* excluding all evidence of Plaintiffs' present or former ownership of tournaments on the Women's Tennis Association ("WTA") Tour, any participation in or acceptance of current or former WTA Tour rules or practices, or any agreements related thereto.

**PRELIMINARY STATEMENT**

Plaintiffs' lawsuit challenges the ATP Tour, Inc.'s ("ATP") Brave New World Plan, through which Defendants are attempting to (1) channel top men's professional tennis players to favored tournaments, thereby damaging all other consumers in the men's player services market; (2) create an artificial market for the sale of ATP "sanctions," which will subsume tournaments' membership rights; (3) bar entry into the relevant markets so that the ATP can sell its "sanctions" in a monopolistic, artificial marketplace; and (4) control output markets relating, *inter alia*, to sponsorships, broadcasters, and fans via input market controls and the pooling of broadcast and sponsorship rights. Plaintiffs seek, among other things, an award of damages for injuries caused by Defendants' conduct and other relief relative to the Brave New World Plan.

At trial, Plaintiffs anticipate that the ATP will attempt to avoid liability related to the Brave New World plan by introducing evidence relating to Plaintiffs' present and former ownership of WTA member tournaments.[1] By way of example, Defendants have proposed that information related to Plaintiffs' historical membership in the WTA, including Plaintiffs' acceptance of rule and calendar changes on the WTA Tour, be admitted as statements of fact.[2] Defendants have also reserved the right to use a minimum of 54 exhibits[3] related to Plaintiffs' involvement with the WTA Tour and have designated Larry Scott, the WTA Tour's current CEO, as a witness they intend to call at trial.[4]

The WTA has engaged in efforts to reform its calendar under a plan known as the Roadmap 2010 plan. Plaintiffs anticipate that the ATP will attempt to draw parallels between the Roadmap 2010 plan and the ATP's own Brave New World plan to argue that Plaintiffs have previously acquiesced to or participated in allegedly similar calendar reform activities. It is impossible to know whether such a comparison is appropriate, as a threshold matter, because the full details of the Roadmap 2010 plan are not in evidence in this litigation. More importantly, however, none of Plaintiffs' claims in this litigation are based in any way on their current or former ownership of WTA member tournaments. Further, settled precedent confirms that, no matter whether the WTA's Roadmap 2010 plan is legal or illegal, and no matter what involvement Plaintiffs may have had in the Roadmap 2010 plan, Defendants are precluded as a matter of law from introducing evidence relating to Plaintiffs' current or former ownership of

---

[1] Until 2004, Plaintiff Deutscher Tennis Bund ("DTB") held a membership in the WTA and operated a "Tier I" WTA tournament in Berlin, Germany. The DTB sold that membership to Plaintiff Qatar Tennis Federation ("QTF"), which currently operates the Berlin tournament. Additionally, the QTF also operates a "Tier II" WTA tournament in Doha, Qatar.

[2] *See* Exhibit 1 to Defendants' Proposed Final Pretrial Order at ¶¶ 48-56.

[3] Defendants have designated the following WTA-related documents, each identified by DTX number, as likely exhibits at trial: 525, 526, 527, 529, 530, 531, 532, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 545, 546, 547, 548, 549, 550, 551, 889, 910, 911, 1139, 1140, 1141, 1142, 1143, 1144, 1145, 1146, 1147, 1148, 1149, 1150, 1151, 1152, 1153, 1154, 1155, 1156, 1157, 1158, 1198, 1207, 1208, 1209, 1210, and 1222.

[4] *See* Exhibit 4(b) to Defendants' Proposed Final Pretrial Order at ¶ I.K.

WTA member tournaments as a defense in this matter. Accordingly, evidence relating to Plaintiffs' ownership of WTA member tournaments is irrelevant to the claims and defenses in this case and must be excluded.[5]

## ARGUMENT

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence that is not relevant is inadmissible. Fed. R. Evid. 402. Even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403; *see In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 783 (3d Cir. 1994) (affirming district court's exclusion of evidence under Rule 403).

Evidence relating to Plaintiffs' ownership of WTA member tournaments, as described above, has no tendency to make it less or more probable that Defendants, by their own actions, illegally reduced or conspired to reduce competition in markets relating to men's professional tennis in order to derive monopolistic proceeds and reduce output in the relevant markets. Regardless of the effect of Plaintiffs' relationship with the WTA or Plaintiffs' participation in the WTA's calendar reform plans, if any, Defendants have independent legal obligations not to violate the Sherman Act. Evidence relating to Plaintiffs' relationship with the WTA Tour also has no relevance to the calculation or amount of Plaintiffs' damages, which derive solely from the damages to Plaintiffs' interests in the Hamburg men's professional tennis tournament.

The only possible relevance of Plaintiffs' WTA tournament memberships or related agreements is in relation to Defendants' affirmative defense of "unclean hands." (ATP's Answer

---

[5] To the extent that evidence exists that tends to show that the WTA and the ATP have colluded, it is relevant to the present litigation, particularly as it may relate to the ATP's market power. The fact that Plaintiffs may own WTA tournaments has no cause or effect relating to any such collusion, however, and is thus wholly irrelevant.

to Amended Complaint, p. 23.) The defense of "unclean hands," however, is not a valid defense to antitrust liability. In *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*, 340 U.S. 211 (1951) (overruled on other grounds), the United States Supreme Court rejected the defense, holding that:

> If petitioner and others were guilty of infractions of the antitrust laws, they could be held responsible in appropriate proceedings brought against them by the Government or by injured private persons. The alleged illegal conduct of petitioner, however, could not legalize the unlawful combination by respondents or immunize them against liability to those they injured.

*Id.* at 214 (emphasis added). The United States Supreme Court later affirmed this holding, stating that "a plaintiff in an antitrust suit [can]not be barred from recovery by proof that he had engaged in an unrelated conspiracy to commit some other antitrust violation." *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 138 (1968) (overruled on other grounds); *see also Chrysler Corp. v. G.M. Corp.*, 596 F. Supp. 416, 419 (D.D.C. 1984) ("The public interest in preventing anticompetitive injury would be dampened tremendously if defendants were allowed to raise the defense of unclean hands in antitrust actions brought by private parties.").

Even if the WTA's Roadmap 2010 plan were to violate the antitrust laws (though the Roadmap 2010 plan is not at issue in this litigation), Plaintiffs' ownership of WTA member tournaments, or participation in agreements or acceptance of rules related thereto, would not bar them from recovery against the ATP for the ATP's own anticompetitive conduct. As the United States Supreme Court has stated:

> The Plaintiff who reaps the reward of treble damages may be no less morally reprehensible than the defendant, but the law encourages his suit to further the overriding public policy in favor of competition. A more fastidious regard for the relative moral worth of the parties would only result in seriously undermining the usefulness of the private action as a bulwark of antitrust enforcement. And permitting the plaintiff to recover a windfall gain does not encourage continued violations by those in his position since they remain fully subject to civil and criminal penalties for their own illegal conduct.

*Perma Life*, 392 U.S. at 138-39. Governing law confirms that the ATP cannot introduce evidence of Plaintiffs' involvement with the WTA Tour as a defense for its own anticompetitive

conduct in this litigation. *See Kiefer-Stewart Co.*, 340 U.S. at 214. Accordingly, because evidence of Plaintiffs' ownership of WTA member tournaments or participation in agreements related thereto is irrelevant to the available claims and defenses in this lawsuit, such evidence is inadmissible pursuant to Rule 402.

Further, even assuming *arguendo* that evidence relating to Plaintiffs' involvement with the WTA Tour was relevant to the claims or defenses properly before the Court (which it is not), the probative value of such evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. Evidence relating to Plaintiffs' involvement with the WTA would distract the jury from Defendants' anticompetitive conduct and would confuse the jury into believing that the WTA's unrelated conduct—the legality of which is not at issue in this case—or Plaintiffs' involvement therein somehow excuses Defendants' anticompetitive conduct. In light of these considerations, and in light of the fact that Plaintiffs' involvement with the WTA has no relevance to this litigation, this Court should enter an order excluding evidence relating to Plaintiffs' involvement with the WTA.

## CONCLUSION

For all of the foregoing reasons, and for each of them, Plaintiffs respectfully request that the Court grant their motion to exclude all evidence related to Plaintiffs' present or former ownership of tournaments on the WTA Tour, any participation in or acceptance of current or former WTA Tour rules and practices, or any agreements related thereto.

Dated: May 16, 2008
Of Counsel:
Robert D. MacGill
Hamish S. Cohen
Jennifer Westerhaus Adams
Matthew B. Barr
BARNES & THORNBURG LLP
(317) 236-1313

/s/ C. Barr Flinn
C. Barr Flinn, Esq. (No. 4092)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(P): (302) 571-6692;
E-mail: bflinn@ycst.com;

## CERTIFICATE OF SERVICE

I, James L. Higgins, hereby certify that on May 16, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Lawrence C. Ashby, Esquire
> Philip Trainer, Jr., Esquire
> Carolyn Hake, Esquire
> Ashby & Geddes
> 500 Delaware Avenue
> P.O. Box 1150
> Wilmington, DE 19899

I further certify that on May 16, 2008, I caused a copy of the foregoing document to be served by e-mail and hand delivery on the above-listed counsel of record and on the following in the manner indicated:

**BY E-MAIL**

> Bradley I. Ruskin, Esquire
> Jennifer R. Scullion, Esquire
> PROSKAUER ROSE
> 1585 Broadway
> New York, NY 10036

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
C. Barr Flinn (No. 4092)
Karen E. Keller (No. 4489)
James L. Higgins (No. 5021)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jhiggins@ycst.com

*Attorneys for Deutscher Tennis Bund (the German Tennis Federation), Rothenbaum Sports GMBH and Qatar Tennis Federation*

DB02:6004837.1                                                                                    066145.1001