IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------- X
DEUTSCHER TENNIS BUND (GERMAN :
TENNIS FEDERATION), ROTHENBAUM :
SPORT GMBH, and QATAR TENNIS :
FEDERATION, :
: **REDACTED**
: **PUBLIC VERSION**
Plaintiffs, :
: C.A. No. 07-178-GMS
against :
:
ATP TOUR, INC., ETIENNE DE VILLIERS, :
CHARLES PASARELL, GRAHAM PEARCE, :
JACCO ELTINGH, PERRY ROGERS, and IGGY :
JOVANOVIC, :
:
Defendants. :
------------------------------------- X

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 1
TO EXCLUDE EVIDENCE RELATING TO PLAINTIFFS' OWNERSHIP OF
TOURNAMENTS ON THE WOMEN'S TENNIS ASSOCIATION ("WTA") TOUR**

ASHBY & GEDDES

Philip Trainer, Jr. (I.D. #2788)
Carolyn S. Hake (I.D. #3839)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
ptrainer@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

Bradley I. Ruskin
Jennifer R. Scullion
Julie A. Tirella
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036-8299
(212) 969-3000

Dated: May 27, 2008

Defendants respectfully submit this opposition to Plaintiffs' Motion *In Limine* No. 1 concerning Plaintiffs' membership in the Sony Ericsson WTA Tour ("WTA").

## PRELIMINARY STATEMENT

Plaintiffs have been members and had an active role in the WTA, which operates a women's professional tennis circuit. Plaintiffs' motion seeks to exclude any evidence concerning their own role – and more broadly any evidence – concerning WTA[1] because that evidence contradicts Plaintiffs' positions on the most central issues in this case, namely: (1) the role and authority of a sports league to set its annual season calendar, control the format and structure of its events – including the creation of a tiered structure – and ensure for the benefit of the whole league that its top players are playing at its top events; (2) the market forces that are driving ATP's efforts to improve its calendar, format, structure, and tour product for consumers under its Brave New World ("BNW") plan; and (3) the reasonableness and pro-competitive nature of BNW and of ATP's decision to place the Hamburg tournament in the second-highest tier as of 2009. The evidence will show that Plaintiffs support WTA's similar "tiered" structure, Plaintiff QTF has embraced WTA's "Roadmap 2010" plan by agreeing to host WTA's year-end championship at which top players will be compelled to play under the plan, and Plaintiff DTB has reacted to the declining tennis market in Germany by choosing to sell off its tournaments in Hamburg and Berlin and making itself incapable of staging a top tier combined event.

Such evidence is not offered to show "unclean hands," but rather to show that Plaintiffs recognize the inherent role of such structures and rules in a professional sports league – directly contrary to the positions that they have staked out in this case. Plaintiffs have placed each of

---

[1] *See* MIL No. 1, page 2, n. 3 (seeking to exclude "WTA-related documents," including documents evidencing ATP's discussions with WTA and consideration of WTA's competitive response to market forces under WTA's proposed restructuring ("Roadmap 2010")).

1

these areas, and many others concerning WTA, directly at issue. Plaintiffs cannot hamstring Defendants' response to such allegations – nor can they preclude Defendants from educating the jury on the <u>facts</u> showing that Defendants' actions are the reasonable, pro-competitive, and entirely appropriate actions of a professional sports league trying to deliver a premium product in a highly competitive sports and entertainment market. Plaintiffs' motion should be denied.

## ARGUMENT

Relevance is broadly defined under Rule 401 as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Exclusion of relevant evidence under Rule 403 is exceptional and used "only sparingly since the evidence excluded is concededly probative." *Gallup v. Kenexa*, 2003 WL 22097920, at *1 (E.D. Pa., Sept. 2, 2003); *Software AG v. Bea Sys.*, 2005 WL 859266 at *2 (D. Del. Apr. 8, 2005) (exclusion even if irrelevant evidence "not necessarily worth the court's time . . . unless it is prejudicial, time consuming, etc.").

Here, evidence concerning the WTA and Plaintiffs' memberships is directly relevant to key issues for the jury. Plaintiffs cannot deny this as they have placed the WTA directly at issue.

First, fatal to their entire motion, <u>Plaintiffs</u> offer no fewer than 15 trial exhibits directly relating to their WTA memberships. *See* **Ex. A**. These include agreements under which DTB sold its "Tier I" WTA tournament to QTF.[2] Those agreements are compelling proof that:

> (1) As they did in agreements concerning their ATP tournaments, Plaintiffs acknowledged in their WTA agreements that, in a Tour structure, tournaments are not automatically guaranteed a permanent specific calendar date or "Tier category" sanction;
>
> (2) DTB has divested itself of all WTA tournaments and both DTB and QTF agreed to move the only German-based "Tier I" WTA event out of Germany.[3] This (a) confirms

---

[2] "Tier I" has been the highest level of tournament under the WTA's nomenclature, equivalent to an ATP Masters or 1000 event. The Combined Events that ATP and WTA have created in response to consumer demand are combinations of WTA "Tier I" and ATP Masters 1000.

2

the decline of the German tennis market, (b) raises questions as to DTB's long term commitment/ability to present the highest tier professional tennis in Germany, (c) shows that ATP correctly decided on the merits to place Hamburg in the second highest, instead of the highest, tier beginning in 2009; and (d) demonstrates that Plaintiffs were not even in a position to present a Combined Event in Germany in 2009,[4] powerfully rebutting their attacks on ATP's decision to award a Combined Event in 2009 to Madrid;

(3) The German tennis market is declining, a fact that also goes to damages (should damages even reach a jury). QTF's desire to host a WTA Tier II event in Germany, however, rebuts the claim that a second highest tier event is not supportable in Germany.

Second, Plaintiffs directly challenge the legitimacy of ATP and WTA's "creation of four combined (men's and women's)" events. First Amended Complaint, ¶46(b). The WTA evidence will show that, based on market research, ATP and WTA found that consumers want more Combined Events. Combined ATP/WTA Events are integral to ATP's Brave New World and to WTA's Roadmap 2010, such that neither plan can be understood or evaluated in isolation. Plaintiffs' principal complaint here is that ATP scheduled the Madrid Combined event for mid-May beginning in 2009 and recalendared the Hamburg event to July as a second-highest tier event. Evidence from WTA about why Madrid was an exceptional choice for a Combined Event – and why it was appropriate to place the event in mid-May – will show that ATP's decision was reasonable and pro-competitive – not based on self-interest or favoritism as Plaintiffs claim.

Third, Plaintiffs intend to try to prove that "WTA and ATP have colluded" (MIL No. 1, n. 5). Plaintiffs cannot attack the ATP/WTA relationship, yet exclude evidence of their own, including their <u>embrace</u> of WTA's "Roadmap 2010" featuring (a) the very Combined Events that

---

[3] Evidence from WTA will show that, although WTA initially rejected the request to relocate the Tier I event outside of Germany, as of 2009, the event will be in the Middle East, not Germany.

[4] Indeed, Plaintiffs did not even apply with either ATP or WTA to host a Combined Event.

3

they would now attack and (b) a QTF hosted year-end championship. QTF's hosting of the championship (where all top players must play) rebuts the attack on ATP's year-end event.[5]

Fourth, WTA's "Roadmap 2010" plan itself is directly relevant not to show estoppel, but to show (a) what ATP considered in designing its BNW, and, critically, (b) that another market participant, WTA, came to similar conclusions about what was needed to compete in the sports and entertainment market: a logical, structured season featuring a strong "top tier" of events at which top players will play in world-class venues, culminating in a year-end championship among all top players.[6] Under its Roadmap 2010, WTA's highest tier will consist of events in Madrid, China, Indian Wells and Miami – events that ATP also determined to place in its highest tier. It is relevant that WTA, like ATP, also chose to require all top players to play those events. Plaintiffs' memberships in WTA likewise will show their recognition of the inherent role that such tiers, calendar structure, player "commitments," branding, etc. play in a professional circuit – directly contradicting their attacks on ATP and BNW.

Fifth, as part of ATP's pro-competitive actions and the Directors' fiduciary duty of care, ATP considered WTA's proposed "Roadmap 2010" in connection with ATP's consideration of Combined Events[7] – which Plaintiffs also have put at issue. *See, e.g.*, Zimbalist Rpt. at 13-14, 32 (discussing "collaboration" of ATP/WTA and "impact" of Combined Events). Evidence concerning the reactions of another market participant to the competitive forces facing ATP is relevant to the antitrust and fiduciary duty claims. *See, e.g., White v. U.S.*, 372 US 253, 261

---

[5] *See* **Ex. B** (2/1/08 ltr. from Plaintiffs to Court) asserting that Defendants violated their fiduciary duties by "compelling the top players to play [in the Tennis Masters Cup] as part of the BNW" and attacking ATP's alleged "hope[] to yield a $24 to $30 million net profit." D.I. 109 at p. 4.

[6] Plaintiffs themselves sought to depose Mr. Scott, confirming the relevance of WTA. Mr. Scott was made available for deposition, although Plaintiffs chose not to proceed. Plaintiffs sought evidence concerning WTA, "Roadmap 2010," and Combined Events from many other witnesses.

[7] *See, e.g.*, DTX 195; DTX 532.

4

(1963) (rule of reason requires assessing facts "peculiar to the particular business"); *In re Walt Disney Deriv. Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005) (fiduciary duty requires care of a prudent man "in similar circumstances.").

Sixth, evidence from WTA also is relevant to: (a) <u>Expansion into China</u>: a key aspect of ATP's plan is to expand into China's exploding sports and entertainment market (as ATP's competitors, including the WTA and NBA, have done) by placing a Masters 1000 event in China. Evidence that WTA also views China as a critical, growing tennis market and also chose to place one of its highest tier events in China will show that ATP's decision was well-founded and pro-competitive; (b) <u>Market Definition</u>: evidence from WTA will show that, like ATP, WTA competes with other sports and entertainment events; and (c) <u>Market Power</u>: evidence from WTA will confirm that ATP does not have market power and that the Grand Slams drive the overall tennis calendar and command revenues that dwarf what the ATP or the WTA receive.

Evidence concerning WTA, Plaintiffs' WTA memberships, and "Roadmap 2010" will enlighten the jury on the context, basis for, and reasonableness of ATP's decisions and will directly rebut Plaintiffs' claim by virtue of their own conduct. That the evidence rebuts Plaintiffs' theories does not make it unduly prejudicial. *See Carter v. Hewitt*, 617 F.2d 961 (3d Cir. 1980). The evidence will assist, not "distract," jurors. Plaintiffs' WTA memberships and year-end event are undisputed. Evidence concerning WTA's "Roadmap 2010" plan will come in largely through one witness, WTA's Chairman/CEO, Larry Scott, who, as ATP's former COO, also will testify to certain historical facts concerning ATP.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion in its entirety.

                                        ASHBY & GEDDES

                                        */s/ Tiffany Geyer Lydon*

                                        _____
Philip Trainer, Jr. (I.D. #2788)
Carolyn S. Hake (I.D. #3839)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
ptrainer@ashby-geddes.com
chake@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel*:

PROSKAUER ROSE LLP
Bradley I. Ruskin
Jennifer R. Scullion
Julie A. Tirella
1585 Broadway
New York, NY 10036-8299
(212) 969-3000

Dated: May 27, 2008

6

# EXHIBIT A

### Exhibit A to Defendants' Opposition to Plaintiffs' Motion *In Limine* No. 1

### Plaintiffs' Trial Exhibits Concerning WTA Membership

| PTX | Plaintiffs' Description |
|---|---|
| 336 | Letter to Advanta Corporation from Georg von Waldenfels re: Sale of WTA full Tournament Class membership and Sanction Tier II A 10/16/02 (GTF00069049 - GTF00069056) |
| 337 | Sale Agreement between DTB and QTF 6/20/04 (GTF00069057 - GTF00069062) |
| 338 | Lease Agreement between QTF and DTB 6/20/04 (GTF00069023 - GTF00069028) |
| 365 | Sale Agreement between DTB and QTF 6/20/04 (GTF00069057 - GTF00069062) |
| 366 | Lease Agreement between QTF and DTB 6/20/04 (GTF00069023 - GTF00069028) |
| 455 | Lease Agreement between QTF and DTB 7/14/04 (GTF00084123 - GTF00084128) |
| 456 | Memorandum of Understanding between DTB and QTF 9/2/04 (GTF00082826 - GTF00082829) |
| 457 | Sale Agreement between DTB and QTF 7/6/04 (GTF00082877 - GTF00082881) |
| 458 | Letter to Sheikh Mohammad from Lawrence Scott 9/10/04 (GTF00082809) |
| 459 | Sale and Lease Agreement between DTB and QTF 6/20/04 (GTF00084170- GTF00084176) |
| 460 | Agreement for the Purchase of Rights (QFT00000119 - QFT00000131) |
| 461 | Sale Agreement between DTB and QTF 6/20/04 (GTF00069057 - GTF00069062) |
| 462 | Email from Irmtraud Richter to Severin Loffler re: Request for change 8/3/04 (GTF00082861 - GTF00082864) |
| 466 | Email from Irmtraud Richter to Ayman Azmy re: Request for change 8/3/04 (GTF00082857 - GTF00082860) |
| 467 | Letter from Georg von Waldenfels to Ayman Azmy re: Request for change 8/3/04 (GTF00082856) |

# EXHIBIT B

**REDACTED**