IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------- X
DEUTSCHER TENNIS BUND (GERMAN        :
TENNIS FEDERATION), ROTHENBAUM       :   C.A. No.  07-178 (GMS)
SPORT GMBH, and QATAR TENNIS         :
FEDERATION,                          :
                                     :
                    Plaintiffs,      :
                                     :
       against                       :
                                     :
ATP TOUR, INC., ETIENNE DE VILLIERS, :
CHARLES PASARELL, GRAHAM PEARCE,     :
JACCO ELTINGH, PERRY ROGERS, and IGGY:
JOVANOVIC,                           :
                                     :
                    Defendants.      :
------------------------------------- X
```

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION TO BIFURCATE TRIAL INTO
<u>SEPARATE LIABILITY AND DAMAGES PHASES</u>**

*Of Counsel:*

Bradley I. Ruskin
Colin A. Underwood
Jennifer R. Scullion
Evan S. Greene
PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036-8299
(212) 969-3000

Dated:  June 6, 2008

ASHBY & GEDDES
Philip Trainer, Jr. (I.D. #2788)
Carolyn Hake (I.D. #3839)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
ptrainer@ashby-geddes.com
chake@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ................................................................................................................................ 3

I.  Because Plaintiffs' Damages are Entirely Prospective in Nature, Separate Trials on Liability and Damages Will be Efficient and Economical ................................. 3

II. Bifurcation Will Simplify the Presentation of the Evidence for the Jury ............... 6

III. Bifurcation Will Not Prejudice Plaintiffs .............................................................. 7

CONCLUSION ............................................................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**

*Brzoska v. Olson*, 668 A.2d 1355 (Del. 1995) .................................................................................. 4

*In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444 (3d Cir. 1997) ....................................................... 7

*Los Angeles Mem'l Coliseum Comm'n v. NFL*, 791 F.2d 1356 (9th Cir. 1986) ......................... 5, 7

*Lynch v. Vickers Energy Corp.*, 429 A.2d 497 (Del. 1981) ............................................................. 4

*Nash v. Hoopes*, 332 A.2d 411 (Del. Super. 1975) .......................................................................... 4

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969) ............................................ 5

**Statutes**

15 U.S.C. § 15 .................................................................................................................................. 5

15 U.S.C. § 26 .................................................................................................................................. 5

Defendants respectfully submit this reply memorandum in further support of their motion pursuant to Federal Rule of Civil Procedure 42(b) to bifurcate the trial of this action into separate liability and damages phases.

## PRELIMINARY STATEMENT

Plaintiffs ignore each of the fundamental points underlying Defendants' motion to bifurcate the trial of this matter.

First, as Defendants demonstrated in their opening brief, Plaintiffs have adduced no evidence of any *current damages* arising out of any of the actions at issue. To the contrary, Plaintiffs' damages expert, Gary Kleinrichert, made clear that all of the damages claimed by Plaintiffs are based solely on his estimate of the value of rights that would be impacted if Defendants' Brave New World plan is implemented in 2009, placing the Hamburg tournament in ATP's second-highest tournament tier and scheduling it in July. Georg von Waldenfels, President of the DTB, likewise acknowledged that Plaintiffs would not suffer any damages if ATP's plan is enjoined and Hamburg remains in the ATP Tour's highest tournament tier. Plaintiffs make no attempt to address these undisputed facts.

Under these circumstances, bifurcating the liability and damages phases will serve the interests of judicial economy and efficiency. Even if liability is found, the entire damages phase could be mooted by an award of injunctive relief. Plaintiffs cannot "elect" to collect (treble) damages for a future injury rather than an injunction, when all of their supposed damages could be avoided in the event liability were found. An award of damages in such a situation (i) ignores Plaintiffs' duty to mitigate their damages, (ii) subverts the purposes of the very laws governing Plaintiffs' claims, and (iii) grants Plaintiffs an inappropriate windfall. This action is being tried in advance of the implementation of the Brave New World and Plaintiffs have an obligation to

take whatever steps they can to prevent and avoid the competitive harm that Plaintiffs claim arises from Defendants' acts.

Second, given the potential effect of injunctive relief (as well as Plaintiffs' failure to link any of their legal claims to their purported damages), bifurcation is necessary to enable the jury to make a meaningful assessment of damages, if such an assessment is even required. Plaintiffs are not entitled to recover damages for injury that will be avoided by injunction. But a jury cannot possibly assess how damages might be reduced or eliminated by possible injunctive relief before the Court actually addresses the scope of that relief. Moreover, Plaintiffs have sought compensatory damages on only their antitrust and tortious interference claims, not with respect to their breach of fiduciary duty and conversion claims. Therefore, depending on which claims (if any) are found to support liability, Kleinrichert's testimony and Plaintiffs' damages case may prove to be unnecessary and irrelevant.

Finally, while Plaintiffs' assert that evidence pertaining to damages is not "easily severable" from the liability components of their claims (Opp. Mem. at 3), they make no effort to identify any overlapping issues or facts, much less any substantial overlap. As Defendants have shown in their opening brief, issues relating to liability and damages are clearly largely divisible, and the supporting evidence is likely to be presented through different witnesses and distinct documents. Moreover, bifurcation will pose no risk of prejudice to Plaintiffs, as the damage trial (if necessary) could occur immediately after the liability phase with the same jury.[1]

---

[1] Defendants did neglect to file a Local Rule 7.1.1 statement as part of this motion. This was an oversight, for which we apologize. As shown by Plaintiffs' clear and unqualified opposition to this motion, however, there is no middle ground for a compromise and a pre-motion conference would not have obviated this motion.

# ARGUMENT

I. **Because Plaintiffs' Damages are Entirely Prospective in Nature, Separate Trials on Liability and Damages Will be Efficient and Economical**

Defendants demonstrated in their opening brief that all of Plaintiffs' claimed damages could be prevented by the issuance of injunctive relief. Plaintiffs attempt to skirt this critical fact. While Plaintiffs purport to "expressly den[y]" Defendants' "argue[ment]" (Opp. Mem. at 8) they cite to no evidence of any current damages. Indeed, GTF president Georg von Waldenfels agreed that any damages at issue would be "curtail[ed] and contain[ed]" if Plaintiffs were to receive a "positive decision" in advance of 2009 preserving the Hamburg tournament's current tier within the ATP Tour. (D.I. 120, Ex. A, pp. 558-59).

Put simply, all of Plaintiffs' claimed damages are based upon projected losses that have not arisen — and that will never arise unless and until ATP effects its planned recategorization of Hamburg in 2009. To measure alleged damages, Kleinrichert purported to estimate the value of the Hamburg tournament (and related assets) in Hamburg's current position within the Tour. He then based his damages assessment on the assumption that the value of these rights and assets would be extinguished, *starting in 2009,* if ATP recategorizes and recalendars the Hamburg tournament in accordance with its Brave New World plan. (D.I. 120, Ex. D, pp. 2-5; D.I. 120, Ex. C, pp. 19-20, 180-81, 206). Plaintiffs' claim that Defendants "ignore the present damages that Plaintiffs have incurred as a result of ATP's announcement of the Plan" (Opp. Mem. at 3) is misleading. Kleinrichert specifically testified that no portion of his damages assessment constitutes current damages arising out of the ATP's 2007 announcement of what it plans to do in 2009 (D.I. 120, Ex. C, p. 206).[2]

---

[2] Defendants' Motion in Limine No. 4 seeks to exclude Kleinrichert's deficient and belatedly-disclosed "discounted cash flow" analysis. Even if the Court permits that testimony, Kleinrichert acknowledged that his "discounted cash flow" — like the rest of his damages

Given Plaintiffs' inability to demonstrate any current damages arising out of the actions challenged in their Complaint, their argument that they should be permitted to "elect" a damages remedy over injunctive relief (Opp. Br., pp. 4-6) makes no sense. Plaintiffs **have no damages to "elect"** at this point. Nor have Plaintiffs demonstrated that they will incur any damages in advance of trial. Their "election of remedies" argument essentially asks the Court to permit Plaintiffs to suffer the projected injury to their tournament and related assets — even though these damages could be fully prevented by an injunction — thereby providing them with the potential windfall of a treble damages remedy under the antitrust laws, and allowing Plaintiffs to escape their obligation to mitigate any damages that could (allegedly) arise out of the eventual reshuffling of the Hamburg tournament's place on the ATP Tour as of 2009.[3] If Plaintiffs prove that Defendants' plan would violate the antitrust laws, Plaintiffs do not get to say "pay me now for the future injury from an antitrust violation that has not been implemented (and, by the way, treble it)," and then let Defendants go forward with the plan in violation of the antitrust laws. Moreover, while ATP firmly believes that its Brave New World plan is lawful both in design and

---

analysis — only purports to estimate *prospective* damages for 2009 forward under the assumption that Brave New World is implemented as planned. (D.I. 120, Ex. C, p. 194).

Defendants' Motion in Limine No. 4 also seeks to exclude evidence concerning Plaintiffs' alleged $3.5 million in damages to their contractual and prospective business relations. Again, even those improperly asserted damages are purely *prospective*. Plaintiffs admit in their opposition to Motion in Limine No. 4 that these damages: (1) have not occurred yet; (2) are measured only for the period 2009 forward; and (3) are based upon the assumption that, *in 2009*, the Hamburg tournament will be placed into ATP's second-highest tier pursuant to the Brave New World plan. (D.I. 139, p. 2).

Plaintiffs' assertion that Defendants were obliged to discover these damages through a 30(b)(6) deposition (i) is irrelevant to this motion given that the damages admittedly are prospective only (and therefore avoidable by injunction) and (ii) blatantly ignores Plaintiffs' obligations under Fed. R. Civ. P. 26(a)(1)(A)(iii) and 26(a)(2).

[3] *See e.g.*, ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases, 2005 Edition F-47; *Brzoska v. Olson*, 668 A.2d 1355, 1367 (Del. 1995); *Lynch v. Vickers Energy Corp.*, 429 A.2d 497, 504 (Del. 1981); *Nash v. Hoopes*, 332 A.2d 411, 414 (Del. Super. 1975).

planned implementation, if any part of the plan were found to be unlawful, ATP could decide not to proceed with that aspect of the plan – and thereby avoid any damages that Plaintiffs might even claim to flow from any unlawful part of the plan.

Worse still, Plaintiffs suggest that after being awarded such damages, they could still get injunctive relief in addition to those damages. A plaintiff cannot "elect" damages over injunctive relief under these circumstances. *See, e.g., Los Angeles Mem'l Coliseum Comm'n v. NFL*, 791 F.2d 1356, 1374 (9th Cir. 1986) (noting that "it is beyond dispute that the Sherman Act was not intended to provide recoveries, before trebling, in excess of the injuries that were actually caused by the antitrust violation," and that the "prospect of injunctive relief is the appropriate incentive for plaintiff to bring suit when antitrust 'damages cannot be awarded because they don't exist'") (citations omitted); Phillip E. Areeda et al., Antitrust Law § 340(a) (3d ed. 2007) ("public purposes of the damage action [under the antitrust laws] provide no excuse for awarding damages that are nonexistent").[4]

Based on these circumstances — *i.e.*, a case in which purported damages can be fully averted by the issuance of injunctive relief (if liability is even established) — the interests of efficiency, judicial economy and convenience will be served by bifurcating trial into separate liability and damages phases. Indeed, the entire damages phase of trial will likely be

---

[4] Plaintiffs' suggestion that there are "unique standards of proof" associated with claims for damages and injunctive relief under the antitrust laws (Opp. Br., p. 4) also misses the point. Plaintiffs are required to make the same showing to prevail on these claims in all respects. The only difference is whether Plaintiffs must demonstrate actual injury to their "business or property" (to prevail on a damages claim) or "threatened loss or damage" (to prevail on a claim for injunctive relief). 15 U.S.C. §§ 15, 26; *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130-32 (1969). Bifurcation therefore will have no effect on Plaintiffs' burden of proof to establish liability under the antitrust laws. If liability is established and, notwithstanding injunctive relief, Plaintiffs still claim any damages, they would have the opportunity to demonstrate actual injury to their "business or property" (subject to the limitations of their existing evidence and expert reports, of course).

unnecessary, regardless of whether liability is established. Accordingly, bifurcation will very likely reduce the overall length of trial, preserve resources, and simplify the issues to be considered by the jury.

## II. Bifurcation Will Simplify the Presentation of the Evidence for the Jury

Trial can be simplified and expedited by deferring Plaintiffs' damages case until after liability findings are made. While Plaintiffs seek compensatory damages only with respect to their antitrust and tortious interference claims, they do not (and cannot) dispute that Kleinrichert made no effort to link his damages calculations to these specific legal claims. (D.I. 136, pp. 2-3; *see also* D.I. 120, Ex. C, pp. 26, 43).[5] Accordingly, not only is Kleinrichert's testimony irrelevant to liability issues, its relevance to damages issues will depend on the jury's findings with respect to Plaintiffs' specific legal claims at the liability stage (assuming, *arguendo*, liability is found and injunctive relief does not render damages testimony moot). Depending on the jury's findings, much or all of Kleinrichert's testimony may prove to be unnecessary.

Furthermore, the jury cannot possibly assess whether and how Plaintiffs' damages would be affected (or totally prevented) by an injunction until after the Court has had the opportunity to evaluate the liability finding (if any) and consider whether to award equitable relief, and if so, what form that relief should take. The only way for a jury to make a reasoned determination of

---

[5] Although Plaintiffs' original Complaint and Firt Amendment Complaints each fail to request damages for breach of fiduciary duty (*See* D.I. 50, Ex. A, at Prayer for Relief) (requesting compensatory damages for antitrust and tortious interference claims only) — and despite the prejudice to Defendants — Plaintiffs now assert that they do seek damages on these claims, and that the fiduciary duty claim should be tried to a jury. (Opp. Mem. at 7). Given the traditionally equitable nature of breach of fiduciary duty claims — and the fact that Plaintiffs never plead and Kleinrichert never articulated a damages theory relating to these claims — they should be tried to the Court. (D.I. 120, p. 4, fn. 2). Even if the Court were to determine that Plaintiffs are entitled to a jury trial on their fiduciary duty claims, that trial should be bifurcated for all of the reasons set forth in this motion.

damages is to bifurcate the trial and defer Plaintiffs' damages case until after the Court has determined the scope of any injunctive relief.

Plaintiffs incorrectly assert that Defendants' request for bifurcation is premised upon Plaintiffs' claims being "too complex for a jury to understand." (Opp. Mem. at 9). The point is that there is no way to instruct the jury concerning the potential effect of an injunction upon damages until after the injunction has been issued. *See In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 452 n.5 (3d Cir. 1997) (upholding bifurcation, recognizing that severance of dispositive liability issues can serve judicial economy and improve juror comprehension); *cf. Los Angeles Mem'l Coliseum Comm'n*, 791 F.2d at 1374-75 (reducing damages due to jury's failure to assess value of injunctive relief that had effect of providing plaintiff with double recovery).

### III. Bifurcation Will Not Prejudice Plaintiffs

As shown in Defendants' opening brief, the evidence pertaining to liability and damages issues is almost entirely non-overlapping, making bifurcation here straightforward and economical. (D.I. 120, pp. 9-10). Thus, even if a damages phase is necessary, bifurcation should not increase the overall length of trial. Plaintiffs made no effort to contest this showing.

Bifurcation also poses no risk of prejudice to Plaintiffs. Any damages trial should be able to follow immediately after the liability phase with the same jury hearing the liability phase. Moreover, Plaintiffs' intimation that bifurcation could violate the Seventh Amendment (*see* Opp. Mem. at 9, n.7) is just wrong. The Seventh Amendment requires only that the same issues are not reexamined by different juries. *In re Paoli R.R. Yard PCB Litig.*, 113 F.3d at 452 n.5. Here, even if it were necessary for some reason to empanel a second jury for any damages phase, there is no risk to Plaintiffs' Seventh Amendment rights because the issues underlying damages are completely separate from those pertaining to liability. (D.I. 120, pp. 9-10). *Id.*

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court bifurcate the trial of this action into separate liability and damages phases.

Dated: June 6, 2008

                                           ASHBY & GEDDES

                                           */s/ Tiffany Geyer Lydon*
                                           _____
                                           Philip Trainer, Jr. (I.D. #2788)
                                           Carolyn S. Hake (I.D. #3839)
                                           Tiffany Geyer Lydon (I.D. #3950)
                                           500 Delaware Avenue, 8th Floor
                                           P.O. Box 1150
                                           Wilmington, Delaware 19899
                                           302-654-1888
                                           ptrainer@ashby-geddes.com
                                           chake@ashby-geddes.com
                                           tlydon@ashby-geddes.com

                                           PROSKAUER ROSE LLP
                                           Bradley I. Ruskin
                                           Colin A. Underwood
                                           Jennifer R. Scullion
                                           Evan S. Greene
                                           (*admitted pro hac vice*)
                                           1585 Broadway
                                           New York, NY  10036-8299
                                           Phone: (212) 969-3000

                                           *Attorneys for Defendants*