IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------X
DEUTSCHER TENNIS BUND (GERMAN
TENNIS FEDERATION), ROTHENBAUM
SPORT GMBH, and QATAR TENNIS
FEDERATION,

                Plaintiffs,

  against

ATP TOUR, INC., ETIENNE DE VILLIERS,
CHARLES PASARELL, GRAHAM PEARCE,
JACCO ELTINGH, PERRY ROGERS, and IGGY
JOVANOVIC,

                Defendants.
------------------------------------X

**REDACTED
PUBLIC VERSION**

C.A. No. 07-178-GMS

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION *IN LIMINE* NO. 4
TO EXCLUDE EVIDENCE OF DAMAGES NOT
PROPERLY DISCLOSED DURING DISCOVERY**

                                      ASHBY & GEDDES
                                      Philip Trainer, Jr. (I.D. #2788)
                                      Carolyn Hake (I.D. #3839)
                                      Tiffany Geyer Lydon (I.D. #3950)
                                      500 Delaware Avenue, 8th Floor
                                      P.O. Box 1150
                                      Wilmington, Delaware 19899
                                      (302) 654-1888
                                      ptrainer@ashby-geddes.com
                                      chake@ashby-geddes.com
                                      tlydon@ashby-geddes.com

*Of Counsel:*                            *Attorneys for Defendants*

Bradley I. Ruskin
Colin A. Underwood
Jennifer R. Scullion
Evan S. Greene
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036-8299
(212) 969-3000

Dated: June 2, 2008

In opposing Defendants' motion to exclude evidence of damages not properly disclosed during discovery — including (1) the **REDACTED** in purported damages to Plaintiffs' contractual relations identified for the first time in Plaintiffs' draft Pretrial Order, and (2) Gary G. Kleinrichert's "discounted cash flow analysis" — Plaintiffs fail to explain or justify their belated and defective disclosure of these alleged damages and ignore the prejudice caused to Defendants.

Plaintiffs' assertion that their "theory relating to damages for interference with Plaintiffs' contractual relations" was identified in the Complaint and deposition testimony (Opp. Br., p. 1) misses the point. That Plaintiffs broadly alleged the conclusory fact that there were damages in their contract relations is not sufficient. What Plaintiffs were required to do — but did not — was to provide "a computation of [this] category of damages" and "the documents or other evidentiary material...on which each computation is based." Fed R. Civ. P. 26(a)(1)(A)(iii). Even if Plaintiffs could not provide documents supporting their alleged **REDACTED** in contractual damages until after the close of discovery, they were required to disclose their basis for ultimately computing these damages during discovery, so that Defendants could meaningfully probe and challenge it. *See e.g., In re Oakwood Homes Corp.*, 340 B.R. 510, 539-43 (Bankr. D. Del. 2006).

To that end, as described in Defendants' moving brief, Plaintiffs failed at each and every opportunity during discovery to disclose any basis for computing the purported damages to their contractual relationships. Plaintiffs' initial Rule 26(a)(1) disclosures state that Plaintiffs "will supply a computation of [the] damages and lost profits" that arise out of their allegedly injured economic relationships, but no such supplemental computation was ever produced. Plaintiffs' response to Defendants' interrogatory requesting an identification of "all losses that any Plaintiff claims to have suffered" failed to identify any damages, and deferred all explanation of alleged damages to expert discovery. Kleinrichert's expert damages report then identified two forms of

1

prospective valuation damages that would occur if Defendants are permitted to proceed with the Brave New World plans — but the report does not identify, and fails to provide any basis for computing, the **REDACTED** in alleged contractual damages. To date, Plaintiffs have not supplemented their interrogatory responses or Kleinrichert's report to identify and explain Plaintiffs' basis for computing the **REDACTED** in damages.

Moreover, Plaintiffs' supplemental production of *recently-executed sponsorship and broadcasting contracts* for the 2008 Hamburg tournament cannot possibly serve — in and of themselves, without any explanation of Plaintiffs' theory — as a "computation" of damages that allegedly arise out of Plaintiffs' *lost contracts or business relationships*. Indeed, Plaintiffs' assertion that they "will submit to the jury that the value of [these] contracts . . . establish Plaintiffs' contractual damages for the calendar year 2009 and forward" (Opp. Br., p. 2) suggests that they cannot establish that there has been any interference with — much less damage to — any identifiable contractual or business relationships to date. The crucial point is that Plaintiffs' failure to provide any details concerning the **REDACTED** in alleged contract damages — at any point during discovery — has totally deprived Defendants of the opportunity to probe Plaintiffs' theory and the particulars of the purportedly harmed relationships.[1]

Additionally, Plaintiffs' assertion that Kleinrichert waited to disclose his "discounted cash flow" analysis in response to Peter Greenhalgh until February 11, 2008 (*i.e.*, ten days after reply reports were due under the Court's December 2, 2007 scheduling order) "out of necessity"

---

[1] There is no merit to Plaintiffs' assertions concerning Defendants' supplementation of their document production. Exhibit 3 to their motion was produced on December 14, 2007 — more than three weeks *before* Mr. de Villiers' January 8, 2008 deposition. Nor can Plaintiffs credibly attack Defendants' May 21, 2008 production, which consisted of just 19 pages of documents created between December 2007 and April 2008. That production in fact shows Defendants' diligent, good faith efforts to comply with their discovery obligations. By contrast, Plaintiff QTF has provided no supplemental production whatsoever, and Plaintiff DTB delayed until this Spring in turning over documents Defendants requested months ago.

2

(Opp. Br., p. 4) is disingenuous. Plaintiffs' explanation for the belated disclosure of the analysis rests solely upon their claim that Greenhalgh "for the fist time -- affirmatively opined" during his February 6, 2008 deposition that a discounted cash flow analysis is an appropriate way to measure damages. (Opp. Br., p. 4). However, Greenhalgh's timely January 28, 2008 report expressly states that an appropriate way to assess any damages in this action (assuming liability is established) would be to "estimate . . . the change in net cash flow that would result from a change in status [to the Hamburg tournament] under the Brave New World." (Ex. A, at ¶ 34).[2] Indeed, at his deposition, Kleinrichert conceded that his February 11 analysis was a "rebuttal" to the discounted cash flow concept laid out in Greenhalgh's report, and that he had not even read Greenhalgh's deposition testimony. (D.I. 126, Ex. 14, pp. 34-35). In addition, as discussed in detail in Defendants' moving brief, Kleinrichert's February 11 analysis failed to adhere to virtually every expert disclosure requirement set forth in Fed. R. Civ. P. 26(a)(2).

Plaintiffs' suggestion that the belated, deficient disclosure of Kleinrichert's analysis was "harmless" (Opp. Br., p. 5) ignores the fact that Defendants received it just hours before Kleinrichert's deposition — providing defense counsel with virtually no time to assess the document, and no opportunity to discuss the analysis with Greenhalgh — and that the document failed to set forth any of the data or information underlying the analysis.

---

[2] Plaintiffs' assertion that Greenhalgh opined that a discounted cash flow analysis "is not suitable for this litigation" (Opp. Br., p. 4) is incorrect. Rather, Greenhalgh stated only that assessing Plaintiff's *actual lost profits* (assuming any) "is not suitable for this litigation unless Plaintiffs . . . are prepared to wait some years into the future for a damages award." (Ex. A, at ¶¶ 33-34). Greenhalgh then opined that *estimating* lost profits through a discounted cash flow analysis is an acceptable alternative methodology to assessing lost profit damages. (*Id.* at ¶ 34).

3

*Of Counsel:*

Bradley I. Ruskin
Colin A. Underwood
Jennifer R. Scullion
Evan S. Greene
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036-8299
(212) 969-3000

Dated: June 2, 2008

ASHBY & GEDDES

/s/ *Tiffany Geyer Lydon*

---

Philip Trainer, Jr. (I.D. #2788)
Carolyn S. Hake (I.D. #3839)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
ptrainer@ashby-geddes.com
chake@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

4

# EXHIBIT A

**REDACTED**