REDACTED VERSION – PUBLICLY FILED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| DEUTSCHER TENNIS BUND (GERMAN TENNIS FEDERATION), ROTHENBAUM SPORT GMBH, and QATAR TENNIS FEDERATION, | ) ) ) ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) | C.A. No. 07-178-GMS |
| v. | ) ) |  |
| ATP TOUR, INC., ETIENNE DE VILLIERS, CHARLES PASARELL, GRAHAM PEARCE, JACCO ELTINGH, PERRY ROGERS, and IGGY JOVANOVIC, | ) ) ) ) | **TRIAL BY JURY DEMANDED** |
|  | ) ) | **CONFIDENTIAL** |
|  | ) | **FILED UNDER SEAL** |
| Defendants. | ) ) |  |

**FINAL PRETRIAL ORDER**

This matter having come before the court at a pretrial conference held pursuant to

Fed.R.Civ.P. ("Rule") 16, and C. Barr Flinn and Karen E. Keller, Young Conaway Stargatt

& Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington,

Delaware 19801 ((302) 571-6600) and  Robert D. MacGill, Hamish S. Cohen, Jennifer

Westerhaus Adams, and Matthew B. Barr, Barnes & Thornburg, LLP, 11 South Meridian

Street, Indianapolis, Indiana ((317) 236-1313) having appeared as counsel for Plaintiffs, and

Lawrence C. Ashby and Philip Trainer, Jr., Ashby & Geddes, P.A., 500 Delaware Avenue, 8th

Floor, P. O. Box 1150, Wilmington, DE 19899 ((302) 654-1888) and Bradley I. Ruskin, Colin

A. Underwood, Jennifer R. Scullion, and Jordan B. Leader, Proskauer Rose LLP, 1585

Broadway, New York, NY 10036 ((212) 969-3000) having appeared as counsel for

REDACTED VERSION – PUBLICLY FILED

Defendants,[1] the following actions were taken:

(1)    This is an action for alleged violations of Section 1 of the Sherman Antitrust Act, contract, conspiracy or combination in restraint of trade, 15 U.S.C. § 1; alleged violations of Section 2 of the Sherman Antitrust Act, monopolization, attempt to monopolize and conspiracy to monopolize; alleged breaches of the fiduciary duties of loyalty, due care and good faith; alleged tortious interference with contracts, business relationships and prospective business advantage; and alleged conversion. The jurisdiction of the court is involved under 28 U.S.C. §§ 1331 (federal question), 1337 (antitrust claims), 1367 (supplemental jurisdiction) and 1332 (diversity jurisdiction - the parties have stipulated that over $75,000 is involved). Jurisdiction is not disputed.

(2)    The following stipulations and statements were submitted and are attached to and made a part of this Order.

    (a)    A comprehensive stipulation or statement of all uncontested facts, which will become a part of the evidentiary record in the case (and which, in a jury trial, may be read to the jury by the court or any party) is attached hereto as Exhibit 1;

    (b)    The parties' statements of contested issues of face and law are attached hereto as Exhibits 2(a), (b), (c), and (d) respectively;

    (c)    Except for rebuttal exhibits, schedules of all exhibits (which shall be marked for identification before trial), including documents, summaries, charts and

---

[1]    In light of recent events, Mr. Rogers has engaged Steven R. Neuwirth of Quinn Emanuel Urquhart Oliver & Hedges, LLP to appear as additional counsel for him in this matter. Mr. Neuwirth will be seeking permission to appear *pro hac vice* with Ashby & Geddes, P.A. as Delaware counsel. Defendants have no present intention to seek any continuance of the trial date based on Mr. Neuwirth's appearance (or otherwise).

DB02:6859597.1                                                                                          066145.1001

REDACTED VERSION – PUBLICLY FILED

other items expected to be offered into evidence are attached hereto as Exhibits 3(a) and 3(b). Exhibits that are not objected to are received in evidence by operation of this Order, without any need for further foundation testimony. Copies of exhibits shall be made available to opposing counsel and a bench book of exhibits shall be prepared and delivered to the court at the start of trial. If counsel desires to display exhibits to the members of the jury, sufficient copies of such exhibits must be made available so as to provide each juror with a copy, or alternative, enlarged photographic copies or projected copies should be used. The parties are continuing to confer with respect to a protocol for advance exchanges of demonstratives and witness identifications;

(d)     Lists of names and addresses of the potential witnesses to be called by each party, with a statement of any objections to calling, or to the qualifications of any witness identified therein are attached hereto as Exhibits 4(a) and 4(b). Exhibits 4(a) and 4(b) set forth which witnesses will be called in the absence of reasonable notice to opposing counsel to the contrary and which may be called as a possibility only. Any witness not listed in Exhibits 4(a) and 4(b) will be precluded from testifying absent good cause shown, except that each party reserves the right to call such rebuttal witnesses (who are not presently identifiable) as may be necessary without prior notice to the opposing party. Attached as Exhibit 4(c) is Defendants' Objections to Plaintiffs' Witness List;

(e)     Statements setting forth the qualifications of each expert witness in such

REDACTED VERSION – PUBLICLY FILED

form that the statement can be read to the jury at the time the expert witness takes the stand are attached hereto as Exhibits 5(a) and 5(b).  Attached as Exhibit 5(c) is Defendants' Objections to Plaintiffs' Statement of Expert Witness Qualifications;

(f)     Lists of all depositions or portions thereof that may read into evidence are attached hereto as Exhibits 6(a) and 6(b).  Exhibit 6(c) contains Defendants' objections to Plaintiffs' deposition list.   The parties shall be prepared to present to the court, when directed to do so, a copy of all relevant portions of the deposition transcript to assist the court in ruling *in limine* on the objection. All irrelevant and redundant material, including all colloquy between counsel, shall be eliminated when the deposition is read at trial. If a video deposition is proposed to be used, opposing counsel must be so advised sufficiently before trial to permit any objections to be made and ruled on by the court and to allow objectionable material to be edited out of the film before trial. If good cause is shown as to why objections to portions of a video deposition could not be made sufficiently before trial to permit the court to rule, objections shall be handled by a procedure prescribed by the court in accordance with D. Del. LR 30.4(e). Video depositions shall otherwise be handled at trial in accordance with D. Del. LR 30.4(d);

(g)     An itemized statement of special damages is attached hereto as Exhibit 7;

(h)     No claims have been waived by the Plaintiffs.  No affirmative defenses have been waived by Defendants.

(i)     The parties' trial briefs have been filed separately and contemporaneously

REDACTED VERSION – PUBLICLY FILED

with the parties' submission of this Order.

(j)    Plaintiffs' proposed jury instructions with Defendants' objections thereto are attached at Exhibit 8(a)(1) and Defendants' proposed jury instructions with Plaintiffs' objections are attached at Exhibit 8(a)(2).   Plaintiffs' and Defendants' proposed verdict forms are attached at Exhibits 8(b)(1) and (b)(2) respectively.   Copies of these Exhibits have been filed contemporaneously.

(k)    Lists of questions each party requests the court ask prospective jurors in accordance with Fed. R. Civ. P. 47(a) and D. Del. LR 47.1(a) are attached hereto as Exhibit 9.   Copies of Exhibit 9 have been filed contemporaneously with the submission of this Order in triplicate on diskette;

(l)    The parties certify that they have made good faith attempts to resolve this controversy by settlement.   The parties mediated this matter on May 14 and 15, 2008 in Boston, Massachusetts before Judge Allan van Gestel (ret.).   No agreement has been reached;

(m)    Plaintiffs assert that Defendants refused to produce witnesses with knowledge of key facts and produced documents in an untimely fashion after the close of discovery, prejudicing Plaintiffs' discovery efforts; have failed to produce responsive documents; and have not supplemented their productions as required by Rule 26(e).   Plaintiffs reserve all rights relating thereto, including the right to request additional discovery. Defendants dispute Plaintiffs' assertions and state that they have fully complied with all discovery obligations, have been properly supplementing

REDACTED VERSION – PUBLICLY FILED

their productions, and will continue to supplement their productions as required by Rule 26(e), the Coordinated Scheduling Order in this matter, and the parties' discovery agreements.  Defendants assert that Plaintiffs have failed to properly preserve discoverable documents and information, have failed to produce responsive documents and in a timely fashion, have withheld non-privileged materials and/or have failed to provide an appropriate privilege log, and have failed to supplement their productions as required by Rule 26(e), the Coordinated Scheduling Order in this matter, and the parties' discovery agreements.  Defendants reserve all rights relating to Plaintiffs' discovery failures.

(n)   The parties' Motions *in limine* have been filed separately and contemporaneously with the parties' submission of this Order.  The parties have submitted an original and two (2) copies, excluding appendices, declarations, affidavits and exhibits.

(3)   Trial of this case is expected to take ten days (subject to potential extension to fifteen days as provided in the Coordinated Scheduling Order).

(4)   This matter is set for the following type of trial:

Jury ☑            Non jury     ☐

Defendants assert that Plaintiffs are not entitled to a jury trial with respect to their equitable claims for breach of fiduciary duty.

(5)   The parties recommend that eight jurors be selected at the commencement of the trial.

6

REDACTED VERSION – PUBLICLY FILED

(6)     This Order will control the course of the trial and may not be amended except by consent of

the parties and the Court, or by order of the Court to prevent manifest injustice.

(7)     The possibility of settlement of this case was considered by the parties.


_____

UNITED STATES DISTRICT JUDGE

Date: _____


/s/ Karen E. Keller                                      /s/ Tiffany Geyer Lydon
By: _____              By: _____
    C. Barr Flinn (No. 4092)                          Lawrence C. Ashby (No. 468)
    Karen E. Keller (No. 4489)                        Philip Trainer, Jr. (No. 2788)
    The Brandywine Building                            Tiffany Geyer Lydon (No. 3950)
    1000 West Street, 17th Floor                       500 Delaware Avenue, 8th Floor
    Wilmington, DE  19801                              P. O. Box 1150
    (302) 571-6600                                     Wilmington, DE  19899
    bflinn@ycst.com                                    (302) 654-1888
    kkeller@ycst.com                                   lashby@ashby-geddes.com
                                                       ptrainer@ashby-geddes.com

Robert D. MacGill
Hamish S. Cohen                                    Bradley I. Ruskin
Jennifer Westerhaus Adams                          Colin A. Underwood
Matthew B. Barr                                    Jennifer R. Scullion
Barnes & Thornburg LLP                             Jordan B. Leader
11 South Meridian Street                           Proskauer Rose LLP
Indianapolis, IN  46204                            1585 Broadway
                                                   New York, NY  10036

*Attorneys for Deutscher Tennis Bund,*
*Rothenbaum Sports GMBH Tennis & Qatar*            *Attorneys for ATP Tour, Inc. and the*
*Tennis Federation*                                *Individual Directors*

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 1

# REDACTED IN ITS ENTIRETY

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 2(a)

REDACTED VERSION – PUBLICLY FILED

## EXHIBIT 2(a)

## PLAINTIFFS' STATEMENT OF CONTESTED ISSUES OF FACT (not agreed)[1]

1.  Whether the ATP Tour, Inc. and its agents (including its legal counsel) coerced participation by the Masters Series tournaments in the ISL arrangement.

2.  Whether the ATP Tour, Inc. and its agents (including its legal counsel) coerced participation by the Masters Series tournaments in TPL.

3.  Whether Defendants, ATP officers acting under their guidance, and the owners of certain favored ATP tournaments have reduced competition in markets relating to men's professional tennis in order to derive monopolistic proceeds and reduce output in the relevant markets.

4.  Whether Defendants have used market power to channel players to favored tournaments.

5.  Whether Defendants' use of their market power has damaged other consumers in the player services market.

6.  Whether Defendants have created an artificial market for the sale of ATP "sanctions."

7.  Whether the creation of an artificial market for the sale of ATP "sanctions" will subsume tournaments' membership rights.

8.  Whether Defendants have used their market power to bar entry into the relevant markets so that the ATP can sell its "sanctions" in a monopolistic, artificial marketplace.

---

[1]  Plaintiffs' Statement of Contested Issues of Fact is made without waiver of their position that there is no genuine issue of fact on many of these issues and is without waiver of Plaintiffs' right to move for a directed verdict and/or judgment as a matter of law.

REDACTED VERSION – PUBLICLY FILED

9. Whether Defendants have used their market power to control output markets relating, *inter alia*, to sponsorships, broadcasters and fans via input market controls and the pooling of broadcast and sponsorship rights.

10. Whether Defendants have engaged in these actions with knowledge of their illegality, via fixed bids, price-fixing arrangements and self-dealing transactions, to create monopolistic proceeds for themselves and members of their cartel.

11. Whether Defendants did so believing that their monopoly proceeds would be sufficient to pay off any entity or person who might challenge the legality of these actions.

12. Whether Defendants have damaged the relevant markets and consumers in those markets, including Plaintiffs.

13. Whether Defendants have knowingly violated the antitrust laws of the United States

14. Whether Defendants have engaged in self-dealing transactions.

15. Whether Defendants have selectively provided information to certain of their members so as to mislead those members.

16. Whether Defendants have favored certain members and classes of members over other members.

17. Whether Defendants have sold Plaintiffs' membership in the Hamburg tournament to other entities for approximately ███████

18. Whether the ATP is a sports league.

19. Whether ATP and its members share expenses, capital expenditure, profits or losses.

20. Whether each ATP tournament is managed separately and independently from the ATP.

21. Whether profits vary from member to member.

22. Whether members and the ATP exchange or share their accounting books or records.

2

REDACTED VERSION – PUBLICLY FILED

23. Whether tournaments and the ATP compete for the acquisition of management personnel, players, sponsors, broadcasters or fans.

24. Whether there is anything "core" or essential about the complained-of conduct.

25. Whether the ATP's conduct has had adverse effects on competition.

26. Whether Defendants have created barriers to entry into the relevant markets.

27. Whether, in a pre-Brave New World environment, tournaments could improve their competitive position vis-à-vis player services by improving such things as tournament prize money, facilities, calendar position, amenities, player benefits and/or player relationships.

28. Whether, under the Brave New World, a tournament's competitive advantages or disadvantages are subsumed by the Defendants' legislative fiat.

29. Whether the ATP's player services controls will result in increased player participation in a narrow band of favored tournaments.

30. Whether these controls will result in a decrease in player participation in the remaining majority of ATP tournament members.

31. Whether these controls will result in a decreased availability of player services for "special events."

32. Whether Defendants' barriers to entry and player participation controls have enabled Defendants to create a market for the sale of "ATP sanctions."

33. Whether a tournament's player field affects its ability to compete for broadcast contracts, sponsorship contracts and fans.

34. Whether Defendants have capped the number of top-tier tournaments and will pool and sell the broadcast and sponsorship rights relating to these tournaments collectively.

REDACTED VERSION – PUBLICLY FILED

35. Whether calendar, player service and geographic market exclusivity are being sanctioned and sold to certain tournaments.

36. Whether the ATP is making players, sponsors and broadcasters available only on specified terms to specified tournaments.

37. Whether the ATP has limited substitutes from a consumer standpoint.

38. Whether a market exists for top-tier men's professional tennis.

39. Whether a market exists for ATP memberships.

40. Whether a market exists for sponsors.

41. Whether a market exists for broadcasters.

42. Whether a market exists for fans.

43. Whether Defendants have entered into agreements among themselves and, *inter alia*, with ATP members and other organizations in Shanghai, Madrid and Dubai to control the player participation market as well as sponsorship markets, broadcast markets and the market for the sale of tournament memberships.

44. Whether Defendants "channel" players into favored tournaments (some of which are cartel members) and away from non-favored tournaments (all of which are ATP members).

45. Whether Plaintiffs, and others, will have access (or will have to pay excess amounts for access) to services of top men's professional players.

46. Whether Plaintiffs' inability to compete for player services will significantly damage their ability to attract fans, broadcasters, and sponsors.

4

47. Whether Plaintiffs have been precluded from competing in the marketplace for the sale of memberships and men's professional tennis tournaments, by the Defendants' and their cartel's monopolization of this marketplace.

48. Whether Defendants took Plaintiffs' membership and sold it in the marketplace for approximately ███████

49. Whether Plaintiffs will lose approximately ████████████ in capital investments that will be rendered valueless by Defendants' illegal, anticompetitive activities.

50. Whether the top men's professional tennis players are ATP members, are beholden to the ATP and are subject to the ATP's rules and regulations.

51. Whether Defendants have acted with a specific intent to monopolize the relevant markets by controlling player participation; the sale of memberships; and the availability of top-tier tennis for sponsors, broadcasters and fans.

52. Whether Defendants claim success about their efforts to channel players and to sell "sanctions" for considerable fees.

53. Whether the ATP's actions have had a negative effect on non-favored tournaments.

54. Whether ATP Board member Charles Pasarell, who is also an owner of the Indian Wells tournament in the ATP 1000 tier, has engaged in a number of self-dealing transactions relating to the Indian Wells tournament with the ATP over many years.

55. Whether ATP Board member Iggy Jovanovic engaged in self-dealing transactions with ████████████████████████████████████████████████

56. Whether Mr. Jovanovic and attempted to broker a lease of the Doha tournament while simultaneously voting to not provide this tournament with the status it sought.

REDACTED VERSION – PUBLICLY FILED

57. Whether Defendants failed to communicate essential information pertaining to the Brave New World to the ATP's members.

58. Whether the ATP is appropriating property rights of its members for itself.

59. Whether the ATP is attempting to increase the value of its own assets through the Brave New World.

60. Whether the ATP voted for unprecedented salary and bonus increases to reward the ATP's management team for implementing the Brave New World.

61. Whether the Brave New World was designed specifically to increase revenues to the "premium tour" tournaments.

62. Whether the ATP represented to its membership that the application process for the ATP 1000 and ATP 500 sanctions would be subject to an "open and transparent" bidding process.

63. Whether the format of the ATP 1000 and 500 application forms █████████████ ████████████████████████████████████████████████████████

64. Whether, by October 30, 2006, de Villiers had already decided to ███████████ ████████████████████

65. Whether in March of 2007, before the DTB's application for its ATP 1000 sanction had been submitted, de Villiers offered the DTB ████████ in exchange for its downgrade.

66. Whether the ATP negotiated secretly with the "preferred" Dubai tournament, offering it the opportunity to improve its application over the superior Doha application, despite the fact that Doha had initially offered a ██████████ bid premium and the Dubai tournament had offered a total financial commitment of only ███████

6

REDACTED VERSION – PUBLICLY FILED

67. Whether the ATP awarded Dubai the 500-level sanction even though Dubai agreed only to increase its commitment to ▮▮▮▮▮▮▮

68. Whether Player officer Andre Silva exhorted the player members of the Board, de Villers, and Philip Galloway to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮

69. Whether the ATP failed to disclose to its members in the summary of its January 19, 2007 Board Meeting that the Masters 1000 events would be subject to recategorization on a year-to-year basis.

70. Whether the ATP failed to disclose to its membership the assessment of a significantly reduced transfer fee for Director Pasarell's Indian Wells tournament or its waiver of future transfer fees.

71. Whether Defendants believed that they could create a "war chest" to cover any and all liabilities related to the Brave New World.

72. Whether the ATP Board has decided to compensate downgraded tournaments with fees generated from tournaments that improve their status.

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 2(b)

June 2, 2008                          REDACTED VERSION – PUBLICLY FILED

## EXHIBIT 2(b) TO FINAL PRETRIAL ORDER

## DEFENDANTS' STATEMENT OF CONTESTED ISSUES OF FACT (Not Agreed)[1]

### Sherman Act Section 1

1.     Whether the adoption and implementation of the Brave New World plan, including categorization of tournament members, setting an annual calendar, setting ranking points to be awarded for performance in different ATP events, and the adoption of rules pertaining to when and where player members shall play, are core functions of ATP?

2.     Whether the adoption and implementation of the Brave New World plan was a reasonable, pro-competitive response to a belief that ATP was not or would no longer remain sufficiently competitive in the sports and entertainment market?

3.     Whether the adoption and implementation of the Brave New World plan was a reasonable, pro-competitive effort to respond to the interests of ATP's consumers, namely fans, broadcasters, and sponsors?

4.     Whether the decision to make the Hamburg Tournament a "500" level tournament beginning in 2009 and to calendar it in week 30 of ATP's season calendar was (a) within ATP's authority and (b) was a rational, pro-competitive decision in the context of the overall Brave New World plan, the interests of ATP and its members as a whole, the interests of ATP's consumers, and the marketplace as a whole.

5.     Whether ATP and its tournament members primarily compete with each other or with outside producers of different but competing products in a relevant product market?

---

[1]  Defendants' statement of Contested Issues of Fact is made without waiver of its position that there is no genuine issue of fact on many of these issues and is without waiver of Defendants' right to move for a directed verdict and/or judgment as a matter of law.

June 2, 2008                          REDACTED VERSION – PUBLICLY FILED

6.    Whether ATP and its tournament members work together to produce a product, namely the ATP World Tour?

7.    Whether the product, the ATP World Tour, could be produced other than through the common efforts of ATP and its tournament members?

8.    Whether ATP and its tournament members are substantially integrated with respect to the production of the ATP Tour?

9.    If ATP and its tournament members are not integrated, but separate entities, whether the ATP and any tournaments knowingly agreed to accomplish a common purpose?

10.    Whether the market for the production of top-tier men's professional tennis is a relevant product market such that it includes all products that consumers (fans, broadcasters, and sponsors) believe are reasonably interchangeable or reasonable substitutes for each other because a small but significant permanent increase in the price of one product would result in a substantial number of consumers switching from that product to another.

11.    Whether there are relevant product submarkets for player services for top-tier men's professional tennis, hosting top-tier men's professional tennis, and live top-tier men's professional tennis?

12.    For each relevant market or submarket, what is the geographic area in which firms face competition from other firms that compete in that relevant product market and to which customers can reasonably turn for purchases such that changes in prices or product offerings in one area have substantial effects on prices or sales in another area?

13.    If a knowing agreement among separate entities exists, whether that agreement has or likely will result in a restraint on competition in the form of substantially higher prices, substantially decreased output, substantially lower quality, or the substantial loss of some other

2

June 2, 2008.                                    REDACTED VERSION – PUBLICLY FILED

competitive benefit in a relevant product and geographic market?

14.    If a restraint on competition will result, whether the purpose and nature of the restraint is primarily to decrease competition or to serve another purpose?

15.    Who are the competitors in any of the asserted relevant markets or submarkets?

16.    Whether there are barriers to entry into any of the asserted relevant markets or submarkets?

17.    Whether ATP has the ability to raise prices above the competitive level in any of the asserted relevant product markets for a sustained period of time?

18.    What economic forces restrain Defendants' freedom to set the prices paid to players or to restrict the demand for player services or Defendants' freedom to set the prices charged to sponsors, broadcasters and fans or to restrict supply to those consumers, including actual and potential competition from other firms and their products?

19.    Whether a price increase by ATP would result in customers substituting other products for ATP's products in any of the asserted relevant product markets for a sustained period of time?

20.    Whether Plaintiffs have supported conduct or activity they now challenge as anticompetitive?

21.    Whether Plaintiffs have expressed a desire to enjoy in the future the benefits of conduct or activity they now challenge as anticompetitive?

22.    If a restraint on competition will result from a knowing agreement among separate entities, whether the restraints also benefits or will benefit competition in other ways, such as by increased product quality and consistency; improved efficiency; greater predictability; increased marketing; increased promotion and greater availability of consumer information; expanded

3

June 2, 2008 .                                    REDACTED VERSION – PUBLICLY FILED

product availability; increased investment; or generally, by permitting the parties who have
agreed to the challenged restraint to be more effective competitors in a relevant market.

23.   If a restraint on competition will result from a knowing agreement among separate
entities, whether the parties or market participants believe there are benefits or utilities to such
restraints, such as a decrease in "free rider" behavior in the marketplace?

24.   If the challenged restraints do result in competitive benefits, whether the restraints
were reasonably necessary to achieve the benefits or whether the same benefits could have been
readily achieved by other, reasonably available alternative means?

25.   If the challenged restraints were reasonably necessary to achieve competitive
benefits, whether the competitive harm to competition and consumers substantially outweighs
the competitive benefits of those restraints to competition and consumers?

26.   If the asserted submarket for player services is a relevant market, whether any of
the Defendants have conspired with any separate entity with whom they otherwise compete in
that market to set the price for player services in that market?

27.   If such an agreement to fix prices exists, whether the agreement had an
anticompetitive effect on the market for player services?

28.   If such an anticompetitive effect exists, whether Plaintiffs were injured by that
anticompetitive effect on the market for player services?

29.   If Plaintiffs were injured by an anticompetitive effect on the market for player
services by an agreement to fix prices among competitors, whether the agreement had any
procompetitive benefits, whether the agreement at issue was reasonably necessary to achieve
those benefits, and whether the anticompetitive effects substantially outweigh those
procompetitive benefits?

4

June 2, 2008

REDACTED VERSION – PUBLICLY FILED

30. Whether Defendants have agreed with any horizontal competitors to allocate player services and customers for whom they otherwise would have competed in any relevant product and geographic market?

31. If such agreement exists, whether this agreement had an anticompetitive effect on the relevant product market that was divided up?

32. If such anticompetitive effect exists, whether Plaintiffs were injured by that anticompetitive effect?

33. If Plaintiffs were injured by such an anticompetitive effect, whether the agreement had any procompetitive benefits, whether the agreement at issue was reasonably necessary to achieve those benefits, and whether the anticompetitive effects substantially outweigh those procompetitive benefits?

34. Whether Defendants have agreed with any horizontal competitors to allocate territories or geographical areas in which they would otherwise have competed for the purchase of player services and calendar positions and the sale of sponsorships and broadcast rights in any relevant product and geographic market?

35. If such agreement exists, whether this agreement had an anticompetitive effect on the relevant product market that was divided up?

36. If such anticompetitive effect exists, whether Plaintiffs were injured by that anticompetitive effect?

37. If Plaintiffs were injured by such an anticompetitive effect, whether the agreement had any procompetitive benefits, whether the agreement at issue was reasonably necessary to achieve those benefits, and whether the anticompetitive effects substantially outweigh those procompetitive benefits?

5

June 2, 2008                                REDACTED VERSION – PUBLICLY FILED

38.    Whether Defendants have agreed with any horizontal competitors to allocate product or service markets in which they would otherwise have competed in any relevant product and geographic market?

39.    If such agreement exists, whether this agreement had an anticompetitive effect on the relevant product market that was divided up?

40.    If such anticompetitive effect exists, whether Plaintiffs were injured by that anticompetitive effect?

41.    If Plaintiffs were injured by such an anticompetitive effect, whether the agreement had any procompetitive benefits, whether the agreement at issue was reasonably necessary to achieve those benefits, and whether the anticompetitive effects substantially outweigh those procompetitive benefits?

42.    Whether Defendants have agreed with any horizontal competitors to limit production of top-tier professional men's tennis tournaments in any relevant product and geographic market?

43.    If such agreement exists, whether this agreement had an anticompetitive effect on the relevant product market?

44.    If such anticompetitive effect exists, whether Plaintiffs were injured by that anticompetitive effect?

45.    If Plaintiffs were injured by such an anticompetitive effect, whether the agreement had any procompetitive benefits, whether the agreement at issue was reasonably necessary to achieve those benefits, and whether the anticompetitive effects substantially outweigh those procompetitive benefits?

46.    Whether Defendants have agreed with any horizontal competitors not to deal with

6

June 2, 2008                          REDACTED VERSION – PUBLICLY FILED

Plaintiffs except under discriminatory terms, specifically with regard to player services, ATP membership rights, and calendar dates in any relevant product and geographic market?

47.    If such agreement exists, whether this agreement had an anticompetitive effect on the relevant product market?

48.    If such anticompetitive effect exists, whether Plaintiffs were injured by that anticompetitive effect?

49.    If Plaintiffs were injured by such an anticompetitive effect, whether the agreement had any procompetitive benefits, whether the agreement at issue was reasonably necessary to achieve those benefits, and whether the anticompetitive effects substantially outweigh those procompetitive benefits?

**Sherman Act Section 2**

50.    Whether Plaintiffs have proven the existence of relevant product markets or submarkets for men's professional tennis tournaments, men's professional tennis players' services, broadcasting men's professional tennis events, fans of live men's professional tennis, and sponsoring men's professional tennis events?

51.    Whether, for any proven relevant product market or submarket, Plaintiffs have proven the existence of their asserted geographic market?

52.    What ATP's market share is in any proven relevant product and geographic market?

53.    What, if any, economic forces restrain Defendants' freedom to set the prices paid to players or to restrict the demand for player services or Defendants' freedom to set the prices charged to sponsors, broadcasters and fans or to restrict supply to those consumers, including actual and potential competition from other firms and their products?

7

54... Whether ATP has the power to profitably raise prices substantially above the competitive level for a significant period of time in any proven relevant product and geographic market in light of market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors?

55. If such power is found, whether ATP "willfully" acquired or maintained such power in that market by engaging in legitimate business conduct consistent with competition on the merits, that provides benefits to consumers or would make business sense apart from any effect it has on excluding competition or harming competitors, including by supplying better products or services, possessing superior business skills, or because of luck?

56. Whether Defendants had a specific intent to such power in a relevant product market and geographic market?

57. If such intent is found, whether there is a dangerous probability that Defendants would achieve an intended goal of monopoly power in the relevant product market and geographic market?

58. Whether Plaintiffs were in fact injured as a result of Defendants' alleged violation of the antitrust laws?

59. Whether Defendants' alleged illegal conduct was a material cause of Plaintiffs' injury?

60. Whether any injury to Plaintiffs resulting from Defendants' alleged illegal conduct was caused by a reduction in competition or conduct that would otherwise harm consumers?

61. If the requisite injury and causation is proven, the extent to which Plaintiffs could have avoided such injury through the exercise of reasonable care and prudence?

8

62.    If the requisite injury and causation is proven, what amount of damages to the Hamburg Tournament Plaintiffs have proven to be necessary to place that tournament in as near as possible the position in which it would have been if the alleged antitrust violation had not occurred, but without providing any benefit of any conduct found to be in violation of the antitrust laws?

### Fiduciary Duty

63.    Whether, in adopting and implementing the Brave New World plan, the ATP Directors acted in good faith, in a manner they reasonably believe to be in the best interest of ATP, and with the care that ordinarily prudent persons would reasonably be expected to exercise in a like position under similar circumstances given the nature of the business, the urgency and magnitude of a problem, the corporation's size and complexity, and the custom, practice, and procedures of similar corporations?

64.    Whether, in adopting and implementing the Brave New World plan, the ATP Directors acted with reckless indifference to or a deliberate disregard of the whole body of members or outside the bounds of reason given (1) the reliability of, and confidence to be placed in, other directors, officers, employees, experts, and other persons and committees of the board, (2) the state of the corporation's business at the time of the alleged act, omission, or failure of oversight, (3) the state of the economy or areas of the economy at the time of the alleged act, omission, or failure of oversight, (4) the complexity and scale of the corporation at the time of the alleged act, omission, or failure of oversight, (5) the precise role the officer or director played within the corporation at the time of the alleged act, omission, or failure of oversight, (6) the policies of the board of directors and committees of the board at the time of the alleged act, omission, or failure of oversight, and (7) other relevant circumstances?

9

June 2, 2008                            REDACTED VERSION – PUBLICLY FILED

65.    Whether Plaintiffs have proven that any ATP Director whose vote was necessary to approve any challenged action had an undisclosed personal financial interest in the action that actually did or likely would have affected that Director's actual vote?

66.    Whether any asserted "interest" in the adoption and implementation of the Brave New World on the part of any ATP Director is simply the interest in benefitting the membership as a whole or a class of members to which the ATP Director belongs?

67.    If Plaintiffs carry their burden to rebut the business judgment rule by a preponderance of the evidence, whether the adoption and implementation of the Brave New World was "entirely fair" to the corporation and its membership given (a) how the action was initiated, (b) how the action was structured, (c) how the action was considered or negotiated, (d) how the directors addressed interests of different constituencies of the members; and (e) how the approval of the directors was obtained?

68.    Whether, in adopting and implementing the Brave New World plan, the ATP Directors exercised the utmost good faith in furthering the interests of ATP and conserving its property?

69.    Whether, in adopting and implementing the Brave New World plan, the ATP Directors knowingly caused the ATP to violate the antitrust laws?

70.    If Plaintiffs prove any breach of fiduciary duty as to which they have standing to complain, whether Plaintiffs have sustained or will sustain a loss of some type?

71.    If Plaintiffs have proven injury, whether such loss could have been avoided if the ATP Director(s) had performed his or their fiduciary duties as required?

72.    If Plaintiffs prove injury caused in fact by a Director's action or omission, whether (1) the ATP Directors' acts or omissions were substantial factors in bringing about the

10

REDACTED VERSION – PUBLICLY FILED

loss, and (2) the likelihood of injury would have been foreseeable to persons in the ATP Directors' positions under similar circumstances?

73.    If Plaintiffs prove that one or more Director Defendants have committed a breach of fiduciary duty, whether Plaintiffs agreed to or concurred with any action(s) of any Director Defendant(s), with knowledge of the facts relating to the interest of the Director Defendant(s) in the action.

74.    If Plaintiffs prove that one or more Director Defendants have committed a breach of fiduciary duty, whether Plaintiffs had full knowledge of their asserted rights and the material facts and (1) remained inactive for a considerable time; (2) freely did what amounts to recognition of the complained-of act; or (3) acted in a manner inconsistent with the subsequent repudiation, which led the Defendants to believe the act has been approved.

75.    If Plaintiffs prove that one or more Director Defendants have committed a breach of fiduciary duty, whether Defendants reasonably relied on Plaintiffs' prior agreements to, requests for, support of, or participation in the challenged conduct (or similar conduct) and suffered a prejudicial change of position as a result of their reliance.

### Tortious Interference

76.    Whether Plaintiffs have proven by a preponderance of the evidence (a) the existence of a contract solely between Plaintiffs and parties other than Defendants; (b) that Defendants knew of the contract; (c) that the contract was breached; (d) that Defendants' adoption and implementation of the Brave New World plan was a significant factor in causing the breach of the contract; (e) that the primary purpose of Defendants' adoption and implementation of the Brave New World plan was to interfere with existing and prospective contracts between Plaintiffs and some third party or parties; (f) that Defendants' adoption and

11

June 2, 2008                          REDACTED VERSION – PUBLICLY FILED

implementation of the Brave New World plan was without not justified to protect its own economic interest; and (g) Plaintiffs were injured by the alleged interference.

77.     Whether Plaintiffs have proven by a preponderance of the evidence (a) the existence of a valid business relationship or expectancy between Plaintiffs and some third party with respect to the Hamburg Tournament; (b) that Defendants knew of the relationship or expectancy; (c) that the relationship or expectancy was breached or terminated; (d) that Defendants' adoption and implementation of the Brave New World plan was independently wrongful, (e) that Defendants' adoption and implementation of the Brave New World plan intentionally induced or caused the breach or termination of the relationship or expectancy; (f) that Defendants' adoption and implementation of the Brave New World plan was not justified to protect its own economic interest; and (g) Plaintiffs were injured by the alleged interference with respect to the Hamburg Tournament.

78.     If Plaintiffs prove that Defendants intentionally interfered with Plaintiffs' existing contracts or with a valid business relationship or expectancy with respect to the Hamburg Tournament, what amount of damages, if any, will fairly and adequately compensate Plaintiffs for the monetary loss of the contractual breaches suffered by Plaintiffs with respect to the Hamburg Tournament and any other losses suffered by Plaintiffs with respect to the Hamburg Tournament as a direct result of Defendants' improper interference?

79.     Whether some or all such damages could have been avoided through the expenditure of reasonable effort and the use of reasonable precautions by Plaintiffs?

**Conversion**

80.     If Plaintiffs' alleged right in their ATP membership with respect to the Hamburg Tournament is a property right that is the proper subject of a conversion claim, whether

12

June 2, 2008 REDACTED VERSION -- PUBLICLY FILED

Defendants have wrongfully exercised dominion over that right as opposed to diminishing any claimed value of that right?

81.  If Defendants wrongfully exerted dominion over a cognizable property right in Plaintiffs' ATP membership with respect to the Hamburg Tournament, whether Plaintiffs have suffered any damages as a result?

82.  If Plaintiffs have suffered any damages as a result of Defendants' wrongful exercise of dominion over a cognizable property right in Plaintiffs' ATP membership with respect to the Hamburg Tournament, what amount of damages, if any, will fairly and adequately compensate Plaintiffs for their loss?

83.  Whether some or all such damages could have avoided through the expenditure of reasonable effort and the use of reasonable precautions by Plaintiffs?

13

REDACTED VERSION -- PUBLICLY FILED

# EXHIBIT 2(c)

REDACTED VERSION – PUBLICLY FILED

**EXHIBIT 2(c) TO FINAL PRETRIAL ORDER**

**PLAINTIFFS' STATEMENT OF CONTESTED ISSUES OF LAW**

I.     **Sherman Act § 1 Claims.**

Section 1 of the Sherman Act ("Section 1") forbids "[e]very contract, combination ... or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. A Section 1 claim has two elements: (1) the Defendant(s) participated in an agreement (2) that unreasonably restrained or will restrain trade in the relevant market. A plaintiff who has been harmed by the anticompetitive restraint has suffered an antitrust injury and has standing to bring suit. *Volvo N. Am. Corp. v. Men's Int'l. Prof'l. Tennis Council*, 857 F.2d 55, 66 (2d Cir. 1988).

"Restrictions on price and output are the paradigmatic examples of restraints of trade that the Sherman Act was intended to prohibit." *NCAA v. Bd. of Regents of the Univ. of Oklahoma*, 468 U.S. 85, 107-08 (1984). Price fixing and market divisions among competitors are considered *per se* violations of Section 1 because the probability that these practices are anticompetitive is so high. *Id.* at 101. Under this *per se* analysis, the element of unreasonable restraint in a relevant market would be presumed.

A body of law has developed which distinguishes pro-competitive from anticompetitive behavior in the sports-antitrust arena. Courts have found agreements to be pro-competitive where any restraint on competition is necessary to the goal of preserving the essential character and integrity of the game, such as a regulation prohibiting certain types of tennis rackets. *See, e.g., Gunter Harz Sports, Inc. v. U.S. Tennis Ass'n. Inc.*, 511 F.Supp. 1033 (D. Neb. 1981). Among other things, anticompetitive behavior includes the preclusion of player participation in certain events or the pooling television rights. *See, e.g., Volvo*, 857 F.2d 55, 66 (2nd Cir.1988).

A.     **Joint action.**

REDACTED VERSION – PUBLICLY FILED

A §1 claim requires an agreement among or between separate economic actors. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 770-71, 104 S.Ct. 2731, 2741, 81 L.Ed.2d 628 (1984) The vast majority of courts that have considered §1 claims in the sports context treat sports leagues as a combination of separate entities, such that the agreement element of §1 is met. *See, e.g., Fraser v. Major League Soccer, L.L.C.*, 284 F.3d 47, 59 (1ˢᵗ Cir. 2002); *St. Louis Convention & Visitors Comm'n v. Nat'l Football League*, 154 F.3d 851 (8ᵗʰ Cir. 1998); *Sullivan v. Nat'l Football League*, 34 F.3d 1091, (1ˢᵗ Cir. 1994); *Los Angeles Mem. Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381 (9ᵗʰ Cir.), *cert. denied*, 469 U.S. 990 (1984); *N. Am. Soccer League v. Nat'l Football League*, 670 F.2d 1249, 1256-58 (2d. Cir.), *cert. denied*, 459 U.S. 1074 (1982); *McNeil v. Nat'l Football League*, 790 F.Supp. 871 (D.Minn. 1992).

In cases involving the NFL, for example, courts have relied on a number of facts in consistently determining that it is not a single entity for antitrust analysis purposes, including the following: its member teams are separately owned and operated; its member clubs do not share expenses, capital expenditures, profits or losses with any other member; each club is managed independently; profits vary widely from team to team, and teams do not exchange or share their accounting books or records; and members compete in the acquisition of coaches, management personnel, and players. *See McNeil*, 790 F.Supp. at 879 n.10 (citing, *inter alia, Los Angeles Mem. Coliseum Comm'n*, 726 F.2d at 1389-90; *N. Am. Soccer League*, 670 F.2d at 1252).

Accordingly, "[c]ourts have consistently held that, since joint ventures—including sports leagues and other such associations—consist of multiple entities, they can violate § 1 of the Sherman Act." *Volvo*, 857 F.2d at 71 (citing *Bd. of Regents*, 468 U.S. at 99 n. 18) (additional citations omitted); *Metropolitan Intercollegiate Basketball Ass'n v. NCAA*, 337 F.Supp.2d 563,

570 (S.D.N.Y. 2004) (hereinafter "*MLBA*"). In particular, sports leagues should not be considered single entities "when curtailing competition for players who have few other market opportunities." *Chicago Prof'l Sports, Ltd. v. NBA*, 95 F.3d 593, 600 (7th Cir. 1996) ("*Bulls II*").

**B.    Unreasonable restraints of trade in a relevant market.**

**1.    Violations of the Act normally subject to a *Per Se* Analysis.**

**a.    Horizontal price fixing.**

Horizontal price fixing is price fixing between competitors for goods or services. It is generally considered one of the most egregious violations of Section 1. *See Federal Trade Comm'n v. Ticor Title Ins. Co.*, 504 U.S. 621, 639 (1992) ("no antitrust offense is more pernicious than price fixing.") (citations omitted). Generally, "'agreements among competitors to fix prices on their individual goods and services are among those concerted activities' that are considered *per se* illegal under [§ 1]." *Id.* (quoting *Broadcast Music, Inc. v. Columbia Broadcasting Sys.*, 441 U.S. 1, 8 (1979)).

**b.    Horizontal market division.**

A horizontal market division is the division of an identifiable market by competitors acting at the same level of the distribution chain for products or services. *Volvo*, 857 F.2d at 72. Such market divisions are normally considered *per se* illegal. *Id.*

**c.    Group boycott or concerted refusal to deal.**

"Generally, a group boycott is 'an agreement by two or more persons not to do business with any other individuals, *or to do business with them only on specified terms*.'" *Volvo*, 857 F.2d at 71 (quoting *Mackey v. Nat'l Football League*, 543 F.2d 606, 618 (8th Cir. 1976)) (emphasis in original). "To prevail on a group boycott or refusal to deal claim, a plaintiff must demonstrate that the defendant intends to restrain competition, or to enhance or expand his

3

REDACTED VERSION – PUBLICLY FILED

monopoly, and has acted coercively." *Volvo*, 857 F.2d at 71.  Group boycotts are normally

considered *per se* § 1 violations. *Law v. NCAA*, 134 F.3d 101, 1021-22 (10th Cir. 1998) ("*Law

II*").

### d.    The Pooling Of Television Rights.

Per the Sports Broad Casting Act of 1961 ("SBA"), 15 U.S.C. § 1291, the pooling and

sale of television rights by a sports league or governing body, except when done by the four

major United States sports leagues (NFL, MLB, NBA and NHL) for sale on free television, may

constitute an unreasonable restraint on trade. *See U.S. v. Nat'l Football League*, 116 F.Supp. 319

(E.D.Penn. 1953) ("*NFL I*") (superseded by statute).  The *NFL I* Court held that the NFL's

prohibition on individual teams selling broadcasting rights to competing television networks

when the home team was playing in another market was an unreasonable restraint of trade. *Id.* at

326-27.

The *NFL I* ruling became a problem for the NFL in 1961 when it decided to sell pooled

broadcasting rights to Columbia Broadcasting System (CBS), which would allow CBS to

determine where to broadcast NFL games.  *See* Lacie L. Kaiser, *Revisiting The Sports

Broadcasting Act of 1961: A Call For Equitable Antitrust Immunity From Section One Of The

Sherman Act For All Professional Sports Leagues*, 54 DEPAUL L.REV. 1237 (Summer 2005)

(hereinafter "Revisiting The SBA").  Fearing the *NFL I* holding might interfere with this plan,

the NFL sought a declaratory judgment that the CBS contract was legal. *See U.S. v. Nat'l

Football League*, 196 F.Supp. 445 (E.D.Penn. 1961)("*NFL II*").  The *NFL II* Court found that the

pooling of television rights in a contract with CBS that provided CBS with the right to

determine, within its own discretion, what games would be televised unreasonably restricted the

individual NFL clubs from selling broadcast rights for their own games to any other television

4

REDACTED·VERSION – PUBLICLY FILED

network. *Id.* at 446.. This, the Court held, constituted an unreasonable restraint of trade. *Id.* In response, the NFL lobbied Congress and received a special exemption from section one of the Sherman Act – the SBA – thereby allowing the NFL (and MLB, the NBA and the NHL who were granted the same limited immunity) to bypass the *NFL II* ruling solely for the purpose of pooling their television rights for sale to "sponsored telecasting," *i.e.*, free television networks. *See Shaw v. Dallas Cowboys Football Club, Ltd.*, 172 F.3d 299, 300 (3rd Cir. 1999).

Technology advanced, and in or about 1999 the NFL entered into an agreement to sell its pooled television rights to satellite distributors. *Id.* at 299-300. A group of plaintiffs brought a class action that challenged the NFL's actions, alleging that this agreement violated the Sherman Act by causing artificially high and noncompetitive prices for NFL satellite broadcasts and restricting the options available to NFL fans. *Id.* at 300. The NFL moved to dismiss the action, relying on the SBA, and the district court denied this motion. *Id.* The Third Circuit, affirming the district court's "well-reasoned opinion," held that the SBA was "a limited exception to the normal prohibition on monopolistic behavior, one which permitted [the NFL] to sell pooled rights to sponsored telecasters and which expressly did *not* apply to subscription television." *Id.* at 302 (internal quotations omitted) (emphasis in original). The case was remanded, and the NFL promptly settled on appeal.

The ATP does not enjoy the NFL's "limited exception to the normal prohibition on monopolistic behavior," which permits the NFL to sell pooled television rights for "terrestrial television." Accordingly, the logic of the *NFL II* decision applies to the ATP – a logic reinforced by the very fact that the NFL, as admitted expressly in congressional hearings, required an exception to the antitrust laws of the United States in order to sell its pooled television rights. *See* H.R. 8757, 87th Cong. 36 (Aug. 28, 1961). .

REDACTED VERSION – PUBLICLY FILED

### 2.    The Rule of Reason Analysis.

If the Court determines that the Defendants' actions are not *per se* unreasonable, under the rule of reason, whether the ATP's actions are considered reasonable depends on their effects on the relevant market balanced against any procompetitive justifications. *MIBA*, 337 F.Supp.2d at 571; *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg.*, 61 F.3d 123, 127 (2nd Cir. 1995). Establishing the rule of reason analysis involves three steps: (1) the plaintiff bears the initial burden of showing that the challenged action has had an actual adverse effect on competition as a whole in a relevant market; (2) if the plaintiff does so, the burden shifts to the defendant to establish the procompetitive "redeeming virtues" of the action; and, (3) if the defendant does so, the plaintiff must then show that the same procompetitive effect could be achieved through alternative means that are less restrictive of competition. *Id.*

Ultimately, courts that have examined the action of sports leagues or tours have found that contested conduct is illegal where "member institutions may not compete in terms of price and output." *Bd. of Regents*, 468 U.S. at 110 n. 40.

### a.    Anticompetitive Effect.

"A plaintiff may establish anticompetitive effect indirectly by proving that the defendant possessed the requisite market power within a defined market or directly by showing actual anticompetitive effects, such as control over output or price." *Law II*, 134 F.3d at 1019 (citations omitted). "A naked, effective restraint on market price or volume can establish anticompetitive effect under a truncated rule of reason analysis" known as the "quick look" rule of reason analysis. *Id.* (citing *Chicago Prof'l Sports Ltd. P'ship v. NBA*, 961 F.2d 667, 674 (7th Cir. 1992) ("*Bulls I*")). "Thus, where a practice has obvious anticompetitive effects ... there is no need to prove the defendant possesses market power." *Id.* at 1020. "[T]he court is justified in

REDACTED VERSION – PUBLICLY FILED

proceeding directly to the question of whether the procompetitive justifications advanced for the restraint outweigh the anticompetitive effects under a 'quick look' rule of reason." *Id.* (citing *Bulls I*, 961 F.2d at 674).

### b.    Procompetitive Justification.

Once a plaintiff demonstrates anticompetitive effect, the defendants carry a "heavy burden of establishing an affirmative defense which competitively justifies" the infringement on the Sherman Act's protected domain. *Bd. of Regents*, 468 U.S. at 113; *Law v. NCAA*, 902 F.Supp. 1394, 1406 (D.Kan.1998) ("*Law I*"). Procompetitive justifications must apply to the same market in which the restraint is found. *Law I*, 902 F.Supp. at 1406; *U.S. v. Popco Assoc. Inc.*, 405 U.S. 596, 610 (1972); *Sullivan*, 34 F.3d at 1112.

### 3.    Market Power – Applicable markets.

"In the antitrust context, the relevant market has two components: the product market and the geographic market." *Los Angeles Memorial Coliseum Comm'n*, 726 F.2d at 1392. "A market definition must look at all relevant sources of supply, either actual rivals or eager potential entrants to the market." *Id.*

The product market is determined through two tests: "first, reasonable interchangeability for the same or similar uses; and second, cross-elasticity of demand, an economic term describing the responsiveness of sales of one product to price changes in another." *Id.* at 1393 (citations omitted). Similarly, the geographic market is described as the economically significant area of effective competition in which the relevant products are traded. *Id.* Like the NFL in *Los Angeles Memorial Coliseum Commission*, the ATP "has limited substitutes from a consumer standpoint." *Id.* Accordingly, "given the exceptional nature of the industry," a "precise market definition" is "especially difficult." *Id.* at 1394.

7

REDACTED VERSION – PUBLICLY FILED

A precise market definition is unnecessary: "the purpose in antitrust law of market definition … is not an end unto itself but rather exists to illuminate a practice's effect on competition." *Law v. NCAA*, 134 F.3d 1010, 1020 (10th Cir. 1998). "As a matter of law, the absence of proof of market power does not justify a naked restriction on price or output. To the contrary, where there is an agreement not to compete in terms of price or output, 'no elaborate industry analysis is required to demonstrate the anticompetitive character of such an agreement.'" *Bd. of Regents*, 468 U.S. at 109 (quoting *Nat'l Soc'y of Prof'l Engineers v. U.S.*, 435 U.S. 679, 692 (1978)).

### D.    Antitrust Injury.

To prove antitrust injury, a Plaintiff need only show (a) harm or the danger of harm to competition; and (b) an injury to the Plaintiff arising from that harm. *See, e.g. Tunis Bros. v. Ford Motor Co.*, 952 F.2d 715, 728 (3d. Cir. 1992); *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 625 (7th Cir. 2003).

## II.    Sherman Act Section 2 Claims.

Section 2 of the Sherman Act (15 U.S.C. § 2) provides that: "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony…." The GTF has three causes of action under Section 2: monopolization, attempted monopolization and conspiracy to monopolize.

### A.    Monopolization.

"The offense of monopolization under [Section 2] consists of two elements: (1) the possession of monopoly power in the relevant market; and (2) the willful acquisition or

REDACTED VERSION – PUBLICLY FILED

maintenance of that power, as distinguished from growth or development as a consequence of superior product, business acumen, or historic accident." *Volvo*, 857 F.2d at 73.

**B.    Attempted monopolization.**

"The offense of attempted monopolization under [Section 2] requires proof of three elements: (1) anti-competitive or exclusionary conduct; (2) specific intent to monopolize; and (3) a dangerous probability that the attempt will succeed." *Volvo*, 857 F.2d at 73-74. "Proof of the first element of an attempted monopolization claim, anticompetitive or exclusionary conduct, may be used to infer the second element, specific intent to monopolize; and when coupled with proof of monopoly power, evidence of anticompetitive conduct may demonstrate a dangerous probability of success." *Id.* (citations omitted).

**C.    Conspiracy to monopolize.**

"The offense of conspiracy to monopolize requires proof of (1) concerted action, (2) overt acts in furtherance of the conspiracy; and (3) specific intent to monopolize." *MIBA*, 337 F.Supp.2d at 573; *Volvo*, 857 F.2d at 74.

**III.    Fiduciary Duties**

The directors of a non-profit membership corporation have fiduciary duties to act in the best interest of the corporation's members, and must set aside their personal, parochial interests in so doing. *Baring v. Condrell*, 2004 WL 2340047, *5 (Del.Ch. Oct. 18, 2004) (unpublished opinion); *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939); *Hollinger Int'l, Inc. v. Black*, 844 A.2d 1022, 1061-62 (Del. Ch. 2004), *aff'd*, 872 A.2d 559 (Del. 2005).

These fiduciary duties are equitable in nature and exist in addition to any legal protections found in statute or in contract (such as the ATP's Bylaws) that exist for the protection

REDACTED VERSION – PUBLICLY FILED

of the ATP's members. *Sample v. Morgan,* – A.2d. – , 2007 WL 177856, *13 (Del.Ch. Jan. 23, 2007).

Directors of a non-profit Delaware corporation owe their fiduciary duties to all of the corporation's members and may not discriminate among members to advance their own personal interests. *See Baring v. Watergate East, Inc.,* 2004 Del. Ch. LEXIS 148, at *20-21 (Del. Ch. 2004). Those who control a non-profit Delaware corporation have a special duty to advance that corporation's goals, as articulated in its Certificate of Incorporation and Bylaws, and any action that poses a palpable and identifiable threat to those goals is contrary to the Certificate and Bylaws and hence *ultra vires. See, e.g., Oberly v. Kirby,* 592 A.2d 445, 462 (Del. 1991).

Delaware recognizes three related, but independent, fiduciary duties -- those of loyalty, due care and good faith.

### A. Corporate decisionmaking and the Business Judgment Rule

When making decisions, directors must proceed with a critical eye and on an informed basis when assessing all relevant material information. *Smith v. Van Gorkom,* 488 A.2d 858, 872-73 (Del. 1985); *Brehm v. Eisner,* 746 A.2d 244, 259 (Del. Supr. 2000). Corporate officers and directors must avoid acting in subjective bad faith or with a conscious disregard for their responsibilities. *In re Walt Disney Co. Deriv. Litig.,* 906 A.2d 27, 64-67 (Del. 2006) (*"Walt Disney II"*).

The business judgment rule is a presumption that, in making a business decision, the directors of a corporation acted "on an informed basis…and in the best interest of the company." *In re Walt Disney Co. Deriv. Litig.,* 907 A.2d 693, 746-47 (Del. 2005) (*"Walt Disney I"*). The business judgment rule applies to a business decision unless there is evidence of "fraud, bad faith, or self-dealing in the usual sense of personal profit or betterment" on the part of the directors. *See Sinclair Oil Corp. v. Levien,* 280 A.2d 717, 720 (Del. 1971). It will not protect

10

REDACTED VERSION – PUBLICLY FILED

decisions in which the directors are interested or lack independence relative to the decision, do not act in good faith, act in a manner that cannot be attributed to a rational business purpose, or reach their decision by a grossly negligent process that includes the failure to consider all material facts reasonably available. *Brehm v. Eisner*, 746 A.2d 244, 264 n.66 (Del. Supr. 2000).

The presumption applied by the business judgment rule can be rebutted "by a showing that the board violated one of its fiduciary duties in connection with the challenged transaction. In that event, the burden shifts to the director defendants to demonstrate that the challenged transaction was 'entirely fair' to the corporation and its shareholders." *Walt Disney I*, 907 A.2d at 747 (citations omitted). This entire fairness standard applies when the board action that is challenged required the affirmative vote of an interested director. *In re Ply Gem Indus. S'holders Litig.*, 2001 Del. Ch. LEXIS 84, at *27 n.33 (Del. Ch. June 26, 2001). It is defendants' burden to prove that the challenged transaction was entirely fair to its members. *Weinberger v. UOP*, 457 A.2d 701, 710 (Del. 1983).

The "liability of the directors must be determined on an individual basis because of the nature of their breach of duty (if any), and whether they are exculpated from liability for that breach, can vary from director to director." *In re Emerging Communications Inc. S'holders Litig.*, 2004 WL 1305745 *38 (Del.Ch. Jun. 4, 2004) Corporate board actions may also be analyzed collectively, at a board level, to determine whether the business judgment rule applies. *Smith v. Van Gorkom*, 488 A.2d 858, 889 (Del. 1985).

### B.    Duty of Loyalty

The duty of loyalty provides that "[c]orporate officers and directors are not permitted to use their position of trust and confidence to further their private interests." *Guth v. Loft, Inc.*, 5

REDACTED VERSION – PUBLICLY FILED

A.2d 503, 510 (Del. 1939). The duty of loyalty "requires an undivided an unselfish loyalty to the corporation" so that "there be no conflict between duty and self interest." *Id.*

There is "no safe-harbor for divided loyalties in Delaware, and … the duty of loyalty, in essence, 'mandates that the best interests of the corporation and its shareholders take [ ] precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally.'" *Walt Disney I*, 907 A.2d at 751 (quoting *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983)).

"The classic example that implicates the duty of loyalty is when a fiduciary either appears on both sides of a transaction or receives a personal benefit not shared by all shareholders." *Walt Disney I*, 907 A.2d at 751. In addition, a violation of positive law is a breach of the fiduciary duty of loyalty. *See Walt Disney I*, 907 A.2d at 754 n. 447 ("one cannot act loyally as a corporate director by causing the corporation to violate the positive laws it is obliged to obey").

Injury is not required to demonstrate a breach of the fiduciary duty of loyalty; rather, "what is important in determining whether there has been a breach of a fiduciary duty by [defendants] is whether action inconsistent with their obligations has been taken, not the effects of the action." *Universal Studios, Inc. v. Viacom, Inc.*, 705 A.2d 579, 594 (Del.Ch. 1997). It is an act of disloyalty for a fiduciary to profit personally from the use of information secured as a result of his or her fiduciary status. *Cf. Oberly*, 592 A.2d at 463.

No part of the earnings of a corporation organized under section 501(c)(6) of the Internal Revenue Code may inure to the benefit of any private shareholder or individual. IRC 501(c)(6); Reg. 1.501(c)(6)-1. "None of the income or assets of a tax-exempt organization subject to the private inurement doctrine may be permitted to directly or indirectly unduly benefit an individual or other person who has a close relationship to the organization, particularly those who are in a

12

REDACTED VERSION -- PUBLICLY FILED

position to exercise a significant degree of control over it." Bruce R. Hopkins, THE LAW OF TAX-EXEMPT ORGANIZATIONS 484 (2003). Financial transactions that benefit corporate insiders constitute private inurement. *E.g.*, *Lowry Hospital Ass'n v. Comm'r*, 66 T.C. 850 (1976); *Maynard Hosp. Inc. v. Comm'r*, 52 T.C. 1006 (1969). An organization that violates the private inurement doctrine acts contrary to its tax-exempt status, and the IRS may revoke that status. *E.g.*, *Kenner v. Comm'r*, 33 T.C.M. 1239 (1974); *Rueckwald Foundation, Inc. v. Comm'r*, 33 T.C.M. 1383 (1974).

Under California partnership law, each partner is an agent of the partnership for the purpose of its business. An act of a partner for apparently carrying on in the ordinary course the partnership business binds the partnership. Cal. Corp. Code § 16301. "Well-established concepts of partnership doctrine impute the knowledge and actions of one partner to all others." *Friend v. H.A. Friend & Co., Inc.*, 416 F.3d 526, 533 (9th Cir. 1969).

### C.    Duty of Due Care

Pursuant to the fiduciary duty of due care, a member of a board of directors should use that amount of care which ordinarily careful and prudent persons would use in similar circumstances and consider all material information reasonably available. *See, e.g., Van Gorkom*, 488 A.2d at 872.

The directors of a corporation must be fully informed of facts that are material to their oversight of the operation and management of the corporation, and must ensure that they obtain sufficient information so as to be reasonably informed of the corporate structure, purpose, business activities, non-business activities, holdings, assets, and liabilities of the corporation in order to oversee management in their operation of the corporation. *See Van Gorkom*, 488 A.2d at 872.

REDACTED VERSION – PUBLICLY FILED

If the plaintiffs demonstrate that the directors acted with gross negligence, *i.e.*, a "reckless indifference to or a deliberate disregard of the whole body of stockholders or actions which are without the bounds of reason," then they have demonstrated a violation of the duty of due care. *Tomczak v. Morton Thiokol, Inc.*, 1990 WL 42607, at *12 (Del.Ch. Apr.5, 1990) (citations and internal quotations omitted).

### D.   Duty of good faith

Two types of conduct constitute a breach of the duty of good faith: (1) subjective bad faith, *i.e.*, an actual intent to do harm; and (2) a conscious disregard for one's responsibilities where, for example, a fiduciary acts with the intent to violate applicable positive law. *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 64-67 (Del. 2006) ("*Walt Disney II*"). This distinction is important because, due to the nature of a violation of the duty of good faith, such misconduct is a non-exculpable, nonindemnifiable violation of the fiduciary's duties. Del. Code. Ann. tit. 8, § 145(a).

Where a Delaware non-profit corporation provides information to its members, the directors of that corporation are required to assure themselves that the information is provided in a forthright and honest manner.  In doing so, the directors must refrain from providing information that the directors know or reasonably should have known was misleading or false in any material respect; in other words, they have a duty to communicate honestly with their members. *E.g., Shamrock Holdings of Cal., Inc. v. Iger*, 2005 WL 1377490, at *4-5 (Del.Ch.) (unpublished opinion); *Baring*, 2004 WL 418007, at *2 (unpublished opinion).

## IV.   Additional State Law Causes of Action.

### A.   Tortious Interference With Prospective Relationships.

The elements for intentional interference with prospective contractual or business relationships are as follows:

14

REDACTED VERSION – PUBLICLY FILED

(1) the reasonable probability of a business opportunity;

(2) the intentional interference by defendant with the opportunity;

(3) proximate causation; and

(4) damages, all of which must be considered in light of the defendant's privilege to compete or protect his business in a fair and lawful manner.

*See Lipson v. Anesthesia Servs.*, 790 A.2d 1261, 1284 (Del. Super. 2001).

The prospective business relations which are subject to the protection of this cause of action are any of potential pecuniary value to the plaintiff, such as those between the DTB and its current broadcast partners and sponsors. *Id.* Further, the "privilege to compete" does not apply to illegal conduct or conduct that should have been precluded by the relationship between the plaintiff and defendant, such as the conduct at issue in this litigation.

In determining whether interference is proper, the Delaware courts look to seven factors:

(1) the nature of the actor's conduct;

(2) the actor's motive;

(3) the interests of the other with which the actor's conduct interferes;

(4) the interests sought to be advanced by the actor;

(5) the societal interests in protecting the freedom of action and contractual relationships of the actor;

(6) the proximity or remoteness of the actor's conduct to the interference; and

(7) the relationship between the parties.

*Id.* at 1287; Restatement (Second) of Torts, § 767.

**B.    Tortious Interference with Contracts.**

Similarly, Delaware also recognizes a cause of action for interference with current contractual relationships. The elements of this claim are:

(1) a contract;

15

REDACTED VERSION – PUBLICLY FILED

(2) about which the defendants knew; and

(3) an intentional act that is a significant factor in causing the breach of the contract;

(4) without justification;

(5) which causes injury.

*Id.*

**C.      Conversion.**

The tort of conversion is defined as "any distinct act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it." *Data Mgmt. Int'l, Inc. v. Saraga*, 2007 WL 2142848, at *3 (Del. Super.) (quoting *Drug, Inc. v. Hunt*, 168 A.87, 93 (Del. 1933)). "Because conversion is an intentional tort, there is a general duty grounded in tort law to refrain from converting another's property." *Id.*

16

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 2(d)

June 2, 2008                          REDACTED VERSION – PUBLICLY FILED

## EXHIBIT 2(d) TO FINAL PRETRIAL ORDER

## DEFENDANTS' STATEMENT OF CONTESTED ISSUES OF LAW[1]

(1)     Whether ATP and its members, directors, officers, and/or agents can be considered separate actors capable of entering into a contract, combination or conspiracy subject to Section 1 of the Sherman Act.

(2)     Whether, in connection with the adoption and implementation of its Brave New World plan and issues relating to the format of the ATP Tour, ATP and its members, directors, officers, and/or agents can be considered separate actors capable of entering into a contract, combination or conspiracy subject to Section 1 of the Sherman Act.

(3)     If Section 1 is applicable, whether any of the alleged agreements in restraint of trade among ATP and its members, directors, officers, and/or agents could give rise to "per se" liability under Section 1 of the Sherman Act, given ATP's status as a professional sports organization.

(4)     If Section 1 is applicable, whether plaintiffs are required to establish relevant product and geographic markets in order to prevail under a "rule of reason" analysis of each of their claims under Section 1 of the Sherman Act.

(5)     Whether a relevant product market can be defined without considering all of the products that consumers view as reasonably interchangeable or reasonable substitutes for one another.

---

[1] These constitute contested issues of law in addition to those to be raised in defendants' forthcoming motions *in limine*. This statement of issues may be supplemented and/or amended depending upon the parties' ability to jointly submit final proposed jury instructions for the Court.

1

June 2, 2008                                    REDACTED VERSION – PUBLICLY FILED

    (6)     Whether a relevant product market must consist of all products that are reasonable substitutes for each other from a buyer's point of view; that is, the products compete with each other.

    (7)     Whether all products in a relevant product market must be reasonably interchangeable with one another.

    (8)     Whether a single relevant product market can include *both* (1) a relevant submarket that is an "input market" — *i.e.*, a submarket consisting of goods or services supplied to defendants by other — *and* (2) a relevant submarket that is an "output market" — *i.e.*, a submarket consisting of goods or services that defendant supply to others.

    (9)     Whether a relevant geographic market can be defined for a given relevant product market without considering the geographic region in which defendants face competition from other firms that compete in that relevant product market and to which customers can reasonably turn for purchases.

    (10)     Whether plaintiffs have established a relevant product market.

    (11)     Whether plaintiffs have established a relevant geographic market for any given relevant product market.

    (12)     Whether plaintiffs have established that any challenged restraint of trade has resulted in, or is likely to result in, substantial harm to competition in a relevant product and geographic market

    (13)     If plaintiffs have established that any challenged restraint of trade has resulted in, or is likely to result in, substantial harm to competition in a relevant product and geographic market, whether plaintiffs have established that the competitive harm substantially outweighs any countervailing competitive benefits shown by defendants.

2

June 2, 2008                          REDACTED VERSION – PUBLICLY FILED

(14)    Whether ATP's determination and implementation of the format of the ATP

men's professional tennis circuit, including determining the category of its tournament members,

the creation of an annual calendar, the setting of ranking points to be awarded for performance in

its events, and the adoption of rules pertaining to when and where player members shall play,

violates Section 1 of the Sherman Act.

(15)    Whether ATP's adoption and implementation of its Brave New World Plan

violates Section 1 of the Sherman Act.

(16)    Whether any of ATP's by-laws or rules challenged by plaintiffs in this action

violate Section 1 of the Sherman Act.

(17)    Whether plaintiffs have antitrust standing to challenge defendants'

determinations, rules, and conduct, including with respect to each of the theories they are

prosecuting.

(18)    Whether plaintiffs have suffered antitrust injury as a result of defendants'

determinations, rules, and conduct.

(19)    Whether the director defendants can be held personally liable under Section 1 of

the Sherman Act on the basis of their actions or conduct as directors of ATP.

(20)    Whether plaintiffs are required to establish relevant product and geographic

markets to prevail under each of their claims under Section 2 of the Sherman Act.

(21)    Whether plaintiffs have established a relevant product market.

(22)    Whether plaintiffs have established a relevant geographic market for any given

relevant product market.

(23)    Whether defendants have monopoly power in any relevant product and

geographic market.

REDACTED VERSION – PUBLICLY FILED

(24)    If defendants have monopoly power in any relevant product and geographic market, whether they willfully acquired or maintained that monopoly power by engaging in anticompetitive conduct.

(25)    If defendants willfully acquired or maintained monopoly power in a relevant product and geographic market by engaging in anticompetitive conduct, whether plaintiffs were injured in their business or property by defendants' anticompetitive conduct.

(26)    Whether plaintiffs could have suffered antitrust injury as a result of defendants' anticompetitive conduct in acquiring or maintaining monopoly power in a relevant product and geographic market.

(27)    Whether the director defendants can be held personally liable for monopolization under Section 2 of the Sherman Act on the basis of their actions or conduct as directors of ATP.

(28)    Whether defendants have engaged in any anticompetitive conduct with the specific intent to achieve monopoly power in a relevant product and geographic market.

(29)    Whether there was a dangerous probability that defendants would achieve their goal of monopoly power in the relevant product market and geographic market.

(30)    If defendants engaged in anticompetitive conduct with the specific intent to achieve monopoly power in a relevant product and geographic market and there was a dangerous probability that defendants would achieve their goal, whether plaintiffs were injured in their business or property by defendants' anticompetitive conduct.

(31)    Whether plaintiffs could have suffered antitrust injury as a result of defendants' anticompetitive conduct with the specific intent to achieve monopoly power in a relevant product and geographic market.

June 2, 2008                                    REDACTED VERSION – PUBLICLY FILED

(32)    Whether the director defendants can be held personally liable for attempted monopolization under Section 2 of the Sherman Act on the basis of their actions or conduct as directors of ATP.

(33)    Whether there was an agreement or mutual understanding between two or more separate persons, entities or enterprises to obtain or maintain monopoly power in a relevant product market and geographic market.

(34)    Whether any of the defendants knowingly became a party to that agreement or mutual understanding.

(35)    Whether any of the defendants specifically intended that the parties to the agreement would obtain or maintain monopoly power in a relevant product market and geographic market.

(36)    Whether any of the defendants committed an overt act in furtherance of this alleged conspiracy.

(37)    Whether plaintiffs were injured in their business or property because of this alleged conspiracy.

(38)    Whether plaintiffs could have suffered antitrust injury as a result of defendants' alleged conspiracy to monopolize a relevant product and geographic market.

(39)    Whether the director defendants can be held personally liable for conspiracy to monopolize under Section 2 of the Sherman Act on the basis of their actions or conduct as directors of ATP.

(40)    Whether the defendants owe fiduciary duties directly to plaintiffs GTF and QTF as individual members of ATP.

June 2, 2008                              REDACTED VERSION – PUBLICLY FILED

(41)    If the defendants do not owe fiduciary duties directly to plaintiffs GTF and QTF

individually, but instead owe fiduciary duties to ATP members as a whole, whether plaintiffs are

entitled to pursue their breach of fiduciary duty claims without having brought this action

derivatively on behalf of ATP and/or its members.

(42)    Whether the Court or the jury is responsible for determining liability under

plaintiffs' breach of fiduciary duty claims (assuming plaintiffs can pursue them), because they

are equitable claims.

(43)    Whether plaintiffs are precluded from obtaining an award of damages under their

breach of fiduciary claims (assuming plaintiffs can pursue them), because plaintiffs' complaint

does not include a prayer for damages arising out of those claims.

(44)    Whether plaintiffs are required to establish both proximate causation and actual

damages under their claims for breach of the fiduciary duty of loyalty (assuming plaintiffs are

permitted to pursue this claim and can seek damages on this claim).

(45)    Whether the duty of good faith is a subsidiary element of the duty of loyalty and

therefore not the proper subject of a separate claim.

(46)    What elements plaintiffs must show in order for the defendants not to be entitled

to the benefits of the business judgment rule (assuming plaintiffs are permitted to pursue their

breach of fiduciary duty claims).

(47)    Whether the business judgment rule applies to director decisions regarding

corporate policies or general courses of action benefiting a class of shareholders to which a

director whose vote is necessary to implement the decision or course of action belongs.

(48)    Whether the board of directors of a corporation may take an action that adversely affects the interests of a particular subgroup of the corporation's members where the action in question furthers an overriding corporate or member interest.

(49)    Whether plaintiffs can establish that defendants are not entitled to the presumption that they acted with sound business judgment in making any challenged decision at issue in this case (assuming plaintiffs are permitted to pursue their breach of fiduciary duty claims).

(50)    Whether plaintiffs can establish that any director defendant engaged in any "self-dealing" in connection with the adoption and implementation of the Brave New World plan.

(51)    Whether plaintiffs can establish that any asserted interest of any of the director defendants in the adoption and implementation of the Brave New World plan was sufficiently material to that particular director that it did or likely would have affected that particular director's vote with respect to the adoption and implementation of the Brave New World plan.

(52)    Whether any asserted interest of any of the director defendants in the adoption and implementation of the Brave New World plan was one that a reasonable board member would have regarded as a significant fact in the evaluation of the proposed transaction.

(53)    What factors may support a director defendant's showing that a particular policy decision or course of action was "entirely fair" to the corporation.

(54)    Whether defendants knowingly and intentionally interfered with any contract between plaintiffs and some third party.

(55)    Whether defendants' alleged interference caused a breach of contract between plaintiffs and some third party.

June 2, 2008  REDACTED VERSION – PUBLICLY FILED

(56)　Whether (and if so, under what circumstances) the defendants can be held liable for tortiously interfering with ATP's own contractual relationship with plaintiffs.

(57)　Whether defendants knowingly and intentionally interfered with any valid business relationship or prospective business advantage between plaintiffs and some third party.

(58)　Whether any interference by defendants with plaintiffs' contracts, business relationships or prospective business advantage was justified.

(59)　Whether any interference by defendants with plaintiffs' contracts, business relationships or prospective business advantage caused harm to plaintiffs.

(60)　Whether plaintiffs may recover damages for emotional distress and/or reputational harm arising out of defendants' purported tortious interference with plaintiffs' contracts and/or prospective business relationships.

(61)　Whether the director defendants can be held personally liable for tortious interference on the basis of their actions or conduct as directors of ATP.

(62)　Whether plaintiffs' alleged property rights in the Hamburg Membership can be the subject of a conversion claim, given the intangible nature of those rights.

(63)　Whether defendants wrongfully exerted complete dominion over plaintiffs' alleged property rights in the Hamburg Membership thereby destroying its value.

(64)　Whether changes to the plaintiffs rights or obligations with respect to the Hamburg Membership can constitute conversion.

(65)　Whether plaintiffs are precluded from obtaining an award of damages under their conversion claim (assuming plaintiffs can pursue it), because plaintiffs' complaint does not include a prayer for damages arising out of this claim.

8

June 2, 2008                                    REDACTED VERSION – PUBLICLY FILED

(66)    Whether the director defendants can be held personally liable for conversion on the basis of their actions or conduct as directors of ATP.

(67)    Whether the doctrines of waiver, estoppel, acquiescence, unclean hands or any other equitable defenses bar any or all of plaintiffs' claims.

(68)    Whether Article 3.2(d) of the Amended and Restated Bylaws of ATP Tour, Inc. and the Ninth section of the Restated Certificate of Incorporation of ATP Tour, Inc. preclude liability for defendants on any or all of plaintiffs claims.

(69)    Whether plaintiffs are entitled to be "compensated" for prospective damages — *i.e.*, damages plaintiffs assert they will suffer from the defendants' conduct in the future — if the Court issues injunctive relief against any conduct as to which liability is found.

(70)    Whether plaintiffs are required to show a connection between the damages they seek and the specific claims they have asserted against defendants.

(71)    Whether plaintiffs are entitled to collect damages consisting of *both* the purported market value of the Hamburg tournament, which plaintiffs assert will be lost as a result of ATP's restructuring plans *and* the book value of the assets owned by the Hamburg tournament, which plaintiffs assert will be lost as a result of ATP's restructuring plans, or whether such damages would constitute impermissible double counting.

(72)    Whether in addition to the purported market value of the Hamburg tournament and the book value of the assets owned by the Hamburg tournament, plaintiffs are further entitled to collect the purported value of the Hamburg tournament as a going concern, on the grounds that this value will be lost as a result of ATP's restructuring plans, or whether such damages would constitute impermissible double counting.

June 2, 2008                                          REDACTED VERSION – PUBLICLY FILED

    (73)    Whether impairment to the book value of assets is an appropriate way to measure damages.

    (74)    Whether plaintiffs are entitled to collect damages that would grant plaintiffs the benefit of the very same conduct of defendants that plaintiffs challenge as anticompetitive.

    (75)    Whether in calculating the purported market value of the Hamburg tournament plaintiffs are entitled to use as a benchmark a transaction involving the Shanghai tournament, notwithstanding that a portion of the value plaintiffs attribute to that tournament constituted Shanghai's new ATP membership fee rather than the value of operating that tournament and the facts that the Shanghai tournament will be played in a different place, during a different season, and on a different court surface than the Hamburg tournament is currently played.

    (76)    Whether plaintiffs' alleged damages are too speculative to be awarded.

    (77)    Whether plaintiffs' damages, if any, must be reduced if plaintiffs have not mitigated their damages.

    (78)    Whether plaintiffs are entitled to punitive damages.

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 3(a)

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER
REDACTED VERSION – PUBLICLY FILED

Plaintiffs' Joint Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| | | | | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST |
|---|---|---|---|---|---|
| **PTX** | **DATE OFFERED** | **OBJECTIONS** | **ADM** | **DEP EXH** | **DESCRIPTION** |
| 1 | | 802, 402, 403 | | 1 | Notice of 30(b)(6) Deposition for ATP Tour, Inc. 5/25/2007 |
| 2 | | 106, 802 | | 2 | Presentation - Aligning Management and ATP Performance: Incentive Compensation Plan Design 6/22/2004 MC0010045 – MC0010057 |
| 3 | | | | 3 | 2007 ATP calendar 2007 ATP & Challengers |
| 4 | | 106, 402, 403, 1002 | | 4 | Masters 1000 Agreement Between New Sports Entertainment [Shanghai] Ltd. And ATP Tour, Inc. 00/00/2007 ATP0084368 - ATP0084378 |
| 5 | | | | 5 | ATP "Masters 1000" Combined Tournament Application 2/2/2007 ATP0084426 - ATP0084485 |
| 6 | | 802 | | 6 | Email from Jeff Reel to Flip Galloway forwarding email re: Shanghai TMS Agreement 2/16/2007 ATP0081584 – ATP0081587 |
| 7 | | | | 7 | Brave New World  5/24-25/2006 ATP0008850 - ATP0008900 |
| 8 | | | | 8 | ATP Game Plan by Etienne de Villiers 1/00/2005 ATP0010881 - ATP0010891 |
| 9 | | | | 9 | 2008 Calendar Brainstorming 1/31/06 ATP0008754 - ATP0008783 |
| 10 | | | | 10 | ATP Additional Research 3/00/06 ATP0010963 - ATP0011012 |
| 11 | | | | 11 | BrandDriver ATP Calendar Strategy Research 5/25/06 ATP0010743 - ATP0010814 |
| 12 | | | | 12 | What a Wonderful World Progress Update 7/5/06 ATP0008959 - ATP0008982 |
| 13 | | | | 13 | What a Wonderful World Progress Update 7/13/06 ATP0008341 - ATP0008364 |
| 14 | | 802 | | 14 | Deloitte - Proposal to the ATP - Tournament financial Review 7/20/06 ATP0053840 - ATP0053862 |
| 15 | | | | 15 | WWW Outstanding Calendar Issues 8/14/06 ATP0008365 - ATP0008375 |
| 16 | | | | 16 | ATP Board of Directors Minutes 8/26/06 |
| 17 | | | | 17 | What a Wonderful World Progress Update 8/26/06 ATP0008376 - ATP0008409 |
| 18 | | | | 18 | Email from Etienne de Villiers to All ATP Staff and copy to All ATP Board; Mark Webster; Steve Plasto re: ATP Media 9/7/06 ATP0052998 - ATP0052999 |
| 19 | | 106, 403 | | 19 | Top 500 - Average # of Events Played, Points Earned (totals and per event), and % of Points total By Ranking DRAFT ATP0053466 - ATP0053469 |
| 20 | | | | 20 | Tournament Categories Comparison ATP Premium Events 2006 vs. 2009 9/26/06 ATP0009059 - ATP0009113 |
| 21 | | 403 | | 21 | Memorandum of Understanding by & Between New Sports & Entertainment [Shanghai] Ltd. And ATP Tour, Inc. 2/15/07 ATP0084486 - ATP0084489 |
| 22 | | | | 22 | Letter from Etienne to ATP Member 1/19/07 ATP0082646 - ATP0082648 |
| 23 | | 403 | | 23 | Indian Wells/Miami compared to noncombined AMS events 12/31/05 ATP0053630 - ATP0053641 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| | | | | | **PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST** |
| 24 | | 802 | | 24 | Deloitte - Presentation - Serving up the figures - ATP tournament financial review 11/13/05 ATP0010345 - ATP0010379 |
| 25 | | 106, 402, 403, 901, 1002 | | 25 | Agreement between the All England Lawn Tennis and Croquet Club and the Lawn Tennis Association and ATP Tour, Inc. 6/00/07 ATP0084405 - ATP0084425 |
| 26 | | | | 26 | Tournament Valuations 1/10/07 ATP0008591 - ATP0008602 |
| 27 | | 403 | | 1/27 | Defendants' Rule 26(A)(1) Disclosures 5/4/07 |
| 28 | | 402, 403 | | 2/28 | Subpoena to Mark Miles 7/6/07 |
| 29 | | 402, 403 | | 3/29 | Plaintiffs' Subpoena Decus Tecum and Notice of Deposition of Mark Miles 7/23/07 |
| 30 | | 403, 802 | | 4/30 | Complaint and Jury Demand 3/28/07 |
| 31 | | 802, 402, 403 | | 5/31 | Letter to Mark Miles from Bill Babcock re: McKinsey report 1/26/03 ATP0052460 - ATP0052462 |
| 32 | | | | 6/32 | Letter to Jan Kohne from Mark Miles re: DTB's request for relief from a number of financial obligations 6/20/02 ATP0054281 - ATP0054282 |
| 33 | | 106, 402, 403, 802 | | D - 1 | Email from Ulrika Hjelmsater to Ruth Munn re: Kitzbuhel Tournament Director 4/6/07 ATP0226912 - ATP0226914 |
| 34 | | | | 33 | ATP Board of Directors Minutes 11/14/06 ATP0076456 - ATP0076460 |
| 35 | | | | 34 | Melbourne ATP Board Meeting 1/9/07 ATP0007827 - ATP0007895 |
| 36 | | 106, 403 | | 35 | Letter to Etienne de Villiers from Zeljko Franulovic re: ATP's Proposed Restructuring Plan 1/11/07 Miles0038 - Miles0041 |
| 37 | | 402, 403 | | 36 | ATP Supervisor's Tournament Evaluation 2/1/07 |
| 38 | | 402, 403 | | 37 | ATP Supervisor's Tournament Evaluation 1/1/04 ATP0001784 - ATP0001786 |
| 39 | | 402, 403 | | 38 | Attachments to the Supervisor's Report ATP0021617 - ATP0021621 |
| 40 | | 402, 403, 802, 106 | | 39 | Email from Gerard Tsobanian to Andy Anson and Horst Klosterkemper re: Kitzbuhel 6/15/07 ATP0084400 |
| 41 | | 402, 403, 802 | | 40 | Letter to Juergen Hoffmann from Alfred Steinbrugger 3/21/07 ATP0084402 |
| 42 | | 402, 403, 802 | | 41 | Letter to Andy from Gerard Tsobanian re: Buying of the Kitzbuhel event 6/15/07 ATP0084401 |
| 43 | | 106 | | 42 | The 2007 ATP Official Rulebook |
| 44 | | 402, 403 | | 44 | Letter to Mark Miles from ATP Tour, inc. re: Agreement between Miles and ATP 4/12/1990 Miles0737 - Miles0747 |
| 45 | | 402, 403 | | 45 | Letter to Mark Miles from ATP Tour, inc. re: New Employment Agreement between Miles and ATP 10/9/1995 Miles0749 - Miles0758 |
| 46 | | | | 46 | Mark Miles address to General Tournament Director Meeting 11/23/1999 ATP0170878 - ATP0170881 |
| 47 | | 402, 403 | | 47 | Letter from Mark Miles to Franco Bartoni, Larry Scott and Mark Young re: Draft 1998 Calendar, Version #9 10/15/1999 ATP0013514 - ATP0013522 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER
REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 48 | | 402, 403 | | 48 | Memo from Mark Miles to Paul Annacone, Brad Drewett & Harold Solomon re: London Format Discussion 7/10/97 ATP0084166 - ATP0084173 |
| 49 | | 402, 403, 802 | | 49 | Memorandum to the File from Mark Miles re: conversation with Brian Tobin 7/6/1995 MILES1289 - MILES1290 |
| 50 | | 106, 403 | | 50 | Email from Pete Alfano to Larry Scott and Mark Miles re: Strategies 10/5/1995 ATP0220539 - ATP0220542 |
| 51 | | | | 51 | 2003 Player Meeting Miles CEO Report (FINAL) 2003 |
| 52 | | 402, 403 | | 52 | Letter to Mark Miles from ATP Tour, Inc. re: Employment Agreement 11/3/1998 MILES0759 - MILES0772 |
| 53 | | | | 53 | Consolidated Financial Statements ATP Tour, Inc. Years ended December 31, 2000 and 1999 ATP0079790 - ATP0079806 |
| 54 | | | | 54 | Consolidated Financial Statements ATP Tour, Inc. Years ended December 31, 2001 and 2000 ATP0079771 - ATP0079789 |
| 55 | | | | 55 | Consolidated Financial Statements ATP Tour, Inc. Years ended December 31, 2002 and 2001 ATP0079746 - ATP0079769 |
| 56 | | | | 56 | Consolidated Financial Statements ATP Tour, Inc. Years ended December 31, 2003 and 2002 ATP0079730 - ATP0079745 |
| 57 | | | | 57 | Consolidated Financial Statements ATP Tour, Inc. Years ended December 31, 2004 and 2003 ATP0079716 - ATP0079729 |
| 58 | | | | 58 | Consolidated Financial Statements ATP Tour, Inc. Years ended December 31, 2005 and 2004 ATP0079700 - ATP0079714 |
| 59 | | | | 59 | Consolidated Financial Statements ATP Tour, Inc. Years ended December 31, 2006 and 2005 ATP0079685 - ATP0079699 |
| 60 | | 402, 403 | | 60 | Letter to Ivan Blumberg from Mark Miles re: Base costs to acquire the rights in the package 2/20/98 ATP0221660 - ATP0221667 |
| 61 | | 402, 403 | | 61 | Letter to Ivan Blumberg from Larry Scott 4/2/98 ATO0221671 - ATP0221672 |
| 62 | | 402, 403, 802 | | 62 | Memo from Larry Scott to Mark Miles re: Prisma Tiriac Meeting 5/18/98 ATP0015148 |
| 63 | | 402, 403 | | 63 | Tournaments considered for purchase by Tour 7/27/98 ATP0012921 |
| 64 | | 402, 403 | | 64 | Membership Transfer - Cumulative Since 1991 ATP0012922 |
| 65 | | | | 65 | Letter to Gunter Sanders from Mark Miles re: Decision taken regarding the ATP Tour Calendar 9/11/98 ATP0072945 - ATP0072946 |
| 66 | | | | 66 | Consolidated Financial Statements ATP Tour, Inc. Years ended December 31, 1999 and 1998 ATP0100933 - ATP0100949 |
| 67 | | 402, 403 | | 67 | Letter from Mark Miles to Connecticut Professional Tennis and Evington Finance Corporation re: Transfer Agreement 9/25/98 ATP0001657 - ATP0001660 |
| 68 | | | | 68 | ATP Tour Partners Meeting 10/14/98 ATP0224057 - ATP0224075 |
| 69 | | 402, 403 | | 69 | Letter from Mark Miles to Claus Stauder and Gunter Sanders re: Prisma and Boris Becker 10/15/98 ATP0054876 - ATP0054877 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER — PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 70 | | 106 | | 70 | Amended and Restated Bylaws of ATP Tour, Inc. |
| 71 | | 402, 403 | | 71 | Fax from Mark Miles to Gunter Sanders re: DTB and Prisma 10/16/98 ATP0054878 - ATP0054879 |
| 72 | | 402, 403 | | 72 | Letter from Joseph Leccese to Claus Stauder and Gunter Sanders re: Prisma and Boris Becker 10/16/98 ATP0054875 |
| 73 | | 802, 402, 403 | | 73 | Fax from Mark Miles to Butch Buchholz, Patrice Clerc, Charlie Pasarell, Ion Tiriac and Mark Webster re: pooling of rights 11/9/98 ATP0223811 - ATP0223829 |
| 74 | | 106, 402, 403 | | 74 | Memorandum to Mark Miles, Larry Scott, Flip Galloway, Jon Wigley, Joe Leccese from Mark Young re: ISL Agreements 5/12/99 |
| 75 | | 402, 403 | | 75 | Mark Miles Presentation DTB Board of Directors Hamburg, Germany 5/7/99 ATP0074175 - ATP0074181 |
| 76 | | 402, 403 | | 76 | Memo from Charlie Pasarell to Super 9 Tournament Director, Mark Miles, Larry Scott, Daniel Beauvois, Stephan Brubacher, Sergio Zyman, Scott Miller, Mark Webster, Richard Barratt re: the structure of the year-long competition or race 4/9/99 ATP2222450 - ATP0222452 |
| 77 | | 402, 403 | | 77 | ATP Tour 2000: The Future is Now ATP0054914 - ATP0054922 |
| 78 | | 402, 403 | | 78 | Fax from Mark Miles to Daniel Beauvois re: the DTB presentation 5/5/1999 ATP0054915 - ATP0054922 |
| 79 | | 402, 403 | | 79 | ATP Tour 2000: The Future is Now ATP0054914 |
| 80 | | 402, 403 | | 80 | Letter from Graham Pearce to Mark Miles re:Request for Prize Money Freeze 2003 4/22/02 ATP0368223 - ATP0368224 |
| 81 | | 402, 403, 106 | | 81 | Email from Etienne de Villiers to Graham Pearce and Perry Rogers re: Executive bonuses and compensation 3/15/07 ATP0342025 - ATP0342026 |
| 82 | | 402, 403, 106 | | 82 | Email from Graham Pearce to Etienne de Villiers re: Executive bonuses and compensation 3/2/06 ATP0079207 - ATP0079209 |
| 83 | | 802, 402, 403, 701, 106 | | 83 | Email from Mark Miles to Chris Clouser re: Greece 2/20/07 MILES 0045 |
| 84 | | 106, 402, 403 | | 84 | ATP Board of Directors Minutes 3/26/01 ATP0060711 - ATP0060713 |
| 85 | | 402, 403 | | 85 | Letter from Mark Miles to ATP Tournaments, Players and Associates 5/21/01 ATP0115963 - ATP0115964. |
| 86 | | 802, 402, 403 | | 86 | Letter from Angelo Binaghi, Christian Bimes and Robert Moffatt to Mark Miles re: proposal by ATP to downgrade their tournaments 7/2/01 ATP0060816 - ATP0060817 |
| 87 | | 402, 403 | | 87 | Letter from Mark Miles to Angelo Binaghi, Christian Bimes and Robert Moffatt re: downgrade of their tournaments 7/18/01 ATP0072273 - ATP0072274 |
| 88 | | | | 88 | ATP Tour 2000 The Future is NOW DTB Meeting 5/7/99 ATP0054900 - ATP0054913 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER REDACTED VERSION – PUBLICLY FILED

Plaintiffs' Final Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 89 | | 402, 403 | | 89 | Letter from Mark Miles to Mark Webster re: dismay over his actions 7/20/01 ATP0075057 - ATP0075058 |
| 90 | | 402, 403 | | 90 | News Release "ATP Announces New marketing Strategy, Structure" 7/23/01 ATP0331485 - ATP0331487 |
| 91 | | 802, 402, 403 | | 91 | Letter from Ion Tiriac to Mark Miles and Mark Webster re: press releases 7/26/01 ATP0072264 - ATP0072265 |
| 92 | | 802, 402, 403 | | 92 | Fax from Robert Kain, Charlie Pasarell and Gavin Forbes to Mark Miles re: Indian Wells Two-Week Event 8/10/01 ATP0015263 -ATP0015264 |
| 93 | | 802, 402, 403 | | 93 | Mercedes-Benz/ATP Meeting 9/30/01 MILES 0692 - MILES 0709 |
| 94 | | 106, 402, 403 | | 94 | Email from Brad Drewett to Xin Xin Sports re: Message for Mr. Wang 10/14/01 ATP0185870 - ATP0185871 |
| 95 | | 106, 402, 403 | | 95 | Email from Kerry Cleek to Dawn Procter re: Miles's 2002 bonus 1/2/02 ATP0107242 |
| 96 | | 106, 402, 403 | | 96 | ATP Board of Directors Minutes - DRAFT 8/28/01 ATP0061972 - ATP0061975 |
| 97 | | 106, 402, 403 | | 97 | ATP Board of Directors Minutes - DRAFT 6/5/02 ATP0254635 - ATP0254638 |
| 98 | | 802, 402, 403, 701 | | 98 | McKinsey Report - Strategic Planning Process - Final documentation (first page only enclosed) 10/00/02 ATP0078485 - ATP0079064 |
| 99 | | 802, 402, 403 | | 99 | Letter from Mark Webster to Mark Miles re: Outstanding Tournament Issues 7/19/02 ATP0074945 - ATP0074951 |
| 100 | | 402, 403 | | 100 | Letter from Mark Miles to Members of The Grand Slam Committee re: McKinsey report 2/10/03 ATP0074058 - ATP0074061 |
| 101 | | 802, 402, 403 | | 101 | Letter from Mark Webster to Mark Miles re: ATP Reform 2/11/03 ATP0074112 - ATP0074115 |
| 102 | | 402, 403 | | 102 | Letter from Larry Scott to All re: update 2/14/03 ATP0085425 - ATP0085427 |
| 103 | | 802, 106, 402, 403 | | 103 | Email from Jeff Chapman to Graham Pearce re: Report to Tournament Council 11/28/01 ATP0167900 |
| 104 | | | | 104 | ATP Board of Directors Minutes 3/21/03 ATP0075853 - ATP0075855 |
| 105 | | | | 105 | ATP Board of Directors Minutes 6/22/04 ATP0076018 - ATP0076020 |
| 106 | | | | 106 | Business Plan Working Notebook 5/24/05 ATP0083757 - ATP0083890 |
| 107 | | 802, 402, 403 | | 107 | Minutes of the Meeting of Tennis Properties Ltd 3/29/05 ATP0053895 - ATP0053897 |
| 108 | | 402, 403 | | 108 | ATP Board of Directors Minutes 11/12/06 ATP0076454 - ATP0076455 |
| 109 | | 106, 802, 402, 403 | | 109 | Email from Brad Drewett to Arlene Thornhill re: Shanghai 2/1/01 ATP0174669 |
| 110 | | 402, 403 | | 110 | ATP Strategic Planning Process 2/00/03 ATP0085428 - ATP0085444 |
| 111 | | 802, 402, 403 | | 111 | Memo to Mark Miles and Brad Drewett from Shanghai Organizing Committee re: RMC Bid Terms 3/27/04 ATP0180367 - ATP0180369 |
| 112 | | | | 112 | News Release "ATP CEO Courts Booming Asian Tennis Market 9/30/04 ATP0165894 - ATP0165895 |

PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST

| PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | | | | |
|---|---|---|---|---|---|
| **PTX** | **DATE OFFERED** | **OBJECTIONS** | **ADM** | **DEP EXH** | **DESCRIPTION** |
| 113 | | 802 | | 113 | Asian Strategy 10/4/04 ATP0054656 – ATP0054662 |
| 114 | | | | 114 | ATP Board of Directors Minutes 11/20/04 ATP0076100 - ATP0076101 |
| 115 | | | | 115 | Board Orientation Understanding the ATP 6/00/05 ATP0094190 - ATP0094239 |
| 116 | | | | 116 | Masters Cup Valuation ATP0083293 – ATP0083298 |
| 117 | | | | 117 | ATP Board of Directors Minutes 3/24/06 ATP0076316 - ATP0076320 |
| 118 | | | | 118 | Memo to ATP Board from Brad Drewett 8/9/06 ATP0082023 – ATP0082034 |
| 119 | | 802 | | 119 | Email from Jeff Reel to Flip Galloway re: Shanghai TMS agreement 2/16/07 ATP0081584 - ATP0081585 |
| 120 | | 402, 403 | | 120 | ATP Supervisor's Tournament Evaluation 4/21/02 ATP0022061 - ATP0022064 |
| 121 | | 106, 402, 403 | | 121 | EVP Notes 1994 Hamburg Panasonic German Open 1994 ATP0035170 - ATP0035176 |
| 122 | | 402, 403 | | 122 | ATP Supervisor's Tournament Evaluation 5/19/02 ATP0460195 - ATP0460198 |
| 123 | | 402, 403 | | 123 | ATP Supervisor's Tournament Evaluation ATP0041024 – ATP0041027 |
| 124 | | 402, 403 | | 124 | ATP Supervisor's Tournament Evaluation 3/16/02 ATP0021578 – ATP0021581 |
| 125 | | | | 125 | The 2007 ATP Official Rulebook |
| 126 | | 402,403 | | 126 | Special Events Rule Reminder - 2006 ATP0297573 |
| 127 | | 402, 403, 106 | | 127 | Email from Gayle Bradshaw to Fulltime Officials re: STARS Program 2/5/98 ATP0387900 |
| 128 | | | | 128 | Summary of Rule Changes for 2007 ATP0381818 - ATP0381823 |
| 129 | | 402, 403 | | 129 | Letter from Gayle Bradshaw to ATP Challenger Supervisor Team re: 2002 Rule Summary ATP0464863 - ATP0464884 |
| 130 | | 402, 403 | | 130 | Memo to ATP Board of Directors from R&D Doubles Project Team re: Proposal for Enhancing the Value of Doubles 3/31/05 ATP0166732 - ATP0166735 |
| 131 | | 802, 402, 403 | | 131 | Houston Complaint 9/1/05 |
| 132 | | 802, 402, 403 | | 132 | Commentary: ATP Doubles: Revolution or Retrogression? 8/28/05 ATP0277248 - ATP0277252 |
| 133 | | 106, 402, 403 | | 133 | Email from Gayle Bradshaw to Richard Ings re: 5 year Strategic Planning documents - Officiating & Rulemaking 3/13/03 ATP0381154 - ATP0381156 |
| 134 | | 106, 402, 403 | | 134 | Email from Gayle Bradshaw to Leocap@free.fr re: Urgent - Request from ATP Players and Coaches 1/25/07 ATP0381487 |
| 135 | | | | 135 | Brave New World - Management Retreat #3: Drummers Yard 4/24/06 ATP0007527 - ATP0007552 |
| 136 | | | | 136 | Brave New World: Project Timeline 3/16/06 ATP0011443 - ATP0011446 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER
REDACTED VERSION – PUBLICLY FILED

Privileged/Confidential Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| | | | | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST |
|---|---|---|---|---|---|
| **PTX** | **DATE OFFERED** | **OBJECTIONS** | **ADM** | **DEP EXH** | **DESCRIPTION** |
| 137 | | 402, 403 | | 137 | Salary and Incentive Analysis January - March 2007 ATP0205133 - ATP0205139 |
| 138 | | 402, 403, 106 | | 138 | Email from Perry Rogers to Etienne de Villiers; Iggy Jovanovic; Gayle Bradshaw; Horst Klosterkemper and Patrice Dominguez 10/31/06 ATP0250411 - ATP0250413 |
| 139 | | | | 139 | ATP Board of Directors Minutes 11/12/06 ATP0076454 - ATP0076455 |
| 140 | | 402, 403, 701, 106 | | 140 | Email from Perry Rogers to J. Eltingh re: Shanghai board meeting update 11/20/06 ATP0250384 - ATP0250386 |
| 141 | | 106 | | 141 | Email from Perry Rogers to Iggy Jovanovic re: Confidential - 500's 2/18/07 ATP0252217 - ATP0252219 |
| 142 | | | | 142 | Email from Iggy Jovanovic to Etienne de Villiers and All ATP Board re: report from Miami 3/30/07 ATP0250575 - ATP0250577 |
| 143 | | 802, 402, 403 | | 143 | Email from Arlene Thornhill to mark Young re: KAGAN: Top Sports marketer, ISL, Up for Sale 2/8/00 ATP0059885 |
| 144 | | | | 144 | Email from Zeljko Franulovic to Etienne de villiers re: ATP Workshop, Monte-Carlo 3/21/06 ATP0342488 - ATP0342491 |
| 145 | | 106 | | 145 | Email from Horst Klosterkemper to Zeljko Franulovic re: 3 set final matches at all ATP Tournaments in 2007 8/11/06 ATP0269219 - ATP0269221 |
| 146 | | | | 146 | Discussion Points for Meeting with Etienne de Villiers 5/11/06 ATP0266837 - ATP0266838 |
| 147 | | 802, 901 | | 147 | Open Letter from European Tournament Directors to ATP CEO Etienne de Villiers 6/18/06 ATP0269144 - ATP0269149 |
| 148 | | 802, 901 | | 148 | Letter to Patrice Dominguez from Tournament Representatives 6/23/06 ATP0269141 - ATP0269142 |
| 149 | | 402, 403 | | 149 | Email from Zeljko Franulovic re: After Elections 11/20/06 ATP0277864 - ATP0277865 |
| 150 | | 901 (HW), 106 | | 150 | Email from Flip Galloway to All ATP Board; All Management committee; George Clz; Zeljko Franulovic 12/13/06 ATP0083644 - ATP0083647 |
| 151 | | 402, 403, 901 (HW) | | 151 | European Group General Meeting summary 1/9/07 ATP0268978 - ATP0268991 |
| 152 | | 106, 402, 403 | | 152 | Fax to ATP London from Horst 1/9/07 ATP0268992 |
| 153 | | 701, 802, 403, 106 | | 153 | Email from Zeljko Franulovic to Etienne de Villiers re: letter to Etienne de Villiers; and issues document 1/11/07 ATP0054052 - ATP0054056 |
| 154 | | | | 154 | Letter from Etienne de Villiers to Zeljko Franulovic 1/19/07 ATP0054048 - ATP0054051 |
| 155 | | 106, 402, 403 | | 155 | ATP Board of Directors Minutes (DRAFT) 1/16/07 |
| 156 | | 106, 402, 403 | | 156 | ATP Board of Directors Minutes (DRAFT) 1/17/07 |
| 157 | | 106, 402, 404 | | 157 | ATP Board of Directors Minutes (DRAFT) 1/18/07 |
| 158 | | 106, 402, 405 | | 158 | ATP Board of Directors Minutes (DRAFT) 1/19/07 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

**PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST**

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 159 | | 402, 403, 106 | | 159 | Email from Zeljko Franulovic re: All Euro TDs 1/24/07 ATP0278696 |
| 160 | | 901 (HW), 802, 106 | | 160 | Email from Zeljko Franulovic re: Report from Miami 3/30/07 ATP0268968 -ATP0268969 |
| 161 | | 901 (HW), 802 | | 161 | Letter from the Players to Etienne de Villiers 3/19/07 ATP0053144 - ATP0053150 |
| 162 | | 106, 403 | | 162 | Email from Zeljko Franulovic re: Report from Las Vegas 5/3/07 MC0038004 - MC0038006 |
| 163 | | 802, 403, 106 | | 163 | Monte-Carlo Complaint 4/9/07 |
| 164 | | 402, 403, 407, 408 | | 164 | Agreement among ATP Tour, Inc., Monte-Carlo Country Club and Societe Monegasque pour L'Eploitation du Tournol de Tennis 7/18/07 ATP0329097 - ATP0329106 |
| 165 | | 802, 403, 106 | | 165 | Letter from Thomas Wallen to ATP Board of directors 7/25/07 |
| 166 | | 802, 402, 403, 106 | | 166 | Email from Mark Webster re: Branding 8/30/07 |
| 167 | | 802, 403 | | 167 | News Release - ATP to begin suspending players who skip mandatory events 8/31/07 |
| 168 | | 403 | | D - 2 | Profile of Georg Von Waldenfels |
| 169 | | *GERMAN 802, 402, 403 | | D - 3 | Members in Clubs of DTB GTF00000596 - GTF00000597 |
| 170 | | 402, 403, 802 | | D - 4 | Die Welt online - Sanders prevents DTB Bankruptcy 4/26/99 ATP0074219 |
| 171 | | 802 | | D - 5 | Masters Series Hamburg GTF00027244 - GTF00027260 |
| 172 | | | | D - 6 | Letter from Mark Young to DTBH re: agreement between ATP and DTBH with respect to the deferment of certain payments due from DTBH's parent company DTB 2/28/03 ATP0281401 - ATP0281402 |
| 173 | | | | D - 7 | Agenda for the Meeting of Shareholders of Rothenbaum Sport GmbH 11/7/06 GTF00043338 - GTF00043343 |
| 174 | | | | D - 8 | Minutes Annual Shareholder Meeting of Rothenbaum Sport GMBH Held at the DTB Office in Hamburg 11/7/06 GTF00067762 - GTF00067763 |
| 175 | | | | D - 9 | Rothenbaum Sport GmbH Budget 2006/Budget 2007 GTF00043344 - GTF00043362 |
| 176 | | GERMAN 403, 106 | | D - 10 | German Language Document GTF00037814 |
| 177 | | | | D - 11 | German Language Document with English translation GTF00008557 - GTF00008558 |
| 178 | | 802, 403 | | D - 12 | Letter from European Tournament Directors to Horst Klosterkemper and Patrice Dominguez re: "Open Letter ATP0283827 - ATP0283828 |
| 179 | | 402/403 | | D - 13 | Letter to Etienne de Villiers re: support for the comments made by Gerard Tsobanian in connection with reform of the doubles competition 10/6/06 ATP0295869 - ATP0295871 |
| 180 | | GERMAN 402/403/802 | | D - 14 | German Language Document GTF00027993 |
| 181 | | GERMAN | | D - 15 | Masters Series Hamburg GTF00045436 |
| 182 | | 802 | | D - 16 | Final Press Conference 5/18/03 GTF00004945 - GTF00004950 |
| 183 | | 106, 403 | | D - 17 | Shareholders' Agreement 11/30/01 ATP0072016 - ATP0072016 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER REDACTED VERSION – PUBLICLY FILED

Production Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| | | | | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST |
| 184 | | 106, 403 | | D - 18 | ATP Tour, Inc. and Tennis Properties Limited Pooling Agreement 2/9/04 ATP0262337 - ATP0262393 |
| 185 | | 802 | | D - 19 | Email from Sue Down to Flip Galloway attaching TPL Business Plan Draft ATP and TPL Business Plan Annex 6/14/06 ATP0316960 – ATP0316970 |
| 186 | | 802 | | D - 20 | Letter from ATP Masters Series Tournament Directors to Mark Miles 11/5/04 ATP0073726 - ATP0073735 |
| 187 | | 802 | | D - 21 | Open Letter from European Tournament Directors to ATP CEO Etienne de Villiers 6/18/06 ATP0269150 - ATP0269154 |
| 188 | | 802, 403, 106 | | D - 22 | Email from Zeljko Franulovic to Walter Knapper re: Draft letter to Patrice Dominguez 6/16/06 MC0049893 - MC0049894 |
| 189 | | 802 | | D - 23 | Letter to Patrice Dominguez from Tournament Representatives 6/23/06 ATP0269141 - ATP0269142 |
| 190 | | GERMAN 802 | | D - 24 | Email from Walter Knapper to Georg von Waldenfels re: Meetings in New York 8/30/06 GTF00043190 |
| 191 | | 802, 901 (HW) | | D - 25 | Letter from Patrice Dominguez to Sixte Cambra, Sergio Palmieri and Walter Knapper 9/23/06 MC0001723 - MC0001724 |
| 192 | | 802 | | D - 26 | Letter to Etienne de Villiers re: common interest in the Masters Series of Tournaments and your ongoing efforts at reforming the ATP Tour 9/29/06 ATP0252924 - ATP0252928 |
| 193 | | 106, 802, 403 | | D - 27 | Email from Zeljko Franulovic to Walter Knapper re: Letter to Etienne de Villiers 10/6/06 MC0036668 |
| 194 | | 802 | | D - 28 | Deloitte ATP Tournament Financial Review – Tournament Consultation Questionnaire 9/00/06 GTF00024783 - GTF00024798 |
| 195 | | GERMAN 802, 403 | | D - 29 | Article - Das Ende des Rothenbaums? 5/5/04 GTF00006463 |
| 196 | | GERMAN 802, 403 | | D - 30 | Email from Walter Knapper to Zeljko Franulovic re: Mercedes verabschiedet sich von ATP Tour 12/7/06 MC0008538 - MC0008540 |
| 197 | | | | D - 31 | Letter to Mark Miles from Georg von Waldenfels 5/17/05 ATP0072833 - ATP0072844 |
| 198 | | | | D - 32 | Letter to Qatar and DTB re: Transfer Agreement 6/15/05 ATP0072682 - ATP0072685 |
| 199 | | 802 | | D - 33 | Email from Walter Knapper to Thomas Wallen 6/26/07 GTF00069453 |
| 200 | | 403, 407, 408, 802 | | D - 35 | Email from Walter Knapper re: DTB filing complaint 3/29/07 GTF00001260 |
| 201 | | 802, 402, 403 | | D - 36 | Closing Press Conference with Boris Becker, Toralf Bitzer, Walter Knapper, Robert Lubenoff, Georg von Waldenfels 5/16/04 GTF00005298 - GTF00005302 |
| 202 | | 802, 402, 403, 106 | | D - 37 | Email from Walter Knapper to Zeljko Franulovic re: timing sponsor 9/14/04 MC0038603 |
| 203 | | 403, 106, 802 | | D - 38 | DTB Complaint 3/29/07 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 204 | | 802, 403 | | D - 39 | Notes of ITF President's Meeting with Selected National Association-owned Tournaments MC0049874 - MC0049875 |
| 205 | | 802 | | D - 40 | LD Meeting Notes 9/21/04 ATP0288451 - ATP0288452 |
| 206 | | 106, 403 | | D - 41 | Email from Zeljko Franulovic to Etienne de Villiers 1/11/07 ATP0054062 - ATP0054056 |
| 207 | | GERMAN 802, 403 | | D - 42 | German language document 11/17/07 GTF00068965 - GTF00068967 |
| 208 | | GERMAN 802, 403 | | D - 43 | German language document 1/26/07 GTF00068925 - GTF00068938 |
| 209 | | 802 | | D - 44 | ATP "Masters 1000" Europe Men's Only (Outdoor Clay) 2/2/07 GTF00000269 - GTF00000347 |
| 210 | | 802 | | D - 45 | ATP0326121 - ATP0326130 |
| 211 | | 802 | | D - 46 | ATP "Masters 1000" Europe Men's Only (Indoor Hard) 2/2/07 ATP0009264 - ATP0009312 |
| 212 | | 802 | | D - 47 | Board Meeting Rothenbaum Sport GmbH 11/7/06 GTF0043363 - GTF00043374 |
| 213 | | GERMAN 802, 403 | | D - 48 | Article - Knapper kontert 5/19/06 GTF00022514 |
| 214 | | 106, 901, 802, 403, 402 | | 168 | Jacco Eltingh's Notes from NY Board Meeting 8/26/06 ATP0360309-ATP0360435 |
| 215 | | 802, 106 | | 169 | E-mail from David Adams to Andre Silva re: BNW plan 3/28/06 ATP0335501 |
| 216 | | 802, 402, 403, 106, 701 | | 170 | E-mail from Jacco Eltingh to Andre Silva et al. re: tax treatment in countries that might hold TMC 5/10/06 ATP0343669 - ATP0343670 |
| 217 | | 106, 802 | | 171 | E-mail from Iggy Jovanovic to Perry Rogers et al. re: Queens summary 6/20/06 ATP0345353 |
| 218 | | 901, 403, 106, 802 | | 172 | Jacco Eltingh's Notes from London Board meeting 6/25/06 ATP0359625-ATP0359816 |
| 219 | | 402, 403, 106 | | 173 | ATP Board of Directors' Meeting Minutes (Draft) 8/28/06 ATP0255050-ATP0255051 |
| 220 | | | | 174 | Chairman's Report 9/5/06 ATP0097044-ATP0097047 |
| 221 | | 106 | | 175 | E-mail from Horst Klosterkemper to Patrice Dominguez et al. re: calendar issues for Thursday's call 10/3/06 ATP0283964-ATP0283966 |
| 222 | | 106, 802 | | 176 | E-mail from George Ciz to Jacco Eltingh re: Thursday calendar call 10/4/06 ATP0356699-ATP0356701 |
| 223 | | 106 | | 177 | E-mail from Jacco Eltingh to Etienne De Villiers et al. re: 2008 Calendar Food for Thought 10/30/06 ATP0444057-ATP0444058 |
| 224 | | 106, 802 | | 178 | E-mail from Jacco Eltingh to Straka Herwig et al. re: Frankfurt tournament 12/13/06 ATP0305952-ATP0305954 |
| 225 | | | | 179 | ATP Board of Directors Meeting Minutes 1/18/07 ATP0540697-ATP0540720 |
| 226 | | 106, 802 | | 180 | E-mail from Etienne de Villiers to Jacco Eltingh et al. re: Indian Wells 10-day event 5/21/06 ATP0348843-ATP0348844 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER    REDACTED VERSION – PUBLICLY FILED    Privileged Joint Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| | | | | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST |
|---|---|---|---|---|---|
| **PTX** | **DATE OFFERED** | **OBJECTIONS** | **ADM** | **DEP EXH** | **DESCRIPTION** |
| 227 | | | | 181 | ATP Board of Directors Meeting Minutes 6/27/06 ATP0366243-ATP0366246 |
| 228 | | 802, 106 | | 194 | Email from Perry Rogers to Etienne de Villiers re: my meeting with FFT 2/26/06 ATP0250506 - ATP0250509 |
| 229 | | 106, 402, 403 | | 195 | Email from Etienne de Villiers to Perry Rogers re: senior executive compensations 3/1/06 ATP0347695 - ATP0347698 |
| 230 | | 106, 402, 403 | | 196 | Email from Dawn Procter to Etienne de Villiers re: Board Meeting - Conf. Call 3/3/06 ATP0342349 |
| 231 | | 402, 403, 106 | | 201 | Email from Perry Rogers to Graham Pearce re: Compensation 6/15/07 ATP0350380 |
| 232 | | 106, 403 | | 205 | Email from Perry Rogers to Etienne de Villiers re: ATP Board Meeting Pre Wimbledon 6/3/06 |
| 233 | | 403, 106 | | 234 | Email from Perry Rogers Franulovic; Jovanovic; de Villiers re: report from Miami 3/30/07 ATP0335310 - ATP0335313 |
| 234 | | 106, 402, 403 | | 244 | Player Activity List 2000 |
| 235 | | 106, 402, 403 | | 245 | Email from George Ciz to Perry Rogers re: Matrix 6/27/06 ATP0546883 - ATP0546884 |
| 236 | | 106 | | 248 | Email from de Villiers to ATP Board 7/16/07 ATP0546668 - ATP0546669 |
| 237 | | 106 | | 249 | Email from de Villiers to Andre Silva; ATP Board; Management Committee 7/16/07 ATP0546662 |
| 238 | | 106 | | 251 | Email from J. Ettingh to Ivan Ljubicic re: 500 and 4/11 8/12/07 ATP0546559 - ATP0546560 |
| 239 | | 106 | | 253 | Email from Andre Silva to Perry Rogers; Ettingh and Jovanovic re: 250's 7/18/07 ATP0546652 |
| 240 | | 802 | | D - 97 | Minutes of the Meeting of Tennis Properties Ltd 3/29/05 ATP0072443 - ATP0072450 |
| 241 | | 802 | | D - 98 | Email from Diane martin Elli to Arlene Thornhill re: Miami Herald article "New look on tap for men's tennis" 12/10/99 ATP0224369 - ATP0224371 |
| 242 | | 802 | | D - 99 | An interview with Adam Barrett and Butch Buchholz 3/26/08 |
| 243 | | | | D - 69 | Carl Steeb Profile 10/26/07 |
| 244 | | 802 | | D - 70 | Client Management Group/Zimmermann/News 10/26/07 |
| 245 | | GERMAN | | D - 71 | German language document 9/29/06 GTF00043165 - GTF00043167 |
| 246 | | GERMAN, 802 | | D - 72 | Article "Der Rothenbaum braucht einen Titelsponsor" 5/22/07 GTF00014004 |
| 247 | | 106, 802 | | D - 73 | Email from Carl Steeb to Thomas Kastner re: saa at the masters in HAM 3/28/07 GTF00027611 |
| 248 | | GERMAN, 802 | | D - 74 | Interview with Carl Steeb 1/23/07 |
| 249 | | GERMAN | | D - 75 | Letter from Kroeker to Steeb 12/13/06 GTF00043321 |
| 250 | | GERMAN, 802, 106, 403 | | D - 76 | German language document  GTF00037813 |
| 251 | | 106, 802, 403 | | D - 77 | Agencies/contact people 3/7/03 GTF00036262 - GTF00036270 |
| 252 | | 802 | | D - 78 | Fax to Walter Knapper from Mark Webster re: Premiere, NDR 4/23/03 GTF00035558 - GTF00035559 |

PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 253 | | 802 | | D - 79 | Investments 1998 GTF00000600 - GTF00000601 |
| 254 | | | | D - 80 | ATP Supervisor's Tournament Evaluation 1/1/04 GTF00000358 - GTF00000362 |
| 255 | | | | D - 81 | Letter from Horst Klosterkemper and Ulrika Hjelmsater to Walter Knapper re: Tournament condition letter 2005 8/12/05 ATP0069570 - ATP0069571 |
| 256 | | | | D - 82 | ATP Supervisor's Tournament Evaluation 1/1/05 GTF00000365 - GTF00000367 |
| 257 | | 106, 802, 901 | | D - 83 | Letter from Thomas Kastner to Mr. Jourdan 7/11/07 GTF00010833 |
| 258 | | | | D - 84 | Letter from Flip Galloway to Walter Knapper re: application for an ATP 1,000 level tournament 3/29/07 ATP0009340 - ATP0009341 |
| 259 | | 802 | | D - 85 | Letter from GTF to Flip Galloway re: his letter of 3/29/07 4/12/07 GTF00000261 - GTF00000263 |
| 260 | | GERMAN, 802, 403 | | D - 86 | German language document GTF00037811 |
| 261 | | 802, 403 | | D - 87 | Article - Supersport - South Africa 3/30/07 MC0035643 - MC0035651 |
| 262 | | 402, 403 | | D - 88 | DTB/TMS Hamburg - Planning meeting 3/13/02 ATP0120751 - ATP0120753 |
| 263 | | 402, 403, 802 | | D - 89 | Order of events of Press conference 8/10/04 GTF00008708 - GTF00008709 |
| 264 | | GERMAN, 802 | | D - 90 | Article "Scheich Mohammed: Notfalls machen wir eine eigene Serie" 5/18/07 GTF00013914 |
| 265 | | 802 | | D - 91 | Statement of Items 1988 GTF00000725 - GTF00000727 |
| 266 | | GERMAN, 802 | | D - 92 | Letter from Frank Schrotter to Lopker 1/30/06 GTF00068619 - GTF00068624 |
| 267 | | GERMAN, 802 | | D - 93 | Rothenbaum sport GmbH 6/30/06 GTF00069694 - GTF00069737 |
| 268 | | GERMAN, 802 | | D - 94 | German language document GTF00037812 |
| 269 | | GERMAN, 802 | | D - 95 | Letter from Wiebe to Koring re: Masters Series Hamburg 2006 GTF00049265 |
| 270 | | GERMAN, 802 | | D - 96 | Letter from Holger Bartl to Koring GTF00054536 - GTF00054537 |
| 271 | | 402, 403, 802 | | 254 | Discussion Outline For TPL Meeting 6/10/01 ATP0226172 - ATP0226179 |
| 272 | | 402, 403, 802 | | 255 | ATP Restructuring Plan 2001 - 2004 ATP0214799 - ATP0214809 |
| 273 | | 106, 402, 403 | | 256 | Email from Keery Cleek to Dawn Procter re: Miles's 2002 Bonus ATP0107242 |
| 274 | | 402, 403 | | 257 | Letter from Mark Miles to Members of The Grand Slam Committee re: McKinsey report 2/10/03 ATP0074058 - ATP0074061 |
| 275 | | 802, 402, 403 | | 258 | Letter from Mark Webster to Mark Miles re: ATP Reform 2/11/03 ATP0074112 - ATP0074115 |
| 276 | | 402, 403, 901 | | 259 | Letter from Larry Scott to All re: update 2/14/03 ATP0085425 - ATP0085427 |
| 277 | | 106, 402, 403 | | 260 | Phase 2 - Potential Actions/Solutions 9/12/02 ATP0171953 - ATP0171959 |
| 278 | | | | 261 | Sanction Agreement 9/26/02 ATP0262305 - ATP0262322 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER REDACTED VERSION – PUBLICLY FILED

Preskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

**PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST**

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 279 | | 402, 403, 106, 802 | | 262 | Email from David Higdon to Communications re: Indian Wells position 10/29/03 ATP0333514 - ATP0333521 |
| 280 | | 402, 403 | | 263 | Memorandum from Mark Miles to Charlie Pasarell re: Discussion Points for Ten Day Format 3/18/02 ATP0285157 - ATP0285163 |
| 281 | | 402, 403 | | 264 | Memorandum from Mark Miles to Board of Directors re: Special Board Meeting 5/19/03 ATP0367917 - ATP0367949 |
| 282 | | 106, 402, 403 | | 265 | 2004 Budget Projection ATP Tour, Inc. 6/20/04 ATP0256176 - ATP0256187 |
| 283 | | 802, 402, 403, 106 | | 266 | Email from Mark Miles to Tony Godsick re: battle of the surfaces 1/24/06 Miles0197 - Miles0198 |
| 284 | | 802, 402, 403, 106 | | 267 | Email from Mark Webster to Mark Miles re: ATP Chairman's Report Melbourne 1/25/06 Miles0587 - Miles0588 |
| 285 | | 106, 802, 403 | | 268 | Email from Mark Webster to Mark Miles re: ATP Chairman's Report Miami 4/8/06 Miles0519 - Miles0523 |
| 286 | | 802, 402, 403, 106 | | 269 | Email from Mark Miles to Mark Webster re: ATP Chairman's Report from Miami 4/12/06 Miles0153 - Miles0158 |
| 287 | | 106, 802 | | 270 | Email from Chris Clouser to Mark Miles re: letter to Etienne de Villiers 1/27/07 Miles0037 - Miles0041 |
| 288 | | 106, 802, 402, 403 | | 271 | Email from Mark Miles to Chris Clouser re: Greece 2/20/07 Miles0045 |
| 289 | | 106, 802, 402, 403 | | 272 | Email from Mark Miles to Larry Scott re: Etienne reports 3/19/07 Miles0052 - Miles0069 |
| 290 | | 106, 802, 402, 403 | | 273 | Email from Mark Miles to Larry Scott re: Wimbledon Equal Prize Money Announcement 3/9/07 Miles0048 - Miles0049 |
| 291 | | 106, 402, 403, 802 | | 275 | Email from George Ciz to Etienne de Villiers and Horst Klosterkemper re: calendars 3/3/06 ATP0276025 - ATP0276027 |
| 292 | | 106, 802 | | 276 | Email from George Ciz to Etienne de Villiers and Flip Galloway re: Action Steps from Drummers & MC 3/13/06 ATP0310976 - ATP0310979 |
| 293 | | 106, 802 | | 277 | Email from George Ciz to Horst Klosterkemper re: conversation with Alain Riou and Stephane Simian 3/14/06 ATP0276236 - ATP0276238 |
| 294 | | 106, 802 | | 278 | Email from George Ciz to Tim Julian re: ATP Briefing Materials 3/17/06 ATP0346561 - ATP0346562 |
| 295 | | 106, 802 | | 279 | Email from Horst Klosterkemper to Bernd Klosterkemper re: TPL meeting; Preliminary BrandDriver results 5/11/06 ATP0279994 - ATP0279996 |
| 296 | | 106 | | 280 | Email from Horst Klosterkemper to George Ciz re: Drummers Retreat follow up 6/2/06 ATP0081985 - ATP0081988 |
| 297 | | 802, 106 | | 281 | Email from George Ciz to Etienne de Villiers, Flip Galloway & Richard Davies re: latest status of our thinking 4/13/06 ATP0301878 - ATP0301880 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER — PUBLICLY FILED VERSION

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | | |
| 298 | | 802, 106 | | 282 | Email from George Ciz to All Management Committee & Laurent Delanney 6/20/06 ATP0345297 |
| 299 | | 106, 402, 403 | | 283 | Email from Flip Galloway to Dan Jones re: Valuation Pages 1/9/07 ATP0549571 - ATP0549591 |
| 300 | | | | 284 | 2007-09 ATP Marketing Plan 11/00/06 ATP0217551 - ATP0217820 |
| 301 | | 106, 402, 403, 802 | | 285 | Email from George Ciz to All ATP Board 7 All Management Committee 11/22/06 ATP0380327 |
| 302 | | 106, 802 | | 286 | ATP Consumer Research Agreement 9/00/06 ATP0480896 - ATP0480901 |
| 303 | | 802 | | 287 | Email from George Ciz to Etienne de Villiers re: One more report 4/25/07 ATP0349593 - ATP0349650 |
| 304 | | 402, 403 | | 289 | Letter to Philip Galloway from Etienne de Villiers re: stay bonus 12/2/05 ATP0216634 |
| 305 | | 106 | | 290 | Email from Etienne de Villiers to Flip Galloway, Richard Davies, Horst Klosterkemper, Weller Evans & Andre Silva 12/9/05 ATP00083239 - ATP00083240 |
| 306 | | 106 | | 291 | Email from Flip Galloway to All ATP Board; All Management committee; George Ciz; Zeljko Franulovic re: Thursday's call 12/13/06 MC0008654 - MC0008656 |
| 307 | | 106, 901 (HW) | | 292 | Email from Flip Galloway to All ATP Board; All Management committee; George Ciz; Zeljko Franulovic re: Thursday's call 12/13/06 ATP0083644 - ATP0083647 |
| 308 | | 802, 106, 701 | | 293 | Email from Paul Rawnsley to Flip Galloway re: documents as promised 12/14/06 ATP0549696 - ATP0549701 |
| 309 | | 106, 403 | | 294 | Email from Flip Galloway to All European Tournaments; All IG Tournaments; All North American Tournaments; All Latin American; All ATP Board; All Management Committee re: Note from Etienne and Draft Application document 12/22/06 ATP0355364 - ATP0355428 |
| 310 | | 802, 403 | | 295 | ATP Tournament Evaluation Approach 12/00/06 ATP0549665 - ATP0549691 |
| 311 | | 403 | | 296 | Tournament Compensation Plan ATP0208526 |
| 312 | | 802, 106, 403 | | 297 | Email from Etienne de Villiers to Mark Webster; George Ciz cc: Flip Galloway re: TR Research request 11/21/05 ATP0068093 - ATP0068106 |
| 313 | | | | 298 | The Thoughts of Chairman Brian 1/17/05 ATP0348018 - ATP0348032 |
| 314 | | 106 | | 299 | Email from Graham to Etienne de Villiers; All ATP Board re: my meeting with FFT 2/23/06 |
| 315 | | 802, 106 | | 300 | Email from Etienne de Villiers to George Ciz and Horst Klosterkemper re: calendars 3/3/06 |
| 316 | | 802, 402, 403, 106 | | 301 | Email from Etienne de Villiers to RJMhippy; cc: Flip Galloway re: Indian Wells Tennis 3/15/06 ATP0347879 - ATP0347880 |
| 317 | | 802, 402, 403, 106 | | 302 | Email from Etienne de Villiers to Flip Galloway re: Indian Wells 3/2/06 ATP0350494 - ATP0350495 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER REDACTED VERSION – PUBLICLY FILED

Prosskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|-----|--------------|-----------|-----|---------|-------------|
| | | | | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST |
| 318 | | 106, 403 | | 303 | Email from Etienne de Villiers re: Management Reports due 4/5/06 ATP0378295 |
| 319 | | 106, 802 | | 304 | Email from Etienne de Villiers to Butch Buchholz re: Sun-Sentinel: Proposed Changes don't suit everyone 4/8/07 APT0342097 - ATP0342098 |
| 320 | | | | 305 | Memo from Charlie Pasarell to Etienne de Villiers re: Brave New World 5/12/06 ATP0264696 - ATP0264698 |
| 321 | | 802, 106 | | 306 | Email from Etienne de Villiers to Jean-Francois Cajoulle re:Paris combined 5/16/06 ATP0348793 |
| 322 | | 802, 106 | | 307 | Email to Etienne de Villiers from Jean-Francois Cajoulle re:Paris combined 5/20/06 ATP0344212 - ATP0344214 |
| 323 | | | | 308 | Memo from Etienne de Villiers re: Responses to Sergio Palmieri questions from May 11, 2005 5/31/06 ATP0344682 - ATP0344690 |
| 324 | | 403, 106 | | 309 | Email from Etienne de Villiers to All ATP Board; All Management Committee; George Ciz re: you've probably heard things 6/9/06 ATP0270040 - ATP0270041 |
| 325 | | 802, 402, 403, 106 | | 310 | Email from Etienne de Villiers to Brad Drewett re: the AGE; Grand Slam points to be reduced by Governing Body 4/10/07 ATP0342147 |
| 326 | | | | 311 | Memo from Charlie Pasarell to Etienne de Villiers re: WWW 7/14/06 ATP0053396 |
| 327 | | 106 | | 312 | Email from Etienne de Villiers to All ATP Board re: Letter to Christian Bimes 9/29/06 ATP0270148 - ATP0270150 |
| 328 | | | | 313 | ATP Board of Directors Meeting Shanghai 11/12/06 ATP0007753 – ATP0007804 |
| 329 | | 106 | | 314 | Email from Andy Anson to Etienne de Villiers and Flip Galloway re: Vegas follow-up 4/30/07 ATP0349891 |
| 330 | | 802 | | D - 100 | Letter to Christian Bimes from Georg von Waldenfels re: the new ATP Plan 11/27/06 MC0001731 - MC0001734 |
| 331 | | 802 | | D - 101 | Letter from Christian Bimes to Georg von Waldenfels 12/11/06 GTF00001076 |
| 332 | | 802, 106 | | D - 102 | Email from Christian bimes to Georg von Waldenfels re: answer to your letter 1/12/07 GTF00001077 - GTF00001078 |
| 333 | | 802 | | D - 103 | Article - "There was just too much money" 1/22/01 ATP0069988 - ATP0069989 |
| 334 | | 802 | | D - 104 | Article "German Tennis Tournaments for Sale?" ATP0137808 - ATP0137809 |
| 335 | | 802 | | D - 105 | Article "DTB President Georg von Waldenfels Interview" 4/26/02 ATP0054297 - ATP0054300 |
| 336 | | 802 | | D - 106 | Withdrawn |
| 337 | | | | D - 107 | Withdrawn |
| 338 | | | | D - 108 | Withdrawn |
| 339 | | GERMAN, 802 | | D - 109 | German Language Document 5/13/05 GTF00042863 - GTF00042875 |
| 340 | | | | D - 110 | Deed Register No. 613/2005 5/12/05 GTF00068154 - GTF00068173 |
| 341 | | | | D - 111 | Deed Register No. 1434/2005 9/29/05 GTF00068198 - GTF00068234 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

**PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST**

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 342 | | | | D - 112 | Deed Register No. 612/2005 5/12/05 GTF00068184 - GTF00068197 |
| 343 | | | | D - 113 | Deed Register No. 1435/2005 9/29/05 GTF00068174 - GTF00068183 |
| 344 | | 106, 403, 802 | | D - 114 | First Amended Complaint 10/15/07 |
| 345 | | 106, 403, 802 | | D - 115 | Draft First Amended Complaint 10/15/07 |
| 346 | | GERMAN, 802 | | D - 116 | German Language Document 9/21/06 GTF00068968 - GTF00068972 |
| 347 | | GERMAN, 802 | | D - 117 | German Language Document 5/1/07 GTF00068939 - GTF00068947 |
| 348 | | 802 | | D - 118 | Minutes Supervisory Board Meeting of Rothenbaum Sport GMBH 3/7/06 GTF00067764 - GTF00067766 |
| 349 | | GERMAN, 802, 106 | | D - 119 | German Language Document 11/4/06 GTF00074295, GTF00074299, GTF00074300, GTF00074407 |
| 350 | | GERMAN, 802 | | D - 120 | German Language Document 11/2/06 GTF00068959 - GTF00068964 |
| 351 | | 802, 402, 403, 106 | | 315 | Email from Mark Young to Jeffrey Newman, Jeff Reel re: ATP 500 Application 9/21/07 ATP0591398 - ATP0591401 |
| 352 | | 802, 402, 403, 106 | | 316 | Email from Mark Young to Jennifer Scullion re: Washington application 9/21/07 ATP0591401 |
| 353 | | 106, 403 | | 317 | Shareholders' Agreement 1999 GTF00057263 - GTF00057305 |
| 354 | | 402, 403 | | 318 | Handwritten Board Meeting Minutes 10/22/06 PD-YOM00002528 - PD-YOM00002530 |
| 355 | | | | 319 | Handwritten Board Meeting Minutes 3/8/2006 - 11/15/2006 PD-YOM0003557 - PD-YOM0003029 |
| 356 | | | | 320 | Handwritten Board Meeting Minutes 1/16/2007 - 3/24/2007 PD-YOM0002278 - PD-YOM0001773 |
| 357 | | | | 321 | Handwritten Board Meeting Minutes 1/18/2005 - 12/16/2005 PD-YOM0004931 - PD-YOM0004003 |
| 358 | | 802 | | 322 | Email from Mark Young to Jennifer Scullion re: ATP "500" Tournament Application 9/21/07 ATP0591399 - ATP0591400 |
| 359 | | 901 (HW) | | 323 | Handwritten Notes 12/1/03 PD-ROP0003842 - PD-ROP0003843 |
| 360 | | 802 | | 324 | ATP "250" Tournament Application 10/00/07 ATP0591040 - ATP0591063 |
| 361 | | 402, 403 | | 325 | Transfer Agreement 7/27/06 |
| 362 | | 402, 403 | | 327 | Handwritten Notes re: Call w/Charlie and Ray PD-YOM0004163 - PD-YOM0004164 |
| 363 | | 402, 403 | | D - 49 | ATP Tour, Inc.'s Amended Notice of Deposition of Ayman Azmy 10/21/07 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER
REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | | |
|---|---|---|---|---|---|
| **PTX** | **DATE OFFERED** | **OBJECTIONS** | **ADM** | **DEP EXH** | **DESCRIPTION** |
| 364 | | | | D - 50 | Email from Walter Knapper to Ayman Azmy 3/29/07 GTF00001281 |
| 365 | | | | D - 51 | Withdrawn |
| 366 | | | | D - 52 | Withdrawn |
| 367 | | 802 | | D - 53 | Email from Fabienne Benoit to All Monitoring re: Media, Hamburg, Nadal and more 5/15/05 ATP0069612 - ATP0069613 |
| 368 | | | | D - 54 | Deed Register No. 613/2005 5/12/05 GTF00068154 - GTF00068173 |
| 369 | | | | D - 55 | Deed Register No. 612/2005 5/12/05 |
| 370 | | | | D - 56 | Transfer Agreement 6/15/05 ATP0072682 - ATP0072685 |
| 371 | | | | D - 57 | Deed Register No. 9/29/05 |
| 372 | | | | D - 58 | Article printed from the QTF website "Sony Ericsson championships awarded to Doha, Qatar" |
| 373 | | 802 | | D - 59 | Minutes Supervisory Board Meeting of Rothenbaum Sport GMBH 3/7/06 GTF00067764 - GTF00067766 |
| 374 | | 802 | | D - 60 | Minutes Board Meeting of Rothenbaum Sport GMBH 5/11/06 GTF00067767 - GTF00067768 |
| 375 | | 802 | | D - 61 | ATP 500 Tournament application 7/25/07 ATP0543545 - ATP0543596 |
| 376 | | | | D - 62 | Amended and Restated Bylaws of ATP Tour, Inc. |
| 377 | | | | D - 63 | Defendants' First Set of document requests to DTB |
| 378 | | 402, 403 | | D - 64 | ATP Tour, Inc.'s Amended Notice of Deposition of Tariq Al Siddiqi 10/21/07 |
| 379 | | 402, 403 | | D - 65 | ATP Tour, Inc.'s Amended Notice of Deposition of Sheikh Mohammed Bin Faleh-Al Thani 10/21/07 |
| 380 | | 402, 403, 802, 106 | | D - 66 | Letter from Hamish Cohen to Bradley Ruskin re: discovery issues 10/17/07 |
| 381 | | GERMAN, 802 | | D - 67 | German language article from the Hamburger Abendblatt "Scheich Mohammed: Notfalls machen wir eine eigene Serie" 5/18/07 GTF0013914 |
| 382 | | 402, 403 | | 328 | ATP Tour, Inc. - Tournament Transfer Fee Revenue 1991- 2006 ATP0208527 - ATP0208529 |
| 383 | | 802, 402, 403, 106 | | 329 | Email from Etienne de Villiers to RJMhippy; cc: Flip Galloway re: Indian Wells Tennis 3/10/06 ATP0347838 |
| 384 | | 402, 403, 106 | | 330 | Email from Dawn Procter to Etienne de Villiers re: Board Meeting - Conf. Call 3/3/06 ATP0342349 |
| 385 | | | | 331 | Memorandum to Mark Webster, Gavin Forbes, Stephanie Tolleson, Steve Simon, Butch bushels, Bob Kain, Adam Barrett from Charlie Pasarell re: draft proposal for a new format of the ATP Tour 9/18/01 ATP0254689 - ATP0254700 |
| 386 | | 802, 402, 403, 106 | | 332 | Email from Etienne de Villiers to All Management Committee: All ATP Board re: Tiriac meeting 12/2/06 ATP0052993 |
| 387 | | 802, 402, 403 | | 333 | Due Diligence Report: Newsweek Champions Cup and State Farm Evert Cup 1/15/99 ATP0225314 - ATP0225327 |
| 388 | | 402, 403 | | 334 | ATP/ISL Deal Summary ATP0198922 - ATP0198928 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | | | | |
|---|---|---|---|---|---|
| **PTX** | **DATE OFFERED** | **OBJECTIONS** | **ADM** | **DEP EXH** | **DESCRIPTION** |
| 389 | | 402, 403 | | 335 | Memorandum to ATP Tour Board from Mark Young re: Indian Wells 3/8/06 NR0034259 - NR0034260_0008 |
| 390 | | 402, 403, 106 | | 336 | Meeting of the ATP Board of Directors via Telephone Conference Call Minutes 3/8/06 ATP0255403 - ATP0255405 |
| 391 | | 402, 403 | | 337 | Phil Anderton CV ATP0347867 - ATP0347872 |

PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 392 | | | | 338 | ATP "GAME" Plan 2006 NR0104493 - NR0104493_0030 |
| 393 | | 402, 403 | | 339 | Anderton Appointed ATP Chief marketing Officer 3/22/06 ATP0346162 - ATP0346163 |
| 394 | | | | 340 | Marketing Strategy Development 2006 ATP0378576 - ATP0378577 |
| 395 | | 402, 403, 106 | | 341 | Email from Phil Anderton to Etienne de Villiers re: Retail Merchandise 5/9/06 ATP0343532 |
| 396 | | 402, 403, 106 | | 342 | Email from Phil Anderton to All Management Committee re: ATP Corporate Communications 9/20/06 ATP0351654 - ATP0351661 |
| 397 | | | | 343 | ATP Calendar Strategy Research 3/21/06 ATP0553527 - ATP0553537 |
| 398 | | 402, 403 | | 344 | Subpoena to Phil Anderton 1/27/07 |
| 399 | | 402, 403 | | 345 | Draft - Player Services Strategic Planning Worksheet - 5 Year Plan 3/12/03 ATP0172568 - ATP0172577 |
| 400 | | 802, 402, 403 | | 346 | Restructuring ATP Player Services Department 11/14/03 ATP0253882 - ATP0253899 |
| 401 | | 402, 403 | | 347 | ATP Player Relations Business Plan ATP0335604 - ATP0335619 |
| 402 | | | | 348 | Email from Etienne de Villiers to Giorgio Di Palermo re: Brave New World 5/11/06 ATP0444661 - ATP0444662 |
| 403 | | | | 349 | Email from Etienne de Villiers to Andre Silva 5/11/06 ATP0444663 - ATP0444664 |
| 404 | | 403, 106 | | 350 | Email from Perry Rogers to Andre Silva; Iggy Jovanovic; Jacco Eltingh re: James Blake summary 4/3/07 ATP0547273 - ATP0547274 |
| 405 | | 403, 106 | | 351 | Email from Andre Silva to Gayle Bradshaw re: Stat 7/18/06 ATP0379126 - ATP0379127 |
| 406 | | 403, 106 | | 352 | Email from Andre Silva to All ATP Board; All Management Committee re: Withdrawal Proposal 8/2/06 ATP0379240 - ATP0379242 |
| 407 | | | | 353 | 2007 - 08 Withdrawal Rule ATP0207211- ATP0207218 |
| 408 | | | | 354 | Email from Bram Tukker to Flip Galloway; Andre Silva re: Rankings Comparison 9/21/07 ATP0576404 - ATP0576415 |
| 409 | | 106 | | 355 | Email from Etienne de Villiers to Andre Silva; All ATP Board; All Management Committee re: Matches & Tournaments Played Top 20 2002-2006 7/16/07 ATP0546662 |
| 410 | | 802, 402, 403 | | 356 | When you are stuck in London ATP0444798 - ATP0444800 |
| 411 | | 802, 402, 403, 106 | | 357 | Email from Andre Silva to J.J. Carter; Paul Settles re: Player Council 12/30/03 ATP0134400 - ATP0134402 |
| 412 | | 106, 402, 403, 802 | | 358 | Email from Richard Ings to Andre Silva re: Fernando Vicente 2/23/04 ATP0055514 - ATP0055516 |
| 413 | | 802, 402, 403, 106 | | 359 | Email from Andre Silva to J.J. Carter re: Monte Carlo 4/16/04 ATP0136994 - ATP0136995 |
| 414 | | 802, 402, 403, 106 | | 360 | Email from Etienne de Villiers to Andre Silva re: ATP Los Angeles 7/16/06 ATP0444720 - ATP0444721 |
| 415 | | 802, 402, 403, 106 | | 361 | Email from Andre Silva to Etienne de Villiers re: Updates 4/11/06 ATP0342967 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| | | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | | |
|---|---|---|---|---|---|---|

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 416 | | 802, 106 | | 362 | Email from Andre Silva to David Higdon etc. 5/9/06 ATP0378841 - ATP0378844 |
| 417 | | 802, 106 | | 363 | Email from Andre Silva to Perry Rogers; Jacco Eltingh; Iggy Jovenovic re: 250's 7/18/07 ATP0546652 |
| 418 | | 802, 402, 403, 106 | | 364 | Email from Andre Silva to Etienne de Villiers re: Jerry Maguire memo 4/3/06 ATP0345981 - ATP0345987 |
| 419 | | | | 365 | Player Communication ATP0053863 - ATP0053875 |
| 420 | | GERMAN, 802 | | D - 121 | Email from Charly Steeb to Hamish Cohen re: WG: Sitzung des Sportausschusses am 15.11.2007 GTF00078426 -GTF00078429 |
| 421 | | | | D - 122 | Email from Charly Steeb to Hamish Cohen re: WG: Preliminary Observations & Recommendations 11/15/07 GTF00078166 - GTF00078214 |
| 422 | | GERMAN, 802 | | D - 123 | Ticketprodukte - Besprechungsergebnis - Frankfurt Meeting 10/23/07 GTF00078331 - GTF00078341 |
| 423 | | 802 | | D - 124 | Email from Charly Steeb to Hamish Cohen re: WG: Potential financial sponsor 11/15/07 GTF00077960 - GTF00077962 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER REDACTED VERSION – PUBLICLY FILED

Produced Hold Draft
May 12, 2008
Rights to Amend and Supplement Reserved

PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 424 | | | | 366 | Tournament Financial Disclosure ATP0082512 - ATP0082641 |
| 425 | | 802, 402, 403 | | 367 | Letter from Robert Kain to Sheikh Mohamed re: Doha buying Indian Wells 1/25/06 |
| 426 | | 106, 802 | | 368 | Email from Peter Lawler to Adam Barrett, Butch Buchholz, Sue Down, Walter Knapper, Mark Webster, Alain Riou, Zeljko Franulovic, S Palmieri, G. Tsobanian re: ATP Meetings 11/4/07 |
| 427 | | 106 | | 369 | Email from Etienne de Villiers to Andre Silva, All ATP Board, All Management Committee re: Matches & Tournaments Played Top 20 2002-2006 7/16/07 ATP0803547 - ATP0803548 |
| 428 | | 106 | | 370 | Email from Etienne de Villiers to Andre Silva, All ATP Board, All Management Committee re: Matches & Tournaments Played Top 20 2002-2007 7/16/07 |
| 429 | | 802, 402, 403 | | 371 | TPL Business Plan Projections 2006-2010 ATP 0546948 - ATP 0546949 |
| 430 | | 802, 402, 403 | | 372 | TPL Draft distribution Progression  12/31/06 ATP0077281 |
| 431 | | | | 373 | Comparison of Week 9 Middle East Applications ATP0617911 - ATP0617920 |
| 432 | | 402, 403, 106 | | 374 | Email from Flip Galloway to Etienne de Villiers and Andy Anson re: Kitzbuhel 7/24/07 ATP0589171 - ATP0589172 |
| 433 | | 402, 403 | | 375 | Letter to Evington Finance Corporation from Andy Anson re: Purchase/Transfer Agreement ATP0590625 - ATP0590627 |
| 434 | | 802, 402, 403, 106 | | 376 | Email from Etienne de Villiers to All Management Committee; All ATP Board re: Tiriac meeting 12/2/06 ATP0052993 |
| 435 | | 106 | | 377 | Email from Mark Young to Etienne de Villiers, Paula Morris, Victor Taylor and Ruth Munn re: Letter from Michael Downey 5/12/06 EML0770881 - EML0770881_0002 |
| 436 | | 106 | | 378 | Our "Brave New World" document 4/14/06 EML0688540 - EML0688540_0006 |
| 437 | | 403 | | 379 | Tournament Valuation and Cash Flow Summary - TMS and Downgraded Events ATP0206597 - ATP0206605 |
| 438 | | 802, 402, 403, 106 | | 380 | Email from Flip Galloway to Mark Young re: Strictly Private and Confidential 3/16/07 EML0779835 - EML0779835_0003 |
| 439 | | 802, 402, 403 | | 381 | Letter to Etienne from Raymond Moore 5/30/06 ATP0344788 - ATP0344791 |
| 440 | | 402, 403 | | D - 125 | ATP Tour, Inc.'s Notice to Take a Rule 30(B)(6) Deposition of Plaintiff  QTF 11/16/07 |
| 441 | | 402, 403 | | D - 126 | Letter to Rob MacGill from Jennifer Scullion re: List of Topics for deposition 12/14/07 |
| 442 | | 402, 403 | | D - 127 | Email from Jennifer Scullion to Rob MacGill, Hamish Cohen re: list of topics for depositions 12/14/07 |
| 443 | | 106, 802 | | D - 128 | Key components of proposed 2009 round by round proposal QFT00000383 |
| 444 | | 802 | | D - 129 | Match schedule plan - Doha 2/1/05 QFT00000595 - QFT00000596 |
| 445 | | 802 | | D - 130 | 2004 Proposed Player-Media Modifications QFT00000661 - QFT00000662 |
| 446 | | 802 | | D - 131 | Player Substitute for the Finals in case of injury Proposal from the Tournament Council 8/23/04 QFT00000163 - QFT00000164 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER
REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| | | | | | **PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST** |
| 447 | | 802 | | D - 132 | ATP Tournament Council Meeting - Shanghai 11/14/05 QFT00000070 - QFT00000073 |
| 448 | | | | D - 133 | Email from Lesley Townsend to Ayman re: Etienne photo 12/5/05 QFT00000042 |
| 449 | | 802 | | D - 134 | Proposal for a new calendar system QFT00000035 - QFT00000036 |
| 450 | | 802 | | D - 135 | QTF - Exxon Mobile Tournament Financial Statements 3/31/07 |
| 451 | | 802 | | D - 136 | QTF - Exxon Mobile Tournament Financial Statements 3/31/06 |
| 452 | | 802 | | D - 137 | QTF - Exxon Mobile Tournament Financial Statements 3/31/05 |
| 453 | | 802 | | D - 138 | QTF - Exxon Mobile Tournament Financial Statements 3/31/04 |
| 454 | | 802 | | D - 139 | QTF - Exxon Mobile Tournament Financial Statements 3/31/03 |
| 455 | | | | D - 140 | Withdrawn |
| 456 | | | | D - 141 | Withdrawn |
| 457 | | | | D - 142 | Withdrawn |
| 458 | | | | D - 143 | Withdrawn |
| 459 | | | | D - 144 | Withdrawn |
| 460 | | | | D - 145 | Withdrawn |
| 461 | | | | D - 146 | Withdrawn |
| 462 | | 106, 402, 403, 802 | | D - 147 | Withdrawn |
| 463 | | 106, 402, 403, 802 | | D - 148 | Email from Ayman Azmy to Tony Godsick re: Draft letter 2/12/06 QFT00000050 - QFT00000052 |
| 464 | | 106, 402, 403, 802 | | D - 149 | Letter to Sheikh Mohammad from Robert Kain re: Doha buying Indian Wells 1/25/06 QFT00000047 - QFT00000049 |
| 465 | | 106, 402, 403, 802 | | D - 150 | Email from Tony Godsick to Ayman re: Bob letter 3/1/06 QFT00000045 - QFT00000046 |
| 466 | | 106, 402, 403, 802 | | D - 151 | Withdrawn |
| 467 | | 106, 402, 403, 802 | | D - 152 | Withdrawn |
| 468 | | 402, 403 | | D - 153 | Cooperation agreement between DTB and QTF 11/19/04 GTF00084097 - GTF00084106 |
| 469 | | 106, 403 | | D - 154 | Email from Lesley Townsend to Ayman re: Letter from Brad 10/5/07 QFT00000340 - QFT00000341 |
| 470 | | 802 | | D - 155 | Letter to Ayman Azmy from Brad Drewett re: Qatar's "500" Tournament Application 11/22/07 QFT00000343 - QFT00000344 |
| 471 | | 106 | | D - 156 | Email from Brad Drewett to Ayman Azmy re: Summary of MB benefits 10/24/07 QFT00000346 - QFT00000347 |
| 472 | | | | D - 157 | ATP Tennis.com article "ATP Unveils New Tier of "500" Events for 2009 & $1 Billion Investment in ATP Tour 10/4/07 |
| 473 | | 802 | | D - 61 | ATP "500" Tournament Application 7/25/07 ATP0543545 - ATP0543596 |
| 474 | | 802 | | D - 68 | Final Press Conference with Walter Knapper, Sheikh Mohammad Bin Faleh Al-Thani, Carl-Uwe Steeb and Ayman Azmy  5/20/07 GTF00012977 - GTP00012981 |
| 475 | | 402, 403, 802 | | D - 158 | Expert Report of Gary G. Kleinrichert 1/7/08 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER
REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| | | | | | |
|---|---|---|---|---|---|
| | | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | |

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 476 | | | | D - 159 | Memorandum of Understanding by & Between New Sports & Entertainment [Shanghai] Ltd. And ATP Tour, Inc. 2/15/07 ATP0084486 - ATP0084489 |
| 477 | | 802 | | D - 160 | German Tennis Federation, et al. v. ATP Tour, Inc., et al. Index of Schedules 1/4/08 |
| 478 | | 402, 403, 802 | | D - 161 | Liability Report by Andrew Zimbalist 1/14/08 |
| 479 | | 402, 403, 802 | | D - 162 | Reply to Mr. Walker by Andrew Zimbalist 2/1/08 |
| 480 | | 106, 403 | | 382 | ATP Circuit Regulations |
| 481 | | | | 383 | ATP Unveils New Top Tier of Events For 2009 8/31/07 |
| 482 | | 802, 402, 403 | | 384 | ATP to award rankings points for Olympics play in Beijing 2/11/08 |
| 483 | | 106, 802, 402, 403 | | 385 | ATP Tennis Partnership Opportunities ATP0452691_0002 - 0018 |
| 484 | | 802, 402, 403 | | 386 | ATP World Tour Partnership Opportunities ATP0452680_0003 - 0047 |
| 485 | | 402, 403, 802, 106 | | | Letter from Mark Young to Wim Buitendijk re: two memoranda to Mark Miles 7/27/1998 ATP0593991 - 3998 |
| 486 | | 106, 402, 403, 802, 901 | | | Purchase/Transfer Agreement - Longwood Cricket club 2/22/00 ATP0592545 - 2547 |
| 487 | | 402, 403 | | | Purchase/Transfer Agreement - ESPN STAR Sports 3/14/00 ATP0592564 - 2566 |
| 488 | | 402, 403 | | | Transfer/Release Agreement - Corporation Futuros Campeones 11/12/2002 ATP0592542 - 2544 |
| 489 | | 106, 402, 403 | | | Tennis Masters Cup 2005-2007 Agreement 1/1/05 ATP0597467 - 497 |
| 490 | | 106, 402, 403 | | | Agreement by and Between Stanford Financial Group and ATP Tour, Inc. 5/1/05 ATP0810763 - 776 |
| 491 | | 106, 802 | | | Letter to Brad Drewett on behalf of the Shanghai Administration of Sports and the TMC Shanghai Organising Committee 3/2/06 ATP0612631 - 632 |
| 492 | | 106, 402, 403, 802 | | | Email from Andre Silva to Player Council; Iggy Jovanovic; Jacco Eltingh; Perry Rogers re: Player Pension Review 3/16/06 ATP0612639 - 641 |
| 493 | | 106, 802 | | | Email from Etienne de Villiers to All ATP Board re: Francesco Ricci Bitti 3/17/06 ATP0612662 -666 |
| 494 | | 106 | | | Email from Etienne de Villiers to Perry, Patrice, Jacco, Iggy, Graham and Charlie re: detailed outline 4/14/06 ATP612687 - 696 |
| 495 | | 403, 106, 802 | | | Email from Iggy Jovanovic to Perry Rogers re: Summary 4/20/06 ATP0612699 |
| 496 | | 802 | | | ATP and Tennis Masters Cup May 2006 ATP0610908 - 980 |
| 497 | | 802 | | | Letter from Mark Oliver to Etienne de Villiers re: Commercial Assessment of ATP Plans for Tennis 7/18/06 ATP0612865 - 871 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| | | | | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST |
|---|---|---|---|---|---|
| **PTX** | **DATE OFFERED** | **OBJECTIONS** | **ADM** | **DEP EXH** | **DESCRIPTION** |
| 498 | | 106 | | | Email from flip Galloway to All ATP Board; All management Committee; George Ciz re: Update Call on Prize Money and bid process 7/25/06 ATP0612816 - 851 |
| 499 | | 106 | | | Email from Flip Galloway to All ATP Board; All Management Committee; George Ciz re: Takeaways from last Thursday's call 7/31/06 ATP0612895 - 896 |
| 500 | | 802, 402, 403 | | | Letter from Richard Krajicek to Members of the Players Council 8/10/06 ATP0613057 -3058 |
| 501 | | 106, 402, 403 | | | Email from Etienne de Villiers to All ATP Staff Global re: ATP Media 9/6/06 ATP0613131 - 134 |
| 502 | | 106 | | | Email from Flip Galloway to All ATP board; All Management Committee; George Ciz re: Thursday Calendar Call 10/4/06 ATP0617104 - 121 |
| 503 | | 106, 802 | | | Email from George Ciz to Jacco Eltingh; Flip Galloway re: Thursday Calendar Call 10/4/06 ATP0617097 - 103 |
| 504 | | 802, 106, 402, 403 | | | Email from Iggy Jovanovic to Andre Silva re: Blake & the golden mile 10/19/06 ATP0613364 |
| 505 | | 106 | | | Email from Etienne de Villiers to All Management committee; All ATP Board re: 2008 calendar-food for thought 10/30/06 ATP0613384 - 387 |
| 506 | | 106 | | | Email from Jacco Eltingh to Iggy Jovanovic; Andre Silva re: Shanghai board meeting update 11/17/06 ATP0613419 - 420 |
| 507 | | 106 | | | Email from Jacco Eltingh to Iggy Jovanovic re: Shanghai board meeting update 11/19/06 ATP0616981 - 983 |
| 508 | | 106, 403 | | | Email from Etienne de villiers to Iggy Jovanovic; Jacco Eltingh re: Call for next week 11/30/06 ATP0613525 - 554 |
| 509 | | 106, 802, 402, 403 | | | Email from Etienne de villiers to All Management Committee; All ATP board re: Tiriac meeting 12/1/06 ATP0613556 |
| 510 | | 106, 403 | | | Email from Etienne de Villiers to Iggy Jovanovic; Jacco Eltingh; Perry Rogers re: Updated Bonus Calculation 12/1/06 ATP0616828 - 829 |
| 511 | | 106 | | | Email from Jacco Eltingh to Iggy Jovanovic; Andre Silva; Perry Rogers re: TMC 12/14/06 ATP0616738 - 739 |
| 512 | | 106 | | | Email from Etienne de villiers to All Management Committee; All ATP Board re: tournament directors year end report 12/16/06 ATP0613678 - 682 |
| 513 | | 106 | | | Email from Flip Galloway to All ATP Board, All Management Committee; George Ciz; Zeljko Franulovic;Shanna Fisher re: Thursday's Call 12/20/06 ATP0613689 - 694 |
| 514 | | 106 | | | Email from Iggy Jovanovic to Andre Silva; J. Eltingh re: Player Council 12/28/06 ATP0613767 - 768 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER — PUBLICLY FILED
REDACTED VERSION – PUBLICLY FILED

Produced from Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| | | | | | |
|---|---|---|---|---|---|
| | | | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | |
| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
| 515 | | 402, 403 | | | Letter to Iggy Jovanovic re: non-exclusive right to introduce Tennis Canada to certain entities who wish to purchase certain Tennis Canada sponsorship programs 1/1/07 ATP0605208 - 212 |
| 516 | | 402, 403 | | | Letter to Iggy Jovanovic re: non-exclusive right to introduce Tennis Canada to certain entities who wish to purchase certain Tennis Canada sponsorship programs 1/1/07 ATP0605229 -233 |
| 517 | | | | | Tennis Masters Cup London Financial Modeling 1/9/07 ATP0611612 - 622 |
| 518 | | 802, 106, 402, 403 | | | Email from J Eltingh to Alex Waske re: ATP 1/15/07 ATP0013784 - 786 |
| 519 | | 402, 403 | | | 2007 - 08 ATP Calendars As Approved by the board in Melbourne 1/18/07 ATP0610563 - 566 |
| 520 | | 802, 106 | | | Email from Etienne de Villiers to Roger Federer and Jblay re: our plans 1/19/07 ATP0613792 – 794 |
| 521 | | 106, 802 | | | Email from Kimberly Pettigrew to Mac Winker; Carolyn Hicks re: ET Memo Attachment 1/23/07 ATP0613812 - 816 |
| 522 | | 802, 402, 403, 106 | | | Email from J Elting to Alex Waske re: ATP 1/31/07 ATP0613823 - 826 |
| 523 | | 802, 106, 402, 403 | | | Email from J Elting to Martin Garcie; Alex Waske; Etienne de Villiers re: ATP ATP0613827 - 828 |
| 524 | | | | | Email from atptennis.com re: Melbourne Board summary & 2009 Calendar 2/7/07 ATP0616329 330 |
| 525 | | 106, 402, 403 | | | Email from J Eltingh to Ivan Jubicic; Jblay re: agenda points council and board Miami 2/9/07 ATP0614149 |
| 526 | | 106, 403 | | | Email from J Eltingh to Iggy Jovanovic; Perry Rogers re: Confidential 500's 2/19/07 ATP0616296 - 298 |
| 527 | | 106, 403 | | | Email from Iggy Jovanovic to Etienne de Villiers; Flip Galloway re: 500's questions 3/12/07 ATP0614199 |
| 528 | | 802, 106 | | | Email from Mac Winker re: Feedback on the Brave New World 3/16/07 ATP0614261 - 262 |
| 529 | | 106, 402, 403 | | | Draft ATP Tournament Council Meeting 3/22/07 Minutes ATP0609390 - 392 |
| 530 | | 106, 802 | | | Email from J Eltingh to Hans Felius re: 2009 calendar 3/26/07 ATP0614266 - 287 |
| 531 | | 106, 402, 403 | | | Email from Flip Galloway to All ATP Board; All Management committee; George Ciz; Elizabeth Mitchell; Shanna fisher re: Draft Proposal to ITF 4/11/07 ATP0614370 - 372 |
| 532 | | 402, 403, 106 | | | Email from J Eltingh to Etienne de Villiers re: Media policy 4/13/07 ATP0616139 |
| 533 | | 106, 802, 403 | | | Email from Horst Klosterkemper to Flip Galloway; Andy Anson re: Calendar 4/13/07 ATP0595086 - 87 |
| 534 | | 802, 402, 403, 106 | | | Email from J Eltingh to Jim Courier re: Sampras 4/19/07 ATP0616137 |
| 535 | | 106 | | | Email from Etienne de Villiers to All ATP Board re: Las Vegas Chairman's report 5/1/07 ATP0598921 - 922 |
| 536 | | 106 | | | Email from Zeljko Franulovic to Etienne de Villiers; All ATP Board re: Las Vegas Chairman's report 5/2/07 ATP0598928 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER PUBLIC VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| | | | | | |
|---|---|---|---|---|---|
| **PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST** | | | | | |

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 537 | | 106 | | | Email from Etienne de Villiers to Zeljko Franulovic and All ATP Board re: Las Vegas Chairman's report 5/2/07 ATP0603200-201 |
| 538 | | 106, 402, 403 | | | Email from Etienne de Villiers to Mark Young re: chairman's report 5/2/07 ATP0603202 |
| 539 | | 802, 402, 403, 106 | | | Email from Brad Drewett to Sanji Arisawa re: Las Vegas Meeting 5/2/07 ATP0599078 |
| 540 | | 106 | | | Email from Zeljko Franulovic re: report from Las Vegas 5/3/07 ATP0609567 - 569 |
| 541 | | 106 | | | Email from Iggy Jovanovic to Flip Galloway and Mark Young re: report from Las Vegas 5/4/07 ATP0604073-74 |
| 542 | | 106 | | | Email from Flip Galloway to Andy Anson re: Rome/Madrid Sanction Terms 5/10/07 ATP0607502 - 503 |
| 543 | | 402, 403, 106 | | | Email from Iggy Jovanovic to Carolina Mico re: Mr. Carmelo Ezpeleta 5/11/07 ATP0605248 |
| 544 | | 106, 802 | | | Email from Flip Galloway to Mark Young; Andy Anson, Brad Drewett; Etienne de Villiers re: National Opens 5/11/07 ATP0609620 - 639 |
| 545 | | 106, 403 | | | Email from Flip Galloway to David Massey re: Category Protection Fee 5/11/07 ATP0607499 |
| 546 | | 106, 403 | | | Email from Iggy Jovanovic to Flip Galloway; All ATP Board re: 500's 5/11/07 ATP0604079 |
| 547 | | 802, 402, 403, 106 | | | Email from Iggy Jovanovic to Mirka 5/12/07 ATP0605108 |
| 548 | | 106, 402, 403 | | | Email from Etienne de Villiers to Iggy Jovanovic; Andre Silva re: Mandatory player meeting 5/13/07 ATP0604080 |
| 549 | | 106, 802, 402, 403 | | | Email from Alison Lee to Brad Drewett re: Queries and questions 5/13/07 ATP0596343 - 348 |
| 550 | | 106, 403 | | | Email from Iggy Jovanovic to Flip Galloway re: 500's 5/14/07 ATP0604082 |
| 551 | | 106, 802 | | | Email from Mark Webster re: AMS & GS Draw Comparisons as of May 14, 2007 ATP0591888 904 |
| 552 | | | | | ATP Media & Marketing Report - Masters Series Hamburg 5/14/07 ATP0609588 - 596 |
| 553 | | 802, 106 | | | Email from J Eltingh to Iggy Jovanovic; Etienne de Villiers; Andre Silva; Perry Rogers re: short notes from Hamburg 5/15/07 ATP0614516 |
| 554 | | 802, 106 | | | Email from J elating to Etienne de Villiers re: short notes from Hamburg 5/15/07 ATP0614519 - 520 |
| 555 | | 106, 402, 403 | | | Email from Etienne de Villiers to Iggy Jovanovic re: meeting with Paradom Srichaphan 5/18/07 ATP0604090 |
| 556 | | 802, 106, 402, 403, 1002 | | | Email from Etienne de Villiers to Flip Galloway re: TMC Year-End Agreement and Grand Slam/ATP Contract 5/18/07 ATP0596485 - 503 |
| 557 | | German, 802 | | | Letter from Dr. Alfred Steinbrugger to Dr. Jurgen Hoffman re: Evington finance Corp. 5/21/07 ATP0606944 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER
REDACTED VERSION – PUBLICLY FILED

Privileged Final Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| | | | | | |
|---|---|---|---|---|---|
| | | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | |

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 558 | | 106, 402, 403 | | | Email from David Massey to Andy Anson re: 500 Category Deck 5/23/07 ATP0593167 - 168 |
| 559 | | 106 | | | "500" Category business Plan & Reasoning 5/16/07 ATP0593184 - 197 |
| 560 | | 106, 402, 403 | | | Email from Etienne de Villers to All ATP Board re: Davis cup and Olympics ranking points 5/25/07 ATP0614630 |
| 561 | | 106, 402, 403 | | | Email from J Eltingh to Etienne de Villers; All ATP board re: Davis cup and Olympics ranking points ATP0603362 - 363 |
| 562 | | 106, 402, 403 | | | Email from Etienne de Villers to Jacco Eltingh; All ATP Board re: Davis cup and Olympics ranking points 5/25/07 ATP0603364 - 365 |
| 563 | | 106, 402, 403 | | | Email from Zeljko Franulovic to Etienne de Villers; Jacco Eltingh; All ATP Board re: Davis cup and Olympics ranking points ATP0603366 - 367 |
| 564 | | 106, 402, 403 | | | Email from Iggy Jovanovic to Gavin Gabrielson re: WTA - Championship bid 5/26/07 ATP0605374 - 375 |
| 565 | | 106, 402, 403 | | | Email from Zeljko Franulovic to Etienne de Villers; Jacco Eltingh; All ATP Board re: Davis cup and Olympics ranking points 5/26/07 ATP0603371 - 374 |
| 566 | | 106, 402, 403 | | | Email from Iggy Jovanovic to Gavin Gabrielson re: WTA - SE Championships; meeting summary 5/27/07 ATP0605376 - 377 |
| 567 | | 106, 402, 403 | | | Email from Iggy Jovanovic to Etienne de Villers re: Davis cup and Olympics ranking points 5/27/07 ATP0603375 - 376 |
| 568 | | 802, 402, 403, 106 | | | Email from Iggy Jovanovic to G Gabrielson re: Email 5/27/07 ATP0605378 - 379 |
| 569 | | 106, 402, 403 | | | Email from Flip Galloway to Iggy Jovanovic re: Davis cup and Olympics ranking points 5/28/07 ATP0604125 - 126 |
| 570 | | 106, 402, 403 | | | Email from Iggy Jovanovic to Flip Galloway re: Davis cup and Olympics ranking points 5/28/07 ATP0604127 - 129 |
| 571 | | 106, 402, 403 | | | Email from Etienne de Villers to Iggy Jovanovic re: Davis cup and Olympics ranking points 5/28/07 ATP0604130 - 132 |
| 572 | | 106, 403 | | | Email from David Massey to All Management Committee re: Open "500" Status Report 5/30/07 ATP0593146 - 158 |
| 573 | | 802, 402, 403 | | | Memo to Brad Drewett and Mark Young from CH Smith re: Shanghai AMS Agreement 5/28/07 ATP0597436 - 437 |
| 574 | | 106, 1002, 402, 403 | | | Masters 1000 Agreement Between New Sports Entertainment [Shanghai] Ltd. And ATP Tour, Inc ATP0597498 - 7508 |
| 575 | | 106, 1002, 402, 403 | | | Masters 1000 Agreement Between New Sports Entertainment [Shanghai] Ltd. And ATP Tour, Inc with Non-Compete Agreement ATP0595242 5255 |
| 576 | | 106, 1002, 402, 403 | | | Agreement between AELTC, LTA and ATP 6/00/07 ATP0596635 - 638 |
| 577 | | 403, 106 | | | Revenues ATP0596646 - 659 |
| 578 | | 106, 403 | | | Email from Zeljko Franulovic to Horst Klosterkemper re: draft calendar 2009 6/1/07 ATP0609597 - 598 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER — PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 579 | | 106, 402, 403 | | | Email from Dee Dee Finch to Etienne de Villiers re: Davis cup and Olympic Ranking Pts. 6/1/07 ATP0603382 |
| 580 | | 802, 106, 402, 403 | | | Email from Jolanda Jansen to Horst Klosterkemper; Andy Anson re: Meeting Monaco 6/3/07 ATP0607417 |
| 581 | | 802, 106, 402, 403 | | | Email from Greg Wood to Roger Duthie re: follow up 6/7/07 ATP0605163 |
| 582 | | 802, 106, 402, 403 | | | Email from B Godkhindi to Brad Drewett re: ATP Ranking: DDF - Confidential 6/7/07 ATP0597035 - 7037 |
| 583 | | 802, 402, 403 | | | Dubai Duty Free Title sponsor: ATP Ranking & Race 5/23/07 ATP0597063 |
| 584 | | 402, 403, 106 | | | Email from Flip Galloway to Andy Anson re: ATP Ranking and Race sponsorship 6/8/07 ATP0609724 |
| 585 | | 402, 403 | | | ATP Rankings & Race Proposal ATP0597036 - 7062 |
| 586 | | | | | Email from Brad Drewett to Jeff Reel re: AMS Shanghai Term Sheet/PowerPoint Presentation 6/12/07 ATP0597438 - 439 |
| 587 | | | | | Email from Flip Galloway to Andy Anson re: Draft Capo Fist Calendar and Commitments 6/13/07 ATP0609448 - 564 |
| 588 | | 802, 106, 402, 403 | | | Email from Andre Silva to Iggy Jovanovic re: Etienne 6/13/07 ATP0604693 |
| 589 | | 1002, 402, 403 | | | Draft Non-Compete Agreement between NSE and ATP 6/14/07 ATP0597448 - 451 |
| 590 | | 402, 403, 106, 1002 | | | Draft Non-Compete Agreement between Ba-Shi and ATP 6/14/07 ATP59744 - 447 |
| 591 | | 802 | | | Letter to Andy from Gerard Tsobanian 6/15/07 ATP0606947 |
| 592 | | 1002, 106 | | | Email from Etienne de Villiers to Ian Ritchie re: proposed aeltc/ita cooperation agreement with atp/aeg 6/19/07 ATP0596641 - 645 |
| 593 | | 402, 403 | | | ATP Proposal to Fed Ex 6/20/07 ATP0612599 |
| 594 | | 802, 106, 402, 403 | | | Email from Greg Wood to Iggy Jovanovic re: Emirates Proposal 6/20/07 ATP0605166 - 167 |
| 595 | | 802, 402, 403 | | | Email from Chris Kermode to Richard Davies re: Murray/Henman sign up for tennis at the O2 Arena 6/20/07 ATP0612578 - 578 |
| 596 | | 106, 402, 403 | | | Email from Iggy Jovanovic to Richard Davies re: South African Air 6/21/07 ATP0612572 - 573 |
| 597 | | 802, 106, 402, 403 | | | Email from Greg Wood to Iggy Jovanovic re: Emirates Proposal 6/21/07 ATP0605201 - 207 |
| 598 | | 802 | | | Email from Gerard Tsobanian to Andy Anson re: Madrid City Commitment 6/22/07 ATP0606928 - 930 |
| 599 | | 802, 1002, 402, 403 | | | Draft Letter to Roger Duthie re: confirmation of agreement between Tennis Canada and Emirates Airlines 6/22/07 ATP0605213 - 220 |
| 600 | | 802, 106, 402, 403 | | | Email from Jeff Reel to Laurent Delanney re: ATP RQ & Beg contract/info 6/22/07 ATP0612588 - 570 |
| 601 | | 402, 403, 106 | | | ATP Tournament Council Meeting Draft Minutes 6/24/07 ATP0591946 - 949 |
| 602 | | 802 | | | ATP Tournament Council Meeting Minutes 6/24/07 ATP0609353 - 386 |

| | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | | |
|---|---|---|---|---|---|
| **PTX** | **DATE OFFERED** | **OBJECTIONS** | **ADM** | **DEP EXH** | **DESCRIPTION** |
| 603 | | 106, 402, 403 | | | Email from Richard Davies to Geoffroy Bourbon re: Mercedes Benz partnership 6/25/07 ATP0611975 - 976 |
| 604 | | 802, 106, 402, 403 | | | Email from Pablo Anderson to Richard Davies re: First Meeting ATP 6/25/07 ATP0612564 - 565 |
| 605 | | | | | Summary of Meetings of the ATP Board of Directors 6/25/07 ATP0591841 - 846 |
| 606 | | 802, 402, 403, 106 | | | Email from John Whelan to Iggy Jovanovic re: operation of a board game tournament 8/26/07 ATP0605234 - 235 |
| 607 | | 106 | | | Email from Richard Davies to Chris Kermode re: Revised TMC Agreement 6/26/07 ATP0611964 - 965 |
| 608 | | 106, 402, 403 | | | Email from Richard Davies to Ruth Munn re: proposed aeltc/ita cooperation agreement with atp/aeg 6/26/07 ATP0611949 - 953 |
| 609 | | | | | Tennis Masters Cup London 2009 Opportunity Overview 6/27/07 ATP0609990 - 10013 |
| 610 | | 802, 402, 403, 106 | | | Email from B godchild to Brad Drewett re: Sony Ericsson WTA Tour News - confidential for today 6/29/07 "Sony Ericsson Championships Awarded to Doha, Qatar for 2008 -2010 in $42 Million deal" ATP0595780 -782 |
| 611 | | 106 | | | Post Wimbledon Board Meeting 2009 format Draft 6/29/07 ATP0591708 - 1728 |
| 612 | | | | | Post Wimbledon Board Meeting 2009 format 6/29/07 ATP0614724 - 742 |
| 613 | | 106, 402, 403 | | | Email from Etienne de Villiers to Arlen Kantarian 6/29/07 ATP0615710 - 712 |
| 614 | | 106 | | | Email from Zeljko Franulovic to Etienne de Villiers; All ATP board re: ATP Proposal 6/20/07 ATP0599026 |
| 615 | | 802, 402, 403, 106 | | | Email from Phil Anderton to Iggy Jovanovic; Perry Rogers; Jacco Eltingh; Andre Silva re: Stars and marketing 6/20/07 ATP0604917 |
| 616 | | 802, 106, 402, 403 | | | Email from Phil andiron to Iggy Jovanovic re: Agent Meeting 6/30/07 ATP0604918 |
| 617 | | 106 | | | Email from Iggy Jovanovic to Flip Galloway 7/3/07 ATP0604170 |
| 618 | | 106 | | | Email from Flip Galloway to Iggy Jovanovic 7/3/07 ATp0604175 - 176 |
| 619 | | 106 | | | Email from Etienne de Villiers to All ATP Board re: 2009 calendar and onwards 7/3/07 ATP0598977 -979 |
| 620 | | 106 | | | Email from Brad Drewett to Flip Galloway re: Draft 500 Application 7/4/07 ATP0599273 |
| 621 | | 106, 802 | | | Email from Etienne de villiers to All ATP Board Kris Dent re: 2009 calendar and onwards ATP0614750 - 752 |
| 622 | | 106, 802 | | | Email from Etienne de Villiers to Iggy Jovanovic re: 2009 calendar and onwards 7/4/07 ATP0604185 - 186 |
| 623 | | 106 | | | Email from Flip Galloway to Brad Drewett re: Draft 500 Application 7/4/07 ATP0599274 |
| 624 | | 106, 802 | | | Email from Iggy Jovanovic to Etienne de Villiers re: 2009 calendar and onwards 7/4/07 AtP0604187 - 188 |
| 625 | | 106 | | | Email from Andy Anson to Brad Drewett re: Draft 500 Application 7/4/07 ATP0599332 - 333 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|-----|--------------|------------|-----|---------|-------------|
| | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | | |
| 626 | | 106, 802 | | | Email from Etienne de Villiers to Andy Anson re: 2009 calendar and onwards 7/4/07 ATP0606925 - 927 |
| 627 | | 1002 | | | Withdrawn |
| 628 | | 106 | | | Email from Brad Drewett to Filp Galloway re: 500 document 7/6/07 ATp0599390 |
| 629 | | 106 | | | Email from Mark Webster to Brad Drewett re: Draft 500 application 7/6/07 ATP0599446 - 447 |
| 630 | | 106 | | | Email from Brad Drewett to Iggy Jovanovic re: Draft 500 application 7/7/07 ATP0604252 |
| 631 | | 802, 106 | | | Email from Etienne de Villiers to All ATP Board re: Board call - calendar issues 2009 -2011 7/8/07 ATP0614809 - 822 |
| 632 | | 106, 802 | | | Email from Branimir Horvat to J Eltingh re: PBZ Zagreb Indoors 2008 7/8/07 ATP0614825 - 826 |
| 633 | | 402, 403, 802, 106 | | | Email from Iggy Jovanovic to Perry Rogers 7/8/07 ATP0604253 |
| 634 | | 802, 402, 403, 106 | | | Email from Laurent Delanney to Richard Davies re: FedEx and DDF 7/9/07 ATP0596841 |
| 635 | | 106, 802, 402, 403 | | | Email from Iggy Jovanovic to Mahesh Bhupathi re: Series B"s - questions 7/12/07 ATP0605419 |
| 636 | | 802, 106, 402, 403 | | | Email from Iggy Jovanovic to Kris Dent re: Tips 7/13/07 ATP0604260 |
| 637 | | 106, 403, 802 | | | Email from Iggy Jovanovic to Etienne de villiers re: 500's 7/13/07 ATP0914833 |
| 638 | | 106, 403, 802 | | | Email from Brad Drewett to Salah Tahlak re: 500 process 7/13/07 ATP0597392 |
| 639 | | 106, 802, 402, 403 | | | Email from Iggy Jovanovic to Mahesh Bhupathi re: Series B"s - questions 7/12/07 ATP0605426 -427 |
| 640 | | 402, 403, 106 | | | Email from Brad Drewett to Bharat Godkhindi re: pls review and comment 7/12/07 ATP0597391 |
| 641 | | 106, 802, 402, 403 | | | Email from B Godkhindi to Brad Drewett re: pls review and comment 7/12/07 ATP0597085 |
| 642 | | 106, 402, 403 | | | Email from Brad Drewett to Salah Tahlak re: Race/Ranking update 7/12/07 ATP0597066 |
| 643 | | 402, 403, 1002 | | | Sponsorship Agreement Extension Tennis Master Cup Shanghai 7/12/07 ATp0596842 - 843 |
| 644 | | 402, 403, 1002 | | | Amendment agreement to the Sponsorship Agreement 7/12/07 ATP0612242 - 244 |
| 645 | | 106, 802 | | | Email from Iggy Jovanovic to Gavin Gabrielson re: call summary & tournaments 7/12/07 ATP0605637 - 638 |
| 646 | | 402, 403, 106, 802 | | | "Hit List" - potential Atp & WTA tournaments acquisitions 7/12/07 ATP0606698 - 702 |
| 647 | | 106, 802, 403 | | | Email from flip Galloway to Iggy Jovanovic re: 41% prm 7/13/07 ATP0604264 |
| 648 | | 802, 106 | | | Email from Flip Galloway to All ATP Board; All Management Committee; Rachael Inada; Shanna Fisher; Paula Morris re: Summary of call last night 7/13/07 ATP0599578 |
| 649 | | 802, 106 | | | Email from J Eltingh to Flip Galloway ; All ATP Board; All Management Committee; Rachael; Shanna Fisher; Paula Morris re: Summary of call last night 7/13/07 ATP0603541 - 542 |

PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 650 | | 106, 403, 802 | | | Email from Iggy Jovanovic to Etienne de Villiers re: 500's 7/13/07 ATP0604270 - 271 |
| 651 | | 106, 403, 802 | | | Email from Etienne de Villiers to Jacco Eltingh; Iggy Jovanovic; Perry Rogers; Andre Silva re: 500's 7/13/07 ATp0604272 - 273 |
| 652 | | 106, 403, 802 | | | Email from Iggy Jovanovic to Etienne de Villiers re: 500's 7/13/07 ATP0604274 - 275 |
| 653 | | 106 | | | Email from Flip Galloway to All ATP Board ; All management Committee; Rachael Inada; Shanna Fisher ; Paula Morris re: 500s Tourn commitment 7/13/07 ATP0599579 - 581 |
| 654 | | 106, 403, 402 | | | Email from Andre Silva to All ATP Board; All Management Committee re: Matches & tournaments Played Top 20 2002-2006 7/16/07 ATP0592954 - 957 |
| 655 | | | | | Memorandum to ATP Board from Andy Anson re: European Summer Calendar 7/16/07 ATP0610449 - 451 |
| 656 | | 106, 403 | | | Email from J Eltingh to Iggy Jovanovic; Perry Rogers; Elizabeth Mitchell; Etienne de Villiers; Flip Galloway; Andre Silva re; 500 7/17/07 ATP0615490 |
| 657 | | 106, 403 | | | Email from Etienne de Villiers to Flip Galloway; mark Young; Brad Drewett; Kris Dent re: Next steps 7/18/07 ATP0599003 |
| 658 | | 106, 403 | | | Email from Etienne de Villiers to Andre Silva; Iggy Jovanovic; Perry Rogers; Jacco Eltingh; Flip Galloway re: communication about 2009-2010 and 4 out of 11 7/18/07 ATP0604283 |
| 659 | | | | | 2007 ATP tournament Listing Americas ATP0610345 -355 |
| 660 | | 106, 802 | | | email from Kris Dent to mark Young; Flip Galloway; Brad Drewett; Andy Anson re: Announcement strategy & Q&As for approval 7/19/07 ATP0609333 - 348 |
| 661 | | 106 | | | Email from Mark Young to All ATP Board re: Monday's Board call/2009 Format 7/19/07 ATP0603553 |
| 662 | | 106, 802, 402, 403 | | | Email from Iggy Jovanovic to Mahesh Bhupathi re: Costs 7/20/07 ATP0605490 |
| 663 | | 106, 402, 403, 802 | | | Email from Iggy Jovanovic to Gavin Gabrielson re: Acquisitions PowerPoint 7/21/07 ATP0605491 |
| 664 | | 402, 403 | | | ATP & WTA tournaments Possible acquisitions 7/21/07 ATP0605492 - 528 |
| 665 | | 106, 1002 | | | Withdrawn |
| 666 | | 106, 402, 403 | | | Email from Richard Davies to Brad Drewett re: Kremlin Cup Notification 7/24/07 ATP0611940 -941 |
| 667 | | 106, 802, 402, 403 | | | Email from Etienne de Villiers to Andy Anson re: Kitzbuhel 7/24/07 ATP0606922 - 923 |
| 668 | | 106, 802, 402, 403 | | | Email from Gavin Gabrielson to Iggy Jovanovic re: ToC 7/25/07 ATP0605705 - 707 |
| 669 | | 402, 403, 407, 408 | | | Email from Etienne de Villiers to All ATP Staff GLOBAL re: Internal message from Etienne concerning Monte Carlo. Not for public distribution 7/25/07 ATP0599039 |
| 670 | | 402, 403, 407, 408 | | | Email from Kris Dent to All ATP Board re: Joint Statement by ATP & Masters Series Monte Carlo 7/27/07 ATP0605002 |
| 671 | | | | | Letter to Ayman Azmy from Brad Drewett re: Qatar's "500" Tournament Application ATP0595170 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER

REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | | | | |
|---|---|---|---|---|---|
| **PTX** | **DATE OFFERED** | **OBJECTIONS** | **ADM** | **DEP EXH** | **DESCRIPTION** |
| 672 | | 402, 403 | | | Event Estoril Open 2007 ATP0593819 |
| 673 | | | | | Bengt Moller ATP0594091 |
| 674 | | 402, 403, 106, 802 | | | Tournament Information Open SEAT ATP0594391 - 404 |
| 675 | | 402, 403, 106, 902 | | | Tournament Information ABN AMRO ATP0594075 - 085 |
| 676 | | 402, 403, 106 | | | Tournament ATP0595265 - 272 |
| 677 | | 802 | | | Vienna Austria ATP 500 Application ATP0593822 - 864 |
| 678 | | 802 | | | Rotterdam The Netherlands ATP 500 Application ATP0594959 - 5013 |
| 679 | | 802 | | | Lyon France ATP 500 Application ATP0594492 - 549 |
| 680 | | 802 | | | Barcelona Spain ATP 500 Application ATP0594664 - 729 |
| 681 | | 802 | | | Basel Switzerland ATP 500 Application ATP0594197 - 253 |
| 682 | | 802 | | | Tournament Information Basel Switzerland ATP0594273 - 4283 |
| 683 | | 802 | | | St. Petersburg ATP 500 Application ATP0594297 - 369 |
| 684 | | 802 | | | Tournament Information St. Petersburg ATP0594286 - 296 |
| 685 | | 802 | | | Barcelona Spain ATP 500 Application ATP0594405 - 470 |
| 686 | | 802 | | | Lisbon Portugal ATP 500 Application ATP0593680 - 3744, ATP0593764 - 3817 |
| 687 | | 802 | | | Tournament Information Gstaad ATP0593897 - 989, ATP0593990 - 896 |
| 688 | | 802 | | | Valencia Spain ATP 500 Application ATP0593390 - 482 |
| 689 | | 802 | | | Bucharest Romania ATP 500 Application ATP593504 - 582 |
| 690 | | 802 | | | Sopot Poland ATP 500 Application ATP0593593 - 658 |
| 691 | | 802 | | | Tournament Information ATP0593563 - 592 |
| 692 | | 802 | | | Email from Alexander Katsnelson to Brad Drewett re: internal message from Etienne concerning Monte Carol 7/26/07 ATP0597203 |
| 693 | | | | | Email from Brad Drewett to Salah Tahlak re: 500 application 7/26/07 ATP0597069 |
| 694 | | | | | Email from Richard Davies to Etienne de Villiers re: internal message from Etienne concerning Monte Carlo 7/26/07 ATP0611939 |
| 695 | | 106 | | | Email from Etienne de Villiers to J Eltingh 7/26/07 ATP0615465 - 467 |
| 696 | | 106, 402, 403 | | | Email from Phil Anderton to Richard Davies re: Jimmy C 7/26/07 ATP0612397 - 398 |
| 697 | | 402, 403, 106 | | | Email from Brad Drewett to Leaon Sun; Charles Smith re: AMS Contract 7/27/07 ATP0597561 - 575 |
| 698 | | | | | Letter from Brad Drewett to Wang Liqun re: being awarded an ATP 1000 event ATP0597580 - 594 |
| 699 | | 106, 1002 | | | Letter from Andy Anson to Gerard Tsobanian re: key elements of deal discussed 7/27/07 ATP0606916 |
| 700 | | 802 | | | Email from Bharat Godkhindi to Brad Drewett re: Draft letter of Authority for DDF application ATP 500 from Lys BV to ATP 7/31/07 ATP0597070 - 7111 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| | | | | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST |
| 701 | | 402, 403 | | | Email from Andy Anson to Richard Davies re: Munich 7/31/07 ATP0612344 |
| 702 | | 106, 802 | | | Email from Black Stone Management to Brad Drewett re: DDF Dubai/Lys Tournament BV ATP 500 Sanction 8/2/07 ATP0597112 |
| 703 | | 106 | | | Dubai Duty Free ATP Rankings and Race ATP World Tour Finals ATP0597393 -433 |
| 704 | | 106 | | | Email from Brad Drewett to Ebertoni re: DDF Dubai/Lys Tournament BV ATP 500 Sanction 8/2/07 ATP597113 - 157 |
| 705 | | 106, 402, 403 | | | Email from Etienne de Villiers to Brad Drewett re: ATP World Tour Finals Marketing 8/3/07 ATP0599005 - 006 |
| 706 | | no bates range provided | | | Email from David Massey to Julian Mack re: ATP Opportunities 8/2/07 |
| 707 | | 106, 402, 403, 802 | | | Email from Phil Anderton to Richard Davies re: MMMM/ATP PR/ Tickets 8/3/07 ATP0612302 - 306 |
| 708 | | 106, 402, 403, 802 | | | Email from Laurent Delanney to Brad Drewett re: TV graphics 8/3/07 ATP0612301 |
| 709 | | 106, 402, 403 | | | Email from Gerard Tsobanian to Andy Anson re: Madrid 8/3/07 ATP0606912 |
| 710 | | 106, 802 | | | Email from Brad Drewett to Flip Galloway re: DDF Dubai/LYS Tournament BV ATP 500 Sanction 8/3/07 ATP0597159 - 160 |
| 711 | | 106 | | | Letter from Andy Anson to Thomas Homikel ATP0610383 - 384 |
| 712 | | 106, 802 | | | Email from Andre Silva to Etienne de Villiers re: Meeting 8/5/07 ATP0604928 |
| 713 | | 106, 402, 403 | | | Email from David Massey to Christian Pankratz re: TMC Shanghai 8/6/07 ATP0612287 |
| 714 | | 106 | | | Email from cmpjr to Celia Pauls; Shanna Fisher re: ATP de Villiers 8/6/07 ATP0591660 - 661 |
| 715 | | 106 | | | Email from Etienne de Villiers to Flip Galloway; Andy Anson re: Fax Received 8/6/07 ATP0592747 - 748 |
| 716 | | | | | Letter to Gerard Tsobanian from Andy Anson 8/6/07 ATP0606911 |
| 717 | | 106 | | | Email from Andy Anson to Brad Drewett re: 500 Application Document 8/9/07 ATP0600006 - 00008 |
| 718 | | 106, 402, 403 | | | Email from Brad Drewett to Richard Davies re: TMC Shanghai 8/9/07 ATP0612263 - 265 |
| 719 | | 106, 802 | | | Email from Iggy Jovanovic to Gavin Gabrielson re: ADTA Major Tournament program - ATP & WTA 8/13/07 ATP0605561 - 565 |
| 720 | | 106, 402, 403, 802 | | | Email from Flip Galloway to Brad Drewett re: Letter of authority 8/13/07 ATP0597161 - 162 |
| 721 | | PRIV 106 | | | Email from Andy Anson to Richard Davies re: Tennis Masters Cup at The O2 8/13/07 ATP612264 - 265 |
| 722 | | 106 | | | Email from Richard Davies to Andy Anson re: Tennis Masters Cup at the O2 8/13/07 ATP0611928 - 930 |
| 723 | | 106, 402, 403, 802 | | | Email from Rodney Brody to Richard Davies re: Follow up 8/13/07 ATP612248 - 250 |
| 724 | | PRIV 106 | | | Email from Jeff Reel to Flip Galloway re: Tennis Masters Cup at The O2 8/13/07 ATP0612246 - 247 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER
REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

**PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST**

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|-----|---|---|---|---|---|
| 725 | | 106, 802 | | | Email from Charles Hsiung to Brad Drewett re: Cover Mail 500 8/14/07 ATP0600140 - 141 |
| 726 | | 106, 402, 403 | | | Email from Brad Drewett to Black Stone Management 8/14/07 ATP0597163 - 164 |
| 727 | | 106, 402, 403 | | | Email from Black Stone Management to Brad Drewett re: DDF Dubai/Lys Tournament BV ATP 500 Sanction 8/14/07 ATP0597165 - 166 |
| 728 | | 106, 802 | | | Email from Peter Henke to Andy Anson; Phil Anderton; Richard Davies re: Events in Germany 8/16/07 ATP0609716 |
| 729 | | 802 | | | Letter from Bengt Moller to ATP enclosing application for the Open 500 8/16/07 ATP0594092 - 4194 |
| 730 | | 106, 802 | | | Email from Flip Galloway to Brad Drewett re: ATP "500" Tournament Application 8/16/07 ATP0600991 - 992 |
| 731 | | 106, 802 | | | Letter to Etienne de Villiers from Peter Lawler and Alexander Katsnelson re: application of Moscow 8/17/07 ATP0601411 - 414 |
| 732 | | 802 | | | Email from Kerry Cleek to Richard Davies re: Sales - Brd Report 8/17/07 ATP0612240 - 241 |
| 733 | | 106, 402, 403 | | | Email from Brad Drewett to Flip Galloway re: Doha 8/19/07 ATP0602428 |
| 734 | | 106 | | | Email from Brad Drewett to Flip Galloway re: bids 8/19/07 ATP0602429 |
| 735 | | 106 | | | Email from Flip Galloway to Brad Drewett; Andy Anson; Mark Young re: More 500 Info 8/19/07 ATP0592601 - 703 |
| 736 | | 106 | | | Email from Brad Drewett to Salah Tahlak re: 500 Application 8/20/07 ATP0597167 |
| 737 | | 106, 402, 403 | | | Email from Richard Davies to Graham Pearce re: Board Approval 8/207/07 ATP0611926 |
| 738 | | 106, 402, 403 | | | Email from Iggy Jovanovic to John Phillips re: ATP Web Strategy 8/20/07 ATP0605017, ATP0605013 - 5014 |
| 739 | | 402, 403, 106, 802, PRIV | | | Email from Jeff Reel to Brad Drewett re: Agreement - Champion 8/21/07 ATP0597368 - 369 |
| 740 | | PRIV 402, 403 | | | Email from Jeff Reel to Brad Drewett re: Agreement - Champion 8/21/07 ATP0597370 - 372 |
| 741 | | PRIV 402, 403 | | | Withdrawn |
| 742 | | 402, 403 | | | Letter from Brad Drewett to Tommel Tong and Alfred Zhang re: Beijing Membership Transfer ATP0597379 |
| 743 | | 402, 403 | | | Email from Richard Davies to Laurent Delanney re: Board presentation 8/21/07 ATP0611923 |
| 744 | | PRIV 402, 403 | | | Email from Brad Drewett to Jeff Reel re: Agreement - Champion 8/21/07 ATP0597375 - 377 |
| 745 | | 106, 802 | | | Email from Kris Dent to Mark Young; Andy Anson; Brad Drewett re: 1000s announcement ATP0606901 - 909 |
| 746 | | | | | Memorandum to ATP Board from Andy Anson re: European Summer Calendar 8/23/07 ATP0609317 - 318 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER REDACTED VERSION – PUBLICLY FILED

Prob_Rable_Rose_Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | | | | |
|---|---|---|---|---|---|
| **PTX** | **DATE OFFERED** | **OBJECTIONS** | **ADM** | **DEP EXH** | **DESCRIPTION** |
| 747 | | 106, 402, 403, 802 | | | Email from Kris Dent to Richard Davies re: South African Always ATP rankings 8/24/07 ATP0612233 |
| 748 | | 106 | | | Email from Brad Drewett to Etienne de Villiers re: 500 application summary 8/28/07 ATP0602802 - 806 |
| 749 | | 402, 403, 106 | | | ATP European Group General Meeting Draft Minutes 8/27/07 ATP0609306 - 309 |
| 750 | | | | | ATP European Group General Meeting Summary 8/27/07 ATP0609301 - 304 |
| 751 | | 402, 403 | | | ATP Properties ATP Board Update 8/28/07 ATP0612380 -386 |
| 752 | | 802, 106 | | | Letter from G.J.H. van der Vegt to Andy, Etienne and Alex re: revised version of the application forms 8/28/07 ATP0594945 946 |
| 753 | | 402, 403, 106 | | | ATP Tournament Council Meeting Draft Minutes 8/28/07 ATP0609311 - 315 |
| 754 | | | | | Summary of Meetings of the ATP Board of Directors 8/28/07 ATP0595386 399 |
| 755 | | 106, 402, 403, 802 | | | Email from Etienne de Villiers to Jos van der Vegt re: application 500 series 8/28/07 ATP0594869 |
| 756 | | 802 | | | Letter from Andy Anson to Thomas Hornikel re: ATP Format Changes; Application Process ATP0610378 |
| 757 | | 106, 402, 403 | | | Purchase/Transfer Agreement – Evington Finance Corporation 8/30/07 ATP0606894 - 895 |
| 758 | | 106 | | | Email from atptennis.com re: ATP Unveils New Top Tier of Events for 2009 8/31/07 ATP0614969 - 971 |
| 759 | | 106 | | | Email from Etienne de Villiers to All ATP Staff Global re: 2009 Calendar Announcement 8/31/07 ATP0509008 |
| 760 | | 106, 403 | | | Email from Brad Drewett to Etienne de Villiers; Flip Galloway re: Beijing and Tokyo 9/3/07 ATP0600060 |
| 761 | | 106, 802 | | | Email from Ken Solomon to Richard Davies re: Masters Series/TPL 9/4/07 ATP0612177 - 184 |
| 762 | | 106, 802 | | | Email from David Massey to Fernando Soler re: 500 Series Application Follow-Up 9/4/07 ATP0594847 - 849 |
| 763 | | 106, 402, 403, 802 | | | Email from Brad Drewett to Andre Silva; Etienne de Villiers; Kris Dent re: Approval for quote for ESPN 9/4/07 ATP0597168 - 169 |
| 764 | | 106, 402, 403, 802 | | | Email from Richard Davies to Ulf Dahlstrom re: WDP Entertainment payment and missing sum - SAA 9/5/07 ATP0611917 - 919 |
| 765 | | 106, 402, 403, 802 | | | Email from Flip Galloway to Andy Anson re; Dubai sanction 9/7/07 ATP0606883 |
| 766 | | 802, 106 | | | Email from Andre Silva to Perry Rogers; Jacco Eltingh; Iggy Jovanovic re: James Blake 9/8/07 ATP0604790 |
| 767 | | 106, 402, 403, 802 | | | Email from Gerard Tsobanian to Andy Anson re: Dubai sanction 9/10/07 ATP0606882 |
| 768 | | 106, 402, 403, 802 | | | Email from Gerard Tsobanian to Andy Anson re: Amsterdam Case of Ion Tiriac v. Barton 9/10/07 ATP0606881 |
| 769 | | 106, 402, 403 | | | Email from Etienne de Villiers to Chris Kermode re: Dubai 9/11/07 ATP0597170 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER — PUBLICLY FILED

Prostauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| | | | | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST |
| --- | --- | --- | --- | --- | --- |

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
| --- | --- | --- | --- | --- | --- |
| 770 | | 106, 802 | | | Email from Etienne de Villiers to Phil Anderton; Richard Davies re: TPL Board discussion document Final draft 9/11/07 ATP0612168 - 173 |
| 771 | | PRIV 402, 403 | | | Email from Jeff Reel to Andy Anson re: Amsterdam Case of Ion Tiriac v. Bartoni 9/11/07 ATP0606873 - 875 |
| 772 | | 106, 402, 403 | | | Email from Brad Drewett to Etienne de Villiers; Chris Kermode re: Dubai 9/11/07 ATP0599013 |
| 773 | | 106, 802 | | | Email from Etienne de Villiers to Phil Anderton; Richard Davies re: Branding Discussion 9/12/07 ATP0612165 - 167 |
| 774 | | 106 | | | Email from Etienne de Villiers to Richard Davies; Phil Anderton re: TPL Board discussion document Final draft 9/12/07 ATP0612160, ATP0612157 - 159, ATP0612161 - 164 |
| 775 | | 106, 802 | | | Email from Etienne de Villiers to Phil Anderton; Richard Davies re: TPL Board discussion document 9/12/07 ATP0612151 -155 |
| 776 | | 106, 802 | | | Email from Etienne de Villiers to Andy Anson re: 500 Broadcast Commitments 9/12/07 ATP0607002 - 003 |
| 777 | | 106, 802 | | | Email from Mark Webster to Etienne de Villiers re: 500 Broadcast Commitments 9/12/07 ATP592593 - 594 |
| 778 | | 106, 802 | | | Email from Swood to Etienne de Villiers; Brad Drewett re: Atp - There is another way 9/12/07 ATP0595454 - 462 |
| 779 | | 106, 802 | | | Email from Etienne de Villiers to Swood; Brad Drewett re: ATP - There is another way 9/12/07 ATP0599014 - 9015 |
| 780 | | 106 | | | Email from Brad Drewett to Flip Galloway; Etienne de Villiers re: IG 500 Status Report 9/17/07 ATP0602867 |
| 781 | | 106 | | | Email from Brad Drewett to Flip Galloway; Etienne de Villiers re: IG 500 Status Report ATP0595088 - 5089 |
| 782 | | 106, 402, 403, 802 | | | Email from Etienne de Villiers to Brad Drewett re: Dubai - Confidential - for your eyes only 9/17/07 Atp0597171 |
| 783 | | 106 | | | Email from Flip Galloway to Brad Drewett; Mark Young; Andy Anson re: 250 Application Document 9/17/07 ATP0602996 |
| 784 | | 901, 402, 403 | | | Key Components of proposed 2009 round by round proposal ATP0603140 - 142 |
| 785 | | 802, 106, 402, 403 | | | Email from Richard Davies to Bryan re: Airline sponsorship 9/17/07 ATP0611889 - 890 |
| 786 | | 802, 106, 402, 403 | | | Email from Iggy Jovanovic to Carlos Costa re: Letter from Rafa Nadal 9/18/07 ATP0604934 - 935 |
| 787 | | 106, 802 | | | Email from Etienne de Villiers to Andy Anson re: Valencia Open 500 9/18/07 ATP0594797 - 799 |
| 788 | | 106, 402, 402 | | | Email from Laurent Delanney to Andy Anson; Chris Kermode re: WTF London - Sponsorship 9/18/07 ATP0609811 - 812 |
| 789 | | 106 | | | Email from Flip Galloway to All Management Committee; All ATP Board re: Confidential - Board Call this Thursday 9/18/07 ATP0603793 - 804 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 790 | | 106 | | | Email to Charlie re: Confidential - Board Call this Thursday 9/18/07 ATP0591747 - 148 |
| 791 | | 106, 802 | | | Email Charlie re: Confidential: Bid Estoril Open "Open 500" 9/18/07 ATP0591759 - 764 |
| 792 | | 106, 402, 403 | | | Email from Laurent Delanney to Richard Davies re: ATP 9/18/07 ATP0611465, ATP0611462 |
| 793 | | 106, 802, 402, 403 | | | Email from Richard Davies to Kris Dent re: ATP Contract 9/19/07 ATP0611838 - 839 |
| 794 | | 106, 802, 402, 403 | | | Email from Brad Drewett to bplus re: 500 9/19/07 ATP0595090 - 5091 |
| 795 | | 106 | | | Email from Flip Galloway to Andy Anson re: 500's actual financial commitment 9/20/07 ATP0592589 - 592 |
| 796 | | 106 | | | Email from Flip Galloway to andy Anson re: 500's actual financial commitment 9/20/07 ATP0606992 - 997 |
| 797 | | 106, 402, 403 | | | Email from Richard Davies to Laurent Delanney re: Stanford 9/21/07 ATP0611831 - 833 |
| 798 | | 106, 402, 403 | | | Email from Brad Drewett to Phil Anderton re: Li-ning 9/24/07 ATP0595098 |
| 799 | | 106, 402, 403, 802 | | | Email from Iggy Jovanovic to Gavin Gabrielson re: Judgment & WTA event 9/24/07 ATP0805578 - 577 |
| 800 | | 106, 802, 402, 403 | | | Email from Richard Davies to Laurent Delanney re: Thank You 9/25/07 ATP0611803 - 805 |
| 801 | | | | | ATP World Tour Finals Management Retreat 9/25/07 ATP0611435 - 452 |
| 802 | | 106, 802, 402, 403 | | | Email from Richard Davies to Bryan re: Airline sponsorship 9/26/07 ATP0611799 - 802 |
| 803 | | 106, 402, 403 | | | Email from David Massey to Richard Davies re: Message from Richard: Mercedes-Benz 9/27/07 ATP0611418 |
| 804 | | 106, 402, 403 | | | Email from Richard Davies to David Massey re: Message from Richard: Mercedes-Benz 9/27/07 ATP0611796 - 797 |
| 805 | | 106, 402, 403 | | | Email from Richard Davies to Kris Dent re: Sent on behalf of Richard Davies 9/27/07 ATP0611795 |
| 806 | | | | | Email from atptennis.com ATP & Mercedes-Benz Partnership to Conclude at End of Current Agreement in December 2008 9/28/07 ATP0605007 - 5008 |
| 807 | | 106, 402, 403 | | | Email from David Massey to Carl-Uwe Steeb re: Sent on behalf of Richard Davies 9/28/07 ATP0611416 |
| 808 | | 106, 802, 402, 403 | | | Email from Mahesh to Iggy Jovanovic re: Mumbai 9/30/07 ATP0805579 |
| 809 | | 106, 802, 402, 403 | | | Email from Iggy Jovanovic to Mahesh Bhupathi re: Mumbai 9/30/07 ATP0605580 - 581 |
| 810 | | 106, 802, 402, 403 | | | Email from Joao Zilhao to Andy Anson re: Bid Estoril Open "Open 500" 9/20/07 ATP0609089 - 9090 |
| 811 | | 901 | | | Financial Commitment ATP0609284 |
| 812 | | | | | ATP "250" Tournament Application10/00/07 ATP0606636 - 668 |
| 813 | | 106, 402, 403 | | | Agreement by and Between ATP Tour Inc. and Sportcel 10/1/07 ATP0610753 - 756 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER — PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|-----|--------------|------------|-----|---------|-------------|
| 814 | | 106 | | | Email from Flip Galloway to Richard Davies re: one BILLION dollars, sportsfans, read it and weep 10/2/07 ATP0611411 - 412 |
| 815 | | 106 | | | Email from Richard Davies to Laurent Delanney re: one BILLION dollars, sportsfans, read it and weep 10/2/07 ATP0611793, ATP0611790 |
| 816 | | 106 | | | Email from Richard Davies to Laurent Delanney re: World Finals 2009 Advisory Board 10/3/07 ATP0611775 - 776 |
| 817 | | 106 | | | Email from Richard Davies to Iggy Jovanovic re: World Finals 2009 Advisory Board 10/3/07 ATP0611773 - 774 |
| 818 | | 106, 402, 403 | | | Email from Richard Davies to Phil Anderton; Laurent Delanney re: Sponsors and Branding 10/3/07 ATP0611769 |
| 819 | | 106, 402, 403 | | | Sponsorship target list Phase One ATP0611768 |
| 820 | | 106, 802 | | | Email from Etienne de Villiers from Andy Anson; Flip Galloway; Kris Dent re: Basel 10/3/07 ATP0609080 |
| 821 | | 106 | | | Email from Richard Davies to Kris Dent re: World Finals 2009 Advisory Board 10/3/07 ATP0611731 - 732 |
| 822 | | 106 | | | Email from Etienne de Villiers to All ATP Board; All ATP Staff GLOBAL re: 500s announcement 10/4/07 ATP0615034, ATP0606270 - 271 |
| 823 | | 106, 802 | | | Email from Andre Silva to Iggy Jovanovic re: Player Council Meeting in Paris 10/4/07 ATP0604795 - 796 |
| 824 | | 106, 802, 402, 403 | | | Email from Etienne de Villiers re: Letter 9/14/07 hawkeye 10/4/07 ATP0604858 - 860 |
| 825 | | 106, 802 | | | Email from Richard Davies to Phil Anderton re: From Tennisweek.com 10/4/07 ATP0611724 - 728 |
| 826 | | 106, 802, 403 | | | Email from Allon Khakshouri to Brad Drewett re: 500 Application 10/5/07 ATP0603846 |
| 827 | | 106, 402, 403 | | | Email from Richard Davies to Laurent Delanney re: Barclaycard 10/5/07 ATP0611721 |
| 828 | | 106, 402, 403 | | | Email from Richard Davies to Andy Anson; Laurent Delanney re: Tourism Malaysia 10/5/07 ATP0611717 - 720 |
| 829 | | 106 | | | Email from Kris Dent to Pete Holtermann; Andy Anson re: 500s 10/5/07 ATP0594761 - 767 |
| 830 | | 106, 802, 402, 403 | | | Email from B Godkhindi to Brad Drewett re: ATP 500 - Dubai 10/6/07 ATP0597172 |
| 831 | | 106, 802 | | | Email from Andy Anson to Kris Dent re: ATP 500 events 2009 10/6/07 ATP0606715 - 716 |
| 832 | | 106, 802 | | | Email from Kris Dent to Andy Anson; Pete Holtermann re: 500s 10/6/07 ATP0609062 - 9063 |
| 833 | | 106, 802 | | | Email from Pete Holtermann to Kris Dent; Andy Anson re: 500s 10/6/07 ATP0594755 - 757 |
| 834 | | 106, 802 | | | Email from Andy Anson to Pete Holtermann; Kris Dent re: 500s 10/6/07 ATP0606708 - 710 |
| 835 | | | | | ATP Properties Progress Report 10/7/07 ATP0611253 - 284 |
| 836 | | 106, 802 | | | Email from Andre Silva to Ivan Ljubicic re: Calendar 10/8/07 ATP0604797 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER
REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 837 | | | | | Andy Anson - ATP Europe Activity Update Week Commencing 10/8/07 ATP0606696 - 698 |
| 838 | | | | | Andy Anson - ATP Europe Activity Update Week Commencing 10/8/07 ATP0606149 - 151 |
| 839 | | | | | ATP Inc Championships and Other Tournaments Departmental Income Statement 10/8/07 ATP0595195 - 196 |
| 840 | | | | | ATP Inc Championships and Other Tournaments Departmental Income Statement 10/8/07 ATP0595172 - 173 |
| 841 | | 106 | | | Email re: Draft 2009 Calendar 10/9/07 ATP0591554 - 1558 |
| 842 | | 106, 802 | | | Email from Andre Silva to Andre Silva re: 2009 calendar 10/9/07 ATP0604798 - 799 |
| 843 | | | | | Masters Cup Budget 2007 10/9/07 ATP0595174 - 182 |
| 844 | | | | | Masters Cup Budget 2007 10/9/07 ATP0595186 - 194 |
| 845 | | | | | International Group Update 10/9/07 ATP0595111 - 115 |
| 846 | | 402, 403 | | | Barclaycard ATP World Tour Partnership 10/9/07 ATP0611176 - 217 |
| 847 | | 106, 802, 402, 403 | | | Email from Cecilia Ghe to Richard Davies re: Madrid advisory 10/10/07 ATP0611161 - 162 |
| 848 | | 106, 402, 403, 802 | | | Email from Richard Davies to Laurent Delanney re: Apparel and Footwear Licensing Proposal 10/10/07 ATP0611709 - 714 |
| 849 | | 106, 802 | | | Email from Sue Down re: TPL Board Call 10/10/07 ATP0591632 |
| 850 | | 106 | | | Email from Phil Anderton to Etienne de Villiers re: Branding Meeting 10/11/07 ATP0592466 - 467 |
| 851 | | 802 | | | Email from Flip Galloway to All ATP Board; All Management Committee 10/12/07 ATP0591885 |
| 852 | | 1002 | | | Email from Roos to Andy Anson; David Massey re: translation 10/12/07 ATp0609046 |
| 853 | | 1002 | | | Sponsorship Agreement between ATP Tour, Inc. and Royal Resorts Sports and Leisure 10/12/07 ATP0611050 - 1051, ATP0611133 - 1146 |
| 854 | | 106, 402, 403 | | | Email from Richard Davies to Bob re: ATP Partnership 10/12/07 ATP0611623 |
| 855 | | 402, 403, 106 | | | Draft ATP Board of Directors Agenda Items 10/16/07 ATP0595133 - 134 |
| 856 | | 106 | | | Email from Flip Falloway to All ATP Board; All Management Committee re: Board Call and materials 10/16/07 ATP0591640 - 642 |
| 857 | | 106, 802 | | | Email from Phil Anderton to Etienne de Villiers; Flip Galloway re: AMS tournament directors Letter 10/17/07 ATP0592470 - 473 |
| 858 | | 106, 802, 402, 403 | | | Email from Andy Anson to Laurent Delanney re: Thank you 10/18/07 ATP0811024 - 1025 |
| 859 | | 106, 403 | | | Email from Flip Galloway to All ATP Board re: Davis Cup Points and Olympics 10/18/07 ATP0815187 - 189 |
| 860 | | 106, 802, 402, 403 | | | Email from Steve Simon re: AMS tournament directors 10/19/07 ATP0591571 - 573 |
| 861 | | | | | Properties Update 7 10/21/07 ATP0610891 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | | | | |
|---|---|---|---|---|---|
| **PTX** | **DATE OFFERED** | **OBJECTIONS** | **ADM** | **DEP EXH** | **DESCRIPTION** |
| 862 | | 106 | | | Email from Brad Drewett to Lesley Townsend re: IG 500 Status Report ATP0595233 |
| 863 | | | | | Email from Brad Drewett to Jeff Reel re: 1000's and 500's contracts 10/22/07 ATP0595234 |
| 864 | | 802, 106 | | | Email from Paul Flory re: AMS Tournament Directors Letter 10/22/07 ATP0591586 - 587 |
| 865 | | 106 | | | Email from Robin Hutchinson to Celia re: Dallas Meeting from Mark Young 10/23/07 ATP0591655 |
| 866 | | 802, | | | Email from Laurent Delanney to Richard Davies; Andy Anson re: ATP World Tour Trials in London 10/24/07 ATP0609782 - 786 |
| 867 | | | | | ATP Media & Marketing Report – BNP Paribas Masters 10/26/07 ATP0606093 - 102 |
| 868 | | 106, 402, 403 | | | Email from Phil Anderton to Kris Dent 10/30/07 ATP0592484 - 486 |
| 869 | | 802, 402, 403 | | | Email from Paul Annacone to George Mackin re: Indian Wells 10/30/07 ATP0605596 |
| 870 | | 106, 802, 402, 403 | | | Email from Andy Anson to David Massey; Ryszard Fijalkowski re: Sopot tournament in 2008 10/30/07 ATP0606205 |
| 871 | | 106, 1002, PRIV, 402, 403 | | | Email from Jeff Reel to Andy Anson re: Rotterdam 500 Confirm 10/30/07 ATP0607565 - 566 |
| 872 | | 106, 1002, PRIV, 402, 403 | | | Email from Jeff Reel to Andy Anson re: Barcelona 500 10/30/07 ATP0607563 - 564 |
| 873 | | 106, 402, 403, 1002 | | | Email from Jeff Reel to Andy Anson re: Basel Confirmation Letter 10/30/07 ATP0607561 - 562 |
| 874 | | 106, 402, 403, 1002 | | | Email from Jeff Reel to Andy Anson re: Valencia Confirmation Letter 10/30/07 ATP0607559 - 560 |
| 875 | | 106, 402, 403, 1002 | | | Email from Jeff Reel to Andy Anson re: Madrid Confirmation Letter 10/30/07 ATP0607556 - 557 |
| 876 | | 106, 402, 403, 1002 | | | Email from Jeff Reel to Andy Anson re: Paris 1000 Confirmation Letter 10/30/07 ATP0606870-0871 |
| 877 | | 106, 402, 403, 1002 | | | Email from Jeff Reel to Andy Anson re: Rome 1000 Confirmation Letter 10/30/07 ATP0607554 - 7555 |
| 878 | | 106, 402, 403 | | | Email from Brad Drewett to Jeff Reel re: 500 Applicants 10/30/07 ATP0595277 |
| 879 | | 1002 | | | Email from Brad Drewett to Charles Smith; Leon Sun re: AMS draft contract 10/30/07 ATP0597595 - 609 |
| 880 | | 106, 402, 403 | | | Email from Andy Anson to Jeff reel re: Rome 1000 Confirmation Letter 10/31/07 ATP0606204 |
| 881 | | 106, 402, 403 | | | Email from Andy Anson to Jeff Reel re: Letters to Successful Applicants 10/31/07 ATP0606202 203 |
| 882 | | 106, 1002, 402, 403 | | | Email from Jeff Reel to Andy Anson re: Letters to Successful Applicants 10/31/07 ATP0607551 553 |
| 883 | | 106, 402, 403 | | | Agenda for November Meeting ATP0592474 - 481 |
| 884 | | 802, 402, 403, 106 | | | Email from Andy Anson to Pablo Anderson re: Dinner 11/1/07 ATP0606196 - 197 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

**PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST**

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 885 | | 106, 1002 | | | Email from Andy Anson to Andy and Lisa Anson re: Basel Confirmation Letter 11/1/07 ATP0606200 - 201 |
| 886 | | 106, 402, 403, 1002 | | | Email from Andy Anson to Andy and Lisa Anson re: Barcelona Confirmation Letter 11/1/07 ATP0606198 - 6199 |
| 887 | | 106, 402, 403, 1002 | | | Email from Andy Anson to Andy and Lisa Anson re: Letters to Successful Applicants 11/1/07 ATP0606193 - 6195 |
| 888 | | 106, 402, 403, 1002 | | | Email from Andy Anson to Andy and Lisa Anson re: Rome 1000 Confirmation Letter 11/1/07 ATP0606191 - 6192 |
| 889 | | 106, 402, 403, 1002 | | | Email from Andy Anson to Andy and Lisa Anson re: Paris 1000 Confirmation Letter 11/1/07 ATP0606189 - 6190 |
| 890 | | 106, 402, 403, 1002 | | | Email from Andy Anson to Andy and Lisa Anson re: Madrid 1000 Confirmation Letter 11/1/07 ATP0606187 - 6188 |
| 891 | | 106, 402, 403, 1002 | | | Email from Andy Anson to Andy and Lisa Anson re: Valencia Confirmation Letter 11/1/07 ATP0606185 - 6186 |
| 892 | | 106, 402, 403, 1002 | | | Email from Andy Anson to Andy and Lisa Anson re: Rotterdam 500 Confirmation Letter 11/1/07 ATP0606183 - 6184 |
| 893 | | 106, 402, 403, 1002, PRIV | | | Email from Andy Anson to Andy and Lisa Anson re: 1000's and 500's contracts 11/1/07 ATP0606180 - 6182 |
| 894 | | 106, 402, 403 | | | Email from Andy Anson to David Massey re: Letters to Successful Applicants 11/1/07 ATP0606177 - 179 |
| 895 | | 106 | | | Email from Andy Anson to David Massey re: Barcelona 11/1/07 ATP0606175 - 176 |
| 896 | | 106 | | | Email from Andy Anson to David Massey re: Basel 11/1/07 ATP0606167 - 168 |
| 897 | | 106 | | | Email from Andy Anson to Andy Anson re: Barcelona 11/1/07 ATP0606169 - 170 |
| 898 | | 106, 402, 403 | | | Email from Andy Anson to Andy Anson re: Rotterdam 11/1/07 ATP0606171 - 174 |
| 899 | | 106, 402, 403, 802 | | | Email from Andy Anson to Sue Down re: TMC Terrestrial TV - Update 11/1/07 ATP0606158 - 162 |
| 900 | | 106 | | | Email from Andy Anson to David Massey re: Valencia 11/1/07 ATP0606156 - 157 |
| 901 | | 106 | | | Email from Andy Anson to David Massey re: Rome 11/1/07 ATP0606154 - 155 |
| 902 | | 106 | | | Email from Andy Anson to David Massey re: Madrid 11/1/07 ATP0606152 - 153 |
| 903 | | 106, 402, 403, 802 | | | Email from Laurent Delanney to Richard Davies re: Aldar Properties 11/4/07 ATP0610692 - 693 |
| 904 | | 802 | | | Andy Anson - ATP Europe Activity Update Week Commencing 11/5/07 ATP0606135 - 136 |
| 905 | | 402, 403 | | | ATP Marketing Status Report 11/5/07 ATP0592051 - 2055 |
| 906 | | 106, 402, 403, 802, 1002 | | | Email from Mark Webster re: TPL Agreement - section 12.1 11/5/07 ATP0591905 - 1907 |
| 907 | | 106, 402, 403, 802, 1002 | | | Email from Steve Plasto to Iggy Jovanovic re: Masters Series TV rights 11/6/07 ATP0605055 - 5056 |
| 908 | | 106, 402, 403, 802 | | | Email from Alex Mavridis to Iggy Jovanovic re: US opportunity 11/6/07 ATP0605050 - 5052 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

**PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST**

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 909 | | 106, 402, 403, 802, 1002 | | | Email from Iggy Jovanovic to Gavin Gabrielson re: Further points 11/6/07 ATP0603990 - 991 |
| 910 | | 106, 402, 403, 802 | | | Email from Etienne de Villiers to Iggy Jovanovic; All ATP Board re: Exhibitions 11/11/07 ATP0591908 - 909 |
| 911 | | 402, 403, 106 | | | Draft Meeting of the ATP Board of Directors Minutes 11/12/07 ATP0618045 - 8046 |
| 912 | | 402, 403, 106 | | | Draft Meeting of the ATP Board of Directors Minutes 11/13/07 ATP0618047 - 8063 |
| 913 | | 402, 403, 106 | | | Draft Summary of Meetings of the ATP Board of Directors 11/13/07 ATP0591622 - 631 |
| 914 | | | | | Masters 1000 Agreement between Shanghai Jiu Shi International Events Management Co. Ltd. And ATP Tour, Inc. 11/17/07 ATP0592550 - 563 |
| 915 | | | | | ATP Marketing Update Board of Directors Meeting 11/14/07 ATP0592194 - 317 |
| 916 | | | | | Email from Bryan to Etienne de Villiers 11/28/07 ATP0592548 - 549 |
| 917 | | 106, 402, 403, 802, 1002 | | | Email from Phil Anderton to Mark Webster re: usta 11/28/07 ATP0592410 - 413 |
| 918 | | 402, 403, 802 | | | Email from Phil Anderton to Iggy Jovanovic re: Hello 11/29/07 ATP0592400 - 402 |
| 919 | | | | | Marketing ATP Player University Orlando 11/29/07 ATP0592163 - 193 |
| 920 | | 106, 402, 403, 802 | | | Email from Phil Anderton to Peter Lawler re: research 11/30/07 ATP0592396 - 397 |
| 921 | | 106, 402, 403 | | | ATP0592449 |
| 922 | | 106, 402, 403, 802, 901 | | | Email from Etienne de Villiers to Phil Anderton; Mark Young re: USTA branding 12/18/07 ATP0618699 - 739 |
| 923 | | 402, 403 | | | Financial Report Executive Summary ATP0618071 - 101 |
| 924 | | 402, 403 | | | Projected ATP Calendars 2/12/08 ATP0618168 |
| 925 | | 402, 403 | | | Memorandum to ATP Board of Directors from Jeff Reel re: Lyon Transfer 3/7/08 ATP0618115 |
| 926 | | 402, 403 | | | Memorandum to ATP Board of Directors from Jeff Reel re: Bastad Transfer 3/7/08 ATP0618114 |
| 927 | | 802 | | | Letter to Andy Anson from Jorge Salkeld 3/10/08 ATP0618104 - 105 |
| 928 | | 402, 403 | | | Memorandum to ATP Board of Directors from Jeff Reel re: Memphis Transfer 3/10/08 ATP0618108 - 113 |
| 929 | | 403 | | | ATP World Tour A partnership Proposal for Royal Resorts ATP0610804 - 856 |
| 930 | | 403 | | | ATP World Tour partnership Opportunities Aldar ATP0611367 - 401 |
| 931 | | 403, 802 | | | ATP World Tour Partnership Opportunities ATP0711624 - 685 |
| 932 | | 403 | | | Tennis Masters Cup - Shanghai, China ATP0606718 -743 |
| 933 | | 403 | | | ATP Premier Partnership Proposal ATP0611480 - 519 |
| 934 | | 402, 403 | | | BlackRock Tour of Champions ATP611893 - 911 |
| 935 | | 403 | | | Baseline to Bottom Line Official Platinum Sponsor Rogers Cup presented by American Express Toronto ATP0605115 - 130 |

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| | | | | | **PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST** |
| 936 | | 403 | | | Tour Sponsorship Renewal (MB Package) ATP0611806 - 807 |
| 937 | | 106, 402, 403 | | | ATP Management Access to Individual Tournament Financial Information ATP0591928 |
| 938 | | 403 | | | Various versions of agreements between Anschutz Entertainment Group/Ansco Arena Limited (AEG), and ATP Tour, Inc. ATP0595546 - 554, ATP0596555 - 569, ATP0609893 - 904, ATP0609743 - 753, ATP0608209 - 219, ATP0588160 - 171, ATP0590564 - 574 |
| 939 | | 403 | | | ATP World Tour Final London 2009 - 2012 Premium Sponsorship packages ATP0611808 - 828 |
| 940 | | 403, 1002 | | | London TMC Overall Deal Terms ATP0609852 - 866 |
| 941 | | 106, 402, 403 | | | 2007 Actual Compared to Budget ATP0595362 |
| 942 | | | | | 500s announcement Key Messages and Q&Q ATP0606272 - 276 |
| 943 | | | | | Mercedes-Benz ATP Tournaments by Region ATP0612174 - 176 |
| 944 | | 403 | | | ATP Request for Proposal ATP0611410 |
| 945 | | 106, 403 | | | Email from Etienne de Villiers to Flip Galloway re: new model with slams involved 2/5/07 ATP0306610 |
| 946 | | 106, 403 | | | Email from Chris Kermode to Richard Davies re: Masters cup 3/30/07 ATP0307375 - 376 |
| 947 | | 106, 403 | | | Email from Etienne de Villiers to Flip Galloway; Chris Kermode; Richard Davies; Brad Drewett re: Masters Cup ATP0307377 - 378 |
| 948 | | 106, 403, 802 | | | Letter to Etienne de Villiers from Roger Draper re: Tennis masters Cup "the Project" 3/30/07 ATP0307379 - 384 |
| 949 | | 106, 403 | | | Email from Etienne de Villiers to Richard Davies; Flip Galloway; Chris Kermode; Brad Drewett re: masters Cup 3/3/107 ATP0307386 - 388 |
| 950 | | 106, 403 | | | Email from Chris Kermode to Etienne de Villiers; Richard Davies; Flip Galloway; Brad Drewett re: masters Cup 3/31/07 ATP0307389 - 391 |
| 951 | | 106, 403 | | | Email from Brad Drewett to Richard Davies; Chris Kermode; Etienne de Villiers; Flip Galloway re: Masters Cup 4/2/07 ATP0307403 - 405 |
| 952 | | 106, 403 | | | Email from Etienne de Villiers to Richard Davies re: Masters Cup ATP0307417 - 419 |
| 953 | | 106, 403, 802 | | | ATP0307470 - 474 |
| 954 | | 106, 403, 802 | | | Email from Etienne de Villiers to Brad Drewett; Richard Davies; Chris Kermode; Flip Galloway re: Draper response 4/4/07 ATP0307478 - 483 |
| 955 | | 106, 403 | | | Email from Etienne de Villiers to Flip Galloway; Brad Drewett; Chris Kermode; Richard Davies; Phil andiron; Andy Anson re: new tmc model 4/4/07 ATP0307485, ATP0307489 - 502 |
| 956 | | 106, 403 | | | Letter to Roger Draper from Etienne de Villiers ATP0307510 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| | | | | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST |
| 957 | | 106, 403 | | | Email from Flip Galloway to Etienne de Villiers; Brad Drewett; Chris Kermode; Richard Davies; Phil andiron; Andy Anson re: new tmc model 4/6/07 ATP0307536 - 537 |
| 958 | | 106, 403, 802 | | | Email from Etienne de Villiers to Brad Drewett; Flip Galloway; Chris Kermode; Richard Davies; Andy Anson re: Queries and questions 5/12/07 ATP0323006 - 3009 |
| 959 | | 106, 403 | | | Email from Flip Galloway to Brad Drewett; Chris Kermode; Andy Anson; Richard Davies; Horst Klosterkemper; Laurent Delanney re: 2009 Masters Cup detailed expense budget 5/15/07 ATP0323065 3125 |
| 960 | | 106, 403 | | | Email to Etienne de Villiers re: new model ATP0323126 |
| 961 | | | | | Summary of Meetings of the ATP Board of Directors 6/25/07 ATP0540753 - 754 |
| 962 | | 403 | | | Financial Report Executive Summary ATP0549020 - 9049 |
| 963 | | 403, 1002 | | | London TMC Overall Deal Terms ATP0581814 - 1828 |
| 964 | | 106, 403, 802 | | | Email from Etienne de Villiers to Flip Galloway re: various profit sharing scenarios 12/20/06 ATP0306159 - 162 |
| 965 | | 106 | | | Email from Etienne de villiers to Phil Beard re: the model I promised/tmc London jv with earnouts 12/22/06 ATP0306223, ATP0306332 - 343 |
| 966 | | 402, 403, 802 | | | Expert Report of Charles Elson 1/14/08 |
| 967 | | Not Provided | | | Masters Series Hamburg 2008 |
| 968 | | GERMAN | | | Agreement between Abraham Schinken GmbH & Co.KG and Rothenbaum Sport GmbH GTF00120223 - 225 |
| 969 | | GERMAN | | | Agreement between Dollinghareico GmbH & Co. KG and Rothenbaum Sport GmbH GTF00120226 - 229 |
| 970 | | GERMAN | | | Agreement between Parfumerie Douglas and Rothenbaum Sport GmbH GTF00120230 - 232 |
| 971 | | GERMAN | | | Agreement between Dunlop Sport GmbH and Rothenbaum Sport GmbH GTF00120233 - 236 |
| 972 | | GERMAN | | | Agreement between Invora GmbH and Rothenbaum Sport GmbH GTF00120237 - 239 |
| 973 | | GERMAN | | | Agreement between Unilever Deutschland GmbH and Rothenbaum Sport GmbH GTF00120240 - 242 |
| 974 | | GERMAN | | | Agreement between PACIFIC – Entermark GmbH and Rothenbaum Sport GmgH GTF00120243 - 245 |
| 975 | | GERMAN | | | Vertrag GTF00120246 - 257 |
| 976 | | GERMAN | | | Agreement between Vranken Pommery Deutschland and Rothenbaum Sport GmbH GTF00120258 - 260 |
| 977 | | GERMAN | | | Agreement between Raffay smart City Hamburg and Rothenbaum Sport GmbH GTF00120261 - 263 |
| 978 | | GERMAN | | | Agreement between Sparda Bank and (No Suggestions) Sport GmbH GTF00120264 - 265 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER

REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| | | | | | |
|---|---|---|---|---|---|
| | | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | |

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 979 | | GERMAN | | | Agreement Sport Shop West and Rothenbaum Sport GmbH GTF00120266 - 268 |
| 980 | | GERMAN | | | Agreement between Fa. Ultimo Fashion GmbH and Rothenbaum Sport GmbH GTF00120269 - 271 |
| 981 | | GERMAN | | | Agreement between Bacchus Weinhaus Graf Eitz GmbH and Rothenbaum Sport GmbH GTP00120272 - 274 |
| 982 | | GERMAN | | | Agreement between FILA and (No Suggestions) Sport GmbH GTF00120275 - 277 |
| 983 | | GERMAN | | | Agreement between Hamburger Tennis Pro's Ger. and Rothenbaum Sport GmbH GTF00120278 - 281 |
| 984 | | GERMAN | | | Agreement between Carlstadt Sport and Rothenbaum Sport GmbH GTF00120282 - 284 |
| 985 | | GERMAN | | | Agreement between Catering and Party Service Nelsen GmbH and Rothenbaum Sport GmbH GTF00120285 - 287 |
| 986 | | GERMAN | | | Agreement between Nestle Waters Deutschland AG and Rothenbaum Sport GmbH GTF00120288 - 290 |
| 987 | | GERMAN | | | Agreement between Tucano Vertriebs GmbH & Co.KG and Rothenbaum Sport GmbH GTF00120291 - 293 |
| 988 | | GERMAN | | | Agreement between Volkl Tennis Vertriebs GmbH and Rothenbaum Sport GmbH GTF00120294 - 296 |
| 989 | | GERMAN | | | Agreement between Volkl Tennis Vertriebs GmbH and Rothenbaum Sport GmbH GTF00120297 - 299 |
| 990 | | 402, 403, 901 | | | Title Sponsorship Agreement between BlackRock Investment management (UK) Limited and Rothenbaum Sport GmbH GTF00120300 - 312 |
| 991 | | GERMAN | | | Agreement between Vermarktungsvertrag and Rothenbaum Sport GmbH GTF00120313 - 319 |
| 992 | | 106, 402, 403, 901 | | | ATP Masters Series Agreement between Tennis Properties B.V. and Head Sport AG and Penn Racquet Sports Inc GTF00120320 - 334 |
| 993 | | | | | ATP/Mercedes Tournament Agreement 1/1/06 GTF00120335 - 358 |
| 994 | | | | | Amendment to the Ricoh/ATP Agreement GTF00120359 - 373 |
| 995 | | GERMAN | | | Agreement between Nestle Waters Deutschland AG and Rothenbaum Sport GmbH GTF00120374 - 377 |
| 996 | | GERMAN | | | Agreement between DTB, (No Suggestions) Sport GmbH and Bitburger Braugruppe GmbH GTF00120378 - 392 |
| 997 | | GERMAN | | | Agreement between Olschewski Marketing + Sport GmbH and (No Suggestions) Sport GmbH GTF00120393 - 395 |
| 998 | | GERMAN | | | Agreement between Rothenbaum Sport GmbH and Hamburg marketing GmbH GTF00120396 - 402 |
| 999 | | | | | The Atp Tour Official Rulebook 1997 ATP0000268 - 368 |
| 1000 | | 402, 403 | | | 2000 ATP Tour Television Distribution ATP0001233 - 1235 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | | |
|---|---|---|---|---|---|
| **PTX** | **DATE OFFERED** | **OBJECTIONS** | **ADM** | **DEP EXH** | **DESCRIPTION** |
| 1001 | | 802 | | | ATP Board of directors meeting - Consumer research Highlights Related to Calendar & Structure 11/12/06 ATP0007805 - 7826 |
| 1002 | | 802 | | | ATP Brand Positioning consumer Research - online Survey - Quantitative Findings 10/30/06 ATP0008065 - 8209 |
| 1003 | | 802 | | | ATP Brand Positioning Consumer Research - Focus Group Findings 10/30/06 ATP0008210 - 8257 |
| 1004 | | | | | ATP Worldwide Attendance 4/6/07 ATP0008335 - 8340 |
| 1005 | | 802 | | | ATP "Masters 1000" Europe Men's Only (Outdoor Clay) Tournament Application - Monte Carlo 9/3/07 ATP0009116 - 171 |
| 1006 | | 802 | | | ATP "Masters 1000" Combined Tournament Application 2/2/07 ATP0009397 - 443 |
| 1007 | | 802 | | | ATP Masters 1000 Europe Men's Only (Outdoor Clay) Tournament Application - Rome 3/8/07 ATP0009452 - 496 |
| 1008 | | 802 | | | ATP masters 1000 Europe Men's Only (Indoor Hard) Tournament Application 9/26/06 ATP0009507 - 570 |
| 1009 | | 802 | | | ATP Masters 1000 Combined Tournament Application 9/26/06 ATP0009577 - 628 |
| 1010 | | 802 | | | ATP Masters 1000 NTH America Men's Only (Outdoor Hard) Tournament Application 2/2/07 ATP0009629 - 691 |
| 1011 | | 802 | | | Calendar Strategy Testing - Research findings 7/5/06 ATP0010815 - 860 |
| 1012 | | 802 | | | ATP Media Research - Market coverage and Audience Comparison August 2005 - August 2006 12/00/06 ATP0011013 - 1069 |
| 1013 | | 802 | | | Road to Roland Garros - Television Market Analysis ATP0011124 - 175 |
| 1014 | | 802 | | | ATP TV Strategy 2008 following A Potential Brave New World 5/00/08 ATP0011305 - 335 |
| 1015 | | 402, 403 | | | RE: FW: Strategy board - Television Distribution Strategy Paper 8/5/99 ATP0011538 |
| 1016 | | 402, 403 | | | Letter to Chris Renner from Larry Scott re: ATP Tour Tournament Television Rights 10/19/99 ATP0011991 - 996 |
| 1017 | | 402, 403, 802 | | | Due Diligence Report - Newsweek Champions Cup and State Farm Evert Cup - Indian Wells 12/28/98 ATP0012688 -697 |
| 1018 | | 802 | | | Proposal to the ATP - tournament Financial Review 7/00/06 ATP0052698 - 718 |
| 1019 | | 402, 403 | | | Decision of the Strategy Board regarding Grand Slam/ATP Tour Year-End Tournament 11/99 NR0035179 - 179_0002 |
| 1020 | | 802 | | | ATP Additional Research 3/06 ATP0053643 - 672 |
| 1021 | | 403, 802 | | | 2.1 Tournaments Ranked by Hours of Coverage and 2.2 Tournaments Ranked by Cumulative Audience ('000s) ATP0053647 - 648 |
| 1022 | | 403, 802 | | | 2.7 Tournaments Ranked by Brand Exposure, 2.8 Tournaments Ranked by Gross Media Value ($), and 2.9 Tournaments Ranked by Gross Media Value ($) per Hour of Exposure ATP0053653 - 655 |
| 1023 | | 802 | | | WTA/TPL Television Analysis of Pooled rights ATP0053673 - 698 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| | | | | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST |
|---|---|---|---|---|---|

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 1024 | | 402, 403, 802 | | | DRAFT - Tennis Properties LTD Business Plan 2007 - 2012 6/28/05 ATP0053751 - 761 |
| 1025 | | 802 | | | ATP Monthly Broadcast and Distribution Report1/06 ATP0053793 - 809 |
| 1026 | | 802 | | | ATP Tournament Valuation Approach – private and confidential - report to the ATP 12/06 ATP0053811 - 837 |
| 1027 | | 802 | | | ATP Tournament Financial Review 'kick-off' meeting - suggested agenda 8/4/06 ATP0053838 839 |
| 1028 | | | | | Addressing Player Concerns - Meeting with Top Players 3/18/07 ATP0053905 - 914 |
| 1029 | | 402, 403, 802 (HW) | | | Projection of 1999 TV and Marketing Rights 2/19/98 ATP0054130 - 136 |
| 1030 | | 40, 403, 802 (HW) | | | Projection of 1999 TV and Marketing Rights 2/19/98 ATP0054130 - 138 |
| 1031 | | 402, 403, 802 | | | 2001 Tennis Masters Series - Message Points for Indian Wells, Ericsson Open 2001 ATP0060149 -157 |
| 1032 | | 402, 403, 802 | | | ATP Tour, Inc. Board Meeting PDF Demo 2/24/03 ATP0065761 - 876 |
| 1033 | | 403, | | | Tournaments Played per Level 2003 - 2004 ATP0067484 - 503 |
| 1034 | | 403 | | | Tournaments Played By Top 20 per Tournament Category 1985 - 2005 ATP0067525 - 627 |
| 1035 | | 403 | | | Tournaments Played By Top 20 per Tournament Category 1985 - 2005 ATP0067760 - 664 |
| 1036 | | 403 | | | AMS Player Participation: Top 10 Data Analysis 11/14/05 ATP0067924 - 940 |
| 1037 | | 403 | | | Top 5 and Top 10 1990 - 2005 ATP0067990 - 6030 |
| 1038 | | 403 | | | Top 500 - Average Events Played, Points Earned and % of Points Total by Ranking (DRAFT) 9/18/06 ATP0068150 - 175 |
| 1039 | | 402, 403 | | | Prize Money and Financial Commitment Progression 2006-2009 7/5/07 ATP0068564 - 576 |
| 1040 | | 402, 403, 802 | | | Fax copy of TWI Agreement 11/2/03 ATP0071756 - 767 |
| 1041 | | 402, 403 | | | Memorandum to TPL Executive Board from Mark Miles, Mark Webster & TPL Marketing Committee Re: Summary of ISL Television and Sponsorship Agreements & Recommendation Regarding Assignment 2/12/01 ATP0071768 - 771 |
| 1042 | | 402, 403, 1002 | | | Summary of ISL Television Agreements - 2001 & Beyond 7/25/01 ATP0071772 - 781 |
| 1043 | | 402, 403, 802, 901 | | | Summary of ISL Television Agreements - 2001 & Beyond 7/25/01 ATP0071772 - 2822 |
| 1044 | | 402, 403 | | | 2002 Television Revenue Projections 7/24/01 ATP0072820 - 2822 |
| 1045 | | 402, 403, 802, 901(HW) | | | Premium Tennis: An Opportunity to Grow the Tennis Pie 1/23/03 ATP0074062 - 102 |
| 1046 | | 402, 403, 802 | | | 2006 US Open Series Planning Manual 3/21/06 ATP0076720 - 6840 |
| 1047 | | 802 | | | Tennis Properties LTD TPL Board Meeting 2/1/07 ATP0077499 - 509 |
| 1048 | | 402, 403, 802 | | | ATP Masters Series /Tennis Masters Cup 2006 12/06 ATP0077510 - 565 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER — PUBLICLY FILED REDACTED VERSION

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

## PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 1049 | | | | | ATP Tour, Inc. and Subsidiaries Consolidated Financial Statements December 31, 2004 and 2003 3/18/05 ATP0079715 - 729 |
| 1050 | | | | | AMS Player Participation: Top 10 Data Analysis 11/14/05 ATP0083227 - 238 |
| 1051 | | 402, 403 | | | 2005 Business Plan Approach 6/27/05 ATP0145807 - 815 |
| 1052 | | 802 | | | Addendum to ATP Masters 1000 Application Submitted by Cincinnati 4/19/07 ATP0163617 - 628 |
| 1053 | | 802 | | | 2007 Masters 1000 Application Addendum - Cincinnati ATP0163630 637 |
| 1054 | | 402, 403 | | | ATP Licensing Strategy 4/01 ATP0171390 - 1409 |
| 1055 | | 106, 802 | | | Email from Iggy Jovanovic to All ATP Board Re: FW: 500's feedback 3/13/07 ATP0172878 - 880 |
| 1056 | | | | | Average Number of events played, points earned and % of points total by type of event (trailing 52 weeks) 9/18/06 ATP0189516 - 520 |
| 1057 | | | | | ATP Analysis - Playing Trends 2003 - 2005 ATP0189960 - 969 |
| 1058 | | | | | The 2001 ATP Official Rulebook ATP0196605 - 868 |
| 1059 | | 802 | | | Summary of One on One Meetings with Players during Indian Wells 2006 - by Iggy Jovanovic 3/15/06 ATP0201401 - 414 |
| 1060 | | 802 | | | Summary of One on One Meetings with players during Rome 2006 - By Iggy Jovanovic 5/16/06 ATP0201452 - 457 |
| 1061 | | 402, 403 | | | ATP Organization Performance Survey 2/23/06 ATP0202400 - 410 |
| 1062 | | 802, 403 | | | Summary of One on One Meetings with Players during Indian Wells 2006 - by Iggy Jovanovic 3/15/06 ATP0203040 - 3053 |
| 1063 | | | | | Player Communication - Clay Court 2009 ATP0206301 - 308 |
| 1064 | | | | | Sponsorship revenues - contract details 2009 ATP0208188 - 193 |
| 1065 | | 402, 403 | | | ATP Business Plan Status 2003 - 2004 ATP0208692 - 714 |
| 1066 | | 402, 403, 802 | | | DRAFT Phase 3: Strategic Planning Process 11/02 ATP0210105 - 182 |
| 1067 | | 402, 403 | | | ATP Restructuring Plan 2001-2004 ATP0214526 - 557 |
| 1068 | | 402, 403 | | | Television Only Guarantee 6/25/05 ATP0214829 -832 |
| 1069 | | 402, 403, 1002 | | | Television Only Guarantee ATP0214829 - 5263 |
| 1070 | | 402, 403 | | | Eurosport Television Sales Update 1996 ATP0215124 - 5128 |
| 1071 | | 402, 403 | | | 1997 Eurosport Television Sales Update ATP0214129 - 131 |
| 1072 | | 402, 403 | | | 1996 -1999 Television rights Budget and Projection ATP0214132 - 134 |
| 1073 | | 402, 403 | | | 1997 Eurosport television Sales Update ATP0215135 - 139 |
| 1074 | | 402, 403 | | | Eurosport Television Sales Update ATP0215140 - 143 |
| 1075 | | 402, 403 | | | 1998 Eurosport Television Sales Update ATP0215140 - 144 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER
REDACTED VERSION – PUBLICLY FILED

Privileged Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| | | | | | **PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST** |
| 1076 | | 402, 403 | | | Television Distribution Formula & Television Pro Forma ATP0215145 - 146 |
| 1077 | | 402, 403 | | | Eurosport Television Sales Update ATP0215147 - 151 |
| 1078 | | 402, 403 | | | ESPN Television Sales Summary ATP0215152 |
| 1079 | | 402, 403 | | | Eurosport Television Sales Update ATP0215156 - 160 |
| 1080 | | 402, 403 | | | Eurosport Television Sales Update ATP0215161 - 165 |
| 1081 | | 402, 403 | | | Television Sales Update ATP0215166 - 167 |
| 1082 | | 402, 403 | | | Television Sales Update ATP0215168 - 170 |
| 1083 | | 402, 403, 106 | | | Summary of marketing and Television Costs 11/12/99 ATP0215239 - 283 |
| 1084 | | 106, 402, 403 | | | Letter from Etienne de Villiers to Philip Galloway Re: ATP's agreement 12/2/05 ATP0216634 |
| 1085 | | 402, 403 | | | 2006 Bonus Projection ATP0216640 - 649 |
| 1086 | | 402, 403 | | | Television Projection TPL 6/23/95 ATP0216919 924 |
| 1087 | | 802 | | | 2007-09 atp marketing plan ATP0217551 - 620 |
| 1088 | | 802 | | | DRAFT WTA/TPL Television Analysis of Pooled rights 6/28/95 ATP0218947 - 972 |
| 1089 | | 106, 402, 403 | | | Re: Mail failure 10/4/95 ATP0220539 - 542 |
| 1090 | | 402, 403 | | | Consolidated Financial Statements - ATP Tour, Inc. - Years ended December 31, 1995 and 1994 with Report of Independent Auditors 3/14/96 ATP0221810 - 826 |
| 1091 | | 402, 403 | | | List of events played (All) 11/3/97 ATP0222327 2351 |
| 1092 | | 402, 403, 802, 106 | | | Excerpt From ATP/Super 9 Repositioning and Strategic Marketing Plan 5/6/99 ATP0226437 - 451 |
| 1093 | | 106, 402, 403 | | | Re: FW: Compensation 5/15/07 ATP0250380 |
| 1094 | | 106, 802, 402, 403 | | | Re: ATP Board Meeting Pre Wimbledon 6/3/06 ATP0250487 - 489 |
| 1095 | | 106, 403, 802 | | | Re: Ljubicic 3/26/07 ATP0250572 |
| 1096 | | 802, 106 | | | Re: FW: Blake & Roddick 5/7/07 ATP0251383 - 1384 |
| 1097 | | 802, 106 | | | Re: Answers 1/31/07 ATP0251529 - 532 |
| 1098 | | 802, 403 | | | Re: FW: Roberdo article translated 6.15.97 ATP0252059 - 2060 |
| 1099 | | 402, 403 | | | TPL Budget/Actual Progression 12/31/06 ATP0259884 - 9887 |
| 1100 | | 402, 403 | | | Letter from Charles M. Pasarell, Jr. to Rob 9/30/05 ATP0262265 - 275 |
| 1101 | | 106, 402, 403 | | | Fax from Arlene Thornhill to Charlie Pasarell 3/21/02 ATP0265160 -163 |
| 1102 | | 802, 403, 901 (HW) | | | Letter from Philip B. Galloway to Sergio Palmieri (Federazione Italiana Tennis) Re: reviewed application 3/29/07 ATP0269510 - 581 |
| 1103 | | 802 | | | Re: FW: AMS data 4/18/07 ATP0279651 - 652 |
| 1104 | | 802 | | | Re: Paris response 4/4/07 ATP0279655 - 734 |
| 1105 | | 106, 802 | | | 2007 Masters 1000 Application Addendum - Madrid - v2 ATP0321824 - 844 |
| 1106 | | 106, 802 | | | 2007 Masters 1000 Application Addendum - Monte Carlo ATP0322013 - 2023 |
| 1107 | | 106, 802 | | | 2007 Masters 1000 Application Addendum - Cincinnati ATP0322384 - 2397 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER — PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 1108 | | 802 | | | Letter from Gerard Tsobanian to Flip [Galloway] Re: additional information requested in [Flip's] letter dated March 29, 2007 ATP0322399 - 401 |
| 1109 | | 802 | | | Re: Tennis Canada ATP tournament application - Attach: ATP master application p&L.xls 4/20/07 ATP0322729 - 733 |
| 1110 | | 108, 403, 802 | | | ATP Master 1000 Application - Tennis Canada - 4.1 Profit and Loss Account (US$) ATP0322734 - 737 |
| 1111 | | 402, 403, 802 | | | ATP/Star Alliance Partnership Presentation ATP0332940 - 957 |
| 1112 | | 402, 403 | | | DRAFT Strategic Planning 7/30/02 ATP0333585 - 596 |
| 1113 | | 106 | | | Re: SLIDE - Attach: worldwide 2006.xls; Tournament Valuation Methodology 01-15-07.ppt 2/27/07 ATP0341498 |
| 1114 | | 403, 901 | | | Tournament [Attendance?] 2000 - 2006 ATP0341499 - 1604 |
| 1115 | | 106, 802 | | | Re: Withdrawals 5/15/06 ATP0344061 |
| 1116 | | 802 | | | ATP Organization Performance Survey 2006 8/28/95 ATP0346758 - 780 |
| 1117 | | 802 | | | Clusters - Segmentation of Tennis Consumers, Implementation Proposal 2/15/07 ATP0352098 - 104 |
| 1118 | | 802 | | | Email to Phil Anderton and George Ciz from Chris Cowan, Clusters Attachments: Clusters ATP Segmentation Proposal.doc 9/21/06 ATP0352153 - 161 |
| 1119 | | | | | ATP Programming Development 2007 Initiatives 5/10/07 ATP0352922 - 2930 |
| 1120 | | 802 | | | ATP Calendar Strategy Research 5/25/06 ATP0357186 - 7259 |
| 1121 | | 802 | | | Old Heavy Users/Old Light Users/Young Heavy Users/Young Light Users' ATP0358491 - 8499 |
| 1122 | | 402, 403 | | | Doubles Promotion: from A to Z 5/5/05 ATP0369960 - 9995 |
| 1123 | | 402, 403 | | | RE my meeting with the FFT 2/23/06 ATP0375870 - 5872 |
| 1124 | | | | | ATP Official Rulebook for 2003 ATP0377914 - 8191 |
| 1125 | | | | | Special Events Rule Reminder - 2006ATP0387573 |
| 1126 | | | | | ATP Official Rulebook for 2005 ATP0390799 - 1062 |
| 1127 | | | | | ATP Official Rulebook for 2006 ATP0392116 - 2349 |
| 1128 | | | | | ATP Official Rulebook for 2004 ATP0397480 - 7774 |
| 1129 | | | | | ATP Official Rulebook for 2007 ATP0401423 - 1670 |
| 1130 | | 106 | | | Brave Real World Comprehensive Update 5/30/06 ATP0443769 - 3822 |
| 1131 | | | | | Memorandum from Charlie Pasarell to Etienne de Villiers 5/12/06 ATP0444667 0669 |
| 1132 | | 106, 402, 403, 802 | | | Email to J.J. Carter from Andre Silva Re: FW: For Player Council 12/30/03 ATP0449155 - 157 |
| 1133 | | | | | ATP Supervisor's Tournament Evaluation - Tournament City: Hamburg - ATP Supervisor: Bradshaw/Barnes - Tournament Number: 414 ATP0460195 - 198 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER
REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| **PTX** | **DATE OFFERED** | **OBJECTIONS** | **ADM** | **DEP EXH** | **DESCRIPTION** |
| 1134 | | | | | ATP 2002 Official Rulebook ATP0464594 - 862 |
| 1135 | | 402, 403, 106, 1002 | | | Letter Re: 2002 Rule Summary ATP0464863 - 884 |
| 1136 | | 106, 802 | | | ATP Consumer Research Agreement ATP0480896 - 901 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

**PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST**

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 1137 | | | | | The 1999 ATP Tour Official Rulebook ATP0537677 - 815 |
| 1138 | | | | | ATP Board of Directors - Melbourne, Australia - January 19, 2007 - Minutes ATP0540692 - 720 |
| 1139 | | 802 | | | Clusters - Segmentation of Tennis Consumers, Phase 2: Implementation Proposal 5/16/07 ATP0556369 - 6374 |
| 1140 | | 802, 106 | | | 2007 Masters 1000 Application Addendum - MadridATP0582215 - 2232 |
| 1141 | | 106 | | | Re: 2009 prize money breakdowns.xls 9/14/07 ATP0588487 |
| 1142 | | 403, 901 | | | Key Components of proposed 2009 round by round proposal ATP0588489 - 513 |
| 1143 | | 802 | | | Ratings Analysis - AMS ATP0589493 - 602 |
| 1144 | | 802 | | | "500" Category Business Plan & Reasoning 5/24/07 ATP0617980 - 995 |
| 1145 | | 106 | | | ATP Supervisor's Tournament Evaluation - Tournament City: Hamburg - ATP Supervisor: Darby/Karlberg - Tournament Number: 04-414 1/1/04 GTF00000359 - 362 |
| 1146 | | 402, 403, 802, 901 | | | Hamburg Masters Series - Television Broadcast and Sponsor ReportGTF00007960 - 7999 |
| 1147 | | 106, 402, 403, 802, 901 | | | ATP Masters Series 2005 - Broadcasters 2/14/05 GTF00008138 - 139 |
| 1148 | | 402, 403, 802, 901 | | | Tennis Masters Hamburg Broadcast & Audience Report 6/25/95 GTF00008195 - 202 |
| 1149 | | 402, 403, 802, 901 | | | Masters Series Hamburg - Television Broadcast and Sponsor Report GTF00008966 - 9005 |
| 1150 | | 402, 403, 802, 901 | | | Masters Series Hamburg - Television Broadcast and Sponsor Report GTF00022814 - 853 |
| 1151 | | 402, 403, 802 | | | Press Conference with Roger Federer 5/16/07 GTF00023634 - 636 |
| 1152 | | 802 | | | Press Conference with Lleyton Hewitt 5/16/07 GTF00023697 - 699 |
| 1153 | | 802 | | | Tournament Name: Tennis Masters - Tournament City: Hamburg - Financial Summary 1995-2002 GTF00025158 |
| 1154 | | GERMAN | | | DTB e.V., Leistungssport, Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2001 GTF00069083 - 9087 |
| 1155 | | GERMAN | | | DTB e.V., Leistungssport, Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2002 GTF00069068 - 9073 |
| 1156 | | GERMAN | | | DTB e.V., Leistungssport, Kanzlei-Rechnungswesen V.6.34, Summen und Salden (pro Monat) Dezember 2003 GTF00069074 - 9078 |
| 1157 | | GERMAN | | | DTB e.V., Leistungssport, Kanzlei-Rechnungswesen V.6.34, Summen und Salden (pro Monat) Dezember 2004 GTF00069079 - 9083 |
| 1158 | | GERMAN | | | DTB e.V., Leistungssport, Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2005 GTF00069084 - 9092 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER — REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|-----|--------------|------------|-----|---------|-------------|
| | | | | | **PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST** |
| 1159 | | GERMAN | | | Deutscher Tennis Bund e.V., Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2001 GTF00069093 - 9104 |
| 1160 | | GERMAN | | | Deutscher Tennis Bund e.V., Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2002 GTF00069105 - 9116 |
| 1161 | | GERMAN | | | Deutscher Tennis Bund e.V., Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2003 GTF00069117-9128 |
| 1162 | | GERMAN | | | Deutscher Tennis Bund e.V., Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2004 GTF00069129-9140 |
| 1163 | | GERMAN | | | Deutscher Tennis Bund e.V., Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2005 GTF00069141 - 152 |
| 1164 | | GERMAN | | | Deutscher Tennis Bund, Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) September 1999 GTF00069153 - 170 |
| 1165 | | GERMAN | | | DTB Holding GmbH, Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) September 2000 GTF00069171 - 186 |
| 1166 | | GERMAN | | | DTB Holding GmbH, Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2000 GTF00069187 - 198 |
| 1167 | | GERMAN | | | DTB Holding GmbH, Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2001 GTF00069199 - 213 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER — PUBLICLY FILED VERSION

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| | | | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | |

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 1168 | | GERMAN | | | DTB Holding GmbH, Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2002 GTF00069214 - 227 |
| 1169 | | GERMAN | | | DTB Holding GmbH, Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2003 GTF00069228 - 240 |
| 1170 | | GERMAN | | | DTB Holding GmbH, Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2004 GTF00069241 - 254 |
| 1171 | | GERMAN | | | DTB Holding GmbH, Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2005 GTF00069255 - 262 |
| 1172 | | GERMAN | | | DTB Rothenbaum Turnier GmbH, Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) September 2000 GTF00069263 - 276 |
| 1173 | | GERMAN | | | DTB Rothenbaum Turnier GmbH, Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2000 GTF00069277 - 284 |
| 1174 | | GERMAN | | | DTB Rothenbaum Turnier GmbH, Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2001 GTF00069285 - 298 |
| 1175 | | GERMAN | | | DTB Rothenbaum Turnier GmbH, Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2002 GTF00069299 - 312 |
| 1176 | | GERMAN | | | DTB Rothenbaum Turnier GmbH, Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2003 GTF00069313 - 326 |
| 1177 | | GERMAN | | | DTB Rothenbaum Turnier GmbH, Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Dezember 2004 GTF00069327 - 340 |
| 1178 | | GERMAN | | | DTB Rothenbaum Turnier GmbH, Kanzlei-Rechnungswesen V.5.34, Summen und Salden (pro Monat) Juni 2005 GTF00069341 - 354 |
| 1179 | | GERMAN | | | Rothenbaum Sport Gumbo, Kanzlei-Rechnungswesen V.5.34 Summen und Salden (pro Monat) Juni 2006 GTF00069355 - 369 |
| 1180 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH 6/30/05 GTF00069738 - 779 |
| 1181 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH 12/31/04 GTF00069780 - 824 |
| 1182 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH 12/31/03 GTF00069825 - 871 |
| 1183 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH 12/31/02 GTF00069872 - 919 |
| 1184 | | GERMAN | | | Rothenbaum Sport Gumbo (vormals Deutscher Tennis Bund Holding GmbH) 12/31/05 GTF00069920 - 963 |
| 1185 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/04 GTF00069964 - 70017 |
| 1186 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/03 GTF00070018 - 70070 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER
REDACTED VERSION – PUBLICLY FILED

Presauldr Kobre Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|------|------|------|------|------|------|
| | | | | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST |
| 1187 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/02 GTF00070071 - 70125 |
| 1188 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/01 GTF00070126 - 70179 |
| 1189 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/00 GTF00070180 - 70234 |
| 1190 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/00 GTF00070235 - 70289 |
| 1191 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/99 GTF00070290 - 70346 |
| 1192 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 12/31/98 GTF00070347 - 70402 |
| 1193 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/07 GTF00070403 - 458 |
| 1194 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/06 GTF00070459 - 513 |
| 1195 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/95 GTF00070514 - 568 |
| 1196 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/04 GTF00070569 - 619 |
| 1197 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/04 GTF00070620 - 667 |
| 1198 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/03 GTF00070668 - 70715 |
| 1199 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/02 GTF00070716 - 70766 |
| 1200 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/01 GTF00070767 - 70817 |
| 1201 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/00 GTF00070818 - 70867 |
| 1202 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 9/30/00 GTF00070868 - 70915 |
| 1203 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/95 GTF00070916 - 70954 |
| 1204 | | GERMAN | | | Anlagen GTF00070955 - 70970 |
| 1205 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/96 GTF00070971 - 71007 |
| 1206 | | GERMAN | | | Anlagen GTF00071008 - 71023 |
| 1207 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/97 GTF00071024 - 71057 |
| 1208 | | GERMAN | | | Anlagen GTF00071058 - 71074 |
| 1209 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/98 GTF00071075 - 71110 |
| 1210 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 9/30/99 GTF00071111 - 71157 |
| 1211 | | GERMAN | | | Anlagen GTF00071158 - 71172 |
| 1212 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/94 GTF00071173 - 71224 |
| 1213 | | GERMAN | | | Rothenbaum Sport GmbH 6/30/06 GTF00071225 - 71268 |
| 1214 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH 6/30/05 GTF00071269 - 310 |
| 1215 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH 12/31/04 GTF00071311 - 1365 |
| 1216 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH 12/31/03 GTF00071366 - 1402 |
| 1217 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH 12/31/02  GTF00071403 - 1450 |
| 1218 | | GERMAN | | | Rothenbaum Stadion Gumbo (vormals Deutscher Tennis Bund Holding GmbH) 12/31/05 GTF00071451 - 1494 |
| 1219 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/04  GTF00071495 - 1548 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | | | | |
|---|---|---|---|---|---|
| **PTX** | **DATE OFFERED** | **OBJECTIONS** | **ADM** | **DEP EXH** | **DESCRIPTION** |
| 1220 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/03 GTF00071549 - 1801 |
| 1221 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/02 GTF00071602 - 1656 |
| 1222 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/01 GTF00071657 - 1710 |
| 1223 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/00 GTF00071711 - 1765 |
| 1224 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 9/30/00 GTF00071766 - 1820 |
| 1225 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/98 GTF00071621 - 1877 |
| 1226 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/97 GTF00071878 - 1935 |
| 1227 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/97 GTF00071936 - 1992 |
| 1228 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 8/30/96 GTF00071993 - 2048 |
| 1229 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/95 GTF00072049 - 2104 |
| 1230 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/94 GTF00072105 - 2156 |
| 1231 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/04 GTF00072157 - 2204 |
| 1232 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/03 GTF00072205 - 2252 |
| 1233 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/02 GTF00072253 - 2303 |
| 1234 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/01 GTF00072304 - 2354 |
| 1235 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/00 GTF00072355 - 2404 |
| 1236 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 9/30/00 GTF00072405 - 2452 |
| 1237 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/95 GTF00072453 - 2491 |
| 1238 | | GERMAN | | | Anlagen GTF00072492 - 2507 |
| 1239 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/96 GTF00072508 - 544 |
| 1240 | | GERMAN | | | Anlagen GTF00072545 - 2560 |
| 1241 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/97 GTF00072561 - 2594 |
| 1242 | | GERMAN | | | Anlagen GTF00072591 - 2611 |
| 1243 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/98 GTF00072612 - 2647 |
| 1244 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 9/30/99 GTF00072648 - 2683 |
| 1245 | | GERMAN | | | Anlagen GTF00072685 - 2709 |
| 1246 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/94 GTF00072710 - 2761 |
| 1247 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/94 GTF00072762 - 2813 |
| 1248 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 2004 GTF00072814 - 2861 |
| 1249 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 2003 GTF00072862 - 2909 |
| 1250 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 2002 GTF00072910 - 2960 |
| 1251 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 2001 GTF00072961 - 3011 |
| 1252 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 2000 GTF00073012 - 3066 |
| 1253 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 9/30/00 GTF00073067 - 3121 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER — REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| | | | | | **PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST** |
| 1254 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/00 GTF00073122 - GTF00073171 |
| 1255 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 9/30/99 GTF00073172 - 3228 |
| 1256 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/98 GTF00073229 - 3285 |
| 1257 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/97 GTF00073286 - 3341 |
| 1258 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/96 GTF00073342 - 3396 |
| 1259 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/95 GTF00073397 - 3451 |
| 1260 | | GERMAN | | | Rothenbaum Sport GmbH 2006 GTF00073451 - 3495 |
| 1261 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH 2005 GTF00073496 - 3537 |
| 1262 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH 2004 GTF00073538 - 3582 |
| 1263 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH 2003 GTF00073583 - 3629 |
| 1264 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH 2002 GTF00073630 - 3677 |
| 1265 | | GERMAN | | | Rothenbaum Sport GmbH - (vormals Deutscher Tennis Bund Holding GmbH) 2005 GTF00073678 - 3721 |
| 1266 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/04 GTF00073722 - 3775 |
| 1267 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/03 GTF00073776 - 3828 |
| 1268 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/02 GTF00073829 - 3883 |
| 1269 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/01 GTF00073884 - 3937 |
| 1270 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 9/30/00 GTF00073938 - 3985 |
| 1271 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 9/30/99 GTF00073986 - 4032 |
| 1272 | | GERMAN | | | Anlagen GTF00074033 - 4047 |
| 1273 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/98 GTF00074048 - 4083 |
| 1274 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/97 GTF00074084 - 4117 |
| 1275 | | GERMAN | | | Anlagen GTF00074118 - 4134 |
| 1276 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/96 GTF00074135 - 4187 |
| 1277 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/95 GTF00074188 - 4242 |
| 1278 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH Hamburg 9/30/94 GTF00074243 - 4294 |
| 1279 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH 12/3101GTF00076887 - 6935 |
| 1280 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH 12/31/00 GTF00076936 - 985 |
| 1281 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH 9/30/00 GTF00076986 - 7038 |
| 1282 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH 9/30/99 GTF00077039 - 7087 |
| 1283 | | GERMAN | | | Deutscher Tennis Bund Pool GmbH Hamburg 9/30/94 GTF00077088 - 7135 |
| 1284 | | GERMAN | | | Deutscher Tennis Bund Pool GmbH Hamburg 9/30/95 GTF00077136 - 182 |
| 1285 | | GERMAN | | | Deutscher Tennis Bund Pool GmbH Hamburg 9/30/96 GTF00077183 - 225 |
| 1286 | | GERMAN | | | Anlagen GTF00077226 - 236 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | | | | |
|---|---|---|---|---|---|
| **PTX** | **DATE OFFERED** | **OBJECTIONS** | **ADM** | **DEP EXH** | **DESCRIPTION** |
| 1287 | | GERMAN | | | Deutscher Tennis Bund Pool GmbH Hamburg 9/30/97 GTF00077237 - 267 |
| 1288 | | GERMAN | | | Deutscher Tennis Bund Pool GmbH Hamburg 9/30/98 GTF0077268 - 298 |
| 1289 | | GERMAN | | | Anlagen GTF00077299 - 309 |
| 1290 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH Hamburg 9/30/98 GTF00077310 - 364 |
| 1291 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH Hamburg 9/30/97 GTF00077365 - 7418 |
| 1292 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH Hamburg 9/30/96 GTF00077419 - 469 |
| 1293 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH Hamburg9/30/95 GTF00077470 - 523 |
| 1294 | | GERMAN | | | Deutscher Tennis Bund Rothenbaum Turnier GmbH Hamburg 9/30/94 GTF00077524 - 575 |
| 1295 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/02 GTF00090527 |
| 1296 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH 12/31/02 GTF00090675 - 595 |
| 1297 | | GERMAN | | | Deutscher Tennis Bund Holding GmbH, Hamburg GTF00090628 - 629 |
| 1298 | | 402, 403 | | | Memorandum to Tournament Members from Mark Miles Re: ATP Board Strategic Planning 1/9/03 MC0002504 - 547 |
| 1299 | | 402, 403 | | | ATP Business Plan 2003 - 2004 MC0002566 - 576 |
| 1300 | | 402, 403 | | | Outline of TPL History PD-YOM0006835 - 840 |
| 1301 | | | | | Restated Certificate of Incorporation of ATP Tour, Inc. 10/22/97 GTF00000816 - 842 |
| 1302 | | 106, 402, 403, 802, 901 | | | Audience Reach GTF00007325 - 7328 |
| 1303 | | | | | London TMC Overall Deal Terms ATP0588121 - 135 |
| 1304 | | 106, 402, 403, 901 | | | Deed Register No. 613/2005 GTF00069029 - 9048 |
| 1305 | | 901 (HW), 402, 403, | | | ATP Tour and TPL Pooling Agreement 2/9/04 GTF00069434 - 489 |
| 1306 | | GERMAN | | | GTF00069634 - 713 |
| 1307 | | 402, 403, 901, 1002 | | | ATP Tour and TPL Pooling Agreement 10/19/06 MC 0003285 - 3338 |
| 1308 | | 106 | | | Email from Etienne de Villers re: Master to do list 2/15/06 EML0619120 |
| 1309 | | 402, 403 | | | Meeting Minutes 2/22/06 NR00104260 |
| 1310 | | 106, 402, 403 | | | Email from Flip Galloway to Etienne de Villers re: Executive Compensation 3/1/06 ATP0346292 - 293 |
| 1311 | | PRIV | | | Memorandum from Mark Young to Etienne de Villers re: Management Report 4/17/06 EML0631414 |
| 1312 | | | | | Memorandum from Mark Young to Etienne de Villers re: Management Report 5/5/06 EML0260836 |
| 1313 | | 802, 106 | | | Email from David Higdon re: our conversation the other day 6/28/06 ATP0345516 - 5520 |
| 1314 | | | | | Chairman's Report 6/29/06 ATP0010662 - 665 |
| 1315 | | 106, 402, 403 | | | Memorandum from Mark Young to Etienne de Villers re: Management Report 7/10/06 NR0104469 |
| 1316 | | 106, 901 (HW) | | | Pasarell Draft Letter to Etienne de Villers 7/17/06 PD-PAC019340 - 45 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER
REDACTED VERSION – PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| 1317 | | 106, 402, 403 | | | Memorandum from Mark Young to Etienne de Villiers re: Management Report 7/24/06 NR0104470 |
| 1318 | | 802, 402, 403 | | | Barratt letter re: new ATP Media 8/11/06 MC07445 - 447 |
| 1319 | | 402, 403 | | | Memorandum from Mark Young to Etienne de Villiers re: Management Report 8/14/06 EML0261835 |
| 1320 | | | | | ATP Progress update to Players 8/26/06 ATP0205882 - 912 |
| 1321 | | 402, 403 | | | Memorandum from Mark Young to Etienne de Villiers re: Management Report 9/11/06 EML0262238 |
| 1322 | | 106, 402, 403 | | | Memorandum from Mark Young to Etienne de Villiers re: Management Report 9/11/06 EML0262387 |
| 1323 | | 402, 403 | | | Memorandum from Mark Young to Etienne de Villiers re: Management Report 9/25/06 EML0262441 |
| 1324 | | | | | What a Wonderful World Status Report 9/22/06 ATP0081934 - 943 |
| 1325 | | 106 | | | Email from Etienne de Villiers to Iggy Jovanovic and Andre Silva re: Blake & the golden mile 10/19/06 ATP0444787 |
| 1326 | | 106, 402, 403, 802 | | | Email from Flip Galloway to All ATP Board 12/1/06 re: Kitzbuhel status ATP0356017 |
| 1327 | | | | | Letter from Etienne de Villiers to Players 12/5/06 ATP0054006 - 4010 |
| 1328 | | 802, 402, 403 | | | Letter from Deloitte to Phil Galloway 12/20/06 ATP0081772 - 1779 |
| 1329 | | 402, 403 | | | 2006 Calendar Top Seeds ATP054990 - 9913 |
| 1330 | | 802 | | | General Player Meeting 1/13/07 ATP0010948 - 982 |
| 1331 | | PRIV | | | Email from Mark Young to Flip Galloway 1/12/07 EML0266643 |
| 1332 | | 106 | | | Email from Etienne de Villiers to Roger Federer and James Blake re: our plans 1/19/07 ATP0444833 - 836 |
| 1333 | | 403, 802 | | | Letter to Etienne de Villiers from Ricci Bitti 1/29/07 ATP0054038 - 4040 |
| 1334 | | 403, 901 | | | Letter to Ricci Bitti from Etienne de Villiers 2/2/07 ATP0054033 - 4036 |
| 1335 | | 106, 802 | | | Email from Gavin Forbes to Etienne de Villiers 10/5/07 ATP0588942 - 950 |
| 1336 | | 106, 802, 403 | | | Email from Etienne de Villiers to Gavin Forbes 10/05/07 ATP0590124 - 133 |
| 1337 | | 106 | | | Email from Flip Galloway re: European Tournament Applications 2/2/07 ATP0355360 - 361 |
| 1338 | | 106 | | | Email from Flip Galloway re: North American Tournament Applications 2/2/07 ATP035536362 - 363 |
| 1339 | | 106, 402, 403 | | | Email from Etienne de Villiers to Mark Young Flip Galloway re: letter 2/15/07 EML0722710 |
| 1340 | | 106, 402, 403 | | | Email from Flip Galloway to Etienne de Villiers 4/2/07 EML0720711 |
| 1341 | | 106, 402, 403 | | | Letter from Jeff Reel to Egdes 5/2/07 EML0267789 |
| 1342 | | 106 | | | Email from Flip Galloway to All tournaments re: Draft 2009 format for Open 500s 5/4/07 MC0007266 |

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER — PUBLICLY FILED

| | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | | |
|---|---|---|---|---|---|
| **PTX** | **DATE OFFERED** | **OBJECTIONS** | **ADM** | **DEP EXH** | **DESCRIPTION** |
| 1343 | | 106 | | | Email from Iggy Jovanovic to Flip Galloway All ATP Board 5/11/07 MC0036254 |
| 1344 | | 106, 802 | | | Email from Zeljko Franulovic to Flip Galloway re: Response to Request for Clarification 4/19/07 MC0037674 - 377 |
| 1345 | | 106 | | | Email from Flip Galloway re: : Application Comparison documents and Meeting Agenda 4/20/07 MC0035693 |
| 1346 | | 802, 106 | | | Email from Thomas Wallen to Etienne de Villiers 4/19/07 re: private thoughts ATP0349494 |
| 1347 | | | | | Las Vegas Baord Meeting ATP0351011 - 1038 |
| 1348 | | 106, 402, 403, 802 | | | Email from Andy Anson to Flip Galloway Etienne de Villiers re: Las Vegas follow up 5/4/07 ATP0350048 - 50052 |
| 1349 | | 106, 402, 403, 802 | | | Email from Andy Anson to Etienne de Villiers 5/11/07 ATP0589753 - 754 |
| 1350 | | PRIV, 402, 403, 407, 408 | | | **Withdrawn** |
| 1351 | | 402, 403 | | | Email from Kris Dent to Etienne de Villiers 7/6/07 ATP0589847 |
| 1352 | | 106 | | | Email from Mark Young to Etienne de Villiers re: Monday's Board Call/2009 Format 7/19/07 ATP0589327 |
| 1353 | | 106 | | | Email from Andy Anson to Etienne de Villiers re: Calendar 7/18/07 ATP0589733 |
| 1354 | | 106 | | | Email from Etienne de Villiers to All ATP Board re: 4 of 11 vs. 4 of 13 7/16/07 ATP0803113 - 115 |
| 1355 | | 802, 106, 403, 403 | | | Email from Etienne de Villiers to Player's Reps re:  Communication about 2009-2010 and 4 out of 11 7/18/07 ATP0604283 |
| 1356 | | 802, 402, 403 | | | Brand Driver Research ATP0359888 3/16/07 |
| 1357 | | 402, 403 | | | Email from Gerard Tsobanian to Etienne de Villiers re: Kitzbuhel 3/13/07 ATP0365773 |
| 1358 | | 402, 403 | | | Memorandum from Mark Young to Etienne de Villiers re: Management Report 5/1/06 EML0260469 |
| 1359 | | | | | Memorandum from Mark Young to Etienne de Villiers re: Management Report 5/15/06 EML0260599 |
| 1360 | | 402, 403 | | | Memorandum from Mark Young to Etienne de Villiers re: Management Report 6/19/06 EML0261048 |
| 1361 | | 402, 403 | | | Memorandum from Mark Young to Etienne de Villiers re: Management Report 7/10/06 EML0261361 |
| 1362 | | PRIV | | | Memorandum from Mark Young to Etienne de Villiers re: Management Report 7/24/06 EML0261573 |
| 1363 | | | | | Memorandum from Mark Young to Etienne de Villiers re: Management Report 10/13/06 EML0262811 |
| 1364 | | PRIV, 402, 403 | | | Memorandum from Mark Young to Etienne de Villiers re: Management Report 4/17/06 EML0620191 |
| 1365 | | 402, 403 | | | Memorandum from Mark Young to Etienne de Villiers re: Management Report 5/1/06 EML0631496 |
| 1366 | | 402, 403 | | | Memorandum from Mark Young to Etienne de Villiers re: Management Report 6/5/06 EML0717000 |

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| | | | | | **PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST** |
| 1367 | | 402, 403 | | | Memorandum from Mark Young to Etienne de Villiers re: Management Report 6/19/06 EML0719967 |
| 1368 | | 402, 403 | | | Memorandum from Mark Young to Etienne de Villiers re: Management Report 6/19/06 EML0724147 |
| 1369 | | 802 | | | Letter to Etienne de Villiers from Raymond Moore ATP0204540 - 543 |
| 1370 | | | | | Summary of Meetings of the ATP Board of Directors 11/13/07 QTF00000619 - 622 |
| 1371 | | 403 | | | Chairman's Report to ATP Player and Tournaments Members 11/13/07 QTF00000001 - 16 |
| 1372 | | Not Provided | | | Etienne de Villiers Interview in Sports Business International, No. 131 |
| 1373 | | 106, 402, 403, 802 | | | Approved 2009 Calendar ATP0618602 |
| 1374 | | 802 | | | Chairman's Report and other documents from 2008 Indian Wells meeting ATP0618783 - 786 |
| 1375 | | Not Provided | | | Tennis Properties LTD/ATP Media Board Meeting London 2/6/08 |
| 1376 | | 802, 403 | | | Letter from Jacqueline Simpson to Mark Young re: The "Brave New World" and Masters 1000/500 Series Plans 3/22/07 ATP0545898 - 899 |
| 1377 | | | | | ATP Articles of Incorporation and Bylaws ATP0279514 - 633 |
| 1378 | | 402, 403 | | | ATP Tax Returns ATP0268024 - 8050 |
| 1379 | | | | | Summary of Meetings of the ATP Board of Directors 3/14/08 ATP0618787 - 791 |
| 1380 | | 106 | | | Appendix A ATP0618792 - 795 |
| 1381 | | 106, 1002 | | | Appendix B 2008 London Meeting Schedule ATP0618796 |
| 1382 | | | | | 2008 New York Meeting Schedule Draft 3/18/08 ATP0618797 |
| 1383 | | | | | 2008 Shangahi Meeting Schedule ATP0618798 |
| 1384 | | | | | Minutes of the Meeting of the ATP Board of Directors 12/7/99 ATP0618740 - 742 |
| 1385 | | 901 (HW) | | | Minutes of the Meeting of the ATP Tour Board of Directors 9/22/98 ATP0618743 - 747 |
| 1386 | | | | | Summary of Meetings of the ATP Board of Directors 3/14/08 ATP0618748 - 757 |
| 1387 | | | | | ATP Board of Directors Minutes 1/14/03 ATP0618760 - 761 |
| 1388 | | | | | Minutes of the Meeting of the ATP Tour Board of Directors 11/3/98 ATP0618762 - 63 |
| 1389 | | 901 (HW) | | | Minutes of the Meeting of the ATP Tour Board of Directors 11/2/98 ATP0618764 - 776 |
| 1390 | | | | | Minutes of the Meeting of the ATP Tour Board of Directors 10/12/97 ATP0618777 - 782 |
| 1391 | | 402, 403 | | | ATP Tax Returns 2004 ATP0267902 - 8001 |
| 1392 | | 402, 403 | | | ATP Tax Returns 1998 ATP0268051 - 8074 |
| 1393 | | A | | | Hamburg 2008 - Bhupathi and Knowles (video posted on http://www.atptennis.com) |
| 1394 | | A | | | Hamburg 2008 - Djokovic Interview (video posted on http://www.atptennis.com) |
| 1395 | | A | | | Hamburg 2008 - Federer Feature (video posted on http://www.atptennis.com) |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER — PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| | | PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | | |
|---|---|---|---|---|---|
| **PTX** | **DATE OFFERED** | **OBJECTIONS** | **ADM** | **DEP EXH** | **DESCRIPTION** |
| 1396 | | A | | | Hamburg 2008 - Monday Highlights (video posted on http://www.atptennis.com) |
| 1397 | | A | | | Hamburg 2008 - Robredo Interview (video posted on http://www.atptennis.com) |
| 1398 | | A | | | Hamburg 2008 - Safin Interview (video posted on http://www.atptennis.com) |
| 1399 | | A | | | Hamburg 2008 - Thursday Highlights (video posted on http://www.atptennis.com) |
| 1400 | | A | | | Hamburg 2008 - Tuesday Highlights (video posted on http://www.atptennis.com) |
| 1401 | | A | | | Hamburg 2008 - Wednesday Highlights (video posted on http://www.atptennis.com) |
| 1402 | | A | | | Hamburg 2008 - Sunday Highlights (video posted on http://www.atptennis.com) |
| 1403 | | A | | | Summary of Meetings of the ATP Board of Directors - March 14-15, 2008 ATP0618748-762 |
| 1404 | | A | | | Appendix re Board Rules 3/18/08 ATP0618753-756 |
| 1405 | | A | | | Minutes of Meeting of Board of Directors 11/2/98 ATP0618764-767 |
| 1406 | | A | | | Letter from ATP Masters Series Tournament Directors to Etienne de Villiers 5/6/2008 ATP0619702-712 |
| 1407 | | A | | | Tournament Memberships Downgraded, Terminated, Upgraded, or Reclassified ATP0619713-722 |
| 1408 | | A | | | Enel/ATP Agreement ATP0619723-734 |
| 1409 | | A | | | Letter from ATP Masters Series Tournament Directors to Etienne de Villiers 5/6/2008 (with handwriting) ATP0619735-737 |
| 1410 | | A | | | Letter from Anson to Palmieri 10/30/07 (with handwriting) ATP0619738 |
| 1411 | | A | | | Letter from Anson to Palmieri 10/30/07 ATP0619739 |
| 1412 | | A | | | Letter from Vilotte to Anson 12/3/07 ATP0619740 |
| 1413 | | A | | | E-mail from de Villiers to Anson 12/7/07 ATP0619741-743 |
| 1414 | | A | | | Letter from Palmieri to Anson 12/12/07 ATP0619744 |
| 1415 | | A | | | E-mail from Massey to Tsobanian 12/14/07 ATP0619745-46 |
| 1416 | | A | | | Letter from Tsobanian to Anson re Madrid ATP 1000 Application 12/19/07 ATP0619748 |
| 1417 | | A | | | Letter from Tsobanian to Anson re Dubai Membership 12/19/07 ATP0619749 |
| 1418 | | A | | | Letter from Anson to Palmieri 12/19/07 ATP0619750 |
| 1419 | | A | | | Letter from Anson to Vilotte 12/20/07 ATP0619751-52 |
| 1420 | | A | | | E-mail from Galloway to Anson re Rome 2/8/08 ATP0619753-54 |
| 1421 | | A | | | Letter from Anson to Palmieri 2/12/08 ATP0619755-56 |
| 1422 | | A | | | Letter from Anson to Evington Finance Corp. 4/16/08 ATP0619756 |
| 1423 | | A | | | E-mail from Steve Plasto to Mark Young et al. re 500 update 5/28/2008 ATP0619757-59 |
| 1424 | | A | | | Feel It Presentation ATP0619760-791 |
| 1425 | | A | | | Canada/ATP Sanction Protection Agreement 8/1/03 ATP0619792-796 |
| 1426 | | A | | | Canada/ATP Sanction Protection Agreement 8/1/03 ATP0619797-801 |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER
REDACTED VERSION – PUBLICLY FILED

Plaintiffs' Rough Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PTX | DATE OFFERED | OBJECTIONS | ADM | DEP EXH | DESCRIPTION |
|---|---|---|---|---|---|
| | | | | | **PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST** |
| 1427 | | A | | | Canada/ATP Loan Letter Agreement 8/1/03 ATP0619802-806 |
| 1428 | | A | | | Cincinnati/ATP Agreement 12/15/04 ATP0619807-14 |
| 1429 | | A | | | Player List ATP0619815-836 |
| 1430 | | A | | | 2008 ATP Official Rulebook ATP0619839-620085 |
| 1431 | | A | | | Hamburg Pictures GTF00000001 - GTF00000089 |
| 1432 | | A | | | Hamburg Pictures GTF00000090-GTF00000252 |
| 1433 | | A | | | Hamburg Pictures GTF00000254 |
| 1434 | | A | | | Hamburg Pictures GTF00000255 |
| 1435 | | A | | | Hamburg Pictures GTF00000317 - GTF00000347 |
| 1436 | | A | | | Hamburg Pictures GTF00000603 |
| 1437 | | A | | | Hamburg Pictures GTF00000604 |
| 1438 | | A | | | Hamburg Pictures GTF00000730 |
| 1439 | | A | | | Hamburg Pictures GTF00003624 |
| 1440 | | A | | | Hamburg Pictures GTF00003625 |
| 1441 | | A | | | Hamburg Pictures GTF00003651 |
| 1442 | | A | | | Hamburg Pictures GTF00022903 |
| 1443 | | A | | | Hamburg Pictures GTF00022904 |
| 1444 | | A | | | Hamburg Pictures GTF00022906 |
| 1445 | | A | | | Hamburg Pictures GTF00022913 |
| 1446 | | A | | | Hamburg Pictures GTF00022914 |
| 1447 | | A | | | Hamburg Pictures GTF00022918 |
| 1448 | | A | | | Hamburg Pictures GTF00022919 |
| 1449 | | A | | | Hamburg Pictures GTF00023368 |
| | | | | | |
| | | | | | Any and all documents that Plaintiffs have requested and Defendants has failed to produce to date and any and all documents Defednats produce from this date forward. |
| | | | | | |
| | | | | | **Defendants' Objections** In addition to Defendants' objections pursuant to Rules 106, 402, 403, 701, 802, 901, and 1002 of the Federal Rules of Evidence, as outlined above, Defendants further object to specific exhibits on Plaintiffs' Exhibit List for the following reasons: |
| | | | | | (A)  Defendants reserve all objections to these additional exhibits, which were identified to Defendants on the evening of June 2, 2008. This objection applies wherever an "A" appears in he objection column. |
| | | | | |  (1)  Defendants object to Plaintiffs' use at trial of any foreign language exhibits or translations thereof to the extent that Plaintiffs failed to provide translations of the foreign language documents listed on their Exhibit List with their Pre-Trial Order materials on April 23, 2008. Accordingly, each objection that states "GERMAN" signfies Defendants' objection to Plaintiffs' use of these foreign language documents or translations thereof at trial. |

EXHIBIT 3(a) TO FINAL PRETRIAL ORDER — PUBLICLY FILED

Proskauer Rose Draft
May 12, 2008
Rights to Amend and Supplement Reserved

| PLAINTIFFS' PROPOSED TRIAL EXHIBIT LIST | | | | | |
|---|---|---|---|---|---|
| **PTX** | **DATE OFFERED** | **OBJECTIONS** | **ADM** | **DEP EXH** | **DESCRIPTION** |
| | | | | | (2)  Objections containing the word "PRIV" mean that Defendants object to Plaintiffs' use of the corresponding document because information in that document is protected by the attorney-client privilege and Defendants have sought the return of the document pursuant to Paragraph 9 of the parties' Protective Order. |
| | | | | | (3)  Defendants object to Plaintiffs' Exhibit List to the extent items on Plaintiffs' Exhibit List were not provided to Defendants or were not identified by Bates range. |
| | | | | | (4)  Defendants reserve the right to supplement with further objections to the extent Plaintiffs seek to add additional items to their Exhibit List. |
| | | | | | (5)  Defendants reserve the right to supplement with further objections herein, including because Plaintiffs have not served or filed their trial brief yet. |

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 3(b)

REDACTED VERSION – PUBLICLY FILED

## EXHIBIT 3(c) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1 | | | Deutscher Tennis Bund (German Tennis Federation) and Rothenbaum Sports GMBH Complaint and Jury Demand | 3/28/2007 | |
| 2 | | | First Amended Complaint | 10/15/2007 | |
| 3 | | | First Amended Complaint (REDLINED) | 10/15/2007 | |
| 4 | | | ATP's Notice to take a Rule 30(B)(6) Deposition of Plaintiffs Deutscher Tennis Bund and Rothenbaum Sports GMBH | 8/8/2007 | 802, 402, 403 |
| 5 | | | ATP's Notice to take a Rule 30(B)(6) Deposition of Plaintiffs Qatar Tennis Federation | 11/16/2007 | |
| 6 | | | Plaintiffs DTB, Rothenbaum Sports GMBH Tennis, and QTF's Privilege Log | 8/24/2007 | 402, 403 |
| 7 | | | Plaintiffs DTB, Rothenbaum Sports GMBH Tennis, and QTF's Privilege Log | 1/29/2008 | 402, 403 |
| 8 | | | ATP Tour Inc's First Set of Interrogatories to Plaintiffs | 11/2/2007 | 802, 402, 403 |
| 9 | | | Plaintiff's Answers to Defendant's First Set of Interrogatories | 12/5/2007 | |
| 10 | | | ATP Tour Inc's Responses and Objections to Plaintiffs First Set of Interrogatories | 12/12/2007 | 802, 402, 403 |
| 11 | | | Plaintiff's Statement of Admitted Facts from Pre Trial Order Draft | 4/23/2008 | 402, 403 |
| 12 | | | Plaintiff's Statement of Admitted Facts from Pre Trial Order Draft | 5/1/2008 | 402, 403 |
| 13 | | | Plaintiffs' Fed. R. Civ. P. 26(a)(1) Initial Disclosure Statement | 5/4/2007 | |
| 14 | | | Deutscher Tennis Bund (German Tennis Federation) and Rothenbaum Sports GMBH Tennis and Monte-Carlo Country Club and Societe Monegasque Pour L'Expllation du Tournoi de Tennis Joint Status Report | 6/8/2007 | 106, 402, 403 |
| 15 | | | WITHDRAWN | | |

REDACTED VERSION – PUBLICLY FILED

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 16 | | | Answer and Affirmative Defenses to Amended Complaint ATP Tour, Inc. | 12/6/2007 | 802, 402, 403 |
| 17 | | | Answer and Affirmative Defenses to Amended Complaint Etienne de Villiers | 12/6/2007 | 802, 402, 403 |
| 18 | | | Answer and Affirmative Defenses to Amended Complaint Jacco Eltingh | 12/6/2007 | 802, 402, 403 |
| 19 | | | Answer and Affirmative Defenses to Amended Complaint Iggy Jovanovic | 12/6/2007 | 802, 402, 403 |
| 20 | | | Answer and Affirmative Defenses to Amended Complaint Charles Pasarell | 12/6/2007 | 802, 402, 403 |
| 21 | | | Answer and Affirmative Defenses to Amended Complaint Graham Pearce | 12/6/2007 | 802, 402, 403 |
| 22 | | | Complaint Perry Rogers | 12/6/2007 | 802, 402, 403 |
| 23 | ATP0477143 | ATP0477407 | ATP Rulebook | 1997 | 106, 403, 802, 901 |
| 24 | ATP0476291 | ATP0476557 | ATP Rulebook | 1998 | 106, 403, 802, 901 |
| 25 | ATP0476558 | ATP0476843 | ATP Rulebook | 1999 | 106, 403, 802, 901 |
| 26 | ATP0475677 | ATP0475947 | ATP Rulebook | 2000 | 106, 403, 802, 901 |
| 27 | ATP0475948 | ATP0476239 | ATP Rulebook | 2001 | 106, 403, 802, 901 |
| 28 | ATP0475395 | ATP0475676 | ATP Rulebook | 2002 | 106, 403, 802, 901 |
| 29 | ATP0475109 | ATP0475394 | ATP Rulebook | 2003 | 106, 403, 802, 901 |
| 30 | ATP0476844 | ATP0477142 | ATP Rulebook | 2004 | 106, 403, 802, 901 |
| 31 | ATP0200976 | ATP0201239 | ATP Rulebook | 2005 | 106, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|-------|-------------|-------------|-------------|------|------------|
| 32 | ATP0095392 | ATP0095625 | ATP Rulebook | 2006 | 106, 403, 802, 901 |
| 33 | ATP0447358 | ATP0447605 | ATP Rulebook | 2007 | 106, 403, 802, 901 |
| 34 | ATP0094684 | ATP0094710 | Restated Certificate of Incorporation of ATP Tour, Inc. | 6/13/2003 | 802 |
| 35 | | | Amended and Restated By-laws of ATP Tour | | |
| 36 | | | Career Prize Money Data available at http://www.atptennis.com | 4/21/2008 | 106, 403, 802, 901 |
| 37 | | | ATP Calendars 1978 to 2008 available at http://www.atptennis.com/5/en/vault/ | | 106, 403, 802, 901 |
| 38 | ATP0618168 | ATP0618168 | Spreadsheet - Projected ATP Calendars 2009-2015 | 2/12/2008 | 106, 403, 802, 901 |
| 39 | | | Official Tournament Singles Draws 1995 to 2008 available at http://www.atptennis.com | | 106, 403, 802, 901 |
| 40 | | | ATP Board Minutes (Cincinnati) with exhibit | 8/6/1990 | 106, 403, 802, 901 |
| 41 | | | ATP Board Minutes (Cincinnati) | 8/7/1990 | 106, 403, 802, 901 |
| 42 | | | ATP Board Minutes (Key Biscayne) | 3/16/1991 | 106, 403, 802, 901 |
| 43 | | | ATP Board Minutes (Frankfurt) with exhibit | 11/15/1991 | 106, 403, 802, 901 |
| 44 | | | ATP Board Minutes (Frankfurt) with exhibit | 11/16/1991 | 106, 403, 802, 901 |
| 45 | | | ATP Board Minutes (Frankfurt) with exhibit | 11/17/1991 | 106, 403, 802, 901 |
| 46 | | | ATP Board Minutes (Miami) | 3/14/1992 | 106, 403, 802, 901 |
| 47 | | | ATP Board Minutes (Frankfurt) with exhibits | 11/20/1992 | 106, 403, 802, 901 |
| 48 | | | ATP Board Minutes (New York) with exhibits | 9/1/1995 | 106, 403, 802, 901 |

3

REDACTED VERSION – PUBLICLY FILED

4

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 49 | | | ATP Board Minutes (New York) | 9/2/1995 | 106, 403, 802, 901 |
| 50 | | | ATP Board Minutes (London) with exhibit | 6/23/1996 | 106, 403, 802, 901 |
| 51 | | | ATP Board Minutes (London) with exhibits | 6/24/1996 | 106, 403, 802, 901 |
| 52 | | | ATP Unanimous Written Consent in Lieu of Meeting of the Board of Directors | 8/26/1996 | 106, 403, 802, 901 |
| 53 | | | ATP Board Minutes (New York) with exhibits | 8/27/1996 | 106, 403, 802, 901 |
| 54 | | | ATP Board Minutes (New York) | 8/28/1996 | 106, 403, 802, 901 |
| 55 | | | ATP Board Minutes (via Conference Call) | 9/25/1996 | 106, 403, 802, 901 |
| 56 | | | ATP Board Minutes (Via Conference Call) | 9/26/1996 | 106, 403, 802, 901 |
| 57 | ATP0267230 | ATP0267231 | ATP Board Minutes (Via Telephone Conference Call) | 5/19/1997 | 106, 403, 802, 901 |
| 58 | ATP0267219 | ATP0267223 | ATP Board Minutes (Key Biscayne) | 3/21/1997 | 106, 403, 802, 901 |
| 59 | ATP0267224 | ATP0267226 | ATP Board Minutes (Key Biscayne) | 3/22/1997 | 106, 403, 802, 901 |
| 60 | ATP0084224 | ATP0084225 | ATP Board Minutes (London) | 6/23/1997 | 106, 403, 802, 901 |
| 61 | | | ATP Board Minutes (New York) | 8/26/1997 | 106, 403, 802, 901 |
| 62 | | | ATP Board Minutes (New York) | 8/27/1997 | 106, 403, 802, 901 |
| 63 | ATP0618777 | ATP0618782 | ATP Board Minutes (Vienna) | 10/12/1997 | 106, 403, 802, 901 |
| 64 | ATP0084086 | ATP0084087 | ATP Board Meeting Summary (Hannover) | 11/14/1997 | 106, 403, 802, 901, 1002 |
| 65 | ATP0265225 | ATP0265234 | ATP Board Minutes (Hannover) | 11/14/1997 | 106, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

5

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 66 | ATP0265223 | ATP0265224 | ATP Board Minutes (Via Telephone Conference Call) | 12/7/1997 | 106, 403, 802, 901 |
| 67 | ATP0265219 | ATP0265222 | ATP Board Minutes (Melbourne) | 1/19/1998 | 106, 403, 802, 901 |
| 68 | ATP0265489 | ATP0265490 | ATP Board Meeting Summary (Indian Wells) | 3/13/1998 | 106, 403, 802, 901 |
| 69 | ATP0265495 | ATP0265499 | ATP Board Minutes (Indian Wells) | 3/13/1998 | 106, 403, 802, 901, 1002 |
| 70 | ATP0083931 | ATP0083933 | ATP Board Minutes (Paris) | 5/29/1998 | 106, 403, 802, 901 |
| 71 | ATP0265838 | ATP0265841 | ATP Board Minutes (London) | 6/21/1998 | 106, 403, 802, 901 |
| 72 | ATP0265844 | ATP0265846 | ATP Board Minutes (London) | 6/22/1998 | 106, 403, 802, 901 |
| 73 | ATP0618743 | ATP0618745 | ATP Board Minutes (Via Telephone Conference Call) | 9/22/1998 | |
| 74 | ATP0618764 | ATP0618767 | ATP Board Minutes (Paris) | 11/2/1998 | |
| 75 | ATP0618762 | ATP0618763 | ATP Board Minutes (Paris) | 11/3/1998 | |
| 76 | | | ATP Board Minutes (Hannover) with exhibit | 11/27/1998 | 106, 403, 802, 901 |
| 77 | ATP0074517 | ATP0074521 | ATP Board Minutes (Hannover) | 11/27/1998 | 106, 403, 802, 901 |
| 78 | ATP0074496 | ATP0074498 | ATP Board Minutes (Melbourne) | 1/23/1999 | 106, 403, 802, 901 |
| 79 | ATP0074500 | ATP0074500 | ATP Board Minutes (Melbourne) | 1/24/1999 | 106, 403, 802, 901 |
| 80 | ATP0364946 | ATP0364949 | ATP Board Minutes (Key Biscayne) | 3/19/1999 | 106, 403, 802, 901 |
| 81 | ATP0364950 | ATP0364953 | ATP Board Minutes (Key Biscayne) | 3/20/1999 | 106, 403, 802, 901 |
| 82 | | | ATP Board Minutes (London) | 6/20/1999 | 106, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 83 | ATP0380246 | ATP0380247 | ATP Board Meeting Summary (London) | 6/20/1999 | 106, 403, 901 |
| 84 | ATP0266609 | ATP0266614 | ATP Board Minutes (New York) | 8/31/1999 | 106, 403, 901 |
| 85 | ATP0266615 | ATP0266618 | ATP Board Minutes (New York) | 9/1/1999 | 106, 403, 901 |
| 86 | ATP0266619 | ATP0266619 | ATP Board Minutes (New York) | 9/2/1999 | 106, 403, 901 |
| 87 | ATP0266620 | ATP0266621 | ATP Board Minutes (Via Telephone Conference Call) | 9/23/1999 | 106, 403, 901 |
| 88 | ATP0266622 | ATP0266623 | ATP Board Minutes (Via Telephone Conference Call) | 11/5/1999 | 106, 403, 901 |
| 89 | ATP0369299 | ATP0369305 | ATP Board Minutes (Hannover) | 11/24/1999 | 106, 403, 901 |
| 90 | ATP0369321 | ATP0369324 | ATP Board Minutes (Hannover) | 11/25/1999 | 106, 403, 901 |
| 91 | ATP0618740 | ATP0618741 | ATP Board Minutes (Via Telephone Conference Call) | 12/7/1999 | 106, 403, 901 |
| 92 | ATP0266988 | ATP0266991 | ATP Board Minutes (Indian Wells) | 3/12/2000 | 106, 403, 901 |
| 93 | ATP0266992 | ATP0266995 | ATP Board Minutes (Indian Wells) | 3/13/2000 | 106, 403, 901 |
| 94 | ATP0266996 | ATP0266997 | ATP Board Minutes (Via Telephone Conference Call) | 6/1/2000 | 106, 403, 901 |
| 95 | ATP0266998 | ATP0266998 | ATP Board Minutes (Via Telephone Conference Call) | 6/1/2000 | 106, 403, 901 |
| 96 | ATP0369074 | ATP0369074 | ATP Board Minutes (Via Telephone Conference Call) | 6/19/2000 | 106, 403, 901 |
| 97 | ATP0369075 | ATP0369076 | ATP Board Minutes (Via Telephone Conference Call) | 6/21/2000 | 106, 403, 901 |
| 98 | ATP0258148 | ATP0258153 | ATP Board Minutes (London) | 6/25/2000 | 106, 403, 901 |

REDACTED VERSION – PUBLICLY FILED

7

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 99 | ATP0258154 | ATP0258155 | ATP Board Minutes (London) | 6/28/2000 | 106, 403, 802, 901 |
| 100 | ATP0115887 | ATP0115903 | ATP Board Minutes (New York) | 8/29/2000 | 106, 403, 802, 901 |
| 101 | ATP0115904 | ATP0115906 | ATP Board Minutes (New York) | 8/30/2000 | 106, 403, 802, 901 |
| 102 | ATP0115908 | ATP0115909 | ATP Board Minutes (Via Telephone Conference Call) | 10/10/2000 | 106, 403, 802, 901 |
| 103 | ATP0115923 | ATP0115927 | ATP Board Minutes (Lisbon) | 11/30/2000 | 106, 403, 802, 901 |
| 104 | ATP0258760 | ATP0258761 | ATP Board Minutes (Lisbon) | 12/1/2000 | 106, 403, 802, 901 |
| 105 | ATP0115928 | ATP0115928 | ATP Board Minutes (Melbourne) | 1/16/2001 | 106, 403, 802, 901 |
| 106 | ATP0060711 | ATP0060713 | ATP Board Minutes (Miami) | 3/26/2001 | |
| 107 | ATP0060714 | ATP0060715 | ATP Board Minutes (Miami) | 3/30/2001 | 106, 403, 802, 901 |
| 108 | ATP0060716 | ATP0060717 | ATP Board Minutes (Paris) | 5/5/2001 | 106, 403, 802, 901 |
| 109 | ATP0262733 | ATP0262733 | ATP Board Minutes (London) | 6/19/2001 | 106, 403, 802, 901 |
| 110 | ATP0262734 | ATP0262734 | ATP Board Minutes (London) | 6/20/2001 | 106, 403, 802, 901 |
| 111 | ATP0262735 | ATP0262735 | ATP Board Minutes (London) | 6/21/2001 | 106, 403, 802, 901 |
| 112 | ATP0262736 | ATP0262738 | ATP Board Minutes (London) | 6/24/2001 | 106, 403, 802, 901 |
| 113 | ATP0262740 | ATP0262741 | ATP Board Minutes (Via Telephone Conference Call) | 7/26/2001 | 106, 403, 802, 901 |
| 114 | ATP0061972 | ATP0061975 | ATP Board Minutes (New York) | 8/28/2001 | |
| 115 | ATP0061976 | ATP0061977 | ATP Board Minutes (New York) | 8/29/2001 | 106, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

8

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 116 | ATP0061978 | ATP0061979 | ATP Board Minutes (Via Telephone Conference Call) | 9/20/2002 | 106, 403, 802, 901 |
| 117 | ATP0368536 | ATP0368544 | ATP Board Minutes (Sydney) | 11/14/2001 | 106, 403, 802, 901 |
| 118 | ATP0368563 | ATP0368565 | ATP Board Minutes (Sydney) | 11/15/2001 | 106, 403, 802, 901 |
| 119 | ATP0368570 | ATP0368571 | ATP Board Minutes (Via Telephone Conference Call) | | 106, 403, 802, 901 |
| 120 | ATP0368572 | ATP0368573 | ATP Board Minutes (Via Telephone Conference Call) | 12/12/2001 | 106, 403, 802, 901 |
| 121 | ATP0368575 | ATP0368576 | ATP Board Minutes (Via Telephone Conference Call) | 12/20/2001 | 106, 403, 802, 901 |
| 122 | ATP0075722 | ATP0075726 | ATP Board Minutes (Indian Wells) | 1/9/2002 | 106, 403, 802, 901 |
| 123 | ATP0075742 | ATP0075743 | ATP Board Minutes (Indian Wells) | 3/10/2002 | 106, 403, 802, 901 |
| 124 | ATP0075744 | ATP0075745 | ATP Board Minutes (Via Telephone Conference Call) | 3/11/2002 | 106, 403, 802, 901 |
| 125 | ATP0075746 | ATP0075747 | ATP Board Minutes (London) | 4/15/2002 | 106, 403, 802, 901 |
| 126 | ATP0075748 | ATP0075749 | ATP Board Minutes (London) | 5/6/2002 | 106, 403, 802, 901 |
| 127 | ATP0075750 | ATP0075751 | ATP Board Minutes (Paris) | 5/7/2002 | 106, 403, 802, 901 |
| 128 | ATP0075752 | ATP0075752 | ATP Board Minutes (Paris) | 6/3/2002 | 106, 403, 802, 901 |
| 129 | ATP0075753 | ATP0075754 | ATP Board Minutes (Paris) | 6/4/2002 | 106, 403, 802, 901 |
| 130 | ATP0254635 | ATP0254638 | ATP Board Minutes (Paris) | 6/5/2002 | 106, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 131 | ATP0075755 | ATP0075759 | ATP Board Minutes (London) | 6/23/2002 | 106, 403, 802, 901 |
| 132 | ATP0075760 | ATP0075762 | ATP Board Minutes (Via Telephone Conference Call) | 7/12/2002 | 106, 403, 802, 901 |
| 133 | ATP0075763 | ATP0075766 | ATP Board Minutes (New York) | 8/31/2002 | 106, 403, 802, 901 |
| 134 | ATP0075767 | ATP0075768 | ATP Board Minutes (New York) | 9/3/2002 | 106, 403, 802, 901 |
| 135 | ATP0075769 | ATP0075770 | ATP Board Minutes (Moscow) | 10/4/2002 | 106, 403, 802, 901 |
| 136 | ATP0075771 | ATP0075774 | ATP Board Minutes (Moscow) | 10/5/2002 | 106, 403, 802, 901 |
| 137 | ATP0075775 | ATP0075779 | ATP Board Minutes (Shanghai) | 11/14/2002 | 106, 403, 802, 901 |
| 138 | ATP0075796 | ATP0075797 | ATP Board Minutes (Shanghai) | 11/15/2002 | 106, 403, 802, 901 |
| 139 | ATP0075835 | ATP0075836 | ATP Board Minutes (Melbourne) | 1/14/2003 | 106, 403, 802, 901 |
| 140 | ATP0075799 | ATP0075799 | ATP Board Meeting Summary (Via Telephone Conference Call) | 2/28/2003 | 106, 403, 802, 901 |
| 141 | ATP0075846 | ATP0075847 | ATP Board Minutes (Via Telephone Conference Call) | 2/28/2003 | 106, 403, 802, 901 |
| 142 | ATP0075850 | ATP0075852 | ATP Board Minutes (Miami) | 3/20/2003 | 106, 403, 802, 901 |
| 143 | ATP0075853 | ATP0075855 | ATP Board Minutes (Miami) | 3/21/2003 | 106, 403, 802, 901 |
| 144 | ATP0075856 | ATP0075856 | ATP Board Minutes (Miami) | 3/23/2003 | 106, 403, 802, 901 |
| 145 | ATP0075858 | ATP0075859 | ATP Board Minutes (Paris) | 5/22/2003 | 106, 403, 802, 901 |
| 146 | ATP0075860 | ATP0075860 | ATP Board Minutes (Paris) | 5/23/2003 | 106, 403, 802, 901 |
| 147 | ATP0075802 | ATP0075803 | ATP Board Meeting Summary (Paris) | 6/2/2003 | 106, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

10

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 148 | ATP0075861 | ATP0075864 | ATP Board Minutes (Paris) | 6/2/2003 | 106, 403, 802, 901 |
| 149 | ATP0075876 | ATP0075879 | ATP Board Minutes (London) | 8/22/2003 | 106, 403, 802, 901 |
| 150 | ATP0075880 | ATP0075881 | ATP Board Minutes (London) | 6/23/2003 | 106, 403, 802, 901 |
| 151 | ATP0075899 | ATP0075902 | ATP Board Minutes (New York) | 8/28/2003 | 106, 403, 802, 901 |
| 152 | ATP0075903 | ATP0075904 | ATP Board Minutes (New York) | 8/29/2003 | 106, 403, 802, 901 |
| 153 | ATP0075905 | ATP0075908 | ATP Board Minutes (Houston) | 11/13/2003 | 106, 403, 802, 901 |
| 154 | ATP0075811 | ATP0075915 | ATP Board Minutes (Houston) | 11/14/2003 | 106, 403, 802, 901 |
| 155 | ATP0075852 | ATP0075854 | ATP Board Minutes (Via Telephone Conference Call) | 12/5/2003 | 106, 403, 802, 901 |
| 156 | ATP0075957 | ATP0075959 | ATP Board Minutes (Via Telephone Conference Call) | 12/10/2003 | 106, 403, 802, 901 |
| 157 | ATP0075960 | ATP0075961 | ATP Board Minutes (Via Telephone Conference Call) | 12/16/2003 | 106, 403, 802, 901 |
| 158 | ATP0075963 | ATP0075964 | ATP Board Meeting Summary (Via Telephone Conference Call) | 2/17/2004 | 106, 403, 802, 901 |
| 159 | ATP0075986 | ATP0075988 | ATP Board Minutes (Via Telephone Conference Call) | 2/17/2004 | 106, 403, 802, 901 |
| 160 | ATP0075989 | ATP0075990 | ATP Board Minutes (Miami) | 3/27/2004 | 106, 403, 802, 901 |
| 161 | ATP0075991 | ATP0075994 | ATP Board Minutes (Miami) | 3/28/2004 | 106, 403, 802, 901 |
| 162 | ATP0075996 | ATP0075999 | ATP Board Minutes (Miami) | 3/28/2004 | 106, 403, 802, 901 |
| 163 | ATP0076000 | ATP0076001 | ATP Board Minutes (Via Telephone Conference Call) | 4/18/2004 | 106, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

11

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 164 | ATP0076007 | ATP0076007 | ATP Board Minutes (Via Telephone Conference Call) | 4/27/2004 | 106, 403, 802, 901 |
| 165 | ATP0076009 | ATP0076010 | ATP Board Minutes (Via Telephone Conference Call) | 6/14/2004 | 106, 403, 802, 901 |
| 166 | ATP0076012 | ATP0076014 | ATP Board Minutes (London) | 6/20/2004 | 106, 403, 802, 901 |
| 167 | ATP0076015 | ATP0076017 | ATP Board Minutes (London) | 6/21/2004 | 106, 403, 802, 901 |
| 168 | ATP0076018 | ATP0076020 | ATP Board Minutes (London) | 6/22/2004 | 106, 403, 802, 901 |
| 169 | ATP0076021 | ATP0076023 | ATP Board Minutes (New York) | 8/31/2004 | 106, 403, 802, 901 |
| 170 | ATP0075972 | ATP0075973 | ATP Board Meeting Summary (New York) | 9/1/2004 | 106, 403, 802, 901 |
| 171 | ATP0076024 | ATP0076027 | ATP Board Minutes (New York) | 9/1/2004 | 106, 403, 802, 901 |
| 172 | ATP0076037 | ATP0076041 | ATP Board Minutes (Houston) | 11/18/2004 | 106, 403, 802, 901 |
| 173 | ATP0076074 | ATP0076077 | ATP Board Minutes (Houston) | 11/19/2004 | 106, 403, 802, 901 |
| 174 | ATP0076100 | ATP0076101 | ATP Board Minutes (Houston) | 11/20/2004 | 106, 403, 802, 901 |
| 175 | ATP0076149 | ATP0076150 | ATP Board Minutes (Melbourne) | 1/18/2005 | 106, 403, 802, 901 |
| 176 | ATP0076151 | ATP0076152 | ATP Board Minutes (Melbourne) | 1/19/2005 | 106, 403, 802, 901 |
| 177 | ATP0076153 | ATP0076154 | ATP Board Minutes (Melbourne) | 1/20/2005 | 106, 403, 802, 901 |
| 178 | ATP0076155 | ATP0076156 | ATP Board Minutes (Via Telephone Conference Call) | 2/9/2005 | 106, 403, 802, 901 |
| 179 | ATP0076157 | ATP0076158 | ATP Board Minutes (Via Telephone Conference Call) | 2/12/2005 | 106, 403, 802, 901 |
| 180 | ATP0076159 | ATP0076160 | ATP Board Minutes (Indian Wells) | 3/15/2005 | 106, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

12

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|-------|-------------|-------------|-------------|------|------------|
| 181 | ATP0076161 | ATP0076182 | ATP Board Minutes (Indian Wells) | 3/18/2005 | 106, 403, 802, 901 |
| 182 | ATP0076171 | ATP0076172 | ATP Board Minutes (Monte-Carlo) | 4/11/2005 | 106, 403, 802, 901 |
| 183 | ATP0076173 | ATP0076175 | ATP Board Minutes (Monte-Carlo) | 4/12/2005 | 106, 403, 802, 901 |
| 184 | ATP0076176 | ATP0076177 | ATP Board Minutes (Monte-Carlo) | 4/13/2005 | 106, 403, 802, 901 |
| 185 | ATP0076181 | ATP0076182 | ATP Board Minutes (Via Telephone Conference Call) | 4/30/2005 | 106, 403, 802, 901 |
| 186 | ATP0094190 | ATP0094239 | Board Orientation | 6/1/2005 | 106, 403, 802, 901 |
| 187 | ATP0076183 | ATP0076195 | ATP Board Minutes (London) | 6/20/2005 | 106, 403, 802, 901 |
| 188 | ATP0076196 | ATP0076197 | ATP Board Minutes (London) | 6/21/2005 | 106, 403, 802, 901 |
| 189 | ATP0076198 | ATP0076200 | ATP Board Minutes (London) | 6/22/2005 | 106, 403, 802, 901 |
| 190 | ATP0076220 | ATP0076223 | ATP Board Minutes (New York) | 8/29/2005 | 106, 403, 802, 901 |
| 191 | ATP0076226 | ATP0076229 | ATP Board Minutes (New York) and Attached 2007 Draft Calendar | 8/30/2005 | 106, 403, 802, 901 |
| 192 | ATP0076230 | ATP0076236 | ATP Board Minutes (Shanghai) | 11/14/2005 | 106, 403, 802, 901 |
| 193 | ATP0076237 | ATP0076240 | ATP Board Minutes (Shanghai) and Attached 2007 Draft Calendar | 11/15/2005 | 106, 403, 802, 901 |
| 194 | ATP0076241 | ATP0076242 | ATP Board Minutes (Shanghai) | 11/16/2005 | 106, 403, 802, 901 |
| 195 | ATP0076288 | ATP0076291 | ATP Board Minutes (Melbourne) | 1/17/2006 | 106, 403, 802, 901 |
| 196 | ATP0076299 | ATP0076300 | ATP Board Minutes (Melbourne) | 1/18/2006 | 106, 403, 802, 901 |
| 197 | ATP0076844 | ATP0076844 | ATP Board Minutes (Melbourne) | 1/19/2006 | 106, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

13

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 198 | ATP0255403 | ATP0255405 | ATP Board Minutes (Via Telephone Conference Call) | 3/8/2006 | |
| 199 | ATP0076312 | ATP0076315 | ATP Board Minutes (Miami) | 3/23/2006 | 106, 403, 802, 901 |
| 200 | ATP0076316 | ATP0076320 | ATP Board Minutes (Miami) | 3/24/2006 | |
| 201 | ATP0076424 | ATP0076424 | ATP Board Minutes (London) | 6/25/2006 | 106, 403, 802, 901 |
| 202 | ATP0255398 | ATP0255400 | ATP Board Meeting Agenda (London) and Attachment | 6/25/2006 | 106, 403, 802, 901, 1002 |
| 203 | ATP0366243 | ATP0366246 | ATP Board Minutes (London) | 6/27/2006 | |
| 204 | ATP0076429 | ATP0076431 | ATP Board Minutes (London) | 6/28/2006 | 106, 403, 802, 901 |
| 205 | | | ATP Board Minutes (New York) | 8/26/2006 | |
| 206 | ATP0076435 | ATP0076439 | ATP Board Minutes (New York) | 8/29/2006 | 106, 403, 802, 901 |
| 207 | ATP0076445 | ATP0076446 | ATP Board Minutes (New York) | 8/30/2006 | 106, 403, 802, 901 |
| 208 | ATP0076449 | ATP0076450 | ATP Board Minutes (Shanghai) | 10/22/2006 | 106, 403, 802, 901 |
| 209 | ATP0076454 | ATP0076455 | ATP Board Minutes (Shanghai) | 11/12/2006 | |
| 210 | | | WITHDRAWN | | |
| 211 | ATP0076456 | ATP0076460 | ATP Board Minutes (Shanghai) | 11/14/2006 | |
| 212 | ATP0076494 | ATP0076497 | ATP Board Minutes (Shanghai) | 11/15/2006 | 106, 403, 802, 901 |
| 213 | ATP0540048 | ATP0540118 | Melbourne ATP Board Meeting 2008 Format (London) | 1/9/2007 | 106, 403, 802, 901 |
| 214 | | | ATP Board Minutes (Melbourne) | 1/16/2007 | 106, 403, 802, 901 |
| 215 | | | ATP Board Minutes (Melbourne) | 1/17/2007 | 106, 403, 802, 901 |
| 216 | ATP0540697 | ATP0540720 | ATP Board Minutes (Melbourne) | 1/18/2007 | 106, 403, 802, 901 |
| 217 | ATP0008615 | ATP0008633 | ATP Board Meeting - ATP Update (London) | 2/1/2007 | 106, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

14

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 218 | ATP0540721 | ATP0540723 | ATP Board Minutes (Miami) | 3/21/2007 | 106, 403, 802, 901 |
| 219 | ATP0540724 | ATP0540726 | ATP Board Minutes (Miami) | 3/22/2007 | 106, 403, 802, 901 |
| 220 | ATP0540729 | ATP0540730 | ATP Board Minutes (Miami) | 3/23/2007 | 106, 403, 802, 901 |
| 221 | ATP0540731 | ATP0540732 | ATP Board Minutes (Miami) | 3/24/2007 | 106, 403, 802, 901 |
| 222 | ATP0540735 | ATP0540736 | ATP Board Minutes (Las Vegas) | 4/25/2007 | 106, 403, 802, 901 |
| 223 | ATP0540737 | ATP0540738 | ATP Board Minutes (Las Vegas) | 4/26/2007 | 106, 403, 802, 901 |
| 224 | ATP0548839 | ATP0548841 | ATP Board Minutes (London) | 6/25/2007 | 106, 403, 802, 901 |
| 225 | ATP0548847 | ATP0548848 | ATP Board Minutes (London) | 6/26/2007 | 106, 403, 802, 901 |
| 226 | ATP0548852 | ATP0548853 | ATP Board Minutes (London) | 6/27/2007 | 106, 403, 802, 901 |
| 227 | ATP0548854 | ATP0548855 | ATP Board Minutes (Via Telephone Conference Call) | 7/16/2007 | 106, 403, 802, 901 |
| 228 | ATP0548858 | ATP0548859 | ATP Board Minutes (Via Telephone Conference Call) | 8/14/2007 | 106, 403, 802, 901 |
| 229 | ATP0548994 | ATP0548998 | ATP Board Minutes (New York) | 8/28/2007 | 106, 403, 802, 901 |
| 230 | ATP0549009 | ATP0549010 | ATP Board Minutes (New York) | 8/29/2007 | 106, 403, 802, 901 |
| 231 | ATP0549011 | ATP0549011 | ATP Board Minutes (New York) | 8/30/2007 | 106, 403, 802, 901 |
| 232 | ATP0549012 | ATP0549013 | ATP Board Minutes (Via Telephone Conference Call) | 9/20/2007 | 106, 403, 802, 901 |
| 233 | ATP0549014 | ATP0549015 | ATP Board Minutes (Via Telephone Conference Call) | 10/2/2007 | 106, 403, 802, 901 |
| 234 | ATP0618045 | ATP0618046 | ATP Board Minutes (Shanghai) | 11/12/2007 | 106, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

15

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 235 | ATP0618047 | ATP0618055 | ATP Board Minutes (Shanghai) | 11/13/2007 | |
| 236 | ATP0618056 | ATP0618060 | ATP Board Minutes (Shanghai) | 11/14/2007 | |
| 237 | ATP0618064 | ATP0618066 | ATP Board Minutes (Via Telephone Conference Call) | 1/17/2008 | 106, 403, 802, 901 |
| 238 | ATP0075835 | ATP0075836 | ATP Board Minutes (Melbourne) | 1/14/2003 | 106, 403, 802, 901 |
| 239 | ATP0075798 | ATP0075798 | ATP Board Meeting Summary (Melbourne) | 1/12/2003 | 106, 403, 802, 901, 1002 |
| 240 | ATP0076102 | ATP0076112 | ATP Board Meeting Summary (Melbourne) | 1/16/2007 | 106, 403, 802, 901, 1002 |
| 241 | ATP0076248 | ATP0076249 | ATP Board Meeting Summary (Melbourne) | 1/17/2006 | 106, 403, 802, 901, 1002 |
| 242 | ATP0076117 | ATP0076118 | ATP Board Meeting Summary (Melbourne) | 1/18/2005 | 106, 403, 802, 901, 1002 |
| 243 | ATP0075710 | ATP0075712 | ATP Board Meeting Summary (Moscow) | 10/4/2002 | 106, 403, 802, 901, 1002 |
| 244 | ATP0076269 | ATP0076271 | ATP Board Meeting Summary (Shanghai) | 11/12/2006 | 106, 403, 802, 901, 1002 |
| 245 | ATP0075810 | ATP0075812 | ATP Board Meeting Summary (Houston) | 11/13/2003 | 106, 403, 802, 901, 1002 |
| 246 | ATP0591911 | ATP0591912 | Summary of Meeting of the ATP Board of Directors (Shanghai) | 11/13/2007 | 106, 403, 802, 901, 1002 |
| 247 | ATP0075713 | ATP0075714 | ATP Board Meeting Summary (Shanghai) | 11/14/2002 | 106, 403, 802, 901, 1002 |
| 248 | ATP0076134 | ATP0076135 | ATP Board Meeting Summary (Shanghai) | 11/14/2005 | 106, 403, 802, 901, 1002 |
| 249 | ATP0075976 | ATP0075978 | ATP Board Meeting Summary (Houston) | 11/18/2004 | 106, 403, 802, 901, 1002 |
| 250 | ATP0075831 | ATP0075832 | ATP Board Meeting Summary (Via Telephone Conference Call) | 12/5/2003 | 106, 403, 802, 901, 1002 |
| 251 | ATP0075699 | ATP0075700 | ATP Board Meeting Summary (Indian Wells) | 3/10/2002 | 106, 403, 802, 901, 1002 |
| 252 | ATP0618748 | ATP0618752 | ATP Board Meeting Summary (Indian Wells) | 3/14/2008 | |

15 of 96

REDACTED VERSION – PUBLICLY FILED

16

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 253 | ATP0076119 | ATP0076119 | ATP Board Meeting Summary (Indian Wells) | 3/15/2005 | 106, 403, 802, 901, 1002 |
| 254 | ATP0075800 | ATP0075801 | ATP Board Meeting Summary (Miami) | 3/20/2003 | 106, 403, 802, 901, 1002 |
| 255 | ATP0084002 | ATP0084003 | ATP Board Meeting Summary (Key Biscayne) | 3/21/1997 | 106, 403, 802, 901, 1002 |
| 256 | ATP0076114 | ATP0076115 | ATP Board Meeting Summary (Miami) | 3/21/2007 | 106, 403, 802, 901, 1002 |
| 257 | ATP0076114 | ATP0076115 | ATP Board Meeting Summary (Miami) | 3/21/2007 | 106, 403, 802, 901, 1002 |
| 258 | ATP0076114 | ATP0076115 | Summary of Meeting of the ATP Board of Directors (Florida) | 3/21/2007 | 106, 403, 802, 901, 1002 |
| 259 | ATP0076250 | ATP0076252 | ATP Board Meeting Summary (Miami) | 3/23/2006 | 106, 403, 802, 901, 1002 |
| 260 | ATP0075965 | ATP0075966 | ATP Board Meeting Summary (Miami) | 3/27/2004 | 106, 403, 802, 901, 1002 |
| 261 | ATP0076120 | ATP0076121 | ATP Board Meeting Summary (Monte-Carlo) | 4/11/2005 | 106, 403, 802, 901, 1002 |
| 262 | ATP0075701 | ATP0075703 | ATP Board Minutes (London) | 5/6/2002 | 106, 403, 802, 901 |
| 263 | ATP0075968 | ATP0075970 | ATP Board Meeting Summary (London) | 6/20/2004 | 106, 403, 802, 901, 1002 |
| 264 | ATP0076122 | ATP0076123 | ATP Board Meeting Summary (London) | 6/20/2005 | 106, 403, 802, 901, 1002 |
| 265 | ATP0083913 | ATP0083914 | ATP Board Meeting Summary (London) | 6/21/1998 | 106, 403, 802, 901, 1002 |
| 286 | ATP0084174 | ATP0084174 | ATP Board Meeting Summary (London) | 6/22/1997 | 106, 403, 802, 901, 1002 |
| 287 | ATP0075807 | ATP0075807 | ATP Board Meeting Summary (London) | 6/22/2003 | 106, 403, 802, 901, 1002 |
| 288 | ATP0075706 | ATP0075707 | ATP Board Meeting Summary (London) | 6/23/2002 | 106, 403, 802, 901, 1002 |

16 of 96

REDACTED VERSION – PUBLICLY FILED

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 269 | ATP0076253 | ATP0076256 | ATP Board Meeting Summary (London) | 6/25/2005 | 106, 403, 802, 901, 1002 |
| 270 | ATP0540753 | ATP0540754 | Summary of Meeting of the ATP Board of Directors (London) | 6/25/2007 | |
| 271 | ATP0075704 | ATP0075705 | ATP Board Meeting Summary (Paris) | 6/3/2002 | 106, 403, 802, 901, 1002 |
| 272 | ATP0084117 | ATP0084118 | ATP Board Meeting Summary (New York) | 8/26/1997 | 106, 403, 802, 901, 1002 |
| 273 | ATP0076257 | ATP0076260 | ATP Board Meeting Summary (New York) | 8/26/2006 | 106, 403, 802, 901, 1002 |
| 274 | ATP0075808 | ATP0075809 | ATP Board Meeting Summary (New York) | 8/28/2003 | 106, 403, 802, 901, 1002 |
| 275 | ATP0540739 | ATP0540752 | Summary of Meeting of the ATP Board of Directors (New York) | 8/28/2007 | 106, 403, 802, 901, 1002 |
| 276 | ATP0076127 | ATP0076129 | ATP Board Meeting Summary (New York) | 8/29/2005 | 106, 403, 802, 901, 1002 |
| 277 | ATP0075708 | ATP0075709 | ATP Board Meeting Summary (New York) | 8/31/2002 | 106, 403, 901, 1002 |
| 278 | ATP0265799 | ATP0265801 | ATP Board Meeting Summary (New York) | 9/1/1998 | 106, 403, 802, 901, 1002 |
| 279 | ATP0076105 | ATP0076108 | Appendix to ATP Board Meeting Summary (Melbourne) - 2008 Prize Money Proposal | | 106, 403, 802, 901 |
| 280 | ATP0076109 | ATP0076112 | Appendix to ATP Board Meeting Summary (Melbourne) - 2009 Format - Masters 1,000 Events | | 106, 403, 802, 901 |
| 281 | ATP0618062 | ATP0618062 | Appendix to ATP Board Minutes (Shanghai) Approved 2009 Calendar | | 106, 403, 802, 901 |
| 282 | ATP0255682 | ATP0255685 | Tournament Council Meeting Minutes - (Hannover) | 11/21/1996 | 106, 403, 802, 901 |
| 283 | ATP0255536 | ATP0255539 | Tournament Council Meeting Minutes - (Key Biscayne) | 3/20/1997 | 106, 403, 802, 901 |
| 284 | ATP0255609 | ATP0255614 | Tournament Council Meeting Minutes - (London) | 6/22/1997 | 106, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

18

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 285 | ATP0084110 | ATP0084113 | Tournament Council Meeting Minutes - (New York) | 8/26/1997 | 106, 403, 802, 901 |
| 286 | ATP0285709 | ATP0285735 | Tournament Council Meeting Minutes - (Vienna) | 10/11/1997 | 106, 403, 802, 901 |
| 287 | ATP0364652 | ATP0364655 | Tournament Council Meeting Minutes - (Vienna) | 10/11/1997 | 106, 403, 802, 901 |
| 288 | ATP0364656 | ATP0364660 | Tournament Council Meeting - 2000 Format Change Summary | 10/19/1997 | 106, 403, 802, 901, 1002 |
| 289 | ATP0255623 | ATP0255636 | Tournament Council Meeting Minutes - (Hannover) | 11/13/1997 | 106, 403, 802, 901 |
| 290 | ATP0285484 | ATP0285488 | Tournament Council Meeting Minutes - (Indian Wells) | 3/13/1998 | 106, 403, 802, 901 |
| 291 | ATP0266067 | ATP0266071 | Tournament Council Meeting Minutes - (New York) | 9/1/1998 | 106, 403, 802, 901 |
| 292 | ATP0266244 | ATP0266245 | Tournament Council Meeting Minutes - (Hannover) | 11/26/1998 | 106, 403, 802, 901 |
| 293 | ATP0266137 | ATP0266139 | Tournament Council Meeting Minutes - (Key Biscayne) | 3/19/1999 | 106, 403, 802, 901 |
| 294 | ATP0369508 | ATP0369512 | Tournament Council Meeting Minutes - (New York) | 8/31/1999 | 106, 403, 802, 901 |
| 295 | ATP0369412 | ATP0369414 | Tournament Council Meeting Minutes - (Hannover) | 11/23/1999 | 106, 403, 802, 901 |
| 296 | ATP0266975 | ATP0266980 | Tournament Council Meeting Minutes - (Indian Wells) | 3/11/2000 | 106, 403, 802, 901 |
| 297 | ATP0479236 | ATP0479246 | Tournament Council Meeting Minutes - (London) | 6/25/2000 | 106, 403, 802, 901 |
| 298 | ATP0060774 | ATP0060776 | Tournament Council Meeting Minutes - (London) | 6/24/2001 | 106, 403, 802, 901 |
| 299 | ATP0260135 | ATP0260137 | Tournament Council Meeting Minutes - (New York) | 8/27/2003 | 106, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

19

### EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 300 | ATP0261882 | ATP0261893 | Tournament Council Meeting Minutes - (New York) with attached 28-Draw for selected medium-sized Tour events following Grand Slams or Davis Cup | 8/27/2003 | 106, 403, 802, 901 |
| 301 | ATP0261880 | ATP0261881 | Tournament Council Meeting Minutes - (Houston) | 11/12/2003 | 106, 403, 802, 901 |
| 302 | QFT00000163 | QFT00000164 | Tournament Council Proposal for Player Substitution in Finals | 8/23/2004 | 108 |
| 303 | ATP0269799 | ATP0269801 | Tournament Council Meeting Minutes - (Monte Carlo) (Meridian Beach Plaza) | 4/10/2005 | 106, 403, 802, 901 |
| 304 | ATP0269805 | ATP0269806 | Tournament Council Meeting Minutes - (London) (All England Club-New Committee Room) | 6/18/2005 | 106, 403, 802, 901 |
| 305 | QFT00000070 | QFT00000073 | Tournament Council Meeting Minutes - (Shanghai) | 11/14/2005 | 106 |
| 306 | ATP0445851 | ATP0445851 | Player Council Meeting Minutes - (London) | 6/24/2005 | 106, 403, 802, 901 |
| 307 | ATP0609383 | ATP0609386 | ATP Tournament Council Minutes (London) | 6/24/2007 | |
| 308 | ATP0010646 | ATP0010650 | "Chairman's Report to ATP Player and Tournament Members" | 1/19/2006 | 106, 403, 802, 901, 1002 |
| 309 | ATP0275870 | ATP0275872 | Email - de Villiers to Board (including response by Pearce) | 2/24/2006 | |
| 310 | ATP0053135 | ATP0053139 | "Chairman's Report to ATP Player and Tournament Members" (Miami) | 3/29/2006 | 106, 403, 802, 901 |
| 311 | ATP0010651 | ATP0010655 | "Chairman's Report to ATP Player and Tournament Members" | 4/4/2006 | 106, 403, 802, 901 |
| 312 | ATP0353138 | ATP0353145 | Memorandum - "Response to Sergio Palmieri Questions from May 11th, 2006" | 5/31/2006 | 403, 802, 901 |
| 313 | ATP0270040 | ATP0270041 | Email - de Villiers to Board, Management Committee, Ciz re: you've probably heard things.... | 6/9/2006 | |

19 of 96

REDACTED VERSION – PUBLICLY FILED

20

**EXHIBIT 3(b) TO FINAL PRETRIAL ORDER**

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 314 | ATP0010662 | ATP0010665 | Chairman's Report to ATP Player and Tournament Members (London) | 6/29/2006 | |
| 315 | ATP0350618 | ATP0350641 | Presentation - Chairman's Update, US Open | 8/27/2006 | 802, 901 |
| 316 | ATP0097044 | ATP0097047 | Chairman's Report to ATP Player and Tournament Members" (New York) | 9/5/2006 | 802, 901 |
| 317 | ATP0206564 | ATP0206579 | Tennis Masters Cup - Shanghai 2005-2007 | 10/20/2006 | 802, 901 |
| 318 | ATP0010670 | ATP0010673 | Letter from de Villiers to Tournament Directors | | 802, 901 |
| 319 | ATP0010666 | ATP0010669 | "Chairman's Report to ATP Player and Tournament Members" | 10/24/2006 | 106, 403, 802, 901, 1002 |
| 320 | ATP0010320 | ATP0010344 | Presentation - "Chairman Update ATP Tournament Directors Meeting" (Shanghai) | 11/13/2006 | 106, 403, 802, 901, 1002 |
| 321 | ATP0350566 | ATP0350617 | Presentation - Chairman's Update (Orlando) | 11/30/2006 | 106, 403, 802, 901, 1002 |
| 322 | ATP0010674 | ATP0010676 | Chairman's Report (Melbourne) | 1/19/2007 | 106, 403, 802, 901, 1002 |
| 323 | ATP0083521 | ATP0083525 | Memorandum - de Villiers to Members | 5/2/2007 | 802, 901 |
| 324 | ATP0618783 | ATP0618786 | Chairman's Report to ATP Player and Tournaments Members | 3/14/2008 | |
| 325 | ATP0548458 | ATP0548460 | Chairman's Report to ATP Player and Tournament Members (New York) | 8/28/2007 | 106, 403, 802, 901, 1002 |
| 326 | ATP0615468 | ATP0615470 | Letter - de Villiers to Thomas | | 901, 403 |
| 327 | ATP0590452 | ATP0590454 | Memorandum - Young to ATP Board re Indian Wells 10 Day Proposal | 5/3/2002 | 901 |
| 328 | ATP0282305 | ATP0282322 | Sanction Agreement by and between Desert Champions LLC, and ATP Tour, Inc. | 9/26/2002 | |
| 329 | ATP0347695 | ATP0347696 | Email - de Villiers to Rogers, Pearce re Senior Executive Compensation | 3/1/2006 | |
| 330 | ATP0079207 NR0034256_0 001 | ATP0079209 NR0034259_001 | Email - Pearce to de Villiers - Senior Executive Compensation | 3/2/2006 | |
| 331 | 001 | | Memorandum - Young to ATP Board re Indian Wells | 3/8/2006 | 106 |

20 of 96

REDACTED VERSION – PUBLICLY FILED

21

## EXHIBIT 3(o) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 332 | | | Transfer Agreement re International Management; ATP Tour, Desert Champions; PM Sports Tournament; Indian Wells Tennis | | |
| 333 | ATP0342025 | ATP0342026 | Email from Etienne de Villers re: Executive bonuses and compensation | 3/15/2007 | |
| 334 | ATP0205133 | ATP0205139 | Salary and Incentive Analysis report | 1/1/2007 | |
| 335 | ATP0618327 | ATP0618327 | IW Transfer Fee Receipt | | |
| 336 | ATP0332255 | ATP0332275 | Presentation - "2003 Player Meeting Miles CEO Report" | 2003 | 802, 901 |
| 337 | ATP0258223 | ATP0258226 | Letter - MacGill to Miles - Proposed Restructuring of ATP Tour | 9/29/1997 | 402, 403 |
| 338 | ATP0013148 | ATP0013148 | Letter - MacGill to Miles re Draft of Letter to Tournament Directors and Designated Representatives | 10/15/1997 | 402, 403 |
| 339 | ATP0013149 | ATP0013155 | Letter from MacGill re ATP Changes | 10/16/1997 | 402, 403 |
| 340 | ATP0013157 | ATP0013165 | Fax - Attached Clippings on New Format Changes | 11/20/1997 | 106, 402, 403, 802 |
| 341 | ATP0222450 | ATP0222451 | Memorandum - Pasarell to Super 9 Tournament Directors | 4/9/1999 | 106 |
| 342 | ATP0054900 | ATP0054913 | ATP Tour 2000 - The Future is Now | 5/7/1999 | |
| 343 | ATP0074175 | ATP0074181 | "Mark Miles Presentation, DTB Board of Directors" (Hamburg) | 5/7/1999 | |
| 344 | ATP0170878 | ATP0170881 | "Mark Miles address to General Tournament Director Meeting" (Germany) | 11/23/1999 | |
| 345 | ATP0151233 | ATP0151238 | Email - Agars to Scott, Miles re ITWA Survey | 7/12/2000 | 402, 403 |
| 346 | ATP0254699 | ATP0254700 | Memorandum - Pasarell to Webster, Forbes, Tolleson, Simon, Buchholz, Kain, Barrett | 9/18/2001 | |
| 347 | MILES0682 | MILES0709 | Presentation - Mercedes Benz/ATP Meeting (Las Vegas) | 9/30/2001 | |
| 348 | | | WITHDRAWN | | |

22

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 349 | | | WITHDRAWN | | |
| 350 | ATP0054703 | ATP0054778 | Presentation - "Premium Tennis", An Opportunity to Grow the Pie | 1/23/2003 | 106, 802 |
| 351 | ATP0065428 | ATP0065444 | Presentation - ATP Strategic Planning Process - Update to ATP Staff on Board Decisions and Key Next Steps | 2/2003 | |
| 352 | ATP0065425 | ATP0065427 | Update on issues facing ATP | 2/14/2003 | |
| 353 | ATP0054914 | ATP0054922 | "ATP Tour 2000: The Future is Now", with attachments | | |
| 354 | ATP0010981 | ATP0010991 | Presentation - "ATP Game Plan" | 1/2006 | |
| 355 | ATP0348016 | ATP0348032 | Presentation - "Thoughts of Chairman Brian" | 2006 | |
| 356 | ATP0008754 | ATP0008763 | Presentation - "2008 Calendar Brainstorming" | 1/31/2006 | |
| 357 | ATP0010681 | ATP0010742 | Presentation - Tennis Consumer: A Comprehensive Overview | 3/7/2006 | 106, 802, 901 |
| 358 | ATP0342488 | ATP0342491 | Email - Franulovic to de Villiers re ATP Workshop, Monte-Carlo | 3/21/2006 | |
| 359 | ATP0010174 | ATP0010211 | Presentation - "ATP GAME Plan" | 3/22/2006 | 106, 802, 901 |
| 360 | ATP0007389 | ATP0007403 | Presentation - "Brave New World – Alternative National Opens Structure" | 4/2/2006 | 106, 802, 901 |
| 361 | ATP0007418 | ATP0007423 | ATP "Game" Plan Preliminary calendar Structure | 4/3/2006 | 802, 901 |
| 362 | ATP0008774 | ATP0008795 | Presentation - "BNW Comprehensive Update" | 4/10/2006 | 802, 901 |
| 363 | ATP0301879 | ATP0301880 | Email - Ciz to de Villiers, Galloway, Davies re Latest Status of our Thinking | 4/13/2006 | |
| 364 | ATP0007426 | ATP0007460 | Presentation - "Brave New World – Comprehensive Update" | 5/3/2006 | 802, 901 |
| 365 | ATP0443769 | ATP0443822 | "Brave New World – Comprehensive Update", presentation | 5/30/2006 | |
| 366 | ATP0250487 | ATP0250489 | Email - Rogers to de Villiers re ATP Board Meeting Pre Wimbledon | 6/3/2006 | |
| 367 | ATP0008901 | ATP0008955 | Presentation - "Brave Real World Comprehensive Update" | 6/20/2006 | 802, 901 |

22 of 96

REDACTED VERSION – PUBLICLY FILED

23

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 368 | ATP0350642 | ATP0350692 | Presentation - Brave Real World Tournament Progress Update (Wimbledon) | 6/26/2006 | 802, 901 |
| 369 | ATP0008341 | ATP0008364 | Presentation - "What a Wonderful World Progress Update" (London) | 7/13/2006 | |
| 370 | ATP0053840 | ATP0053862 | Presentation - Deloitte - "Proposal to the ATP - Tournament Financial Review" | 7/20/2006 | |
| 371 | ATP0008365 | ATP0008375 | Presentation - "WWW Outstanding Calendar Issues (Board Call Update)" | 8/14/2006 | |
| 372 | ATP0010916 | ATP0010947 | ATP Progress Update | 8/26/2006 | 802, 901 |
| 373 | ATP0008376 | ATP0008409 | Presentation - "What A Wonderful World Progress Update" | 8/26/2006 | |
| 374 | ATP0009059 | ATP0009062 | Presentation - "Tournament Categories Comparisons - ATP Premium Events 2006 vs. 2009" (London) | 9/26/2006 | 106 |
| 375 | ATP0356698 | ATP0356701 | Email - Citz to Eltingh re Thursday Calendar Call | 10/4/2006 | |
| 376 | ATP0009063 | ATP0009081 | Presentation - "ATP Premium Tour Concept, Board and Management Update" (London) | 10/17/2006 | 802, 901 |
| 377 | ATP0008410 | ATP0008430 | Presentation - "ATP Premium Tour Concept Board & Management Update" | 10/21/2006 | 802, 901 |
| 378 | ATP0007753 | ATP0007804 | Presentation - "ATP Board Meeting Agenda and Discussion Guide" (Shanghai) | 11/12/2006 | |
| 379 | ATP0010345 | ATP0010379 | Presentation - Deloitte - "Serving up the Figures - ATP Tournament Financial Review - Update for Tournaments" (Shanghai) | 11/13/2006 | |
| 380 | ATP0007940 | ATP0007983 | Melbourne ATP Board Meeting- 2009 strategic plan | 12/8/2006 | 106, 802, 901 |
| 381 | ATP0006655 | ATP0006662 | Presentation - "ATP '500' Strategy - Revised Proposal" (London) | 3/9/2007 | 106, 802, 901 |
| 382 | ATP0008671 | ATP0008695 | Presentation - "Miami ATP Board Meeting - 2009 Format '500' Category Focus | 3/19/2007 | 106, 802, 901 |
| 383 | ATP0250575 | ATP0250577 | Email - Jovanovic to de Villiers re Report from Miami | 3/30/2007 | |

REDACTED VERSION – PUBLICLY FILED

24

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 384 | ATP0615497 | ATP0615499 | Email - de Villiers to ATP Board re 4 of 11 versus 4 of 13 | 7/16/2007 | 106, 802, 901 |
| 385 | ATP0321638 | ATP0321646 | WWW 2009 Calendar - Final Calendar Subject to Application Process (London) | 4/19/2007 | 106, 802, 901 |
| 386 | ATP0321723 | ATP0321749 | Presentation - Las Vegas ATP Board Meeting - Outstanding 2009 Format Issues (Las Vegas) | 4/25/2007 | 106, 802, 901 |
| 387 | ATP0321751 | ATP0321761 | Presentation - Las Vegas ATP Board Meeting - Plan B: Addressing Player Concerns (Las Vegas) | 4/25/2007 | 106, 802, 901 |
| 388 | ATP0554648 | ATP0554660 | Presentation - "500" Category Business Plan & Reasoning (London) | 5/25/2007 | 106, 802, 901 |
| 389 | ATP0084405 | ATP0084425 | Agreement between AELTC, LTA, and ATP | 6//2007 | |
| 390 | ATP0609990 | ATP0610013 | Presentation - Tennis Masters Cup - Opportunity Overview (London) | 6/27/2007 | |
| 391 | ATP0008659 | ATP0008982 | Presentation - "What a Wonderful World Progress Update" | 7/5/2006 | |
| 392 | | | Article - "ATP to begin suspending players who skip mandatory events" | 8/31/2007 | |
| 393 | ATP0007527 | ATP0007552 | Presentation - "Brave New World Management Retreat #3 (Drummers Yard)" | 4/24/2006 | |
| 394 | ATP0008850 | ATP0008900 | Presentation - "Brave New World Comprehensive Update (Management Retreat #4: Drummers Yard)" | 5/24/2006 | |
| 395 | ATP0007697 | ATP0007641 | Presentation - "Brave New World – Comprehensive Update" | 5/24/2006 | 802, 901 |
| 396 | ATP0588192 | ATP0588221 | Presentation - 2009-2011 Format Summary - ATP Board of Directors Meeting (New York) | 8/28/2007 | 106, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

25

**EXHIBIT 3(b) TO FINAL PRETRIAL ORDER**

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 397 | ATP0298428 | ATP0298435 | Presentation - Player Communication - Clay Court 2009 | | 106, 802, 901 |
| 398 | | | WITHDRAWN | | |
| 399 | ATP0007530 | ATP0007552 | Presentation - "Brave New World Comprehensive Progress Update" | | 106, 802, 901 |
| 400 | ATP0053630 | ATP0053641 | "Indian Wells/Miami compared to non combined AMS Events" | | |
| 401 | ATP0542193 | ATP0542288 | ATP "500" Tournament Application (Tokyo) | 7/25/2007 | 106, 403, 802, 901 |
| 402 | ATP0591424 | ATP0591450 | ATP "500" Tournament Application (Los Angeles) | 7/22/2007 | 106, 403, 802, 901 |
| 403 | ATP0543501 | ATP0543544 | Attachments to Los Angeles Application | 7/22/2007 | 106, 403, 802, 901 |
| 404 | ATP0542453 | ATP0542544 | ATP "500" Tournament Application (Acapulco) | 7/25/2007 | 106, 403, 802, 901 |
| 405 | ATP0543545 | ATP0543649 | ATP "500" Tournament Application (Doha) | 7/25/2007 | 106, 403, 802, 901 |
| 406 | ATP0542685 | ATP0542751 | ATP "500" Tournament Application (Dubai) | 7/25/2007 | 106, 403, 802, 901 |
| 407 | ATP0541814 | ATP0541879 | ATP "500" Tournament Application (Barcelona) | 7/25/2007 | 106, 403, 802, 901 |
| 408 | ATP0542092 | ATP0542172 | ATP "500" Tournament Application (Bangkok) | 7/25/2007 | 108, 403, 802, 901 |
| 409 | ATP0543809 | ATP0543867 | ATP "500" Tournament Application (Bucharest) | 7/25/2007 | 106, 403, 802, 901 |
| 410 | ATP0542984 | ATP0543076 | ATP "500" Tournament Application (Gstaad) | 7/25/2007 | 106, 403, 802, 901 |
| 411 | ATP0542004 | ATP0542091 | ATP "500" Tournament Application (Basel) | 7/25/2007 | 106, 403, 802, 901 |
| 412 | ATP0541609 | ATP0541701 | ATP "500" Tournament Application (Valencia) | 7/25/2007 | 106, 403, 802, 901 |
| 413 | ATP0542875 | ATP0542962 | ATP "500" Tournament Application (Rotterdam) | 7/25/2007 | 106, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

26

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 414 | ATP0543078 | ATP0543129 | ATP "500" Tournament Application (Vienna) | 8/13/2007 | 106, 403, 802, 901 |
| 415 | ATP0541900 | ATP0542003 | ATP "500" Tournament Application (St. Petersburg) | 8/14/2007 | 106, 403, 802, 901 |
| 416 | ATP0542646 | ATP0542667 | ATP "500" Tournament Application (Moscow) | 8/15/2007 | 106, 403, 802, 901 |
| 417 | ATP0543380 | ATP0543471 | ATP "500" Tournament Application (Sopot) | 8/16/2007 | 106, 403, 802, 901 |
| 418 | ATP0542772 | ATP0542874 | ATP "500" Tournament Application (Stockholm) | 8/16/2007 | 106, 403, 802, 901 |
| 419 | ATP0543145 | ATP0543209 | ATP "500" Tournament Application (Lisbon) | 8/16/2007 | 106, 403, 802, 901 |
| 420 | ATP0543143 | ATP0543144 | Attachment to Lisbon Application | 8/16/2007 | 106, 403, 802, 901 |
| 421 | ATP0543230 | ATP0543289 | Attachments to Lisbon Application | 8/16/2007 | 106, 403, 802, 901 |
| 422 | ATP0542289 | ATP0542360 | Application for ATP "500" Tournament (Beijing) | 8/16/2007 | 106, 403, 802, 901 |
| 423 | ATP0544052 | ATP0544112 | Application for ATP "500" Tournament (Lyon) | 8/17/2007 | 106, 403, 802, 901 |
| 424 | ATP0543705 | ATP0543808 | Application for ATP "500" Tournament (Washington) | 8/20/2007 | 106, 403, 802, 901 |
| 425 | ATP0009264 | ATP0009339 | ATP "Masters 1000" Europe Men's Only (Indoor Hard) - Tournament Application (Hamburg) | 2/2/2007 | |
| 426 | ATP0009452 | ATP0009502 | ATP "Masters 1000" Europe Men's Only (Outdoor Clay) Tournament Application (Rome) | 2/2/2007 | |
| 427 | ATP0009344 | ATP0009396 | ATP "Masters 1000" Europe Men's Only (Indoor Hard) Tournament Application (Madrid) | 2/2/2007 | |
| 428 | ATP0009116 | ATP0009179 | ATP "Masters 1000" Europe Men's Only (Outdoor Clay) Tournament Application (Monte Carlo) | 2/2/2007 | |

REDACTED VERSION – PUBLICLY FILED

27

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|-------|-------------|-------------|-------------|------|------------|
| 429 | ATP0009629 | ATP0009719 | ATP "Masters 1000" North America Men's Only (Outdoor Hard) Tournament Application (Toronto) | 2/2/2007 | |
| 430 | ATP0009577 | ATP0009628 | ATP "Masters 1000" Combined Tournament Application (Cincinnati) | 2/2/2007 | |
| 431 | ATP0084426 | ATP0084486 | ATP "Masters 1000" Combined Tournament Application (Shanghai) | 2/2/2007 | |
| 432 | ATP0009507 | ATP0009570 | ATP "Masters 1000" Europe Men's Only (Indoor Hard) Tournament Application (Paris) | 2/2/2007 | |
| 433 | ATP0326121 | ATP0326130 | Hamburg's financial spreadsheet attached to application | 3/5/2007 | |
| 434 | GTF00000269 | GTF00000347 | ATP "Masters 1000" Europe Men's Only (Outdoor Clay) Tournament Application (Hamburg) | 3/8/2007 | |
| 435 | ATP0544592 | ATP0544596 | 500 Applications Summaries | 8/2007 | 403, 802, 901, 1002 |
| 436 | ATP0544266 | ATP0544267 | Email - Drewett to Galloway re 500 Application | 8/21/2007 | 403, 802, 901 |
| 437 | ATP0544268 | ATP0544269 | Email - Drewett to Galloway re 500 Application | 8/22/2007 | 403, 802, 901 |
| 438 | ATP0544397 | ATP0544399 | Email - Zilliac to Anson re Estoril 500 Application Follow-up | 8/23/2007 | 403, 802, 901 |
| 439 | ATP0602713 | ATP0602714 | Email - Katsnelson to Drewett re 500 Application | 8/24/2007 | 403, 802, 901 |
| 440 | ATP0544809 | ATP0544810 | Email - Anson to Galloway, de Villiers re Valencia Open 500 | 9/14/2007 | 403, 802, 901 |
| 441 | ATP0594796 | ATP0594796 | Email - Info to de Villiers re Open 500 Application-Barcelona | 9/19/2007 | 403, 802, 901 |
| 442 | ATP0544935 | ATP0544936 | Email - Anson to Galloway re Open 500 Application-Barcelona | 9/20/2007 | 403, 802, 901 |
| 443 | ATP0606711 | ATP0606712 | Email - Anson to Dent re ATP 500 Events 2009 | 10/6/2007 | 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

28

### EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 444 | ATP0544040 | ATP0544045 | "500 Application Process, Application Summary - Europe" | | 403, 802, 901, 1002 |
| 445 | ATP0581440 | ATP0581498 | 2007 and 2008 Ongoing Budget (before recommendations) | | 403, 802, 901 |
| 446 | ATP0355355 | ATP0355358 | "ATP Tournament Financial Review Kick-off meeting - Summary minutes" | 8/4/2006 | 106, 403, 802, 901, 1002 |
| 447 | GTF00024783 | GTF00024798 | Hamburg tournament responses | 9/2006 | |
| 448 | ATP0549696 | ATP0549701 | Email - From Paul Rawnsley to Flip Galloway re Documents as Promised | 12/14/2006 | |
| 449 | ATP0355364 | ATP0355428 | Email - Galloway to Tournaments - Note from Etienne and Draft Application Document | 12/22/2006 | |
| 450 | ATP0355360 | ATP0355361 | Email - Galloway to Franulovic, Palmieri, Knapper, Tsobanian, Riou re: European Tournament Applications | 2/2/2007 | |
| 451 | | | WITHDRAWN | | |
| 452 | | | WITHDRAWN | | |
| 453 | ATP0355362 | ATP0355363 | Email - Galloway to Flory, Downey, Lapierre, Bruening re North American 1000's Tournament Applications | 2/2/2007 | |
| 454 | ATP0009343 | ATP0009343 | Letter from Gerard Tsobanian to Alex Byars enclosing Madrid tournament's application for ATP "Masters 1000" Combined Tournament or European Men's Only Indoor Hard Court | 3/15/2007 | 106, 403, 802, 901 |
| 455 | ATP0009627 | ATP0009628 | Letter from Michael Downey to Etienne De Villiers enclosing Tennis Canada's Application for ATP "Masters 1000" North American Men's Only Outdoor Hard Court Tournament | 3/16/2007 | 106, 403, 802, 901 |
| 456 | ATP0009576 | ATP0009576 | Letter from Paul Flory to Flip Galloway enclosing Cincinnati tournament's Application for ATP "Masters 1000" Combined Tournament | 3/16/2007 | 106, 403, 802, 901 |
| 457 | | | WITHDRAWN | | |

REDACTED VERSION – PUBLICLY FILED

29

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|-------|-------------|-------------|-------------|------|------------|
| 458 | ATP009504 | ATP009570 | Email - Berengere to de Villiers re Masters 1000 Application Form | 3/16/2007 | 106, 403, 802, 901 |
| 459 | GTF00000266 | GTF00000266 | Letter - Knepper to Byars, de Villiers re Masters 1000 Applications | 3/23/2007 | |
| 460 | ATP009340 | ATP009341 | Letter - Galloway to Knepper re follow-up questions to Hamburg tournament applications | 3/29/2007 | |
| 461 | ATP0607502 | ATP0607503 | Email re: Indian Wells, Miami, Canada, Cincinnati sanction terms | 5/10/2007 | |
| 462 | ATP0615504 | ATP0615505 | Email - de Villiers to Eltingh, Jovanovic re 500's | 7/13/2007 | 403, 802, 901 |
| 463 | ATP0615501 | ATP0615502 | Email - Galloway to ATP Board, Management Committee, Fisher, Morris re 500's Tournament Committment | 7/13/2007 | 403, 802, 901 |
| 464 | ATP0615609 | ATP0615609 | Email - Jovanovic to de Villiers re 500's | 7/13/2007 | 403, 802, 901 |
| 465 | ATP0543121 | ATP0543142 | Letter from Peter Gruber and Erwin Molnar to Alex Byars enclosing Application for ATP "500" Tournament in Vienna | 8/14/2007 | 106, 403, 802, 901 |
| 466 | ATP0542683 | ATP0542684 | Letter - Tarpischev to de Villiers re Kremlin Cup ATP 500 Tournament | 8/15/2007 | 106, 403, 802, 901 |
| 467 | | | WITHDRAWN | | |
| 468 | ATP0542289 | ATP0542360 | Letter - Junhui to Byars re China Open | 8/16/2007 | 106, 403, 802, 901 |
| 469 | ATP0542685 | ATP0542686 | Letter - Tahlak to Byars re Dubai 500 Tournament Application | 8/16/2007 | 106, 403, 802, 901 |
| 470 | | | WITHDRAWN | | |
| 471 | ATP0542773 | ATP0542773 | Letter - Bengt Möller Enclosing the Application for ATP "500" Tournament (Stockholm) | 8/16/2007 | 106, 403, 802, 901 |
| 472 | ATP0542679 | ATP0542682 | Letter - Lawler to de Villiers re Moscow 500 Application | 8/17/2007 | 106, 403, 802, 901 |
| 473 | | | WITHDRAWN | | |

REDACTED VERSION – PUBLICLY FILED

30

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 474 | ATP0543704 | ATP0543704 | Letter from Donald Dell et al. to ATP enclosing Application for ATP "500" Tournament in Washington | 8/20/2007 | 106, 403, 802, 901 |
| 475 | ATP0544232 | ATP0544259 | Email - Anson to Galloway re Rotterdam Business Plan Update | 8/22/2007 | 106, 403, 802, 901 |
| 476 | | | Internet Article - "ATP Unveils New Top Tier of Events for 2009" | 8/31/2007 | |
| 477 | ATP0602866 | ATP0602866 | Email - From Drewett - ATP 500 Dubai | 9/11/2007 | 106, 403, 802, 901 |
| 478 | ATP0591399 | ATP0591400 | Email re ATP "500" Tournament Application | 9/21/2007 | |
| 479 | ATP0615240 | ATP0615240 | Email - de Villiers to ATP Board, ATP Staff Global re 500's Announcement - Also sent to All IG, All Latin American ATP Tournaments and European Tournaments | 10/4/2007 | 106, 403, 802, 901 |
| 480 | | | Internet Article - "ATP Unveils New Tier of "500" Events for 2009 & 1 Billion Investment into ATP Tour" | 10/4/2007 | |
| 481 | QFT00000340 | QFT00000341 | Email - Townsend to Azmy with attached draft letter from Brad | 10/5/2007 | |
| 482 | ATP0615209 | ATP0615232 | Email - Galloway to Filiol, Von Oertzen, Jaite, Kramer, Martin, Hjertquist, Moretton re ATP 250 Application Request with attachment - 250 Application Final | 10/8/2007 | 403, 802, 901, 1002 |
| 483 | QFT00000343 | QFT00000344 | Letter - Drewett to Azmy re Qatar's 500 Tournament Application | 11/22/2007 | |
| 484 | ATP0617911 | ATP0617920 | Comparison of Week 9 Middle East Applications (Outdoor) | 2/23/2009 | |
| 485 | ATP0540404 | ATP0540451 | 500 Applications Summary | | 403, 802, 901, 1002 |
| 486 | ATP0076611 | ATP0076613 | 2009 ATP 1000 Application Process - Europe Week 18 - Men Only (Rome) | | 106, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

31

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| | | | | | |
| 487 | ATP0076614 | ATP0076617 | 2009 ATP 1000 Application Process – North America Outdoor Week 32 or 34 - Men Only (Montreal/Toronto) | | 106, 403, 802, 901 |
| 488 | ATP0076618 | ATP0076620 | 2009 ATP 1000 Application Process – Europe Indoor Week 44 - Men Only (Hamburg) | | |
| 489 | ATP0076580 | ATP0076585 | 500's Minimum Standards - Comparison | | 802, 901, 1002 |
| 490 | | | WITHDRAWN | | |
| 491 | ATP0076589 | ATP0076598 | Comparison of Combined/US events Applications - Madrid Information through 2008 is for Indoor Event | | 106, 802, 901, 1002 |
| 492 | ATP0076599 | ATP0076601 | ATP 1000 Application Process (Hamburg) | | 106, 802, 901, 1002 |
| 493 | ATP0076602 | ATP0076604 | ATP 1000 Application Process (Madrid) | | 106, 802, 901, 1002 |
| 494 | ATP0076605 | ATP0076607 | 2009 ATP 1000 Application Process – Europe Outdoor Week 18 - Men Only (Monte Carlo) | | 106, 802, 901, 1002 |
| 495 | ATP0076608 | ATP0076610 | 2009 ATP 1000 Application Process – Europe Indoor Week 44 - Men Only (Paris) | | 106, 802, 901, 1002 |
| 496 | | | WITHDRAWN | | |
| 497 | ATP0544831 | ATP0544919 | Email - Anson to Galloway re Rotterdam Application 500 Series | 9/17/2007 | 106, 802, 901 |
| 498 | ATP0207929 | ATP0207943 | Comparison of Spring Clay Men Only | | 106, 802, 901, 1002 |
| 499 | ATP0540679 | ATP0540682 | Comparison of Combined/US Events Application | | 106, 802, 901, 1002 |
| 500 | ATP0540683 | ATP0540685 | Comparison of Fall Indoor Application | | 106, 802, 901, 1002 |
| 501 | ATP0540686 | ATP0540688 | Comparison of Spring Clay Men Only Application | | 106, 802, 901, 1002 |
| 502 | ATP0540575 | ATP0540578 | 2009 ATP 1000 Application Process (Montreal/Toronto) | | 106, 802, 901, 1002 |
| 503 | ATP0540579 | ATP0540581 | 2009 ATP 1000 Application Process (Cincinnati) | | 106, 802, 901, 1002 |

REDACTED VERSION – PUBLICLY FILED

32

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 504 | ATP0540588 | ATP0540590 | 2009 ATP 1000 Application Process (Madrid) | | 106, 802, 901, 1002 |
| 505 | ATP0540591 | ATP0540593 | 2009 ATP 1000 Application Process (Monte Carlo) | | 106, 802, 901, 1002 |
| 506 | | | WITHDRAWN | | |
| 507 | | | WITHDRAWN | | |
| 508 | | | WITHDRAWN | | |
| 509 | | | WITHDRAWN | | |
| 510 | | | WITHDRAWN | | |
| 511 | | | WITHDRAWN | | |
| 512 | | | WITHDRAWN | | |
| 513 | EML0588540_0006 | EML0588540_0006 | Explanation of Our "Brave New World" | | |
| 514 | ATP0052696 | ATP0052718 | Proposal to the ATP – Tournament Financial Review | 7/25/2006 | |
| 515 | ATP0549665 | ATP0549691 | Presentation – Deloitte – "ATP Tournament Valuation Approach" | 12/2006 | |
| 516 | ATP0549571 | ATP0549591 | Email – Galloway to Jones enclosing handwritten draft presentation regarding tournament valuations | 1/9/2007 | |
| 517 | ATP0008591 | ATP0008602 | Presentation – "Tournament Valuations" (London) | 1/10/2007 | |
| 518 | ATP0618477 | ATP0618478 | Letter - Anson to Hornikel re Fax of August 3, 2007 | 8/22/2007 | 106, 403, 802, 901 |
| 519 | ATP0618319 | ATP0618320 | Letter - Hornikel to Anson re ATP Format Changes; Approved Changes | 12/13/2007 | 106, 403, 802, 901 |
| 520 | ATP0618346 | ATP0618346 | Letter - Anson to Hornikel re Letter of December 13, 2007 | 12/18/2007 | 106, 403, 802, 901 |
| 521 | ATP0618322 | ATP0618322 | Letter - Anson to Huemer re Tournament Re-Categorization | 12/19/2007 | 106, 403, 802, 901 |
| 522 | ATP0618334 | ATP0618335 | Letter - Anson to Hornikel re Tournament Re-Categorization/Agreement | 3/3/2008 | 106, 403, 802, 901 |

32 of 98

REDACTED VERSION – PUBLICLY FILED

33

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 523 | ATP0208526 | ATP0208526 | Memorandum - "Tournament Compensation Plan" | | |
| 524 | ATP0618345 | ATP0618345 | Letter - Anson to Honikel re ATP Format Changes; Application Process | | 403, 802, 901 |
| 525 | | | Press Release - WTA Tour Announces Initiatives and Agreements for Growing Women's Professional Tennis Worldwide - http://www.sonyericssonwtatour.com/3/global/includes/TrackIt.asp?file=http://www.sonyericssonwtatour.com/3/global/pdfs/pressreleases/2003/initiatives.pdf | 9/3/2003 | 402, 403, 802 |
| 526 | | | Press Release - WTA Tour Announces Plan to Reshape Future of Women's Tennis - http://www.sonyericssonwtatour.com/3/global/includes/TrackIt.asp?file=http://www.sonyericssonwtatour.com/3/global/pdfs/pressreleases/2004/roadmap_2010.pdf | 9/9/2004 | 402, 403, 802 |
| 527 | ATP0145201 | ATP0145204 | Email - Benoit to All Monitoring re Media Sept. 10, 2004 - WTA and more | 9/10/2004 | 402, 403, 802 |
| 528 | ATP0290280 | ATP0290286 | Email - Ciz to Kloosterkemper, Placentile, Davies re The Tennis Week Interview with Larry Scott | 1/7/2005 | 402, 403, 802 |
| 529 | ATP0083001 | ATP0083014 | Presentation - "Roadmap 2010: Progressing the Vision" - Sony Ericsson 90 Day Review meeting (Miami) | 3/31/2006 | 402, 403, 802 |

REDACTED VERSION – PUBLICLY FILED

34

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 530 | | | Press Release - Sony Ericsson WTA Tour, Eurosport & Regency Enterprises Announce Biggest TV Deal In History of Women's Tennis - http://www.sonyericssonwtatour.com/3/global/incl udes/Trackit.asp?filie=http://www.sonyericssonwt atour.com/3/global/pdfs/pressreleases/2006/Euro sport_Regency_Deal.pdf | 7/7/2006 | 402, 403, 802 |
| 531 | ATP0283722 | ATP0283764 | Presentation - "Roadmap 2010: Further Detailing the Vision" | 8/28/2006 | 402, 403, 802 |
| 532 | ATP0613087 | ATP0613130 | Email - de Villiers to All ATP Board, All Management Committee re Roadmap Check with attached Presentation - Roadmap 2010: Further Detailing the Vision | 9/4/2006 | 402, 403, 802 |
| 533 | ATP0208560 | ATP0208563 | Presentation - "Roadmap 2010: Prize Money Formula" | 10/10/2006 | 402, 403, 802 |
| 534 | | | Press Release - New Data Reveal Record Number of Top Player Withdraws In Women's Tennis - http://www.sonyericssonwtatour.com/3/global/incl udes/Trackit.asp?filie=http://www.sonyericssonwt atour.com/3/global/pdfs/pressreleases/2006/Play erWithdrawals.pdf | 10/13/2006 | 402, 403, 802 |
| 535 | | | Press Release - Sony Ericsson WTA Tour Approves Interim Actions For 2007 to Address Player Withdrawal Issue - http://www.sonyericssonwtatour.com/3/global/incl udes/Trackit.asp?file=http://www.sonyericssonwt atour.com/3/global/pdfs/pressreleases/2006/With drawalIssue.pdf | 11/15/2006 | 402, 403, 802 |

34 of 96

REDACTED VERSION – PUBLICLY FILED

35

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 536 | | | Press Release - Sony Ericsson WTA Tour Takes major Steps Towards Enhanced Calendar Structure from http://www.sonyericssonwtatour.com/3/global/includes/Trackit.asp?file=http://www.sonyericssonwtatour.com/3/global/pdfs/pressreleases/2006/Calendar_Structure.pdf | 11/21/2006 | 402, 403, 802 |
| 537 | ATP0550435 | ATP0550498 | Presentation - "Roadmap 2010 Circuit Restructure Overview" with attached Roadmap 2010 Tournament Application | 11/21/2006 | 402, 403, 802 |
| 538 | | | Press Release - Sony Ericsson WTA Tour Completes First Stage of Roadmap Application and Selection Process, Generates Significant Global Interest - http://www.sonyericssonwtatour.com/3/global/includes/Trackit.asp?file=http://www.sonyericssonwtatour.com/3/global/pdfs/pressreleases/2007/Roadmap2010SuccessfulApplicationProcess.pdf | 1/8/2007 | 402, 403, 802 |
| 539 | ATP0335737 | ATP0335788 | Letter - Scott to Tournament Member with attached Presentation: "Roadmap 2010 version 2.0" | 2/13/2007 | 402, 403, 802 |
| 540 | ATP0605428 | ATP0605485 | Presentation - Roadmap 2010: Final Recommendation with attached Prize Money Formula | 3/25/2007 | 402, 403, 802 |
| 541 | GTF00001258 | GTF00001259 | Press Release - Sony Ericsson WTA Tour to Undertake Significant Expansion in China | 3/27/2007 | 402, 403, 802 |

REDACTED VERSION – PUBLICLY FILED

36

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 542 | | | Press Release - Sony Ericsson WTA Tour Board Approves Most Sweeping Reforms in History of Tour to Strengthen Women's Tennis, Enhance Fan Enjoyment, and Increase Value - http://www.sonyericssonwtatour.com/3/global/includes/Trackit.asp?file=http://www.sonyericssonwtatour.com/3/global/pdfs/pressreleases/2007/Roadmap_2010_Board_Approval.pdf | 3/27/2007 | 402, 403, 802 |
| 543 | ATP0327579 | ATP0327588 | Article - Sony Ericsson Open - Sony Ericsson WTA Tour Announcement | 3/27/2007 | 402, 403, 802 |
| 544 | ATP0059449 | ATP0059462 | Email - Benoit to All Monitoring re Media March 28, 2007 - Shanghai, Canas and more | 3/28/2007 | 402, 403, 802 |
| 545 | | | Article - "Another Record Breaking Year for the Sony Ericsson Open" from http://www.sonyericssonopen.com/ | 4/7/2008 | 402, 403, 802 |
| 546 | | | Article - QTF Website - Sony Ericsson Championships Awarded to Doha, Qatar | | 402, 403, 802 |
| 547 | | | Sony Ericsson Open Attendance by Year available at http://www.sonyericssonopen.com/history/att_recs.html | | 402, 403, 802 |
| 548 | | | sonyericssonopen.com/history/hist.html | | 402, 403, 802 |
| 549 | ATP0595780 | ATP0595782 | "Sony Ericsson Championships Awarded to Doha, Qatar for 2008-2010 in $42 Million Deal," WTA press release. | 6/29/2007 | 402, 403 |
| 550 | ATP0419407 | ATP0419409 | "Sony Ericsson and WTA Tour Announce Largest Global Sponsorship in History of Women's Sport," WTA press release. | 1/5/2005 | 402, 403, 802 |
| 551 | ATP0351917 | ATP0351947 | Roadmap 2010 Tournament Application | | 402, 403, 802 |
| 552 | ATP0221612 | ATP0221612 | Email - Hall to Wigley, Zebergs re Vienna Marketing Retreat | 9/15/1997 | 802, 901 |

REDACTED VERSION – PUBLICLY FILED

37

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 553 | ATP0265876 | ATP0265746 | Letter - Miles to ATP Tournament Directors re Vienna Marketing Retreat with attachments | 10/24/1997 | 106, 802, 901 |
| 554 | ATP0011086 | ATP0011123 | Compello - Broadcast and Distribution Report - Pacific Open 2005 (Indian Wells) - 4.0 Summary of Coverage | 2005 | 106, 802, 801 |
| 555.A | ATP0053643 | ATP0053672 | Presentation - "ATP Additional Research" | 3/2006 | |
| 555.B | ATP0053673 | ATP0053698 | Presentation - "ATP Additional Research" | 3/2006 | |
| 555.B | ATP0053673 | ATP0053698 | WTA/TPL Television Analysis of Pooled Rights | | |
| 555.C | ATP0053699 | ATP0053750 | Presentation - Road to Roland Garros - Television Market Analysis | | 802, 801 |
| 555.D | ATP0053751 | ATP0053761 | Tennis Properties LTD Business Plan 2007-2012 | | |
| 555.E | ATP0053762 | ATP0053792 | Presentation - U.Com Medienservice & Marketing Compello - ATP Monthly Broadcast and Distribution Report | | 802, 901 |
| 555.F | ATP0053793 | ATP0053809 | Presentation - Compello - ATP Additional Research | 1/2006 | |
| 556 | ATP0010983 | ATP0011012 | Presentation - BrandDriver - ATP Additional Research | 3/2006 | |
| 557 | ATP0553527 | ATP0553537 | Presentation - BrandDriver - "ATP Calendar Strategy Research" | 3/21/2006 | |
| 558 | ATP0279994 | ATP0279996 | Email - Horst Klosterkemper to Bernd Klosterkemper re For TPL Meeting: Preliminary BrandDriver Results | 5/11/2006 | |
| 559 | ATP0010743 | ATP0010814 | Presentation - BrandDriver - "ATP Calendar Strategy Research" | 5/25/2006 | |
| 560 | ATP0480896 | ATP0480901 | Compello - "ATP Consumer Research Agreement" | 9/2006 | |
| 561 | ATP0008210 | ATP0008257 | Presentation - Compello - "Brand Positioning Consumer Research - Focus Group Findings" | 10/16/2006 | |
| 562 | ATP0008066 | ATP0008209 | Presentation - Compello - "Brand Positioning Consumer Research - Online Survey Quantitative Findings" | 10/30/2006 | |

37 of 96

REDACTED VERSION – PUBLICLY FILED

38

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 563 | ATP0217551 | ATP0217620 | Presentation - "2007-09 Marketing Plan" (Shanghai) | 11/2006 | |
| 564 | ATP0010815 | ATP0010880 | Presentation - BrandDriver - "Calendar Strategy Testing - Research Findings" | 11/8/2006 | |
| 565 | ATP0007805 | ATP0007826 | Presentation - ATP Board of Directors Meeting: Consumer Research Highlights Related to Calendar & Structure (Shanghai) | 11/12/2006 | |
| 566 | ATP0011013 | ATP0011069 | Presentation - Comperio - "ATP Media Research Market Coverage and Audience Comparison, August 2005 - August 2006" | 12/2006 | |
| 567 | | | WITHDRAWN | | |
| 568 | ATP0555624 | ATP0555683 | Presentation - ATP Marketing Review (Miami) | 3/26/2007 | 802, 901 |
| 569 | ATP0557492 | ATP0557493 | Email - Ciz to Kerry re Budget Estimates | 4/10/2007 | |
| 570 | ATP0588319 | ATP0588378 | Presentation - ATP Tournament Meeting - Marketing Update (London) | 6/23/2007 | |
| 571 | ATP0605007 | ATP0605008 | Email - ATP Media Info re ATP & Mercedes-Benz Partnership to Conclude at End of Agreement in December 2008 | 9/28/2007 | |
| 572 | ATP0573846 | ATP0573847 | ATP Branding and Marketing Departamental Income Statement | 10/8/2007 | |
| 573 | ATP0551337 | ATP0551404 | Presentation - Brand Driver - "Preliminary Draft Report - Preview ATP Branding Research Phase II" | 11/6/2007 | |
| 574 | ATP0592056 | ATP0592103 | Presentation - "ATP Masters Series - Branding Meeting" (New York) | 12/6/2007 | |
| 575 | ATP0618437 | ATP0618439 | Spreadsheet - 2008 Marketing Budget | 12/14/2007 | 403, 802, 901 |
| 576 | ATP0618440 | ATP0618457 | Presentation - 2008 Marketing Budget - Chairman Review (London) | 12/14/2007 | 403, 802, 901 |
| 577 | ATP0618715 | ATP0618717 | Email - Clark to Young, Anderton, Ciz re Message from Donald Dell | 2/4/2008 | 403, 802, 901 |
| 578 | ATP0618547 | ATP0618572 | Presentation - ATP World Tour Brand Development - Progress Review with AMS Board (London) | 2/6/2008 | 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

39

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| | | | | | |
| 579 | ATP0618573 | ATP0618594 | Presentation - ATP World Tour Brand Development - Progress Review with Sony Ericsson WTA (London) | 2/7/2008 | 403, 802, 901 |
| 580 | ATP0618655 | ATP0618698 | Presentation - ATP World Tour Branding Development - Progress Review with the ATP Board of Directors (Conference Call) | 2/13/2008 | 403, 802, 901 |
| 581 | | | WITHDRAWN | | |
| 582 | ATP0618515 | ATP0618546 | Presentation - 2009 Tournament Branding on the ATP World Tour - Progress Review with all ATP World Tour Tournaments | 2/20/2008 | 403, 802, 901 |
| 583 | ATP0618491 | ATP0618514 | Presentation - 2009 ATP World Tour Branding - Progress Review with ATP Player Council (Indian Wells) | 3/2008 | 403, 802, 901 |
| 584 | ATP0618176 | ATP0618254 | Presentation - Marketing Update for the ATP Board of Directors (Indian Wells) | 3/2008 | 403, 802, 901 |
| 585 | ATP0618009 | ATP0618012 | Presentation - ATP International TV Update - ATP Board Meeting (Indian Wells) | 3/14/2008 | 403, 802, 901 |
| 586 | ATP0611977 | ATP0612128 | Compeño - Mercedes-Benz End of the Year Report - 2005 - Broadcast and Sponsorship Report | | 403, 802, 901 |
| 587 | ATP0221613 | ATP0221630 | The Marquee/Proserv Group - Fresh Perspectives on Professional Tennis | | 802, 901 |
| 588 | ATP0011070 | ATP0011123 | Compeño - "ATP Masters Series 2005 - Year End Review" | | 802, 901 |
| 589 | | | WITHDRAWN | | |
| 590 | | | Letter - Duff to News Sports (Asia) Limited re Shanghai ATP Tour Tournament | 12/21/1995 | 403, 802, 901 |
| 591 | | | Letter - Duff to Shanghai Ba-Shi Industrial Co. Ltd., Sports Corporation Limited re Transfer Agreement | 5/26/1998 | 403, 802, 901 |
| 592 | ATP0174870 | ATP0174871 | Email - Alison to Drewett re TMC Shanghai Coverage | 7/11/2001 | 802, 901 |

REDACTED VERSION – PUBLICLY FILED

40

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 593 | ATP0061805 | ATP0061812 | Email - from Kennison re ITW #37, October 22, 2001 | 10/21/2001 | 403, 802, 901 |
| 594 | ATP0177303 | ATP0177313 | Tennis Masters Cup Shanghai 2002 - New International Expo Centre (Pudong) | 11/12/2002 | 802, 901 |
| 595 | ATP0165894 | ATP0165895 | Press Release - "ATP CEO Courts Booming Asian Tennis Market" | 9/30/2004 | |
| 596 | ATP0165892 | ATP0165893 | Email - Jovanovic to Macpherson, Higdon re ATP Ceo Courts Booming Asian Tennis Market | 10/1/2004 | 802, 901 |
| 597 | ATP0295505 | ATP0295510 | Email - Benoit to All Monitoring re Media Sept. 16, 2005 - China, Roland Garros, Nieminen and more | 9/18/2005 | 802, 901 |
| 598 | ATP0296821 | ATP0296822 | Email - Benoit to All Monitoring re Media Nov. 14, 2005 (2nd update) - Shanghai, Roddick and more | 11/14/2005 | 802, 901 |
| 599 | ATP0597498 | ATP0597508 | Masters 1000 Agreement between New Sports Entertainment (Shanghai) Ltd. and ATP Tour Inc. | 2007 | |
| 600 | ATP0595242 | ATP0595255 | Masters 1000 Agreement between New Sports Entertainment (Shanghai) Ltd. and ATP Tour Inc. with Non-Compete Agreement | 2007 | |
| 601 | ATP0084486 | ATP0084489 | "Memorandum of Understanding By & Between New Sports & Entertainment (Shanghai) Ltd. And ATP Tour, Inc." | 2/15/2007 | |
| 602 | ATP0081584 | ATP0081587 | Email to Galloway re Shanghai TMS Agreement | 2/16/2007 | |
| 603 | ATP0180367 | ATP0180367 | Memorandum from the Shanghai Organizing Committee to M. Miles and B. Drewett regarding TMC Bid Terms | 3/27/2004 | 106 |
| 604 | ATP0251053 | ATP0251054 | Email - Allison to All ATP Board re Shanghai Confirmed as ATP Masters Series Event from 2009 | 3/28/2007 | 802, 901 |

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 605 | ATP0596842 | ATP0596843 | Sponsorship Agreement Extension Tennis Master Cup Shanghai between New Sports and Entertainment Company and Citibank | 7/12/2007 | |
| 606 | ATP0612242 | ATP0612244 | Amendment Agreement to the Sponsorship Agreement between New Sports and Entertainment Company and Citibank | 7/12/2007 | |
| 607 | ATP0592550 | ATP0592563 | Masters 1000 Agreement between Shanghai Jiu Shi International Events Management Co. Ltd. and ATP Tour Inc. | 11/17/2007 | |
| 608 | ATP0334825 | ATP0334827 | Email - Higdon to All Monitoring Execs re SBJ Nov. 28: ATP Board Changes, China | 11/28/2005 | 802, 901 |
| 609 | ATP0054656 | ATP0054662 | Memorandum - "Asian Strategy" Including correspondence between Miles and Wang | | |
| 610 | GTF0057263 | GTF0057305 | Shareholders' Agreement - The Super 9 Members ATP Tour, Inc. And Tennis Properties Limited | 1999 | |
| 611 | ATP0223811 | ATP0223829 | Letter - Miles to Bucholz, Clerc, Pasarell, Tiriac and Webster, with attachments | 11/9/1998 | 106, 802, 901 |
| 612 | ATP0264330 | ATP0264335 | Interim Shareholders Agreement - Tennis Properties Limited, ATP Tour Inc., and the Company | 4/23/1999 | 106, 802, 901 |
| 613 | | | Memorandum - Young to Miles, Scott, Galloway, Wigley and Leccese re ISL Agreements, with attached ISL Agreements | 5/12/1999 | |
| 614 | ATP0226172 | ATP0226176 | Discussion Outline for the TPL Meeting | 1/10/2001 | 106 |
| 615 | ATP0060259 | ATP0060263 | Press Article - ISMM Group - Restructuring of ISMM Group and ISL Worldwide | 3/30/2001 | 802, 901 |
| 616 | ATP0226171 | ATP0226171 | Letter - Young to Beavois, Renner, Robert re ISL Marketing AG Payment due to ATP as of July 1st, 2001 | 8/3/2001 | 802, 901 |
| 617 | ATP0072016 | ATP0072027 | Shareholders' Agreement for Tennis Properties Limited | 11/30/2001 | |

41 of 96

REDACTED VERSION – PUBLICLY FILED

42

### EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 618 | ATP0056192 | ATP0056204 | Fax - Webster to Miles re TPL Termination Letters | 11/30/2001 | 106, 802, 901 |
| 619 | ATP0163373 | ATP0163374 | ATP Properties Advisory Board Meeting Summary | 6/29/2002 | 106, 802, 901 |
| 620 | | | Agreement between TPL and ESPN | 3/1/2003 | 106, 403, 802, 901 |
| 621 | ATP0072479 | ATP0072482 | TPL Meeting Minutes (London) | 6/30/2003 | 802, 901 |
| 622 | ATP0072468 | ATP0072471 | TPL Meeting Minutes (Houston) | 11/11/2003 | 106, 901 |
| 623 | ATP0072457 | ATP0072463 | TPL Meeting Minutes (London) | 2/9/2004 | 802, 901 |
| 624 | ATP0262337 | ATP0262393 | Pooling Agreement Between The TMS Members; ATP Tour, Inc.; and Tennis Properties Limited | 2/9/2004 | |
| 625 | ATP0538695 | ATP0538707 | Shareholders' Agreement - Tennis Properties Limited | | |
| 626 | ATP0072451 | ATP0072456 | TPL Board Minutes (London) | 6/23/2004 | |
| 627 | ATP0072443 | ATP0072450 | TPL Board Minutes (Miami) and Presentation | 3/29/2005 | |
| 628 | ATP0342338 | ATP0342373 | TPL Board Minutes (London) | 2/2/2006 | |
| 629 | ATP0316980 | ATP0316970 | Email - Down to Galloway attaching Draft Business plan for TPL | 6/14/2006 | |
| 630 | ATP0303864 | ATP0303866 | TPL Meeting Minutes (New York) | 8/25/2006 | |
| 631 | ATP0052998 | ATP0052999 | Email - de Villiers to All ATP Staff Global re ATP Media | 9/7/2006 | |
| 632 | ATP0077275 | ATP0077498 | Tennis Properties LTD Finance Committee Meeting (London) | 1/31/2007 | |
| 633 | | | Heads of Agreement between TPL and ESPN | 9/12/2007 | 106, 403, 802, 901 |
| 634 | ATP0226177 | ATP0226177 | Financial Position Due Diligence Report on ISL Consolidated Group | | 802, 901 |
| 635 | ATP0060564 | ATP0060570 | Article - Associated Press - ISMM Starts Bankrupcy Proceedings | | 802, 901 |
| 636 | ATP0212269 | ATP0212273 | Presentation - Projection of Cash Flows - ISL Revised Projection | | 802, 901 |

REDACTED VERSION – PUBLICLY FILED

43

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 637 | ATP0054681 | ATP0054683 | Players Substitute for the Final in Case of Injury Letter - ATP Masters Series Tournament directors to Miles re decreased participation of top players and an attached Player Incentive Programme Proposal | 8/23/2004 | 802, 901 |
| 638 | ATP0073726 | ATP0073735 | "Contributing Factors in Declining Top Player Participation in Madrid & Paris AMS Events" | 11/5/2004 | |
| 639 | ATP0053039 | ATP0053045. | Presentation - "AMS Player Participation: Top 10 Data Analysis" | 7/21/2005 | 802, 901 |
| 640 | ATP0008307 | ATP0008330 | Presentation - AMS Player Participation: Top 10 Data Analysis | 11/14/2005 | 802, 901 |
| 641 | ATP0067924 | ATP0067940 | Chart - "Number of Top 10 Players in Grand Slam & ATP Masters Series Events" | 11/14/2005 | |
| 642 | ATP0008303 | ATP0008306 | WITHDRAWN | 3/15/2007 | 802, 901 |
| 643 | | | Presentation - "Addressing Player Concerns: Meeting With Top Players" | 3/18/2007 | 802, 901 |
| 644 | ATP0321702 | ATP0321721 | Email - Silva to ATP Board, Management Committee re Matches and Tournaments Played Top 20 2002-2006 with Spreadsheet | 4/16/2007 | 403, 901 |
| 645 | ATP0615493 | ATP0615496 | Top 10 Players in GS and ATP MS Events | 6/4/2007 | 802, 901 |
| 646 | ATP0562310 | ATP0562322 | Email - de Villiers to Silva, All ATP Board, All Management Committee re Matches & Tournaments Played Top 20 2002 - 2006 | 7/16/2007 | |
| 647 | ATP0546662 | ATP0546662 | Memorandum - Bradshaw to ATP Board re 2009 Withdrawal Penalty Discussion | 1/31/2008 | 403, 901 |
| 648 | ATP0618155 | ATP0618159 | Spreadsheet - Top 5 and Top 10 (1990 - 2005) | | 802, 901 |
| 649 | ATP0067980 | ATP0068030 | Tournaments Played by Top 20 per Category and per Surface | | |
| 650 | ATP0067769 | ATP0067788 | Tournaments played by Top 20 Per Tournament Category | | |
| 651 | ATP0067760 | ATP0067864 | | | |

REDACTED VERSION – PUBLICLY FILED

44

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 652 | ATP0053466 | ATP0053469 | "Top 500 - Average # of Events Played, Points Earned (totals per event), and % of Points Total by Ranking" | | 802, 901, 1002 |
| 653 | ATP0562835 | ATP0562852 | 2004-2006 Summary Top 10 Player Activity | | 802, 901 |
| 654 | ATP0479967 | ATP0479967 | "Contributing Factors in Declining Top Player Participation in Madrid & Paris AMS Events" | | 802, 901 |
| 655 | ATP0083196 | ATP0083213 | Letter - Murray to Galloway re Player Participation | | 802, 901 |
| 656 | ATP0190987 | ATP0191000 | Player Participation Spreadsheet | | 802, 901 |
| 657 | ATP0257187 | ATP0257192 | Top 10 Players in Potential 500 Tournaments, 2003-2006 | | 802, 901 |
| 658 | ATP0081636 | ATP0081636 | Top 10 Player Participation by Tournament Week - 2006 | | 802, 901 |
| 659 | ATP0067484 | ATP0067503 | Tournaments Played per Level 2003-2004 | | |
| 660 | ATP0087525 | ATP0087627 | Tournaments played by Top 20 Per Tournament Category | | |
| 661 | GTF00001465 | GTF00001467 | ATP Tour Supervisor's Tournament Evaluation (Hamburg) | | |
| 662 | GTF00001458 | GTF00001458 | ATP Tour Supervisor's Tournament Evaluation (Hamburg) | 1/1/1999 | |
| 663 | GTF00000351 | GTF00000355 | ATP Tour Supervisor's Tournament Evaluation (Hamburg) | 1/1/2000 | |
| 664 | ATP0072956 | ATP0072975 | ATP Tour Television License Agreement between Championship Strategies Limited and Deutscher Tennis Bund Holding and exhibits | 5/16/2003 | |
| 665 | ATP0072976 | ATP0072997 | Letter - Young to Poll re Hamburg Television License Agreement with copies of the Hamburg Television License Agreement | 1/1/1996 | 901 |
| 666 | ATP0050084 | ATP0050084 | Tournament Follow Up from Karlberg to Sanders (Hamburg) | 2/14/1997 | 901 |
| 667 | GTF0001455 | GTF0001455 | Letter - Franulovic to Sanders re Review of your 1998 Tournament Conditions | 9/22/1997 | 901 |
| | | | | 8/14/1998 | |

44 of 95

REDACTED VERSION – PUBLICLY FILED

45

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 668 | ATP0072945 | ATP0072946 | Letter - Miles to Sanders re ATP Tour Calendar for 2000 | 9/11/1998 | |
| 669 | | | WITHDRAWN | | |
| 670 | ATP0054876 | ATP0054877 | Letter - Miles to Stauder re issues raised by Prisma and Boris Becker's discussions with more than on Super 9 tournament representative | 10/15/1998 | |
| 671 | ATP0054878 | ATP0054879 | Letter - Miles to Stauder re DTB support of Prisma | 10/16/1998 | |
| 672 | ATP0054875 | ATP0054875 | Letter - Lecesse to Stauder, Sanders re Prisma Sports and Boris Becker | 10/16/1998 | |
| 673 | ATP0074219 | ATP0074219 | Article from Die Welt entitled "Sanders Prevents DTB Bankruptcy" | 4/26/1999 | |
| 674 | ATP0074213 | ATP0074213 | Article - "The last vision - Hamburg becomes Wimbledon" | 5/4/1999 | 901 |
| 675 | | | Letter re ATP Tour Calendar, Indianapolis Tournament Date | 12/21/1999 | 403, 901 |
| 876 | ATP0069988 | ATP0069989 | Interview in the Suddeutsche Zeitung with Georg von Waldenfels headlined: "There was just too much money" | 1/22/2001 | |
| 677 | ATP0120751 | ATP0120753 | DTB/TMS Hamburg - Meeting Minutes (Hamburg) | 3/13/2002 | 106, 901 |
| 678 | ATP0073886 | ATP0073888 | Letter - Knepper to Miles re Financial Analysis | 3/15/2002 | 901 |
| 679 | ATP0054297 | ATP0054300 | Interview in the Frankfurter Allgemeine Zeitung with Georg von Waldenfels headlined: "I can't turn the tennis world upside down" | 4/26/2002 | |
| 680 | ATP0054281 | ATP0054282 | Letter - Miles to Köhne - with attached chart | 6/20/2002 | |
| 681 | GTF0037812 | GTF0037812 | List of responsibilities of tournament marketing director Annette Eichler (in German) | 9/24/2002 | |
| 682 | GTF0037813 | GTF0037813 | List of responsibilities of organization director (Thomas Kastner (in German) | 9/24/2002 | |

REDACTED VERSION – PUBLICLY FILED

48

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 683 | GTF00037814 | GTF00037814 | List of responsibilities of tournament director | 9/24/2002 | |
| 684 | GTF00089049 | GTF00069056 | Sponsorship Agreement between DTB and Walter Knapper (in German) | 10/16/2002 | |
| 685 | ATP0545537 | ATP0545558 | Advanta & Betty Barclay Cup | 11/11/2002 | 402, 403 |
| 686 | GTF00001476 | GTF00001477 | Indiana – Washington Settlement Agreement Letter - Franulovic to Knapper re Tournament condition letter 2002 | 11/26/2002 | 901 |
| 687 | GTF00070071 | GTF00070125 | "Deutscher Tennis Bund Holding GmbH" - Hamburg (in German) | 12/31/2002 | |
| 688 | ATP0281401 | ATP0281402 | Agreement between ATP and DTB Holding regarding deferment of payments from DTB to ATP | 2/28/2003 | |
| 689 | GTF00036262 | GTF00036270 | Contact list of potential sponsors for Hamburg tournament | 3/7/2003 | |
| 690 | GTF00035558 | GTF00035559 | Fax from Mark Webster to Walter Knapper regarding TV coverage of Hamburg tournament | 4/23/2003 | |
| 691 | GTF00004945 | GTF00004950 | Final Press Conference for 2003 Hamburg Tournament | 5/18/2003 | |
| 692 | GTF00006603 | GTF00006603 | Newspaper Article - Die Welt - "Millionen-Forderung; DTB setzt Senat massiv unter Druck" (in German) | 5/7/2004 | |
| 693 | GTF00085006 | GTF00085007 | Letter - Pirzer to Korner (in German) / Letter - Pirzer to Korner re "Hamburg Masters Series - instructions for negotiating a leasing or sale contract" | 5/14/2004 | |
| 694 | ATP0137808 | ATP0137809 | Article "German Tennis Tournaments for Sale?" | 5/14/2004 | |
| 695 | GTF00084682 | GTF00084685 | "Protokoll Sitzung Aufsichtsrat (in German) / Minutes of the Meeting of the Supervisory Board (DTB Offices Hamburg) | 5/15/2004 | |

REDACTED VERSION – PUBLICLY FILED

47

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 696 | GTF00082482 | GTF00082482 | Newspaper Article - Frankfurter Rundschau - "DTB-Boss von Waldenfels gibt sein Amt naecstes Jahr auf" (in German) | 5/17/2004 | |
| 697 | GTF00084985 | GTF00084985 | Letter - "Aktiennotiz" (in German) / Notes for the Files - Fahrmann to Kroeker with attached results of th meeting on 6/2/2004 with the Finance Authorities in Hamburg | 6/4/2004 | |
| 698 | GTF00084980 | GTF00084984 | Email - Kassling to Waldenfels, Korner re Telefonat mit Franco Bartoni (in German) / Email - Kassling to Waldenfels, Korner re Telephone Conversation with Franco Bartoni | 6/7/2004 | |
| 699 | GTF00084971 | GTF00084971 | Sale and Lease Agreement between DTB and QTF for sale of the Tier I Berlin WTA Tournament | 6/17/2004 | |
| 700 | GTF00069057 | GTF00069062 | Sale Agreement between DTB and QTF for sale of the Tier I Berlin WTA Tournament | 6/20/2004 | 402, 403 |
| 701 | GTF00069023 | GTF00069028 | Lease Agreement between DTB and QTF for lease of the Tier II WTA Tournament in Qatar | 6/20/2004 | 402, 403 |
| 702 | | | WITHDRAWN | | |
| 703 | GTF00084170 | GTF00084176 | Sale and Lease Agreement between DTB and QTF | 6/20/2004 | 402, 403 |
| 704 | GTF00082877 | GTF00082881 | Sale Agreement between DTB and QTF | 7/6/2004 | 402, 403 |
| 705 | ATP0618310 | ATP0618312 | Article - "RCA Championships growing financially; Organizers look to score women's event, new stadium" | 7/12/2004 | 402, 403 |
| 706 | ATP0143046 | ATP0143049 | Email - Benoit to All Monitoring re Media (second update) July 27, 2004 | 7/27/2004 | |
| 707 | GTF0008708 | GTF0008709 | "Order of Events at Press Conference on August 10, 2004" | 8/10/2004 | |
| 708 | GTF00082809 | GTF00082809 | Letter - Scott to Al Thani | 8/10/2004 | 402, 403 |
| 709 | MC0036603 | MC0036603 | Email - Knapper to Franulovic re fees for a timing sponsor | 9/14/2004 | 901 |
| 710 | GTF00084676 | GTF00084678 | "AR-Sitzung der DTB Holding GmbH" (in German) / Meeting of the Supervisory Board of DTB Holding-Gmbh | 9/19/2004 | |

REDACTED VERSION – PUBLICLY FILED

48

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 711 | ATP0288451 | ATP0288452 | LD meeting notes regarding German 5 Series promotion, sponsorship, and marketing | 9/21/2004 | |
| 712 | GTF00084097 | GTF00084106 | Cooperation Agreement between DTB and QTF | 11/19/2004 | 402, 403 |
| 713 | GTF00116994 | GTF00116996 | Memorandum of Understanding between DTB and QTF | 12/17/2004 | |
| 714 | GTF00000562 | GTF0000568 | Masters Series Hamburg 2005 - 2006 - 2007 "Vermarktungsvertrag zwischen Deutscher Tennis Bund Rothenbaum Turnier GmbH und Hamburg Marketing GmbH" (in German) | 3/4/2005 | |
| 715 | GTF00068154 | GTF00068173 | Agreement between Rothenbaum Sport GMBH and Qatar Tennis Federation GMBH | 5/12/2005 | |
| 716 | | | WITHDRAWN | | |
| 717 | GTF00068184 | GTF00068197 | Shareholders' Agreement between DTB and Qatar Tennis Federation, Germany GmbH | 5/12/2005 | |
| 718 | GTF00042863 | GTF00042875 | Presentation - regarding the negotiations status between the DTB and the QTF as of May 13, 2005 (in German) | 5/13/2005 | |
| 719 | GTF00084664 | GTF00084667 | "Ergebnisprotokoll A.O. Sitzung Aufsichtsrat" (in German) / Minutes of the Extraordinary Meeting of the Supervisory Board (Hamburg) | 5/13/2005 | |
| 720 | ATP0069612 | ATP0069613 | Email - Benotti to All Monitoring re Media May 15, 2005 - Hamburg Nadal and more | 5/15/2005 | |
| 721 | ATP0072833 | ATP0072844 | Letter - Waldenfels to Miles re sale of 25% of DTB's rights to the Hamburg tournament to QTF, attaching agreement | 5/17/2005 | |
| 722 | ATP0072682 | ATP0072685 | Transfer Agreement between ATP Tour, Inc., Qatar Tennis Federation, and Deutscher Tennis Bund | 6/15/2005 | |
| 723 | GTF0069738 | GTF0069779 | "Deutscher Tennis Bund Rothenbaum Turnier GmbH" - Hamburg (in German) | 6/30/2005 | |

48 of 96

REDACTED VERSION – PUBLICLY FILED

49

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 724 | ATP0294416 | ATP0294420 | Email - Benoit to All Monitoring re Media July 18, 2005 - Doubles, Indianapolis, Hewitt and more | 7/18/2005 | 402, 403 |
| 725 | ATP0069570 | ATP0069571 | Letter - Kloeterkemper and Ulrika Roos at Hjelmstäter to Knapper re recommendations for 2005 tournament | 8/12/2005 | |
| 726 | GTF00068174 | GTF00068183 | Modification of the Shareholders' Agreement between DTB and Qatar Tennis Federation Germany GmbH | 9/29/2005 | |
| 727 | GTF00068198 | GTF00068234 | Modification of the Articles of Association of the Rothenbaum Sport GmbH | 9/29/2005 | |
| 728 | | | WITHDRAWN | | |
| 729 | GTF0069920 | GTF00069963 | "Rothenbaum Stadion GmbH" - Hamburg (in German) | 12/31/2005 | |
| 730 | GTF00068619 | GTF00068624 | Letter - Schrötter to Löpker attaching chart of planned changes in the DTB in 2005 (in German) | 1/30/2006 | |
| 731 | GTF00000596 | GTF00000597 | DTB Regional Club membership by year and region (in German) | 3/6/2006 | |
| 732 | GTF00067764 | GTF00067766 | Rothenbaum Sport GMBH Supervisory Board Minutes (Hamburg) | 3/7/2006 | |
| 733 | GTF00067764 | GTF00067766 | Rothenbaum Sports GMBH Supervisory Board Meeting Minutes (Hamburg) | 3/7/2006 | |
| 734 | GTF00008463 | GTF00008463 | Article from unidentified German newspaper entitled "The End of Rothenbaum?" (in German) | 5/5/2006 | |
| 735 | GTF00067767 | GTF00067768 | Rothenbaum Sports GMBH Board Meeting Minutes (Berlin) | 5/11/2006 | |
| 736 | GTF00022514 | GTF00022514 | Article - "Knapper counters criticism: Kühnen has no clue" (in German) | 5/19/2006 | |
| 737 | GTF00000365 | GTF00000367 | ATP Supervisor's Tournament Evaluation for 2006 Hamburg Rothenbaum Tournament by Mark Darby | 5/21/2006 | |

REDACTED VERSION – PUBLICLY FILED

50

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 738 | ATP0375592 | ATP0375592 | Email - Darby to Armstrong, Barnes, Hardisty, Bradshaw, Kariberg, Chryst, Lahyani, Bernardes, Ulrich, Bravo, Pereira, Sanches, Graff re Hamburg | 5/22/2006 | 802, 901 |
| 739 | MC0049893 | MC0049894 | Email - Franulovic to Knapper re draft letter to Etienne De Villiers form European tournament directors | 6/16/2006 | |
| 740 | ATP0269150 | ATP0269154 | "Open Letter from European Tournament Directors to ATP CEO Etienne de Villiers" | 6/18/2006 | |
| 741 | ATP0269141 | ATP0269142 | Letter - Tournament directors of Barcelona, Hamburg, Monte Carlo, and Rome to Dominguez re proposed new combined tournament before French Open | 6/23/2006 | |
| 742 | ATP0268784 | ATP0268787 | Memorandum – Klosterkemper to de Villiers – "10th of July, WWW Report 6" | 7/10/2005 | 802, 901 |
| 743 | ATP0283627 | ATP0283628 | Memorandum from German Tournament directors to Horst Klosterkemper and Patrice Dominguez regarding proposed changes to ATP tournament structure | 7/29/2006 | |
| 744 | GTF00043190 | GTF00043190 | Email - Knapper to Waldenfels, Kroeker re meetings attended in New York (in German) | 8/30/2006 | |
| 745 | ATP0252924 | ATP0252928 | Letter - Masters Series Tournament directors to De Villiers regarding proposed reforms to Masters Series | 9/29/2006 | |
| 746 | | | WITHDRAWN | | |
| 747 | GTF00043165 | GTF00043167 | Meeting Minutes of Hamburg Tournament staff | 9/29/2006 | |
| 748 | GTF00069694 | GTF00069737 | Audit report for RSG for the year ended June 30, 2006 (in German) | 10/4/2006 | |
| 749 | GTF00068968 | GTF00068972 | Minutes of the DTB board meeting held on September 21, 2006 (in German) | 10/4/2006 | |
| 750 | MC0008538 | MC0008540 | Email - Knapper to Franulovic (in German) regarding Mercedes-Benz's withdrawal of tennis sponsorship | 10/6/2006 | |

REDACTED VERSION – PUBLICLY FILED

51

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 751 | GTF00043338 | GTF00043343 | Rothenbaum Sport Gmbh Shareholders Meeting Agenda | 10/25/2006 | |
| 752 | GTF0006879 | GTF00068986 | "Protokoll der Sitzung des Bundesausschusses" (in German) | 11/3/2006 | |
| 753 | GTF00084343 | GTF00084345 | "Protokol der Sitzung Des Prasidiums" (in German) / Minutes of the Presidium Meeting (DTB Main Office) | 11/7/2006 | |
| 754 | GTF00067762 | GTF00067763 | Minutes of the Annual Shareholder meeting of Rothenbaum Sport GmbH | 11/7/2006 | |
| 755 | GTF00086150 | GTF00086150 | Email - Knapper to Waldenfels, Freiherr, Kroeker re Kurzinfo Shanghai (in German) / Email - Knapper to Waldenfels, Freiherr, Kroeker re Short note on Shanghai | 11/17/2006 | |
| 756 | GTF00086151 | GTF00086151 | Email - Kroeker to Waldenfels, Freiherr re Kurzinfo Shanghai (in German) / Email - Kroeker to Waldenfels, Freiherr re Short note on Shanghai | 11/19/2006 | |
| 757 | GTF00068959 | GTF00068964 | Minutes of the DTB board meeting held on November 2, 2006 (in German) | 11/23/2006 | |
| 758 | GTF00068965 | GTF00068967 | Redlined minutes of the November 7, 2006 DTB board meeting (in German) | 11/24/2006 | |
| 759 | GTF0001076 | GTF0001076 | Letter - Birnes to Waldenfels re his support of the Hamburg tournament | 12/11/2006 | |
| 760 | GTF00043321 | GTF00043321 | Letter - Kroeker to Knapper, Steeb re possible meeting dates (in German) | 12/13/2006 | |
| 761 | GTF00000600 | GTF00000601 | Timeline of improvements to Rothenbaum facilities | 12/31/2006 | |
| 762 | | | Article - Steeb interview - "Ich hoffe, dass Becker eine Chance bekommt" (in German) | 1/23/2007 | 403, 802, 901 |
| 763 | GTF00069444 | GTF00069444 | Email - Knapper to Waldenfels, Kroeker re Status 2/7/2007 (in German) | 2/7/2007 | |
| 764 | GTF00068925 | GTF00068938 | Minutes of the January 26-28, 2007 DTB board retreat (in German) | 2/16/2007 | |

REDACTED VERSION – PUBLICLY FILED

52

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 765 | GTF00007725 | GTF00007727 | Summary of financial information regarding DTB and Rothenbaum facilities | 2/16/2007 | |
| 766 | GTF00025158 | GTF00025158 | Tennis Masters Hamburg Revenues report | 2/19/2007 | |
| 767 | GTF00043363 | GTF00043374 | PowerPoint Presentation for the March 12, 2007 Board Meeting of Rothenbaum Sport GmbH | 3/12/2007 | |
| 768 | GTF00045436 | GTF00045436 | Chart of Hamburg Tournament attendance figures from 2004-2006, with actual sales as of the date of the chart for 2007 (in German) | 3/26/2007 | |
| 769 | GTF00027511 | GTF00027511 | Email - Steeb to Kastner forwarding email confirming SAA as a sponsor of the Hamburg tournament | 3/28/2007 | |
| 770 | GTF00000261 | GTF00000263 | Letter - Rothenbaum to Galloway re answers to his follow-up questions to the Rothenbaum tournament of March 29, 2007 | 4/12/2007 | |
| 771 | ATP0352834 | ATP0352841 | Presentation - "TV Charts" (Las Vegas) | 4/25/2007 | 802, 901 |
| 772 | GTF00068939 | GTF00068947 | Minutes of the DTB board meeting held on May 1, 2007 (in German) | 5/9/2007 | |
| 773 | GTF00005298 | GTF00005302 | Transcript of final press conference for the 2004 Rothenbaum tournament | 5/16/2007 | |
| 774 | GTF00013914 | GTF00013914 | Newspaper Article - "Schleich Mohammed: Notfalls machen wir eine eigene Serie" | 5/18/2007 | |
| 775 | GTF00012977 | GTF00012981 | "Final Press Conference" (Hamburg) | 5/20/2007 | |
| 776 | GTF00014004 | GTF00014004 | Article from the Hamburger Abendblatt entitled "Rothenbaum needs a Title Sponsor" (in German) | 5/22/2007 | |
| 777 | GTF00114664 | GTF00114675 | G2 Strategic Consulting Agreement between G2 Strategic LLC, and Hamburg ATP Masters Series | 7/1/2007 | |
| 778 | GTF00094582 | GTF00094584 | Press Release - G2 Strategic Signs two ATP Agreements | 7/10/2007 | |
| 779 | GTF00010833 | GTF00010833 | Letter - Kastner to Jourdan re clay court surface at Stade Roland Garros | 7/11/2007 | |

REDACTED VERSION – PUBLICLY FILED

53

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 780 | GTF00078331 | GTF00078341 | Presentation - "Besprechungsergebnis Meeting 10/23/2007 (Frankfurt)" (in German) | 10/23/2007 | |
| 781 | GTF00078166 | GTF00078214 | Email from Steeb to Cohen re Preliminary Observations & Recommendations | 11/15/2007 | |
| 782 | | | "Rothenbaum soll 'winterfest' werden; Tennis-Verband plant Erweiterung der eigenen Anlage in Hamburg" (in German) | 2/12/2008 | 403, 802, 901 |
| 783 | | | WITHDRAWN | | |
| 784 | | | "DFB einigt sich mit Skandal-Schiri Hoyzer++Warten am Rothenbaum++Vogts' neuer Job++Gratton muss gehen" (in German) | 4/5/2008 | 403, 802, 901 |
| 785 | GTF00002580 | GTF00002619 | Hamburg Master Series re Television Broadcast and Sponsor Report | 4/1/2005 | |
| 786 | ATP0050042 | ATP0050075 | Player Information - Hamburg AM Rothenbaum | 4/26/1998 | |
| 787 | GTF00077806 | GTF00077900 | Hamburg Master Series re Television Broadcast and Sponsor Report | 5/14/2007 | |
| 788 | GTF00002704 | GTF00002743 | Hamburg Master Series re Television Broadcast and Sponsor Report | | |
| 789 | ATP0072909 | ATP0072911 | "Notes to File" | 5/15/2006 | 802, 901 |
| 790 | ATP0012680 | ATP0012687 | Due Diligence Report - German Open - AM Rothenbaum (Hamburg) | | 901 |
| 791 | | | Tennis Masters Hamburg Statistik 2002 (in German) | | 403, 802, 901 |
| 792 | | | Compiled Weather Data from http://www.dwd.de/bvbw | | 403, 802, 901 |
| 793 | | | Compiled Weather Data (in German) from http://www.dwd.de/bvbw/appmanager/bvbw | | 403, 802, 901 |

53 of 96

REDACTED VERSION – PUBLICLY FILED

54

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 794 | | | History of Hamburg tournament available at http://www.dtb-tennis.de/AmRothenbaum_en/6370.php?selecte d=8453&selectedsub=8456 | | 403, 802, 901 |
| 795 | GTF00049265 | GTF00049265 | Letter - Wiebe to Koring re sponsorship of Masters Series Hamburg 2005 tournament (in German) | | |
| 796 | GTF00000368 | GTF00000362 | ATP Supervisor's Tournament Evaluation for Hamburg Rothenbaum Tournament | | |
| 797 | | | Georg von Waldenfels Bio from Clifford Chance Website | | 403, 802, 901 |
| 798 | | | Steeb Bio from CMG Website | | 403, 802, 901 |
| 799 | GTF00027244 | GTF00027260 | Masters Series Hamburg Tournament Revenues report | | |
| 800 | GTF00043344 | GTF00043362 | Presentation - Rothenbaum Sport GmbH - 2006 and 2007 Budget | | |
| 801 | GTF00008557 | GTF00008558 | Redlined draft of answers to potential interview questions to Walter Knapper regarding 2005 tournament (in German) | | |
| 802 | GTF00027993 | GTF00027993 | Chart of 2006 and 2007 Hamburg Tournament attendance figures (in German) | | |
| 803 | GTF00000256 | GTF00000259 | Article - "From Green Grass to Red Clay, The History of Rothenbaum" | | |
| 804 | GTF00054536 | GTF00054537 | Letter - Bartl to Koring (in German) | | |
| 805 | ATP0070384 | ATP0070386 | ATP Tour Official Player Acceptance List | 5/5/1997 | 901 |
| 806 | ATP0255661 | ATP0255677 | Letter - Richmond to Tournament Directors with attached Memorandum from Miles to Blumberg, Bucholz, MacGill, Pasarell re Tour Format Changes | | 802, 901 |
| 807 | QFT00000035 | QFT00000036 | Proposal for a new Calendar System | | |
| 808 | GTF00037811 | GTF00037811 | Bitzer Responsibilities list | | |
| 809 | GTF00084123 | GTF00084128 | Lease Agreement between QTF and DTB | | |

REDACTED VERSION – PUBLICLY FILED

55

## EXHIBIT 3(o) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 810 | GTF00082826 | GTF00082829 | Memorandum of Understanding between DTB and QTF | | |
| 811 | MC00049874 | MC00049875 | "Notes of ITF President's Meeting with Selected National Association-owned Tournaments" | | |
| 812 | ATP0206828 | ATP0206829 | Letter - de Villiers to Dominguez re Meeting with Sixta, Sergio and Walliser | | 802, 901 |
| 813 | | | Letter - Walliser to ATP Board of Directors | 7/25/2007 | |
| 814 | ATP0268978 | ATP0268991 | "European Group General Meeting Summary" (Switzerland) | 1/9/2007 | |
| 815 | GTF00001261 | GTF00001261 | Email - Knapper to Azmy re Info | 3/29/2007 | |
| 816 | GTF00089453 | GTF00089453 | Email - Knapper to Walliser re ATP lawsuit | 6/26/2007 | |
| 817 | GTF00001260 | GTF00001260 | Email - Knapper to other European tournament directors regarding filing of complaint against ATP | 3/29/2007 | |
| 818 | MC00035643 | MC00035651 | Newspaper article - "Hamburg Masters, ATP in lawsuit" | 3/30/2007 | 403, 802, 901 |
| 819 | | | Internet Article - "An interview with Adam Barret and Butch Buchholz" | | 403, 802, 901 |
| 820 | | | Article - "Hamburg Masters remains upbeat in fight with ATP in Delaware" | 4/11/2008 | 403, 802, 901 |
| 821 | | | F.R.C.P. Rule 26(a)(2)(B) Report of Jonathan Walker | 1/14/2008 | |
| 822 | | | F.R.C.P. Rule 26(a)(2)(B) Responsive Report of Jonathan Walker | 1/28/2008 | |
| 823 | | | Responsive Expert Report of Peter R. Greenhalgh | 1/28/2008 | |
| 824 | ATP0135864 | ATP0135869 | Email from F. Benoit to AllMonitoring@atptennis.com regarding Feb. 9, 2004 media clippings | 2/9/2004 | 802, 901, 402, 403 |
| 825 | ATP0542963 | ATP0542970 | Letter - Young to Wim Buitendijk Enclosing Revised Transfer Agreement and Revised Schedule of Payments | 7/27/1998 | 106, 802, 901 |

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 825 | ATP0542971 | ATP0542973 | Email - Jansen to Anson and Kloster-Kemper re meeting in Monaco | 6/3/2007 | 106, 802, 901 |
| 826 | ATP0209528 | ATP0209530 | Memorandum entitled "Summary of Tournament Requests for Prize Money Changes" | 2004 | 802, 901, 1002 |
| 827 | ATP0295869 | ATP0295871 | Letter - Tournament directors to De Villiers regarding changes to doubles competition | 10/6/2005 | |
| 828 | ATP0054052 | ATP0054056 | Email from Zeljko Franulovic to Etienne De Villiers attaching two letters regarding the proposed changes to the ATP rules | 1/11/2007 | |
| 829 | GTF0001077 | GTF0001078 | Email - Birnes to Richter re correspondence of January 5, 2007 | 1/12/2007 | |
| 830 | MC0001723 | MC0001724 | Letter - Dominguez to Cambra, Palmieri, and Knapper re proposed changes to ATP structure | 9/23/2006 | |
| 831 | MC0036668 | MC0036668 | Email - Franulovic to Knapper re draft letter to Etienne De Villiers form European tournament directors | 10/6/2006 | |
| 832 | MC0001731 | MC0001734 | Letter - Presidents of the German, Monaco, and Italian Tennis Federation to Christian Bimes regarding November 1, 2006 Paris meeting | 11/26/2006 | |
| 834 | | | Printout from CMG Website re: Nord-LB Open | | 403, 802, 901 |
| | | | Email - Bradshaw to All Officials ATP Sups, Baldwin, Sanches, Di Dio, Carmelo, Hardisty, Friemel, Bradshaw, Armstrong, Herfel, Kaufman, Kinloch, Graff, Madl, Madlindi, Mark, McKewan, Michel, Pereira, Bravo, Peick, Romano, Schmid, Sohns, Kalberg, re Special Events Rule | | 802, 901 |
| 835 | ATP0000843 | ATP0000845 | Reminder | 5/20/2004 | |
| 836 | ATP0012921 | ATP0012921 | Tournament considered for purchase by tour | 7/27/1998 | |
| 837 | ATP0012922 | ATP0012922 | Membership Transfers - Cummulative since 1991 | 1991 | |

REDACTED VERSION – PUBLICLY FILED

57

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 838 | ATP0013146 | ATP0013147 | Fax - Miles to ATP Tour Board of Directors | 7/23/1997 | 802, 901 |
| 839 | ATP0013166 | ATP0013180 | Fax - Miles to ATP Tour Board of Directors with attached articles from New Haven newspaper about guarantees on the ATP Tour and the Championship Series events | 8/6/1997 | 802, 901 |
| 840 | ATP0013181 | ATP0013182 | Email - Miles to Childers re Good News of the Day 567 | 8/6/1997 | 802, 901 |
| 841 | ATP0013183 | ATP0013183 | Email - Miles to Childers re Courier No. 1 | 8/6/1997 | 802, 901 |
| 842 | ATP0013184 | ATP0013184 | Email - Miles to Childers re London Event | 8/19/1997 | 802, 901 |
| 843 | ATP0054048 | ATP0054051 | Letter - de Villiers to Franulovic re letter from January 11, 2007 from Franulovic | 1/19/2007 | |
| 844 | ATP0054052 | ATP0054052 | Email - Franulovic to various recipients with attachments | 1/11/2007 | |
| 845 | ATP0067865 | ATP0067885 | Email - Tukker to Tukker, de Villiers, Webster with attached Prize Money Earned by Top 20 Category | | 802, 901 |
| 846 | ATP0016070 | ATP0016077 | Letter - Babcock to Young with Grand Slam/ATP Tour Contract and exhibit | 10/6/1995 | 901 |
| 847 | ATP0072866 | ATP0072867 | Letter - Miles to Schmid | 5/17/2005 | 802, 901 |
| 848 | ATP0074112 | ATP0074115 | Fax - Webster to Miles re ATP Reform | 2/11/2003 | |
| 849 | ATP0074945 | ATP0074951 | Fax - Webster to Miles re Outstanding Tournament Issues | 7/19/2002 | |
| 850 | ATP0082543 | ATP0082639 | ATP Tour Financial Review | 11/1/2006 | 901 |
| 851 | ATP0083757 | ATP0083890 | Business Plan Working Notebook | | |
| 852 | ATP0127138 | ATP0127144 | ATP Information Document - Injuries, Retirements and Walkovers | 1/20/2003 | 901 |
| 853 | ATP0162852 | ATP0162859 | Attendance at Tournaments 2000-2007 | | 901 |
| 854 | ATP0204446 | ATP0204452 | Bonus Pool 2007 | | 901 |
| 855 | ATP0205345 | ATP0205356 | Ticketing Revenue Analysis | | 901 |
| 856 | ATP0206597 | ATP0206605 | Tournament Valuation and Cash Flow Summary | | |
| 857 | ATP0206837 | ATP0206838 | Discussion Points for Meeting with de Villiers | 5/11/2006 | |

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 858 | ATP0206969 | ATP0206981 | Business Plan Summary - Rome Tournament 2005-2011 | | 802, 901 |
| 859 | ATP0224369 | ATP0224371 | Email - Martinelli to Thornhill re Article "New Look on Tap for Men's Tennis" | 12/10/1999 | |
| 860 | ATP0262930 | ATP0263145 | US Open Series - 2005 Recap Report | 11/1/2005 | 802, 901 |
| 861 | ATP0318647 | ATP0318690 | Income Statement Average by Series | | 802, 901 |
| 862 | ATP0319098 | ATP0319099 | Players Compensation as % of Total Revenue 2001-2006 | | 802, 901 |
| 863 | ATP0333189 | ATP0333195 | Email - Jefferson to Sales Team re Title & Main & Presenting | 9/30/2003 | 802, 901 |
| 864 | ATP0335501 | ATP0335501 | Email - Silva to Various Recipient re New Plan | 3/28/2006 | 802, 901 |
| 865 | ATP0352834 | ATP0352841 | TV Charts (Las Vegas) | 4/25/2007 | 802, 901 |
| 866 | ATP0381818 | ATP0381823 | Summary of Rule Changes for 2007 | 11/26/2006 | |
| 867 | ATP0444057 | ATP0444058 | Email - Eltingh Various Recipients re 2008 Calendar | | |
| 868 | ATP0538708 | ATP0538710 | Purchase and Transfer Agreement re Kitzbuhel Tournament | 10/30/2006 | |
| 869 | ATP0538711 | ATP0538729 | Total Tournaments Played by ATP Player 2000-2007 | 8/30/2007 | 802, 901 |
| 870 | ATP0538730 | ATP0539178 | Total Tournaments Played by ATP Player 2000-2007 | | 802, 901 |
| 871 | ATP0540046 | ATP0540047 | Email - Bharat to Drewett re Letter for Application for Approval of Sale Agreement Dubai ISG Sanction | 1/5/2007 | 802, 901 |
| 872 | ATP0540180 | ATP0540218 | Round Robin Clippings --Executive Summary | | 802, 901 |
| 873 | ATP0540403 | ATP0540403 | Letter - Tong to Board of Directors of ATP re Proposed Transfer of Entire Shareholding | 5/8/2007 | 802, 901 |
| 874 | ATP0540457 | ATP0540081 | Wimbledon ATP Board Meeting | 6/15/2007 | 802, 901 |
| 875 | | | WITHDRAWN | | |
| 876 | ATP0540856 | ATP0540857 | Purchase/Transfer Agreement between Circolo Del Tennis and ATP | 12/1/2006 | 802, 901 |

REDACTED VERSION – PUBLICLY FILED

59

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|-------|-------------|-------------|-------------|------|------------|
| 877 | ATP0551969 | ATP0551970 | Email - Contest to ATP Partners re Article | 7/3/2007 | 802, 901 |
| 878 | GTF00001801 | GTF00001844 | "London Awarded 2009 ATP World Tour Final" Memorandum - Miles to Tournament Members re ATP Board Strategic Planning | 1/23/2003 | 802, 901 |
| 879 | GTF00015554 | GTF00015560 | Faxed - Webster to Sanders and Thiemann re Tennis Masters Series Message Points | 5/16/2000 | 802, 901 |
| 880 | | | www.barclaysdubaitennischampionship.com/3/news/2007/news2.asp | | 403, 802, 901 |
| 881 | | | AAMI Classic October 24, 2006 press release, http://www.aamiclassic.com.au/files/Media%20Release%2024.10.07.pdf | | 403, 802, 901 |
| 882 | | | ATP 2007 Calendar | | 403, 802, 901 |
| 882.A | | | WTA 2007 calendar | | 402, 403, 901 |
| 883 | | | http://www.qatar-german-open.org/ | | 901, 402, 403 |
| 884 | | | http://www.qatartennis.org/qto2007/index.html | | 901 |
| 885 | | | "Australian Open builds sponsor partnerships," October 2, 2007. http://www.australianopen.com/en_AU/news/articles/2007-10-02/200710021191356893312.html | | 402, 403, 901, 802 |
| 886 | | | "NFL Signs On For FANLinks - Innovative New Service From Nielsen Sports and ACNielsen," August 22, 2005. http://us.acnielsen.com/news/20050822.shtml | | 402, 403, 802, 901 |
| 887 | | | "Top 20 Sports Shows for Oct 15-21," Nielsen Media data. http://txbythenumbers.com/2007/11/02/top-sports-shows-oct-15-21/1595 | | 402, 403, 802, 901 |
| 888 | | | http://beta.wtf.com | | 402, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

60

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| | | | EXHIBIT 3(b) TO FINAL PRETRIAL ORDER | | |
| 889 | | | http://larrylcummings.com/sitebuildercontent/site builderfiles/2006turnfacts.pdf | | 402, 403, 802, 901 |
| 890 | | | http://www.aamiclassic.com.au | | 402, 403, 802, 901 |
| 891 | | | http://www.atptennis.com | | 901 |
| 892 | | | http://www.championseriestennis.com | | 402, 403, 802, 901 |
| 893 | | | http://www.davisicup.com | | 402, 403, 802, 901 |
| 894 | | | http://www.georgiadogs.com/ViewArticle.dbml?D B_OEM_ID=8800&ATCLID=752430 | | 402, 403, 802, 901 |
| 895 | | | http://mirror1.german-open.net/compresso/_rubric/index.php?rubric=31 | | 402, 403, 802, 901 |
| 896 | | | http://www.itftennis.com | | 802, 901 |
| 897 | | | http://www.nascar.com | | 402, 403, 802, 901 |
| 898 | | | http://www.rogerfederer.com | | 802, 901 |
| 899 | | | http://www.sonyericssonwtatour.com | | 402, 403, 802, 901 |
| 900 | | | http://www.mutuamad-mastersmadrid.com/eng/index.htm | | 802, 901 |
| 901 | | | http://www.thebattleofsurfaces.com | | 402, 403, 802, 901 |
| 902 | | | http://www.usopenseries.com | | 402, 403, 802, 901 |
| 903 | | | "Initiative to track audience and sponsorship for French Tennis Open," Jacquie Bowser, Sports Marketing Bulletin. | 5/22/2007 | 402, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

61

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 904 | | | "Luxury Institute Survey: Ultra High Net Worth Consumer Rate the Masters, Wimbledon, and the America's Cup the Three Most Prestigious Elite Sporting Events in 2006," Business Wire, NA. | 6/6/2006 | 402, 403, 802, 901 |
| 905 | | | "Marketing Report Sponsorship – The vital statistics," Marketing, p. 38. | 8/30/2007 | 402, 403, 802, 901 |
| 906 | | | "Wimbledon's Marketing Grand Slam," Joyce Schwarz, iMedia Connection. | 7/13/2004 | 402, 403, 802, 901 |
| 907 | | | "U.S. Open Series Boosting Tennis Despite Annual Losses," Sports Business Journal. | 7/16/2007 | 802, 901 |
| 908 | | | "Understanding the Sport Sponsorship Process From a Corporate Perspective," Journal of Sport Management, v.10, p. 32-38. | 1996 | 402, 403, 802, 901 |
| 909 | | | 2006 Official Guide to Professional Tennis | 2006 | 402, 403, 802, 901 |
| 910 | | | WITHDRAWN | | |
| 911 | | | 2007 Official Guide to Professional Tennis | 2007 | 402, 403, 802, 901 |
| 912 | | | Allen L. Sack and Gil Fried, "Pitching Women's Tennis to Corporate Sponsors: A Case Study of Pilot Pen Tennis," Sports Marketing Quarterly, V. 10, No. 2, pp 8-16. | 2001 | 402, 403, 802, 901 |
| 913 | | | Barget, Eric. "The economics of tennis." Handbook on the Economics of Sport. Ed. Wladimir Andreff and Stefan Szymanski. Northampton, MA: Edward Elgar Publishing, Inc. 418-431. | 2006 | 802, 901 |
| 914 | | | Cliff Drysdale, "Can Hamilton Jordan Save the ATP?" Tennis, p. 20. | 6/1987 | 402, 403, 802, 901 |
| 915 | | | Donna Doherty, "Here They Go! The Men Launch the ATP Tour," Tennis, pp. 40-45. | 1/1990 | 402, 403, 802, 901 |

61 of 96

REDACTED VERSION – PUBLICLY FILED

62

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|-------|-------------|-------------|-------------|------|------------|
| 916 | | | Fein, Paul, Tennis Confidential, Washington, D.C.: Brassey's, Inc. | 2002 | 402, 403, 802, 901 |
| 917 | | | WITHDRAWN | | |
| 918 | | | Kaplan, Daniel, "Racing forces tennis off road at Fox," Sports Business Journal. | 2/5/2001 | 402, 403, 802, 901 |
| 919 | ATP0540499 | ATP0540504 | Letter from the USTA to the ATP Discussing the USTA/ATP Strategic Alliance | 6/25/2007 | 402, 403, 802, 901 |
| 920 | | | Peter Alfano, "Tennis Notebook; W.C.T. to Maintain Business as Usual," New York Times. | 8/9/1988 | 402, 403, 802, 901 |
| 921 | | | Peter J. Graham, "Characteristics of Spectators Attending Professional Tennis Tournaments in Two Regions of the U.S.," Sport Marketing Quarterly, V. III, No. 3, p. 39. | 1994 | 402, 403, 802, 901 |
| 922 | | | Rines, Simon, "Driving Business Through Sport, Part 1: European Sports Marketing Data", International Marketing Reports, p. 133-134, 147-213 | 2007 | 402, 403, 802, 901 |
| 923 | | | Scanlon, Bill, 2004, Chapter 8, Bad News for McEnroe, New York: St. Martin's Press. | 2004 | 402, 403, 802, 901 |
| 924 | | | WITHDRAWN | | |
| 925 | | | Magazine Article - Tennis, January 1991, p. 11, - "ATP Chief Proposes Season-Finale Merger" | 1/1/1991 | 403, 802, 901 |
| 926 | ATP0054679 | ATP0054680 | Player Relations Culture | | 802, 901 |
| 927 | | | INTENTIONALLY OMITTED | | |
| 928 | ATP0054684 | ATP0054685 | ATP Foundation Board | | 802, 901 |
| 929 | ATP0054686 | ATP0054688 | Fax - Pasarell to Miles re Calendar | | 802, 901 |
| 930 | | | INTENTIONALLY OMITTED | | |
| 931 | ATP0540507 | ATP0540509 | Email re Berengere to Anson re Paris Sunday Start Request | 6/29/2007 | 802, 901 |
| 932 | | | http://www.usdoj.gov/atr/public/guidelines/hmg.htm | | 802, 901 |

REDACTED VERSION – PUBLICLY FILED

63

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 933 | | | "Cash demands undermine grass roots," June 23, 2003 http://news.bbc.co.uk/sport2/hi/tennis/wimbledon 2003/3013718.stm | | 402, 403, 802, 901 |
| 934 | | | Finn, Robin. "TENNIS: American Players Resist Davis Cup." The New York Times, Sept. 17, 1997 http://query.nytimes.com/gst/fullpage.html?res=9 902E5DA1533F934A2575AC0A961958260&sec =&spon=&pagewanted=2 | | 402, 403, 802, 901 |
| 935 | | | WITHDRAWN | | |
| 936 | | | WITHDRAWN | | |
| 937 | | | http://www.gpoaccess.gov/eop/2007/B60.xls | | 802 901 |
| 938 | | | http://www.ftb.org/markets/fxrates/historical/home.cfm | | 402, 403, 802, 901 |
| 939 | | | "Competitive Balance in Sports Leagues." Journal of Sports Economics, vol. 3(2), 2002 | | 402, 403, 802, 901 |
| 940 | | | "Game, set and cash." Sunday Business Post, June 24, 2007. | | 402, 403, 802, 901 |
| 941 | | | Baade, Robert A., and Laura J. Tiehen. "An Analysis of Major League Baseball Attendance, 1969-1987." Journal of Sport and Social Issues, vol. 14(1), 1990 | | 402, 403, 802, 901 |
| 942 | | | Clapp, Christopher M., and Jahn K. Hakes. "The Effect of New Stadiums on Attendance," Journal of Sports Economics, vol. 6(3), 2005 | | 402, 403, 802, 901 |
| 943 | | | Kaplan, Daniel. "How U.S. Open Profits hit a whopping $110M." Sports Business Journal, Aug. 17-Sept. 2, 2007. | | 402, 403, 802, 901 |
| 944 | | | Noll, Roger G. "Attendance and Price Setting," in Government and The Sports Business, The Brookings Institution | | 402, 403, 901 |
| 945 | | | WITHDRAWN | | |

REDACTED VERSION – PUBLICLY FILED

64

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 946 | | | WITHDRAWN | | |
| 947 | | | Tennis At The Crossroads: A Critique Of The Opportunities And Problems Facing Men's Professional Tennis, Florida, 1998 | | 402, 403, 802, 901 |
| 948 | | | Wise, Aaron N., and Bruce A. Meyer, "The Economics of Major U.S. Professional Sports Leagues," International Sports Law and Business, Cambridge: Kluwer, 1997 | | 402, 403, 802, 901 |
| 949 | | | WITHDRAWN | | |
| 950 | | | WITHDRAWN | | |
| 951 | | | sports.espn.go.com/nfl/attendance | | 402, 403, 802, 901 |
| 952 | | | WITHDRAWN | | |
| 953 | | | stubhub.com/cincinnati-bengals-tickets/bengals-ticketcenter/?gcid=C12289Z245-tixnav | | 402, 403, 802, 901 |
| 954 | | | Sports Business Journal | 1/26/2007 | 402, 403, 802, 901 |
| 955 | | | Econometric Models and Economic Forecasts, 4th Edition, Pindyck and Rubinfeld, Sec. 11.3 | | 402, 403, 802, 901 |
| 956 | | | http://repositories.cdlib.org/cgi/viewcontent.cgi?article=1049&context=ctre | | 402, 403, 802, 901 |
| 957 | | | CBA Between MLS and MLSPU 2004 through 2010 available at http://www.mlsplayers.org/files/collective_bargaining_agreement_final.pdf | | 402, 403, 802, 901 |
| 958 | | | Top 10 MLS Player Salaries available at www.washingtonpost.com/wp-dyn/content/article/2006/04/25/AR2006042602293.html | | 402, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

65

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|-------|-------------|-------------|-------------|------|------------|
| 959 | ATP0221810 | ATP0221826 | ATP Tour, Inc. Consolidated financial statements (Years ended December 31, 1995 & 1994) | 3/14/1996 | |
| 960 | ATP0618458 | ATP0618471 | Spreadsheet - General Ledger Trial Balance for Period Ending 12/31/2001 | | 403, 802, 901 |
| 961 | ATP0082512 | ATP0082541 | ATP Tour, Inc. Tournament Financial Disclosure | | |
| 962 | ATP0013013 | ATP0013029 | ATP Tour, Inc. Consolidated financial statements (Years ended December 31, 1997 & 1996) | 3/6/1998 | |
| 963 | ATP0100933 | ATP0100949 | ATP Tour, Inc. Consolidated financial statements (Years ended December 31, 1998 & 1998) | 3/30/2000 | |
| 964 | ATP0079790 | ATP0079806 | ATP Tour, Inc. Consolidated financial statements (Years ended December 31, 2000 & 1999) | 2/23/2001 | |
| 965 | ATP0079771 | ATP0079789 | ATP Tour, Inc. Consolidated financial statements (Years ended December 31, 2001 & 2000) | 2/22/2002 | |
| 966 | ATP0079746 | ATP0079769 | ATP Tour, Inc. Consolidated financial statements (Years ended December 31, 2002 & 2001) | 3/7/2003 | |
| 967 | ATP0079730 | ATP0079745 | ATP Tour, Inc. Consolidated financial statements (Years ended December 31, 2003 & 2002) | 3/19/2004 | |
| 968 | ATP0079716 | ATP0079729 | ATP Tour, Inc. Consolidated financial statements (Years ended December 31, 2004 & 2003) | 3/18/2005 | |
| 969 | ATP0079700 | ATP0079714 | ATP Tour, Inc. Consolidated financial statements (Years ended December 31, 2005 & 2004) | 3/20/2006 | |

REDACTED VERSION – PUBLICLY FILED

66

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 970 | ATP0099108 | ATP0099121 | ATP Tour, Inc. and Subsidiaries Consolidated financial Statements (Years ended December 31, 2006 & 2005) | 3/2007 | 403, 802, 901 |
| 971 | ATP0617866 | ATP0617862 | Comparison of Weeks revenues report | | |
| 972 | | | http://tennis-data.co.uk/alldata.php | | 402, 403, 802, 901 |
| 973 | | | http://www.arag-world-team-cup.com/f/en | | 402, 403, 802, 901 |
| 974 | | | WITHDRAWN | | |
| 975 | | | WITHDRAWN | | |
| 976 | | | WITHDRAWN | | |
| 977 | | | WITHDRAWN | | |
| 978 | | | WITHDRAWN | | |
| 979 | | | WITHDRAWN | | |
| 980 | | | WITHDRAWN | | |
| 981 | | | WITHDRAWN | | |
| 982 | | | Opinion and Order - Kentucky Speedway, LLC v. National Association of Stock Auto Racing, Inc. (U.S.D.C. Eastern District of Kentucky Northern Division – Civil Action No. 05-138) | 1/7/2008 | 402, 403, 802, 901 |
| 983 | | | INTENTIONALLY OMITTED | | |
| 984 | ATP0054061 | ATP0054066 | Letter - Lawler to de Villiers | 1/15/2007 | 901 |
| 985 | GTF00078428 | GTF00078429 | Email - Steeb to Cohen (Document in German) | 11/15/2007 | |
| 986 | GTF00077960 | GTF00077962 | Email - Steeb to Cohen re Potential Financial Sponsor (Document in German) | 11/15/2007 | |
| 987 | QFT00000383 | QFT00000383 | Key Components of Proposed 2009 Round by Round Proposal | | |
| 988 | QFT00000661 | QFT00000662 | 2004 Proposed Player-Media Modifications | | |
| 989 | | | QTF Financial Statements | 3/31/2007 | 901 |
| 990 | | | QTF Financial Statements | 3/31/2006 | 901 |
| 991 | | | QTF Financial Statements | 3/31/2005 | 901 |

REDACTED VERSION -- PUBLICLY FILED

67

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 992 | | | QTF Financial Statements | 3/31/2004 | 901 |
| 993 | | | QTF Financial Statements | 3/31/2003 | 901 |
| 994 | QFT0000119 | QFT0000131 | Agreement for the Purchase of Rights between QTF and Eurosport | | |
| 995 | QFT0000346 | QFT0000347 | Email - Drewett to Army re ATP Partnership Summary | 10/24/2007 | |
| 996 | MC0002898 | MC0002957 | The Super 9 Members ATP Tour, Inc. and Tennis Properties Limited Shareholders' Agreement, relating to Tennis Properties Limited | 4/23/1999 | 901 |
| 997 | | | Article - Reuters - "Nadal says packed calendar is destroying tennis in Europe" from http://www.reuters.com/articlePrint?articleId=USB 282220920080501 -- WITHDRAWN | 5/1/2008 | 802, 901 |
| 998 | | | Article - Times Online - "Outspoken Rafael Nadal slams ATP schedule" from http://www.timesonline.co.uk/tol/sport/tennis/articl e3854109.ece | 5/1/2008 | 802, 901 |
| 999 | | | Article - Washington Post - "For Chinese Athletes, Western-Style Perks, Sponsorships, Bonuses Showcase Shift to Capitalism in Sports" from http://www.washingtonpost.com/wp-dyn/content/article/2008/04/27/AR2008042702370 1_pf.html | 4/28/2008 | 402, 403, 802, 901 |
| 1000 | | | Article - Reuters - "Nadal slams ATP over crazy calendar" from http://uk.reuters.com/articlePrint?articleId=UKL20 13478820080420 | 4/20/2008 | 802, 901 |
| 1001 | | | | | |

REDACTED VERSION – PUBLICLY FILED

68

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1002 | | | Article - Reuters - "Nadal: Schedule ruining tennis in Europe, endangering careers" from http://sports.espn.go.com/espn/print?id=3376347 &type=story | 5/1/2008 | 802, 901 |
| 1003 | GTF00085867 | GTF00085869 | Alternatives, Requests DTB, Planned Calendar 2009 | | 106 |
| 1004 | GTF00085930 | GTF00085931 | Letter - Waldenfels to Mohammad re Restructuring of the ATP Tour, Here: Update with handwritten notes | 3/1/2007 | PRIV |
| 1005 | GTF00085771 | GTF00085784 | Press Conference - BNP Paribas Masters 2007 - Press Conference with the President of the French Tennis Federation (FFT), Christian Bîmes | 10/28/2007 | |
| 1006 | GTF00082995 | GTF00082996 | Email - Kassing to Takhtak re Change of the Tier I Tournament Berlin | 4/19/2004 | 402, 403 |
| 1007 | GTF00082991 | GTF00082991 | Email - Kassing re Ladies German Open Berlin, Tier I/Masters Series Hamburg (in German) | 5/24/2004 | 402, 403 |
| 1008 | GTF00093039 | GTF00093066 | Presentation - German Tennis Federation Rothenbaum Sport GMBH - Settlement Presentation to the ATP Tour, Inc., Board of Directors (MacGill, Gravelyn, Cohen) | 3/21/2007 | 403 |
| 1009 | | | ATP Summary Judgment Letter to Judge Sleet | 2/1/2008 | |
| 1010 | | | GTF Summary Judgment Letter to Judge Sleet with attached exhibits 1-6 | 2/1/2008 | |
| 1011 | | | ATP Summary Judgment Response Letter to Judge Sleet with attached exhibit A | 2/8/2008 | |
| 1012 | | | GTF Summary Judgment Response Letter to Judge Sleet with attached exhibit A-C | 2/8/2008 | |
| 1013 | | | ATP Letter to Judge Sleet re Summary Judgment | 2/15/2008 | |

REDACTED VERSION – PUBLICLY FILED

69

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1014 | | | GTF Letter to Judge Sleet re Summary Judgment | 2/15/2008 | |
| 1015 | | | INTENTIONALLY OMITTED | | |
| 1016 | GTF00120359 | GTF00120361 | Letter - Massey to Kastner with Amendment to the RICOH/ATP Agreement | 1/15/2007 | |
| 1017 | GTF00120362 | GTF00120372 | Letter - Massey to Kastner with ATP/RICOH Agreement and exhibits | 1/9/2006 | |
| 1018 | ATP0054628 | ATP0054629 | RICOH Europe B.V. - Sponsorship Agreement between ATP and RICOH - Executive Summary | | 802, 901 |
| 1019 | ATP0208188 | ATP0208193 | Spreadsheet - Sponsorship Revenues | | |
| 1020 | | | ATP Sponsors from http://mirror1.german-open.net/conpresso/_nos/debar/index.php?rubric=Sponsors+%5BEN%5D | | 402, 403, 802, 901 |
| 1021 | GTF00120335 | GTF00120358 | ATP/Mercedes Tournament Agreement between ATP and DTB | 1/1/2006 | |
| 1022 | GTF00120359 | GTF00120373 | Amendment to the Ricoh/ATP Agreement with letter | 9/1/2006 | |
| 1023 | | | Article - ATP and Mercedes-Benz partnership to conclude at the end of current agreement in December 2008, Stuttgart from http://www.autospectator.com/cars/mercedes-benz/0028308-atp-mercedes-benz-partnership-conclude-end-current-agreement-december-2008 | 9/28/2007 | 802, 901 |
| 1024 | | | Rulebook–PGA European Tour | 2008 | 402, 403, 802, 901 |
| 1025 | | | PGA Player Handbook and Tournament Regulations | 2008 | 402, 403, 802, 901 |
| 1026 | | | WITHDRAWN | | |
| 1027 | ATP0618013 | ATP0618044 | Spreadsheet - Prize Money Distribution Analysis | | 802, 901 |

REDACTED VERSION – PUBLICLY FILED

**EXHIBIT 3(b) TO FINAL PRETRIAL ORDER**

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1028 | ATP0591040 | ATP0591063 | ATP "250" Tournament Application (Buenos Aires) | 10/2007 | |
| 1029 | ATP0593991 | ATP0593998 | Letter - Young to Bultendijk with Revised Transfer Agreement | | |
| 1030 | ATP0618057 | ATP0618070 | Matters Arising Indian Wells 2008 | | 802, 901 |
| 1031 | ATP0208527 | ATP0208528 | ATP Tour, Inc. Tournament Transfer Fee Revenue report (1991-2006) | | |
| 1032 | ATP0054915 | ATP0054922 | Fax - Miles to Beauvois re: DTB presentation | 5/5/1999 | |
| 1033 | ATP0136994 | ATP0136995 | Email - Silva to Carter re: Monte Carlo | 4/19/2004 | |
| 1034 | ATP0276023 | ATP0276024 | Email - de Villiers to Clz, Klosterkemper re: calendars | 3/4/2006 | 802, 901 |
| 1035 | ATP0344212 | ATP0344214 | Email - Caujolle to de Villiers re: Paris | 5/20/2006 | |
| 1036 | | | WITHDRAWN | | |
| 1037 | ATP0078485 | ATP0079064 | "Strategic Planning Process - Final documentation" report | 10/2002 | |
| 1038 | ATP0008335 | ATP0008340 | ATP Worldwide Attendance report | 4/6/2007 | |
| 1039 | | | Video - QI Zong Stadium - Tennis Masters Cup Shanghai 2005-2007 from http://www.masters-cup.com/4/common/TrackliA.asp?file=mms//wm.world.mil-streaming.net/media/atp/video/tmc/qizhong_stadium_high.wmv | | 403, 802, 901 |
| 1040 | | | Photos of Madrid Stadium from http://www.perraultarchitecte.com/fr/proj/proj/3/diaporama.htm | | 802, 901 |
| 1041 | | | Photos of Madrid Stadium from http://urbanity.blogsome.com/2007/06/21/centro-de-tenis-cala-magica-madrid-dominique-perrault/ | | 802, 901 |
| 1042 | ATP0387793 | ATP0387797 | Memorandum - Settles re Felgate, Fitzgerald, Solomon re Prize money Payment Analysis | 4/20/2000 | 802, 901 |

REDACTED VERSION – PUBLICLY FILED

71

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1043 | ATP0180889 | ATP0180893 | Memorandum - Settles to Felgate, Fitzgerald, Solomon re Prize money Payment Analysis | 5/17/2000 | 802, 901 |
| 1044 | ATP0588187 | ATP0588189 | Email - Galloway to ATP Board re Davis Cup Points and Olympics | 10/18/2007 | 802, 901 |
| 1045 | ATP0198622 | ATP0198625 | 2008 Olympic Calendar Issues | | 802, 901 |
| 1046 | ATP0618116 | ATP0618154 | Presentation - 2009 Branding Development Update for the ATP Board of Directors (Indian Wells) | 3/2008 | 802, 901 |
| 1047 | | | Article - "Open TV deal altered, CBS, USTA lower rights fee, add revenue sharing, broadcasts" from http://www.sportsbusinessjournal.com/index.cfm?fuseaction-article.main&articleid=55078 | 5/7/2007 | 402, 403, 802, 901 |
| 1048 | | | Article - "2008 Pacific Life Open Achieves Attendance Milestones" from http://www.pacificlifeopen.com/1/news/newsarticle_888.asp | 4/9/2007 | 802, 901 |
| 1049 | | | Website - Indian Wells Tennis Garden - "Welcome to Southern California's Ultimate Tennis Destination" with Stadium Maps from http://www.iwtg.net/ | | 802, 901 |
| 1050 | | | INTENTIONALLY OMITTED | | |
| 1051 | | | Mutua Madrilena Masters Madrid - "Magic Box Project 2009" from http://www.mutuamad-mastersmadrid.com/eng/eventinfo_2009.htm | | 802, 901 |
| 1052 | | | Article - "Federer Clinches Fourth Masters Cup Crown" from http://www.masters-cup.com/1/home/ | | 802, 901 |
| 1053 | | | Tennis masters Cup Shanghai, Qi Zhong Stadium from http://www.masters-cup.com/3/stadium/ | | 802, 901 |

REDACTED VERSION – PUBLICLY FILED

72

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1054 | | | "Photo Gallery 2005, Qi Zhong Stadium Unveiled" from http://www.masters-cup.com/4/photogallery/2005/default.asp?event=2005-10-03 | | 802, 901 |
| 1055 | | | Website - Rogers Cup Toronto and Montreal from http://www.rogerscup.com/portal/default.asp | | 802, 901 |
| 1056 | | | Cincinnati Tennis Tournaments - ATP masters Series WTA Tour from http://www.cincytennis.com/1/en/default.asp | | 802, 901 |
| 1057 | | | Cincinnati Seating Chart from http://www.cincytennis.com/1/en/tickets/seatingchart.html | | 802, 901 |
| 1058 | | | Masters Series Monte Carlo from http://montecarlo.masters-series.com/1/en/home/default.asp | | 802, 901 |
| 1059 | | | "Monte-Carlo Tennis Tournament Event Information for Masters Series Monte-Carlo Tennis" with General Map from http://montecarlo.masters-series.com/4/en/event/default.asp | | 802, 901 |
| 1060 | | | http://www.tennistours.com/event_pages/other/rome/images/stadium.jpg | | 802, 901 |
| 1061 | | | www.dtb-tennis.de | | 901 |
| 1062 | | | Deutscher Tennis Bund Map from http://www.dtb-tennis.de/AmRothenbaum_en/print/6384.php?page= | | 901 |
| 1063 | | | Deutscher Tennis Bund Site Diagram from http://www.dtb-tennis.de/AmRothenbaum_en/print/9088.php?page= | | 901 |

72 of 96

REDACTED VERSION – PUBLICLY FILED

73

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1064 | | | "Masters Series Hamburg" May 10 to 18, 2008 from http://www.dtb-tennis.de/AmRothenbaum_en/2894.php?selected=8453 | | 901 |
| 1065 | | | BNP Paribas Masters from http://www.ftt.fr/bnpparibasmasters/2007_en/default.asp | | 802, 901 |
| 1066 | | | Barclays Dubai Tennis Championships 2008 - Stadium Map from http://www.dubaitennischampionships.com/4/map.asp | | 802, 901 |
| 1067 | PD-YOM0000024 | PD-YOM0000026 | Policy Statement Regarding Proposed Transfers | | 403, 802, 901 |
| 1068 | | | Article - Sport Media Technology - No seven-year tennis itch for Gearhouse Broadcast | | 402, 403, 802, 901 |
| 1069 | | | Article - Sport Business International - Top of the World, John Goodbody examines the annual ViewerTrack global trends report from Initiative Sports Futures | 3/2008 | 402, 403, 802, 901 |
| 1070 | | | Article - Sport Business International - Blooming Marvelous | 3/2008 | 402, 403, 802, 901 |
| 1071 | | | Article - Sport Business International - Opportunity Knocks | 3/2008 | 402, 403, 802, 901 |
| 1072 | | | Article - Sport Business International - The Olympic effect? | 3/2008 | 402, 403, 802, 901 |
| 1073 | | | Article - Sport Business International - Country on a mission | 3/2008 | 402, 403, 802, 901 |
| 1074 | | | Article - Sport Business International - Map of Regeneration | 3/2008 | 402, 403, 802, 901 |
| 1075 | | | Hamburg BG Triathlon World Cup - International Triathlon Trade Fair - Exhibitions Info (July 5/6, 2008) | | 402, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

74

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1076 | | | http://www.daviscup.com/news/newsarticle.asp?articleid=14605 | | 402, 403, 802, 901 |
| 1077 | | | Article - The New York Times - On a Slow Court, Spain is Quicker from | | 402, 403, 802, 901 |
| 1078 | ATP0615508 | ATP0615508 | Email - Galloway to ATP Board, Management Committee, Fisher, Morris re Summary of Call Last Night | 7/13/2007 | 802, 901 |
| 1079 | ATP0615506 | ATP0615507 | Email - Eitingh to Galloway, ATP Board, Management Committee, Fisher, Morris re Summary Call of Last Night | 7/13/2007 | 403, 802, 901 |
| 1080 | ATP0615471 | ATP0615478 | Email - Silva to Player Council re Board News with Spreadsheet 2009/2010 Calendar | 7/26/2006 | 403, 802, 901 |
| 1081 | ATP0615464 | ATP0615464 | Email - Silva to Jovanovic, Rogers, Eitingh re Player Meeting in Montreal | 7/28/2007 | 403, 802, 901 |
| 1082 | ATP0615353 | ATP0615354 | AMS - 1000 Events: Key Parameters Comparisons | | 403, 802, 901 |
| 1083 | ATP0615351 | ATP0615352 | Email - Galloway to Jovanovic, Eitingh, Rogers, de Villiers, Silva re Masters events P & L's | 8/1/2007 | 403, 802, 901 |
| 1084 | ATP0615349 | ATP0615350 | Email - Silva to Eitingh, Rogers re Meeting | 8/6/2007 | 403, 802, 901 |
| 1085 | ATP0615260 | ATP0615261 | Email - Galloway to Management Committee, ATP Board re Confidential - Board Call this Thursday (Friday) | 9/18/2007 | 403, 802, 901 |
| 1086 | ATP0615203 | ATP0615204 | Email - Galloway to ATP Board, Management Committee | 10/12/2007 | 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

75

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1087 | ATP0615143 | ATP0615144 | Memorandum - Silva to Player Council re Rankings Systems | 10/24/2007 | 403, 802, 901 |
| 1088 | | | http://www.daviscup.com/about/history/milestones.asp | | 402, 403, 802, 901 |
| 1089.A | ATP0094587 | ATP0095635 | Letter - Galloway to ATP Tournament Members Enclosing CD-ROM containing ATP Articles of Incorporation and By-laws, ATP Organizational Information, ATP Board Summaries from 1998, ATP Sponsorship & Television Contracts, ATP Financial Information including Audits and Tax Returns, ATP Prize Money Information, ATP Pension Plan Information, ATP Calendars from 1990, ATP 2006 Official Rulebook | 5/17/2006 | 403, 802, 901 |
| 1089.A | ATP0094588 | ATP0094696 | Amended and Restated By-laws of ATP Tour Inc. | 10/22/1997 | 802, 901 |
| 1089.B | ATP0094697 | ATP0094702 | Restated Certificate of Incorporation of ATP Tour Inc. | 10/27/1999 | 802, 901 |
| 1089.C | ATP0094703 | ATP0094706 | Certificate of Amendment of Restated Certificate of Incorporation of ATP Tour Inc. | 2/27/2002 | 802, 901 |
| 1089.D | ATP0094707 | ATP0094710 | Certificate of Amendment of Restated Certificate of Incorporation of ATP Tour Inc. | 6/13/2003 | 802, 901 |
| 1089.E | ATP0094711 | ATP0094771 | ATP Organizational Information | | 802, 901 |
| 1089.F | ATP0094772 | ATP0094920 | ATP Board Summaries from 1998 | | 802, 901 |
| 1089.G | ATP0094921 | ATP0094926 | Significant ATP Sponsors and Television Agreements | | 802, 901 |
| 1089.H | ATP0094927 | ATP0095177 | ATP Financial Information including Audits and Tax Returns | | 802, 901 |
| 1089.I | ATP0095178 | ATP0095187 | ATP Prize Money Information | | 802, 901 |
| 1089.J | ATP0095188 | ATP0095356 | ATP Pension Plan Information | | 802, 901 |
| 1089.K | ATP0095357 | ATP0095391 | ATP Calendars from 1990 | | 802, 901 |
| 1089.L | ATP0095392 | ATP0095635 | ATP 2006 Official Rulebook | | 802, 901 |

REDACTED VERSION – PUBLICLY FILED

76

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1090 | ATP0172479 | ATP0172519 | Presentation - ATP Five Year Strategic Plan | | 802, 901 |
| 1091 | | | Email - Richmond to North American Tournaments, Latin American Tournaments re Prize Money Payment Analysis | 5/9/2008 | 402, 403, 802, 901 |
| 1092 | | | Presentation - Proposal to Improve the Payment of ATP Prize Money | 5/22/2003 | 402, 403, 802, 901 |
| 1093 | | | Images of Rothenbaum Stadium from http://www.dtb-tennis.de/AmRothenbaum_en/9737.php?selecte | | 901 |
| 1094 | | | Images of Rothenbaum Stadium from http://en.wikipedia.org/wiki/Image:Centre_Court_ | | 901 |
| 1095 | | | Images of Rothenbaum Stadium from http://beeldbank.bouwenmetstaal.nl/bb_detail.las sc?id=1397&a=s&1=1&1o=2 | | 901 |
| 1096 | | | Images of Rothenbaum Stadium from http://www.seatwave.nl/tennis-masters-series-hamburg-tickets/seizoen | | 901 |
| 1097 | | | Image of Rothenbaum Stadium from Google Earth | | 901 |
| 1098 | | | 2008 ATP New Tournament Insurance Proposal - Final | 11/11/2007 | 403, 802, 901 |
| 1099 | | | Press Release - G2 Signs Agreement with two | 7/1/2007 | 901 |
| 1100 | | | ATP Qatar Telecom German Open - a Tournament with Tradition- Tournament Facts | | 402, 403, 901 |
| 1101 | | | ATP LTTC "Rot-Weiß" from http://mirror1_german- | | 901 |
| 1102 | | | Article - DTB - "Ganz großes Tennis: Acht Jahre Masters Series in Hamburg" (in German) from http://www.dtb-tennis.de/7478_16409.php?selected=1067&sele cledsub=&selsubsub= | 4/30/2008 | 901 |

REDACTED VERSION – PUBLICLY FILED

77

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1103 | | | AM Rothenbaum - Image of Stadium from http://www.dtb-tennis.de/AmRothenbaum/10057_10211.php | | 403, 901 |
| 1104 | | | WITHDRAWN | | |
| 1105 | | | WITHDRAWN | | |
| 1106 | | | Tournament Reference CD Updated June 2007 | | 403, 901 |
| 1106.A | | | Letter - Cleek to ATP Tournament Members Enclosing CD-ROM with comprehensive information about the ATP | 6/1/2007 | 403, 802, 901 |
| 1106.B | | | Amended and Restated By-laws of ATP Tour, Inc. | 3/23/2006 | 403, 802, 901 |
| 1106.C | | | Restated Certificate of Incorporation of ATP Tour Inc. | 10/22/1997 | 403, 802, 901 |
| 1106.D | | | Certificate of Amendment of Restated Certificate of Incorporation of ATP Tour Inc. | 10/27/1999 | 403, 802, 901 |
| 1106.E | | | Certificate of Amendment of Restated Certificate of Incorporation of ATP Tour Inc. | 2/27/2002 | 403, 802, 901 |
| 1106.F | | | Certificate of Amendment of Restated Certificate of Incorporation of ATP Tour Inc. | 6/13/2003 | 403, 802, 901 |
| 1106.G | | | Certificate of Amendment of Restated Certificate of Incorporation of ATP Tour Inc. | 10/21/2005 | 403, 802, 901 |
| 1106.H | | | Certificate of Amendment of Restated Certificate of Incorporation of ATP Tour Inc. | 6/27/2006 | 403, 802, 901 |
| 1106.I | | | ATP Organizational Information | | 403, 802, 901 |
| 1106.J | | | ATP Board Summaries from 1998 | | 403, 802, 901 |
| 1106.K | | | Agreements | | 403, 802, 901 |
| 1106.L | | | Tax Returns | | 403, 802, 901 |
| 1106.M | | | ATP Prize Money Information | | 403, 802, 901 |
| 1106.N | | | ATP Pension Plan Information | | 403, 802, 901 |
| 1106.O | | | ATP Calendars from 1990 | | 403, 802, 901 |
| 1106.P | | | ATP 2007 Official Rulebook | | 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

78

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1107 | | | Book - Vainqueurs Winners 1946-1991, by | | 402, 403, 802, 901 |
| 1108 | ATP0545760 | ATP0545760 | Letter - Young to MacGill re 2003 Calendar | 11/7/2001 | 402, 403 |
| 1109 | | | Image of Indian Wells from Google Earth | | 802, 901 |
| 1110 | | | Pacific Life open - Tickets/Packages from | | 802, 901 |
| 1111 | | | WITHDRAWN | | |
| 1112 | | | WITHDRAWN | | |
| 1113 | | | Pacific Life Open - Stadium Map from http://www.pacificlifeopen.com/4/assets/common/ TrackIt.asp?file=/4/assets/pdfs/stadiummap.pdf | | 802, 901 |
| 1114 | ATP0068564 | ATP0068576 | Prize Money and Financial Commitment | 7/5/2007 | 802, 901 |
| 1115 | | | WITHDRAWN | | |
| 1116 | ATP0078347 | ATP0078359 | Presentation - Financial Report (Shanghai) | 11/2006 | 802, 901 |
| 1117 | ATP0078404 | ATP0078412 | Presentation - 2006 Budget Update - ATP (New | 8/28/2006 | 802, 901 |
| 1118 | ATP0208410 | ATP0208421 | Spreadsheet - Revenue Sharing Formula | | 802, 901 |
| 1119 | ATP0221605 | ATP0221611 | Letter - Scott to Gutkowski re Retreat with Board | 9/15/1997 | 802, 901 |
| 1120 | ATP0221648 | ATP0221691 | Fax - Miles to Blumberg (ProServ) with attached | 3/17/1987 | 802, 901 |
| 1121 | ATP0265417 | ATP0265437 | Player Promotion Programme | | 802, 901 |
| 1122 | ATP0259148 | ATP0259149 | Agreement between ATP and the undersigned | 10/20/1998 | 802, 901 |
| 1123 | ATP0568379 | ATP0568396 | Presentation - ATP Tournament Meeting - | 6/23/2007 | 802, 901 |
| 1124 | ATP0588399 | ATP0588402 | Letter - Jones to Galloway re Prize Money | 10/31/2007 | 802, 901 |
| 1125 | ATP0560106 | ATP0560149 | ATP 2007 Membership Benefits Handbook | | 802, 901 |
| 1126 | | | Pacific Life Open - Indian wells from | | 403, 802, 901 |
| 1127 | | | Sony Ericsson Open - Miami from http://www.sonyericssonopen.com/ | | 403, 802, 901 |
| 1128 | | | WITHDRAWN | | |
| 1129 | | | Internazionali BNL D'Italia - Rome from http://www.internazionalibnlditalia.it/1/default.asp | | 403, 802, 901 |
| 1130 | | | AM Rothenbaum - Hamburg from http://www.dtb-tennis.de/AmRothenbaum/ | | 901 |
| 1131 | | | WITHDRAWN | | |

REDACTED VERSION – PUBLICLY FILED

79

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|-------|-------------|-------------|-------------|------|------------|
| 1132 | | | WITHDRAWN | | |
| 1133 | | | Mutua Madrileña - Masters Madrid from http://www.tennis-masters-madrid.com/ | | 403, 901 |
| 1134 | | | BNP - Paribas Masters - Paris from http://www.bnpparibasmasters.org/ | | 403, 901 |
| 1135 | | | Tennis Masters Cup - Shanghai from http://www.masters-cup.com/1/home/ | | 403, 901 |
| 1136 | | | Dubai Tennis Championships from http://www.dubaitennischampionships.com/1/home/default.asp | | 403, 901 |
| 1137 | | | Article - Street &Smith's Sports Business Journal - Tennis Channel, ESPN complete slam with Open by John Ourand and Daniel Kaplan from http://www.sportsbusinessjournal.com/index.cfm?fuseaction=article_print&articleId&articleId | 5/12/2008 | 402, 403, 802, 901 |
| 1138 | | | Spreadsheet - 1995-2007 Year End Top 50 Player Rankings | | 403, 802, 901 |
| 1139 | ATP0595780 | ATP0595782 | Sony Ericsson WTA Tour Board Approves 2008 and 2009 Calendars, Doubles Enhancement & | 6/29/2007 | 402, 403, 802, 901 |
| 1140 | | | 2008 Sony Ericsson WTA Tour Official Rulebook | 2008 | 402, 403, 901 |
| 1141 | | | Amended and Restated by-laws of WTA Tour, Inc. | 6/28/2007 | 402, 403, 802, 901 |
| 1142 | | | 1998 Corel WTA Tour Calendar | 1998 | 402, 403, 802, 901 |
| 1143 | | | 1999 WTA Tour Calendar | 1999 | 402, 403, 802, 901 |
| 1144 | | | 2000 Sanex WTA Tour Calendar | 2000 | 402, 403, 802, 901 |
| 1145 | | | 2001 Sanex WTA Tour Calendar | 2001 | 402, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

80

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1146 | GTF00119143 | GTF00119144 | 2001 Sanex WTA Tour Calendar | 2001 | 402, 403 |
| 1147 | | | 2002 Sanex WTA Tour Calendar | 2002 | 402, 403, 802, 901 |
| 1148 | | | 2003 WTA Tour Calendar | 2003 | 402, 403, 802, 901 |
| 1149 | | | 2004 WTA Tour Calendar | 2004 | 402, 403, 802, 901 |
| 1150 | GTF00080184 | GTF00080186 | 2004 WTA Tour Calendar | 2004 | 402, 403 |
| 1151 | | | 2005 Sony Ericsson WTA Tour Calendar | 2005 | 402, 403, 802, 901 |
| 1152 | | | 2006 Sony Ericsson WTA Tour Calendar | 2006 | 402, 403, 802, 901 |
| 1153 | | | 2007 Sony Ericsson WTA Tour Calendar | 2007 | 402, 403, 802, 901 |
| 1154 | | | 2008 Sony Ericsson WTA Tour Calendar | 2008 | 402, 403, 802, 901 |
| 1155 | | | QTF Application for WTA Championship | 6/6/2007 | 402, 403, 802, 901 |
| 1156 | | | Article - Season to End in Doha, 2008-2010 from http://www.sonyericssonwtatour.com/3/newsroom/stories/?ContentID=1482 | 6/29/2007 | 402, 403, 802, 901 |
| 1157 | | | Letter - Scott to Mohammad re Roadmap 2010 Plan | 3/29/2007 | 402, 403, 802, 901 |
| 1158 | | | Email - Kaesig to Scott re German Open Berlin | 5/11/2004 | 402, 403, 802, 901 |
| 1159 | | | Spreadsheet - 2000-2007 Year End Prize Money Figures | | 403, 802, 901 |
| 1160 | | | WITHDRAWN | | |
| 1161 | ATP0197229 | ATP0197231 | General Ledger | 12/31/1998 | 802, 901 |
| 1162 | ATP0363223 | ATP0363260 | General Ledger | | 802, 901 |
| 1163 | ATP0618458 | ATP0618478 | General Ledger | | 802, 901 |

REDACTED VERSION – PUBLICLY FILED

81

**EXHIBIT 3(b) TO FINAL PRETRIAL ORDER**

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1164 | ATP0618071 | ATP0618101 | Financial Report Executive Summary | | |
| 1165 | ATP0549020 | ATP0549059 | Financial Report Executive Summary - | | |
| 1166 | | | Top 50 Withdrawals from Master Series Tournaments - 2005-2006 | | 403, 802, 901 |
| 1167 | | | 2000 Withdrawals and Late Withdrawals | | 403, 802, 901 |
| 1168 | | | 2001 Withdrawals and Late Withdrawals | | 403, 802, 901 |
| 1169 | | | 2002 Withdrawals and Late Withdrawals | | 403, 802, 901 |
| 1170 | | | 2003 Withdrawals and Late Withdrawals | | 403, 802, 901 |
| 1171 | | | 2004 Withdrawals and Late Withdrawals | | 403, 802, 901 |
| 1172 | | | 2005 Withdrawals and Late Withdrawals by Ranking | | 403, 802, 901 |
| 1173 | | | 2006 Withdrawals and Late Withdrawals by Tournament through Paris | | 403, 802, 901 |
| 1174 | | | 2007 Withdrawals and Late Withdrawals by Player through Paris | | 403, 802, 901 |
| 1175 | | | ATP Tour Inc - Promotion with General Ledgers for 2000-2007 | | 403, 802, 901 |
| 1176 | | | ATP Inc. General Ledger Trial Balance for Period Ending 12/31/2000 (Office Supplies Expenses) | | 403, 802, 901 |
| 1177 | | | ATP Inc. General Ledger Trial Balance for Period Ending 12/31/2000 (Marketing Expenses) | | 403, 802, 901 |
| 1178 | | | ATP Inc. General Ledger Trial Balance for Period Ending 12/31/2001 (Marketing Expenses) | | 403, 802, 901 |
| 1179 | | | ATP Inc. General Ledger Trial Balance for Period Ending 12/31/2001 (Employee, Travel, and other various expenses) | | 403, 802, 901 |
| 1180 | | | ATP Inc. General Ledger Trial Balance for Period Ending 12/31/2002 (Player Meeting Melbourne Expenses) | | 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

82

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|-------|-------------|-------------|-------------|------|------------|
| 1181 | | | ATP Inc. General Ledger Trial Balance for Period Ending 12/31/2002 (Marketing Expenses) | | 403, 802, 901 |
| 1182 | | | ATP Inc. General Ledger Trial Balance for Period Ending 12/31/2003 (No Entries) | | 403, 802, 901 |
| 1183 | | | ATP Inc. General Ledger Trial Balance for Period Ending 12/31/2003 (Marketing Expenses) | | 403, 802, 901 |
| 1184 | | | ATP Inc. General Ledger Trial Balance for Period Ending 12/31/2004 (Telephone Public Relations Expense) | | 403, 802, 901 |
| 1185 | | | ATP Inc. General Ledger Trial Balance for Period Ending 12/31/2004 (Marketing Expenses) | | 403, 802, 901 |
| 1186 | | | ATP Inc. General Ledger Trial Balance for Period Ending 12/31/2005 Telephone Public Relations Expense) | | 403, 802, 901 |
| 1187 | | | ATP Inc. General Ledger Trial Balance for Period Ending 12/31/2005 (Marketing Expenses) | | 403, 802, 901 |
| 1188 | | | ATP Inc. General Ledger Trial Balance for Period Ending 12/31/2006 (No Entries) | | 403, 802, 901 |
| 1189 | | | ATP Inc. General Ledger Trial Balance for Period Ending 12/31/2006 (Marketing Expenses) | | 403, 802, 901 |
| 1190 | | | ATP Inc. General Ledger Trial Balance for Period Ending 12/31/2007 (Marketing Expenses) | | 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

83

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1191 | | | ATP Inc. General Ledger Trial Balance for Period Ending 12/31/2007 (Various PR and Fan Expenses) | | 403, 802, 901 |
| 1192 | | | Top 50 Prize Money by Year 2000-2007 | | 403, 802, 901 |
| 1193 | | | 2007 Top 50 Withdrawals | | 403, 802, 901 |
| 1194 | | | WITHDRAWN | | |
| 1195 | | | Email - Scott to Kassig re German Open Berlin | 5/13/2004 | 402, 403, 802, 901 |
| 1196 | GTF00082935 | GTF00082936 | Email - Kassig to Boye re German Open Berlin | 5/14/2004 | 402, 403 |
| 1197 | | | Letter - Waidenfels to Scott re Tournament Sale & Tournament Lease with attachments | 7/12/2004 | 402, 403, 901 |
| 1198 | GTF00084114 | GTF00084116 | WTA Tour Tournament Request for Change | 8/2/2004 | 402, 403 |
| 1199 | | | WITHDRAWN | | |
| 1200 | | | WITHDRAWN | | |
| 1201 | GTF00084122 | GTF00084128 | Letter - Mohammad to Scott re QTF Lease Agreement with attachment | | 402, 403 |
| 1202 | | | WITHDRAWN | | |
| 1203 | | | Letter - Waidenfels to Scott re Meeting in London on July 1 | 7/30/2004 | 402, 403, 901 |
| 1204 | | | Letter - Scott to Waidenfels re DTB's Transfer Application | 9/10/2004 | 402, 403, 802, 901 |
| 1205 | | | Letter - Kroeker to Scott re DTB's Consent to the DTB pending requests before the WTA | 9/2/2004 | 402, 403, 802, 901 |
| 1206 | | | Letter - Scott to Mohammad re QTF interest in WTA Acquisition | | 402, 403, 802, 901 |
| 1207 | | | Letter - Scott to Tschanian re Roadmap 2010 | 4/3/2007 | 402, 403, 802, 901 |
| 1208 | | | Letter - Betz to Shoemaker re Roadmap 2010 Tournament Application with attached application | 1/2/2007 | 402, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

84

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1209 | | | Article - ATP - Roadmap 2010 Given Green Light from http://www.sonyericssonwtatour.com/3/newsroom /stories/?ContentID=1232 | 3/27/2007 | 402, 403, 802, 901 |
| 1210 | | | Article - ATP - Tour Board Approves 2008, 2009 Calendars from http://www.sonyericssonwtatour.com/3/newsroom /stories/?ContentID=483 | 6/29/2007 | 901 |
| 1211 | | | Letter - Waldenfels to Scott re Meeting June 22 with QTF President and Azmi | 6/23/2004 | 402, 403, 901 |
| 1212 | | | Letter - Scott to Waldenfels re DTB's Proposed Transactions | 6/30/2004 | 402, 403, 802, 901 |
| 1213 | | | 1990 ATP Tour Format | | 403, 802, 901 |
| 1214 | | | 1990 ATP Tour Application Process | | 403, 802, 901 |
| 1215 | | | 1990 ATP Tour Tournament Application | | 403, 802, 901 |
| 1216 | | | 1990 ATP Tour Preliminary Calendar | | 403, 802, 901 |
| 1217 | ATP0052534 | ATP0052536 | European Group Board Meeting Summary (Vienna) | 10/10/2002 | 802, 901 |
| 1218 | ATP0052394 | ATP0052394 | European Group Board Meeting (Zurich) | 10/17/2003 | 802, 901 |
| 1219 | GTF00083693 | GTF00083693 | Chart–Membership Trends of Sports Associations in DSB (in German) | | |
| 1220 | GTF00024035 | GTF00024036 | Interview with Carl-Owe Steeb rer. Hamburg Tournament (in German) | 2007 | |
| 1221 | GTF00084836 | GTF00084857 | IMG PowerPoint presentation entitled "Tennis in Germany: Analysis and Outlook" (in German) | | |
| 1222 | | | Presentation - WTA China Roadmap Phase A Final Draft | 8/25/2007 | 402, 403, 802, 901 |
| 1223 | | | Video available at atpmastersseries.tv | | 403, 802, 901 |
| 1224 | | | WITHDRAWN | | |
| 1225 | | | WITHDRAWN | | |
| 1226 | | | WITHDRAWN | | |
| 1227 | | | WITHDRAWN | | |

REDACTED VERSION – PUBLICLY FILED

85

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1228 | | | WITHDRAWN | | |
| 1229 | ATP0011305 | ATP0011335 | U.COM Medienservice & Marketing | | 901 |
| 1230 | | | WITHDRAWN | | |
| 1231 | ATP0053793 | ATP0053809 | ATP Monthly Broadcast and Distribution Report | 1/2006 | 802, 901 |
| 1232 | ATP0053956 | ATP0053968 | ATP Masters Series Pooling Report | 1/2006 | 802, 901 |
| 1233 | ATP0203981 | ATP0204037 | ATP Media Research Market Coverage and Audience Comparison | 2/2007 | 802, 901 |
| 1234 | ATP0204315 | ATP0204333 | ATP Monthly Broadcast and Distribution Report | 5/2006 | 802, 901 |
| 1235 | ATP0255455 | ATP0255473 | ATP Masters Series / Tennis Masters Cup 2006 Year End Review | 2006 | 802, 901 |
| 1236 | ATP0292639 | ATP0292652 | ATP Monthly Broadcast and Distribution Report January 2005 | 4/5/2005 | 802, 901 |
| 1237 | | | WITHDRAWN | | |
| 1238 | ATP0306252 | ATP0306270 | ATP Monthly Broadcast and Distribution Report | 10/2006 | 802, 901 |
| 1239 | ATP0306947 | ATP0307004 | Mercedes-Benz Quarterly Report Quarter 4, 2004 Broadcast and Sponsorship Report | 12/2006 | 802, 901 |
| 1240 | | | WITHDRAWN | | |
| 1241 | ATP0307157 | ATP0307243 | Mercedes-Benz Quarterly Report Quarter 1, 2006 Broadcast and Sponsorship Report | 2006 | 802, 901 |
| 1242 | ATP0307244 | ATP0307295 | Mercedes-Benz Quarterly Report Quarter 2, 2006 Broadcast and Sponsorship Report | 2006 | 802, 901 |
| 1243 | ATP0307296 | ATP0307348 | Mercedes-Benz Quarterly Report Quarter 3, 2006 Broadcast and Sponsorship Report | 11/2006 | 802, 901 |
| 1244 | ATP0308128 | ATP0308152 | Pacific Life Open March 7-20, 2005 Indian Wells, California, USA International Broadcast and Distribution Appendix SAMPLE | 2/2005 | 802, 901 |
| 1245 | ATP0308163 | ATP0308181 | Pacific Life Open March 7-20, 2005 Indian Wells, California, Television Broadcast and Sponsor SAMPLE Report, Main Report | 2/2005 | 802, 901 |

REDACTED VERSION – PUBLICLY FILED

86

EXHIBIT 3(f) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1246 | ATP0334146 | ATP0334163 | ATP Monthly Broadcast and Distribution Report | 7/2005 | 802, 901 |
| 1247 | ATP0334193 | ATP0334209 | ATP Monthly Broadcast and Distribution Report | 9/2005 | 802, 901 |
| 1248 | ATP0334211 | ATP0334232 | ATP Monthly Broadcast and Distribution Report | 2/2006 | 802, 901 |
| 1249 | ATP0334234 | ATP0334250 | ATP Monthly Broadcast and Distribution Report | 3/2006 | 802, 901 |
| 1250 | ATP0334256 | ATP0334273 | ATP Monthly Broadcast and Distribution Report | 4/2006 | 802, 901 |
| 1251 | | | WITHDRAWN | | |
| 1252 | ATP0334285 | ATP0334311 | ATP Monthly Broadcast and Distribution Report | 6/2006 | 802, 901 |
| 1253 | ATP0334315 | ATP0334332 | ATP Monthly Broadcast and Distribution Report | 9/2006 | 802, 901 |
| 1254 | | | WITHDRAWN | | |
| 1255 | ATP0334351 | ATP0334368 | ATP Monthly Broadcast and Distribution Report | 8/2006 | 802, 901 |
| 1256 | | | WITHDRAWN | | |
| 1257 | | | WITHDRAWN | | |
| 1258 | ATP0334408 | ATP0334426 | ATP Monthly Broadcast and Distribution Report | 7/2006 | 802, 901 |
| 1259 | | | WITHDRAWN | | |
| 1260 | | | WITHDRAWN | | |
| 1261 | | | WITHDRAWN | | |
| 1262 | ATP0334480 | ATP0334497 | ATP Monthly Broadcast and Distribution Report | 11/2006 | 802, 901 |
| 1263 | ATP0334498 | ATP0334516 | ATP Monthly Broadcast and Distribution Report | 10/2006 | 802, 901 |
| 1264 | ATP0340672 | ATP0340675 | Presentation | | 802, 901 |
| 1265 | ATP0352530 | ATP0352646 | ATP Brand Positioning Consumer Research Media Research Analysis | 11/8/2005 | 802, 901 |
| 1266 | ATP0353192 | ATP0353195 | ATP Round-Robin Research | 12/18/2006 | 802, 901 |

REDACTED VERSION – PUBLICLY FILED

87

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1287 | ATP0357315 | ATP0357319 | Presentation | | 802, 901 |
| 1288 | ATP0357368 | ATP0357379 | ATP Masters Series Season 2004 Broadcast & Audience Report | 2004 | 802, 901 |
| 1269 | ATP0480127 | ATP0480228 | ATP Brand Positioning Consumer Research Online Survey Quantitative Findings | 10/27/2006 | 802, 901 |
| 1270 | ATP0483235 | ATP0483372 | ATP Brand Positioning Consumer Research Online Survey Interim Key Findings | 10/20/2006 | 802, 901 |
| 1271 | ATP0486549 | ATP0486588 | ATP Brand Positioning Consumer Research Focus Group Findings | | 802, 901 |
| 1272 | ATP0487030 | ATP0487035 | ATP Brand Positioning Consumer Research | | 802, 901 |
| 1273 | ATP0487058 | ATP0487063 | ATP Brand Positioning Consumer Research | | 802, 901 |
| 1274 | ATP0487069 | ATP0487080 | South African Airways Interim Report 2006 Broadcast and Sponsorship Report | 2006 | 802, 901 |
| 1275 | ATP0487081 | ATP0487101 | South African Airways Interim Report 2006 Broadcast and Sponsorship Report | 2006 | 802, 901 |
| 1276 | ATP0489129 | ATP0489145 | ATP Monthly Broadcast and Distribution Report | 2/2007 | 802, 901 |
| 1277 | ATP0489946 | ATP0489983 | Chennai Open 2007 January 1-7, 2007 Chennai, India Sponsorship Evaluation Report | 2007 | 802, 901 |
| 1278 | ATP0492918 | ATP0492930 | Chennai Open 2007 January 1-7, 2007 Chennai, India Title Sponsorship Valuation | 2007 | 802, 901 |
| 1279 | ATP0493946 | ATP0493962 | ATP Monthly Broadcast and Distribution Report | 1/2007 | 802, 901 |
| 1280 | ATP0494322 | ATP0494351 | Exposure and Media Valuation Report Medibank International 2007 | 2/2007 | 802, 901 |
| 1281 | ATP0495064 | ATP0495100 | ATP Monthly Broadcast and Distribution Report | 3/2007 | 802, 901 |
| 1282 | | | WITHDRAWN | | |
| 1283 | ATP0496168 | ATP0496192 | Mercedes-Benz Broadcast and Sponsorship Report Quarter 1, 2007 | 2007 | 802, 901 |
| 1284 | ATP0497661 | ATP0497677 | ATP Monthly Broadcast and Distribution Report | 4/2007 | 802, 901 |
| 1285 | ATP0503641 | ATP0503895 | ATP Comperio | | 802, 901 |

REDACTED VERSION – PUBLICLY FILED

88

EXHIBIT 3(6) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1286 | ATP0510274 | ATP0510317 | Indesit End of Year Report Broadcast and Sponsorship Report | 12/2006 | 802, 901 |
| 1287 | ATP0521004 | ATP0521029 | Indesit Half Year Report First Half, 2006 Broadcast and Sponsorship Report | 2006 | |
| 1288 | | | WITHDRAWN | | |
| 1289 | ATP0530104 | ATP0530130 | Mercedes-Benz End of Year Report - 2005 Broadcast and Sponsorship Report | 2005 | 802, 901 |
| 1290 | ATP0530297 | ATP0530318 | Mercedes-Benz Quarterly Report Quarter 2, 2005 Broadcast and Sponsorship Report | 2005 | 802, 901 |
| 1291 | ATP0530346 | ATP0530372 | Mercedes-Benz Quarterly Report Quarter 3, 2005 Broadcast and Sponsorship Report | 2005 | 802, 901 |
| 1292 | ATP0530374 | ATP0530400 | Mercedes-Benz Quarterly Report Quarter 4, 2005 Broadcast and Sponsorship Report | 2005 | 802, 901 |
| 1293 | ATP0533104 | ATP0533125 | Ricoh Half-Yearly Report Half 1: January - June 2006 Broadcast and Sponsorship Report | 2006 | 802, 901 |
| 1294 | ATP0535832 | ATP0535854 | Ricoh End of Year Report Broadcast and Sponsorship Report | 12/2006 | 802, 901 |
| 1295 | | | WITHDRAWN | | |
| 1296 | ATP0550561 | ATP0550577 | ATP Monthly Broadcast & Distribution Report | 11/05 | 802, 901 |
| 1297 | ATP0554056 | ATP0554082 | ATP Background PR Brief Target Market: Germany, Berlin | 7/4/2007 | 802, 901 |
| 1298 | ATP0557192 | ATP0557223 | ATP Additional Research March 2006 (Version 2) | 3/2006 | 802, 901 |
| 1299 | ATP0571270 | ATP0571309 | Tennis Masters Cup November 12 - November 19, 2006 Shanghai Television Broadcast and Sponsor Report | 2006 | 802, 901 |
| 1300 | ATP0571312 | ATP0571446 | Pacific Life Open Television Broadcast and Sponsor Report 5 - 18 March Indian Wells, United States | 2007 | 802, 901 |
| 1301 | ATP0571447 | ATP0571563 | Sony Ericsson Open Television Broadcast and Sponsor Report 21 March - 1 April, Miami, United States | 2007 | 802, 901 |

REDACTED VERSION – PUBLICLY FILED

89

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1302 | GTF00000001 | GTF00000089 | Post Event Report Masters Series Hamburg 2004 | 2004 | |
| 1303 | GTF0002580 | GTF0002619 | Hamburg Masters Series April 11-April 17, 2005 Hamburg, Germany Television Broadcast and Sponsor Report, Main Report | 2005 | |
| 1304 | GTF0002704 | GTF0002743 | Masters Series Hamburg May 15-May 21, 2006 Hamburg Television Broadcast and Sponsor Report | 2006 | |
| 1305 | GTF0007806 | GTF0007900 | Masters Series Hamburg Television Broadcast and Sponsor Report 14-20 May, 2007 Hamburg, Germany | 2007 | |
| 1306 | GTF00083693 | GTF00083693 | Membership trend of the top ten associations with the most members in the DSB | | |
| 1307 | GTF00084836 | GTF00084857 | Tennis in Germany: Analysis and Outlook | | |
| 1308 | | | Rothenbaum to become "winter-proof." Tennis: Federation plan extension of its own facilities in Hamburg | 2/12/2008 | 901 |
| 1309 | ATP0618799 | ATP0618858 | ATP "500" Tournament Application (Memphis) | 7/25/2007 | 106, 403, 802, 901 |
| 1310 | ATP0618859 | ATP0618877 | ATP "500" Tournament Application (Memphis) | 7/25/2007 | 106, 403, 802, 901 |
| 1311 | ATP0618878 | ATP0618900 | ATP "500" Tournament Application (Memphis) | 7/25/2007 | 106, 403, 802, 901 |
| 1312 | ATP0618901 | ATP0618905 | ATP "500" Tournament Application (Memphis) | 7/25/2007 | 106, 403, 802, 901 |
| 1313 | ATP0618906 | ATP0618957 | Attachment to Madrid Application | | 106, 403, 802, 901 |
| 1314 | ATP0618958 | ATP0618965 | 1990 ATP Tour Tournament Application - German Open (Hamburg) | 12/22/1988 | 106, 403, 802, 901 |
| 1315 | ATP0618966 | ATP0618967 | Letter - Young to GTF re 1993 Tournament Application | 4/6/1992 | 106, 403, 802, 901 |
| 1316 | ATP0618968 | ATP0618974 | 1993 ATP Tournament Application (Doha). | 2/7/1992 | 106, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

90

**EXHIBIT 3(b) TO FINAL PRETRIAL ORDER**

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1317 | ATP0619075 | ATP0619084 | By-laws of ATP Tour, Inc. | | 106, 403, 802, 901 |
| 1318 | ATP0619085 | ATP0619085 | Letter - Young to Winker re ATP 500 Application | 10/29/2007 | 106, 403, 802, 901 |
| 1319 | ATP0619086 | ATP0619086 | Current ATP Tour Board Members - Initial Election and Subsequent Re-election Dates | 5/7/2008 | 106, 403, 802, 901 |
| 1320 | ATP0619087 | ATP0619109 | ATP "500" Tournament Application (Memphis) | 7/25/2007 | 106, 403, 802, 901 |
| 1321 | ATP0619110 | ATP0619112 | Memorandum - de Villiers to Player Council | 5/2/2008 | 403, 802, 901 |
| 1322 | ATP0619113 | ATP0619211 | ATP Tour, Inc. By-laws | 12/27/1989 | 403, 802, 901 |
| 1323 | ATP0619212 | ATP0619327 | ATP Tour, Inc. By-laws | | 403, 802, 901 |
| 1324 | ATP0619328 | ATP0619328 | ATP Tour, Inc. Player Council Notice of Special Meeting | 4/28/2008 | 802, 901 |
| 1325 | ATP0619329 | ATP0619357 | Prize and Fees 2006-2009 | | 403, 802, 901 |
| 1326 | ATP0619358 | ATP0619365 | Tournaments by Year 2000-2007 | | 403, 802, 901 |
| 1327 | ATP0619366 | ATP0619367 | 2009 Increased Commitment for Investment in Men's Tennis | | 403, 802, 901 |
| 1328 | ATP0619368 | ATP0619412 | 2008 Membership Benefit Handbook | | 403, 802, 901 |
| 1329 | ATP0619413 | ATP0619417 | Chairman's Report to ATP Player and Tournaments Members (Shanghai) | 11/13/2007 | 403, 802, 901 |
| 1330 | ATP0619418 | ATP0619419 | ATP Retirement Plan - 2007 Tentative List of Qualified Players | | 403, 802, 901 |
| 1331 | ATP0619420 | ATP0619436 | Letter - Cleek to ATP Tournament Members re ATP Financial Results and Reference Materials with attachments | | 403, 802, 901 |
| 1332 | ATP0619437 | ATP0619452 | Number of Top 10 Players in Grand Slam Series Events | 4/3/2008 | 403, 802, 901 |
| 1333 | ATP0619453 | ATP0619463 | Bozza Sponsorship Agreement between ATP and ENEL Servizi Srl | 1/1/2008 | 403, 802, 901 |
| 1334 | ATP0619464 | ATP0619465 | Letter - Scott to Graf Vizthum re Prolongation of GSL - Damiler Benz Sponsorship Agreement | 3/7/2002 | 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

91

## EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1335 | ATP0619466 | ATP0619475 | ATP/ENEL Tournament Agreement between ATP and STZ Marketing | 2/28/2007 | 403, 802, 901 |
| 1336 | ATP0619476 | ATP0619526 | Mercedes-Benz/ATP Tour Agreement between Championship Strategies Limited and Mercedes-Benz AG | 11/4/1996 | 403, 802, 901 |
| 1337 | ATP0619527 | ATP0619528 | Amendment to Agreement between ATP and Ricoh Europe B.V. | 10/5/2006 | 403, 802, 901 |
| 1338 | ATP0619529 | ATP0619544 | Agreement by and between Ricoh Europe B.V. and ATP Tour Inc. | 12/15/2004 | 403, 802, 901 |
| 1339 | ATP0619545 | ATP0619550 | Addendum to the Memorandum of Agreement enetered into between South African Airways Limited and ATP Tour Inc. | 7/1/2006 | 403, 802, 901 |
| 1340 | ATP0619551 | ATP0619578 | Memorandum of Agreement between South African Airways Limited and ATP Tour Inc. | | 403, 802, 901 |
| 1341 | ATP0619579 | ATP0619594 | Star Alliance Conventions Plus – Official Airline Network Agreement Extension between ATP Tour Inc. and South African Airways Limited | 12/1/2007 | 403, 802, 901 |
| 1342 | ATP0619595 | ATP0619643 | Damler Chrystler/ATP Agreement between ATP Tennis and DamlerChrysler AG | 12/19/2002 | 403, 802, 901 |
| 1343 | ATP0619644 | ATP0619701 | Agreement between ATP Tour Inc., and DamlerChrysler AG | 10/1/2005 | 403, 802, 901 |
| 1344 | | | Hamburg Tourismus Monitoring Newsletter | 2/29/2008 | 402, 403, 901 |
| 1345 | | | Article – DFB reaches an agreement in the Schiri Hoyzer Scandal - Waiting at the Rothenbaum.- Vogt's new Job - Gratton must go by Bjoern Jensen | 4/5/2008 | 402, 403, 802, 901 |
| 1346 | | | WITHDRAWN | | |
| 1347 | | | Article – Surprise victor Balian triumphs in end sprint from http://www.vattenfall-cyclassics.de/ueberraschungssieger-balian-triumphiert-im.98.html | 8/19/2007 | 402, 403, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

92

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1348 | | | Article - Hamburg Harley Days 2006http://web.archive.org/web/20070202220139 http://web.archive.org/web/20070202220139 6/22/2008 | | 402, 403, 901, 802 |
| 1349 | | | Article - 5th Hamburg Harley Days 6/20/2008-6/22/2008 | | 402, 403, 901, 802 |
| 1350 | GTF00074295 | GTF00074407 | Report Booklet, DTB 56th General Meeting | 11/4/2006 | |
| 1351 | | | www.sonyericssonopen.com/crandon_p/c_park.html html | | 402, 403, 901, 802 |
| 1352 | | | Collective Bargaining Agreement between NHL and NHL Players Assoc (July 22, 2005-September 15, 2010) | 7/22/2005 | 402, 403, 901,802 |
| 1353 | | | NBA Collective Bargaining Agreement | 7/29/2005 | 402, 403, 901, 802 |
| 1354 | | | Basic Agreement between the 30 Major League Clubs and the MLB Players' Assoc | 12/20/2006 | 402, 403, 901, 802 |
| 1355 | | | NFL Collective Bargaining Agreement (2006-2012) | 3/8/2006 | 402, 403, 901, 802 |
| 1356 | ATP0619713 | ATP0619713 | Tournament Memberships Downgraded, terminated, Upgraded or Reclassified (1990-2005) | 7/29/2005 | 403, 802, 901 |
| 1357 | ATP0619715 | ATP0619722 | Tournaments Attendance Data 2000-2007 | | 403, 802, 901 |
| 1358 | ATP0619723 | ATP0619734 | Letter - Castagnino to Delamney re "Contrato ATP per la sponsorizzazione dei Tornei Internazionali di Tennis 2008-2010" (in Italian) with attached Sponsorship Agreement between ATP and ENEL (in English) | 3/6/2008 | 403, 802, 901 |
| 1359 | | | QTF Website at http://www.qatartennis.org/ | | 106 |
| 1360 | ATP0550622 | ATP0550623 | Email - Galloway to Byars re 500 Application-July 25th, 500 Business Plan Application Section in Excel | 7/25/2007 | 106, 403, 802, 901 |
| 1361 | ATP0583916 | ATP0583920 | Agreement between AELTC with LTA and ATP | | 106, 403, 802, 901 |

92 of 96

REDACTED VERSION – PUBLICLY FILED

93

### EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1362 | ATP0545951 | ATP0545961 | Agreement between Ansco Arena Limited and ATP with exhibits | | 106, 403, 802, 901 |
| 1363 | | | Sony Ericsson WTA Tour Championships Manual | | 402, 403, 901, 802 |
| 1364 | ATP0262500 | ATP0262501 | AMS Proposal to increase top player participation in AMS tournaments | | 802, 901 |
| 1365 | ATP0263562 | ATP0263563 | Kitzbuhel/Bucharest Tournament Request | 8/3/2006 | 802, 901 |
| 1366 | GTF0057306 | GTF0057323 | Agreement between ISL and DTB | 8/23/1999 | |
| 1367 | ATP0284027 | ATP0284027 | Email from Mackey to Galloway, Klosterkemper re: Hamburg | 2/20/2004 | 802, 901 |
| 1368 | | | http://www.imgworld.com/about/leadership_team_bios.sps?iType=13768&lNewsid=402289&lCategory!D=f2630 | | 402, 403, 901,802 |
| 1369 | ATP0619751 | ATP0619752 | Letter - Anson to Vilotte re "Masters 1000" Tournament Paris | 12/20/2007 | 403, 802, 901 |
| 1370 | ATP0619750 | ATP0619750 | Letter - Anson to Palmieri re December 12, 2007 letter | 12/19/2007 | 403, 802, 901 |
| 1371 | ATP0619755 | ATP0619755 | Letter - Anson to Palmieri re ATP 1000 Application | 2/12/2008 | 403, 802, 901 |
| 1372 | ATP0619756 | ATP0619756 | Letter - Anson to Van der Wall Amemann (Evington Finance Corp.) | 4/16/2008 | 403, 802, 901 |
| 1373 | ATP0619740 | ATP0619740 | Letter - Vilotte to Anson re Week 46 Designation in October 30, 2007 letter | 12/3/2007 | 403, 802, 801 |
| 1374 | ATP0619744 | ATP0619744 | Letter - Palmieri to Anson re ATP 1000 Application | 12/12/2007 | 403, 802, 901 |
| 1375 | ATP0619749 | ATP0619749 | Letter - Tsobanian to Anson re August 6, 2007 letter | 12/19/2007 | 403, 802, 901 |
| 1376 | ATP0009397 | ATP0009443 | ATP "Masters 1000" Combined Tournament Application (Madrid) | | |
| 1377 | | | http://www.usta.com/home/default.sps | | 402, 403, 901, 802 |
| 1378 | | | http://www.tennisindy.com/ | | 402, 403, 901, 802 |

93 of 96

REDACTED VERSION – PUBLICLY FILED

94

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1379 | | | Complete ATP 2008 Calendar including Challengers and Futures from www.atptennis.com | | 901 |
| 1380 | | | http://www.atptennis.com/5/en/deuce/november2007/feeit.asp | | 106, 403, 901 |
| 1381 | | | Image of Rothenbaum Stadium from http://www1.ndr.de/sport/weitere_sportarten/rothenbaum/bilderdesturniers2_org-rothenbaum12_p-11.html | | 106, 403, 901 |
| 1382 | | | http://www.atptennis.com/en/common/TrackIt.asp?file=http://www.atptennis.com/en/media/rankings/Current_Prize.pdf | | 106, 403, 901 |
| 1383 | | | Delaware News Journal, Sec. C | 5/19/2008 | 402, 403, 901, 802 |
| 1384 | | | Delaware News Journal, Sec. E | 5/18/2008 | 402, 403, 901, 802 |
| 1385 | | | Press Release from Daimler website – ATP & Mercedes-Benz partnership to conclude at the end of current agreement in December 2008 | 9/28/2007 | 901 |
| 1386 | | | http://www.atptennis.com/en/about/atp/history.asp | | 106, 403, 901 |
| 1387 | | | http://www.atptennis.com/en/about/atp/organization.asp#etienne | | 106, 403, 901 |
| 1388 | ATP0618255 | ATP0618256 | 2007 ATP Tour Budget Update (New York) | 3/14/2008 | 403, 901 |
| 1389 | ATP0548864 | ATP0548875 | 2007 ATP Tour Budget Update (New York) | 8/29/2007 | 403, 901 |
| 1390 | | | ATP Rulebook | 2008 | 403, 901 |
| 1391 | ATP0083648 | ATP0083657 | Memo to ATP Board from Drewett and Young re: Selection Process for 2009 WWW Event | | 802, 901 |
| 1392 | ATP0619757 | ATP0619759 | Email from Steve Pilato to Young, Drewett, Anson, de Villiers re: 500 Update and attached ATP500 projections 200509.xls | 5/28/2008 | 106, 802, 901 |

REDACTED VERSION – PUBLICLY FILED

85

EXHIBIT 3(b) TO FINAL PRETRIAL ORDER

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| 1393 | ATP0584109 | ATP0584132 | Email from Galloway re: ATP 250 Application Request and attached Application | 10/8/2007 | 106, 802, 901 |
| 1394 | ATP0619760 | ATP0619791 | Presentation - ATP World Tour | | 802, 901 |
| 1395 | ATP0619792 | ATP0619796 | Agreement - Galloway to Canadian Tennis Association | 8/1/2003 | 403, 802, 901 |
| 1396 | ATP0619797 | ATP0619801 | Agreement - Galloway to Canadian Tennis Association | 8/1/2003 | 403, 802, 901 |
| 1397 | ATP0619802 | ATP0619806 | Letter - Galloway to Canadian Tennis Association, Bank of Nova Scotia re Loan Documents | 8/1/2003 | 106, 403, 802, 901 |
| 1398 | ATP0619807 | ATP0619814 | Agreement - Young to TCI Ventures, Tennis Cincinnati, Tennis for Charity | 12/15/2004 | 106, 403, 802, 901 |
| 1399 | ATP0619815 | ATP0619820 | Current Players Membership Numbers - Division 1 | 2008 | 802, 901 |
| 1400 | ATP0619821 | ATP0619823 | Current Players Membership Numbers - Division 2 | 2008 | 802, 901 |
| 1401 | ATP0619824 | ATP0619832 | Current Players Membership Numbers - Registered | 2008 | 802, 901 |
| 1402 | ATP0619833 | ATP0619838 | Current Players Membership Numbers - Alumni | 2008 | 802, 901 |
| 1403 | | | ATP Player Promotion Cards | 2008 | 403, 901 |
| 1404 | | | Final Press Conference for 2008 Hamburg Tournament | 5/18/2008 | 403, 901 |
| 1405 | | | "Tennis-Wuste Deutschland" from Die Welt | 5/10/2008 | 403, 901 |

85 of 96

REDACTED VERSION – PUBLICLY FILED

| DTX # | Beg Bates # | End Bates # | Description | Date | Objections |
|---|---|---|---|---|---|
| | | | EXHIBIT 3(b) TO FINAL PRETRIAL ORDER | | |
| 1406 | | | Article - "Vom Profiteur Zum Opfer der Globalisierung" | | 901.<br>Plaintiffs reserve all objections to this exhibit, which was identified by Defendants on the afternoon that the Joint Pretrial Order was being filed. |
| 1407 | PD-YOM0003557 | PD-YOM0003029 | Collection of Handwritten Board Meeting Minutes | 3/8/2006 | Plaintiffs reserve all objections to this exhibit, which was identified by Defendants on the afternoon that the Joint Pretrial Order was being filed. |

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 4(a)

REDACTED VERSION – PUBLICLY FILED

**EXHIBIT 4 TO FINAL PRETRIAL ORDER**

**PLAINTIFFS' WITNESS LIST**

Plaintiffs Deutscher Tennis Bund (German Tennis Federation), Rothenbaum Sport GmbH, and Qatar Tennis Federation (collectively, "Plaintiffs"), by counsel, hereby submit this Witness List in connection with its claims in this matter as follows:

I.    Below are the witnesses Plaintiffs expect to present at trial:

    A. Dr. Georg Von Waldenfelds
       Deutscher Tennis Bund e.V.
       Geschaftsstelle
       Hallertraße 89
       20149 Hamburg

    B. Walter Knapper
       Deutscher Tennis Bund e.V.
       Geschaftsstelle
       Hallertraße 89
       20149 Hamburg

    C. Ayman Azmy
       Qatar Tennis Federation
       P.O. Box 4959
       Doha-Qatar

    D. Gavin Forbes
       IMG Center
       Suite 100
       1360 East Ninth Street
       Cleveland, Ohio 44114-1782

    E. Professor Andrew Zimbalist
       Robert A. Woods Professor of Economics
       Smith College
       Wright Hall 103
       Northampton, MA 01063

    F. Professor Charles Elson
       Lerner College of Business & Economics
       University of Delaware
       104 Alfred Lerner Hall

REDACTED VERSION – PUBLICLY FILED

        Newark, Delaware 19716

       G.  Gary Kleinrichert
           FTI Consulting
           333 West Wacker Drive
           Suite 600
           Chicago, IL 60606

II.    Below are the witnesses Plaintiffs may also choose to present at trial:

      A.  Roger Federer
          Address Unknown

      B.  Rafael Nadal
          Address Unknown

      C.  Novak Djokovic
          Address Unknown

      D.  Nikolay Davydenko
          Address Unknown

      E.  David Ferrer
          Address Unknown

      F.  Andy Roddick
          Address Unknown

      G.  David Nalbandian
          Address Unknown

      H.  James Blake
          Address Unknown

      I.   Richard Gasquet
          Address Unknown

      J.  Thomas Berdych
          Address Unknown

      K.  Mikhail Youzhny
          Address Unknown

      L.  Paul-Henri Mathieu

REDACTED VERSION – PUBLICLY FILED

Address Unknown

M. Marcos Baghdatis
Address Unknown

N. Carlos Moya
Address Unknown

O. Fernando Gonzalez
Address Unknown

P. Jo-Wilfried Tsonga
Address Unknown

Q. Juan Monaco
Address Unknown

R. Tommy Robredo
Address Unknown

S. Lleyton Hewitt
Address Unknown

T. Andy Murray
Address Unknown

U. Ivo Karlovic
Address Unknown

V. Guillermo Canas
Address Unknown

W. Nicolas Almagro
Address Unknown

X. Juan Carlos Ferrero
Address Unknown

Y. Jarkko Nieminen
Address Unknown

Z. Radek Stepanek
Address Unknown

AA.    Fernando Verdasco

REDACTED VERSION – PUBLICLY FILED

Address Unknown

BB.  Stanislas Wawrinka
Address Unknown

CC.  Ivan Ljubicic
Address Unknown

DD.  Dmitry Tursunov
Address Unknown

EE.  Philipp Kohlschreiber
Address Unknown

FF.  Tommy Haas
Address Unknown

GG.  Fernando Soler
IMG Center
Suite 100
1360 East Ninth Street
Cleveland, Ohio 44114-1782

HH.  Adam Barrett
IMG Center
Suite 100
1360 East Ninth Street
Cleveland, Ohio 44114-1782

II.  Butch Buchholz
c/o IMG Center
Suite 100
1360 East Ninth Street
Cleveland, Ohio 44114-1782

JJ.  Juergen Pfauth
Tournament Director, Austrian Open
c/o Sportmarketing GmbH
Achenrain 20-29
A - 6233 Kramsach/Tirol
Austria

KK.  Zelkjo Franulovic
Monte-Carlo Country Club / SMETT
48 Boulevard d'Italie

REDACTED VERSION – PUBLICLY FILED

> 98000 MONACO
> Monte-Carlo, Monaco

LL.    Dr. Erik Ballauff
     Deutscher Tennis Bund e.V.
     Geschaftsstelle
     Hallertrafse 89
     20149 Hamburg

MM.    Frank Schroetter
     Rothenbaum Sport GmbH
     Hallerstraße 89
     20149 Hamburg, Germany

NN.    Annette Koring
     Rothenbaum Sport GmbH
     Hallerstraße 89
     20149 Hamburg, Germany

OO.    Thomas Kastner
     Rothenbaum Sport GmbH
     Hallerstraße 89
     20149 Hamburg, Germany

PP.    Mr. Ulrich Kroeker
     Rothenbaum Sport GmbH
     Hallerstraße 89
     20149 Hamburg, Germany

QQ.    Carle-Uwe Steeb
     Rothenbaum Sport GmbH
     Hallerstraße 89
     20149 Hamburg, Germany

RR.    Sheikh Mohamed Bin Faleh Al Thani
     Qatar Tennis Federation
     Majeles El Tawen St.
     Dafna - Doha
     Qatar

SS.    Etienne de Villiers

TT.    Charles Pasarell

UU.    Perry Rogers

VV.    Iggy Jovanovic

WW.    Graham Pearce

XX.    Jacco Eltingh

YY.    Mark Young

ZZ.    Philip Galloway

AAA.    Brad Drewett

BBB.    Andre de Silva

CCC.    Gayle Bradshaw

DDD.    Juraj Ciz

EEE.    Peter Greenhalgh

FFF.    Mark Miles

GGG.    Jonathan Walker

HHH.    One or more current or former representatives of ATP

III.    A document custodian of the ATP

The above is in addition to any deposition testimony that Plaintiffs may present at trial.

Plaintiffs hereby reserve the right to supplement or otherwise amend the foregoing witness list for any appropriate reason.  Plaintiffs also reserve the right to call rebuttal witnesses as may be necessary.

INDS02 MBARR 972271v1

-6-

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 4(b)

REDACTED VERSION – PUBLICLY FILED

**EXHIBIT 4(b) TO FINAL PRETRIAL ORDER**

**<u>PLAINTIFFS' OBJECTIONS TO DEFENDANTS' WITNESS LIST</u>**

Plaintiffs object to Defendants calling Dan Jones and Andy Anson at trial since Plaintiffs sought their depositions but Defendants refused to make them available. Plaintiffs further object to testimony from Todd Martin and Marshall Glickman, each of whom were neither disclosed in Defendants' initial disclosures nor disclosed throughout the course of discovery.

INDS02 MBARR 978645v1

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

## EXHIBIT 4(b) TO FINAL PRETRIAL ORDER

## <u>DEFENDANTS' WITNESS LIST</u>

Defendants hereby submit this Witness List in connection with their defense of this matter as follows:

I.    Below are the witnesses Defendants expect to present at trial:

      A. Etienne De Villers
         c/o Counsel for Defendants

      B. Charles Passarell
         c/o Counsel for Defendants

      C. Graham Pearce
         c/o Counsel for Defendants

      D. Jacco Eltingh
         c/o Counsel for Defendants

      E. Perry Rogers
         c/o Counsel for Defendants

      F. Iggy Jovanovic
         c/o Counsel for Defendants

      G. Mark Young
         c/o Counsel for Defendants

      H. Philip Galloway
         c/o Counsel for Defendants

      I. Brad Drewett
         c/o Counsel for Defendants

      J. Mark Miles
         c/o Counsel for Defendants

      K. Larry Scott
         Sony Ericsson WTA Tour
         One Progress Plaza
         Suite 1500
         St. Petersburg, FL  33701

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

      L. Phil Anderton
        c/o Counsel for Defendants

      M. Jonathan Walker
        c/o Counsel for Defendants

      N. Peter Greenhalgh
        c/o Counsel for Defendants

II.    Below are the witnesses Defendants may also choose to present at trial:

      A. Zeljko Franulovic
        c/o Alan M. Unger, Esq.
        Sidley Austin LLP
        787 Seventh Avenue
        New York, NY 10019

      B. Chris Kermode
        c/o Counsel for Defendants

      C. Kerry Cleek
        c/o Counsel for Defendants

      D. Bram Tukker
        c/o Counsel for Defendants

      E. George Ciz
        c/o Counsel for Defendants

      F. Richard Davies
        c/o Counsel for Defendants

      G. Horst Klosterkemper
        c/o Counsel for Defendants

      H. Dan Jones
        Deloitte & Touche LLP
        1 Stonecutter Court
        Stonecutter Street
        London
        United Kingdom EC4A 4TR

      I. Andy Anson
        c/o Counsel for Defendants

      J. Mark S. Baron
        Match Point, Inc.

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

        30 Northwest 1st Avenue
        Delray Beach, FL 33444

K.  Todd Martin
    Address Unknown

L.  Andre Silva
    c/o Counsel for Defendants

M.  Gayle Bradshaw
    c/o Counsel for Defendants

N.  Mark Darby
    c/o Counsel for Defendants

O.  Tom Barnes
    c/o Counsel for Defendants

P.  Thomas Karlberg
    c/o Counsel for Defendants

Q.  Marshall Glickman
    G2 Strategic, LLC
    1784 S.W. Troon Ave.
    Bend, OR 97702

R.  Georg von Waldenfels (in addition to by deposition)
    Deutscher Tennis Bund e.V.
    Geschaftsstelle
    Hallertraße 89
    20149 Hamburg
    Germany

S.  Walter Knapper (in addition to by deposition)
    Deutscher Tennis Bund e.V.
    Geschaftsstelle
    Hallertraße 89
    20149 Hamburg
    Germany

T.  Frank Schroetter (in addition to by deposition)
    Deutscher Tennis Bund e.V.
    Geschaftsstelle
    Hallertraße 89
    20149 Hamburg
    Germany

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

U. Ulrich Kroeker (in addition to by deposition)
Deutscher Tennis Bund e.V.
Geschaftsstelle
Hallertraße 89
20149 Hamburg
Germany

V. Carl Uwe Steeb (in addition to by deposition)
Deutscher Tennis Bund e.V.
Geschaftsstelle
Hallertraße 89
20149 Hamburg
Germany

W. Ayman Azmy (in addition to by deposition)
Qatar Tennis Federation
P.O. Box 4959
Doha-Qatar

X. Sheikh Mohamed bin Faleh al Thani (in addition to by deposition)
Qatar Tennis Federation
P.O. Box 4959
Doha-Qatar

Y. Thomas Kastner (in addition to by deposition)
Deutscher Tennis Bund e.V.
Geschaftsstelle
Hallertraße 89
20149 Hamburg
Germany

Z. Annette Koring (in addition to by deposition)
Deutscher Tennis Bund e.V.
Geschaftsstelle
Hallertraße 89
20149 Hamburg
Germany

AA.    Gunther Lang (in addition to by deposition)
Deutscher Tennis Bund e.V.
Geschaftsstelle
Hallertraße 89
20149 Hamburg
Germany

BB.    One or more representatives of the Qatar Tennis Federation

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

      Qatar Tennis Federation
      P.O. Box 4959
      Doha-Qatar

The above is in addition to any deposition testimony that Defendants may present at trial.

Defendants hereby reserve the right to supplement or otherwise amend the foregoing witness list

for any appropriate reason.  Defendants also reserve the right to call rebuttal witnesses as may be

necessary.

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 4(c)

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

## EXHIBIT 4(c) TO FINAL PRETRIAL ORDER

## DEFENDANTS' OBJECTIONS TO PLAINTIFFS' WITNESS LIST

Defendants object to Plaintiffs calling the following witnesses at trial. None of these witnesses were listed on Plaintiffs' Fed. R. Civ. P. 26(a)(1) Initial Disclosures. Defendants further object that it does not appear that Plaintiffs have a good faith basis to believe that they will call many of these witnesses.

Gavin Forbes
Roger Federer
Rafael Nadal
Novak Djokovic
Nikolay Davydenko
David Ferrer
Andy Roddick
David Nalbandian
James Blake
Richard Gasquet
Thomas Berdych
Mikhail Youzhny
Paul-Henri Mathieu
Marcos Baghdatis
Carlos Moya
Fernando Gonzalez
Jo-Wilfried Tsonga
Juan Monaco
Tommy Robredo
Lleyton Hewitt
Andy Murray
Ivo Karlovic
Guillermo Canas
Nicolas Almagro
Juan Carlos Ferrero
Jarkko Nieminen
Radek Stepanek
Fernando Verdasco
Stanislas Wawrinka
Ivan Ljubicic
Dmitry Turnsunov
Philipp Kohlschreiber
Tommy Haas
Fernando Soler

June 2, 2008

      Adam Barrett
      Juergen Pfauth
      Erik Ballauff
      Annette Koring
      Thomas Kastner
      Ulrich Kroeker
      Carle-Uwe Steeb

Defendants also reserve the right to object to Plaintiffs' calling the additional witnesses identified as potential trial witnesses for the first time on June 2, 2008 (witnesses SS thru GGG) as it does not appear that Plaintiffs have a good faith basis to believe that they will call many of these witnesses and further object to the extent that the parties are not able to reach agreement with respect to sufficient notice of when, if at all, Plaintiffs intend to call any of witnesses A thru III.

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 5(a)

REDACTED VERSION – PUBLICLY FILED

**EXHIBIT 5 TO FINAL PRETRIAL ORDER**

**STATEMENT OF EXPERT WITNESS QUALIFICATIONS**

**I.    PLAINTIFFS' EXPERT WITNESS FOR THEIR ANTITRUST CLAIMS**

**A.    Dr. Andrew Zimbalist**

Dr. Andrew Zimbalist will testify on the subject of antitrust injury in the field of sports economics. His testimony will include an economic analysis of the liability issues in this litigation, including (a) the relevant market(s) in which the ATP and those acting in concert with it are engaging in anticompetitive acts; (b) the ATP's market power in the relevant market(s) at issue in this litigation; (c) whether the ATP's economic power was obtained through superior economic efficiency or anticompetitive acts; (d) whether the ATP's acts resulted in anticompetitive harm; and (e) whether there are business justifications for the acts undertaken by the ATP.

Dr. Zimbalist is the Robert A. Woods Professor of Economics at Smith College in Northampton, Massachusetts, where he has taught since 1974. He has been a visiting professor at Doshisha University in Kyoto, Japan, at the University of Geneva in Switzerland and at Harvard University. He received his B.A. degree from the University of Wisconsin and his M.A. and Ph.D. in economics from Harvard University.

Dr. Zimbalist has consulted extensively in the area of sports economics for sports' players' associations, for cities, for teams, for companies, for owners and for law firms. He has also served as an expert witness in several sports-related litigations. He has testified numerous times before the U.S. Congress, state legislatures and city councils on sports-related (and other) matters.

Dr. Zimbalist has published 18 books and dozens of articles in the areas of sports economics, economic development and comparative economic systems. Since 1990, the principal focus of Dr. Zimbalist's research, teaching and professional work has been sports economics. Sports economics is a

REDACTED VERSION – PUBLICLY FILED

branch of applied microeconomics that includes the fields of industrial organization, antitrust analysis, labor economics and public finance.  For several years, Dr. Zimbalist provided a biweekly commentary on the business of sports for NPR's Marketplace, and he contributes op-eds frequently on the sports business to leading newspapers and magazines.

Based upon his education and his extensive experience and background, Dr. Zimbalist is qualified as an expert on the subject of antitrust injury in the field of sports economics.

## II. PLAINTIFFS' EXPERT WITNESS FOR THEIR FIDUCIARY DUTY CLAIMS

### A.  Professor Charles Elson

Professor Charles Elson will testify about the generally accepted customs and practices for officers and directors of Delaware corporations.

Professor Elson is the Edgar S. Woolard, Jr., Chair in Corporate Governance and the Director of the John L. Weinberg Center for Corporate Governance at the University of Delaware.  He formerly served as a Professor of Law at Stetson University College of Law in St. Petersburg, Florida from 1990 until 2001. His fields of expertise include corporations, securities regulation and corporate governance. Professor Elson is a graduate of Harvard College and the University of Virginia Law School.  He has been a Visiting Professor at the University of Illinois College of Law, the Cornell Law School, and the University of Maryland School of Law.  Further, he is a Salvatori Fellow at the Heritage Foundation in Washington, D.C. and a member of the American Law Institute.  Professor Elson has written extensively on the subject of boards of directors and is a frequent contributor on corporate governance issues to various scholarly and popular publications.

Professor Elson served on the National Association of Corporate Directors' Commissions on Director Compensation, Director Professionalism, CEO Succession, Audit Committees, Strategic

REDACTED VERSION – PUBLICLY FILED

Planning and Director Evaluation, was a member of its Best Practices Council on Coping With Fraud and Other Illegal Activity, and presently serves on that organization's Advisory Council. He is Vice Chairman of the ABA Business Law Section's Committee on Corporate Governance and formerly served as a member of its Committee on Corporate Laws. Additionally, he served as an adviser and consultant to Towers Perrin, the international human resource management consultants, a director of Circon Corporation, a medical products maker and Sunbeam Corporation, the consumer products manufacturer, Nuevo Energy Company, an independent oil and natural gas producer, the Investor Responsibility Research Center, a non-profit corporate governance research organization, Alderwoods Group, an international death care services provider, and is presently a member of the Board of Directors of AutoZone, Inc., the national automobile parts retailer and HealthSouth Corporation, a healthcare services provider.

Based on his education and extensive professional experience and background, Professor Elson is qualified as an expert in the generally accepted customs and practices for officers and directors of Delaware corporations.

### III. PLAINTIFFS' EXPERT WITNESS FOR THEIR DAMAGE CLAIMS

#### A. Gary G. Kleinrichert

Gary G. Kleinrichert will testify on the subject of Plaintiffs' damages. His testimony will include economic analyses of the Plaintiffs' tournament membership interests, capital investments, and discounted cash flow, the appropriate method of compensating Plaintiffs for injury thereto, and, if requested by the Court, an opinion as to an appropriate prejudgment interest award.

Mr. Kleinrichert is a Senior Managing Director in FTI's Forensic and Litigation practice and has over 21 years experience as an auditor and as a consultant in accounting, auditing, investigative,

REDACTED VERSION – PUBLICLY FILED

litigation and valuation matters. Prior to joining FTI, Mr. Kleinrichert was a partner in the international accounting firms of KPMG LLP ("KPMG"), Arthur Andersen LLP ("Andersen"), and PricewaterhouseCoopers LLP ("PwC")[1]. During his career with these firms, he performed a variety of services including serving as a business advisor and auditor to public and private companies, non-profit entities and government agencies. He also performed numerous accounting and forensic investigations, business vluations, due diligence and other consulting related to mergers and acquisitions. At KPMG, he was the coordinating partner responsible for Forensic Services for the Midwest Region of the United Staets. At FTI, he previously served as the Coordinating Senior Managing Director responsible for Forensic and Litigation Services for the Midwest Region of the United States. He is currently the National Leader of FTI's Office Coordinators.

Mr. Kleinrichert is a Certified Public Accountant, Accredited in Business Vluation, certified Valuation Analyst and a member of the American Institute of Certified Public Accountants, Indiana CPA Society, Illinois CPA Society, National Association of Certified Valuation Analysts and the Association of Certified Fraud Examiners. He also is a candidate member of the American Society of Appraisers. Mr. Kleinrichert earned his Bachelor of Science degree in Accountancy and Computer Sciences from St. Joseph's College.

Mr. Kleinrichert has provided testimony relating to economic damages in depositions, arbitrations, and trials in more than forty cases for both plaintiffs and defendants.

Based upon his education and extensive experience and background, Mr. Kleinrichert is qualified as an expert in the economic analysis of Plaintiffs' tournament membership interests, capital

---

[1] Mr. Kleinrichert left PwC in July 1999 to join Andersen as a direct admit partner. In May 2002, KPMG purchased a portion of the Value Solutions practice of Andersen in which Mr. Kleinrichert was a partner. FTI acquired the domestic Dispute Advisory Services ("DAS") business of KPMG on October 31, 2003.

REDACTED VERSION – PUBLICLY FILED

investments, and discounted cash flow and the appropriate method of compensating Plaintiffs for injury thereto.

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 5(b)

June 2, 2008                                    REDACTED VERSION – PUBLICLY FILED

**EXHIBIT 5(b) TO FINAL PRETRIAL ORDER**

**STATEMENT OF EXPERT WITNESS QUALIFICATIONS**

**A. Dr. Jonathan Walker**

Dr. Jonathan Walker will testify concerning competition issues bearing upon defendants' alleged liability under the antitrust laws, including (a) the economic nature and functioning of ATP and its members; (b) the extent of the product and geographic markets in which ATP competes; (c) the effects of ATP's Brave New World restructuring plans on competition in the relevant markets; (d) the effects of the restructuring plans on potential entry into the relevant markets; (e) the effects of the restructuring plans on the quantity and quality of output in the relevant markets; and (f) whether plaintiffs have suffered or are likely to suffer any antitrust injury. Dr. Walker will also testify in response to any opinions offered at trial by plaintiffs' proposed expert Dr. Andrew Zimbalist.

Dr. Walker is the President and CEO of Economists, Inc., a premier economic consulting firm in the fields of law and economics, public policy, and business strategy. He previously served as a visiting research fellow at the Federal Reserve Bank of Boston, where he participated in the antitrust regulation of banks. Dr. Walker received his B.A. degree in economics from the University of California at Berkeley, and a Ph.D. in economics from the Massachusetts Institute of Technology.

Dr. Walker has consulted for numerous sports-related enterprises on the topics of sports and antitrust economics. He has served as an expert witness concerning antitrust economics issues and industrial organization in several sports-related litigations, as well as in litigations in other industries. Dr. Walker has published articles concerning competition analyses and antitrust injury, and has participated in ABA panels concerning sports economics and the economic foundation of antitrust law.

REDACTED VERSION – PUBLICLY FILED

Based upon his education and extensive experience and background, Dr. Walker is qualified as an expert concerning antitrust economics and industrial organization in the sports industry.

**B.  Peter R. Greenhalgh**

Peter R. Greenhalgh will testify concerning issues relating to economic damages purportedly sustained by plaintiffs arising out of the alleged anticompetitive and/or unlawful acts challenged in this action.  Mr. Greenhalgh will also testify in response to any opinions offered at trial by plaintiffs' proposed expert Gary Kleinrichert.

Mr. Greenhalgh is a principal and co-founder of Economists, Inc., a premier economic consulting firm in the fields of law and economics, public policy, and business strategy.  He previously served at both the Antitrust Division of the U.S. Department of Justice and the Federal Communications Commission where he conducted and supervised economic analyses of competition issues.  He received his A.B. degree in mathematics from Princeton University, and an M.Phil degree in economics from Yale University.

Throughout his professional career, Mr. Greenhalgh has concentrated on the study of economics of firms and industries, and the application of economics to issues of antitrust liability and damages.  He has specialized expertise in the sports industry, where he has been retained to analyze economic and damages issues.  He has also testified as an expert witness with respect to damages issues on numerous occasions.

Based upon his education and extensive experience and background, Mr. Greenhalgh is qualified as an expert concerning economic damages purportedly sustained by plaintiffs in this action.

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 5(c)

June 2, 2008                                    REDACTED VERSION – PUBLICLY FILED

## EXHIBIT 5(c) TO FINAL PRETRIAL ORDER

### DEFENDANTS' OBJECTIONS TO
### PLAINTIFFS' STATEMENT OF EXPERT WITNESS QUALIFICATIONS

Defendants object to Plaintiffs' Statement of Expert Witness Qualifications for the

reasons set forth in Defendants' motions *in limine* to exclude each of Plaintiffs' experts.

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 6

REDACTED VERSION – PUBLICLY FILED

## EXHIBIT 6 TO FINAL PRETRIAL ORDER

## DEPOSITION DESIGNATIONS

**Plaintiffs' Position:**

Attached at Exhibit 6(a) are Plaintiffs' affirmative deposition designations set forth by page and line number. Plaintiffs are willing to accommodate Defendants' request to submit additional designations and counter-designations in a page:line format on or before June 13, 2008, so long as this does not prejudice the Court or the Court's docket and so long as Plaintiffs are given a reasonable opportunity to submit their own designations and counter-designations by that date and in the proper format. Plaintiffs reserve any and all other procedural and substantive rights relating thereto.

**Defendants' Position:**

For clarity and avoidance of error, Defendants have provided their designations to Plaintiffs in the form of marked transcripts (with minor supplements thereafter). Plaintiffs have, in turn, been providing their counter-designations and objections by marked transcript. Defendants likewise have been providing counter-designations and objections to Plaintiffs' designations in the form of marked transcripts, with the understanding that the parties would thereafter file comprehensive page:line charts with objections to the Court on or before June 13, 2008, including their respective objections to counter-designations. We were informed today that there had been a miscommunication on this procedure. The parties will continue to work together to exchange all of their respective counter-designations and objections and provide them to the Court in a page:line format by June 13, 2008. We apologize for any inconvenience this may present to the Court.

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 6(a)

REDACTED VERSION – PUBLICLY FILED

Deposition of Gayle Bradshaw
August 30, 2007

| Page | Line(s) |
|------|---------|
| 5 | 5-20 |
| 6 | 5-25 |
| 7 | 1-12 |
| 7 | 14-25 |
| 8 | 1-15 |
| 9 | 21-22 |
| 9 | 24-25 |
| 10 | 1-7 |
| 13 | 16-23 |
| 14 | 6-12 |
| 14 | 14-15 |
| 18 | 25 |
| 19 | 1-13 |
| 20 | 1-11 |
| 21 | 24-25 |
| 22 | 1-5 |
| 22 | 8-15 |
| 22 | 20-25 |
| 23 | 1-5 |
| 23 | 23-25 |
| 24 | 1-4 |
| 24 | 9-24 |
| 25 | 1-6 |
| 25 | 9-10 |
| 25 | 12-14 |
| 25 | 17-25 |
| 26 | 1-2 |
| 28 | 4-21 |
| 30 | 1-11 |
| 33 | 2-16 |
| 34 | 6-23 |
| 35 | 2-7 |
| 35 | 9-21 |
| 36 | 12-25 |
| 37 | 1-3 |
| 37 | 5-25 |
| 38 | 1-24 |
| 39 | 3 |
| 40 | 10-12 |
| 40 | 16-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 41 | 1-14 |
| 41 | 17-18 |
| 41 | 24-25 |
| 42 | 1-4 |
| 42 | 7-11 |
| 42 | 13-25 |
| 43 | 1-22 |
| 43 | 25 |
| 44 | 1-16 |
| 46 | 3-17 |
| 46 | 21-24 |
| 47 | 6-18 |
| 47 | 21 |
| 49 | 13-25 |
| 50 | 1-16 |
| 51 | 5-18 |
| 51 | 21-25 |
| 52 | 1-3 |
| 52 | 6-11 |
| 52 | 13-23 |
| 53 | 1-4 |
| 53 | 7 |
| 55 | 17-21 |
| 55 | 25 |
| 56 | 1-19 |
| 56 | 23-25 |
| 57 | 1-12 |
| 57 | 15-17 |
| 57 | 19-21 |
| 58 | 5-25 |
| 59 | 3 |
| 59 | 12-18 |
| 59 | 21-25 |
| 60 | 3 |
| 60 | 16-23 |
| 61 | 2 |
| 61 | 6-23 |
| 62 | 1-7 |
| 62 | 14-24 |
| 63 | 9-11 |
| 63 | 14-20 |
| 63 | 23-25 |
| 64 | 1-24 |
| 65 | 1-24 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 66 | 1-4 |
| 66 | 6-13 |
| 66 | 15-24 |
| 67 | 24-25 |
| 68 | 1-11 |
| 70 | 1-9 |
| 70 | 1116 |
| 71 | 7-12 |
| 71 | 15-17 |
| 72 | 10-17 |
| 72 | 21-25 |
| 73 | 1-16 |
| 73 | 23-25 |
| 74 | 5-8 |
| 74 | 11-16 |
| 75 | 2 |
| 77 | 6-18 |
| 86 | 8-13 |
| 89 | 23-25 |
| 90 | 5-8 |
| 92 | 15-17 |
| 92 | 20-24 |
| 93 | 15-25 |
| 94 | 11-12 |
| 94 | 15-19 |
| 94 | 23-24 |
| 102 | 6-8 |
| 102 | 11-21 |
| 106 | 20-25 |
| 107 | 1-24 |
| 108 | 1-12 |
| 108 | 23-25 |
| 109 | 1-16 |
| 112 | 9-22 |
| 115 | 4-22 |
| 117 | 10-13 |
| 117 | 17-25 |
| 118 | 1-25 |
| 119 | 1-3 |
| 119 | 13-21 |
| 119 | 24-25 |
| 120 | 1-3 |
| 120 | 6-24 |
| 123 | 7-9 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 123 | 15-19 |
| 124 | 14-23 |
| 124 | 25 |
| 125 | 1-9 |
| 126 | 9-22 |
| 126 | 25 |
| 127 | 7-12 |
| 127 | 17-24 |
| 128 | 3-4 |
| 128 | 9-16 |
| 128 | 20-25 |
| 129 | 1-18 |
| 130 | 1-4 |
| 130 | 7 |
| 131 | 14-18 |
| 134 | 17-25 |
| 135 | 1-25 |
| 136 | 19-25 |
| 137 | 1-17 |
| 137 | 25 |
| 138 | 1-25 |
| 139 | 1-13 |
| 139 | 16-20 |
| 139 | 23-25 |
| 140 | 1-3 |
| 140 | 13-22 |
| 141 | 8-25 |
| 142 | 1-25 |
| 143 | 1-4 |
| 145 | 16-25 |
| 146 | 1-25 |
| 147 | 1-5 |
| 148 | 3-9 |
| 149 | 12-25 |
| 150 | 1-13 |
| 152 | 21-24 |
| 153 | 12-18 |
| 155 | 24-25 |
| 156 | 1-9 |
| 158 | 25 |
| 159 | 1-24 |
| 160 | 1-5 |
| 163 | 19-25 |
| 164 | 1-6 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 164 | 20-25 |
| 165 | 1-12 |
| 167 | 21-25 |
| 168 | 1-5 |
| 168 | 12-19 |
| 173 | 12-16 |
| 173 | 18-21 |
| 174 | 15-25 |
| 175 | 1-21 |
| 176 | 9-11 |
| 176 | 14-19 |
| 176 | 23-25 |
| 177 | 1-2 |
| 177 | 4-25 |
| 178 | 1-4 |
| 184 | 6-25 |
| 185 | 1-5 |
| 185 | 10-25 |
| 186 | 1-17 |
| 188 | 19-25 |
| 189 | 1-7 |
| 192 | 18-25 |
| 193 | 1-12 |
| 193 | 15-18 |
| 193 | 21-25 |
| 200 | 1-11 |
| 200 | 18-21 |
| 221 | 25 |
| 222 | 1-25 |
| 223 | 1-19 |
| 223 | 22-25 |
| 224 | 1-4 |
| 224 | 13-19 |
| 224 | 22-25 |
| 225 | 1-2 |
| 225 | 6-9 |
| 227 | 17-25 |
| 228 | 2 |
| 228 | 6-16 |
| 228 | 19-22 |
| 228 | 25 |
| 229 | 1-10 |
| 229 | 12-25 |
| 230 | 1-5 |

| Page | Line(s) |
|------|---------|
| 230 | 12-23 |
| 231 | 3-13 |
| 231 | 16-25 |
| 232 | 1-6 |
| 232 | 9-16 |
| 236 | 12-25 |
| 237 | 1-25 |
| 238 | 1-25 |
| 239 | 4-20 |
| 239 | 23-25 |
| 240 | 1-6 |
| 240 | 9-14 |
| 240 | 17-25 |
| 241 | 1-3 |
| 241 | 6-25 |
| 242 | 1-15 |
| 242 | 17-20 |
| 242 | 23-24 |
| 252 | 10-20 |
| 252 | 22 |
| 255 | 14-22 |
| 255 | 25 |
| 256 | 1-13 |
| 257 | 3-8 |
| 257 | 10-16 |
| 257 | 19-25 |
| 258 | 1-7 |
| 258 | 9-12 |
| 258 | 15-23 |
| 259 | 1-6 |
| 259 | 9-11 |
| 259 | 17-19 |
| 259 | 23-25 |
| 260 | 1-7 |
| 262 | 7-11 |
| 262 | 14-17 |
| 262 | 20 |
| 266 | 18-22 |
| 280 | 9-15 |
| 280 | 17-18 |
| 283 | 5-20 |
| 283 | 22-25 |
| 284 | 1-6 |
| 284 | 13-14 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 284 | 17-23 |
| 285 | 13-25 |
| 286 | 1-25 |
| 287 | 1-18 |
| 287 | 19-25 |
| 288 | 1-21 |
| | |

REDACTED VERSION – PUBLICLY FILED

Deposition of Juraj Ciz
November 21, 2007

| Page | Line(s) |
|------|---------|
| 30 | 4-14 |
| 34 | 15-25 |
| 35 | 1-25 |
| 36 | 1-25 |
| 37 | 1-12 |
| 37 | 22-25 |
| 38 | 1-25 |
| 39 | 1-4 |
| 40 | 15-25 |
| 41 | 1-25 |
| 42 | 1-22 |
| 43 | 5-25 |
| 46 | 3-25 |
| 47 | 1-25 |
| 48 | 1-25 |
| 49 | 1-25 |
| 50 | 12-25 |
| 51 | 1-15 |
| 52 | 5-13 |
| 53 | 2-8 |
| 54 | 3-21 |
| 56 | 6-9 |
| 57 | 2-10 |
| 73 | 15-24 |
| 79 | 7-25 |
| 80 | 2-25 |
| 81 | 2-25 |
| 82 | 2-8 |
| 88 | 24, 25 |
| 89 | 1-10 |
| 89 | 13-16 |
| 90 | 2-4 |
| 90 | 7-25 |
| 91 | 2-7 |
| 101 | 22, 23 |
| 102 | 1-25 |
| 103 | 2-18 |
| 109 | 16-25 |
| 110 | 2-25 |
| 111 | 2-6 |

1

REDACTED VERSION – PUBLICLY FILED

| 111 | 9-18 |
|-----|------|
| 116 | 18-25 |
| 117 | 2-19 |
| 127 | 10-19 |
| 127 | 22-25 |
| 128 | 2-18 |
| 128 | 21-25 |
| 129 | 2-25 |
| 130 | 2-25 |
| 131 | 10-25 |
| 132 | 2-11 |
| 134 | 19-25 |
| 135 | 2-25 |
| 139 | 10-15 |
| 139 | 18-25 |
| 140 | 2 |
| 140 | 5-18 |
| 141 | 10-19 |
| 141 | 22-24 |
| 143 | 14-20 |
| 143 | 23, 25 |
| 144 | 12-25 |
| 145 | 2-24 |
| 146 | 13-21 |
| 148 | 5-16 |
| 148 | 19-25 |
| 149 | 2-16 |
| 149 | 21-25 |
| 150 | 2-17 |
| 150 | 23, 24 |
| 151 | 3-10 |
| 151 | 16 |
| 184 | 9-22 |
| 185 | 7-25 |
| 186 | 2-13 |
| 186 | 16-25 |
| 187 | 2-25 |
|     |      |

INDS02 JADAMS 973477v1

REDACTED VERSION – PUBLICLY FILED

Deposition of Etienne de Villiers, Volume 1
January 8, 2008

| Page | Line(s) |
|------|---------|
| 10 | 18-21 |
| 11 | 3-9 |
| 11 | 11-25 |
| 12 | 2-25 |
| 13 | 2 |
| 13 | 4-10 |
| 13 | 12-25 |
| 14 | 2-9 |
| 14 | 12-25 |
| 15 | 2-10 |
| 15 | 17-20 |
| 15 | 22-25 |
| 16 | 2-15 |
| 16 | 17-25 |
| 17 | 2-11 |
| 17 | 19-23 |
| 18 | 2-25 |
| 19 | 2-25 |
| 20 | 2-24 |
| 21 | 12-15 |
| 21 | 18-25 |
| 22 | 2-13 |
| 22 | 22-25 |
| 23 | 2-7 |
| 23 | 16-25 |
| 24 | 2-4 |
| 24 | 6-8 |
| 24 | 17-25 |
| 25 | 2-25 |
| 26 | 2-14 |
| 26 | 24-25 |
| 27 | 2 |
| 27 | 4-25 |
| 28 | 2 |
| 28 | 4-13 |
| 28 | 15 |
| 28 | 17 |
| 28 | 24-25 |
| 29 | 2-22 |
| 30 | 2-23 |
| 30 | 25 |

| Page | Line(s) |
|---|---|
| 31 | 2 |
| 31 | 12-25 |
| 32 | 2-11 |
| 32 | 13-25 |
| 33 | 2-9 |
| 33 | 13-24 |
| 34 | 2-9 |
| 34 | 13-20 |
| 34 | 24-25 |
| 35 | 2-7 |
| 35 | 9-18 |
| 35 | 21-25 |
| 36 | 2-15 |
| 36 | 17-23 |
| 37 | 7-21 |
| 37 | 25 |
| 38 | 2-7 |
| 38 | 15-20 |
| 39 | 10-15 |
| 39 | 21-25 |
| 40 | 2-6 |
| 40 | 20-25 |
| 41 | 2-8 |
| 42 | 9-25 |
| 43 | 2-18 |
| 43 | 22-25 |
| 44 | 2-8 |
| 46 | 24-25 |
| 47 | 2-3 |
| 47 | 9-25 |
| 48 | 7-8 |
| 48 | 18-25 |
| 49 | 2-9 |
| 49 | 13-24 |
| 50 | 5-25 |
| 51 | 2-25 |
| 52 | 2-6 |
| 52 | 18-21 |
| 52 | 23-25 |
| 53 | 2-20 |
| 53 | 22-25 |
| 54 | 2-25 |
| 55 | 2-25 |
| 56 | 2-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 57 | 2-22 |
| 57 | 24-25 |
| 58 | 2-25 |
| 59 | 2-25 |
| 60 | 2-6 |
| 60 | 8-24 |
| 61 | 5-25 |
| 62 | 2-25 |
| 63 | 2 |
| 63 | 4-17 |
| 63 | 19-25 |
| 64 | 2-11 |
| 64 | 13-25 |
| 65 | 2-7 |
| 65 | 9-24 |
| 66 | 14-20 |
| 66 | 22-25 |
| 67 | 2-25 |
| 68 | 2 |
| 68 | 4-20 |
| 69 | 2-25 |
| 70 | 2-15 |
| 70 | 18-25 |
| 71 | 2-25 |
| 72 | 2-25 |
| 73 | 2-4 |
| 73 | 11-12 |
| 73 | 14-25 |
| 74 | 2-25 |
| 75 | 2-4 |
| 75 | 9-23 |
| 76 | 9-25 |
| 77 | 2-12 |
| 77 | 16-25 |
| 78 | 2-24 |
| 79 | 22-25 |
| 80 | 2-20 |
| 81 | 5-10 |
| 88 | 6-25 |
| 89 | 2-11 |
| 90 | 5-25 |
| 91 | 2-12 |
| 91 | 16-17 |
| 91 | 20-25 |

| Page | Line(s) |
|------|---------|
| 92 | 2-25 |
| 93 | 2-25 |
| 94 | 10-25 |
| 95 | 2-22 |
| 96 | 11-25 |
| 97 | 2 |
| 97 | 20-21 |
| 97 | 23-25 |
| 98 | 2-25 |
| 99 | 2-25 |
| 100 | 2-25 |
| 101 | 2-25 |
| 102 | 2-25 |
| 103 | 2-25 |
| 104 | 2-3 |
| 104 | 22-25 |
| 105 | 2-25 |
| 106 | 2-12 |
| 107 | 2-25 |
| 108 | 2-25 |
| 109 | 2-14 |
| 109 | 16-25 |
| 110 | 2-25 |
| 111 | 2-6 |
| 111 | 12-20 |
| 111 | 22-25 |
| 112 | 2-25 |
| 113 | 2-25 |
| 114 | 2-25 |
| 115 | 2-25 |
| 116 | 2-13 |
| 116 | 16-21 |
| 116 | 25 |
| 117 | 2-25 |
| 118 | 3-25 |
| 119 | 2-25 |
| 120 | 2-15 |
| 120 | 20-24 |
| 121 | 3-25 |
| 122 | 2-3 |
| 122 | 7-19 |
| 122 | 21-25 |
| 123 | 2-23 |
| 123 | 25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 124 | 2-25 |
| 125 | 2-7 |
| 125 | 10-25 |
| 126 | 2-25 |
| 127 | 2-18 |
| 128 | 9-25 |
| 129 | 2-25 |
| 130 | 2-3 |
| 130 | 9-20 |
| 130 | 23-25 |
| 131 | 14-25 |
| 132 | 2-25 |
| 133 | 2-25 |
| 134 | 2-10 |
| 134 | 16-25 |
| 135 | 2-25 |
| 136 | 2-23 |
| 136 | 25 |
| 137 | 2-25 |
| 138 | 2-25 |
| 139 | 2-25 |
| 140 | 2-25 |
| 141 | 2-25 |
| 142 | 2-25 |
| 143 | 2-25 |
| 144 | 2-25 |
| 145 | 2-25 |
| 146 | 2-5 |
| 146 | 7-23 |
| 147 | 2-17 |
| 149 | 18-23 |
| 150 | 5-15 |
| 150 | 17-25 |
| 151 | 2-25 |
| 152 | 2-8 |
| 153 | 5-19 |
| 154 | 3-14 |
| 154 | 25 |
| 155 | 2-25 |
| 156 | 2-25 |
| 157 | 2-25 |
| 158 | 2-25 |
| 159 | 2-25 |
| 160 | 2 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
| --- | --- |
| 160 | 14-25 |
| 161 | 2-25 |
| 162 | 2-25 |
| 163 | 2-25 |
| 164 | 2-25 |
| 165 | 2-7 |
| 165 | 12-25 |
| 166 | 2-25 |
| 167 | 2-3 |
| 167 | 5-25 |
| 168 | 2-7 |
| 168 | 14-19 |
| 169 | 10-16 |
| 169 | 23-25 |
| 170 | 2-25 |
| 171 | 2-5 |
| 171 | 11-25 |
| 172 | 2-25 |
| 173 | 2-25 |
| 174 | 2-25 |
| 175 | 2-25 |
| 176 | 2-7 |
| 176 | 10-13 |
| 176 | 16-25 |
| 177 | 2-7 |
| 177 | 10-25 |
| 178 | 2-23 |
| 179 | 2-23 |
| 180 | 3-25 |
| 181 | 5-8 |
| 181 | 10 |
| 184 | 6-13 |
| 184 | 15-25 |
| 185 | 2-25 |
| 186 | 2-25 |
| 187 | 2-25 |
| 188 | 2-25 |
| 189 | 2-15 |
| 189 | 21-25 |
| 190 | 2-25 |
| 191 | 2-7 |
| 191 | 9-25 |
| 192 | 2-25 |
| 193 | 2-16 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 193 | 19-25 |
| 194 | 2-23 |
| 195 | 5-25 |
| 196 | 2-8 |
| 196 | 16-25 |
| 197 | 2-17 |
| 197 | 20-25 |
| 198 | 2-25 |
| 199 | 2-14 |
| 200 | 2-25 |
| 201 | 2-17 |
| 201 | 21-25 |
| 202 | 2-15 |
| 202 | 19-25 |
| 203 | 2-25 |
| 204 | 2-25 |
| 205 | 2-25 |
| 206 | 2-25 |
| 207 | 2-25 |
| 208 | 2-21 |
| 209 | 5-8 |
| 209 | 11-20 |
| 209 | 23-25 |
| 210 | 2-5 |
| 210 | 8-17 |
| 210 | 22-25 |
| 211 | 2-22 |
| 211 | 25 |
| 212 | 2-7 |
| 212 | 20-23 |
| 212 | 25 |
| 213 | 2-21 |
| 213 | 24-25 |
| 214 | 2-13 |
| 214 | 16-25 |
| 215 | 2 |
| 215 | 5-9 |
| 215 | 11-25 |
| 216 | 2-16 |
| 216 | 19-25 |
| 217 | 2-25 |
| 218 | 2-25 |
| 219 | 2-4 |
| 220 | 3-23 |

| Page | Line(s) |
|------|---------|
| 221 | 10-25 |
| 222 | 2-25 |
| 223 | 2-8 |
| 223 | 15-21 |
| 223 | 25 |
| 224 | 2-3 |
| 224 | 17-19 |
| 224 | 22-25 |
| 225 | 2-24 |
| 226 | 8-25 |
| 227 | 2-4 |
| 227 | 6-18 |
| 227 | 22-25 |
| 228 | 2-3 |
| 228 | 5-25 |
| 229 | 2-20 |
| 230 | 2-5 |
| 230 | 9-25 |
| 231 | 2-5 |
| 231 | 21-25 |
| 232 | 2-25 |
| 234 | 13-22 |
| 234 | 25 |
| 235 | 2-15 |
| 235 | 24-25 |
| 236 | 2-14 |
| 236 | 17-25 |
| 237 | 2-19 |
| 237 | 22-25 |
| 238 | 2-25 |
| 239 | 2-5 |
| 239 | 7-8 |
| 239 | 20-21 |
| 239 | 24-25 |
| 240 | 2-25 |
| 241 | 2 |
| 241 | 4-25 |
| 242 | 2-14 |
| 242 | 17-23 |
| 243 | 2-25 |
| 244 | 4-25 |
| 245 | 2 |
| 245 | 5-8 |
| 245 | 11-19 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 248 | 6-25 |
| 249 | 7-21 |
| 249 | 24-25 |
| 250 | 2-25 |
| 251 | 2-19 |
| 251 | 22-25 |
| 252 | 2-25 |
| 253 | 2-25 |
| 254 | 2 |
| 254 | 8-25 |
| 255 | 2-25 |
| 256 | 2-4 |
| 256 | 14-25 |
| 257 | 2-6 |
| 259 | 8-15 |
| 259 | 24-25 |
| 260 | 2-9 |
| 260 | 14-25 |
| 261 | 2-25 |
| 262 | 2-19 |
| 263 | 3-25 |
| 264 | 2-25 |
| 265 | 2-8 |
| 265 | 11-17 |
| 265 | 20-23 |
| 266 | 10-21 |
| 266 | 23-25 |
| 267 | 2-24 |
| 268 | 4-6 |
| 268 | 17-25 |
| 269 | 2-25 |
| 270 | 2-25 |
| 271 | 2-25 |
| 272 | 2-25 |
| 273 | 2-25 |
| 274 | 2-25 |
| 275 | 2-25 |
| 276 | 2-25 |
| 277 | 2-25 |
| 278 | 2-25 |
| 279 | 2-4 |
| 279 | 17-25 |
| 280 | 2-9 |
| 281 | 2-23 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 285 | 6-25 |
| 286 | 2-25 |
| 287 | 2-25 |
| 288 | 2-12 |
| 288 | 14-25 |
| 289 | 2-21 |
| 291 | 4-10 |
| 291 | 13-17 |
| 291 | 25 |
| 292 | 2-25 |
| 293 | 2-25 |
| 294 | 12-17 |
| 294 | 19-23 |
| 295 | 3-25 |
| 296 | 2-13 |
| 297 | 21-25 |
| 298 | 2-7 |
| 298 | 19-24 |
| 299 | 2-16 |
| 299 | 24-25 |
| 300 | 2-15 |
| 300 | 17-25 |
| 301 | 2-3 |
| 301 | 5-25 |
| 302 | 2-6 |
| 302 | 13-25 |
| 303 | 2-25 |
| 304 | 2-25 |
| 305 | 2-25 |
| 306 | 2-25 |
| 307 | 2-18 |
| 307 | 20-25 |
| 308 | 2 |
| 308 | 18-21 |
| 308 | 24-25 |
| 309 | 2-25 |
| 310 | 2-21 |
| 310 | 25 |
| 311 | 2-7 |
| 311 | 11-25 |
| 312 | 2-25 |
| 313 | 2-25 |
| 314 | 2 |
| 314 | 15-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 315 | 2 |
| 316 | 9-14 |
| 316 | 17-25 |
| 317 | 2-4 |
| 317 | 9-12 |
| 317 | 15-20 |
| 317 | 23-25 |
| 318 | 2-16 |
| 318 | 19-25 |
| 319 | 2-3 |
| 319 | 5-25 |
| 320 | 2-10 |
| 320 | 12-24 |
| 321 | 16-25 |
| 322 | 2-13 |
| 322 | 15-20 |
| 323 | 13-25 |
| 324 | 2-7 |
| 324 | 13-25 |
| 325 | 2-25 |
| 326 | 2-25 |
| 327 | 2-12 |
| 327 | 16-25 |
| 328 | 2-4 |
| 328 | 6-16 |

INDS02 JADAMS 974017v1

REDACTED VERSION – PUBLICLY FILED

Deposition of Etienne de Villiers
January 9, 2008
Volume II

| Page | Line(s) |
|------|---------|
| 389 | 13-25 |
| 390 | 2-16 |
| 390 | 25 |
| 391 | 2-25 |
| 392 | 2-25 |
| 393 | 2-12 |
| 393 | 20-25 |
| 394 | 2-4 |
| 394 | 6-10 |
| 394 | 13-25 |
| 395 | 2-25 |
| 396 | 2-25 |
| 397 | 2-25 |
| 398 | 2-25 |
| 399 | 2-12 |
| 399 | 19-25 |
| 400 | 2-25 |
| 401 | 2-25 |
| 402 | 2-25 |
| 403 | 2-25 |
| 404 | 2-7 |
| 404 | 9-18 |
| 404 | 20-25 |
| 405 | 2-16 |
| 405 | 18-24 |
| 406 | 2-18 |
| 406 | 2025 |
| 407 | 2-11 |
| 407 | 19-25 |
| 408 | 2-4 |
| 408 | 6-25 |
| 409 | 2-16 |
| 410 | 5-11 |
| 410 | 13-25 |
| 411 | 2-25 |
| 412 | 2-14 |
| 413 | 9-25 |
| 414 | 2-23 |
| 419 | 14-24 |
| 420 | 15-19 |
| 420 | 24-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 421 | 7-25 |
| 422 | 2-25 |
| 423 | 2-6 |
| 423 | 15-21 |
| 423 | 25 |
| 424 | 2-17 |
| 424 | 19-25 |
| 425 | 2-20 |
| 425 | 22-25 |
| 426 | 2-21 |
| 426 | 25 |
| 427 | 2-22 |
| 427 | 24-25 |
| 428 | 2-11 |
| 428 | 14-22 |
| 428 | 25 |
| 429 | 2-25 |
| 430 | 2-7 |
| 430 | 10-20 |
| 430 | 23-25 |
| 431 | 2-9 |
| 431 | 11-25 |
| 432 | 2-16 |
| 433 | 6-10 |
| 433 | 13-25 |
| 434 | 2-25 |
| 435 | 2-5 |
| 435 | 7-25 |
| 436 | 2-24 |
| 437 | 3-25 |
| 438 | 2-25 |
| 439 | 2-3 |
| 439 | 6-12 |
| 439 | 14-25 |
| 440 | 2-19 |
| 440 | 21-25 |
| 441 | 2-14 |
| 441 | 16-25 |
| 442 | 2-3 |
| 442 | 11-25 |
| 443 | 3-14 |
| 443 | 16-25 |
| 444 | 2-8 |
| 444 | 15-21 |
| 444 | 24-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 445 | 21-25 |
| 446 | 2-23 |
| 446 | 25 |
| 447 | 2-11 |
| 447 | 16-25 |
| 448 | 2-7 |
| 448 | 13 |
| 448 | 15-25 |
| 449 | 2-13 |
| 450 | 11-18 |
| 450 | 20-25 |
| 451 | 17-25 |
| 452 | 2-4 |
| 452 | 6-20 |
| 453 | 3-25 |
| 454 | 2-7 |
| 454 | 9-25 |
| 455 | 2 |
| 455 | 4-5 |
| 455 | 8-12 |
| 456 | 16-19 |
| 456 | 23-25 |
| 457 | 2-7 |
| 457 | 9-25 |
| 458 | 2 |
| 458 | 5-25 |
| 459 | 2-9 |
| 459 | 12-25 |
| 460 | 2-25 |
| 461 | 2-23 |
| 462 | 12-20 |
| 463 | 6-11 |
| 463 | 13-25 |
| 464 | 2-25 |
| 465 | 2-25 |
| 466 | 2-25 |
| 467 | 2-25 |
| 468 | 2-11 |
| 469 | 14-25 |
| 470 | 2-25 |
| 471 | 2-10 |
| 471 | 16-25 |
| 472 | 2 |
| 472 | 5-8 |
| 472 | 10-20 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 472 | 25 |
| 473 | 2 |
| 473 | 17-25 |
| 474 | 3-23 |
| 474 | 25 |
| 475 | 2-13 |
| 475 | 23-25 |
| 476 | 2-11 |
| 476 | 15-17 |
| 476 | 20-25 |
| 477 | 2-25 |
| 478 | 2-25 |
| 479 | 2-4 |
| 479 | 6-16 |
| 479 | 18-25 |
| 480 | 2-25 |
| 481 | 2-4 |
| 481 | 6-25 |
| 482 | 4-25 |
| 483 | 2-8 |
| 483 | 14-17 |
| 484 | 4-5 |
| 484 | 8 |
| 484 | 17-21 |
| 484 | 23-25 |
| 485 | 2-25 |
| 486 | 2-11 |
| 486 | 14-20 |
| 486 | 23-25 |
| 487 | 4-5 |
| 487 | 11-25 |
| 488 | 2-25 |
| 489 | 2-24 |
| 490 | 2-5 |
| 490 | 7-25 |
| 491 | 2-13 |
| 491 | 15-25 |
| 492 | 2-5 |
| 492 | 9 |
| 492 | 15-18 |
| 492 | 22-25 |
| 493 | 2-16 |
| 493 | 19-21 |
| 493 | 23-25 |
| 494 | 2-12 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 494 | 14-21 |
| 494 | 23-25 |
| 495 | 2-5 |
| 495 | 7-25 |
| 496 | 2-7 |
| 496 | 11-18 |
| 496 | 20-24 |
| 498 | 10-25 |
| 499 | 2-25 |
| 500 | 2-12 |
| 500 | 14-25 |
| 501 | 2-25 |
| 502 | 17-25 |
| 503 | 2-5 |
| 503 | 18-25 |
| 504 | 2-25 |
| 505 | 14-25 |
| 506 | 4-22 |
| 507 | 21-23 |
| 507 | 25 |
| 508 | 2-9 |
| 508 | 12-25 |
| 509 | 2 |
| 509 | 9-25 |
| 510 | 2-22 |
| 510 | 25 |
| 511 | 2-21 |
| 511 | 24-25 |
| 512 | 2-25 |
| 513 | 2-25 |
| 514 | 2-20 |
| 514 | 22-25 |
| 515 | 2-11 |
| 515 | 13-25 |
| 515 | 2 |
| 516 | 15-20 |
| 516 | 22-25 |
| 517 | 2-25 |
| 518 | 2-25 |
| 519 | 2-25 |
| 520 | 2-25 |
| 521 | 2-25 |
| 522 | 2-5 |
| 522 | 9-25 |
| 523 | 2-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 524 | 2-24 |
| 525 | 3-7 |
| 525 | 24-25 |
| 526 | 2-4 |
| 526 | 9-25 |
| 527 | 2-25 |
| 528 | 2-25 |
| 529 | 2-25 |
| 530 | 2-11 |
| 530 | 21-25 |
| 531 | 2-6 |
| 531 | 12-25 |
| 532 | 2-5 |
| 532 | 7-25 |
| 533 | 2-25 |
| 534 | 2-5 |
| 534 | 9-20 |
| 534 | 24-25 |
| 535 | 2-25 |
| 536 | 2-25 |
| 537 | 2-25 |
| 538 | 2 |
| 538 | 17-25 |
| 539 | 2-8 |
| 539 | 11-17 |
| 539 | 21-25 |
| 540 | 2-19 |
| 541 | 2-25 |
| 542 | 2-25 |
| 543 | 2-25 |
| 544 | 2-14 |
| 544 | 18-25 |
| 545 | 2-15 |
| 545 | 20-25 |
| 546 | 2-25 |
| 547 | 2-25 |
| 548 | 2 |
| 548 | 10-25 |
| 549 | 2-25 |
| 550 | 2-21 |
| 551 | 18-25 |
| 552 | 2-15 |
| 554 | 8-25 |
| 555 | 2-9 |
| 555 | 16-21 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 555 | 24-25 |
| 556 | 2-25 |
| 557 | 2-11 |
| 558 | 16-25 |
| 559 | 2-13 |
| 559 | 20-25 |
| 560 | 2-25 |
| 561 | 2-25 |
| 562 | 2-25 |
| 563 | 2-5 |
| 563 | 7-25 |
| 564 | 2-25 |
| 565 | 2-25 |
| 566 | 2-25 |
| 567 | 2-25 |
| 568 | 5-23 |
| 569 | 2-10 |
| 569 | 16-23 |
| 569 | 25 |
| 570 | 2-25 |
| 571 | 2-25 |
| 572 | 2-5 |
| 572 | 10-25 |
| 573 | 2-25 |
| 574 | 2-25 |
| 575 | 2-18 |
| 575 | 21-24 |
| 576 | 3-25 |
| 577 | 2-17 |
| 577 | 21-25 |
| 578 | 2-8 |
| 578 | 11-25 |
| 579 | 2-7 |
| 579 | 9-14 |
| 579 | 23-25 |
| 580 | 2-25 |
| 581 | 2-6 |
| 581 | 14-25 |
| 582 | 2-14 |
| 582 | 19-25 |
| 583 | 2-25 |
| 584 | 2-8 |
| 584 | 14-25 |
| 585 | 2-25 |
| 586 | 2-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 587 | 2 |
| 587 | 6-25 |
| 588 | 2-25 |
| 589 | 2-4 |
| 589 | 6-25 |
| 590 | 2 |
| 590 | 6-25 |
| 591 | 2-25 |
| 592 | 2-4 |
| 592 | 8-21 |
| 593 | 2-14 |
| 593 | 18-19 |
| 594 | 5-10 |
| 594 | 13-25 |
| 595 | 4-25 |
| 596 | 2-25 |
| 597 | 4-25 |
| 598 | 2-25 |
| 599 | 2-5 |
| 599 | 14-25 |
| 600 | 2-10 |
| 600 | 17-25 |
| 601 | 2-12 |
| 601 | 19-25 |
| 602 | 2-25 |
| 603 | 2-11 |
| 603 | 14-21 |
| 604 | 3-25 |
| 605 | 2-6 |
| 605 | 21-25 |
| 606 | 2-5 |
| 606 | 8-25 |
| 607 | 2-25 |
| 608 | 2-24 |
| 610 | 10-25 |
| 611 | 2-25 |
| 612 | 2-7 |
| 613 | 23-25 |
| 614 | 2-24 |
| 615 | 2-25 |
| 616 | 2-25 |
| 617 | 2-25 |
| 618 | 2-25 |
| 619 | 9-16 |
| 619 | 23-25 |

| Page | Line(s) |
|------|---------|
| 620 | 2-25 |
| 621 | 2-25 |
| 622 | 2-7 |
| 622 | 11-25 |
| 623 | 2-25 |
| 624 | 2-12 |
| 625 | 7-9 |
| 625 | 11-23 |
| 626 | 4-22 |
| 627 | 4-25 |
| 628 | 2-25 |
| 629 | 2-25 |
| 630 | 2-11 |
| 630 | 14-25 |
| 631 | 2-22 |
| 631 | 24-25 |
| 632 | 2-5 |
| 633 | 2-5 |
| 633 | 20-22 |
| 634 | 12-25 |
| 635 | 2-7 |
| 635 | 13-25 |
| 636 | 2-25 |
| 637 | 2-11 |
| 637 | 14-25 |
| 638 | 2-25 |
| 639 | 2 |
| 639 | 5-25 |
| 640 | 2-25 |
| 641 | 2-25 |
| 642 | 2-11 |
| 643 | 6-25 |
| 644 | 2-25 |
| 645 | 2-25 |
| 646 | 2-25 |
| 647 | 2-25 |
| 648 | 2-13 |
| 649 | 2-25 |
| 650 | 2-25 |
| 651 | 2-25 |
| 652 | 2-3 |
| 652 | 13-25 |
| 653 | 2-12 |
| 653 | 21-25 |
| 654 | 2-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 655 | 2-25 |
| 656 | 2-18 |
| 656 | 23-25 |
| 657 | 2-21 |
| 657 | 23-25 |
| 658 | 2-25 |
| 659 | 3-25 |
| 660 | 2-11 |
| 660 | 15-25 |
| 661 | 2-13 |
| 661 | 18-20 |
| 661 | 24-25 |
| 662 | 2-25 |
| 663 | 2-13 |
| 663 | 19-21 |
| 664 | 8-18 |
| 664 | 23-25 |
| 665 | 2-25 |
| 666 | 2-25 |
| 667 | 2-25 |
| 668 | 2-4 |
| 668 | 7-20 |
| 668 | 23-25 |
| 669 | 2-25 |
| 670 | 2-25 |
| 671 | 2-21 |
| 672 | 3-7 |
| 672 | 9-25 |
| 673 | 2-25 |
| 674 | 2-8 |
| 674 | 12-22 |
| 675 | 4-6 |
| 675 | 19-25 |
| 676 | 4-25 |
| 677 | 2-3 |
| 677 | 16-25 |
| 678 | 2 |
| 678 | 4-25 |
| 679 | 2-3 |
| 679 | 5-20 |
| 679 | 25 |
| 680 | 2 |
| 680 | 4-25 |
| 681 | 2-6 |
| 681 | 8-20 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 681 | 23-25 |
| 682 | 5-21 |
| 683 | 4-25 |
| 684 | 2-25 |
| 685 | 2 |
| 685 | 9-25 |
| 686 | 2-25 |
| 687 | 2-25 |
| 688 | 2-16 |
| 688 | 20-25 |
| 689 | 2-14 |
| 689 | 20-22 |
| 689 | 24-25 |
| 690 | 2-25 |
| 691 | 2-8 |
| 691 | 15-25 |
| 692 | 2-25 |
| 693 | 2 |
| 695 | 10-25 |
| 696 | 2-17 |
| 697 | 8-25 |
| 698 | 2-25 |
| 699 | 11-25 |
| 700 | 2-25 |
| 701 | 2-25 |
| 702 | 2-11 |
| 704 | 2-25 |
| 705 | 2-25 |
| 706 | 2-25 |
| 707 | 3-7 |
| 707 | 17-22 |
| 708 | 9-16 |
| 710 | 4-25 |
| 711 | 2-25 |
| 712 | 2-13 |
| 712 | 23-25 |
| 713 | 2-25 |
| 714 | 2-25 |
| 715 | 2-19 |
| 716 | 4-13 |
| 717 | 14-25 |
| 718 | 4-8 |
| 719 | 25 |
| 720 | 2-25 |
| 722 | 16-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 723  | 2-25    |
| 724  | 2-25    |
| 725  | 2-25    |
| 726  | 2-7     |

REDACTED VERSION – PUBLICLY FILED

Deposition of Brad Drewett
August 28, 2007

| Page | Line(s) |
|------|---------|
| 5 | 8-25 |
| 6 | 2-24 |
| 7 | 2-22 |
| 7 | 24-25 |
| 8 | 2-4 |
| 8 | 6-8 |
| 9 | 13-25 |
| 10 | 2-14 |
| 10 | 16-25 |
| 11 | 2-10 |
| 11 | 12-20 |
| 15 | 6-23 |
| 16 | 2-9 |
| 17 | 8-15 |
| 17 | 18-25 |
| 18 | 5-12 |
| 18 | 15-20 |
| 18 | 24-25 |
| 19 | 2-6 |
| 19 | 10-14 |
| 19 | 17-21 |
| 19 | 24-25 |
| 20 | 2-5 |
| 20 | 8-25 |
| 21 | 2-4 |
| 21 | 6-16 |
| 21 | 19-25 |
| 22 | 2-5 |
| 22 | 8-10 |
| 22 | 13-25 |
| 23 | 2-12 |
| 23 | 15-20 |
| 23 | 23-25 |
| 24 | 2-6 |
| 24 | 8-25 |
| 25 | 2 |
| 25 | 4-20 |
| 25 | 20-24 |
| 26 | 2-7 |
| 26 | 10-22 |
| 26 | 25 |
| 27 | 2-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 28 | 2-7 |
| 28 | 9-18 |
| 28 | 21-25 |
| 29 | 2 |
| 29 | 5-10 |
| 29 | 13-18 |
| 29 | 25 |
| 30 | 2-3 |
| 30 | 7-25 |
| 31 | 2-3 |
| 31 | 7-12 |
| 31 | 14-17 |
| 31 | 20-25 |
| 32 | 4-9 |
| 32 | 12-15 |
| 32 | 18-19 |
| 32 | 21-23 |
| 32 | 25 |
| 33 | 2-15 |
| 33 | 18-20 |
| 33 | 23-25 |
| 34 | 2-14 |
| 34 | 17-25 |
| 35 | 2-6 |
| 35 | 8-13 |
| 35 | 16-24 |
| 36 | 2-19 |
| 36 | 21-25 |
| 37 | 2-25 |
| 38 | 2-6 |
| 38 | 9-19 |
| 38 | 21-25 |
| 39 | 3-5 |
| 39 | 7-18 |
| 39 | 20-25 |
| 40 | 2-3 |
| 40 | 5-11 |
| 40 | 13-25 |
| 41 | 2 |
| 41 | 5-25 |
| 42 | 2-8 |
| 42 | 23-25 |
| 43 | 2-5 |
| 43 | 7-13 |
| 43 | 15-17 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 43 | 21 |
| 43 | 23-25 |
| 44 | 2-5 |
| 44 | 9-11 |
| 44 | 13-18 |
| 44 | 20-23 |
| 45 | 2-8 |
| 45 | 11-18 |
| 45 | 21-25 |
| 46 | 2-8 |
| 46 | 10-12 |
| 46 | 17-19 |
| 46 | 22-25 |
| 47 | 2-15 |
| 47 | 18-22 |
| 48 | 2-5 |
| 48 | 9-16 |
| 48 | 21-25 |
| 49 | 2-3 |
| 49 | 7-22 |
| 49 | 24-25 |
| 50 | 2-14 |
| 50 | 17-25 |
| 51 | 5-8 |
| 51 | 10 |
| 51 | 13-25 |
| 52 | 3-9 |
| 52 | 11-17 |
| 52 | 22-25 |
| 53 | 2 |
| 53 | 4 |
| 53 | 6-9 |
| 53 | 11-25 |
| 54 | 2-5 |
| 54 | 9-18 |
| 54 | 22-25 |
| 55 | 2-19 |
| 55 | 23-25 |
| 56 | 3-4 |
| 56 | 7-9 |
| 56 | 12-14 |
| 56 | 16-21 |
| 56 | 24-25 |
| 57 | 2-5 |
| 57 | 7-11 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 57 | 14-25 |
| 58 | 2-5 |
| 58 | 7 |
| 58 | 10-15 |
| 58 | 17 |
| 58 | 20-21 |
| 58 | 25 |
| 59 | 2-4 |
| 59 | 6-11 |
| 59 | 14-25 |
| 60 | 2-6 |
| 60 | 9-15 |
| 60 | 18-22 |
| 60 | 25 |
| 61 | 2-10 |
| 61 | 13-19 |
| 61 | 22-25 |
| 62 | 2 |
| 62 | 5-11 |
| 62 | 13-21 |
| 62 | 25 |
| 63 | 2-8 |
| 63 | 10-18 |
| 63 | 21-25 |
| 64 | 2-7 |
| 64 | 10-24 |
| 65 | 2-9 |
| 65 | 13-18 |
| 65 | 21-25 |
| 66 | 2-9 |
| 66 | 11-15 |
| 66 | 18-25 |
| 67 | 2 |
| 67 | 4 |
| 67 | 8-10 |
| 67 | 13-19 |
| 67 | 23-25 |
| 68 | 2-4 |
| 68 | 7-11 |
| 68 | 13-25 |
| 69 | 2 |
| 69 | 14-21 |
| 69 | 24-25 |
| 70 | 2-9 |
| 70 | 12-20 |

| Page | Line(s) |
|------|---------|
| 70 | 23 |
| 70 | 25 |
| 71 | 2-19 |
| 71 | 21-25 |
| 72 | 2-4 |
| 72 | 7 |
| 72 | 10-19 |
| 72 | 22-25 |
| 73 | 4-23 |
| 73 | 25 |
| 74 | 2-5 |
| 74 | 7-12 |
| 74 | 14-19 |
| 74 | 22-25 |
| 75 | 2-4 |
| 75 | 7-13 |
| 75 | 16-21 |
| 75 | 23-25 |
| 76 | 2 |
| 76 | 4-10 |
| 76 | 13-25 |
| 77 | 2-5 |
| 77 | 7-8 |
| 77 | 10-19 |
| 77 | 22-25 |
| 78 | 2-13 |
| 78 | 15-25 |
| 79 | 2-4 |
| 79 | 7-20 |
| 79 | 22-25 |
| 80 | 2-3 |
| 80 | 7-17 |
| 80 | 20-22 |
| 80 | 24-25 |
| 81 | 2-13 |
| 81 | 15-22 |
| 81 | 24-25 |
| 82 | 2-5 |
| 82 | 7-25 |
| 83 | 2-25 |
| 84 | 2-5 |
| 84 | 14-25 |
| 85 | 2-4 |
| 85 | 12-24 |
| 86 | 2-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 87 | 2-8 |
| 87 | 11-25 |
| 88 | 2-4 |
| 88 | 7-14 |
| 88 | 17-22 |
| 88 | 25 |
| 89 | 2-8 |
| 89 | 11-22 |
| 90 | 2-25 |
| 91 | 2-15 |
| 91 | 19 |
| 91 | 21-25 |
| 92 | 2-4 |
| 92 | 7 |
| 92 | 11-17 |
| 92 | 21-25 |
| 93 | 2-6 |
| 93 | 8-16 |
| 93 | 19-25 |
| 94 | 2-3 |
| 94 | 6-7 |
| 94 | 20-25 |
| 95 | 2 |
| 95 | 5-15 |
| 95 | 17 |
| 95 | 21-22 |
| 96 | 2-11 |
| 96 | 14-16 |
| 96 | 18-25 |
| 97 | 2-3 |
| 97 | 6 |
| 97 | 20-25 |
| 98 | 3-6 |
| 98 | 8-13 |
| 98 | 20-25 |
| 99 | 4-9 |
| 99 | 12-20 |
| 99 | 24 |
| 100 | 4-7 |
| 100 | 13-18 |
| 100 | 23-25 |
| 101 | 2-17 |
| 101 | 19-25 |
| 102 | 2-8 |
| 102 | 11-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 103 | 2-3 |
| 103 | 6-7 |
| 103 | 11-15 |
| 103 | 18-25 |
| 104 | 2-14 |
| 104 | 16 |
| 104 | 19-25 |
| 105 | 2-5 |
| 105 | 7-25 |
| 106 | 2-3 |
| 106 | 6-10 |
| 106 | 13-21 |
| 106 | 23-25 |
| 107 | 2-7 |
| 107 | 10 |
| 107 | 12-17 |
| 107 | 19-25 |
| 108 | 3-5 |
| 108 | 8 |
| 108 | 10-13 |
| 108 | 16-25 |
| 109 | 2-4 |
| 109 | 10-15 |
| 109 | 18-23 |
| 109 | 25 |
| 110 | 4-24 |
| 111 | 3-5 |
| 111 | 8 |
| 111 | 12-16 |
| 111 | 21-22 |
| 111 | 24-25 |
| 112 | 2-6 |
| 112 | 13-20 |
| 112 | 24-25 |
| 113 | 2-6 |
| 113 | 13-19 |
| 114 | 2-11 |
| 114 | 21-25 |
| 115 | 2-7 |
| 115 | 10-14 |
| 115 | 18-19 |
| 115 | 22-24 |
| 116 | 2-8 |
| 116 | 14 |
| 116 | 18-19 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 116 | 25 |
| 117 | 2-12 |
| 117 | 15-25 |
| 118 | 17-24 |
| 119 | 2-3 |
| 119 | 14 |
| 119 | 17-20 |
| 120 | 2-14 |
| 120 | 19-25 |
| 121 | 2 |
| 121 | 5-11 |
| 121 | 16-25 |
| 122 | 2-5 |
| 122 | 12-14 |
| 122 | 18-25 |
| 123 | 2-13 |
| 123 | 20-25 |
| 124 | 2-3 |
| 124 | 5-11 |
| 124 | 15-19 |
| 124 | 22-25 |
| 125 | 2-5 |
| 125 | 7 |
| 125 | 9-11 |
| 125 | 14-17 |
| 125 | 19-25 |
| 126 | 2 |
| 126 | 8-12 |
| 126 | 14-20 |
| 126 | 22-24 |
| 127 | 2-12 |
| 127 | 15-25 |
| 128 | 3-23 |
| 128 | 25 |
| 129 | 2-9 |
| 129 | 12-17 |
| 129 | 20-25 |
| 130 | 2-25 |
| 131 | 4-18 |
| 131 | 20-25 |
| 132 | 2-3 |
| 132 | 5 |
| 132 | 7-14 |
| 132 | 18-21 |
| 132 | 23-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
| --- | --- |
| 133 | 2 |
| 133 | 13-25 |
| 134 | 2-6 |
| 134 | 8-13 |
| 134 | 16-20 |
| 134 | 23-25 |
| 135 | 2-15 |
| 135 | 18-25 |
| 136 | 2 |
| 136 | 6-12 |
| 136 | 15-19 |
| 136 | 22-25 |
| 137 | 2-10 |
| 137 | 14-25 |
| 138 | 2 |
| 138 | 6-25 |
| 139 | 2-6 |
| 139 | 10-15 |
| 139 | 17-25 |
| 140 | 2-4 |
| 140 | 6-7 |
| 140 | 9-12 |
| 140 | 14-18 |
| 140 | 20-25 |
| 141 | 2-6 |
| 141 | 10-19 |
| 142 | 2 |
| 142 | 8-17 |
| 142 | 21-25 |
| 143 | 2-10 |
| 143 | 12-17 |
| 143 | 19-20 |
| 143 | 22-23 |
| 143 | 25 |
| 144 | 2-14 |
| 144 | 17-25 |
| 145 | 3-6 |
| 145 | 8-11 |
| 145 | 13-18 |
| 145 | 21-25 |
| 146 | 2-10 |
| 146 | 13-25 |
| 147 | 3-25 |
| 148 | 2 |
| 148 | 4-7 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 148 | 10-23 |
| 148 | 25 |
| 149 | 2-5 |
| 149 | 8-16 |
| 149 | 20-25 |
| 150 | 2-4 |
| 150 | 6-25 |
| 151 | 2-5 |
| 151 | 12-21 |
| 151 | 24-25 |
| 152 | 2-13 |
| 152 | 16-25 |
| 153 | 2-25 |
| 154 | 2-4 |
| 154 | 6-13 |
| 154 | 16 |
| 154 | 18-25 |
| 155 | 2-3 |
| 155 | 10-18 |
| 155 | 20-25 |
| 156 | 2-25 |
| 157 | 2-15 |
| 157 | 17-23 |
| 158 | 2-25 |
| 159 | 2-10 |
| 159 | 13-25 |
| 160 | 2-6 |
| 160 | 9-20 |
| 160 | 23-25 |
| 161 | 2-19 |
| 161 | 22-25 |
| 162 | 2-13 |
| 162 | 15-22 |
| 162 | 24-25 |
| 163 | 2-19 |
| 163 | 11-25 |
| 164 | 2-25 |
| 165 | 2-25 |
| 166 | 2-25 |
| 167 | 2-11 |
| 167 | 13-25 |
| 168 | 2-20 |
| 168 | 23-25 |
| 169 | 2-3 |
| 169 | 5-17 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
| --- | --- |
| 169 | 20-25 |
| 170 | 2-18 |
| 170 | 22-25 |
| 171 | 2-7 |
| 171 | 10-25 |
| 172 | 2-3 |
| 172 | 7-22 |
| 172 | 25 |
| 173 | 3-4 |
| 173 | 6-9 |
| 173 | 12 |
| 173 | 15-25 |
| 174 | 2-3 |
| 174 | 6-14 |
| 174 | 17-25 |
| 175 | 2-5 |
| 175 | 11-17 |
| 175 | 20-22 |
| 176 | 2-6 |
| 176 | 11-16 |
| 176 | 19-25 |
| 177 | 2-5 |
| 177 | 8-15 |
| 177 | 18-25 |
| 178 | 2-5 |
| 178 | 6-11 |
| 178 | 13-25 |
| 179 | 2-9 |
| 179 | 12-17 |
| 179 | 20-25 |
| 180 | 2-8 |
| 180 | 21-23 |
| 181 | 4-6 |
| 181 | 9-25 |
| 182 | 2 |
| 182 | 12-16 |
| 182 | 22 |
| 182 | 25 |
| 183 | 2-12 |
| 183 | 15 |
| 183 | 17-25 |
| 184 | 2-3 |
| 184 | 9-25 |
| 185 | 2-8 |
| 185 | 10-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 186 | 2-14 |
| 186 | 16-25 |
| 187 | 2-25 |
| 189 | 6-25 |
| 190 | 2-25 |
| 191 | 2-5 |
| 191 | 15-21 |
| 191 | 23-25 |
| 192 | 2 |
| 192 | 4-25 |
| 193 | 2-7 |
| 193 | 10-21 |
| 193 | 25 |
| 194 | 4-22 |
| 194 | 25 |
| 195 | 2-6 |
| 195 | 22-25 |
| 196 | 2-7 |
| 196 | 9-18 |
| 196 | 21 |
| 196 | 24-25 |
| 197 | 2 |
| 197 | 7-12 |
| 197 | 21 |
| 198 | 2-4 |
| 199 | 16-24 |
| 200 | 4-12 |
| 200 | 15-19 |
| 200 | 22-25 |
| 201 | 2-4 |
| 201 | 11-15 |
| 201 | 18-25 |
| 202 | 2-5 |
| 202 | 14-19 |
| 202 | 23-25 |
| 203 | 2-7 |
| 203 | 10-16 |
| 203 | 21-25 |
| 204 | 2-6 |
| 204 | 9-22 |
| 205 | 2-4 |
| 205 | 8-9 |
| 205 | 14-23 |
| 206 | 2-8 |
| 206 | 11-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 207 | 4-11 |
| 207 | 15-25 |
| 208 | 4-25 |
| 209 | 2-5 |
| 209 | 7-25 |
| 210 | 2-13 |
| 210 | 15-20 |
| 210 | 22-25 |
| 211 | 2-20 |
| 211 | 23-25 |
| 212 | 2-6 |
| 212 | 21-24 |
| 213 | 2-5 |
| 213 | 8-12 |
| 213 | 17-20 |
| 213 | 23-24 |
| 214 | 2-15 |
| 214 | 19-25 |
| 215 | 2-10 |
| 215 | 14-25 |
| 216 | 2-7 |
| 216 | 11-18 |
| 216 | 21-25 |
| 217 | 2-14 |
| 217 | 21-25 |
| 218 | 2-15 |
| 218 | 19-21 |
| 218 | 25 |
| 219 | 2-25 |
| 220 | 2-25 |
| 221 | 2-4 |
| 221 | 7-13 |
| 221 | 17-25 |
| 222 | 2-25 |
| 223 | 2-7 |
| 223 | 10-23 |
| 224 | 2-12 |
| 224 | 15-25 |
| 225 | 2-5 |
| 225 | 10-25 |
| 226 | 2-7 |
| 226 | 12-25 |
| 227 | 2-10 |
| 227 | 14-16 |
| 227 | 20-25 |

| Page | Line(s) |
|---|---|
| 228 | 2-3 |
| 228 | 7-14 |
| 228 | 17-23 |
| 229 | 2-6 |
| 229 | 11-25 |
| 230 | 4-13 |
| 230 | 16-19 |
| 230 | 22-25 |
| 231 | 3-13 |
| 231 | 18-25 |
| 232 | 2-6 |
| 232 | 10-17 |
| 232 | 20-25 |
| 233 | 2-5 |
| 233 | 14-25 |
| 234 | 4-18 |
| 234 | 23-25 |
| 235 | 2-21 |
| 235 | 23-25 |
| 236 | 2 |
| 236 | 23-25 |
| 237 | 2-23 |
| 238 | 2-25 |
| 239 | 2 |
| 239 | 6-16 |
| 239 | 22-25 |
| 240 | 2-25 |
| 241 | 2-7 |
| 241 | 10-25 |
| 242 | 2-25 |
| 243 | 2-25 |
| 244 | 2-17 |
| 244 | 20-23 |
| 245 | 8 |
| 245 | 11 |
| 245 | 14-18 |
| 245 | 21-25 |
| 246 | 2-3 |
| 246 | 6-19 |
| 246 | 22 |
| 247 | 10-14 |
| 247 | 16-25 |
| 248 | 2-25 |
| 249 | 2-25 |
| 250 | 2-25 |

| Page | Line(s) |
|------|---------|
| 251 | 2-4 |
| 251 | 7-11 |
| 251 | 13-19 |
| 251 | 23-25 |
| 252 | 2-5 |
| 252 | 7-13 |
| 252 | 16-25 |
| 253 | 5-16 |
| 253 | 20-25 |
| 254 | 2 |
| 254 | 5-8 |
| 254 | 11-13 |
| 254 | 16-23 |
| 255 | 2-22 |
| 256 | 2-6 |
| 256 | 9-13 |
| 256 | 16-25 |
| 257 | 2-10 |
| 257 | 13-25 |
| 258 | 4-5 |
| 258 | 7-9 |
| 258 | 11-18 |
| 259 | 2-7 |
| 259 | 12-23 |
| 260 | 2-9 |
| 260 | 13-18 |
| 260 | 23-25 |
| 261 | 2-4 |
| 261 | 7-8 |
| 261 | 11-17 |
| 261 | 20-25 |
| 262 | 4-6 |
| 262 | 8-21 |
| 262 | 25 |
| 263 | 2-6 |
| 263 | 8-25 |
| 264 | 2-25 |
| 265 | 2-25 |
| 266 | 2-5 |
| 266 | 7-25 |
| 267 | 2-25 |
| 268 | 2-25 |
| 269 | 2-25 |
| 270 | 2-3 |
| 270 | 6-11 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 270 | 13-25 |
| 271 | 2-3 |
| 271 | 8-11 |
| 271 | 13-25 |
| 272 | 2-17 |
| 272 | 20-25 |
| 273 | 2-4 |
| 273 | 6-13 |
| 273 | 16-23 |
| 273 | 25 |
| 274 | 2 |
| 274 | 5-14 |
| 274 | 16-25 |
| 275 | 2-14 |
| 275 | 17-25 |
| 276 | 2-3 |
| 276 | 6-11 |
| 276 | 13-20 |
| 277 | 2-3 |
| 277 | 12-18 |
| 277 | 20-25 |
| 278 | 2-10 |
| 278 | 14-17 |
| 278 | 20-24 |
| 279 | 6-11 |
| 279 | 14-15 |
| 279 | 18-25 |
| 280 | 2 |
| 280 | 8-12 |
| 280 | 14-17 |
| 280 | 21-24 |
| 281 | 3-5 |
| 281 | 9-20 |
| 282 | 2-7 |
| 282 | 10-25 |
| 283 | 2-4 |
| 283 | 6 |
| 283 | 13-19 |
| 283 | 22-25 |
| 284 | 3-6 |
| 284 | 9-11 |
| 284 | 14-19 |
| 284 | 22-25 |
| 285 | 4-7 |
| 285 | 17-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 286 | 2-25 |
| 287 | 2-12 |
| 287 | 14-23 |
| 288 | 5-25 |
| 289 | 2-4 |
| 289 | 6 |
| 289 | 8-10 |
| 289 | 12-17 |
| 289 | 20-25 |
| 290 | 2-25 |
| 291 | 4-9 |
| 291 | 11-23 |
| 291 | 25 |
| 292 | 2-7 |
| 292 | 9-25 |
| 293 | 2-25 |
| 294 | 2-25 |
| 295 | 2-24 |

REDACTED VERSION – PUBLICLY FILED

Deposition of Jacco Eltingh
October 30, 2007

| Page | Line(s) |
|------|---------|
| 6 | 15-25 |
| 7 | 2-5 |
| 7 | 16-25 |
| 8 | 2-25 |
| 9 | 2-11 |
| 12 | 11-25 |
| 13 | 2-14 |
| 13 | 18-22 |
| 13 | 25 |
| 14 | 2-12 |
| 14 | 14-18 |
| 14 | 24-25 |
| 15 | 2-4 |
| 15 | 7-9 |
| 15 | 11-15 |
| 15 | 17 |
| 18 | 12-13 |
| 18 | 15-23 |
| 19 | 4-25 |
| 20 | 5-25 |
| 21 | 2-22 |
| 21 | 25 |
| 22 | 2-20 |
| 22 | 23-25 |
| 23 | 2-24 |
| 24 | 4-25 |
| 25 | 2-25 |
| 26 | 2-14 |
| 26 | 17-24 |
| 27 | 3 |
| 27 | 5-15 |
| 27 | 19-25 |
| 28 | 2-5 |
| 28 | 7-10 |
| 28 | 12-25 |
| 29 | 2-25 |
| 30 | 2-12 |
| 30 | 23 |
| 30 | 25 |
| 31 | 2-8 |
| 31 | 10-25 |

REDACTED VERSION – PUBLICLY FILED

| | | |
|---|---|---|
| 32 | | 2-12 |
| 32 | | 15-25 |
| 33 | | 2-8 |
| 33 | | 13-16 |
| 33 | | 18-22 |
| 33 | | 24-25 |
| 34 | | 2-25 |
| 35 | | 2-25 |
| 36 | | 2-8 |
| 37 | | 2-25 |
| 38 | | 2-16 |
| 38 | | 19-25 |
| 39 | | 2-11 |
| 39 | | 13-14 |
| 39 | | 17-19 |
| 39 | | 21-23 |
| 40 | | 4-8 |
| 40 | | 10-12 |
| 40 | | 14-16 |
| 40 | | 18-22 |
| 40 | | 25 |
| 41 | | 2-25 |
| 42 | | 5 |
| 42 | | 13-18 |
| 42 | | 21-25 |
| 43 | | 2-4 |
| 43 | | 9-11 |
| 43 | | 15-18 |
| 43 | | 23-25 |
| 44 | | 2 |
| 44 | | 4-11 |
| 44 | | 15-18 |
| 44 | | 22-25 |
| 45 | | 2 |
| 45 | | 4-6 |
| 45 | | 8-13 |
| 45 | | 16-17 |
| 45 | | 19-22 |
| 45 | | 25 |
| 46 | | 2-4 |
| 46 | | 9-20 |
| 46 | | 23-25 |
| 47 | | 2 |
| 47 | | 5-7 |
| 47 | | 12-17 |

REDACTED VERSION – PUBLICLY FILED

| 47 | 20-25 |
|----|-------|
| 48 | 2 |
| 48 | 5-25 |
| 49 | 10-12 |
| 49 | 17-19 |
| 49 | 23-25 |
| 50 | 2-4 |
| 50 | 9-15 |
| 50 | 19-23 |
| 51 | 3-5 |
| 51 | 8-11 |
| 51 | 15-16 |
| 51 | 19-22 |
| 52 | 3-5 |
| 52 | 12-15 |
| 52 | 21-25 |
| 53 | 2-25 |
| 54 | 3-12 |
| 54 | 14-25 |
| 55 | 2-18 |
| 56 | 20-22 |
| 57 | 2-13 |
| 57 | 17-25 |
| 58 | 2-13 |
| 58 | 16-25 |
| 59 | 2-25 |
| 60 | 2-8 |
| 60 | 11-25 |
| 61 | 2-11 |
| 61 | 25 |
| 62 | 2-11 |
| 62 | 14-22 |
| 62 | 24-25 |
| 63 | 2-8 |
| 63 | 11-20 |
| 63 | 25 |
| 64 | 2-4 |
| 64 | 6-8 |
| 64 | 13-22 |
| 64 | 24-25 |
| 65 | 2-20 |
| 65 | 24-25 |
| 66 | 2 |
| 66 | 4-6 |
| 66 | 15-22 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 66 | 25 |
| 67 | 2-3 |
| 67 | 9-14 |
| 67 | 16-19 |
| 67 | 23-25 |
| 68 | 2-7 |
| 68 | 9-12 |
| 69 | 5-6 |
| 69 | 9 |
| 70 | 11-25 |
| 71 | 2 |
| 71 | 5-25 |
| 72 | 2-25 |
| 73 | 2-3 |
| 73 | 8-9 |
| 73 | 12-25 |
| 74 | 2-13 |
| 74 | 16-25 |
| 75 | 2-6 |
| 75 | 19-25 |
| 76 | 2-3 |
| 76 | 14-22 |
| 76 | 24-25 |
| 77 | 2 |
| 77 | 4 |
| 77 | 9-13 |
| 77 | 16-19 |
| 77 | 24-25 |
| 78 | 2-6 |
| 78 | 9-15 |
| 78 | 19-25 |
| 79 | 5-11 |
| 79 | 14-18 |
| 79 | 21-25 |
| 80 | 2-3 |
| 80 | 8-22 |
| 81 | 4-7 |
| 81 | 9 |
| 81 | 12-17 |
| 82 | 5-25 |
| 83 | 2-15 |
| 83 | 18 |
| 83 | 21-25 |
| 84 | 2-9 |
| 84 | 15-16 |

REDACTED VERSION – PUBLICLY FILED

| 84 | 18-25 |
|---|---|
| 85 | 2-14 |
| 85 | 16-19 |
| 85 | 22-25 |
| 86 | 2 |
| 86 | 4-6 |
| 86 | 9-11 |
| 86 | 14 |
| 87 | 2-4 |
| 88 | 12-25 |
| 89 | 2-14 |
| 89 | 16-25 |
| 90 | 2-13 |
| 90 | 15-21 |
| 90 | 23-25 |
| 91 | 2-20 |
| 91 | 23-25 |
| 92 | 2-19 |
| 92 | 24-25 |
| 93 | 4-5 |
| 93 | 8-18 |
| 93 | 25 |
| 94 | 2-16 |
| 94 | 20-25 |
| 95 | 2-10 |
| 95 | 13-15 |
| 95 | 24-25 |
| 96 | 2-7 |
| 96 | 10-17 |
| 96 | 20-25 |
| 97 | 2-12 |
| 97 | 15-25 |
| 98 | 2-8 |
| 98 | 21-25 |
| 99 | 3 |
| 99 | 6-25 |
| 100 | 2-25 |
| 101 | 2-15 |
| 101 | 18-20 |
| 101 | 23-25 |
| 102 | 2 |
| 102 | 5 |
| 102 | 14-25 |
| 103 | 2-8 |
| 103 | 11-25 |

REDACTED VERSION – PUBLICLY FILED

| 104 | 2-3 |
|-----|-----|
| 104 | 5-15 |
| 105 | 8-25 |
| 106 | 2-15 |
| 106 | 18-22 |
| 107 | 2-10 |
| 107 | 13-25 |
| 108 | 2-25 |
| 109 | 2-5 |
| 109 | 8-25 |
| 110 | 2-25 |
| 111 | 2-14 |
| 111 | 17-25 |
| 112 | 3-15 |
| 112 | 17-22 |
| 112 | 24-25 |
| 113 | 2-3 |
| 113 | 6-10 |
| 113 | 12-14 |
| 113 | 16-25 |
| 114 | 2 |
| 114 | 21-25 |
| 115 | 2-25 |
| 116 | 2-24 |
| 117 | 6-25 |
| 118 | 2-9 |
| 118 | 15-25 |
| 119 | 2-19 |
| 119 | 21-23 |
| 120 | 2-25 |
| 121 | 2-25 |
| 122 | 2-25 |
| 123 | 2-25 |
| 124 | 2-25 |
| 125 | 2-20 |
| 125 | 23-25 |
| 126 | 8-25 |
| 127 | 2-11 |
| 127 | 17-22 |
| 127 | 24-25 |
| 128 | 2-11 |
| 128 | 14-25 |
| 129 | 2-9 |
| 129 | 12-14 |
| 129 | 17-23 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 129 | 25 |
| 130 | 2-5 |
| 130 | 8-19 |
| 130 | 22 |
| 130 | 25 |
| 131 | 2-25 |
| 132 | 2-8 |
| 132 | 18-25 |
| 133 | 2-10 |
| 133 | 12-13 |
| 133 | 15-25 |
| 134 | 2-25 |
| 135 | 2-25 |
| 136 | 2-9 |
| 136 | 12-25 |
| 137 | 2 |
| 137 | 4-25 |
| 138 | 2-3 |
| 138 | 7-25 |
| 139 | 2-25 |
| 140 | 2-3 |
| 140 | 6-19 |
| 140 | 21-22 |
| 140 | 25 |
| 141 | 2-25 |
| 142 | 2-18 |
| 142 | 22-25 |
| 143 | 2-25 |
| 144 | 2-23 |
| 145 | 3-16 |
| 145 | 19-25 |
| 146 | 3-25 |
| 147 | 2-25 |
| 148 | 2-25 |
| 149 | 2-3 |
| 149 | 12-13 |
| 149 | 16-25 |
| 150 | 2-5 |
| 150 | 9-11 |
| 150 | 14-25 |
| 151 | 2-13 |
| 151 | 16-25 |
| 152 | 2-25 |
| 153 | 2-10 |
| 153 | 13-19 |

| | |
|---|---|
| 153 | 22-25 |
| 154 | 2-25 |
| 155 | 4-25 |
| 156 | 2-3 |
| 156 | 5-25 |
| 157 | 2-24 |
| 158 | 2-12 |
| 158 | 17-25 |
| 159 | 2-15 |
| 159 | 22-25 |
| 160 | 2-5 |
| 160 | 8-25 |
| 161 | 2-20 |
| 161 | 23-25 |
| 162 | 2-25 |
| 163 | 2-25 |
| 164 | 2-4 |
| 164 | 7-25 |
| 165 | 2-25 |
| 166 | 2-8 |
| 166 | 11-21 |
| 166 | 24-25 |
| 167 | 2-5 |
| 167 | 7-15 |
| 167 | 18-20 |
| 167 | 22-25 |
| 168 | 2-6 |
| 169 | 2-4 |
| 169 | 8-10 |
| 169 | 13-18 |
| 169 | 21-25 |
| 170 | 3 |
| 170 | 7-10 |
| 170 | 18-19 |
| 170 | 24-25 |
| 171 | 2-4 |
| 171 | 8-12 |
| 171 | 14 |
| 171 | 16-17 |
| 172 | 11-25 |
| 173 | 2-8 |
| 173 | 15-20 |
| 173 | 23-25 |
| 174 | 2-3 |
| 174 | 14-16 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 174 | 20-25 |
| 175 | 2-10 |
| 175 | 14-20 |
| 176 | 5-20 |
| 176 | 23-25 |
| 177 | 2-25 |
| 178 | 2-25 |
| 179 | 2-25 |
| 180 | 2-4 |
| 180 | 7-8 |
| 180 | 10-21 |
| 180 | 24-25 |
| 181 | 2-25 |
| 182 | 2-13 |
| 182 | 16-25 |
| 183 | 2-10 |
| 183 | 13-18 |
| 183 | 21-25 |
| 184 | 2-6 |
| 184 | 8-25 |
| 185 | 2-16 |
| 185 | 19-25 |
| 186 | 2-25 |
| 187 | 2-13 |
| 187 | 16-25 |
| 188 | 2-25 |
| 189 | 2-14 |
| 189 | 17-18 |
| 189 | 22-25 |
| 190 | 2-4 |
| 190 | 7-25 |
| 191 | 2-3 |
| 191 | 11-25 |
| 192 | 2-25 |
| 193 | 11-13 |
| 193 | 19-25 |
| 194 | 2-25 |
| 195 | 2-25 |
| 196 | 2-25 |
| 197 | 2-11 |
| 197 | 18-25 |
| 198 | 2-10 |
| 198 | 13-25 |
| 199 | 2-4 |
| 199 | 8-10 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 199 | 16-25 |
| 200 | 2-17 |
| 200 | 19-24 |
| 201 | 12-25 |
| 202 | 2-12 |
| 202 | 16-19 |
| 202 | 22-25 |
| 203 | 2-25 |
| 204 | 2-8 |
| 204 | 10-17 |
| 205 | 3-18 |
| 206 | 5-13 |
| 206 | 17-25 |
| 207 | 2-10 |
| 207 | 14-21 |
| 207 | 24-25 |
| 208 | 2-4 |
| 208 | 8-25 |
| 209 | 2-18 |
| 209 | 20-25 |
| 210 | 2-10 |
| 210 | 13-25 |
| 211 | 2-25 |
| 212 | 2-21 |
| 213 | 2-14 |
| 213 | 18-24 |
| 214 | 2-25 |
| 215 | 2-4 |
| 215 | 6 |
| 215 | 9-18 |
| 215 | 21-25 |
| 216 | 2-25 |
| 217 | 2-25 |
| 218 | 2-25 |
| 219 | 2-25 |
| 220 | 6-7 |
| 220 | 10-20 |
| 220 | 23-25 |
| 221 | 2-13 |
| 222 | 2-4 |
| 222 | 7-25 |
| 223 | 2-3 |
| 223 | 6-10 |
| 223 | 13-25 |
| 224 | 2-22 |

REDACTED VERSION – PUBLICLY FILED

| 225 | 4-25 |
|-----|------|
| 226 | 2-25 |
| 227 | 2-5 |
| 227 | 11-15 |
| 227 | 17-23 |
| 227 | 25 |
| 228 | 3-21 |
| 228 | 23-25 |
| 229 | 2-6 |
| 229 | 9-25 |
| 230 | 2-20 |
| 230 | 23-25 |
| 231 | 12-25 |
| 232 | 2 |
| 232 | 5-25 |
| 233 | 2-5 |
| 233 | 8-10 |
| 233 | 13-25 |
| 234 | 2-16 |
| 234 | 24-25 |
| 235 | 2-25 |
| 237 | 9-25 |
| 238 | 2-4 |
| 238 | 9-15 |
| 238 | 18-25 |
| 239 | 2-16 |
| 239 | 19-25 |
| 240 | 2-21 |
| 240 | 23-25 |
| 241 | 2-23 |
| 242 | 4-25 |
| 243 | 2-13 |

INDS02 JADAMS 974082v1

11

REDACTED VERSION – PUBLICLY FILED

Deposition of Zeljko Franulovic
September 5, 2007

| Page | Line(s) |
|------|---------|
| 6 | 12-25 |
| 7 | 2-22 |
| 8 | 3-6 |
| 12 | 2-14 |
| 13 | 4-17 |
| 13 | 19-25 |
| 14 | 2-25 |
| 15 | 2-5 |
| 15 | 7-25 |
| 16 | 2-25 |
| 17 | 2-25 |
| 18 | 14-21 |
| 19 | 9-19 |
| 20 | 14-24 |
| 21 | 2-16 |
| 21 | 23-25 |
| 22 | 2-11 |
| 25 | 5-17 |
| 25 | 19-25 |
| 26 | 2-6 |
| 27 | 16-21 |
| 27 | 23-25 |
| 28 | 2-8 |
| 28 | 10-25 |
| 29 | 6-25 |
| 30 | 2-25 |
| 31 | 2-25 |
| 32 | 2-10 |
| 32 | 12-25 |
| 33 | 2-21 |
| 34 | 5-19 |
| 34 | 22-25 |
| 35 | 2, 3 |
| 35 | 7-9 |
| 35 | 11-22 |
| 36 | 2-16 |
| 36 | 18 |
| 36 | 20-25 |
| 37 | 2-12 |
| 40 | 17-25 |

REDACTED VERSION – PUBLICLY FILED

| 41 | 3-7 |
|----|-----|
| 44 | 19-25 |
| 45 | 2-12 |
| 45 | 18-25 |
| 46 | 2-6 |
| 46 | 12-25 |
| 47 | 2-8 |
| 48 | 7-22 |
| 50 | 14-17 |
| 50 | 24, 25 |
| 51 | 2, 3 |
| 51 | 6-25 |
| 52 | 2 |
| 52 | 6-9 |
| 52 | 11-14 |
| 52 | 16-18 |
| 54 | 19-23 |
| 55 | 2, 3 |
| 55 | 24, 25 |
| 56 | 2-18 |
| 57 | 20-25 |
| 58 | 4-6 |
| 58 | 10-20 |
| 61 | 23-25 |
| 62 | 2-13 |
| 62 | 15-21 |
| 69 | 12-24 |
| 75 | 3-8 |
| 75 | 13-25 |
| 76 | 2-25 |
| 77 | 2-7 |
| 86 | 11-25 |
| 87 | 2-25 |
| 88 | 2-25 |
| 89 | 2-6 |
| 89 | 8-25 |
| 90 | 2-6 |
| 90 | 13-25 |
| 91 | 2-13 |
| 92 | 4-25 |
| 93 | 2-17 |
| 94 | 23-25 |
| 95 | 2-17 |
| 96 | 2-25 |
| 97 | 2-25 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 98 | 2-6 |
| 98 | 10-25 |
| 99 | 2-25 |
| 100 | 2-10 |
| 100 | 17-25 |
| 101 | 2-23 |
| 103 | 5-11 |
| 104 | 4-8 |
| 104 | 10-25 |
| 105 | 2-25 |
| 106 | 2-18 |
| 107 | 19-25 |
| 108 | 2-7 |
| 109 | 7-25 |
| 110 | 2-25 |
| 111 | 2-8 |
| 111 | 10-16 |
| 111 | 21-25 |
| 112 | 2-19 |
| 112 | 22-25 |
| 113 | 2-11 |
| 113 | 13-17 |
| 114 | 2-6 |
| 115 | 6-25 |
| 116 | 2 |
| 119 | 6-8 |
| 119 | 12-25 |
| 120 | 2-25 |
| 121 | 2-7 |
| 121 | 10, 11 |
| 121 | 22-25 |
| 122 | 2-6 |
| 122 | 9-13 |
| 122 | 16-25 |
| 123 | 2 |
| 123 | 13-16 |
| 123 | 18-25 |
| 124 | 6-21 |
| 124 | 23 |
| 125 | 4-8 |
| 125 | 21-25 |
| 126 | 2-16 |
| 126 | 18-25 |
| 127 | 2-8 |
| 128 | 13-17 |

| 128 | 22-25 |
|-----|-------|
| 129 | 2 |
| 129 | 6-12 |
| 131 | 2-7 |
| 131 | 9, 10 |
| 131 | 15-25 |
| 132 | 2-11 |
| 132 | 13-25 |
| 133 | 2-25 |
| 134 | 2-25 |
| 135 | 2-25 |
| 136 | 2-25 |
| 137 | 2-13 |
| 138 | 13, 14 |
| 138 | 17-25 |
| 139 | 2-25 |
| 140 | 2-25 |
| 141 | 2-25 |
| 142 | 2-6 |
| 142 | 8-21 |
| 145 | 14-17 |
| 145 | 19-23 |
| 145 | 25 |
| 146 | 2-14 |
| 146 | 17 |
| 146 | 25 |
| 147 | 2-5 |
| 147 | 7-11 |
| 148 | 12-25 |
| 149 | 2-25 |
| 150 | 2-12 |
| 150 | 18-25 |
| 151 | 2-16 |
| 151 | 23-25 |
| 152 | 3-7 |
| 153 | 24, 25 |
| 154 | 2-11 |
| 154 | 14-25 |
| 155 | 2-12 |
| 155 | 14-25 |
| 156 | 2-25 |
| 157 | 4-25 |
| 158 | 2-22 |
| 159 | 5-25 |
| 160 | 2-19 |

REDACTED VERSION – PUBLICLY FILED

| 160 | 21-25 |
|-----|-------|
| 161 | 2-25 |
| 162 | 2-5 |
| 162 | 24, 25 |
| 163 | 2-25 |
| 164 | 2-14 |
| 164 | 17-24 |
| 165 | 2-6 |
| 166 | 9-25 |
| 167 | 2-25 |
| 168 | 2-25 |
| 169 | 2-25 |
| 170 | 2-4 |
| 170 | 6-25 |
| 171 | 2-24 |
| 172 | 7-14 |
| 172 | 17 |
| 175 | 12-25 |
| 176 | 2-18 |
| 177 | 11-25 |
| 178 | 2-25 |
| 179 | 2-25 |
| 180 | 2-23 |
| 181 | 2-25 |
| 182 | 2-21 |
| 182 | 23-25 |
| 183 | 2-25 |
| 184 | 2 |
| 184 | 4-23 |
| 185 | 20-25 |
| 186 | 2-8 |
| 186 | 12-25 |
| 187 | 2-25 |
| 188 | 2-8 |
| 188 | 14-19 |
| 188 | 21-25 |
| 189 | 2-9 |
| 189 | 16-25 |
| 190 | 2-25 |
| 191 | 2-16 |
| 191 | 22-25 |
| 192 | 2-16 |
| 197 | 3-15 |
| 197 | 18-25 |
| 198 | 2-11 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 198 | 14-21 |
| 198 | 23-25 |
| 199 | 2-12 |
| 200 | 3-25 |
| 201 | 2-6 |
| 201 | 11-25 |
| 202 | 2-6 |
| 205 | 11-18 |
| 205 | 22-25 |
| 206 | 2-18 |
| 207 | 3-6 |
| 207 | 9 |
| 208 | 12-25 |
| 209 | 2-10 |
| 209 | 13-16 |
| 209 | 18-25 |
| 210 | 2-25 |
| 211 | 7-25 |
| 212 | 2-25 |
| 213 | 2-4 |
| 213 | 6-25 |
| 214 | 2-7 |
| 214 | 13-25 |
| 215 | 2-21 |
| 215 | 23-25 |
| 216 | 2-20 |
| 216 | 23-25 |
| 217 | 2-25 |
| 218 | 2-5 |
| 221 | 19-25 |
| 222 | 2-14 |
| 223 | 11-16 |
| 223 | 20-25 |
| 224 | 2, 3 |
| 224 | 6-25 |
| 225 | 2 |
| 225 | 5-25 |
| 226 | 3-25 |
| 227 | 2-8 |
| 227 | 17-21 |
| 228 | 6-21 |
| 228 | 23-25 |
| 229 | 2-25 |
| 230 | 2-4 |
| 230 | 6-10 |

| 230 | 13-25 |
|-----|-------|
| 231 | 2-25 |
| 232 | 2-20 |
| 233 | 5-9 |
| 234 | 14-25 |
| 235 | 2-7 |
| 235 | 9-15 |
| 235 | 17-19 |
| 235 | 21-25 |
| 236 | 2-4 |
| 236 | 6-9 |
| 236 | 11-15 |
| 236 | 17-19 |
| 236 | 21-25 |
| 237 | 2-13 |
| 237 | 15-25 |
| 238 | 2-4 |
| 238 | 6-12 |
| 238 | 14 |
| 242 | 21-25 |
| 243 | 2-25 |
| 244 | 2-23 |
| 244 | 25 |
| 245 | 2-25 |
| 246 | 2-17 |
| 248 | 20-25 |
| 249 | 2-19 |
| 249 | 21-25 |
| 250 | 2-25 |
| 251 | 2-9 |
| 251 | 18-25 |
| 252 | 2-13 |
| 253 | 14-22 |
| 257 | 11-25 |
| 258 | 2-6 |
| 258 | 15-21 |
| 259 | 4-25 |
| 260 | 2 |
| 260 | 5-25 |
| 261 | 2-19 |
| 264 | 21-25 |
| 265 | 2-17 |
| 267 | 18-25 |
| 268 | 2-10 |
| 269 | 10-14 |

REDACTED VERSION – PUBLICLY FILED

| 269 | 16, 17 |
|-----|--------|
| 270 | 21-24 |
| 271 | 3-12 |
| 271 | 21-25 |
| 272 | 2, 3 |
| 274 | 21-25 |
| 275 | 2, 3 |
| 275 | 6-12 |
| 275 | 14-20 |
| 275 | 22-25 |
| 276 | 2, 3 |
| 276 | 5-22 |
| 277 | 2-25 |
| 278 | 2-4 |
| 278 | 13-18 |
| 278 | 21-25 |
| 279 | 2-5 |
| 279 | 14-19 |
| 279 | 21 |
| 279 | 25 |
| 280 | 2-4 |
| 280 | 8-13 |
| 283 | 21-25 |
| 284 | 2-6 |
| 284 | 10-25 |
| 285 | 2-18 |
| 285 | 21-25 |
| 286 | 2-11 |
| 289 | 20-25 |
| 290 | 2-21 |
| 290 | 24, 25 |
| 291 | 2-8 |
| 291 | 10-25 |
| 292 | 2, 3 |
| 292 | 5 |
| 292 | 15-25 |
| 293 | 2-6 |
| 294 | 21-25 |
| 295 | 2-7 |
| 295 | 10-25 |
| 296 | 2-25 |
| 297 | 2-19 |
| 298 | 6-14 |
| 298 | 16-25 |
| 299 | 2, 3 |

8

REDACTED VERSION – PUBLICLY FILED

| 299 | 16-25 |
| 306 | 24, 25 |
| 307 | 2-20 |
| 308 | 12-25 |
| 309 | 2, 3 |
| 309 | 5-11 |
| 309 | 13-17 |
| 311 | 2-7 |
| 311 | 9-25 |
| 312 | 2-6 |
| 312 | 8-18 |
| 313 | 14-25 |
| 314 | 2-4 |

INDS02 JADAMS 973808v1

9

REDACTED VERSION – PUBLICLY FILED

Deposition of Phillip Galloway, Vol. 1
November 26, 2007

| Page | Line(s) |
|------|---------|
| 14 | 22-25 |
| 15 | 2-25 |
| 16 | 2-25 |
| 17 | 2-15 |
| 17 | 18-25 |
| 18 | 2-25 |
| 19 | 2-25 |
| 20 | 2-25 |
| 21 | 2-23 |
| 22 | 4-25 |
| 23 | 2-16 |
| 23 | 16-20 |
| 23 | 23-25 |
| 24 | 4-25 |
| 25 | 2-15 |
| 25 | 18-25 |
| 26 | 2-25 |
| 27 | 2-25 |
| 28 | 2-25 |
| 29 | 2-16 |
| 36 | 5-18 |
| 41 | 18-25 |
| 42 | 2-11 |
| 44 | 16-25 |
| 45 | 2-25 |
| 46 | 2-12 |
| 46 | 15-25 |
| 47 | 2-14 |
| 49 | 13-25 |
| 50 | 2-25 |
| 51 | 2-8 |
| 51 | 11-25 |
| 52 | 4-14 |
| 52 | 17-25 |
| 53 | 2-25 |
| 54 | 2-13 |
| 54 | 19-25 |
| 55 | 2-12 |
| 55 | 15-23 |
| 56 | 2-21 |
| 57 | 3-25 |

| 58 | 2-3 |
|----|-----|
| 58 | 6-25 |
| 59 | 2-21 |
| 59 | 24-25 |
| 60 | 2-25 |
| 61 | 2-10 |
| 61 | 16-25 |
| 62 | 2-23 |
| 63 | 2-13 |
| 63 | 16-23 |
| 64 | 2-24 |
| 65 | 3-25 |
| 66 | 2-25 |
| 67 | 2-20 |
| 67 | 23-25 |
| 68 | 2-25 |
| 69 | 2-25 |
| 70 | 2-25 |
| 71 | 2-21 |
| 71 | 24-25 |
| 72 | 2-8 |
| 72 | 18-22 |
| 72 | 25 |
| 73 | 2-11 |
| 73 | 14-19 |
| 73 | 22-25 |
| 74 | 2-5 |
| 74 | 8-14 |
| 74 | 17-21 |
| 75 | 2-8 |
| 75 | 11-18 |
| 75 | 21-25 |
| 76 | 2-9 |
| 76 | 12-20 |
| 76 | 23-25 |
| 77 | 2-4 |
| 77 | 13-25 |
| 78 | 2-16 |
| 79 | 12-25 |
| 80 | 2-14 |
| 80 | 17-25 |
| 81 | 4-14 |
| 82 | 6-10 |
| 82 | 13-23 |
| 83 | 2-15 |

2

| | |
|---|---|
| 83 | 18-24 |
| 84 | 3-18 |
| 84 | 21-25 |
| 85 | 4-10 |
| 85 | 13-18 |
| 85 | 21-25 |
| 86 | 2-25 |
| 87 | 2-3 |
| 87 | 6-25 |
| 88 | 2-25 |
| 89 | 4-16 |
| 89 | 19-25 |
| 90 | 2-5 |
| 90 | 8-19 |
| 90 | 22-25 |
| 91 | 2-25 |
| 92 | 2-25 |
| 93 | 2-24 |
| 94 | 3-25 |
| 95 | 2-3 |
| 95 | 6-25 |
| 96 | 2-25 |
| 97 | 2-25 |
| 98 | 2-25 |
| 99 | 2-14 |
| 99 | 17-25 |
| 100 | 2-25 |
| 101 | 2-24 |
| 102 | 6-12 |
| 102 | 22-25 |
| 103 | 21-25 |
| 104 | 2-3 |
| 104 | 6-20 |
| 104 | 23-25 |
| 105 | 2-11 |
| 105 | 14-25 |
| 106 | 2-25 |
| 107 | 2-11 |
| 107 | 14-25 |
| 108 | 2-25 |
| 109 | 2-15 |
| 109 | 18-25 |
| 110 | 2-14 |
| 110 | 17-25 |
| 111 | 2-23 |

| | |
|---|---|
| 111 | 25 |
| 112 | 2-25 |
| 113 | 2-25 |
| 114 | 2-25 |
| 115 | 2-20 |
| 115 | 23-25 |
| 116 | 2-25 |
| 117 | 2-25 |
| 118 | 2-25 |
| 119 | 2-25 |
| 120 | 2-25 |
| 121 | 2-25 |
| 122 | 2-25 |
| 123 | 2-25 |
| 124 | 2-25 |
| 125 | 2-25 |
| 126 | 2-25 |
| 127 | 2-22 |
| 128 | 8-25 |
| 129 | 2-25 |
| 130 | 10-25 |
| 131 | 2-13 |
| 131 | 16-25 |
| 132 | 2-25 |
| 133 | 2-25 |
| 134 | 2-25 |
| 135 | 2-4 |
| 135 | 10-25 |
| 136 | 2-25 |
| 137 | 2-6 |
| 137 | 9-25 |
| 138 | 2-25 |
| 139 | 2-15 |
| 139 | 18-25 |
| 140 | 2-25 |
| 141 | 2-25 |
| 142 | 2-5 |
| 142 | 8-21 |
| 142 | 24-25 |
| 143 | 2-5 |
| 143 | 8-21 |
| 143 | 24-25 |
| 144 | 2-25 |
| 145 | 2-3 |
| 145 | 6-13 |

REDACTED VERSION – PUBLICLY FILED

| 145 | 16-25 |
|-----|-------|
| 146 | 4-9 |
| 146 | 12-21 |
| 147 | 6-11 |
| 147 | 14-25 |
| 148 | 2-8 |
| 148 | 11-22 |
| 148 | 25 |
| 149 | 2-12 |
| 149 | 15-24 |
| 150 | 13-25 |
| 151 | 2-25 |
| 152 | 2-25 |
| 153 | 2-25 |
| 154 | 2-25 |
| 155 | 2-25 |
| 156 | 2 |
| 156 | 5-12 |
| 156 | 15-21 |
| 156 | 24-25 |
| 157 | 2-25 |
| 158 | 4-25 |
| 159 | 2-18 |
| 159 | 21-25 |
| 160 | 2-5 |
| 160 | 8-25 |
| 161 | 2-10 |
| 161 | 13-25 |
| 162 | 2-17 |
| 162 | 20-25 |
| 163 | 2-25 |
| 164 | 2-15 |
| 164 | 20-25 |
| 165 | 2-6 |
| 165 | 9-18 |
| 165 | 21-25 |
| 166 | 2-25 |
| 167 | 2-9 |
| 167 | 12-25 |
| 168 | 2-5 |
| 168 | 10-25 |
| 169 | 2-25 |
| 170 | 2-9 |
| 170 | 12-23 |
| 171 | 2-25 |

REDACTED VERSION – PUBLICLY FILED

| 172 | 2-7 |
| 172 | 10-25 |
| 173 | 2-8 |
| 173 | 11-25 |
| 174 | 14-24 |
| 175 | 3-25 |
| 176 | 2-12 |
| 176 | 15-23 |
| 177 | 3-25 |
| 178 | 2-12 |
| 178 | 15-25 |
| 179 | 2-25 |
| 180 | 2-8 |
| 180 | 14-25 |
| 181 | 2-10 |
| 181 | 13-25 |
| 182 | 2-4 |
| 182 | 7-25 |
| 183 | 2-25 |
| 184 | 4-25 |
| 185 | 2-25 |
| 186 | 2-25 |
| 187 | 2-19 |
| 187 | 22-25 |
| 188 | 2-25 |
| 189 | 2-7 |
| 189 | 10-18 |
| 189 | 21-25 |
| 190 | 4-25 |
| 191 | 2-25 |
| 192 | 2-25 |
| 193 | 2-19 |
| 193 | 24-25 |
| 194 | 2-17 |
| 194 | 20-25 |
| 195 | 2-25 |
| 196 | 2-25 |
| 197 | 2-3 |
| 197 | 6-25 |
| 198 | 2-3 |
| 198 | 6-25 |
| 199 | 2-24 |
| 200 | 14-25 |
| 201 | 2-25 |
| 202 | 2-25 |

REDACTED VERSION – PUBLICLY FILED

| 203 | 2-25 |
|-----|------|
| 234 | 2-3 |
| 204 | 6-10 |
| 204 | 13-15 |
| 204 | 18-25 |
| 205 | 2-25 |
| 206 | 2-6 |
| 206 | 9-19 |
| 206 | 23-25 |
| 207 | 2-4 |
| 207 | 7-16 |
| 207 | 19-25 |
| 208 | 2 |
| 208 | 5-15 |
| 208 | 22-25 |
| 209 | 2-4 |
| 209 | 7-25 |
| 210 | 2-15 |
| 210 | 18-25 |
| 211 | 2-6 |
| 211 | 9-25 |
| 212 | 2-4 |
| 212 | 7-8 |
| 212 | 10-18 |
| 212 | 21-25 |
| 213 | 2-17 |
| 213 | 20-25 |
| 214 | 2-18 |
| 214 | 21-25 |
| 215 | 2-25 |
| 216 | 2-25 |
| 217 | 2-25 |
| 218 | 2-23 |
| 219 | 2-18 |
| 219 | 22-25 |
| 220 | 2-17 |
| 220 | 20-25 |
| 221 | 2-7 |
| 221 | 10-25 |
| 222 | 2-8 |
| 222 | 11-25 |
| 223 | 2-25 |
| 224 | 2-9 |
| 224 | 12-25 |
| 225 | 2-11 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 225 | 14-21 |
| 225 | 24-25 |
| 226 | 2-5 |
| 226 | 8-22 |
| 227 | 3-18 |
| 227 | 21-25 |
| 228 | 4-17 |
| 228 | 20-25 |
| 229 | 5-22 |
| 229 | 25 |
| 230 | 2-19 |
| 230 | 22-25 |
| 231 | 2-14 |
| 231 | 17-23 |
| 232 | 2-6 |
| 232 | 9-25 |
| 233 | 2-6 |
| 233 | 9-19 |
| 233 | 22-25 |
| 234 | 2-7 |
| 234 | 10-21 |
| 234 | 24-25 |
| 235 | 2-20 |
| 235 | 24-25 |
| 236 | 2-25 |
| 237 | 2-8 |
| 237 | 11-18 |
| 237 | 22-25 |
| 238 | 2-9 |
| 238 | 12-20 |
| 238 | 23-25 |
| 239 | 2-10 |
| 239 | 13-19 |
| 239 | 22-25 |
| 240 | 2-6 |
| 240 | 9-16 |
| 240 | 19-25 |
| 241 | 2-5 |
| 241 | 9-25 |
| 242 | 4-16 |
| 242 | 22-25 |
| 243 | 2-6 |
| 243 | 9-21 |
| 243 | 24-25 |
| 244 | 2-25 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 245 | 12-23 |
| 246 | 13-18 |
| 246 | 21-25 |
| 247 | 2-10 |
| 247 | 13-18 |
| 247 | 21-25 |
| 248 | 2-14 |
| 248 | 17-25 |
| 249 | 2-25 |
| 250 | 2-13 |
| 250 | 16-21 |
| 250 | 24-25 |
| 251 | 2-23 |
| 252 | 2-25 |
| 253 | 7-14 |
| 253 | 17-25 |
| 254 | 2-5 |
| 254 | 8-25 |
| 255 | 2 |
| 255 | 5-25 |
| 256 | 2-15 |
| 256 | 20-25 |
| 257 | 2-25 |
| 258 | 2-25 |
| 259 | 2-22 |
| 259 | 25 |
| 260 | 2-25 |
| 261 | 2-10 |
| 261 | 13-16 |
| 261 | 20-25 |
| 262 | 2-6 |
| 262 | 9-13 |
| 262 | 19-25 |
| 263 | 2-25 |
| 264 | 2-17 |
| 264 | 23-25 |
| 265 | 2-5 |
| 265 | 8-18 |
| 265 | 21-25 |
| 266 | 2-12 |
| 266 | 15-25 |
| 267 | 2-25 |
| 268 | 2-25 |
| 269 | 2-15 |
| 269 | 18-25 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 270 | 2-25 |
| 271 | 2-25 |
| 272 | 2-9 |
| 272 | 12-25 |
| 273 | 2-7 |
| 273 | 11-25 |
| 274 | 2-25 |
| 275 | 2-25 |
| 276 | 2-25 |
| 277 | 2-19 |
| 277 | 22-25 |
| 278 | 2-25 |
| 279 | 2-16 |
| 279 | 19-25 |
| 280 | 2-25 |
| 281 | 2-25 |
| 282 | 2-25 |
| 283 | 2-7 |
| 283 | 10-25 |
| 284 | 2-14 |
| 284 | 17-25 |
| 285 | 2-6 |
| 285 | 9-25 |
| 286 | 2-25 |
| 287 | 2-25 |
| 288 | 2-17 |
| 288 | 21-25 |
| 289 | 3-25 |
| 290 | 2-3 |
| 290 | 6-25 |
| 291 | 2-25 |
| 292 | 2-3 |
| 292 | 6-25 |
| 293 | 2-5 |
| 293 | 8-25 |
| 294 | 2-21 |
| 294 | 24-25 |
| 295 | 2-4 |
| 295 | 12-25 |
| 296 | 2-4 |

INDS02 MBARR 973950v1

REDACTED VERSION – PUBLICLY FILED

Deposition of Phillip Galloway, Vol. II
November 27, 2007

| Page | Line(s) |
|------|---------|
| 346 | 22-25 |
| 347 | 2-25 |
| 348 | 2-12 |
| 348 | 15-21 |
| 348 | 24-25 |
| 349 | 3-8 |
| 349 | 11-21 |
| 349 | 24-25 |
| 350 | 2-10 |
| 350 | 13-21 |
| 352 | 5-14 |
| 352 | 17-25 |
| 353 | 4-25 |
| 354 | 2-12 |
| 354 | 15-25 |
| 355 | 2-3 |
| 355 | 6-25 |
| 356 | 2-25 |
| 357 | 2-25 |
| 358 | 2-25 |
| 359 | 2-10 |
| 359 | 16-25 |
| 360 | 4-11 |
| 360 | 14-25 |
| 361 | 2-10 |
| 361 | 13-22 |
| 361 | 25 |
| 362 | 2-11 |
| 362 | 18-25 |
| 363 | 2-25 |
| 364 | 2-25 |
| 365 | 2-25 |
| 366 | 2-25 |
| 367 | 4-18 |
| 367 | 21-25 |
| 368 | 2-16 |
| 368 | 19-25 |
| 369 | 2-25 |
| 370 | 2-25 |
| 371 | 2-25 |
| 372 | 2-6 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 372 | 9-17 |
| 372 | 20-25 |
| 373 | 2-9 |
| 373 | 12-19 |
| 373 | 22-25 |
| 374 | 2-8 |
| 374 | 11-20 |
| 374 | 23-25 |
| 375 | 2-25 |
| 376 | 2-25 |
| 377 | 2-25 |
| 378 | 2-6 |
| 378 | 9-25 |
| 379 | 2-25 |
| 380 | 2-25 |
| 381 | 2-25 |
| 382 | 2-25 |
| 383 | 2-25 |
| 384 | 2-25 |
| 385 | 2-4 |
| 385 | 8-24 |
| 386 | 4-19 |
| 386 | 22-25 |
| 387 | 2-25 |
| 388 | 2-25 |
| 389 | 2-5 |
| 389 | 8-17 |
| 389 | 20-25 |
| 390 | 2-25 |
| 391 | 2-25 |
| 392 | 2-19 |
| 392 | 22-25 |
| 393 | 2-5 |
| 393 | 9-25 |
| 394 | 4-9 |
| 394 | 12-25 |
| 395 | 2-7 |
| 395 | 10-17 |
| 395 | 20-25 |
| 396 | 2-25 |
| 397 | 2-4 |
| 397 | 7-25 |
| 398 | 16-25 |
| 399 | 2-8 |
| 399 | 20-25 |

REDACTED VERSION – PUBLICLY FILED

| 400 | 2-10 |
|-----|------|
| 400 | 13-25 |
| 401 | 2-25 |
| 402 | 2-25 |
| 403 | 2-25 |
| 404 | 2-25 |
| 405 | 2-25 |
| 406 | 2-25 |
| 407 | 2-11 |
| 407 | 14-18 |
| 407 | 21-25 |
| 408 | 2-25 |
| 409 | 2-8 |
| 409 | 11-25 |
| 410 | 2-3 |
| 410 | 6-25 |
| 411 | 2-25 |
| 412 | 2-25 |
| 413 | 2-7 |
| 413 | 10-25 |
| 414 | 2-12 |
| 414 | 15-25 |
| 415 | 2-25 |
| 416 | 2-25 |
| 417 | 2-4 |
| 417 | 6-25 |
| 418 | 2-25 |
| 419 | 2-17 |
| 419 | 23-25 |
| 420 | 2-25 |
| 421 | 2-25 |
| 422 | 2-25 |
| 423 | 2-8 |
| 423 | 18-25 |
| 424 | 2-25 |
| 425 | 2-25 |
| 426 | 2-25 |
| 427 | 2-25 |
| 428 | 2-25 |
| 429 | 2-25 |
| 430 | 2-24 |
| 431 | 2-25 |
| 432 | 2-25 |
| 433 | 2-25 |
| 434 | 2-25 |

REDACTED VERSION – PUBLICLY FILED

| 435 | 4-25 |
|-----|------|
| 436 | 2-5 |
| 436 | 18-25 |
| 437 | 2-21 |
| 437 | 24-25 |
| 438 | 2-4 |
| 438 | 7-25 |
| 439 | 2 |
| 439 | 5-25 |
| 440 | 2-25 |
| 441 | 2-21 |
| 441 | 24-25 |
| 442 | 2 |
| 442 | 18-25 |
| 443 | 2-25 |
| 444 | 2-25 |
| 445 | 2-25 |
| 446 | 2-25 |
| 447 | 2-22 |
| 447 | 25 |
| 448 | 2-25 |
| 449 | 2-25 |
| 450 | 2-25 |
| 451 | 2-17 |
| 451 | 20-25 |
| 452 | 2-12 |
| 452 | 15-25 |
| 453 | 2-25 |
| 454 | 2-25 |
| 455 | 2-7 |
| 455 | 10-22 |
| 455 | 25 |
| 456 | 2-25 |
| 457 | 2-10 |
| 457 | 13-25 |
| 458 | 2 |
| 458 | 9-25 |
| 459 | 2-25 |
| 460 | 2-25 |
| 461 | 2-25 |
| 462 | 2-11 |
| 462 | 16-25 |
| 463 | 2-25 |
| 464 | 2-6 |
| 464 | 15-25 |

REDACTED VERSION – PUBLICLY FILED

| 465 | 2-25 |
| 466 | 2-25 |
| 467 | 2-13 |
| 268 | 2-25 |
| 469 | 2-6 |
| 469 | 9-25 |
| 470 | 2-20 |
| 470 | 23-25 |
| 471 | 2-25 |
| 472 | 2-17 |
| 472 | 22-25 |
| 473 | 2-25 |
| 474 | 2-3 |
| 475 | 3-25 |
| 476 | 2 |
| 476 | 5-25 |
| 477 | 2-25 |
| 478 | 2-25 |
| 479 | 2-23 |
| 480 | 3-24 |
| 481 | 5-12 |
| 481 | 15-25 |
| 482 | 2-20 |
| 482 | 23-25 |
| 483 | 2-4 |
| 483 | 7-25 |
| 484 | 2-25 |
| 485 | 2-11 |
| 485 | 14-21 |
| 485 | 24-25 |
| 486 | 2-3 |
| 486 | 6-25 |
| 487 | 2-25 |
| 488 | 2-24 |
| 489 | 3-25 |
| 490 | 2-25 |
| 491 | 2-25 |
| 492 | 4-14 |
| 492 | 17-25 |
| 493 | 2-25 |
| 494 | 2-25 |
| 495 | 2-25 |
| 496 | 2-25 |
| 497 | 2-16 |
| 497 | 19-25 |

REDACTED VERSION – PUBLICLY FILED

| 498 | 2-25 |
|-----|------|
| 499 | 2-25 |
| 500 | 2 |
| 500 | 11-22 |
| 502 | 3-25 |
| 503 | 2-14 |
| 503 | 17-25 |
| 504 | 2-25 |
| 505 | 2-25 |
| 506 | 2-25 |
| 507 | 2-25 |
| 508 | 2-25 |
| 509 | 2-22 |
| 509 | 25 |
| 510 | 2-12 |
| 510 | 15-25 |
| 511 | 2-19 |
| 512 | 5-25 |
| 513 | 2-25 |
| 514 | 2-25 |
| 515 | 2-25 |
| 516 | 2-25 |
| 517 | 2-25 |
| 518 | 2-25 |
| 519 | 2-25 |
| 520 | 2-25 |
| 521 | 2-25 |
| 522 | 2-25 |
| 523 | 2-25 |
| 524 | 2-25 |
| 525 | 2-3 |
| 525 | 9-25 |
| 526 | 2-7 |
| 527 | 4-25 |
| 528 | 2-18 |
| 531 | 2-25 |
| 532 | 2-25 |
| 533 | 2-24 |
| 534 | 3-25 |
| 535 | 2-25 |
| 536 | 2-25 |
| 537 | 2-25 |
| 538 | 2-15 |
| 538 | 18-21 |
| 538 | 24-25 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 539 | 2-20 |
| 539 | 23-25 |
| 540 | 2-25 |
| 540 | 16-25 |
| 541 | 4-25 |
| 542 | 2-25 |
| 543 | 2-11 |
| 546 | 23-25 |
| 547 | 2-25 |
| 548 | 4-22 |
| 548 | 25 |
| 549 | 2-10 |
| 549 | 13-21 |
| 549 | 24-25 |
| 550 | 2-25 |
| 551 | 2-14 |
| 551 | 17-19 |
| 552 | 13-25 |
| 553 | 2-25 |
| 554 | 2-11 |
| 554 | 14-25 |
| 555 | 2-24 |
| 556 | 3-10 |
| 556 | 13-25 |
| 557 | 2-25 |
| 558 | 2-25 |
| 559 | 2 |
| 559 | 5-16 |
| 559 | 19-25 |
| 560 | 2-19 |
| 560 | 22-25 |
| 561 | 2-25 |
| 562 | 2-14 |
| 562 | 17-23 |
| 563 | 2-25 |
| 564 | 2 |
| 564 | 9-25 |
| 565 | 2-21 |
| 565 | 24-25 |
| 566 | 2-12 |
| 566 | 15-25 |
| 567 | 2-4 |
| 567 | 7-25 |
| 568 | 2-4 |
| 568 | 7-21 |

REDACTED VERSION – PUBLICLY FILED

| 569 | 2-25 |
|-----|------|
| 570 | 2-25 |
| 571 | 2-25 |
| 572 | 2-25 |
| 573 | 2-25 |
| 574 | 2-24 |
| 575 | 2-16 |
| 575 | 19-25 |
| 576 | 2-25 |
| 577 | 2-25 |
| 578 | 2 |
| 578 | 6-25 |
| 579 | 2-25 |
| 580 | 2-25 |
| 581 | 2-14 |
| 581 | 17-21 |
| 581 | 24-25 |
| 582 | 2-25 |
| 583 | 2-16 |
| 583 | 19-25 |
| 584 | 2-17 |
| 584 | 20-25 |
| 585 | 2-4 |
| 585 | 7-25 |
| 586 | 2-25 |
| 587 | 2-25 |
| 588 | 2-25 |
| 589 | 2-25 |
| 590 | 2-25 |
| 591 | 2-25 |
| 592 | 2-5 |
| 592 | 8-19 |
| 593 | 6-25 |
| 594 | 2 |
| 594 | 6-8 |
| 594 | 11-18 |
| 594 | 21-25 |
| 595 | 2-19 |
|  |  |

REDACTED VERSION – PUBLICLY FILED

Deposition of Peter Greenhalgh
February 6, 2008

| Page | Line(s) |
|------|---------|
| 36 | 18-25 |
| 37 | 2-24 |
| 127 | 3-7 |
| 127 | 10-23 |
| 128 | 2-25 |
| 129 | 2-6 |
| 151 | 5-18 |
| 151 | 21-23 |
| 159 | 4-11 |
| 172 | 4-7 |
| 172 | 10-14 |
| 230 | 19-25 |
| 231 | 2-25 |
| 232 | 2-8 |
| 232 | 11-25 |
| 233 | 2-21 |
| 233 | 24 |
| 234 | 3-25 |
| 235 | 2-25 |
| 236 | 2-25 |
| 237 | 2-13 |

REDACTED VERSION – PUBLICLY FILED

Deposition of Iggy Jovanovic
August 31, 2007

| Page | Line(s) |
|------|---------|
| 5 | 6-25 |
| 6 | 2-8 |
| 8 | 5-8 |
| 9 | 7-23 |
| 9 | 25 |
| 10 | 1-25 |
| 11 | 1-25 |
| 12 | 1-8 |
| 12 | 12-25 |
| 13 | 1-25 |
| 14 | 1-6 |
| 15 | 16-25 |
| 16 | 1-17 |
| 16 | 22-25 |
| 17 | 1-25 |
| 18 | 1-25 |
| 19 | 1-8 |
| 19 | 11-25 |
| 20 | 1-4 |
| 20 | 16-20 |
| 20 | 25 |
| 21 | 1-6 |
| 21 | 9-25 |
| 22 | 1-5 |
| 23 | 1-25 |
| 24 | 1-25 |
| 25 | 1-5 |
| 25 | 9-16 |
| 25 | 19-20 |
| 25 | 23-25 |
| 26 | 1-22 |
| 26 | 25 |
| 27 | 1-2 |
| 27 | 6-25 |
| 28 | 1-7 |
| 28 | 11-25 |
| 29 | 1-25 |
| 30 | 1-13 |
| 30 | 15-25 |
| 31 | 1-25 |
| 32 | 1-9 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 32 | 12-25 |
| 33 | 1-2 |
| 33 | 6-8 |
| 33 | 10-16 |
| 33 | 24-25 |
| 34 | 1-25 |
| 35 | 1-25 |
| 36 | 1-25 |
| 37 | 1-14 |
| 37 | 17-22 |
| 37 | 25 |
| 38 | 1-19 |
| 38 | 22-25 |
| 39 | 1-25 |
| 40 | 1-6 |
| 40 | 9-10 |
| 40 | 12-25 |
| 41 | 1-8 |
| 41 | 21-25 |
| 42 | 1-20 |
| 43 | 7-25 |
| 44 | 21-25 |
| 45 | 1-9 |
| 45 | 11-25 |
| 46 | 1-14 |
| 46 | 17-21 |
| 47 | 3-8 |
| 47 | 10-18 |
| 47 | 21-25 |
| 48 | 1-3 |
| 48 | 5-8 |
| 48 | 11-15 |
| 48 | 21-25 |
| 49 | 1-4 |
| 49 | 7-14 |
| 49 | 7-25 |
| 50 | 1-25 |
| 51 | 1-23 |
| 52 | 6-25 |
| 53 | 1-10 |
| 53 | 12-23 |
| 54 | 6-13 |
| 54 | 22-25 |
| 55 | 1-16 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 55 | 19-25 |
| 56 | 1-10 |
| 56 | 13-22 |
| 57 | 1-5 |
| 57 | 7-12 |
| 57 | 16-20 |
| 57 | 24-25 |
| 58 | 1-5 |
| 58 | 15-20 |
| 58 | 23-25 |
| 59 | 5-10 |
| 59 | 21-25 |
| 60 | 3-7 |
| 60 | 10-12 |
| 60 | 15-24 |
| 61 | 4 |
| 61 | 19-23 |
| 62 | 13-25 |
| 63 | 3-15 |
| 63 | 18-19 |
| 63 | 22-25 |
| 64 | 1-4 |
| 64 | 8-9 |
| 64 | 12-17 |
| 64 | 19-24 |
| 65 | 1-3 |
| 65 | 5-16 |
| 65 | 18-24 |
| 66 | 2-19 |
| 66 | 21-25 |
| 67 | 1-18 |
| 67 | 20-25 |
| 68 | 3 |
| 68 | 15-25 |
| 69 | 1-5 |
| 69 | 7-12 |
| 69 | 14-21 |
| 70 | 4-8 |
| 70 | 13-25 |
| 71 | 2 |
| 71 | 4-12 |
| 71 | 15-18 |
| 71 | 20-23 |
| 71 | 25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 72 | 1-3 |
| 72 | 15-25 |
| 73 | 1-6 |
| 73 | 9-12 |
| 73 | 14-25 |
| 74 | 1-19 |
| 75 | 12-25 |
| 76 | 1-7 |
| 76 | 10-25 |
| 77 | 1-5 |
| 77 | 7-25 |
| 78 | 1-4 |
| 78 | 6-9 |
| 78 | 12-25 |
| 79 | 2-12 |
| 79 | 14-19 |
| 79 | 22-25 |
| 80 | 4-14 |
| 80 | 17-19 |
| 80 | 22-25 |
| 81 | 1-13 |
| 81 | 18-20 |
| 81 | 22-25 |
| 82 | 12-17 |
| 82 | 21-25 |
| 83 | 1-13 |
| 84 | 1-25 |
| 85 | 1-10 |
| 85 | 13-14 |
| 85 | 16 |
| 86 | 10-14 |
| 86 | 16-24 |
| 87 | 7-15 |
| 87 | 18-25 |
| 88 | 1-8 |
| 88 | 24-25 |
| 89 | 16-25 |
| 90 | 1-3 |
| 90 | 7-25 |
| 91 | 1-18 |
| 91 | 21-25 |
| 92 | 3-7 |
| 92 | 9-12 |
| 92 | 15-24 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 93 | 7-25 |
| 94 | 1-9 |
| 94 | 15-25 |
| 95 | 1-6 |
| 95 | 25 |
| 96 | 1-10 |
| 98 | 5-25 |
| 99 | 3-6 |
| 99 | 8-25 |
| 100 | 1-7 |
| 100 | 9-11 |
| 100 | 13-16 |
| 100 | 18-22 |
| 100 | 25 |
| 101 | 1-23 |
| 101 | 15-21 |
| 101 | 23-25 |
| 102 | 1-12 |
| 102 | 15-25 |
| 103 | 1-4 |
| 103 | 9-25 |
| 104 | 1-25 |
| 105 | 1-3 |
| 105 | 6-25 |
| 106 | 1-11 |
| 106 | 15-25 |
| 107 | 1-25 |
| 108 | 1-7 |
| 108 | 10-25 |
| 109 | 1-4 |
| 109 | 12-18 |
| 109 | 21-23 |
| 110 | 1-5 |
| 110 | 13-15 |
| 110 | 17-25 |
| 111 | 4-12 |
| 111 | 15-18 |
| 112 | 1-25 |
| 113 | 1-9 |
| 113 | 21-25 |
| 114 | 1-13 |
| 114 | 16-19 |
| 115 | 8-11 |
| 115 | 14-21 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 115 | 24-25 |
| 116 | 1-6 |
| 116 | 8-9 |
| 116 | 11-25 |
| 116 | 18-24 |
| 117 | 3-13 |
| 117 | 16-25 |
| 118 | 1-9 |
| 118 | 14-22 |
| 118 | 24-25 |
| 119 | 1-10 |
| 119 | 12 |
| 119 | 25 |
| 120 | 1-11 |
| 120 | 14-16 |
| 120 | 18-22 |
| 120 | 24-25 |
| 121 | 1-3 |
| 121 | 7-9 |
| 121 | 12-16 |
| 121 | 19-22 |
| 121 | 25 |
| 122 | 1-11 |
| 122 | 13-15 |
| 122 | 20-24 |
| 123 | 3-8 |
| 123 | 13-19 |
| 123 | 24-25 |
| 124 | 1-7 |
| 124 | 10-16 |
| 124 | 21-25 |
| 125 | 1-3 |
| 125 | 6-20 |
| 125 | 23-25 |
| 126 | 1-5 |
| 126 | 7-15 |
| 126 | 18-20 |
| 126 | 23-25 |
| 127 | 1-4 |
| 127 | 7-11 |
| 127 | 15 |
| 127 | 17-25 |
| 128 | 1-12 |
| 128 | 15-19 |

| Page | Line(s) |
|------|---------|
| 128 | 23-25 |
| 129 | 4-9 |
| 129 | 13-25 |
| 130 | 1-6 |
| 130 | 11-14 |
| 130 | 16-25 |
| 131 | 1-14 |
| 131 | 17-24 |
| 132 | 3-17 |
| 132 | 21-25 |
| 133 | 1-7 |
| 133 | 9-15 |
| 133 | 19-25 |
| 134 | 1-23 |
| 135 | 1-15 |
| 136 | 14-25 |
| 137 | 3-6 |
| 137 | 8-18 |
| 137 | 21-25 |
| 138 | 1-3 |
| 138 | 6-25 |
| 139 | 1-25 |
| 140 | 8-23 |
| 141 | 2-7 |
| 141 | 10-25 |
| 142 | 1-25 |
| 143 | 1-13 |
| 143 | 15 |
| 143 | 17-25 |
| 144 | 1-18 |
| 144 | 23-25 |
| 145 | 1-25 |
| 146 | 1-25 |
| 147 | 1-3 |
| 149 | 2-25 |
| 150 | 1-25 |
| 151 | 1-25 |
| 152 | 1-25 |
| 153 | 1-25 |
| 154 | 5-14 |
| 154 | 17-23 |
| 155 | 6-23 |
| 155 | 18-23 |
| 156 | 3-7 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 156 | 10-25 |
| 157 | 1-3 |
| 157 | 10-25 |
| 158 | 1-3 |
| 158 | 6-12 |
| 158 | 16-17 |
| 158 | 19-25 |
| 159 | 1-2 |
| 159 | 4-5 |
| 159 | 7-20 |
| 159 | 23 |
| 159 | 25 |
| 160 | 1-4 |
| 160 | 6-25 |
| 161 | 1-15 |
| 161 | 18-25 |
| 162 | 1-25 |
| 163 | 1-5 |
| 163 | 8-11 |
| 163 | 14-18 |
| 163 | 22-25 |
| 164 | 1-25 |
| 165 | 1-25 |
| 166 | 1-4 |
| 166 | 8-13 |
| 166 | 16-25 |
| 167 | 1-12 |
| 167 | 16-25 |
| 168 | 1-25 |
| 169 | 1-25 |
| 170 | 1-25 |
| 171 | 1-3 |
| 171 | 20-25 |
| 172 | 1-25 |
| 173 | 1-14 |
| 173 | 18-25 |
| 174 | 1-6 |
| 174 | 9-25 |
| 175 | 4-12 |
| 175 | 14-15 |
| 175 | 17-25 |
| 176 | 1-15 |
| 176 | 18-25 |
| 177 | 1-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 178 | 1-14 |
| 178 | 16 |
| 178 | 18-25 |
| 179 | 1-12 |
| 179 | 15-18 |
| 179 | 20-24 |
| 180 | 15-25 |
| 181 | 1-13 |
| 181 | 16-25 |
| 182 | 1-25 |
| 183 | 1-4 |
| 183 | 6-13 |
| 183 | 18 |
| 183 | 20-25 |
| 184 | 1-12 |
| 184 | 18-19 |
| 184 | 23-25 |
| 185 | 4-18 |
| 186 | 6-25 |
| 187 | 1-9 |
| 187 | 11-25 |
| 188 | 1-8 |
| 188 | 11-16 |
| 188 | 23-25 |
| 189 | 1-9 |
| 189 | 12-25 |
| 190 | 1-9 |
| 190 | 12-17 |
| 190 | 20-22 |
| 190 | 24-25 |
| 191 | 1-5 |
| 192 | 5-11 |
| 192 | 21-25 |
| 193 | 1-19 |
| 193 | 22-25 |
| 194 | 1-24 |
| 195 | 7-16 |
| 195 | 19-20 |
| 196 | 3-25 |
| 197 | 1-11 |
| 197 | 14-22 |
| 197 | 24 |
| 198 | 3-25 |
| 199 | 1-21 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 199 | 24-25 |
| 200 | 1-5 |
| 200 | 8-21 |
| 201 | 12-25 |
| 202 | 1-25 |
| 203 | 1-7 |
| 203 | 10-15 |
| 203 | 17-20 |
| 203 | 22-25 |
| 204 | 1-2 |
| 204 | 5-11 |
| 204 | 14 |
| 204 | 17-21 |
| 205 | 3-16 |
| 205 | 18 |
| 205 | 22-25 |
| 207 | 4-25 |
| 208 | 1-25 |
| 209 | 1-7 |
| 209 | 13-24 |
| 210 | 4-21 |
| 210 | 23-25 |
| 211 | 1-10 |
| 211 | 13-20 |
| 211 | 22 |
| 211 | 25 |
| 212 | 1-5 |
| 212 | 22-24 |
| 213 | 2-12 |
| 213 | 15-25 |
| 214 | 2 |
| 214 | 5-7 |
| 214 | 10-22 |
| 214 | 25 |
| 215 | 1-25 |
| 216 | 1-15 |
| 216 | 18-25 |
| 217 | 1-11 |
| 217 | 15-20 |
| 217 | 24-25 |
| 218 | 1-4 |
| 218 | 6 |
| 219 | 4-5 |
| 219 | 8-11 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 219 | 14-25 |
| 220 | 1-3 |
| 220 | 6-25 |
| 221 | 1-8 |
| 221 | 12 |
| 221 | 24-25 |
| 222 | 1-4 |
| 222 | 9-19 |
| 223 | 5-25 |
| 224 | 1-5 |
| 224 | 8-25 |
| 225 | 4-25 |
| 226 | 1-8 |
| 228 | 2-22 |
| 228 | 24-25 |
| 229 | 1-2 |
| 229 | 21-25 |
| 230 | 1-25 |
| 231 | 1-25 |
| 232 | 1-21 |
| 233 | 1-21 |
| 233 | 23 |
| 234 | 1-2 |
| 234 | 9-25 |
| 235 | 1-9 |
| 235 | 12-21 |
| 235 | 24-25 |
| 236 | 1-9 |
| 236 | 12-18 |
| 237 | 1-6 |
| 237 | 9-14 |
| 237 | 16-20 |
| 237 | 25 |
| 238 | 1-7 |
| 238 | 10-15 |
| 238 | 18-25 |
| 239 | 16-19 |
| 239 | 22-23 |
| 239 | 25 |
| 240 | 1-11 |
| 240 | 14-25 |
| 241 | 1-15 |
| 241 | 19-25 |
| 242 | 1-6 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 243 | 8-14 |
| 244 | 15-25 |
| 245 | 1-13 |
| 247 | 12-25 |
| 248 | 1-23 |
| 249 | 3-8 |
| 249 | 11-15 |
| 249 | 17 |

NDS02 HCOHEN 974083v1

REDACTED VERSION – PUBLICLY FILED

Deposition of Mark Miles
August 20, 2007

| Page | Line(s) |
|------|---------|
| 16 | 13-25 |
| 17 | 1-25 |
| 18 | 1-25 |
| 19 | 1-6 |
| 19 | 10-25 |
| 20 | 1-5 |
| 20 | 7-18 |
| 20 | 23-25 |
| 21 | 1-3 |
| 21 | 5-25 |
| 22 | 1-25 |
| 23 | 1-23 |
| 24 | 1-25 |
| 25 | 1-25 |
| 26 | 1-25 |
| 27 | 1-25 |
| 28 | 1-3 |
| 28 | 5-9 |
| 28 | 11-20 |
| 28 | 24-25 |
| 29 | 1-18 |
| 29 | 22-25 |
| 30 | 1-4 |
| 30 | 7-25 |
| 31 | 1-3 |
| 31 | 5-11 |
| 32 | 5-25 |
| 33 | 1-25 |
| 34 | 1-24 |
| 35 | 7-25 |
| 36 | 1-12 |
| 36 | 14-25 |
| 37 | 1-10 |
| 37 | 13-25 |
| 38 | 1-25 |
| 39 | 1-19 |
| 39 | 21-25 |
| 40 | 1-25 |
| 41 | 1-16 |
| 41 | 19-25 |
| 42 | 1-24 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 43 | 1-13 |
| 43 | 15-25 |
| 44 | 1-25 |
| 45 | 1-25 |
| 46 | 1-5 |
| 46 | 7-25 |
| 47 | 1-8 |
| 47 | 12-25 |
| 48 | 1-16 |
| 48 | 18-25 |
| 49 | 1-25 |
| 50 | 1-25 |
| 51 | 1-25 |
| 52 | 1-24 |
| 53 | 1-22 |
| 53 | 25 |
| 54 | 1-11 |
| 54 | 13-25 |
| 55 | 1-7 |
| 55 | 9-19 |
| 55 | 24-25 |
| 56 | 1-25 |
| 57 | 1-4 |
| 58 | 12-25 |
| 59 | 1-16 |
| 59 | 18-25 |
| 60 | 1-25 |
| 61 | 1-3 |
| 61 | 5-14 |
| 63 | 21-25 |
| 64 | 1-25 |
| 65 | 1-7 |
| 65 | 9-13 |
| 65 | 18-25 |
| 66 | 1-25 |
| 67 | 1-21 |
| 67 | 23-25 |
| 68 | 1-25 |
| 69 | 1-19 |
| 69 | 25 |
| 70 | 1-10 |
| 70 | 12-25 |
| 71 | 1-25 |
| 72 | 1-25 |
| 73 | 1-25 |

REDACTED VERSION – PUBLICLY FILED

| 74  | 1-3   |
|-----|-------|
| 74  | 5-13  |
| 74  | 17-25 |
| 75  | 1-5   |
| 75  | 7-25  |
| 76  | 1-13  |
| 76  | 17-25 |
| 77  | 1-9   |
| 77  | 12-25 |
| 78  | 1-25  |
| 79  | 1-13  |
| 79  | 16-25 |
| 80  | 1-14  |
| 80  | 16-24 |
| 81  | 2-25  |
| 82  | 1-25  |
| 83  | 1-25  |
| 84  | 1-25  |
| 85  | 1-25  |
| 86  | 1-25  |
| 87  | 1-25  |
| 88  | 1-25  |
| 89  | 1-14  |
| 89  | 16-25 |
| 90  | 1-9   |
| 90  | 18-22 |
| 91  | 1-25  |
| 92  | 1-12  |
| 92  | 16-25 |
| 93  | 1-17  |
| 93  | 19-25 |
| 94  | 1-25  |
| 95  | 1-23  |
| 96  | 7-25  |
| 97  | 1-25  |
| 98  | 1-21  |
| 99  | 10-25 |
| 100 | 1-25  |
| 101 | 1-16  |
| 101 | 18-25 |
| 102 | 1-3   |
| 102 | 5-12  |
| 102 | 14-25 |
| 103 | 1-25  |
| 104 | 1-25  |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 105 | 3-25 |
| 106 | 1-25 |
| 107 | 1-11 |
| 107 | 14-23 |
| 108 | 9-17 |
| 108 | 19-25 |
| 109 | 1-19 |
| 110 | 5-25 |
| 111 | 1-6 |
| 111 | 10-22 |
| 111 | 25 |
| 112 | 1-11 |
| 112 | 13-25 |
| 113 | 1-11 |
| 113 | 14-17 |
| 113 | 19-23 |
| 113 | 25 |
| 114 | 1-25 |
| 115 | 3-25 |
| 116 | 1-23 |
| 117 | 1-25 |
| 118 | 1-22 |
| 118 | 24-25 |
| 119 | 1-7 |
| 119 | 9-10 |
| 119 | 12-17 |
| 119 | 19-23 |
| 119 | 25 |
| 120 | 1-9 |
| 120 | 11-13 |
| 120 | 21-25 |
| 121 | 1-25 |
| 122 | 1-5 |
| 122 | 17-25 |
| 123 | 1-25 |
| 124 | 1-7 |
| 124 | 10-25 |
| 125 | 1-3 |
| 125 | 5-14 |
| 125 | 19-24 |
| 126 | 2-8 |
| 126 | 11-16 |
| 126 | 18-25 |
| 127 | 1-21 |
| 128 | 8-25 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 129 | 1-18 |
| 129 | 20-25 |
| 130 | 1-25 |
| 131 | 1-25 |
| 132 | 1-25 |
| 133 | 1-13 |
| 133 | 15-25 |
| 134 | 1-22 |
| 134 | 24-25 |
| 135 | 1-25 |
| 136 | 1-20 |
| 137 | 3-25 |
| 138 | 1-9 |
| 138 | 15-25 |
| 139 | 1-25 |
| 140 | 1 |
| 140 | 3-25 |
| 141 | 4-18 |
| 142 | 1-3 |
| 142 | 9-25 |
| 143 | 1-25 |
| 144 | 1-25 |
| 145 | 1 |
| 145 | 4-6 |
| 145 | 17-25 |
| 146 | 1-5 |
| 146 | 21-25 |
| 147 | 1-6 |
| 147 | 9-25 |
| 148 | 1-25 |
| 149 | 1-25 |
| 150 | 1-19 |
| 150 | 21-25 |
| 151 | 1-25 |
| 152 | 1-9 |
| 152 | 11-25 |
| 153 | 1-4 |
| 153 | 7-10 |
| 153 | 13-25 |
| 154 | 1 |
| 154 | 3-10 |
| 154 | 13-25 |
| 155 | 1-10 |
| 155 | 12-17 |
| 155 | 24-25 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 156 | 12-15 |
| 156 | 18-25 |
| 157 | 1-13 |
| 157 | 15-25 |
| 158 | 1-25 |
| 159 | 1-16 |
| 159 | 18-24 |
| 160 | 1-4 |
| 160 | 8-15 |
| 160 | 22-25 |
| 161 | 1-5 |
| 161 | 8-14 |
| 162 | 4-18 |
| 163 | 4-25 |
| 164 | 1-25 |
| 165 | 1-25 |
| 166 | 1-18 |
| 166 | 25 |
| 167 | 1-25 |
| 168 | 1-25 |
| 169 | 1-25 |
| 170 | 1-25 |
| 171 | 19-25 |
| 172 | 1-25 |
| 173 | 1-25 |
| 174 | 1-11 |
| 174 | 18-25 |
| 175 | 1-17 |
| 176 | 1-16 |
| 176 | 21-25 |
| 177 | 1-25 |
| 178 | 1-25 |
| 179 | 1-25 |
| 180 | 1-2 |
| 180 | 6-25 |
| 181 | 1-24 |
| 182 | 1-22 |
| 183 | 4-25 |
| 184 | 1-25 |
| 185 | 1-25 |
| 186 | 1-25 |
| 187 | 1-25 |
| 188 | 1-25 |
| 189 | 1-25 |
| 190 | 1-25 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 191 | 1-11 |
| 192 | 14-25 |
| 193 | 1-25 |
| 194 | 1-15 |
| 194 | 18-25 |
| 195 | 1-25 |
| 196 | 1-25 |
| 197 | 1-25 |
| 198 | 1-25 |
| 199 | 1-25 |
| 200 | 1-25 |
| 201 | 1-25 |
| 202 | 5-25 |
| 203 | 1-25 |
| 204 | 1-19 |
| 204 | 23-25 |
| 205 | 1-25 |
| 206 | 1-25 |
| 207 | 1-25 |
| 208 | 1-25 |
| 209 | 1-25 |
| 210 | 1-19 |
| 210 | 21-25 |
| 211 | 1-19 |
| 212 | 8-25 |
| 213 | 1-25 |
| 214 | 1-10 |
| 214 | 12-25 |
| 215 | 1-25 |
| 216 | 1-25 |
| 217 | 1-25 |
| 218 | 1-12 |
| 218 | 17-21 |
| 219 | 12-25 |
| 220 | 1-23 |
| 220 | 25 |
| 221 | 1-25 |
| 222 | 1-25 |
| 223 | 1-25 |
| 224 | 1-25 |
| 225 | 1-9 |
| 225 | 11-24 |
| 226 | 1-25 |
| 227 | 1-25 |
| 228 | 1-25 |

REDACTED VERSION – PUBLICLY FILED

| 229 | 1-6 |
|-----|------|
| 229 | 8-25 |
| 230 | 1-25 |
| 231 | 1-15 |
| 233 | 17-25 |
| 234 | 1-25 |
| 235 | 1-25 |
| 236 | 1-25 |
| 237 | 1-4 |
| 237 | 11-21 |
| 238 | 6-25 |
| 239 | 1-8 |
| 239 | 10-25 |
| 240 | 1-10 |
| 240 | 12-25 |
| 241 | 1-4 |
| 241 | 6-25 |
| 242 | 1-11 |
| 242 | 14-25 |
| 243 | 1-4 |
| 243 | 6-25 |
| 244 | 1-8 |
| 244 | 12-15 |
| 244 | 17-15 |
| 245 | 1-25 |
| 246 | 1-10 |
| 246 | 20-25 |
| 247 | 1-25 |
| 248 | 1-25 |
| 249 | 1-25 |
| 250 | 1-18 |
| 250 | 21-25 |
| 251 | 1-25 |
| 252 | 1-14 |
| 252 | 17-23 |
| 253 | 1-25 |
| 254 | 1-25 |
| 255 | 1-25 |
| 256 | 1-2 |
| 256 | 16-25 |
| 257 | 1-25 |
| 258 | 1-13 |
| 258 | 20-25 |
| 259 | 1-25 |
| 260 | 1-25 |

REDACTED VERSION – PUBLICLY FILED

| 261 | 1-18 |
|-----|------|
| 261 | 20-25 |
| 262 | 1-25 |
| 263 | 1-25 |
| 264 | 1-12 |
| 264 | 14-25 |
| 265 | 1-5 |
| 265 | 10-16 |
| 265 | 19-25 |
| 266 | 1-2 |
|     |      |

REDACTED VERSION – PUBLICLY FILED

Deposition of Mark Miles, Vol. II
November 20, 2007

| Page | Line(s) |
|------|---------|
| 279 | 1-25 |
| 280 | 1-25 |
| 281 | 1-25 |
| 282 | 1-25 |
| 283 | 1-14 |
| 283 | 17-25 |
| 284 | 1-25 |
| 285 | 1-16 |
| 285 | 20-25 |
| 286 | 1-25 |
| 287 | 1-25 |
| 288 | 1-3 |
| 288 | 6-25 |
| 289 | 1-8 |
| 289 | 10-15 |
| 289 | 18-25 |
| 290 | 2-7 |
| 290 | 9-11 |
| 290 | 14-18 |
| 290 | 20-23 |
| 290 | 25 |
| 291 | 2-25 |
| 292 | 1-15 |
| 292 | 17-25 |
| 293 | 1-25 |
| 294 | 1-25 |
| 295 | 1-25 |
| 296 | 1-5 |
| 296 | 7-16 |
| 296 | 19-25 |
| 297 | 1-19 |
| 297 | 22-25 |
| 298 | 1-2 |
| 298 | 4-25 |
| 299 | 1-25 |
| 300 | 1-25 |
| 301 | 1-23 |
| 302 | 3-23 |
| 303 | 1-25 |
| 304 | 1-5 |
| 304 | 8-23 |

| | |
|---|---|
| 305 | 1-25 |
| 306 | 1-25 |
| 307 | 1-25 |
| 308 | 1-25 |
| 309 | 1-3 |
| 309 | 6-9 |
| 309 | 12-25 |
| 310 | 1-25 |
| 311 | 1-4 |
| 311 | 7-25 |
| 312 | 1-25 |
| 313 | 1-19 |
| 313 | 21-25 |
| 314 | 1-17 |
| 314 | 19-25 |
| 315 | 1-8 |
| 315 | 10-25 |
| 316 | 1-17 |
| 316 | 19-25 |
| 317 | 1-25 |
| 318 | 1-25 |
| 319 | 1-25 |
| 320 | 1-24 |
| 321 | 1-25 |
| 322 | 1-2 |
| 322 | 4-25 |
| 323 | 1-25 |
| 324 | 1-25 |
| 325 | 1-25 |
| 326 | 1-17 |
| 326 | 19-25 |
| 327 | 1-12 |
| 327 | 14-25 |
| 328 | 1-22 |
| 328 | 24-25 |
| 329 | 1-25 |
| 330 | 1-25 |
| 331 | 5-25 |
| 332 | 1-12 |
| 332 | 22-25 |
| 333 | 1-25 |
| 334 | 1-25 |
| 335 | 1-2 |
| 335 | 4-22 |
| 336 | 9-21 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 336 | 23-25 |
| 337 | 1-25 |
| 338 | 1-8 |
| 338 | 10-22 |
| 339 | 12-25 |
| 340 | 1-23 |
| 341 | 3-9 |
| 341 | 17-25 |
| 342 | 1-6 |
| 342 | 8-25 |
| 343 | 1-13 |
| 343 | 16-25 |
| 344 | 1-23 |
| 344 | 25 |
| 345 | 1-25 |
| 346 | 1-5 |
| 346 | 12-25 |
| 347 | 5-21 |
| 347 | 24-25 |
| 348 | 1-7 |
| 348 | 16-25 |
| 349 | 1-17 |
| 349 | 19-25 |
| 350 | 1-18 |
| 350 | 20-25 |
| 351 | 1-4 |
| 351 | 6-25 |
| 352 | 3-8 |
| 352 | 11-25 |
| 353 | 1-18 |
| 354 | 8-25 |
| 355 | 1-25 |
| 356 | 1-17 |
| 356 | 19-25 |
| 357 | 1-15 |
| 357 | 19-25 |
| 358 | 1 |
| 358 | 3-25 |
| 359 | 1-25 |
| 360 | 1-20 |
| 360 | 22-25 |
| 361 | 1-25 |
| 362 | 1-25 |
| 363 | 1-25 |
| 364 | 1-16 |

REDACTED VERSION – PUBLICLY FILED

| 364 | | 19-25 |
|-----|--|-------|
| 365 | | 1-25 |
| 366 | | 1-10 |
| 366 | | 12-23 |
| 370 | | 23-25 |
| 371 | | 1-18 |
| 371 | | 23-25 |
| 372 | | 1-25 |
| 373 | | 1-25 |
| 374 | | 1-25 |
| 375 | | 1-25 |
| 376 | | 1 |
| 376 | | 3-22 |
| 378 | | 21-25 |
| 379 | | 1-25 |
| 380 | | 1-25 |
| 381 | | 1-23 |
| 382 | | 1-24 |
| 383 | | 1-25 |
| 384 | | 1-25 |
| 385 | | 1-25 |
| 386 | | 1-25 |
| 387 | | 1-25 |
| 388 | | 1-25 |
| 389 | | 1-14 |
| 389 | | 19-25 |
| 390 | | 4-25 |
| 391 | | 1-25 |
| 392 | | 1-25 |
| 393 | | 1-25 |
| 394 | | 1-25 |
| 395 | | 1-25 |
| 396 | | 1-8 |
| 396 | | 11-25 |
| 397 | | 1-25 |
| 398 | | 1-25 |
| 399 | | 1-25 |
| 400 | | 1-25 |
| 401 | | 1-25 |
| 402 | | 1-25 |
| 403 | | 1-25 |
| 404 | | 1-25 |
| 405 | | 1-25 |
| 406 | | 1-25 |
| 407 | | 1-25 |

REDACTED VERSION – PUBLICLY FILED

| 408 | 1-13 |
| 408 | 18-25 |
| 409 | 1-25 |
| 410 | 1-25 |
| 411 | 1-25 |
| 412 | 1-25 |
| 413 | 1-14 |
| 413 | 16-25 |
| 414 | 1-8 |
| 414 | 7-25 |
| 415 | 1-4 |
| 415 | 6-25 |
| 416 | 1 |
| 416 | 9-25 |
| 417 | 1-25 |
| 418 | 1-25 |
| 419 | 1-25 |
| 420 | 1-25 |
| 422 | 3-25 |
| 423 | 1-25 |
| 424 | 1-25 |
| 425 | 1-20 |
| 425 | 23-25 |
| 426 | 1-25 |
| 427 | 1-25 |
| 428 | 1-5 |

INDS02 MBARR 973906v1

5

REDACTED VERSION – PUBLICLY FILED

Deposition of Charles Pasarell
December 6, 2007

| Page | Line(s) |
|------|---------|
| 7 | 6-14 |
| 8 | 6-25 |
| 9 | 2-8 |
| 10 | 2-5 |
| 10 | 7-12 |
| 10 | 15, 16 |
| 10 | 18-22 |
| 10 | 25 |
| 11 | 2 |
| 11 | 12-15 |
| 12 | 5-8 |
| 12 | 12-25 |
| 13 | 2-15 |
| 13 | 23, 24 |
| 14 | 4-9 |
| 14 | 14-18 |
| 15 | 3-11 |
| 15 | 25 |
| 16 | 2-4 |
| 16 | 8-25 |
| 17 | 2-18 |
| 17 | 25 |
| 18 | 2 |
| 18 | 17-25 |
| 19 | 2-5 |
| 21 | 13-22 |
| 21 | 25 |
| 22 | 2-7 |
| 22 | 11-18 |
| 22 | 20-25 |
| 23 | 2-12 |
| 23 | 15, 16 |
| 23 | 18-25 |
| 24 | 2-6 |
| 26 | 4-11 |
| 26 | 20-25 |
| 27 | 4-8 |
| 28 | 18-25 |
| 30 | 2-14 |
| 31 | 20-25 |
| 32 | 2-20 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 33 | 7-10 |
| 33 | 13-18 |
| 34 | 9-12 |
| 34 | 15-19 |
| 35 | 1-25 |
| 36 | 2-13 |
| 37 | 2-25 |
| 38 | 2-4 |
| 38 | 9-12 |
| 38 | 15, 16 |
| 38 | 23-25 |
| 39 | 2-8 |
| 40 | 6-11 |
| 40 | 15-20 |
| 40 | 23-25 |
| 41 | 2-6 |
| 41 | 22-25 |
| 46 | 9-17 |
| 49 | 25 |
| 50 | 2-23 |
| 51 | 8-25 |
| 54 | 9 |
| 54 | 12-15 |
| 54 | 16-25 |
| 55 | 4-10 |
| 55 | 13-23 |
| 56 | 2-16 |
| 56 | 20-22 |
| 60 | 9-17 |
| 60 | 18-25 |
| 61 | 2-4 |
| 61 | 7-11 |
| 62 | 4-8 |
| 62 | 16-25 |
| 63 | 5, 6 |
| 63 | 12-25 |
| 64 | 2-19 |
| 64 | 22-24 |
| 65 | 6-11 |
| 66 | 12-14 |
| 66 | 16, 17 |
| 67 | 13-24 |
| 69 | 19-25 |
| 70 | 2-12 |
| 71 | 4-6 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 71 | 9-14 |
| 71 | 24, 25 |
| 72 | 2-25 |
| 73 | 5-8 |
| 74 | 2-4 |
| 74 | 13-19 |
| 75 | 2 |
| 75 | 5-11 |
| 75 | 18-25 |
| 76 | 2-25 |
| 77 | 2-25 |
| 78 | 2-25 |
| 79 | 2 |
| 79 | 10-13 |
| 80 | 4-13 |
| 81 | 2-25 |
| 82 | 2-25 |
| 83 | 2-21 |
| 83 | 22, 23 |
| 83 | 25 |
| 84 | 3-6 |
| 84 | 16-25 |
| 85 | 2-23 |
| 86 | 5-25 |
| 87 | 2 |
| 87 | 13-25 |
| 88 | 2-25 |
| 89 | 2-19 |
| 90 | 2-13 |
| 90 | 19-25 |
| 91 | 2-4 |
| 91 | 20-25 |
| 92 | 2-4 |
| 92 | 23-25 |
| 93 | 2-5 |
| 93 | 8-10 |
| 93 | 13-19 |
| 93 | 22, 23 |
| 94 | 7-14 |
| 94 | 19-25 |
| 95 | 2 |
| 96 | 16-25 |
| 97 | 2-22 |
| 98 | 4-6 |
| 99 | 6-12 |

| | |
|-----|-------|
| 99  | 15-25 |
| 100 | 24, 25 |
| 101 | 2, 3 |
| 101 | 19-21 |
| 103 | 3-9 |
| 104 | 9-11 |
| 104 | 14-25 |
| 105 | 2-5 |
| 106 | 2-22 |
| 106 | 25 |
| 107 | 2-25 |
| 108 | 2-8 |
| 109 | 14-25 |
| 110 | 2-18 |
| 111 | 3-25 |
| 112 | 22-25 |
| 113 | 22-25 |
| 114 | 2-20 |
| 117 | 4-25 |
| 118 | 2, 3 |
| 122 | 25 |
| 123 | 2 |
| 123 | 5-11 |
| 123 | 14-25 |
| 124 | 2-25 |
| 125 | 2-10 |
| 125 | 12-15 |
| 125 | 17-24 |
| 126 | 2-4 |
| 126 | 9-25 |
| 127 | 2-14 |
| 127 | 25 |
| 128 | 2-19 |
| 130 | 2-13 |
| 130 | 16-25 |
| 131 | 2-9 |
| 131 | 20-25 |
| 132 | 2-9 |
| 132 | 12-21 |
| 133 | 8-12 |
| 134 | 2-9 |
| 134 | 18-22 |
| 135 | 11-15 |
| 135 | 17-24 |
| 136 | 2-6 |

REDACTED VERSION – PUBLICLY FILED

| 137 | 8-11 |
| 137 | 13-25 |
| 138 | 2 |
| 141 | 12-25 |
| 142 | 2-21 |
| 143 | 2-7 |
| 144 | 5-25 |
| 145 | 2-11 |
| 145 | 18-25 |
| 147 | 2-19 |
| 148 | 18-24 |
| 151 | 20-25 |
| 152 | 2 |
| 154 | 19-21 |
| 154 | 23-25 |
| 155 | 2-13 |
| 155 | 16-20 |
| 155 | 23 |
| 156 | 10-15 |
| 156 | 17-19 |
| 156 | 21-25 |
| 157 | 2, 3 |
| 157 | 5 |
| 157 | 16-20 |
| 157 | 23-25 |
| 158 | 2-6 |
| 158 | 8-16 |
| 158 | 24, 25 |
| 159 | 2-4 |
| 159 | 18-21 |
| 159 | 23-25 |
| 160 | 2-5 |
| 160 | 7 |
| 160 | 17-22 |
| 160 | 24, 25 |
| 161 | 2 |
| 161 | 4 |
| 161 | 18-23 |
| 161 | 25 |
| 162 | 2-5 |
| 162 | 7 |
| 163 | 3-19 |
| 165 | 17-21 |
| 171 | 10-20 |
| 172 | 4-11 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 173 | 2-5 |
| 176 | 22-25 |
| 177 | 9-21 |
| 177 | 25 |
| 178 | 2-11 |
| 181 | 4-25 |
| 182 | 8-10 |
| 188 | 18-25 |
| 189 | 2-25 |
| 190 | 2 |
| 190 | 10-22 |
| 192 | 25 |
| 193 | 2-23 |
| 202 | 19-25 |
| 203 | 2-11 |
| 204 | 15-25 |
| 205 | 2-25 |
| 206 | 2-25 |
| 207 | 2-21 |
| 208 | 2-9 |
| 212 | 19-23 |
| 213 | 2 |
| 213 | 24, 25 |
| 214 | 2-9 |
| 214 | 12-15 |
| 215 | 3-5 |
| 215 | 7-10 |
| 215 | 13, 14 |
| 217 | 20-24 |
| 218 | 3 |
| 222 | 5-11 |
| 222 | 12-19 |
| 223 | 18-25 |
| 224 | 2-5 |
| 225 | 7-13 |
| [tape cut out – no page number given] | 5-10 |
| 230 | 10-13 |
| 230 | 17, 18 |
| 231 | 2-5 |
| 231 | 7 |
| 237 | 13-25 |
| 238 | 2, 3 |
| 238 | 6-11 |
| 238 | 13-17 |
| 238 | 19-22 |

REDACTED VERSION – PUBLICLY FILED

| 239 | 2-5 |
| 239 | 7 |
| 239 | 15-17 |
| 239 | 19 |
| 240 | 12-15 |
| 240 | 17-22 |
| 240 | 24, 25 |
| 241 | 2, 3 |
| 241 | 5 |
| 262 | 7-25 |
| 263 | 2-7 |

INDS02 JADAMS 973523v1

REDACTED VERSION – PUBLICLY FILED

Deposition of Graham Pearce
August 24, 2007

| Page | Line(s) |
|------|---------|
| 6 | 25 |
| 7 | 1-17 |
| 11 | 17-25 |
| 12 | 7-25 |
| 13 | 2-11 |
| 14 | 3-23 |
| 17 | 10-25 |
| 18 | 2, 3 |
| 20 | 22-25 |
| 21 | 2-18 |
| 21 | 20-25 |
| 22 | 4-25 |
| 23 | 2-11 |
| 24 | 9-25 |
| 25 | 2-5 |
| 26 | 7-25 |
| 27 | 2-20 |
| 27 | 24, 25 |
| 28 | 2-6 |
| 28 | 24, 25 |
| 29 | 2-23 |
| 30 | 4, 5 |
| 30 | 8-25 |
| 31 | 2-7 |
| 31 | 10-25 |
| 32 | 8-12 |
| 32 | 14, 15 |
| 33 | 19-25 |
| 34 | 2-4 |
| 34 | 25 |
| 35 | 2-21 |
| 36 | 11-25 |
| 37 | 3-13 |
| 38 | 7-25 |
| 39 | 2-10 |
| 39 | 15-25 |
| 40 | 2-6 |
| 42 | 4-15 |
| 44 | 6-25 |
| 45 | 2-7 |
| 45 | 9-25 |

REDACTED VERSION – PUBLICLY FILED

| 46 | 2-4 |
|----|-----|
| 46 | 7-25 |
| 52 | 13-25 |
| 53 | 2-17 |
| 53 | 22-25 |
| 54 | 2-12 |
| 55 | 14-17 |
| 55 | 19-20 |
| 55 | 22-25 |
| 56 | 2-25 |
| 57 | 2-25 |
| 58 | 2-4 |
| 58 | 6, 7 |
| 65 | 11-23 |
| 66 | 3 |
| 66 | 14-19 |
| 66 | 21-25 |
| 67 | 2, 3 |
| 67 | 13-25 |
| 68 | 2-11 |
| 71 | 2, 3 |
| 71 | 5-12 |
| 71 | 14 |
| 71 | 19-25 |
| 72 | 2, 3 |
| 72 | 7-16 |
| 72 | 18-25 |
| 73 | 2 |
| 73 | 6-15 |
| 77 | 9-11 |
| 78 | 11-18 |
| 78 | 22-24 |
| 80 | 22-25 |
| 81 | 2-7 |
| 81 | 9-11 |
| 82 | 15-18 |
| 82 | 20-25 |
| 83 | 2-5 |
| 83 | 7-10 |
| 83 | 12-20 |
| 83 | 22-25 |
| 84 | 2-6 |
| 84 | 9 |
| 86 | 3-8 |
| 86 | 12, 13 |

REDACTED VERSION – PUBLICLY FILED

| 86 | 15-21 |
|---|---|
| 86 | 23, 24 |
| 87 | 11-22 |
| 88 | 16-24 |
| 89 | 25 |
| 90 | 3-9 |
| 90 | 23-25 |
| 91 | 4-21 |
| 92 | 5-25 |
| 93 | 2-13 |
| 96 | 12-20 |
| 97 | 3-18 |
| 98 | 6-12 |
| 98 | 15-19 |
| 98 | 22-25 |
| 99 | 2-5 |
| 102 | 3-7 |
| 103 | 22-25 |
| 104 | 2-8 |
| 105 | 5-11 |
| 105 | 17-25 |
| 106 | 2-3 |
| 106 | 8-14 |
| 106 | 16-25 |
| 107 | 2-20 |
| 108 | 19-21 |
| 108 | 24, 25 |
| 109 | 2-20 |
| 109 | 23-25 |
| 110 | 2-4 |
| 110 | 7-19 |
| 110 | 24, 25 |
| 111 | 2-25 |
| 112 | 2-6 |
| 112 | 8, 9 |
| 115 | 3-25 |
| 116 | 2-25 |
| 117 | 2-24 |
| 122 | 5-25 |
| 123 | 2-16 |
| 125 | 4-18 |
| 125 | 24, 25 |
| 126 | 2-14 |
| 126 | 19-25 |
| 127 | 2-5 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 127 | 16-25 |
| 128 | 2-8 |
| 128 | 14-25 |
| 129 | 2-22 |
| 129 | 24, 25 |
| 130 | 2-4 |
| 130 | 6-23 |
| 131 | 8-25 |
| 132 | 2-23 |
| 133 | 11-25 |
| 134 | 2-6 |
| 136 | 21-25 |
| 137 | 2-17 |
| 137 | 25 |
| 138 | 2-5 |
| 139 | 14-25 |
| 140 | 2-17 |
| 141 | 2-21 |
| 141 | 23-25 |
| 142 | 2, 3 |
| 143 | 22-25 |
| 144 | 2-8 |
| 147 | 19-24 |
| 150 | 12-22 |
| 151 | 6-9 |
| 153 | 15-21 |
| 154 | 14-23 |
| 154 | 25 |
| 155 | 2-10 |
| 155 | 12-25 |
| 156 | 2-5 |
| 157 | 5-9 |
| 157 | 20-22 |
| 157 | 24 |
| 159 | 20-25 |
| 160 | 10-25 |
| 161 | 2-11 |
| 163 | 22-25 |
| 164 | 2-25 |
| 165 | 2 |
| 165 | 5-12 |
| 168 | 18-22 |
| 172 | 11-14 |
| 172 | 18-25 |
| 173 | 2-6 |

REDACTED VERSION – PUBLICLY FILED

| | |
|-----|-------|
| 173 | 9-12 |
| 173 | 14-16 |
| 175 | 8-25 |
| 176 | 2-13 |
| 176 | 15-25 |
| 177 | 3-13 |
| 177 | 15-25 |
| 178 | 2-7 |
| 178 | 9-25 |
| 179 | 2, 3 |
| 182 | 15-25 |
| 183 | 2-25 |
| 184 | 2-14 |
| 184 | 20-25 |
| 185 | 2, 3 |
| 185 | 6-20 |
| 193 | 24, 25 |
| 194 | 2-19 |
| 195 | 2-12 |
| 195 | 20-25 |
| 196 | 2-23 |
| 196 | 25 |
| 197 | 2-8 |
| 197 | 10-25 |
| 198 | 2-9 |
| 198 | 12-22 |
| 198 | 24, 25 |
| 199 | 2-25 |
| 200 | 2-14 |
| 200 | 17-21 |
| 204 | 3-25 |
| 205 | 2-11 |
| 205 | 13-15 |
| 210 | 7-11 |
| 210 | 13-25 |
| 211 | 2, 3 |
| 212 | 8-25 |
| 213 | 2-25 |
| 214 | 2-12 |
| 214 | 15 |
| 214 | 17-24 |
| 215 | 22-25 |
| 216 | 2-10 |
| 216 | 12-15 |
| 216 | 17-25 |

REDACTED VERSION – PUBLICLY FILED

| 217 | 2-8 |
|-----|------|
| 217 | 12-16 |
| 218 | 4-10 |
| 218 | 13-25 |
| 219 | 2-25 |
| 220 | 2-25 |
| 221 | 2-12 |
| 221 | 16-25 |
| 222 | 2-25 |
| 223 | 2-9 |
| 223 | 2-25 |
| 224 | 2-22 |
| 224 | 25 |
| 225 | 2 |
| 227 | 6-9 |
| 227 | 11-20 |
| 229 | 7-22 |
| 230 | 22-25 |
| 231 | 2-14 |
| 232 | 15-25 |
| 233 | 2-25 |
| 234 | 2-25 |
| 235 | 2-25 |
| 236 | 2-25 |
| 237 | 2-16 |
| 238 | 13-25 |
| 239 | 2-25 |
| 240 | 2-8 |
| 240 | 12-25 |
| 241 | 2-25 |
| 242 | 2-25 |
| 243 | 2-17 |
| 243 | 21-25 |
| 244 | 2-19 |
| 245 | 2-25 |
| 246 | 2 |
| 252 | 20-22 |
| 253 | 20-25 |
| 254 | 2-21 |
| 255 | 10-21 |
| 255 | 23-25 |
| 256 | 2-7 |
| 258 | 15-21 |
| 258 | 24, 25 |
| 259 | 2-6 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 260 | 20-25 |
| 261 | 2-25 |
| 262 | 2-21 |
| 262 | 23-25 |
| 263 | 2-25 |
| 264 | 2-25 |
| 265 | 2-7 |
| 265 | 9-16 |
| 265 | 19-25 |
| 266 | 2-21 |
| 270 | 6-25 |
| 271 | 2-14 |
| 273 | 3-23 |
| 275 | 3-25 |
| 276 | 2-7 |
| 276 | 17-21 |
| 277 | 10-11 |
| 277 | 14-22 |
| 278 | 5-20 |
| 278 | 22-25 |
| 279 | 2-25 |
| 280 | 2-12 |
| 280 | 14-25 |
| 281 | 2-7 |
| 281 | 10-25 |
| 282 | 2-19 |
| 283 | 13-25 |
| 285 | 3-25 |
| 286 | 2-25 |
| 287 | 2-10 |
| 287 | 14-25 |
| 288 | 2-11 |
| 289 | 15-29 |
| 289 | 21-25 |
| 290 | 23-25 |
| 291 | 2-4 |
| 291 | 15-25 |
| 292 | 2-25 |
| 293 | 6-25 |
| 294 | 2-25 |
| 295 | 2-25 |
| 296 | 2-25 |
| 297 | 2-7 |
| 298 | 5-25 |
| 299 | 2-18 |

REDACTED VERSION – PUBLICLY FILED

| 301 | 3-12 |
|-----|------|
| 301 | 23-25 |
| 302 | 2-13 |
| 302 | 15-25 |
| 303 | 2, 3 |
| 303 | 5-7 |
| 303 | 10-15 |
| 303 | 17-25 |
| 304 | 2-11 |
| 307 | 21-25 |
| 308 | 2-4 |
| 308 | 7-13 |
| 309 | 5-11 |
| 309 | 13-25 |
| 310 | 2, 3 |
| 310 | 5-8 |
|  |  |

REDACTED VERSION – PUBLICLY FILED

Deposition of Juergen Pfauth
August 7, 2007

| Page | Line(s) |
|------|---------|
| 5 | 6-25 |
| 6 | 2-5 |
| 6 | 22-25 |
| 7 | 1-25 |
| 8 | 1-25 |
| 9 | 1-4 |
| 9 | 18-25 |
| 10 | 1-3 |
| 10 | 10-17 |
| 10 | 20-25 |
| 11 | 1-14 |
| 11 | 19-25 |
| 12 | 1-4 |
| 12 | 7-25 |
| 13 | 1-25 |
| 15 | 1-20 |
| 15 | 23-25 |
| 16 | 2-25 |
| 17 | 1-25 |
| 18 | 1-25 |
| 19 | 1-25 |
| 20 | 2-6 |
| 20 | 8 |
| 20 | 10-14 |
| 23 | 12-18 |
| 23 | 20-25 |
| 24 | 1-25 |
| 25 | 1-25 |
| 26 | 1-5 |
| 26 | 12-15 |
| 26 | 22-24 |
| 27 | 1-13 |
| 27 | 16-25 |
| 28 | 1-3 |
| 28 | 7-22 |
| 29 | 1-4 |
| 31 | 7-10 |
| 31 | 15-19 |
| 31 | 22-25 |
| 32 | 1-25 |

REDACTED VERSION – PUBLICLY FILED

| 33 | 1-25 |
|----|------|
| 34 | 1-10 |
| 34 | 21-25 |
| 35 | 1-25 |
| 36 | 1-11 |
| 41 | 4-25 |
| 42 | 1-6 |
| 42 | 8-17 |
| 42 | 23, 24 |
| 43 | 1-25 |
| 44 | 1-23 |
| 44 | 25 |
| 45 | 2-25 |
| 46 | 1-25 |
| 47 | 1-4 |
| 47 | 12-16 |
| 47 | 18, 19 |
| 47 | 21 |
| 47 | 23, 24 |
| 48 | 1-8 |
| 48 | 11, 12 |
| 48 | 14-22 |
| 48 | 24 |
| 49 | 1-4 |
| 49 | 6-8 |
| 49 | 10-16 |
| 49 | 18 |
| 49 | 20-22 |
| 49 | 24, 25 |
| 50 | 1-25 |
| 51 | 1-25 |
| 52 | 1-25 |
| 53 | 2, 3 |
| 53 | 5-11 |
| 53 | 15-25 |
| 54 | 1-25 |
| 55 | 1-25 |
| 56 | 1-24 |
| 91 | 9-25 |
| 92 | 1 |
| 127 | 2-12 |
| 127 | 14-18 |
| 127 | 20-25 |
| 128 | 1-25 |
| 129 | 1-25 |

REDACTED VERSION – PUBLICLY FILED

| 130 | 1-7 |
| --- | --- |

INDS02 JADAMS 973808v1

3

REDACTED VERSION – PUBLICLY FILED

Deposition of Perry Rogers
November 7, 2007

| Page | Line(s) |
|------|---------|
| 9 | 15-25 |
| 10 | 1-16 |
| 13 | 10-25 |
| 14 | 1-25 |
| 15 | 1-25 |
| 16 | 1, 2 |
| 18 | 15-25 |
| 19 | 1-25 |
| 20 | 1 |
| 20 | 7-21 |
| 20 | 23, 24 |
| 21 | 1-12 |
| 21 | 14 |
| 21 | 17-25 |
| 22 | 1-25 |
| 23 | 1-25 |
| 24 | 1-10 |
| 25 | 14-18 |
| 25 | 22, 23 |
| 26 | 1-25 |
| 27 | 1-25 |
| 28 | 1-25 |
| 29 | 1-6 |
| 29 | 19-25 |
| 30 | 1-25 |
| 31 | 1-9 |
| 34 | 24, 25 |
| 35 | 1-9 |
| 38 | 9-25 |
| 39 | 1-13 |
| 40 | 3-8 |
| 41 | 23-25 |
| 42 | 1-25 |
| 43 | 1-25 |
| 44 | 1-24 |
| 45 | 15-25 |
| 46 | 1-18 |
| 47 | 3-9 |
| 47 | 11-13 |
| 47 | 15-25 |
| 48 | 1-22 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 49 | 17-25 |
| 50 | 1-25 |
| 51 | 1-23 |
| 52 | 14-20 |
| 53 | 7-11 |
| 53 | 13-16 |
| 53 | 18-25 |
| 54 | 1-6 |
| 54 | 9, 10 |
| 54 | 12-17 |
| 54 | 20, 21 |
| 54 | 23-25 |
| 55 | 1-16 |
| 55 | 24, 25 |
| 56 | 1-8 |
| 56 | 21-25 |
| 57 | 1-3 |
| 57 | 6-9 |
| 57 | 12-15 |
| 57 | 18-20 |
| 57 | 22-25 |
| 58 | 1-4 |
| 58 | 10-19 |
| 58 | 22-24 |
| 59 | 1-18 |
| 59 | 20 |
| 59 | 22-25 |
| 60 | 1-23 |
| 61 | 2-14 |
| 61 | 17 |
| 61 | 19-25 |
| 62 | 1-22 |
| 62 | 25 |
| 63 | 8-12 |
| 63 | 14-16 |
| 63 | 19-25 |
| 64 | 1-25 |
| 65 | 1-25 |
| 66 | 1-25 |
| 67 | 1-6 |
| 67 | 9-20 |
| 67 | 22 |
| 68 | 10-25 |
| 69 | 1-8 |
| 69 | 10, 11 |

| | |
|---|---|
| 69 | 13-17 |
| 69 | 19-21 |
| 69 | 23-25 |
| 70 | 1-25 |
| 71 | 1-7 |
| 71 | 9-22 |
| 72 | 9-15 |
| 72 | 17 |
| 72 | 19-24 |
| 73 | 1-19 |
| 73 | 22-25 |
| 74 | 1-17 |
| 74 | 21-25 |
| 75 | 2-9 |
| 75 | 12-25 |
| 76 | 1-25 |
| 77 | 1-25 |
| 78 | 1-25 |
| 79 | 1-17 |
| 80 | 4-11 |
| 80 | 14-17 |
| 81 | 1-7 |
| 81 | 18-25 |
| 82 | 1-23 |
| 83 | 17-25 |
| 84 | 1 |
| 84 | 25 |
| 85 | 1-25 |
| 86 | 1-13 |
| 86 | 17-25 |
| 87 | 1-25 |
| 88 | 1-25 |
| 89 | 1-25 |
| 90 | 1-15 |
| 90 | 17-25 |
| 91 | 1-24 |
| 92 | 1 |
| 92 | 3-17 |
| 93 | 6-25 |
| 94 | 1-4 |
| 94 | 10-16 |
| 94 | 19 |
| 94 | 21-25 |
| 95 | 1, 2 |
| 96 | 10-25 |

REDACTED VERSION – PUBLICLY FILED

| 97 | 1-17 |
|---|---|
| 97 | 20 |
| 97 | 22-25 |
| 98 | 10-13 |
| 98 | 15-21 |
| 99 | 1-25 |
| 100 | 1-15 |
| 102 | 7-18 |
| 103 | 12-20 |
| 103 | 22-25 |
| 104 | 5-11 |
| 104 | 15-25 |
| 105 | 1-5 |
| 105 | 7-25 |
| 106 | 1-7 |
| 106 | 17-25 |
| 107 | 1-4 |
| 107 | 6-25 |
| 108 | 1-16 |
| 109 | 13-25 |
| 110 | 1-3 |
| 111 | 15-25 |
| 112 | 1 |
| 112 | 18-21 |
| 113 | 14-25 |
| 114 | 1-22 |
| 115 | 5-23 |
| 116 | 1 |
| 116 | 3-17 |
| 118 | 3-16 |
| 118 | 21-25 |
| 119 | 1-25 |
| 120 | 1-25 |
| 121 | 1-23 |
| 126 | 19-23 |
| 126 | 25 |
| 127 | 1-3 |
| 127 | 9-15 |
| 128 | 2-5 |
| 128 | 24, 25 |
| 129 | 1-24 |
| 133 | 10-17 |
| 135 | 3-17 |
| 137 | 2-8 |
| 137 | 10 |

| | |
|---|---|
| 137 | 12 |
| 137 | 14-25 |
| 138 | 1-25 |
| 139 | 1-25 |
| 140 | 1-15 |
| 140 | 18 |
| 140 | 20-25 |
| 141 | 6-25 |
| 142 | 1-25 |
| 143 | 1-9 |
| 144 | 10-25 |
| 145 | 1-3 |
| 145 | 9-23 |
| 146 | 12-19 |
| 146 | 21-25 |
| 147 | 1-5 |
| 147 | 16-25 |
| 148 | 1, 2 |
| 148 | 8-25 |
| 149 | 1-25 |
| 150 | 1-20 |
| 151 | 14-18 |
| 152 | 13-15 |
| 152 | 18-21 |
| 153 | 6-11 |
| 153 | 19-25 |
| 154 | 1-25 |
| 155 | 1-8 |
| 155 | 15-18 |
| 155 | 21-24 |
| 156 | 1-14 |
| 157 | 14-25 |
| 158 | 1-22 |
| 159 | 6-17 |
| 159 | 20-25 |
| 160 | 1-25 |
| 161 | 1-7 |
| 162 | 5-11 |
| 162 | 13 |
| 162 | 15-20 |
| 163 | 1-25 |
| 164 | 1-9 |
| 164 | 12-14 |
| 164 | 16-25 |
| 165 | 8-14 |

| 165 | 17-25 |
| 166 | 1-22 |
| 168 | 8-24 |
| 169 | 22-25 |
| 170 | 1-14 |
| 170 | 24, 25 |
| 171 | 3 |
| 171 | 6-18 |
| 172 | 1-9 |
| 172 | 12-25 |
| 173 | 1, 2 |
| 173 | 12-25 |
| 174 | 1-25 |
| 175 | 1-15 |
| 175 | 21-25 |
| 176 | 3-21 |
| 176 | 24, 25 |
| 177 | 1-25 |
| 178 | 1-20 |
| 179 | 8-12 |
| 180 | 23-25 |
| 181 | 1 |
| 181 | 4-6 |
| 181 | 9-15 |
| 181 | 17, 18 |
| 181 | 20 |
| 181 | 22-25 |
| 182 | 1, 2 |
| 182 | 4, 5 |
| 182 | 23-25 |
| 183 | 1-8 |
| 183 | 10-25 |
| 184 | 1-6 |
| 186 | 1-25 |
| 187 | 1-12 |
| 187 | 16-25 |
| 188 | 1-7 |
| 188 | 23-25 |
| 189 | 1, 2 |
| 189 | 4-8 |
| 189 | 11 |
| 189 | 13-22 |
| 189 | 24, 25 |
| 190 | 1 |
| 190 | 3-7 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 190 | 9-21 |
| 190 | 23-25 |
| 191 | 1-9 |
| 191 | 13-25 |
| 192 | 1-18 |
| 192 | 21-25 |
| 193 | 1-5 |
| 193 | 10 |
| 193 | 12-18 |
| 193 | 21 |
| 193 | 24 |
| 194 | 1-5 |
| 194 | 7 |
| 194 | 10-16 |
| 195 | 19 |
| 195 | 21-25 |
| 196 | 1-11 |
| 196 | 15-19 |
| 196 | 21-25 |
| 197 | 1 |
| 197 | 5 |
| 197 | 7-11 |
| 197 | 13-15 |
| 197 | 18-25 |
| 198 | 1-15 |
| 199 | 16-22 |
| 202 | 14-18 |
| 202 | 22 |
| 202 | 24, 25 |
| 203 | 1-21 |
| 204 | 4-25 |
| 205 | 1-20 |
| 205 | 23 |
| 205 | 25 |
| 206 | 1-23 |
| 207 | 25 |
| 208 | 1 |
| 208 | 4-7 |
| 208 | 11-25 |
| 209 | 1 |
| 209 | 3-25 |
| 210 | 1-17 |
| 210 | 20 |
| 210 | 22-25 |
| 211 | 1-14 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 211 | 16-20 |
| 213 | 11-18 |
| 214 | 5-25 |
| 215 | 1-11 |
| 215 | 18-22 |
| 215 | 24, 25 |
| 216 | 1-25 |
| 217 | 1-25 |
| 218 | 1-4 |
| 218 | 6-17 |
| 219 | 13-25 |
| 220 | 1-25 |
| 221 | 1-16 |
| 221 | 19 |
| 221 | 22 |
| 221 | 24, 25 |
| 222 | 1-5 |
| 222 | 13-25 |
| 223 | 1-16 |
| 224 | 22-25 |
| 225 | 4, 5 |
| 225 | 7-23 |
| 226 | 20-25 |
| 227 | 1 |
| 227 | 6-25 |
| 228 | 1-25 |
| 229 | 1-25 |
| 230 | 5-17 |
| 230 | 21-25 |
| 231 | 1-25 |
| 232 | 1-23 |
| 233 | 2-5 |
| 233 | 7-15 |
| 233 | 17 |
| 233 | 20-25 |
| 234 | 1-4 |
| 234 | 6-12 |
| 234 | 14 |
| 234 | 15-25 |
| 235 | 1-17 |
| 235 | 20-25 |
| 236 | 1-8 |
| 236 | 11-25 |
| 237 | 1-25 |
| 238 | 1-25 |

REDACTED VERSION – PUBLICLY FILED

| 239 | 1, 2 |
|-----|------|
| 241 | 25 |
| 242 | 1-4 |
| 242 | 7-25 |
| 243 | 1-25 |
| 244 | 1-5 |
| 245 | 11-15 |
| 245 | 19-25 |
| 246 | 1-25 |
| 247 | 1-15 |
| 248 | 6-25 |
| 250 | 11-24 |
| 251 | 14-25 |
| 252 | 1-24 |
| 254 | 6-13 |
| 254 | 23-25 |
| 255 | 1 |
| 255 | 4-8 |
| 256 | 13-25 |
| 257 | 22-25 |
| 258 | 1-21 |
| 258 | 25 |
| 259 | 1-12 |
| 259 | 14, 15 |
| 259 | 17-19 |
| 259 | 21-25 |
| 260 | 1 |
| 262 | 7-15 |
| 264 | 21-25 |
| 265 | 1-25 |
| 267 | 3-25 |
| 268 | 1-25 |
| 269 | 1-25 |
| 270 | 1-17 |
| 275 | 1-10 |
| 280 | 21-25 |
| 281 | 1-25 |
| 282 | 1-8 |
| 284 | 14-23 |
| 285 | 13-16 |
| 285 | 19-21 |
| 286 | 7-25 |
| 287 | 1-25 |
| 288 | 1-16 |

INDS02 JADAMS 973809v1

REDACTED VERSION – PUBLICLY FILED

Deposition of Andre Correa Da Silva
December 12, 2007

| Page | Line(s) |
|------|---------|
| 7 | 7-24 |
| 8 | 4-24 |
| 9 | 2-6 |
| 10 | 2-3 |
| 10 | 6-10 |
| 11 | 2-10 |
| 13 | 18-25 |
| 14 | 2-11 |
| 14 | 13-19 |
| 17 | 13-20 |
| 17 | 24-25 |
| 18 | 1-10 |
| 19 | 19-25 |
| 20 | 21-22 |
| 20 | 24-25 |
| 21 | 2-14 |
| 21 | 18-25 |
| 22 | 2-3 |
| 22 | 17-20 |
| 22 | 25 |
| 23 | 1-22 |
| 25 | 20-25 |
| 26 | 2-4 |
| 26 | 18-25 |
| 27 | 2-10 |
| 27 | 13-25 |
| 28 | 2-3 |
| 29 | 22-25 |
| 30 | 2-24 |
| 31 | 4-12 |
| 33 | 19-20 |
| 33 | 22-25 |
| 34 | 2-9 |
| 35 | 18-25 |
| 36 | 2-6 |
| 36 | 10-25 |
| 37 | 1-25 |
| 38 | 2-4 |
| 38 | 23-25 |
| 39 | 2-25 |
| 40 | 2-17 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 41 | 25 |
| 42 | 2-4 |
| 42 | 7-8 |
| 42 | 10 |
| 42 | 22 |
| 45 | 3-14 |
| 46 | 4-25 |
| 47 | 2-12 |
| 47 | 23-25 |
| 48 | 2-4 |
| 48 | 7-14 |
| 48 | 16-19 |
| 50 | 3-7 |
| 50 | 9-15 |
| 51 | 16-25 |
| 52 | 1-4 |
| 52 | 20-25 |
| 52 | 20-25 |
| 53 | 2-20 |
| 54 | 14-25 |
| 55 | 5-25 |
| 56 | 2-18 |
| 56 | 20-21 |
| 57 | 4-8 |
| 60 | 3-25 |
| 61 | 2-9 |
| 61 | 12-23 |
| 61 | 25 |
| 62 | 2-25 |
| 63 | 2-18 |
| 63 | 25 |
| 64 | 2 |
| 64 | 5-11 |
| 64 | 17-25 |
| 65 | 10-25 |
| 66 | 2-24 |
| 67 | 4-21 |
| 67 | 23-25 |
| 68 | 2 |
| 28 | 6-25 |
| 69 | 2-25 |
| 70 | 2-23 |
| 71 | 2-7 |
| 71 | 10-21 |
| 72 | 10-25 |

| | |
|---|---|
| 73 | 6-9 |
| 75 | 4-5 |
| 75 | 8-25 |
| 76 | 1-3 |
| 76 | 5-12 |
| 76 | 15-16 |
| 76 | 20-22 |
| 76 | 24-25 |
| 77 | 1-25 |
| 78 | 1-11 |
| 78 | 21-25 |
| 79 | 1-13 |
| 80 | 1-5 |
| 82 | 12-25 |
| 83 | 1-25 |
| 84 | 1-11 |
| 84 | 14-16 |
| 84 | 19 |
| 85 | 1-10 |
| 85 | 15-25 |
| 86 | 1-3 |
| 86 | 7-25 |
| 87 | 1-8 |
| 87 | 20-25 |
| 88 | 1-3 |
| 88 | 6-14 |
| 88 | 21-23 |
| 90 | 3-25 |
| 91 | 2-5 |
| 91 | 9-12 |
| 91 | 15-25 |
| 92 | 15-21 |
| 93 | 14-25 |
| 94 | 15-25 |
| 95 | 2-16 |
| 95 | 19-25 |
| 96 | 1-8 |
| 96 | 25 |
| 97 | 1-6 |
| 98 | 2-4 |
| 98 | 10-25 |
| 99 | 1-12 |
| 99 | 25 |
| 100 | 1-14 |
| 101 | 12-25 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 102 | 1-25 |
| 103 | 6-8 |
| 104 | 19-25 |
| 105 | 1-14 |
| 105 | 17-22 |
| 105 | 25 |
| 106 | 17-20 |
| 106 | 23-25 |
| 107 | 1-25 |
| 108 | 1-5 |
| 108 | 13-24 |
| 109 | 6-8 |
| 109 | 21-25 |
| 110 | 20-25 |
| 111 | 1-8 |
| 111 | 12-25 |
| 113 | 11-25 |
| 114 | 1-21 |
| 114 | 24-25 |
| 115 | 1-5 |
| 115 | 22-25 |
| 116 | 1-8 |
| 116 | 10-25 |
| 117 | 1-25 |
| 118 | 14-25 |
| 119 | 1-3 |
| 119 | 5-6 |
| 120 | 5-16 |
| 120 | 19-25 |
| 121 | 1-25 |
| 122 | 1-25 |
| 123 | 1-25 |
| 124 | 1-24 |
| 125 | 18-25 |
| 126 | 1-9 |
| 126 | 12-14 |
| 126 | 22-25 |
| 127 | 1-4 |
| 127 | 8-23 |
| 128 | 13-25 |
| 129 | 1-25 |
| 130 | 1-3 |
| 130 | 6 |
| 132 | 5-25 |
| 133 | 1-23 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 134 | 9-13 |
| 134 | 17-25 |
| 135 | 1-7 |
| 138 | 4-9 |
| 138 | 11-20 |
| 139 | 10-16 |
| 139 | 19-23 |
| 140 | 2-10 |
| 140 | 13-25 |
| 141 | 1-8 |
| 141 | 11-16 |
| 141 | 19-22 |
| 142 | 6-19 |
| 142 | 21 |
| 143 | 14-25 |
| 144 | 1-5 |
| 146 | 15-25 |
| 147 | 1-3 |
| 147 | 6-15 |
| 147 | 21-25 |
| 148 | 1-25 |
| 149 | 1-2 |
| 149 | 5-14 |
| 149 | 16-19 |
| 149 | 22-25 |
| 150 | 1-8 |
| 150 | 11-25 |
| 151 | 1-2 |
| 152 | 7-9 |
| 152 | 12-25 |
| 153 | 1-20 |
| 153 | 23-25 |
| 154 | 1-13 |
| 154 | 15-25 |
| 155 | 1-6 |
| 155 | 11-25 |
| 156 | 1-15 |
| 157 | 15-22 |
| 158 | 6-11 |
| 158 | 13-25 |
| 159 | 1-3 |
| 159 | 6-12 |
| 159 | 15-19 |
| 159 | 23-25 |
| 161 | 4-14 |

REDACTED VERSION – PUBLICLY FILED

| 163 | 1-3 |
|-----|-----|
| 163 | 6-25 |
| 164 | 7-12 |
| 164 | 15-25 |
| 165 | 13-25 |
| 166 | 1-25 |
| 167 | 1-8 |
| 167 | 15-25 |
| 168 | 1-12 |
| 168 | 14 |
| 170 | 10-25 |
| 171 | 1-11 |
| 171 | 14-16 |
| 173 | 4-11 |
| 173 | 13-25 |
| 174 | 1-25 |
| 175 | 1-4 |
| 176 | 16-25 |
| 177 | 1-5 |
| 182 | 1-11 |
| 182 | 16-23 |
| 186 | 3-25 |
| 187 | 7-12 |
| 187 | 17-25 |
| 188 | 1-23 |
| 189 | 13-25 |
| 190 | 17-25 |
| 191 | 1-9 |
| 191 | 11-17 |
| 192 | 1-5 |
| 192 | 7-21 |
| 192 | 25 |
| 193 | 1-2 |
| 193 | 8-17 |
| 193 | 22-25 |
| 194 | 1-17 |
| 194 | 22-25 |
| 195 | 1-9 |
| 195 | 21-25 |
| 196 | 1-4 |
| 196 | 6-11 |
| 197 | 1-8 |
| 199 | 18-25 |
| 200 | 1-6 |
| 200 | 8-22 |

| 201 | 19-20 |
|-----|-------|
| 202 | 3-9 |
| 202 | 12 |
| 202 | 18-23 |
| 203 | 6-7 |
| 203 | 10-11 |
| 203 | 22-25 |
| 204 | 1-25 |
| 205 | 1-19 |
| 207 | 8-16 |
| 208 | 19-25 |
| 209 | 1-25 |
| 210 | 1-3 |
| 210 | 6-11 |
| 210 | 14-25 |
| 211 | 1-24 |
| 213 | 10-25 |
| 214 | 1-11 |
| 214 | 14-20 |
| 214 | 23 |
| 216 | 10-15 |
| 216 | 19-25 |
| 217 | 3-8 |
| 217 | 11-21 |
| 220 | 9-25 |
| 221 | 1-25 |
| 223 | 9-20 |
| 223 | 22-25 |
| 224 | 1-5 |
| 224 | 8-11 |
| 224 | 14-18 |
| 224 | 21-24 |
| 225 | 4-6 |
| 225 | 8-19 |
| 225 | 22 |
| 226 | 7-15 |
| 226 | 19 |
| 228 | 5-20 |
| 229 | 16-25 |
| 230 | 1-3 |
| 230 | 8-25 |
| 231 | 1-25 |
| 232 | 1-7 |
| 234 | 3-23 |
| 236 | 21-25 |

REDACTED VERSION – PUBLICLY FILED

| 237 | 1-25 |
|-----|------|
| 238 | 1-4 |
| 238 | 7-13 |
| 238 | 16-25 |
| 239 | 2-12 |
| 240 | 11-14 |
| 240 | 17-22 |
| 242 | 4-25 |
| 243 | 6-25 |
| 244 | 1-17 |
| 244 | 20-25 |
| 245 | 8-12 |
| 248 | 9-10 |
| 248 | 14-25 |
| 249 | 1-4 |
| 250 | 4-25 |
| 251 | 1-2 |
| 253 | 7-25 |
| 254 | 9-25 |
| 255 | 1-22 |
| 256 | 1-16 |
| 256 | 19 |
| 261 | 7-25 |
| 262 | 1-3 |
| 262 | 6-8 |
| 263 | 6-13 |
| 263 | 17-23 |
| 264 | 3-5 |
| 264 | 11-25 |
| 265 | 1-24 |
| 265 | 1-25 |
| 268 | 1-8 |
| 268 | 11-25 |
| 269 | 1-10 |
| 269 | 13-25 |
| 270 | 1-2 |
| 272 | 8-25 |
| 273 | 1-25 |
| 274 | 1-4 |
| 274 | 13-22 |
| 275 | 1-25 |
| 276 | 1-13 |
| 276 | 18-25 |
| 277 | 1-15 |
| 277 | 18-25 |

REDACTED VERSION – PUBLICLY FILED

| 278 | 14-21 |
|-----|-------|
| 279 | 4-24 |
| 280 | 7-10 |
| 281 | 2-25 |
| 284 | 3-14 |
| 284 | 17-25 |
| 285 | 1-13 |
| 288 | 5-18 |
| 288 | 20-25 |
| 289 | 1-6 |

INDS02 JADAMS 973477v1

REDACTED VERSION – PUBLICLY FILED

Deposition of Jonathan Walker
February 15, 2008

| Page | Line(s) |
|------|---------|
| 260 | 8-25 |
| 261 | 1-16 |
| 261 | 19-25 |
| 262 | 1-16 |
| 263 | 8-19 |
| 263 | 23-25 |
| 264 | 1-25 |
| 265 | 1-25 |
| 266 | 1-25 |
| 267 | 1-12 |
| 267 | 15-24 |
| 269 | 22-25 |
| 270 | 4-25 |
| 271 | 1-25 |
| 272 | 1-23 |
| 273 | 2-3 |
| 273 | 17-25 |
| 274 | 2-19 |
| 275 | 15-25 |
| 276 | 2-25 |
| 278 | 14-25 |
| 279 | 7-25 |
| 280 | 2-3 |
| 281 | 8-25 |
| 282 | 2-25 |
| 283 | 2-25 |
| 284 | 2-14 |
| 285 | 10-25 |
| 286 | 1-25 |
| 287 | 1-7 |
| 287 | 10-25 |
| 288 | 1-14 |
| 289 | 2-17 |
| 289 | 20-25 |
| 290 | 1-25 |
| 291 | 1-25 |
| 292 | 1-8 |
| 292 | 17-21 |
| 292 | 24-25 |
| 293 | 1-6 |
| 293 | 9-19 |
| 294 | 16-20 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
| --- | --- |
| 294 | line 25 |
| 295 | 1-2 |
| 295 | 18-25 |
| 296 | 1-25 |
| 297 | 1-12 |
| 297 | 18-25 |
| 298 | 1-25 |
| 299 | 1-25 |
| 300 | 1-25 |
| 301 | 1-25 |
| 302 | 1-3 |
| 302 | 6-15 |
| 302 | 20-25 |
| 303 | 1-6 |
| 303 | 9-25 |
| 304 | 4-25 |
| 305 | 1-25 |
| 306 | 2-25 |
| 307 | 1-20 |
| 308 | 20-25 |
| 309 | 2-7 |
| 309 | 18-25 |
| 310 | 1-25 |
| 311 | 1-25 |
| 312 | 1-22 |
| 314 | 4-25 |
| 315 | 2 |
| 315 | 5-24 |
| 316 | 3-25 |
| 317 | 1-25 |
| 318 | 1-5 |
| 318 | 8-25 |
| 319 | 1-25 |
| 320 | 1-24 |
| 321 | 3-22 |
| 322 | 1-8 |
| 322 | 11-19 |
| 322 | 22-25 |
| 323 | 1-25 |
| 324 | 1-13 |
| 324 | 18-25 |
| 325 | 1-25 |
| 326 | 1-7 |
| 326 | 10-25 |
| 327 | 1-13 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 327 | 16-18 |
| 329 | 10-25 |
| 330 | 1-11 |
| 330 | 14-18 |
| 331 | 14-25 |
| 332 | 1-8 |
| 332 | 11-25 |
| 333 | 1-23 |
| 334 | 12-25 |
| 335 | 1-18 |
| 335 | 21-25 |
| 336 | 1-25 |
| 337 | 1-25 |
| 338 | 1-12 |
| 338 | 24-25 |
| 339 | 1-16 |
| 339 | 19-25 |
| 340 | 1-25 |
| 341 | 1-25 |
| 342 | 1-7 |
| 342 | 10-25 |
| 343 | 1-25 |
| 344 | 1-25 |
| 345 | 1-25 |
| 346 | 1-8 |
| 346 | 11-13 |
| 346 | 16-25 |
| 347 | 1-14 |
| 347 | 17-25 |
| 348 | 1-25 |
| 349 | 1-2 |
| 349 | 5-13 |
| 349 | 16-25 |
| 350 | 1-2 |
| 350 | 5-25 |
| 351 | 1-10 |
| 354 | 19-23 |
| 355 | 2-25 |
| 357 | 21-25 |
| 358 | 1-6 |
| 359 | 2-25 |
| 360 | 1-13 |
| 361 | 10-15 |
| 365 | 9-25 |
| 366 | 1-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 367 | 1-25 |
| 368 | 1-9 |
| 368 | 14-25 |
| 369 | 1-25 |
| 370 | 1-19 |
| 373 | 16-25 |
| 374 | 1-25 |
| 375 | 1-3 |
| 375 | 6-9 |
| 376 | 7-25 |
| 377 | 1-14 |
| 379 | 3-14 |
| 379 | 17-18 |
| 384 | 8-24 |
| 385 | 20-25 |
| 386 | 1-25 |
| 387 | 1-3 |
| 387 | 18-25 |
| 388 | 1-4 |
| 389 | 12-19 |
| 390 | 2-25 |
| 392 | 1-9 |
| 393 | 12-25 |
| 394 | 2 |
| 396 | 15-25 |
| 397 | 1-22 |
| 398 | 1-25 |
| 399 | 1-15 |
| 399 | 18-25 |
| 400 | 1-14 |
| 400 | 17-25 |
| 401 | 1-19 |
| 401 | 22-25 |
| 402 | 1-25 |
| 403 | 1-6 |
| 403 | 9-13 |
| 406 | 2-20 |
| 408 | 22-25 |
| 409 | 1-17 |
| 412 | 23-25 |
| 413 | 1-19 |

REDACTED VERSION – PUBLICLY FILED

Deposition of Jonathan Walker
February 14, 2008

| Page | Line(s) |
|------|---------|
| 4 | 8-25 |
| 5 | 1-21 |
| 6 | 2-11 |
| 7 | 8-25 |
| 8 | 1-7 |
| 8 | 24-25 |
| 9 | 2-21 |
| 11 | 6-25 |
| 12 | 1-25 |
| 13 | 1-13 |
| 13 | 16-18 |
| 14 | 10-25 |
| 15 | 1-25 |
| 16 | 1-21 |
| 18 | 6-25 |
| 19 | 1-4 |
| 19 | 16-25 |
| 20 | 2-25 |
| 21 | 1-25 |
| 22 | 1-25 |
| 23 | 1-25 |
| 24 | 1-25 |
| 25 | 1-6 |
| 26 | 3-25 |
| 27 | 2-19 |
| 27 | 24-25 |
| 28 | 1-16 |
| 29 | 6-25 |
| 30 | 2-25 |
| 31 | 1-25 |
| 32 | 1-25 |
| 33 | 1-25 |
| 34 | 1-10 |
| 34 | 13-14 |
| 35 | 7-25 |
| 36 | 1-3 |
| 36 | 6-20 |
| 37 | 12-25 |
| 38 | 1-3 |
| 38 | 6-25 |
| 39 | 1-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 40 | 1-9 |
| 40 | 21-25 |
| 41 | 1-25 |
| 42 | 1-25 |
| 43 | 1-25 |
| 44 | 6-11 |
| 44 | 14-25 |
| 45 | 2-4 |
| 45 | 8-25 |
| 46 | 2-25 |
| 47 | 1-25 |
| 48 | 1-25 |
| 49 | 1-25 |
| 50 | 1-18 |
| 50 | 21-25 |
| 51 | 1-23 |
| 52 | 2-25 |
| 53 | 1-24 |
| 54 | 3-25 |
| 55 | 1-12 |
| 55 | 15-25 |
| 56 | 1-7 |
| 56 | 10-25 |
| 57 | 1-18 |
| 57 | 20-25 |
| 58 | 12-25 |
| 59 | 1-6 |
| 59 | 10-25 |
| 60 | 1-25 |
| 61 | 1-25 |
| 62 | 1-25 |
| 63 | 1-7 |
| 65 | 6-19 |
| 65 | 22-25 |
| 66 | 1-3 |
| 66 | 6-14 |
| 67 | 13-18 |
| 67 | 21-25 |
| 68 | 1-7 |
| 68 | 22-25 |
| 69 | 1-25 |
| 70 | 1-25 |
| 71 | 1-25 |
| 72 | 1-24 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 73 | 3-8 |
| 73 | 10-25 |
| 74 | 1-25 |
| 75 | 1-7 |
| 78 | 23-25 |
| 79 | 1-25 |
| 80 | 6-15 |
| 84 | 21-25 |
| 85 | 2-3 |
| 85 | 6-25 |
| 86 | 1-8 |
| 87 | 9-25 |
| 88 | 1-14 |
| 92 | 11-25 |
| 93 | 1-25 |
| 94 | 1-25 |
| 95 | 1-8 |
| 95 | 11-25 |
| 97 | 20-25 |
| 98 | 1-25 |
| 99 | 1-25 |
| 99 | 1-25 |
| 100 | 1-25 |
| 101 | 1-25 |
| 102 | 1-25 |
| 103 | 1-18 |
| 104 | 14-22 |
| 105 | 2-20 |
| 105 | 23-25 |
| 106 | 2-24 |
| 110 | 10-25 |
| 108 | 1-25 |
| 109 | 1-18 |
| 109 | 21-25 |
| 110 | 3-25 |
| 111 | 1-13 |
| 111 | 19-25 |
| 112 | 1-2 |
| 114 | 15-25 |
| 115 | 1-23 |
| 119 | 8-12 |
| 119 | 15-25 |
| 120 | 1-25 |
| 121 | 1-4 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 121 | 7-25 |
| 122 | 1-3 |
| 122 | 14-23 |
| 125 | 17-25 |
| 127 | 18-25 |
| 128 | 1-25 |
| 131 | 4-15 |
| 133 | 5-25 |
| 134 | 2-16 |
| 136 | 8-13 |
| 136 | 16-25 |
| 137 | 1-6 |
| 137 | 10-25 |
| 138 | 1-8 |
| 138 | 11-24 |
| 139 | 3-7 |
| 139 | 13-25 |
| 140 | 1-8 |
| 142 | 12-20 |
| 144 | 2-22 |
| 145 | 5-25 |
| 146 | 1-12 |
| 146 | 19-25 |
| 147 | 1-10 |
| 147 | 14-25 |
| 148 | 1-8 |
| 148 | 16-25 |
| 149 | 1-25 |
| 150 | 1-19 |
| 150 | 24-25 |
| 161 | 1-4 |
| 151 | 15-25 |
| 152 | 1-25 |
| 153 | 1-25 |
| 154 | 1-25 |
| 155 | 1-13 |
| 155 | 16-25 |
| 156 | 4-25 |
| 157 | 1-22 |
| 157 | 25 |
| 158 | 1-25 |
| 159 | 1-4 |
| 159 | 6-25 |
| 160 | 1-13 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 161 | 13-25 |
| 162 | 1-25 |
| 163 | 1-25 |
| 164 | 1-3 |
| 164 | 6-10 |
| 164 | 15-25 |
| 165 | 1-25 |
| 166 | 1-25 |
| 167 | 1-6 |
| 167 | 12-18 |
| 168 | 10-16 |
| 168 | 25 |
| 169 | 1-25 |
| 170 | 1-9 |
| 170 | 12-18 |
| 171 | 25 |
| 172 | 1-19 |
| 173 | 3-19 |
| 175 | 4-16 |
| 176 | 5-20 |
| 176 | 23-25 |
| 177 | 1-25 |
| 178 | 1-19 |
| 180 | 15-25 |
| 181 | 1-11 |
| 181 | 14-25 |
| 182 | 1-13 |
| 181 | 22-25 |
| 183 | 1-15 |
| 183 | 18-25 |
| 184 | 1-25 |
| 185 | 1-25 |
| 186 | 1-10 |
| 187 | 2-25 |
| 188 | 1-25 |
| 189 | 1-10 |
| 190 | 13-25 |
| 191 | 1-20 |
| 192 | 22-25 |
| 193 | 1-11 |
| 194 | 13-21 |
| 194 | 24-25 |
| 195 | 1-2 |
| 196 | 19-25 |

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 197 | 1-25 |
| 198 | 1-15 |
| 204 | 6-13 |
| 204 | 16-25 |
| 205 | 1-17 |
| 206 | 11-19 |
| 208 | 21-24 |
| 209 | 3-25 |
| 210 | 1-3 |
| 211 | 19-25 |
| 212 | 1-25 |
| 213 | 1-5 |
| 213 | 8-20 |
| 213 | 23-25 |
| 214 | 1-10 |
| 214 | 13-21 |
| 214 | 24-25 |
| 215 | 1-25 |
| 216 | 1-25 |
| 217 | 9-25 |
| 218 | 1-25 |
| 219 | 1-8 |

INDS02 HCOHEN 973952v1

REDACTED VERSION – PUBLICLY FILED

30b6 Deposition of Mark Young
July 11, 2007

| Page | Line(s) |
|------|---------|
| 10 | 3-25 |
| 11 | 1-25 |
| 12 | 1-19 |
| 12 | 23-25 |
| 13 | 1-25 |
| 16 | 19, 20 |
| 16 | 22-25 |
| 17 | 1-25 |
| 18 | 1-25 |
| 19 | 1-25 |
| 20 | 1-25 |
| 21 | 1-11 |
| 24 | 19-25 |
| 25 | 1-5 |
| 25 | 7-14 |
| 25 | 17-25 |
| 26 | 1-23 |
| 26 | 25 |
| 28 | 15-25 |
| 29 | 1-6 |
| 29 | 8-15 |
| 29 | 18-24 |
| 30 | 2-19 |
| 36 | 8-25 |
| 37 | 1-12 |
| 40 | 7-12 |
| 40 | 19-25 |
| 65 | 7-19 |
| 65 | 21-25 |
| 66 | 1-12 |
| 66 | 15-17 |
| 66 | 19-25 |
| 67 | 1-25 |
| 68 | 1-7 |
| 68 | 11 |
| 70 | 18-22 |
| 70 | 24, 25 |
| 71 | 1-4 |
| 71 | 8 |
| 71 | 11-17 |
| 71 | 19-25 |

REDACTED VERSION – PUBLICLY FILED

| 72 | 1-10 |
|----|------|
| 72 | 12-25 |
| 73 | 2-16 |
| 73 | 18-20 |
| 79 | 19-25 |
| 80 | 1-17 |
| 80 | 19-25 |
| 81 | 1-19 |
| 81 | 22-25 |
| 82 | 19-23 |
| 82 | 25 |
| 83 | 1-21 |
| 84 | 1-13 |
| 84 | 18-25 |
| 85 | 1, 2 |
| 85 | 4-7 |
| 87 | 20-25 |
| 88 | 1-25 |
| 89 | 1-6 |
| 90 | 4-13 |
| 91 | 21-25 |
| 92 | 1-25 |
| 93 | 1-5 |
| 93 | 8-22 |
| 94 | 24, 25 |
| 95 | 3-5 |
| 97 | 13-22 |
| 97 | 24, 25 |
| 98 | 1-11 |
| 99 | 18-25 |
| 101 | 7-25 |
| 102 | 1-3 |
| 102 | 5-25 |
| 103 | 1-25 |
| 104 | 1-13 |
| 104 | 15-25 |
| 105 | 1-25 |
| 106 | 1-3 |
| 106 | 9-14 |
| 106 | 18-25 |
| 107 | 1-14 |
| 107 | 16-25 |
| 108 | 1-19 |
| 108 | 21-25 |
| 109 | 1-25 |

REDACTED VERSION – PUBLICLY FILED

| 110 | 1-8 |
|-----|-----|
| 110 | 10 |
| 111 | 1-5 |
| 111 | 14-25 |
| 112 | 1-15 |
| 112 | 17 |
| 113 | 5-13 |
| 116 | 14-25 |
| 117 | 1, 2 |
| 118 | 25 |
| 119 | 1-15 |
| 119 | 19-25 |
| 122 | 11-25 |
| 123 | 1-25 |
| 124 | 1-25 |
| 125 | 1-18 |
| 125 | 22-25 |
| 126 | 1-8 |
| 127 | 20-25 |
| 128 | 1-6 |
| 132 | 24-25 |
| 133 | 1-16 |
| 135 | 1-24 |
| 136 | 10-25 |
| 137 | 15-22 |
| 139 | 18-25 |
| 140 | 1-11 |
| 141 | 25 |
| 142 | 1-6 |
| 142 | 8 |
| 142 | 10-25 |
| 143 | 1-3 |
| 143 | 4-5 |
| 143 | 9-14 |
| 143 | 16-25 |
| 144 | 1-7 |
| 144 | 9-23 |
| 144 | 25 |
| 145 | 1-14 |
| 146 | 7-15 |
| 146 | 18-25 |
| 147 | 1-14 |
| 148 | 17, 18 |
| 148 | 21-25 |
| 153 | 24, 25 |

REDACTED VERSION – PUBLICLY FILED

| 154 | 1-25 |
|-----|------|
| 155 | 1-25 |
| 156 | 1-14 |
| 156 | 16-25 |
| 157 | 1, 2 |
| 158 | 13-25 |
| 162 | 13-21 |
| 163 | 23-25 |
| 164 | 1-24 |
| 165 | 1-25 |
| 166 | 1-25 |
| 167 | 15-18 |
| 167 | 20-25 |
| 168 | 1-25 |
| 169 | 1-5 |
| 175 | 4-8 |
| 176 | 9-25 |
| 177 | 1-25 |
| 178 | 1-12 |
| 178 | 23-25 |
| 179 | 1-25 |
| 180 | 1-18 |
| 181 | 3-5 |
| 181 | 12-17 |
| 181 | 20-25 |
| 183 | 12-13 |
| 183 | 16-22 |
| 184 | 1-19 |
| 188 | 1-25 |
| 189 | 1-25 |
| 190 | 1-21 |
| 190 | 23-25 |
| 191 | 1-25 |
| 192 | 1-25 |
| 193 | 1-4 |
| 193 | 7-25 |
| 194 | 1 |
| 194 | 22-24 |
| 195 | 1-23 |
| 195 | 1-5 |
| 196 | 1-25 |
| 197 | 1-17 |
| 197 | 19-25 |
| 198 | 1-10 |
| 198 | 16-25 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 199 | 1-12 |
| 199 | 25 |
| 200 | 1-25 |
| 201 | 1-25 |
| 202 | 1-10 |
| 202 | 11-25 |
| 203 | 1-25 |
| 204 | 1-11 |
| 204 | 22-25 |
| 205 | 4-8 |
| 207 | 1-15 |
| 208 | 1-11 |
| 208 | 13-25 |
| 209 | 1-25 |
| 210 | 1-8 |
| 210 | 10-25 |
| 211 | 1-5 |
| 212 | 10-20 |
| 212 | 22-25 |
| 213 | 1-9 |
| 213 | 11-25 |
| 214 | 1-15 |
| 214 | 17-25 |
| 215 | 3-25 |
| 216 | 1-19 |
| 216 | 21-25 |
| 217 | 1-25 |
| 218 | 25 |
| 219 | 1-11 |
| 221 | 5-23 |
| 221 | 25 |
| 222 | 1-11 |
| 222 | 15 |
| 222 | 18-25 |
| 223 | 1-5 |
| 223 | 7-25 |
| 224 | 1-25 |
| 225 | 1-17 |
| 225 | 19-25 |
| 226 | 1-12 |
| 226 | 18-22 |
| 226 | 24-25 |
| 227 | 1-5 |
| 227 | 16-20 |
| 227 | 23-25 |

| 228 | 1-25 |
|-----|------|
| 229 | 1, 2 |
| 230 | 14-18 |
| 230 | 21-25 |
| 231 | 1-25 |
| 232 | 1-11 |
| 232 | 20-25 |
| 233 | 1-10 |
| 233 | 11-18 |
| 233 | 23-25 |
| 234 | 1-11 |
| 234 | 18-21 |
| 235 | 7-18 |
| 237 | 2-7 |
| 241 | 2-16 |
| 241 | 23-25 |
| 242 | 1-11 |
| 243 | 19-25 |
| 244 | 1-18 |
| 245 | 16-25 |
| 247 | 1-15 |
| 247 | 18-25 |
| 248 | 1 |
| 248 | 3-8 |
| 248 | 13-25 |
| 249 | 1-25 |
| 250 | 1-25 |
| 251 | 1-25 |
| 252 | 1-25 |
| 253 | 1-17 |
| 253 | 20-25 |
| 254 | 1-25 |
| 255 | 1-25 |
| 256 | 15-25 |
| 257 | 1-24 |
| 259 | 2-25 |
| 260 | 1-25 |
| 261 | 1-25 |
| 262 | 1, 2 |
| 262 | 5-25 |
| 263 | 1-16 |
| 267 | 7-25 |
| 268 | 1-12 |
| 268 | 23-25 |
| 269 | 1, 2 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 269 | 11-25 |
| 270 | 1-25 |
| 271 | 1-25 |
| 272 | 1-4 |
| 272 | 17-22 |
| 273 | 6-15 |
| 273 | 24-25 |
| 274 | 1-25 |
| 275 | 1-25 |
| 276 | 1-4 |
| 276 | 11-18 |
| 276 | 20-25 |
| 277 | 1-16 |
| 277 | 18-25 |
| 278 | 1-9 |
| 278 | 19-24 |
| 279 | 1-20 |
| 280 | 18-25 |
| 281 | 1-13 |
| 281 | 15-17 |
| 281 | 1-8 |
| 283 | 3-25 |
| 284 | 1-10 |
| 284 | 19-25 |
| 285 | 1-25 |
| 286 | 1-9 |
| 286 | 12-16 |
| 286 | 22-24 |
| 287 | 8-25 |
| 288 | 12-25 |
| 289 | 1-16 |
| 291 | 22-25 |
| 292 | 1-9 |
| 292 | 20-23 |
| 293 | 5-9 |
| 293 | 12-25 |
| 294 | 1-19 |
| 294 | 21-25 |
| 295 | 1-25 |
| 296 | 1-14 |
| 296 | 15-17 |
| 297 | 19-25 |
| 298 | 1-15 |
| 303 | 23-25 |
| 304 | 1-11 |

REDACTED VERSION – PUBLICLY FILED

| 304 | 14-21 |
|-----|-------|
| 305 | 12-25 |
| 306 | 1-7 |
| 306 | 9-12 |

REDACTED VERSION – PUBLICLY FILED

Deposition of Mark Young
November 29, 2007

| Page | Line(s) |
|------|---------|
| 5 | 18-25 |
| 6 | 2-16 |
| 6 | 18-25 |
| 7 | 2-25 |
| 8 | 2-7 |
| 8 | 9-25 |
| 9 | 2-25 |
| 10 | 2-9 |
| 10 | 12-16 |
| 11 | 5-25 |
| 12 | 18 |
| 22 | 13-25 |
| 23 | 2-25 |
| 24 | 2-25 |
| 25 | 2-25 |
| 26 | 2-7 |
| 26 | 11-25 |
| 27 | 4-25 |
| 28 | 2-4 |
| 28 | 6-25 |
| 29 | 2-25 |
| 30 | 2 |
| 30 | 4-25 |
| 31 | 2-9 |
| 31 | 11-25 |
| 32 | 2-4 |
| 32 | 7-20 |
| 33 | 3-23 |
| 33 | 25 |
| 34 | 2-9 |
| 34 | 12-25 |
| 35 | 1-5 |
| 36 | 17-25 |
| 37 | 2-25 |
| 38 | 2-7 |
| 38 | 17-25 |
| 39 | 2-25 |
| 40 | 2-11 |
| 40 | 22-25 |
| 41 | 2-11 |
| 41 | 17-25 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 42 | 19-25 |
| 43 | 2-25 |
| 44 | 2-25 |
| 45 | 3-9 |
| 45 | 12-25 |
| 46 | 2-4 |
| 46 | 14-25 |
| 47 | 2-10 |
| 47 | 14-25 |
| 48 | 2-25 |
| 49 | 2-6 |
| 49 | 19-25 |
| 50 | 2-24 |
| 51 | 2 |
| 51 | 5-25 |
| 52 | 2-10 |
| 52 | 12-25 |
| 53 | 2-5 |
| 53 | 8-25 |
| 54 | 2-10 |
| 54 | 17-25 |
| 55 | 2-22 |
| 56 | 7-13 |
| 57 | 10-25 |
| 58 | 2-5 |
| 58 | 19-25 |
| 59 | 2-25 |
| 60 | 2-8 |
| 60 | 10-14 |
| 60 | 17-25 |
| 61 | 2-25 |
| 62 | 2-6 |
| 62 | 9-25 |
| 63 | 2-14 |
| 66 | 10-23 |
| 67 | 9-20 |
| 68 | 10-25 |
| 69 | 2-7 |
| 69 | 10-22 |
| 69 | 25 |
| 70 | 2-25 |
| 71 | 2-12 |
| 71 | 14-25 |
| 72 | 2-7 |
| 72 | 9-25 |

REDACTED VERSION – PUBLICLY FILED

| 73 | 2-7 |
|----|-----|
| 73 | 9-25 |
| 74 | 2-4 |
| 74 | 10-25 |
| 75 | 2-5 |
| 75 | 7-22 |
| 76 | 3-20 |
| 76 | 22-25 |
| 77 | 2-9 |
| 77 | 11-21 |
| 77 | 23-25 |
| 78 | 2-25 |
| 79 | 2-25 |
| 80 | 2-4 |
| 80 | 6-11 |
| 80 | 13-16 |
| 80 | 19-25 |
| 81 | 2-16 |
| 81 | 18-23 |
| 82 | 2-21 |
| 82 | 23-25 |
| 83 | 2-7 |
| 83 | 9-17 |
| 83 | 19-25 |
| 84 | 2-9 |
| 84 | 11-15 |
| 84 | 20-24 |
| 85 | 2-25 |
| 86 | 2-25 |
| 87 | 2-25 |
| 88 | 2-25 |
| 89 | 2-3 |
| 90 | 3-25 |
| 91 | 2-25 |
| 92 | 2-4 |
| 92 | 6-13 |
| 92 | 22-25 |
| 93 | 2-5 |
| 93 | 10-25 |
| 94 | 2 |
| 94 | 9-25 |
| 95 | 2-8 |
| 95 | 11-25 |
| 96 | 2 |
| 96 | 4-10 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 96 | 12-21 |
| 96 | 24-25 |
| 97 | 2-7 |
| 97 | 9-13 |
| 97 | 18-25 |
| 98 | 2-20 |
| 99 | 11-25 |
| 100 | 2-25 |
| 101 | 2-3 |
| 101 | 5-18 |
| 101 | 21-25 |
| 102 | 2-21 |
| 102 | 24-25 |
| 103 | 2-6 |
| 103 | 8-25 |
| 104 | 2-3 |
| 104 | 5-22 |
| 104 | 24-25 |
| 105 | 2-24 |
| 106 | 2-6 |
| 106 | 9-25 |
| 107 | 2-6 |
| 107 | 8-25 |
| 108 | 1-7 |
| 108 | 9-25 |
| 109 | 2-4 |
| 109 | 6-16 |
| 109 | 18-24 |
| 110 | 2-9 |
| 110 | 10-21 |
| 110 | 24-25 |
| 111 | 2-12 |
| 112 | 5-24 |
| 115 | 2-19 |
| 113 | 21-24 |
| 114 | 2-25 |
| 115 | 2-9 |
| 115 | 11-25 |
| 116 | 2-20 |
| 116 | 23-25 |
| 117 | 2-6 |
| 117 | 15-25 |
| 118 | 2-4 |
| 118 | 9-25 |
| 119 | 2-4 |

REDACTED VERSION – PUBLICLY FILED

| 119 | 7-25 |
|-----|------|
| 120 | 2-25 |
| 121 | 2-22 |
| 122 | 9-25 |
| 123 | 2-9 |
| 123 | 14-25 |
| 124 | 2-17 |
| 125 | 5-25 |
| 126 | 2-25 |
| 127 | 2-7 |
| 127 | 9-17 |
| 127 | 19-24 |
| 128 | 3-25 |
| 129 | 23-25 |
| 130 | 2-4 |
| 130 | 6-20 |
| 130 | 22-25 |
| 131 | 2-25 |
| 132 | 2-25 |
| 133 | 2-25 |
| 134 | 2-3 |
| 134 | 5-7 |
| 134 | 9-25 |
| 135 | 2-25 |
| 136 | 2-18 |
| 136 | 22-25 |
| 137 | 2-25 |
| 138 | 2-6 |
| 138 | 9-25 |
| 139 | 2-25 |
| 140 | 2-25 |
| 141 | 2-17 |
| 141 | 19-25 |
| 142 | 2-25 |
| 143 | 2-18 |
| 143 | 20-25 |
| 144 | 2-25 |
| 145 | 2-25 |
| 146 | 2-25 |
| 147 | 2 |
| 147 | 4-12 |
| 147 | 14-25 |
| 148 | 2-25 |
| 149 | 2-25 |
| 150 | 2-13 |

REDACTED VERSION – PUBLICLY FILED

| 150 | 17-25 |
|-----|-------|
| 151 | 2-25 |
| 152 | 2-13 |
| 155 | 11-25 |
| 156 | 2-6 |
| 156 | 13-25 |
| 157 | 2-3 |
| 157 | 5-25 |
| 158 | 2-25 |
| 159 | 2-18 |
| 160 | 3-25 |
| 161 | 2-9 |
| 161 | 12-15 |
| 161 | 20-25 |
| 162 | 2-25 |
| 163 | 2-25 |
| 164 | 2-25 |
| 165 | 2-25 |
| 166 | 2-9 |
| 166 | 11-25 |
| 167 | 2-8 |
| 167 | 10-25 |
| 168 | 2-25 |
| 169 | 2-25 |
| 170 | 2-25 |
| 171 | 2-3 |
| 171 | 6-25 |
| 172 | 2-20 |
| 173 | 8-25 |
| 174 | 2-10 |
| 174 | 12-25 |
| 175 | 2-3 |
| 175 | 7-14 |
| 175 | 16-25 |
| 176 | 2-25 |
| 177 | 2-6 |
| 177 | 16-25 |
| 178 | 2-25 |
| 179 | 2-25 |
| 180 | 2-19 |
| 181 | 18-25 |
| 182 | 2-15 |
| 182 | 18-25 |
| 183 | 2-11 |
| 183 | 13-23 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 184 | 2-14 |
| 184 | 19-24 |
| 185 | 2-25 |
| 186 | 6-23 |
| 189 | 20-25 |
| 190 | 2-5 |
| 190 | 7-25 |
| 192 | 2-20 |
| 192 | 23-25 |
| 193 | 2-15 |
| 193 | 18-25 |
| 194 | 2-21 |
| 194 | 23-25 |
| 195 | 2-14 |
| 195 | 18-25 |
| 196 | 2-7 |
| 196 | 11-25 |
| 197 | 2-19 |
| 197 | 21-25 |
| 198 | 2-5 |
| 198 | 19-25 |
| 199 | 2-23 |
| 200 | 6-11 |
| 200 | 22-25 |
| 201 | 2-10 |
| 201 | 13-25 |
| 202 | 2-25 |
| 203 | 2-5 |
| 203 | 7-25 |
| 204 | 2-4 |
| 204 | 6-25 |
| 205 | 2-6 |
| 205 | 8-25 |
| 206 | 2-25 |
| 207 | 2-23 |
| 208 | 2-25 |
| 209 | 2-25 |
| 210 | 2-21 |
| 211 | 24-25 |
| 212 | 2-7 |
| 213 | 19-25 |
| 214 | 2-25 |
| 215 | 2-25 |
| 216 | 2-13 |
| 216 | 16-25 |

REDACTED VERSION – PUBLICLY FILED

| | |
|---|---|
| 217 | 2-25 |
| 218 | 2-25 |
| 219 | 2-25 |
| 220 | 2-25 |
| 221 | 2-25 |
| 222 | 2-6 |
| 223 | 5-25 |
| 224 | 2-25 |
| 225 | 2-12 |
| 225 | 14-25 |
| 226 | 2-7 |
| 226 | 9-22 |
| 226 | 24-25 |
| 227 | 2-17 |
| 227 | 20-25 |
| 228 | 2-10 |
| 228 | 24-25 |
| 229 | 2-25 |
| 230 | 2-7 |
| 230 | 18-25 |
| 231 | 2-15 |
| 231 | 23-25 |
| 232 | 3-25 |
| 233 | 2-25 |
| 234 | 2-11 |
| 234 | 16-25 |
| 235 | 2-25 |
| 236 | 2-25 |
| 237 | 2-21 |
| 238 | 2-25 |
| 239 | 2-7 |
| 241 | 20-25 |
| 242 | 1-10 |

REDACTED VERSION – PUBLICLY FILED

Deposition of Butch Buchholz
November 16, 2007

| Page | Line(s) |
|------|---------|
| 4 | 6-25 |
| 5 | 1-25 |
| 6 | 1-25 |
| 7 | 1-25 |
| 8 | 1-13 |
| 8 | 22-25 |
| 9 | 1-25 |
| 10 | 1-25 |
| 11 | 1-25 |
| 12 | 1-25 |
| 13 | 1-25 |
| 14 | 1-13 |
| 14 | 16-23 |
| 14 | 25 |
| 15 | 1-25 |
| 16 | 1-25 |
| 16 | 1-25 |
| 17 | 1-25 |
| 18 | 1-25 |
| 19 | 1-25 |
| 21 | 4-25 |
| 22 | 1-25 |
| 23 | 1-25 |
| 24 | 6-17 |
| 24 | 24, 25 |
| 25 | 1-25 |
| 26 | 1-25 |
| 27 | 1-6 |
| 27 | 18-25 |
| 28 | 1-25 |
| 29 | 1-25 |
| 30 | 1-25 |
| 31 | 4-25 |
| 32 | 1-25 |
| 33 | 1-25 |
| 34 | 1-25 |
| 35 | 1-25 |
| 36 | 1, 2 |
| 36 | 5 |
| 36 | 7-25 |
| 37 | 1-25 |
| 38 | 1-25 |

REDACTED VERSION – PUBLICLY FILED

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|---|---|
| 39 | 8-25 |
| 40 | 1-25 |
| 41 | 1-25 |
| 42 | 1-7 |
| 42 | 9-15 |
| 42 | 15-18 |
| 42 | 21-25 |
| 43 | 1-25 |
| 44 | 3-17 |
| 45 | 15-25 |
| 46 | 1-9 |
| 46 | 14-25 |
| 47 | 1-9 |
| 47 | 24, 25 |
| 48 | 1-4 |
| 48 | 7-15 |
| 49 | 7-25 |
| 50 | 1-24 |
| 51 | 1-9 |
| 51 | 11-25 |
| 52 | 1-21 |
| 52 | 23-25 |
| 53 | 1-7 |
| 53 | 9-13 |
| 53 | 15 |
| 53 | 17-25 |
| 55 | 13-23 |
| 55 | 25 |
| 56 | 1-10 |
| 56 | 12-25 |
| 57 | 1-22 |
| 57 | 24 |
| 58 | 1-25 |
| 59 | 1-25 |
| 60 | 1-25 |
| 61 | 1-25 |
| 62 | 1-25 |
| 63 | 1-19 |
| 64 | 1-4 |
| 64 | 6, 7 |
| 64 | 9-23 |
| 65 | 1-25 |
| 66 | 1-22 |
| 66 | 24 |
| 67 | 1-9 |

REDACTED VERSION – PUBLICLY FILED

REDACTED VERSION – PUBLICLY FILED

| Page | Line(s) |
|------|---------|
| 67   | 22-25   |
| 68   | 1-17    |
| 68   | 19      |
| 68   | 21-25   |
| 69   | 1-21    |
| 70   | 6-25    |
| 71   | 1-14    |
| 71   | 16-25   |
| 72   | 1-14    |
| 73   | 1-25    |
| 74   | 1, 2    |
| 97   | 4-25    |
| 98   | 1-25    |
| 99   | 1-17    |
| 99   | 21-25   |
| 100  | 1-22    |

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 6(b)

# BLANK

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 6(c)

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

REDACTED VERSION – PUBLICLY FILED

## EXHIBIT 6(c) TO FINAL PRETRIAL ORDER

### DEFENDANTS' OBJECTIONS TO
### PLAINTIFFS' DEPOSITION LIST

Defendants state that Plaintiffs have waived their right to offer into evidence at trial any testimony in the form of deposition transcripts or videos and Defendants object to any attempt by Plaintiffs to introduce any such testimony from depositions.  Plaintiffs' Deposition List served on April 23, 2008 violates the Court's Pre-Trial Order, the Coordinated Scheduling Order, and the applicable rules of procedure because it wholly failed to identify with specificity which portions of each deposition transcript Plaintiffs intend to offer into evidence.

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 7

# REDACTED IN ITS ENTIRETY

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 8(a)(1)

June 2, 2008

REDACTED VERSION – PUBLICLY FILED

# TABLE OF CONTENTS

## I. PRELIMINARY INSTRUCTIONS

Preliminary Instruction 1: The Parties and Their Contentions ........................................ 2
Preliminary Instruction 2: Duties of the Jury ............................................................ 3
Preliminary Instruction 3: Evidence ...................................................................... 4
Preliminary Instruction 4: Credibility of Witness – Weighing Conflicting Testimony ......... 6
Preliminary Instruction 5: Summary of Applicable Law ............................................... 7
Preliminary Instruction 6: Burden Of Proof – Preponderance Of The Evidence ................ 10
Preliminary Instruction 7: Expert Witnesses ........................................................... 11
Preliminary Instruction 8: Conduct of the Jury ........................................................ 12
Preliminary Instruction 9: Course of the Trial ......................................................... 14
Preliminary Instruction 10: Trial Schedule ............................................................. 15

## II. FINAL INSTRUCTIONS

Jury Instruction 1: Court's Final Instructions to the Jury ........................................... 16
Jury Instruction 2: Evidence Defined ................................................................... 18
Jury Instruction 3: Direct and Circumstantial Evidence ............................................. 19
Jury Instruction 4: Consideration of Evidence ......................................................... 20
Jury Instruction 5: Statements of Counsel ............................................................. 21
Jury Instruction 6: Credibility of Witnesses ........................................................... 22
Jury Instruction 7: Expert Testimony ................................................................... 24
Jury Instruction 8: Number of Witnesses ............................................................... 25
Jury Instruction 9: Burden of Proof – Preponderance of the Evidence .......................... 26
Jury Instruction 10: Depositions/Videos ................................................................ 27
Jury Instruction 11: Corporations ....................................................................... 28

## III. ANTITRUST CLAIMS: SHERMAN ACT INTRODUCTION

Jury Instruction 12: Purpose of Antitrust Laws and Overview of Plaintiffs' Antitrust
        Claims ................................................................................................. 29
Jury Instruction 13: Private Actions Under the Antitrust Laws ..................................... 30
Jury Instruction 14: Sherman Act – Purpose .......................................................... 32

## IV. ANTITRUST CLAIMS: SHERMAN ACT SECTION 1

Jury Instruction 15: Generally ........................................................................... 33
Jury Instruction 16: Rule of Reason – Quick Look .................................................... 34
Jury Instruction 17: Rule of Reason – Quick Look – Evidence of Competitive Benefits ........... 36
Jury Instruction 18: Rule of Reason – Quick Look – Evidence of Competitive Benefits ........... 37
Jury Instruction 19: Rule of Reason – Overview ...................................................... 38
Jury Instruction 20: Rule of Reason – Proof of Competitive Harm ............................... 40

i

## V. ANTITRUST CLAIMS: SHERMAN ACT - RELEVANT MARKET

Jury Instruction 21: General.................................................................................... 43
Jury Instruction 22: Relevant Product or Service Market........................................ 44
Jury Instruction 23: Necessity of Proof .................................................................. 46

## VI. ANTITRUST CLAIMS: SHERMAN ACT SECTION 1 - RULE OF REASON

Jury Instruction 24: Rule of Reason – Evidence of Competitive Benefits ................... 47
Jury Instruction 25: Rule of Reason – Balance of Harms.......................................... 48
Jury Instruction 26: Contract, Combination or Conspiracy Definition, Existence and
    Evidence............................................................................................................ 49

### A. SPECIFIC ANTICOMPETITIVE ACTIONS

#### I. HORIZONTAL PRICE FIXING

Jury Instruction 27: General Elements...................................................................... 53
Jury Instruction 28: Good Intent Not a Defense ...................................................... 55
Jury Instruction 29: Reasonableness of Prices Is No Excuse .................................... 56
Jury Instruction 30: Evidence of Competition .......................................................... 57
Jury Instruction 31: Evidence of Price Charged ....................................................... 58

#### II. HORIZONTAL NON-PRICE RESTRAINTS

Jury Instruction 32: Allocation of Customers or Suppliers ........................................ 59
Jury Instruction 33: Allocation of Territories ........................................................... 61
Jury Instruction 34: Allocation of Markets............................................................... 63
Jury Instruction 35: Agreement to Limit Production.................................................. 65
Jury Instruction 36: Group Boycott – Elements of Per Se Unlawful Horizontal Concerted
    Refusal to Deal.................................................................................................. 67
Jury Instruction 37: Associations – Exclusion.......................................................... 69

## VII. ANTITRUST CLAIMS: SHERMAN ACT SECTION 2

### A. MONOPOLIZATION

Jury Instruction 38: General Elements...................................................................... 71
Jury Instruction 39: Monopoly Power Defined ......................................................... 73
Jury Instruction 40: Existence of Monopoly Power – Indirect Proof.......................... 74
Jury Instruction 41: Existence of Monopoly Power – Direct Proof............................. 77
Jury Instruction 42: Willful Acquisition or Maintenance of Monopoly Power.............. 79

### B. ATTEMPT TO MONOPOLIZE

Jury Instruction 43: General Elements...................................................................... 82

Jury Instruction 44: Proof of Intent............................................................................ 84
Jury Instruction 45: Danger of Success ...................................................................... 87

### C. CONSPIRACY TO MONOPOLIZE

Jury Instruction 46: General Elements......................................................................... 89

### VIII. ANTITRUST DAMAGES: SHERMAN ACT SECTIONS 1 AND 2

Jury Instruction 47: Introduction and Purposes ......................................................... 91
Jury Instruction 48: Antitrust Injury .......................................................................... 93
Jury Instruction 49: Causation .................................................................................... 95
Jury Instruction 50: Extent of Injury........................................................................... 96
Jury Instruction 51: Expert Testimony ....................................................................... 97

### IX. BREACH OF FIDUCIARY DUTY

Jury Instruction 52: General Elements......................................................................... 98
Jury Instruction 53: Existence of Fiduciary Duty ..................................................... 100
Jury Instruction 54: Corporate Fiduciary Duties ...................................................... 101
Jury Instruction 55: Fiduciary Duty of Loyalty Definition....................................... 103
Jury Instruction 56: Fiduciary Duty of Good Faith Definition.................................. 104
Jury Instruction 57: Duty of Due Care Definition ..................................................... 105
Jury Instruction 58: Duty of Due Care Relevant Circumstances .............................. 106
Jury Instruction 59: The Business Judgment Rule...................................................... 107
Jury Instruction 60: Entire Fairness Standard Causation – Generally ....................... 110
Jury Instruction 61: Causation – Generally ............................................................... 112
Jury Instruction 62: Elements of Causation and Burden of Proof ............................. 113
Jury Instruction 63: Existence of Damages ............................................................... 114
Jury Instruction 64: Award of Damages .................................................................... 115
Jury Instruction 65: Duties of Loyalty and Good Faith - Award of Additional Damages.......... 116

### X. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

Jury Instruction 66: General Elements....................................................................... 118
Jury Instruction 67: Award of Damages .................................................................... 120
Jury Instruction 68: General Elements....................................................................... 121
Jury Instruction 69: Award of Damages .................................................................... 123

### XI. CONVERSION

Jury Instruction 70: General Elements....................................................................... 124
Jury Instruction 71: Award of Damages .................................................................... 125
Jury Instruction 72: Award of Punitive Damages...................................................... 126

6267/20504-015 Current/11275801v1                06/02/2008 10:18 PM

June 2, 2008

### XII. DELIBERATION AND VERDICT

Jury Instruction 73: Deliberation and Verdict ............................................................................ 128

June 2, 2008

REDACTED VERSION – PUBLICLY FILED

## EXHIBIT 8(a) TO FINAL PRETRIAL ORDER
## JURY INSTRUCTIONS

## PRELIMINARY JURY INSTRUCTIONS[1]

## INTRODUCTION

Members of the jury: now that you have been sworn, I am now going to give you some preliminary instructions to guide you in your participation in the trial.

---

[1] Source:  Preliminary Jury Instructions – Civil (GMS)

June 2, 2008                              REDACTED VERSION – PUBLICLY FILED

**Preliminary Instruction 1**

*The Parties and Their Contentions*

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

The parties in this case are the plaintiffs, Deutscher Tennis Bund (German Tennis Federation) (or "GTF"), Rothenbaum Sport GmbH (or "RSG"), and Qatar Tennis Federation (or "QTF") (together, the "Plaintiffs"), and the defendants, ATP Tour, Inc. (or "ATP"), and six of its directors, Etienne de Villiers, Charles Pasarell, Graham Pearce, Jacco Eltingh, Perry Rogers, and Iggy Jovanovic (together, the "Defendants").

In this case, Plaintiffs allege that Defendants implementation of their Brave New World Plan was anticompetitive in violation of Section 1 and 2 of the Sherman Act ; that Defendants have individually and collectively breached their fiduciary duties of loyalty, due care and good faith; and that Defendants have intentionally interfered with Plaintiffs' contractual and business relationships.  Defendants deny each of these allegations.  I will explain the elements of each of these claims in detail for you after describing your role as jurors.

**Defendants' Objections**

No objection.

2

June 2, 2008

**Preliminary Instruction 2**

*Duties of the Jury*

So, let me begin with those general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply to those facts to the law as I will give it to you both during these preliminary instructions and at the close of the evidence. You must follow that law whether you agree with it or not. Again, of course, you are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Also, do not let anything that I say or do during the course of the trial influence you. Nothing that I may say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.

**<u>Defendants' Objections</u>**

No objection.

REDACTED VERSION – PUBLICLY FILED

**Preliminary Instruction 3**

*Evidence*

The evidence from which you will find the facts will consist of the testimony of witnesses (the testimony of witnesses consist of the answers of the witnesses to questions posed by the attorneys or the court -- you may not ask questions). Evidence will also consist of documents and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you. I will list them for you now:

1. Statements, arguments, and questions by lawyers are not evidence.

2. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

3. Testimony that the court has excluded or told you to disregard is not evidence and must not be considered.

4. Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is proof of facts from

June 2, 2008

which you may infer or conclude that other facts exist. As a general rule, the law makes no distinction between these two types of evidence, but simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.

**Defendants' Objections**

No objection.

June 2, 2008

**Preliminary Instruction 4**

*Credibility of Witness - Weighing Conflicting Testimony*

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable. This instruction applies to the testimony of all witnesses, including expert witnesses.

**<u>Defendants' Objections</u>**

No objection.

6

June 2, 2008                                    REDACTED VERSION – PUBLICLY FILED

**Preliminary Instruction 5**

*Summary of Applicable Law*

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision. But in order to help you follow the evidence, I will now give you a brief summary of the elements which Plaintiffs must prove in order to prevail on each of their claims:

- Plaintiffs' first claim is that Defendants agreed to a contract, conspiracy or combination in restraint of trade. The elements of this claim are as follows: (1) the existence of a contract, combination or conspiracy between or among at least two separate persons; (2), that the contract, combination or conspiracy unreasonably restrains or will unreasonably restrain trade; and (3) that the restraint caused the Plaintiffs to suffer an injury to their business or property.

- Plaintiffs' second claim is that Defendants unlawfully monopolized certain alleged markets. The elements of this claim are as follows: (1) that the alleged market is a valid antitrust market; (2) that the ATP Tour possessed monopoly power in that market; (3) that the Defendants "willfully" acquired or maintained monopoly power in that market by engaging in anticompetitive conduct; and (4) that the Plaintiffs were injured in their business or property because of the Defendants' anticompetitive conduct.

- Plaintiffs' third claim is that Defendants attempted to monopolize certain alleged markets. The elements of this claim are as follows: (1) that Defendants engaged in anticompetitive conduct; (2) that Defendants had a specific intent to achieve monopoly power in a relevant market and/or submarket(s) relating thereto; (3) that there was a dangerous probability that Defendants would achieve their goal of monopoly power in

7

June 2, 2008

the relevant market and/or submarket(s) relating thereto; and (4) that Plaintiffs were injured in their business or property by Defendants' anticompetitive conduct.

- Plaintiffs' fourth claim is that Defendants conspired to monopolize certain alleged markets. The elements of this claim are as follows: (1) that an agreement or mutual understanding between two or more persons to obtain or maintain monopoly power in the market for men's professional tennis and/or submarket(s) relating thereto existed; (2) that Defendant(s) knowingly - that is, voluntarily and intentionally - became a party to that agreement or mutual understanding; (3) that Defendant(s) specifically intended that the parties to the agreement would obtain or maintain monopoly power in the market for men's professional tennis and/or submarket(s) relating thereto; (4) that Defendant(s) committed an overt act in furtherance of the conspiracy; (5) that Defendant's (or Defendants') activities occurred in or affected interstate or foreign commerce; and (6) that Plaintiffs were injured in their business or property because of the conspiracy to monopolize.

- Plaintiffs also allege that the ATP Directors breached their separate fiduciary duties of loyalty, good faith, and due care. The elements of this claim are as follows: (1) that Defendants owed Plaintiffs fiduciary duties; (2) that Defendants breached their fiduciary duty of loyalty, good faith, or due care; and (3) that Defendants' breach(es) was the proximate cause of some injury or damage to Plaintiffs.

- Plaintiffs' eighth claim is that Defendants intentionally interfered with Plaintiffs' contracts or prospective contracts. The elements of intentional interference with existing contracts are as follows: that Defendants (1) intentionally; (2) and improperly; (3) induced or otherwise caused; (4) a third party not to perform pursuant to a contract with

8

June 2, 2008

> Plaintiffs. The elements of intentional interference with prospective contracts are as follows: that Defendants (1) intentionally; (2) and improperly; (3) induced or otherwise intentionally prevented; (4) a third party not to enter into a prospective contract with Plaintiffs..

- Plaintiffs' ninth claim is that Defendants converted Plaintiffs' ATP membership. The elements of this claim are as follows: (1) wrongful exercise of dominion; (2) over the property of Plaintiffs; and (3) in denial of, or inconsistent with, Plaintiffs' rights.

**Defendants' Objections**

Defendants object to Plaintiffs' Proposed Jury Instruction 5 as an inaccurate and incomplete summary of the law governing Plaintiffs' claims. Defendants submit that their Proposed Jury Instruction entitled "Summary of Applicable Law" provides an accurate and complete summary of the legal elements of Plaintiffs' claims.

June 2, 2008

**Preliminary Instruction 6**

*Burden Of Proof - Preponderance Of The Evidence*

As I told you during the voir dire, this is a civil case. Here the Plaintiffs have the burden of proving their case by what is called a preponderance of the evidence. That means the Plaintiffs have to produce evidence which, considered in the light of all the facts, leads you to believe that what the Plaintiffs' claim(s) are more likely true than not. To put it differently, if you were to put the Plaintiffs' and the Defendants' evidence on opposite sides of a scale, the evidence supporting the Plaintiffs would have to make the scale tip somewhat on their side. If the Plaintiffs fail to meet this burden, the verdict must be for the Defendants. The Plaintiffs must also prove their damages by a preponderance of the evidence. Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That requirement does not apply to a civil case; therefore, you should put it out of your mind.

**Defendants' Objections**

Defendants object to Plaintiffs' Proposed Jury Instruction 6 as an incomplete statement regarding the burden of proof governing Plaintiffs' claims. Defendants submit that their Proposed Jury Instruction entitled "Burden of Proof" provides an accurate and complete statement regarding Plaintiffs' burden of proof on their claims.

June 2, 2008

**Preliminary Instruction 7**

Expert Witnesses

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience. In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

**<u>Defendants' Objections</u>**

No objection.

June 2, 2008

**Preliminary Instruction 8**

*Conduct of the Jury*

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you nor you with them. In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided. If anyone should try to talk to you about it, bring it to the court's attention promptly.

Second, do not read or listen to anything touching on this case in any way.

Third, do not try to do any research or make any investigation about the case on your own. Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

During the trial, I will permit you to take notes. A word of caution is in order. There is always a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

So, if you do take notes, leave them in your seat at the end of the day, and my Deputy will collect them and return them to your seat the next day. And, remember that they are for your own personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

**Defendants' Objections**

No objection.

13

June 2, 2008

**Preliminary Instruction 9**

*Course of the Trial*

This trial, like most jury trials, comes in seven stages or phases. We have already been through the first phase, which was to select you as jurors. The remaining stages are:

1.  These preliminary instructions to you;

2.  Opening statements which are intended to explain to you what each side intends to prove and are offered to help you follow the evidence. The lawyers are not required to make opening statements at this time or they may defer this opening until it is their turn to present evidence.

3.  The presentation of the evidence which will include live witnesses and may also include previously recorded testimony, as well as documents and things;

4.  My final instructions on the law to you;

5.  The closing arguments of the lawyers which will be offered to help you make your determination; and, finally,

6.  Your deliberations where you will evaluate and discuss the evidence among yourselves and determine the outcome of the case.

Please keep in mind that evidence is often introduced somewhat piecemeal. So, as the evidence comes in, you as jurors need to keep an open mind. We will begin shortly, but first I want to outline the anticipated schedule of the trial.

**Defendants' Objections**

No objection.

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Preliminary Instruction 10**

*Trial Schedule*

Though you have heard me say this during the voir dire, I want to again outline the schedule I expect to maintain during the course of this trial.

This case is expected to take 10 days to try. We will normally begin the day at 9:00 A.M. promptly. We will go until 1:00 P.M. and, after a one hour break for lunch, from 2:00 p.m. to 4:30 P.M. There will be a fifteen minute break at 11:00 A.M. and another fifteen minute break at 3:15 P.M. The only significant exception to this schedule may occur when the case is submitted to you for your deliberations. On that day, the proceedings might last beyond 5:00 P.M. We will post a copy of this schedule for the your convenience in the jury deliberation room.

**Defendants' Objections**

No objection.

15

June 2, 2008

## FINAL JURY INSTRUCTIONS

### Jury Instruction 1

*Court's Final Instructions to the Jury*

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read. You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

I will explain the positions of the parties and the law you will apply in this case. Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, by a preponderance of the evidence, Defendants are liable.

16

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**Defendants' Objections**

No objection.

June 2, 2008

**Jury Instruction 2**

*Evidence Defined*

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

**Defendants' Objections**

No objection.

June 2, 2008

**Jury Instruction 3**

*Direct and Circumstantial Evidence*

You have heard the terms direct and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**<u>Defendants' Objections</u>**

No objection.

June 2, 2008

**Jury Instruction 4**

*Consideration of Evidence*

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**<u>Defendants' Objections</u>**

No objection.

June 2, 2008

**Jury Instruction 5**

*Statements of Counsel*

A further word about statements and arguments of counsel. The attorney's statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent with the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

**Defendants' Objections**

No objection.

June 2, 2008

**Jury Instruction 6**

*Credibility of Witnesses*

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial. You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

June 2, 2008

This instruction applies to all witnesses.

**Defendants' Objections**

No objection.

June 2, 2008

**Jury Instruction 7**

*Expert Testimony*

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

**Defendants' Objections**

No objection.

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

## Jury Instruction 8

*Number of Witnesses*

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

## Defendants' Objections

No objection.

June 2, 2008

**Jury Instruction 9**

*Burden of Proof: Preponderance of the Evidence*

This is a civil case. Plaintiffs have the burden of proving their claims and damages by what is called a preponderance of the evidence. Proof by a preponderance of the evidence means proof that something is more likely true than not. It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not.

Preponderance of the evidence does not depend on the number of witnesses. If the evidence as to a particular element or issue is evenly balanced, the party has not proved the element by a preponderance of the evidence and you must find against that party. In determining whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who called them and all exhibits received into evidence regardless of who produced them.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt. That burden does not apply in a civil case and you should therefore put it out of your mind in considering whether or not a party has met its burden of proof on various issues.

**Defendants' Objections**

Defendants object to Plaintiffs' Proposed Jury Instruction 9 as an incomplete statement regarding the burden of proof governing Plaintiffs' claims. Defendants submit that their Proposed Jury Instruction entitled "Burden of Proof: Preponderance of the Evidence" provides an accurate and complete statement regarding Plaintiffs' burden of proof on their claims.

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 10**

*Depositions/Videos*

During the trial of this case, certain testimony has been read to you by way of deposition or a video excerpt of such a deposition has been shown, consisting of sworn answers to questions asked of the witness in advance of the trial by one or more attorneys for the parties in the case.

The testimony of a witness who, for some reason, could not be compelled to testify from the witness stand may be presented in writing under oath, or by way of videotape, in the form of a deposition. Such testimony is entitled to the same consideration, and is to be judged as to credibility, and weighed, and otherwise considered by the jury, insofar as is possible, in the same way as if the witness had been present and had testified from the witness stand.

**<u>Defendants' Objections</u>**

No objection.

June 2, 2008

**Jury Instruction 11**

*Corporations*

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors and officers performed within the scope of authority.[2]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 11 as incomplete in that it fails to explain that a corporation is not capable under the law of conspiring with its own agents.

---

[2]    ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-10 (2005).

June 2, 2008

**Jury Instruction 12**

*Antitrust Claims: Sherman Act Sections 1 and 2*

*Purpose of Antitrust Laws and Overview of Plaintiffs' Antitrust Claims*

In this case, the Plaintiffs, Deutscher Tennis Bund (German Tennis Federation), Rothenbaum Sport GmbH, and the Qatar Tennis Federation (who I will refer to collectively as the "Plaintiffs"), assert that Defendants ATP Tour, Inc., Etienne de Villiers, Charles Pasarell, Graham Pearce, Jacco Eltingh, Perry Rogers, and Iggy Jovanovic (who I will refer to individually and/or collectively as the "Defendants"), violated the antitrust laws of the United States. Specifically, Plaintiffs contend that Defendants violated laws commonly known as Sections 1 and 2 of the Sherman Antitrust Act.

Defendants deny those claims.

The purposes of the antitrust laws are to preserve and advance our system of free and open competition and to secure to everyone an equal opportunity to engage in business, trade, and commerce, by preventing unreasonable restraint or monopolization of any business or industry so that the consuming public may receive better goods and services at lower cost. The law promotes the concept that free competition results in the best allocation of economic resources; but the law does not guarantee success to those who enter into business because it also recognizes that in the natural operation of our economic system, some competitors are going to lose business, or even go out of business, while others gain and prosper.

**<u>Defendants' Objections</u>**

No objection.

June 2, 2008

**Jury Instruction 13**

*Antitrust Claims: Sherman Act Sections 1 and 2*

*Private Actions Under the Antitrust Laws*

This type of lawsuit is known as a private antitrust civil action. Private antitrust actions are a means of enforcing the antitrust laws, because they serve to deter defendants who have violated the antitrust laws from violating the law in the future.

Plaintiffs have brought two separate antitrust claims. Plaintiffs' first claim is under Section 1 of the Sherman Act, which prohibits a person or corporation from entering into contracts, combinations and conspiracies that unreasonably restrain trade. Plaintiffs allege that Defendants entered into agreements, combinations and conspiracies to restructure men's professional tennis that unreasonably restrained trade in the market for men's professional tennis and/or submarket(s) relating thereto.

Plaintiffs' second claim is under Section 2 of the Sherman Antitrust Act, which prohibits a person or a corporation from maintaining a monopoly in any part of our country's trade or commerce. In this case, Plaintiffs allege that Defendants unlawfully gained and maintained a monopoly in the market for men's professional tennis and/or submarket(s) relating thereto, including the market for men's professional tennis player services; conspired to gain and maintain a monopoly in the relevant markets and/or submarket(s) relating thereto; and attempted to gain and maintain a monopoly in the relevant markets and/or submarket(s) relating thereto.[3]

**Defendants' Objections**

Defendants object to Plaintiffs' Proposed Jury Instruction 13 on the grounds that it is duplicative and unnecessarily confusing. Each separate claim is described in detail in separate

---

[3]    ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION A-3 AND C-2 (2005).

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

instructions.  There is no reason to describe either party's factual assertions in an instruction

explaining the purpose of private actions under the Sherman Act.

June 2, 2008

**Jury Instruction 14**

*Antitrust Claims: Sherman Act Sections 1 and 2*

*Sherman Act - Purpose*

The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.[4]

**Defendants' Objection**

No objection.

---

[4] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION A-2 (2005).

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

## Jury Instruction 15

*Antitrust Claims: Sherman Act Section 1 - Generally*

Plaintiffs challenge Defendants' conduct under Section 1 of the Sherman Act. Section 1 prohibits contracts, combinations and conspiracies that unreasonably restrain trade. To establish a violation of Section 1 of the Sherman Act, Plaintiffs must prove the following:

First, the existence of a contract, combination or conspiracy between or among at least two separate persons;

Second, that the contract, combination or conspiracy unreasonably restrains or will unreasonably restrain trade; and

Third, that the restraint caused the Plaintiff(s) to suffer an injury to its business or property. [5]

## Defendants' Objection

Defendants object to Plaintiffs' Proposed Jury Instruction 15 on the grounds that it (1) fails to limit the second element to trade in a relevant market, (2) fails to distinguish between proximate and legal cause and explain that Plaintiffs bear the burden of proving both, and (3) fails to explain that Plaintiffs must prove that their injury is of the type the antitrust laws were designed to prevent.

---

[5]    ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION A-3 (2005).

June 2, 2008

**Jury Instruction 16**

*Antitrust Claims: Sherman Act Section 1*

*Rule of Reason – Quick Look*

Under Section 1 of the Sherman Act, a restraint of trade is illegal if it is found to be unreasonable. You must determine, therefore whether the restraints challenged here are unreasonable. The restraints challenged here are: the channeling of players to certain events via rules, regulations, bonuses and sanctions; the creation and sale of a limited number of "sanctions" which are required if a tournament is to attract players; the pooling of broadcast and sponsorship rights; geographic market protections for favored tournaments; calendar market protection for certain tournaments; and the limitation and/or cap of output of top-tier men's professional tennis. I have determined as a matter of law that these restraints constitute horizontal market divisions, geographic market divisions and price fixing and, as such, are naked restraints of trade. The Plaintiffs have established, therefore, that the Defendants' restraints have caused substantial harm to competition in a relevant market. You must consider whether the restraint produces countervailing competitive benefits. If you find that it does, then you must balance the competitive harm against the competitive benefit. The challenged restraint is illegal under Section 1 of the Sherman Act if you find that the competitive harm outweighs the competitive benefit. I have found as a matter of law, significant competitive harm. It is your duty to consider the competitive benefits, if any, and to balance them against this harm. [6]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 16 because it is not relevant to the facts and issues to be tried, because the Court has not made the determination described and

---

[6] *Law v. NCAA*, 134 F.3d 1010, 1019-21 (10th Cir. 1998); *NCAA v. Board of Regent of the University of Oklahoma*, 104 S.Ct. 2984, 2965 (1984)

June 2, 2008

the evidence at trial will not support such a determination. Defendant further object to the extent that it purports to list specific restraints that Plaintiffs have never previously alleged. Additionally, it is unnecessary and potentially confusing to repeat Plaintiffs' allegations in the context of this instruction. Furthermore, alleged restraints Nos. 1 and 2 are unreasonably argumentative, and No. 6 is unreasonably vague and undefined.

June 2, 2008

**Jury Instruction 17**

*Antitrust Claims: Sherman Act Section 1*

*Rule of Reason – Quick Look – Evidence of Competitive Benefits*

As I have found that Plaintiffs have Proven that the challenged restraint resulted in substantial harm to competition in a relevant markets, you must determine whether the restraint also benefits competition in other ways. The only legitimate rationales that you may consider are those that are necessary to produce competitive men's professional tennis. Further, rationales relating merely to profitability or cost savings do not qualify as a pro-competitive justification.

In this case, Defendants contend that the challenged restraint benefits competition the following way(s): the Defendants, certain men's professional tournaments, and certain men's professional tennis players will make more money because consumers in the relevant output market(s) will pay more therein. If you find that Defendants have proven that the challenged restraint does result in competitive benefits, then you also must consider whether the restraint was reasonably necessary to achieve the benefits. If Plaintiffs prove that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraint.[7]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 17 because it is not relevant to the facts and issues to be tried, because the Court has not made the determination described and the evidence at trial will not support such a determination. Defendant further object on the grounds that it contains an inaccurate and argumentative characterization of Defendants' contentions as to the pro-competitive benefits of their challenged actions.

---

[7]    ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION A-10 (2005).

June 2, 2008

**Jury Instruction 18**

*Antitrust Claims: Sherman Act Section 1*

*Rule of Reason – Quick Look – Evidence of Competitive Benefits*

If you find that the challenged restraint was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint. If the competitive harm outweighs the competitive benefits, then the challenged restraint is unreasonable. If the competitive harm does not outweigh the competitive benefits, then the challenged restraint is not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors.[8]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 18 because it is not relevant to the facts and issues to be tried, because it eliminates the requirement that the jury determine whether there has been any competitive harm. Defendants further object on the grounds that it misstates the law. Plaintiffs bear the burden of proving that the alleged competitive harm substantially outweighs the procompetitive benefits.

---

[8]    ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION A-12 (2005).

37

June 2, 2008

**Jury Instruction 19[9]**

*Antitrust Claims: Sherman Act Section 1*

*Rule of Reason – Overview*

Under Section 1 of the Sherman Act, a restraint of trade is illegal if it is found to be unreasonable. You must determine, therefore whether the restraints challenged here are unreasonable. The restraints challenged here are: the channeling of players to certain events via rules, regulations, bonuses and sanctions; the creation and sale of a limited number of "sanctions" which are required if a tournament is to attract players; the pooling of broadcast and sponsorship rights; geographic market protections for favored tournaments; calendar market protection for certain tournaments; and the limitation and/or cap of output of top-tier men's professional tennis. In making this determination, you must first determine whether Plaintiffs have carried their burden to show that any challenged restraint has resulted or is likely to result in a substantial harm to competition in a relevant product and geographic market and/or submarket(s) relating thereto. If you find that Plaintiffs have carried their burden to show that any challenged restraint results in a substantial harm to competition in a relevant market and/or submarket, then you must consider whether the restraint produces countervailing competitive benefits. If you find that it does, then you must balance the competitive harm against the competitive benefit. The challenged restraint is illegal under Section 1 of the Sherman Act only if you find that the competitive harm outweighs the competitive benefit. I will now review each step of the analysis in more detail. [10]

---

[9] This instruction, relating to the full rule of reason analysis, is applicable only to the extent the Court does not apply the "Quick Look Doctrine."

[10] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION A-4 (2005).

June 2, 2008

**Defendants' Objection**

     Defendants object to Plaintiffs' Proposed Jury Instruction 19 to the extent that it purports to list specific restraints that Plaintiffs have never previously alleged. Additionally, it is unnecessary and potentially confusing to repeat Plaintiffs' allegations in the context of this instruction. Furthermore, alleged restraints Nos. 1 and 2 are unreasonably argumentative, and No. 6 is unreasonably vague and undefined.

6267/20504-015 Current/11275801v1

June 2, 2008

**Jury Instruction 20[11]**

*Antitrust Claims: Sherman Act Section 1*

*Rule of Reason – Proof of Competitive Harm*

As I mentioned, in order to prove that the challenged restraint is unreasonable, Plaintiffs have the burden of demonstrating that a restraint has resulted or is likely to result in a substantial harm to competition. Although it may be relevant to the inquiry, harm that occurs merely to the individual business of Plaintiffs is not sufficient, by itself, to demonstrate harm to competition generally. That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.

Furthermore, it is Plaintiffs' burden to show that the harm to competition occurred in an identified market, known as a "relevant market" or "submarket." There are two aspects to a relevant market. The first aspect is known as the relevant product market. The second aspect is known as the relevant geographic market.

If you find that Plaintiffs have carried their burden to show the existence of a relevant market(s) and/or submarket(s), then you must determine whether Plaintiffs also have carried their burden to show that a challenged restraint has or is likely to have a substantial harmful effect on competition in that market and/or submarket. A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, and higher product quality. If the challenged conduct has not resulted in or is not likely to result in higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm and you should find that the challenged conduct was not unreasonable.

---

[11] This instruction, relating to the full rule of reason analysis, is applicable only to the extent the Court does not apply the "Quick Look Doctrine."

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

In determining whether the challenged restraint has produced or is likely to produce competitive harm, you may look at the following factors:  the effect of the restraint on prices, output, product quality and service; the purpose and nature of the restraint; the nature and structure of the relevant market and/or submarket(s), both before and after the restraint was imposed; the number of competitors in the relevant market and/or submarket(s) and the level of competition among them, both before and after the restraint was imposed; and whether the defendant(s) possesses "market power."

The last factor mentioned, market power, has been defined as an ability profitably to raise prices charged above those that would be charged in a competitive market for a sustained period of time, or to pay lower prices that would be charged in a competitive market for a sustained period of time.  A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power.  The ability to charge higher prices for better products or services, however, is not, without more, market power.  An important factor in determining whether the defendant possesses market power is the defendant's market share; that is, its percentage of the products or services bought or sold in the relevant market and/or submarket by all competitors.  Other factors that you may consider in determining whether the Defendant(s) have market power include the ATP Tour, Inc.'s self-description as the governing body of men's professional tennis; the testimony of individuals regarding the nature of the relevant market(s) and/or submarket(s); the number of participants in the relevant market(s) and/or submarket(s); Defendants' control over relevant input markets; the barriers to entry in the relevant market(s) and submarket(s) such as player control rules, regulations and sanctions; the eight-of-eight Rule; the sanction protections given to certain ATP tournaments; the Special Events Rule; non-compete provisions in the ATP Tour,

June 2, 2008

Inc.'s bylaws; the effect of ranking and bonus structures; and the effect of the Defendants' pooling of broadcast and sponsorship rights. If the Defendant(s) do not possess a substantial market share, it is less likely that they possess market power. If the Defendant(s) do not possess this kind of power, then it is less likely that the challenged restraint has resulted or will result in a substantial harmful effect on competition in the market(s).[12]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 20 on the grounds that it is confusing, vague, and argumentative. Defendants specifically object to the instruction that a firm's ability to pay prices below those that would be charged in a competitive input for sustained period is a definition of market power. This instruction is inappropriate in this case, as Plaintiffs lack standing to bring a claim for any alleged agreement that would work to their benefit. Furthermore, Defendants object to Plaintiffs' proposed list of factors to be considered in determining market power as vague, conclusory, argumentative, and likely to confuse the jury.

---

[12] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION A-6 (2005).

6267/20504-015 Current/11275801v1                                          06/02/2008 10:18 PM

June 2, 2008

**Jury Instruction 21**[13]

*Antitrust Claims: Sherman Act Sections 1 and 2*

*Relevant Market – General*

Plaintiffs have the burden of proving by a preponderance of the evidence that the ATP Tour had market power in a relevant market. Defining the relevant market is essential because you are required to make a judgment about whether the ATP Tour has monopoly power in a properly defined economic market. To make this judgment, you must be able to determine what, if any, economic forces restrain the ATP Tour's freedom to set prices for or restrict the input markets for player services and tournament memberships/sanctions and the output markets for sponsorships, broadcasters, and fans. The most likely and most important restraining force will be actual and potential competition from other firms and their products or services. This includes all firms and products or services that act as restraints on the ATP Tour's power to set prices as it pleases. All the firms and products or services that exert this restraining force are within what is called the relevant market.

There are two aspects you must consider in determining whether Plaintiffs have met their burden to prove the relevant market by a preponderance of the evidence. The first is the relevant product market; the second is the relevant geographic market.[14]

**Defendants' Objection**

No objection.

⋅

---

[13] This instruction is applicable to Plaintiffs' § 1 claims only to the extent that the Court does not apply the "Quick Look Doctrine."

[14] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-6 (2005).

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 22**[15]

*Antitrust Claims: Sherman Act Sections 1 and 2*

*Relevant Market - Relevant Product or Service Market*

The basic idea of a relevant market is that the products or services within it are reasonable substitutes for each other from the buyer's point of view; that is, the products or services compete with each other. In other words, the relevant product or service market includes the products or services that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to actual behavior of buyers and marketing efforts of sellers. Products or services need not be identical or precisely interchangeable as long as they are reasonable substitutes. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material – such as aluminum foil, cellophane, or even plastic containers – to be reasonable alternatives, then all those products would be in the same relevant product market.

To determine whether products or services are reasonable substitutes for each other, you may consider whether a small but significant permanent increase in the price of one product would result in a substantial number of consumers switching from that product to another. Generally speaking, a small but significant permanent increase in price is approximately a five percent increase in price not due to external cost factors. If you find that such switching would occur, then you may conclude that the products or services are in the same product or service market.

In evaluating whether various products or services are reasonably interchangeable or are reasonable substitutes for each other, you may also consider: (1) consumers' views on whether

---

[15] This instruction is applicable to Plaintiffs' § 1 claims only to the extent that the Court does not apply the "Quick Look Doctrine."

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

the products or services are interchangeable; (2) the relationship between the price of one

product or service and sales of another; (3) the presence or absence of specialized vendors; (4)

the perceptions of either industry or the public as to whether the products or services are in

separate markets; (5) the views of the Plaintiffs and Defendants regarding who their respective

competitors are; and (6) the existence or absence of different customer groups or distribution

channels.

In this case, Plaintiffs contend that the relevant market is the market for top-tier men's

professional tennis; top-tier men's professional tennis player services; memberships and/or

sanctions on the ATP Tour; broadcasters of top-tier men's professional tennis; sponsorships of

top-tier men's professional tennis; and fans of top-tier men's professional tennis. By contrast,

the Defendants contend that the relevant market is that for all entertainment. If you find that the

Plaintiffs have proven any relevant market comprised of products or services that are reasonably

interchangeable, then you should continue to evaluate the remainder of the Plaintiffs' claim.

However, if you find that the Plaintiffs have failed to prove any such market then you must find

in the Defendants' favor on this claim. [16]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 22 on the grounds that it is

vague, inaccurate, and incomplete. Defendants specifically object to Plaintiffs' alleged product

markets as unreasonably vague and to Plaintiffs' characterization of Defendants' product market

definition as inaccurate and argumentative.

---

[16] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-7 (2005).

June 2, 2008

**Jury Instruction 23**[17]

*Antitrust Claims: Sherman Act Sections 1 and 2*

*Relevant Market – Necessity of Proof*

If, after considering all the evidence, you find that the Plaintiffs have proven by a preponderance of the evidence both a relevant product or service market and a relevant geographic market and/or submarket(s) relating thereto, then you must find that Plaintiffs have met the relevant market requirement and you must consider the remaining elements of this claim.

If you find that the Plaintiffs have failed to prove by a preponderance of the evidence either a relevant product or service market or a relevant geographic market, and/or submarket(s) relating thereto, then you must find for the Defendants and against the Plaintiffs on this claim.[18]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 23 on the grounds that it contains vague and undefined terms. Plaintiffs have neglected to define either "geographic market" or "service market."

---

[17] This instruction is applicable to Plaintiffs' § 1 claims only to the extent that the Court does not apply the "Quick Look Doctrine."

[18] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-15 (2005).

46

June 2, 2008

**Jury Instruction 24**

*Antitrust Claims: Sherman Act Section 1*

*Rule of Reason – Evidence of Competitive Benefits*

If you find that Plaintiffs have proved that the challenged restraint resulted in substantial harm to competition in a relevant market and/or submarket(s) relating thereto, then you next must determine whether the restraint also benefits competition in other ways. In this case, Defendants contend that the challenged restraint benefits competition the following way(s): the Defendants, certain men's professional tournaments, and certain men's professional tennis players will make more money because consumers in the relevant output market(s) will pay more therein. If you find that Defendants have proven that the challenged restraint does result in competitive benefits, then you also must consider whether the restraint was reasonably necessary to achieve the benefits. If Plaintiffs prove that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraint.[19]

**<u>Defendants' Objection</u>**

Defendants object to Plaintiffs' Proposed Jury Instruction 24 on the grounds that it contains an inaccurate and argumentative characterization of Defendants' contentions as to the pro-competitive benefits of their challenged actions.

---

[19] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION A-10 (2005).

June 2, 2008

## Jury Instruction 25[20]

*Antitrust Claims: Sherman Act Section 1*

*Rule of Reason – Balance of Harms*

If you find that the challenged restraint was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint. If the competitive harm outweighs the competitive benefits, then the challenged restraint is unreasonable. If the competitive harm does not outweigh the competitive benefits, then the challenged restraint is not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors.[21]

## **Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 25 on the grounds that it misstates the law. Plaintiffs bear the burden of proving that the alleged competitive harm <u>substantially</u> outweighs the pro-competitive benefits. Furthermore, the title should read "Balancing the Competitive Effects," as it is by definition impossible to balance harms.

---

[20] This instruction is applicable to Plaintiffs' § 1 claims only to the extent that the Court does not apply the "Quick Look Doctrine."

[21] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION A-12 (2005).

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 26**[22]

*Sherman Act Section 1 - Contract, Combination or Conspiracy*

*Definition, Existence and Evidence*

Plaintiffs allege that Defendants participated in a conspiracy to restrain trade by agreeing among themselves (and additionally with non-party co-conspirators, including the owners of certain favored men's tennis tournaments (who would otherwise compete with each other throughout the United States and around the world)), to (i) control and reduce the supply of top professional men's tennis players' services by requiring those players to participate in all of the ATP's favored tournaments in order to meaningfully participate in the Tour, thereby precluding the non-favored ATP tournaments, and all non-ATP tournaments, from competing for those players in an open market and from conducting events that will attract meaningful fan or sponsor support; (ii) limit the number and output of top-flight professional men's tennis tournaments while excluding all others from competition, thereby deriving cartel-related, monopoly profits; (iii) fix the prices that can be paid to attract professional men's tennis players to those tournaments; (iv) pool their broadcast rights while limiting the media outlets that can be used to broadcast and market tournaments to further, illegally, derive monopoly profits; (v) boycott any potentially competing tournaments that refuse to join or support their illegal cartel; and (vi) divide calendar-based markets for tournaments among themselves.

A conspiracy is an agreement by two or more persons to accomplish some unlawful purpose or to accomplish a lawful purpose by unlawful means.

Plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

---

[22] This instruction is applicable to Plaintiffs' § 1 claims only to the extent that the Court does not apply the "Quick Look Doctrine."

June 2, 2008

First, that the alleged conspiracy existed; and

Second, that Defendant(s) knowingly became a member of that conspiracy; knowingly means voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

A conspiracy is a kind of "partnership" in which each person found to be a member of the conspiracy is liable for all acts and statements of the other members made during the existence of and in furtherance of the conspiracy. To create such a relationship, two or more persons must enter into an agreement that they will act together for some unlawful purpose or to achieve a lawful purpose by unlawful means. This kind of "partnership" is known as a "cartel."

To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement; that they met together; or that they directly stated what their object or purpose was, or the details of it, or the means by which they would accomplish their purpose. The agreement itself may have been entirely unspoken. What the evidence must show to prove that a conspiracy existed is that the alleged members of the conspiracy in some way came to an agreement to accomplish a common purpose. It is the agreement to act together that constitutes the conspiracy. Whether the agreement succeeds or fails does not matter.

A conspiracy may be formed without all parties coming to an agreement at the same time, such as where competitors, without previous agreement, separately accept invitations to participate in a plan to restrain trade. The agreement may be shown if the proof establishes that the parties knowingly worked together to accomplish a common purpose. It is not essential that all persons acted exactly alike, nor it is necessary that they all possessed the same motive for entering the agreement.

June 2, 2008

Direct proof of an agreement may not be available. A conspiracy may be disclosed by the circumstances or by the acts of the members. Therefore, you may infer the existence of an agreement from what you find the alleged members actually did, as well as from the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not establish the existence of a conspiracy unless the evidence tends to exclude the possibility that the persons were acting independently. If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

It is not necessary that the evidence show that all of the means or methods claimed by Plaintiffs were agreed upon to carry out the alleged conspiracy; nor that all of the means or methods that were agreed upon were actually used or put into operation; nor that all the persons alleged to be members of the conspiracy actually were members. What the evidence must show is that the alleged conspiracy of two or more persons existed, that one or more of the means or methods alleged was used to carry out its purpose, and that Defendant(s) knowingly became a member of the conspiracy.

In determining whether an agreement has been proved, you must view the evidence as a whole and not piecemeal. In considering the evidence, you first should determine whether or not the alleged conspiracy existed. If you conclude that the conspiracy did exist, you should next determine whether the each defendant knowingly became a member of that conspiracy with the intent to further its purposes. [23]

---

[23]   ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-2 (2005).

June 2, 2008

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 26 on the grounds that it is inaccurate, argumentative, and confusing. Defendants specifically object to Plaintiffs' proposed recitation of their alleged restraints as unnecessary in this instruction and confusing to the jury. Defendants further object to Plaintiffs' emphasis on the elements of a conspiracy as unnecessarily confusing. To the extent Plaintiffs' alleged non-party co-conspirators are ATP Member Tournaments, and to the extent that Plaintiffs' allege the "conspiracy" to participation as ATP members, officers or directors, there is no disputed question of fact that the elements of a conspiracy are satisfied.

06/02/2008 10:18 PM

June 2, 2008

**Jury Instruction 27**

*Antitrust Claims: Sherman Act Section 1 - Anticompetitive Actions - Horizontal Price Fixing*

*General Elements*

Plaintiffs claim that they were injured because Defendants conspired to fix prices in the relevant market.

Under the Sherman Act it is illegal for competitors, regardless of their size or amount of sales, to agree to the prices to be charged for their competing products or to be paid for input services or products they use in creating their products.

An agreement can violate this rule even if there is not an agreement on the exact price charged. For example, it is illegal for competitors to agree on maximum or minimum prices or a range within which prices will fall.

It is also illegal for competitors to agree on a plan or scheme that will tend to stabilize prices.

Any agreement to agree on maximum or minimum prices that can be paid for player services; to set specific prices for player services; to eliminate or limit guarantees or appearance fees; to stabilize prices or to limit prices through mandatory participation requirements is illegal.

To prevail against Defendants on a price-fixing claim, Plaintiffs must prove, by a preponderance of the evidence:

**First**, that an agreement to fix the price paid for player services existed;

**Second**, that Defendants knowingly - that is, voluntarily and intentionally - became a party to that agreement; and

**Third**, that the agreement caused Plaintiffs to suffer an injury to their business or property.

6267/20504-015 Current/11275801v1                                                    06/02/2008 10:18 PM

June 2, 2008

If you find the evidence is insufficient to prove any one or more of these elements as to a particular Defendant, then you must find for that particular Defendant and against Plaintiffs on the Plaintiffs' price-fixing claim against that specific Defendant. If you find that the evidence is sufficient to prove all three elements as to a particular Defendant, then you must find for Plaintiffs and against that particular Defendant on Plaintiffs' price-fixing claim.[24]

**Defendants' Objection**

Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried. Defendants additionally object to Plaintiffs' Proposed Jury Instruction 27 on the grounds that it misstates the law to the extent it asserts a *per se* standard must be applied to this claim and fails to require Plaintiffs to prove a relevant market, that the alleged agreement existed between separate entities that are horizontal competitors, and that Plaintiffs suffered antitrust injury. Additionally, Plaintiffs' Proposed Jury Instruction 27 is unreasonably vague in that it fails to identify the market in which prices were allegedly fixed or any "products they use in creating their products." Defendants further object to the fifth paragraph of Plaintiffs' Proposed Jury Instruction 27 in its entirety as inaccurate and not appropriate in this instruction.

---

[24] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-19 (2005).

54

June 2, 2008

**Jury Instruction 28**

*Antitrust Claims: Sherman Act Section 1 - Anticompetitive Actions - Horizontal Price Fixing*

*Good Intent Not a Defense*

    If you find that any of the Defendants engaged in a price-fixing conspiracy, it is not a defense that a Defendant acted with good motives or thought his or her conduct was legal, or that the conduct may have had some good results.[25]

**Defendants' Objections**

    Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried. Defendants additionally object to Plaintiffs' Proposed Jury Instruction 28 on the grounds that it misstates the law to the extent it asserts a *per se* standard must be applied to this claim.

---

[25]  ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-26 (2005).

June 2, 2008

**Jury Instruction 29**

*Antitrust Claims: Sherman Act Section 1 - Anticompetitive Actions - Horizontal Price Fixing*

*Reasonableness of Prices Is No Excuse*

The Sherman Act makes agreements among competitors to fix prices unlawful, regardless of whether the prices that are fixed are reasonable. Therefore, if you find that a price-fixing conspiracy existed, it does not matter whether the prices agreed upon were high or low or reasonable or unreasonable.[26]

**<u>Defendants' Objection</u>**

Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried.

---

[26] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-27 (2005).

June 2, 2008

**Jury Instruction 30**

*Antitrust Claims: Sherman Act Section 1 - Anticompetitive Actions - Horizontal Price Fixing*

*Evidence of Competition*

Evidence that Defendants actually engaged in price competition with each other in some manner has been admitted to assist you in deciding whether they entered into an agreement to fix prices. If you find that Defendants agreed to fix, limit, or stabilize the price paid for player services or charged to consumers, however, it is no defense that Defendants actually competed in some respects with each other or that they did not eliminate all competition between them. Similarly, a price-fixing agreement is unlawful even if it did not extend to all services sold or purchased by Defendants or did not affect all of their customers.[27]

**Defendants' Objection**

Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried. Defendants additionally object to Plaintiffs' Proposed Jury Instruction 30 on the grounds that it is unreasonably confusing and erroneous in that Plaintiffs have not alleged that Defendants have conspired to fix prices charged to consumers.

---

[27] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-28 (2005).

57

June 2, 2008

**Jury Instruction 31**

*Antitrust Claims: Sherman Act Section 1 - Anticompetitive Actions - Horizontal Price Fixing*

*Evidence of Price Charged*

Evidence of the prices actually paid and that will be paid for player services, and evidence of prices actually charged and that will be charged to consumers by Defendants, has been admitted to assist you in deciding whether they agreed to fix prices as claimed by Plaintiffs. Such evidence may lead you to conclude that Defendants never entered into the alleged price-fixing conspiracy. Or it may lead you to conclude that Defendants made an agreement but failed always to live up to it, or undercut one another, or offered prices different from those agreed upon to certain customers. If you find that Defendants agreed to fix prices, the fact that they did not observe that agreement on every occasion or for every customer is not a defense.[28]

**Defendants' Objection**

Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried.

---

[28]   ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-29 (2005).

June 2, 2008

**Jury Instruction 32**

*Antitrust Claims: Sherman Act Section 1 - Anticompetitive Actions - Horizontal Non-Price*
*Restraints*

*Allocation of Customers or Suppliers*

Plaintiffs claim that Defendants have violated the Sherman Act by agreeing to allocate player services and customers for whom they would otherwise have competed. To "allocate" means to divide up.

A business has the right to select its suppliers and customers on its own and to purchase its supplies and to sell its products to whomever it chooses. Likewise, a business may decide not to purchase certain services or not to solicit or sell to a customer, provided the decision is an independent judgment. A business may not, however, agree with its competitors to allocate its suppliers or its customers.

A conspiracy to allocate suppliers or customers is an agreement between two or more competitors not to compete with each other for the business of particular suppliers or customer. Supplier allocation exists, for example, where two or more competitors agree that they will not buy or try to buy each other's existing suppliers or will only purchase inputs, such as player services, by some other, agreed-upon criteria. Customer allocation exists, for example, where two or more competitors agree that they will not sell or try to sell to each other's existing customers or to certain customers by some other, agreed-upon criteria.

To prevail on this claim against a Defendant, Plaintiffs have the burden of proving as to that Defendant each of the following elements by a preponderance of the evidence:

June 2, 2008

**First**, that that one or more of the Defendants and/or other persons agreed that they would allocate the supply of men's professional tennis players or customers such as sponsors and broadcasters; and

**Second**, that Plaintiffs were injured in their business or property because of the agreement.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular Defendant, then you must find for that Defendant and against Plaintiffs on Plaintiffs' customer allocation claim against that individual Defendant. If you find that the evidence is sufficient to prove all three elements as to that Defendant, then you must find for Plaintiffs and against that Defendant on Plaintiffs' customer allocation claim.[29]

**Defendants' Objection**

Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried. Defendants further object to Plaintiffs' Proposed Jury Instruction 32 on the grounds that it misstates the law to the extent it asserts a *per se* standard must be applied to this claim and fails to require Plaintiffs to prove a relevant market, that the alleged agreement existed between separate entities that are horizontal competitors, and that Plaintiffs suffered antitrust injury. Defendants further object to Plaintiffs' offered definition of "supplier allocation" as inaccurate, impermissibly vague and confusing.

---

[29] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-39 (2005).

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 33**

*Antitrust Claims: Sherman Act Section 1 - Anticompetitive Actions - Horizontal Non-Price Restraints*

*Allocation of Territories*

Plaintiffs claim that Defendants and certain favored tournaments have violated the Sherman Act by conspiring to allocate territories or geographical areas in which they would otherwise have competed for the purchase of player services and calendar positions and the sale of sponsorships and broadcast rights.

A business has the right to select on its own the geographic area or market in which it will sell its products or services. Likewise, a business may decide not to sell it products or services in a particular area or market, provided that the decision results from the exercise of an independent business judgment and not from any agreement with a competitor. The Sherman Act, however, prohibits any agreement among competitors to allocate the territories or geographic area in which they will market or sell their products or services.

A conspiracy to allocate territories is an agreement between two or more competitors not to compete with each other in a particular geographic area. Territorial allocation exists, for example, where two or more competitors agree that they will each confine their sales efforts to a different geographic area.

To prevail on this claim against a Defendant, Plaintiffs have the burden of proving as to that Defendant each of the following elements by a preponderance of the evidence:

**First,** that that Defendant and one or more other persons agreed that allocate territories or geographical areas in which they would otherwise have competed for the purchase of

June 2, 2008

player services and calendar positions and the sale of sponsorships and broadcast rights; and

**Second**, that Plaintiffs were injured in their business or property because of that agreement.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular Defendant, then you must find for that Defendant and against Plaintiffs on Plaintiffs' territorial allocation claim. If you find that the evidence is sufficient to prove all three elements as to any Defendant, then you must find for Plaintiffs and against that Defendant on Plaintiffs' customer allocation claim.[30]

## Defendants' Objection

Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried. Defendants further object to Plaintiffs' Proposed Jury Instruction 33 on the grounds that it misstates the law to the extent it asserts a *per se* standard must be applied to this claim and fails to require Plaintiffs to prove a relevant market, that the alleged agreement existed between separate entities that are horizontal competitors, and that Plaintiffs suffered antitrust injury.

---

[30] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-42 (2005).

June 2, 2008

**Jury Instruction 34**

*Antitrust Claims: Sherman Act Section 1 - Anticompetitive Actions - Horizontal Non-Price*

*Restraints*

*Allocation of Markets*

Plaintiffs claim that Defendants and other persons have violated the Sherman Act by conspiring to allocate product or service markets in which they would otherwise have competed.

A business has the right to select on its own the products or services it will purchase or manufacture or sell. Likewise, a business may decide not to purchase or make or sell a product or service, provided that the decision results from the exercise of an independent business judgment and not from any agreement with a competitor. The Sherman Act, however, prohibits any agreement among competitors to allocate product or service markets.

A conspiracy to allocate product or service markets is an agreement between two or more competitors not to compete with each other in the manufacture, sale or purchase of a particular product or service. Product market allocation exists, for example, where two or more competitors agree that a product sold by one of them will not be sold by the other.

To prevail on this claim against a Defendant, Plaintiffs have the burden of proving as to that Defendant each of the following elements by a preponderance of the evidence:

> **First**, that the Defendants agreed with one another and with one or more other persons that they would not compete for player services, geographic or calendar positions, sponsorships, broadcasters, or live tennis fans; and

> **Second**, that Plaintiffs were injured in their business or property because of that agreement.

June 2, 2008

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular Defendant, then you must find for that Defendant and against Plaintiffs on Plaintiffs' product or service market allocation claim. If you find that the evidence is sufficient to prove both elements as to that Defendant, then you must find for Plaintiffs and against that Defendant on Plaintiffs' product or service allocation claim.[31]

**Defendants' Objection**

Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried. Defendants further object to Plaintiffs' Proposed Jury Instruction 34 on the grounds that it misstates the law to the extent it asserts a *per se* standard must be applied to this claim and fails to require Plaintiffs to prove a relevant market, that the alleged agreement existed between separate entities that are horizontal competitors, and that Plaintiffs suffered antitrust injury.

---

[31] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-45 (2005).

64

June 2, 2008

**Jury Instruction 35**

*Antitrust Claims: Sherman Act Section 1 - Anticompetitive Actions - Horizontal Non-Price*
*Restraints*

*Agreement to Limit Production*

Plaintiffs claim that Defendants, collectively and with other persons, have violated the Sherman Act by conspiring to limit (or cap) the production of top-tier men's professional tennis.

A business has the right to determine on its own how much of its product or service it will produce. The Sherman Act, however, prohibits any agreement among competitors that limits how much of a product or service one or more of them will produce.

A conspiracy to limit production or sale of services is an agreement between two or more competitors to limit the output of one or more of them or to limit the availability of their product or service.

To prevail on this claim against a Defendant, Plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

> **First**, that the Defendant(s) agreed collectively or with one or more other persons that they would cap the production of top-tier men's professional tennis; and
>
> **Second**, that Plaintiffs were injured in their business or property because of that agreement.

If you find that the evidence is insufficient to prove any one or both of these elements as to a defendant, then you must find for that defendant and against Plaintiffs on Plaintiffs' claim that the Defendant(s) conspired to limit production. If you find that the evidence is sufficient to

June 2, 2008

prove both elements as to that Defendant, then you must find for Plaintiffs and against that Defendant on Plaintiffs' claim with respect to an agreement to limit production. [32]

## Defendants' Objection

Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried. Defendants further object to Plaintiffs' Proposed Jury Instruction 35 on the grounds that it misstates the law to the extent it asserts a *per se* standard must be applied to this claim and fails to require Plaintiffs to prove a relevant market, that the alleged agreement existed between separate entities that are horizontal competitors, and that Plaintiffs suffered antitrust injury.

---

[32] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-48 (2005).

66

June 2, 2008

**Jury Instruction 36**

*Antitrust Claims: Sherman Act Section 1 - Anticompetitive Actions - Horizontal Non-Price*

*Restraints*

*Group Boycott – Elements of Per Se Unlawful Horizontal Concerted Refusal to Deal*

      Plaintiffs have alleged that Defendants, collectively and with other persons, have violated

the Sherman Act by agreeing with each other not to deal with the Plaintiffs or by agreeing to deal

with Plaintiffs only on exclusionary terms.

      A business has the right to deal, or refuse to deal, with whomever it likes, as long as it

makes that decision on its own.  The Sherman Act, however, prohibits two or more persons or

businesses from agreeing with each other not to allow for the provision of necessary inputs such

as player services, membership rights or calendar dates where certain circumstances are shown to

exist, a situation sometimes referred to as a "group boycott."

      To prevail on this claim against a Defendant, Plaintiffs have the burden of proving as to

that Defendant each of the following elements by a preponderance of the evidence:

      **First**, that the Defendant and one or more other persons refused to deal with the Plaintiffs

      by not selling or providing player services, calendar positions or other necessary inputs to

      Plaintiffs;

      **Second**, that the refusal to deal was pursuant to an agreement in and among the

      Defendants or the Defendants and one or more other persons or businesses; and

      **Third**, that at least two of the parties to the agreement are direct competitors;

      **Fourth**, that the refusal to deal disadvantaged Plaintiffs by denying Plaintiffs access to a

      supply of product or a market or service necessary for Plaintiffs to compete effectively;

      and

June 2, 2008

**Fifth**, that Plaintiffs were injured in their business or property because of the refusal to deal.

If you find that the evidence is insufficient to prove any one or more of these elements as to a Defendant, then you must find for that Defendant and against Plaintiffs on Plaintiffs' concerted refusal to deal claim. If you find that the evidence is sufficient to prove all six elements as to that Defendant, then you must find for Plaintiffs and against that Defendant on Plaintiffs' concerted refusal to deal claim.[33]

**Defendants' Objection**

Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried. Defendants further object to Plaintiffs' Proposed Jury Instruction 36 on the grounds that it misstates the law to the extent it asserts a *per se* standard must be applied to this claim and fails to require Plaintiffs to prove the existence of a relevant market or that they suffered antitrust injury. Defendants also object to Plaintiffs' definition of "group boycott" as vague, inaccurate and argumentative. Finally, Defendants object to the repeated recitation of Plaintiffs' allegations as unnecessary in this instruction and confusing to the jury.

---

[33] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-50 (2005).

June 2, 2008

**Jury Instruction 37**

*Antitrust Claims: Sherman Act Section 1 - Anticompetitive Actions - Horizontal Non-Price Restraints*

*Associations – Exclusion*

Plaintiffs have claimed that the Defendants violated the Sherman Act when they terminated Plaintiffs' membership rights. The termination of membership rights in an association may constitute a violation of the Sherman Act only under certain circumstances.

Persons who are in competition with each other in an industry, trade, or profession may lawfully join together in an association for the purpose of promoting legitimate goals such as product quality, safety standards, consumer confidence, or other interest of the industry, trade, or profession.

To accomplish its goals, a trade association will usually have to make and enforce rules and requirements for participation. If those rules are reasonably necessary to accomplish a pro-competitive purpose, they can be applied without violating the law. However, if the association's rules significantly impair competition in a relevant market without a legitimate justification, the use of those rules to exclude the plaintiff violates the Sherman Act.

To prevail on their claim that the Defendants' termination of membership rights constituted such a violation, Plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

> **First,** that the Defendants possess market power or have unique access to a business element necessary to effective competition in the relevant market and/or submarket(s) relating thereto, so that membership in the ATP Tour, Inc. is necessary for Plaintiffs to compete effectively in that market and/or submarket(s) relating thereto.

June 2, 2008

**Second**, that the restriction on membership is not reasonably necessary or tailored to achieve the association's legitimate goals or is applied unreasonably broadly, or is not based on objective standards; and

**Third**, that Plaintiffs were injured in their business or property because they were denied membership rights in the ATP Tour, Inc.

If you find that the evidence is insufficient to prove any one or more of these elements as to any individual Defendant, then you must find for that Defendant and against Plaintiffs on Plaintiffs' termination of membership rights claim. If you find that the evidence is sufficient to prove all four elements as to a Defendant, then you must find for the Plaintiffs and against that particular Defendant on Plaintiffs' denial of membership claim.[34]

## Defendants' Objection

Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried. Defendants further object to Plaintiffs' Proposed Jury Instruction 37 on the grounds that it misstates the law to the extent that it fails to require Plaintiffs to prove a relevant market or that Plaintiffs suffered antitrust injury.

---

[34] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-57 (2005).

REDACTED VERSION → PUBLICLY FILED

June 2, 2008

**Jury Instruction 38**

*Antitrust Claims: Sherman Act Section 2 – Monopolization*

*General Elements*

Plaintiffs allege that they were injured by the Defendants' unlawful monopolization of the markets for player services, tournament memberships and sanctions, sponsorships, broadcasters and fans. To prevail on this claim, Plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

**First**, that the alleged market is a valid antitrust market;

**Second**, that the ATP Tour possessed monopoly power in that market;

**Third**, that the Defendants "willfully" acquired or maintained monopoly power in that market by engaging in anticompetitive conduct; and

**Fourth**, that the Plaintiffs were injured in their business or property because of the Defendants' anticompetitive conduct.

If you find that Plaintiffs have failed to prove any of these elements as to any Defendant, then you must find for that Defendant and against Plaintiffs on this claim. If you find that Plaintiffs have proved each of these elements by a preponderance of the evidence, then you must find for Plaintiffs and against Defendants on this claim.[35]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 38 on the grounds that Defendants' alleged markets are vague and insufficiently defined. Defendants further object on the grounds that this instruction misstates the law in that it does not require Plaintiffs to prove

---

[35] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-2 (2005).

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

that they suffered antitrust injury.  Defendants further object to the recitation of Plaintiffs'

allegations as unnecessary in this instruction and confusing to the jury.

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 39**

*Antitrust Claims: Sherman Act Section 2 - Monopolization*

*Monopoly Power Defined*

Monopoly power is the power to control prices and exclude competition in a relevant antitrust market.  More precisely, a firm is a monopoly if it can profitably raise prices substantially above the competitive level for a significant period of time.  To prove their monopolization claim, one of the elements Plaintiffs must prove is that the ATP Tour has monopoly power in a relevant antitrust market.  However, monopoly ownership, in and of itself, is not unlawful.

I will provide further instructions about how you may determine whether Plaintiffs have met their burden of proving monopoly power in a relevant market.[36]

**Defendants' Objection**

No objection.

---

[36] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-4 (2005).

June 2, 2008

**Jury Instruction 40**

*Antitrust Claims: Sherman Act Section 2 – Monopolization*

*Existence of Monopoly Power – Indirect Proof*

If you find that Plaintiffs have proven a relevant market and/or submarket(s) relating thereto, then you should determine whether the ATP Tour has monopoly power in that market and/or submarket. As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market. Plaintiffs have attempted to use evidence of the structure of the market to show that the ATP Tour has monopoly power. The evidence presented by the parties includes evidence of the ATP Tour's market share, market share trends, barriers to entry, entry and exit by other companies, and the number and size of other competitors. If this evidence establishes that the ATP Tour has the power to control prices and exclude competition in the relevant antitrust market(s) and/or submarket(s) relating thereto, then you may conclude that the ATP Tour has monopoly power in that market(s).

**Market Share**

The first factor that you should consider is the ATP Tour's market share. Based on the evidence that you have heard about the ATP Tour's market share, you should determine the ATP Tour's market share as a percentage of total industry sales and other aspects of the relevant market(s) and/or submarket(s) relating thereto, such as market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors. Along with the ATP Tour's market share, these factors should inform you as to whether the ATP Tour has monopoly power.

**Market Share Trends**

The trend in the ATP Tour's market share is something you may consider. An increasing market share may strengthen an inference that a company has monopoly power, particularly

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

where that company has a high market share, while a decreasing share might show that a company does not have monopoly power.

### Barriers to Entry

You may also consider whether there are barriers to entry into the relevant market(s) and/or submarket(s) relating thereto. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. Barriers to entry might include rules and regulations, intellectual property rights (such as trademarks or branding), controls over necessary inputs, specialized marketing practices, and the reputation of the entities already participating in the market (or the brand name recognition of their products or services).

Evidence of low or no entry barriers may be evidence that the ATP Tour does not have monopoly power, regardless of the ATP Tour's market share, because new competitors could enter easily if defendant attempted to raise prices for a substantial period of time. By contrast, evidence of high barriers to entry along with high market share may support an inference that defendant has monopoly power.

### Entry and Exit By Other Companies

The history of entry and exit in the relevant market(s) and/or submarket(s) relating thereto may be helpful to consider. Entry of new competitors or expansion of existing competitors may be evidence that defendant lacks monopoly power. On the other hand, departures from the market(s) and/or submarket(s), or the failure of firms to enter the market(s) and/or submarket(s), particularly if prices and profit margins are relatively high, may support an inference that defendant has monopoly power.

### Number and Size of Competitors

You may consider whether the ATP Tour's competitors are capable of effectively competing. In other words, you should consider whether the financial strength, market shares

June 2, 2008

and number of competitors act as a check on the ATP Tour's ability to price its products or services. If the ATP Tour's competitors are vigorous or have large or increasing market shares, this may be evidence that the ATP Tour lacks monopoly power. On the other hand, if you determine that the ATP Tour's competitors are weak or have small or declining market shares, this may support an inference that defendant has monopoly power.

### Conclusion

If you find that the ATP Tour has monopoly power in the relevant market(s) and/or submarket(s) relating thereto, then you must consider the remaining elements of this claim. If you find that the ATP Tour does not have monopoly power, then you must find for the ATP Tour and against the Plaintiffs on this claim.[37]

## Defendants' Objection

Defendants object to Plaintiffs' Proposed Jury Instruction 40 on the grounds that it is misleading, inaccurate and confusing. Defendants specifically object to Plaintiffs' erroneous inclusion of "market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors" as relevant measures of market share. Defendants further object to Plaintiffs' failure to explain the significance of market share, particularly with respect to the inference that a market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has monopoly power. Defendants also object to the inaccurate and misleading characterization of "trademarks and branding" as barriers to entry.

---

[37] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-16 (2005).

June 2, 2008

and number of competitors act as a check on the ATP Tour's ability to price its products or services. If the ATP Tour's competitors are vigorous or have large or increasing market shares, this may be evidence that the ATP Tour lacks monopoly power. On the other hand, if you determine that the ATP Tour's competitors are weak or have small or declining market shares, this may support an inference that defendant has monopoly power.

### Conclusion

If you find that the ATP Tour has monopoly power in the relevant market(s) and/or submarket(s) relating thereto, then you must consider the remaining elements of this claim. If you find that the ATP Tour does not have monopoly power, then you must find for the ATP Tour and against the Plaintiffs on this claim.[37]

### Defendants' Objection

Defendants object to Plaintiffs' Proposed Jury Instruction 40 on the grounds that it is misleading, inaccurate and confusing. Defendants specifically object to Plaintiffs' erroneous inclusion of "market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors" as relevant measures of market share. Defendants further object to Plaintiffs' failure to explain the significance of market share, particularly with respect to the inference that a market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has monopoly power. Defendants also object to the inaccurate and misleading characterization of "trademarks and branding" as barriers to entry.

---

[37] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-16 (2005).

6267/20504-015 Current/11275801v1                                    06/02/2008 10:18 PM

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 41**

*Antitrust Claims: Sherman Act Section 2 - Monopolization*

*Existence of Monopoly Power – Direct Proof*

If you find that plaintiffs have proven a relevant market(s) and/or submarket(s) relating thereto, then you should determine whether the ATP Tour has monopoly power in that market(s) and/or submarket(s). As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market or submarket. More precisely, a firm is a monopolist if it can profitably raise or maintain prices substantially above the competitive level for a significant period of time in an output market or lower and maintain prices substantially below the competitive level for a significant period of time in an input market.

Plaintiffs have the burden of proving that the ATP Tour has the ability to raise or maintain the prices that it charges for goods or services in the relevant market(s) and/or submarket(s) above competitive levels relating to broadcasters, sponsors, or fans or that the ATP Tour has the ability to lower or maintain the prices that it pays for goods or services in the relevant market(s) and/or submarket(s) below competitive levels relating to player services and/or sanctions and memberships. Plaintiffs must prove that the ATP Tour has the power to do so by itself – that is, without the assistance of, and despite competition from, any existing or potential competitors.

Plaintiffs also have the burden of proving that the ATP Tour has the power to maintain these prices for a significant period of time. If the ATP Tour attempted to maintain prices above (or below) competitive levels, but would lose so much business to other competitors that the artificial prices would become unprofitable and would have to be withdrawn, then the ATP Tour does not have monopoly power.

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

Similarly, Plaintiffs also have the burden of proving that the ATP Tour has the ability to exclude competition. The ability to sell at higher prices or buy at lower prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power. By contrast, evidence that the ATP Tour would lose a substantial amount of sales if it raised prices substantially for sales or lowered prices substantially for purchases, or that the ATP Tour's profit margins were low compared to its competitors, erratic, and/or decreasing, might be evidence that the ATP Tour does not have monopoly power.

If you find that the ATP Tour has monopoly power in the relevant market(s) and/or submarket(s) relating thereto, then you must consider the remaining elements of this claim.[38]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 41 on the grounds that it is misleading, inaccurate, and argumentative. This instruction fails to include examples of factors that would enable a company without monopoly power to sell at higher prices or earn higher profit margins than its competitors. This instruction also fails to explain that if the jury finds that ATP Tour does not have monopoly power, then the jury must find for Defendants and against Plaintiffs on this claim.

---

[38] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-23 (2005).

June 2, 2008

**Jury Instruction 42**

*Antitrust Claims: Sherman Act Section 2 - Monopolization*

*Willful Acquisition or Maintenance of Monopoly Power*

The next element Plaintiffs must prove is that the ATP Tour willfully acquired or maintained monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers within the relevant market(s) and/or submarket(s) relating thereto. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. In addition, you should distinguish the acquisition or maintenance of monopoly power through anticompetitive acts from the acquisition or maintenance of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, which is not lawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals – or the achievement of these goals – unlawful, as long as a company does not use anticompetitive means to achieve these goals.

June 2, 2008

In determining whether the ATP Tour's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

For example, suppose there are five firms that make printers for home computers and that these printers comprised a relevant product market. Suppose also that Firm A developed a more efficient manufacturing process that allowed it to sell profitably at a lower price than its competitors. If Firm A grew its market share and achieved monopoly power by selling profitably at a lower price, it would not be unlawful for Firm A to achieve monopoly power in this way. Developing more efficient processes and developing the ability to sell profitably at lower prices is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct even if it has a negative effect on competitors.

Similarly, in the same example, suppose Firm B developed and patented a revolutionary new printer and consumers so preferred Firm B's printer that Firm B achieved monopoly power. It would not be unlawful for Firm B to achieve monopoly power in this way. Firm B "built a better mousetrap," which is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct.

By contrast, in the same example, suppose not only that Firm C makes printers, but also that Firm C is the world's only manufacturer of computers and that there are barriers to entry in the computer market such that no other firm will be able to enter that market. Suppose also that Firm C altered its computers in such a way that only Firm C's printers would work with its computers, and that the alteration does not improve the design of Firm C's computers or provide

80

June 2, 2008

any benefits to competition or consumers - the only effect of the alteration is to exclude competing printer makers from the marketplace. If Firm C thereby prevented its printer competitors from competing and achieved monopoly power, it would be unlawful for Firm C to achieve monopoly power in the printer market in this way.

As these examples show, the acts or practices that result in the acquisition or maintenance of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. They must represent conduct that has made it very difficult or impossible for competitors to compete and that was not taken for legitimate business reasons. You may not find that a company willfully acquired or maintained monopoly power if it has acquired or maintained that power solely through the exercise of superior foresight and skill; or because of natural advantages such as unique geographic access to raw materials or markets; or because of economic or technological efficiency, including efficiency resulting from scientific research; or by obtaining a lawful patent; or because changes in cost or taste have driven out all but one supplier.

If you find that Plaintiffs have proven by a preponderance of the evidence that the ATP Tour willfully acquired or maintained monopoly power through anticompetitive acts, then you must consider whether the Plaintiffs have proved the remaining elements of this claim.[39]

**Defendants' Obejction**

Defendants object to Plaintiffs' Proposed Jury Instruction 42 on the grounds that it fails to explain that if Plaintiffs fail to prove that the ATP has not willfully acquired or maintained monopoly power, then the jury must find for Defendants and against Plaintiffs on this claim.

---

[39]  ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-26 (2005).

June 2, 2008

**Jury Instruction 43**

*Antitrust Claims: Sherman Act Section 2 - Attempt to Monopolize*

*General Elements*

Plaintiffs allege that they were injured by Defendants' unlawful attempt to monopolize. To prevail on its claim of attempted monopolization, Plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

**First**, that Defendants engaged in anticompetitive conduct.

**Second**, that Defendants had a specific intent to achieve monopoly power in a relevant market and/or submarket(s) relating thereto;

**Third**, that there was a dangerous probability that Defendants would achieve their goal of monopoly power in the relevant market and/or submarket(s) relating thereto; and

**Fourth**, that Plaintiffs were injured in their business or property by Defendants' anticompetitive conduct.

If you find that the evidence is insufficient to prove any one or more of these elements against any specific Defendant, then you must find for Defendants and against Plaintiffs on Plaintiffs' claim of attempted monopolization. If you find that the evidence is sufficient to prove all four elements as to a Defendant, then you must find for Plaintiffs and against that Defendant on Plaintiffs' claim of attempted monopolization. [40]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 43 on the grounds that it misstates the law to the extent that it fails to require Plaintiffs to prove the existence of both a relevant product market and a relevant geographic market or that they suffered antitrust injury.

---

[40]    ABA   SECTION   OF   ANTITRUST   LAW,   MODEL   JURY   INSTRUCTIONS   IN   CIVIL ANTITRUST CASES, 2005 EDITION C-84 (2005).

06/02/2008 10:18 PM

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

6267/20504-015 Current/11275801v1

06/02/2008 10:18 PM

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 44**

*Antitrust Claims: Sherman Act Section 2 - Attempt to Monopolize*

*Proof of Intent*

The second element that Plaintiffs have the burden of proving that Defendants had a specific intent to monopolize a relevant market(s) and/or submarket(s) relating thereto. To do so, Plaintiffs must first prove that one of the markets and/or submarket(s) they are talking about is a relevant market or submarket for antitrust purposes. These markets include the market for top-tier men's professional tennis and the related submarkets for top men's professional tennis player services; the market for memberships and/or sanctions on the ATP Tour; the market for broadcasters of top-tier men's professional tennis; the market for sponsorships of top-tier men's professional tennis; and the market for fans of top-tier men's professional tennis. Plaintiffs must then prove that Defendants had a specific intent to monopolize that market(s) or submarket(s). The Court has instructed you on the relevant market(s) and/or submarket(s), and the Court will next discuss specific intent. If Plaintiffs prove both that a market is a relevant market and that Defendants had a specific intent to monopolize that market, you must find that Plaintiffs have proven this element of their attempted monopolization claim and you should consider the other elements of the claim.

If you find that Plaintiffs have proven a relevant market(s) and/or submarket(s), you must then decide whether Defendants had the specific intent to monopolize that market(s) or submarket(s). In other words, you must decide if the evidence shows that Defendants acted with the conscious aim of acquiring the power to control prices and to exclude or destroy competition in the relevant market(s) and/or submarket(s).

84

June 2, 2008

There are several ways in which Plaintiffs may prove that Defendant(s) had the specific intent to monopolize. There may be evidence of direct statements of Defendants' intent to obtain a monopoly in the relevant market(s) and/or submarket(s). Such proof of specific intent may be established by documents prepared by responsible officers or employees of Defendant(s) at or about the time of the conduct in question or by testimony concerning statements made by responsible officers or employees of Defendant(s). You must be careful, however, to distinguish between a Defendant's intent to compete aggressively (which is lawful), which may be accompanied by aggressive language, and a true intent to acquire monopoly power by using anticompetitive means.

Even if you decide that the evidence does not prove directly that Defendants actually intended to obtain a monopoly, specific intent may be inferred from what Defendants did. For example, if the evidence shows that the natural and probable consequence of Defendants' conduct in the relevant market(s) and/or submarket(s) was to give Defendants control over prices and to exclude or destroy competition, and that this was plainly foreseeable by Defendants, then you may (but are not required to) infer that Defendants specifically intended to acquire monopoly power.[41]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 44 on the grounds that it fails to explain that if Plaintiffs fail to prove either the existence of a relevant market or Defendants' specific intent to monopolize that market, the jury must find for Defendants on this claim. Defendants further object to the unnecessarily duplicative and confusing recitation of the markets

---

[41] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-90 (2005).

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

Plaintiffs purport to allege, particularly without a clarification that these are only Plaintiffs' allegations.

06/02/2008 10:18 PM

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 45**

*Antitrust Claims: Sherman Act Section 2 - Attempt to Monopolize*

*Danger of Success*

If you find that Defendants had the specific intent to achieve a monopoly and engaged in significant anticompetitive conduct, you also must determine if the evidence shows the next element of attempt to monopolize: namely, that there was a dangerous probability that Defendant(s) would succeed in achieving monopoly power if they continued to engage in the same or similar conduct.

In determining whether there was a dangerous probability that defendants would acquire the ability to control price in the market(s) and/or submarket(s) relating thereto, you should consider such factors as:

**First**, the ATP Tour, Inc.'s market share;

**Second**, the trend in the ATP Tour, Inc.'s market share;

**Third**, whether the barriers to entry into the market(s) made it difficult for competitors to enter the market(s); and

**Fourth**, the likely effect of any anticompetitive conduct on the ATP Tour, Inc.'s share of the market(s).

Again, the purpose of looking at these and other factors is to determine whether there was a dangerous probability that Defendant(s) would ultimately acquire monopoly power. A dangerous probability of success need not mean that success was nearly certain, but it does mean that there was a substantial and real likelihood that Defendant(s) would ultimately acquire monopoly power.[42]

---

[42]    ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-95 (2005).

June 2, 2008

**Defendants' Objection**

No objection.

06/02/2008 10:18 PM

June 2, 2008

**Jury Instruction 46**

*Antitrust Claims: Sherman Act Section 2 - Conspiracy to Monopolize*

*General Elements*

Plaintiffs allege a conspiracy to monopolize in violation of Section 2 of the Sherman Act, which declares unlawful every conspiracy to monopolize interstate or foreign commerce.

To prevail against Defendant(s) on their claim of conspiracy to monopolize, Plaintiffs have the burden of proving by a preponderance of the evidence as to Defendant(s) each of the following elements:

**First,** that an agreement or mutual understanding between two or more persons to obtain or maintain monopoly power in the market for men's professional tennis and/or submarket(s) relating thereto existed;

**Second,** that Defendant(s) knowingly - that is, voluntarily and intentionally - became a party to that agreement or mutual understanding;

**Third,** that Defendant(s) specifically intended that the parties to the agreement would obtain or maintain monopoly power in the market for men's professional tennis and/or submarket(s) relating thereto;

**Fourth,** that Defendant(s) committed an overt act in furtherance of the conspiracy;

**Fifth,** that Defendant's (or Defendants') activities occurred in or affected interstate or foreign commerce; and

**Sixth,** that Plaintiffs were injured in their business or property because of the conspiracy to monopolize.

June 2, 2008

      If you find that the evidence is sufficient to prove each element as to a Defendant, then you must find for Plaintiffs and against that Defendant on Plaintiffs' conspiracy to monopolize claim.[43]

## Defendants' Objection

      Defendants object to Plaintiffs' Proposed Jury Instruction 46 on the grounds that fails to require Plaintiffs to prove the existence of both a relevant product market and a relevant geographic market or that they suffered antitrust injury.  Defendants further object to this instruction on the grounds that it fails to explain that if Plaintiffs fail to prove each element by a preponderance of the evidence, the jury must find for Defendants on this claim.

---

[43]    ABA  SECTION  OF  ANTITRUST  LAW,  MODEL  JURY  INSTRUCTIONS  IN  CIVIL ANTITRUST CASES, 2005 EDITION C-100 (2005).

        

June 2, 2008

**Jury Instruction 47**

*Antitrust Damages: Sherman Act Sections 1 and 2*

*Introduction and Purposes*

If you find that Defendant(s) violated section 1 or Section 2 of the Sherman Act and that this violation caused injury to Plaintiffs, then you must determine the amount of damages, if any, that Plaintiffs are entitled to recover. The law provides that Plaintiffs should be fairly compensated for all damages to their business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful. Once the Plaintiffs prove the fact of injury, they are allowed considerable latitude in proving the amount of damages resulting from that injury. No mechanical test or formula requires that damage proof conform to a particular theory or model.

The purpose of awarding damages in an antitrust case is to put injured plaintiffs as near as possible in the position in which they would have been if the alleged antitrust violation had not occurred. The law does not permit you to award damages to punish a wrongdoer - what we sometimes refer to as punitive damages - or to deter defendants from particular conduct in the future or to provide a windfall to someone who has been the victim of an antitrust violation. You are also not permitted to award to plaintiffs an amount for attorney fees or the costs of maintaining the lawsuit. Antitrust damages are compensatory only. In other words, they are designed to compensate plaintiffs for the particular injuries they suffered as a result of the alleged violation of the law.[44]

---

[44] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION F-12 (2005).

6267/20504-015 Current/11275801v1                                                                06/02/2008 10:18 PM

June 2, 2008

**Defendants' Objection**

      Defendants object to Plaintiffs' Proposed Jury Instruction 47 on the grounds that it includes language not found in the Model Instruction that impermissibly reduces the burden on Plaintiffs to prove their damages by reliable methods grounded in the evidence.

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 48**

*Antitrust Damages: Sherman Act Sections 1 and 2*

*Antitrust Injury*

Here, Plaintiffs are seeking to recover damages to their business and property arising out of Defendants' anticompetitive actions and/or Defendants' monopolization, attempted monopolization and/or conspiracy to monopolize the markets for top-tier men's professional tennis and submarkets relating thereto, including the submarkets for top men's professional tennis players, memberships and sanctions, broadcasters, sponsors, and/or fans.

Plaintiffs are entitled to recover damages for an injury to their business or property if they can establish that:

(1)     Plaintiffs were in fact injured as a result of Defendants' alleged violation of the antitrust laws;

(2)     Defendants' alleged illegal conduct was a material cause of Plaintiffs' injuries; and

(3)     Plaintiffs' injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For Plaintiffs to establish that they are entitled to recover damages, they must prove that they were injured as a result of Defendants' alleged violation. Proving the fact of damage does not require Plaintiffs to prove the dollar value of their injury. It requires only that Plaintiffs prove that they were in fact injured by Defendants' alleged antitrust violation. If you find that Plaintiffs have established they were in fact injured, you may then consider the amount of Plaintiffs' damages.

June 2, 2008

Plaintiffs must also offer evidence that establishes as a matter of fact that Defendants' alleged illegal conduct was a material cause of Plaintiffs' injuries. This means that Plaintiffs must have proved that some damage occurred as a result of Defendants' alleged antitrust violation, and not just some other cause. Plaintiffs are not required to prove that Defendants' alleged antitrust violation was the sole cause of their injury. It is enough if Plaintiffs have proved that the alleged antitrust violation was a material cause of their injury.

Finally, Plaintiffs must establish that their injuries are the type of injuries that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If Plaintiffs' injuries were caused by a reduction in competition, acts that would lead to a reduction in competition or acts that would otherwise harm consumers, then Plaintiffs' injuries are antitrust injuries.

In sum, if Plaintiffs can establish that they were in fact injured by Defendants' conduct, that Defendants' conduct was a material cause of Plaintiffs' injuries, and that Plaintiffs' injuries were the type that the antitrust laws were intended to prevent, then Plaintiffs are entitled to recover damages for their injuries.[45]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 48 on the grounds that it contains an unnecessarily duplicative, confusing, and argumentative description of Plaintiffs' allegations against Defendants. Defendants further object to this instruction's vague and incomplete definition of "antitrust injury."

---

[45]    ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION F-2 (2005).

94

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 49**

*Antitrust Damages: Sherman Act Sections 1 and 2*

*–Causation*

If you find that Defendants violated the antitrust laws and that Plaintiffs were injured by that violation, Plaintiffs are entitled to recover for such injury that was the direct and proximate result of the unlawful acts of Defendants. Plaintiffs are not entitled to recover for any injury that resulted from other causes. [46]

**<u>Defendants' Objection</u>**

Defendants object to Plaintiffs' Proposed Jury Instruction 49 on the grounds that it is fails to explain the concept of "disaggregation" of damages caused by factors other than Defendants' alleged antitrust violations.

---

[46]    ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION F-18 (2005).

June 2, 2008

**Jury Instruction 50**

*Antitrust Damages: Sherman Act Sections 1 and 2*

*Extent of Injury*

Plaintiffs claim that they were harmed because, had it not been for the Defendants' alleged antitrust violations, the value of their business and assets would have been higher than they now are. If you find that any or all of the Defendants committed an antitrust violation and that this violation caused damage to Plaintiffs' business and/or property, you may award damages for the loss of value of this business and/or property. [47]

**<u>Defendants' Objection</u>**

Defendants object to Plaintiffs' Proposed Jury Instruction 50 on the grounds that it is unnecessarily duplicative, confusing, and argumentative. Injury to Plaintiffs' business or property is described as an element of each antitrust claim. Injury to business or property by definition includes loss of value of the business or property; this instruction is therefore unnecessary.

---

[47] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION F-33 (2005).

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 51**

*Antitrust Damages: Sherman Act Sections 1 and 2*

*Expert Testimony*

You have heard testimony from Plaintiffs' expert, Gary Kleinrichert, and from Defendants' expert, Jonathan Walker, regarding the amount of damages to which Plaintiffs claim they are entitled and the proper measure of damages. If you find that any of the pertinent underlying assumptions made by one of these experts in preparing a damage report are not reasonable or are not proven by a preponderance of the evidence, or if you find that one expert's conclusions depend on comparing things which have not been proven to be comparable, then you should consider this in determining the weight -- if any -- you will give these assumptions and the effect they have on Plaintiffs' damages claim.[48]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 51 on the grounds that it misstates the name of Defendants' damages expert.

---

[48]   ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION F-46 (2005).

06/02/2008 10:18 PM

June 2, 2008

REDACTED VERSION – PUBLICLY FILED

**Jury Instruction 52**

*Breach of Fiduciary Duty*

*General Elements*

For the Plaintiffs to prevail on each of their claims for breach of the fiduciary duties of due care, good faith, and loyalty, they must prove each of the following elements by a preponderance of the evidence:

1.  that Defendants owed Plaintiffs a fiduciary duty; and

2.  that Defendants breached the fiduciary duty owed to Plaintiffs.

3.  that Defendants' breach was the proximate cause of some injury or damage to the Plaintiffs.[49]

I will go over each of these elements more specifically in the following instructions. If after you consider all the evidence you find that Plaintiffs have proven each of these elements in accordance with the legal requirements as I describe them to you, then your verdict must be for the Plaintiffs and you will consider the amount of money damages to be awarded to Plaintiffs by following the instructions that I will give you relating to damages.[50]

**Defendants' Objection**

Defendants object to all instructions on Counts V, VI and VII (the "Fiduciary Duty Claims") on the grounds that the Fiduciary Duty Claims cannot be tried before a jury because (1) they are traditionally equitable in nature and (2) Plaintiffs have not sought damages on their Fiduciary Duty Claims. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989). "Actions for breach of fiduciary duty, historically speaking, are almost uniformly actions 'in equity' –

---

[49] The fiduciary duties of directors of non-profit Delaware corporations are "measured under the same standards developed in the jurisprudence of for-profit corporations." *Oberly v. Kirby*, 592 A.2d 445, 461 (Del. 1991).

[50] Instructions are modeled after the ABA Section of Litigation, Model Jury Instructions Business Torts Litigation, 4th Edition (2005).

06/02/2008 10:18 PM

June 2, 2008

carrying with them no right to a trial by jury." *In re Hechinger Inv. Co. of Del.*, 327 B.R. 537,

544 (D. Del. 2005) (quoting *In re Evangelist*, 760 F.2d 27, 29 (1st Cir. 1985); *see also*

*Dardovitch v. Haltzman*, 190 F.3d 125, 134 n. 1 (3d Cir. 1999) (affirming denial of jury trial for

breach of fiduciary duty claim against trustee for self-dealing); *Cantor v. Perelman*, 2006 WL

318666, *9 (D. Del. 2006) (finding claims seeking both legal and equitable relief should be

"judged equitable").    Here, Plaintiffs seek only injunctive – *i.e.* equitable – relief on their

Fiduciary Duty Claims.  In both their Original and First Amended Complaints, Plaintiffs pray for

damages only with respect to their Antitrust and Tortious Interference claims.  Likewise, in both

fact and expert discovery, Plaintiffs have not identified or claimed any damages with respect to

any alleged breach of fiduciary duty.

Defendants object to Plaintiffs' Proposed Jury Instruction 52 on the grounds that it

defines fiduciary duty as including a separate duty of good faith when, in fact, good faith is a

component of the duty of loyalty.    Defendants additionally object to Plaintiffs' Proposed

Instruction 49 on the grounds that it fails to instruct the jury that they must find for Defendants if

Plaintiffs fail to prove any element of their breach of fiduciary duty claims.

99

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 53**

*Breach of Fiduciary Duty: Existence of Fiduciary Duty*

A fiduciary relationship exists between two persons when one of them is under a duty to act for, or to give advice for, the benefit of the other upon matters within the scope of the relation. The duties that arise under such a relationship include the following: duty of care, duty of loyalty and the duty of good faith.

It is for you to determine whether a fiduciary relationship existed between Defendants and Plaintiffs at the time of the alleged misconduct. If you determine that relationship did exist, you must next determine the scope of the fiduciary relationship and whether one or more of the duties listed above arose within the scope of the relationship. If you find the existence of a fiduciary relationship and that the alleged misconduct was within the scope of one or more of the fiduciary duties listed above, then you should consider whether the Defendants breached their fiduciary duties.[51]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 53 on the grounds that it defines fiduciary duty as including a separate duty of good faith when, in fact, good faith is a component of the duty of loyalty.  Defendants further object to Plaintiffs' Proposed Jury Instruction 53 on the grounds that it fails to instruct the jury that if the alleged conduct was outside the scope of any fiduciary relationship, then they must find for Defendants on this claim.

---

[51] ABA Section of Litigation, Model Jury Instructions Business Torts Litigation, 4th Edition (2005)

June 2, 2008

**Jury Instruction 54**

*Breach of Fiduciary Duty: Corporate Fiduciary Duties*

As officers and directors of ATP Tour, Inc., the ATP Director Defendants (Etienne Villiers, Charles Pasarell, Graham Pearce, Jacco Eltingh, Perry Rogers and Iggy Jovanovic) owed fiduciary duties to that corporation and its members, the ATP tournaments and players. This means that the ATP Director Defendants were required to discharge the duties of their respective positions in good faith and with that degree of diligence, care, loyalty, and skill that ordinarily prudent persons would exercise under similar circumstances in like positions.[52] The ATP Director Defendants were also required to act in the best interest of the corporation's members and to set aside their personal interests in so doing.[53]

Plaintiffs allege that the ATP Director Defendants breached three types of fiduciary duties owed to Plaintiffs: their duties of (1) loyalty, (2) good faith, and (3) due care.

I shall now give you general instructions on the law regarding each of these duties.

**<u>Defendants' Objection</u>**

Defendants object to Plaintiffs' Proposed Jury Instruction 54 on the grounds that it defines fiduciary duty as including a separate duty of good faith when, in fact, good faith is a component of the duty of loyalty. Defendants further object to Plaintiffs' Proposed Jury Instruction 54 on the grounds that it misstates the law to the extent it suggests that directors are not permitted to benefit from an action that the directors honestly and reasonably believe to be in the best interests of the corporation. Defendants additionally object to this instruction on the grounds that it misstates the law to the extent it suggests that corporate officers and directors owe

---

[52] *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1280 (Del. 1989).

[53] *Baring v. Condrell*, 2004 WI 2340047, at *5 (Del. Ch. Oct. 18, 2004)(unpublished opinion); *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939); *Hollinger Int'l, Inc. v. Black*, 844 A.2d 1022, 1061-62 (Del. Ch. 2004), *aff'd*, 872 A.2d 559 (Del. 2005).

June 2, 2008

fiduciary duties to individual members of a corporation rather than to the corporation and its membership as a whole.

102

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 55**

*Breach of Fiduciary Duty: Fiduciary Duty of Loyalty*

*Definition*

The ATP Director Defendants owed a duty of undivided and unqualified loyalty to the ATP Tour, Inc. and its members, the players and tournaments.  The duty of loyalty requires:

(1)     That directors not put their own personal interests ahead of those of ATP Tour, Inc. or its members—neither in their dealings with ATP Tour, Inc. nor in their dealings with others;[54]

(2)     That directors refrain from self-interested transactions with the ATP  Tour, Inc. unless the terms are "entirely fair";[55] and

(3)     That directors exercise the utmost good faith in furthering the interests of ATP Tour, Inc. and its members and conserving its property.

**<u>Defendants' Objection</u>**

Defendants object to Plaintiffs' Proposed Jury Instruction 55 on the grounds that it is vague confusing to the extent that it fails to define the term "self-interested transaction." Moreover, Plaintiffs Proposed Jury Instruction 55 incorrectly states the law of Delaware to the extent it provides that all interested director actions are subject to entire fairness review.

---

[54] *Stone ex rel. AmSouth Bancorp v. Ritter*, 911 A.2d 362, 420 (Del. 2006) (suggesting that the duty of good faith is a subsidiary element of the duty of loyalty); *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 182 (Del. 1986); *Weinberger v. UOP*, 457 A.2d 701 (Del. 1983).

[55] *Teachers' Ret. Sys. Of La. v. Aidinoff*, 900 A.2d 654, 668-670 (Del. Ch. 2006).

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 56**

*Breach of Fiduciary Duty: Fiduciary Duty of Good Faith*

*Definition*

The ATP Director Defendants owed a duty of to act in good faith toward the ATP Tour, Inc. and its members, the players and tournaments.  The duty of good faith requires:

(1)    That directors do not intend to harm their members;

(2)    That directors not act with intent to violate positive law, including competition laws, tax laws, and laws relating to corporate status;[56] and

(3)    That directors not act with intent to violate the purposes of or policies behind positive law, including the purposes of competition laws, tax laws, and laws relating to corporate status.

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 56 on the grounds that it is not relevant to the facts and issues to be tried.  Defendants further object that this instruction implies that a fiduciary duty includes a separate duty of good faith when, in fact, good faith is a component of the duty of loyalty.  Defendants further object to this instruction on the grounds that it is confusing and inaccurate to the extent that it suggests that directors and officers of a corporation owe fiduciary duties directly to individual members of the corporation rather than to the corporation and its membership as a whole.  Defendants further object to this instruction on the grounds that item (3) above is not an element of the duty of loyalty.

---

[56] *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 746-47 (Del. 2005) ("*Walt Disney I*").

6267/20504-015 Current/11275801v1                                                            06/02/2008 10:18 PM

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 57**

*Breach of Fiduciary Duty: Duty of Due Care*

*Definition*

The ATP Director Defendants also had a duty to perform their functions in a manner they reasonably believed to be in the best interest of ATP Tour, Inc. and its members and with the care that ordinarily prudent persons would reasonably be expected to exercise in a like position and under similar circumstances.[57] This duty of due care requires:

(1)     That directors inform themselves of all material information, including available alternatives, reasonably available to them prior to making a business decision;[58]

(2)     That directors are not recklessly indifferent to their members;

(3)     That directors do not deliberately disregard their members; and

(4)     That directors not act outside the bounds of reason."[59]

**<u>Defendants' Objection</u>**

Defendants object to Plaintiffs' Proposed Jury Instruction 57 on the grounds that it fails to instruct the jury that, in accordance with the exculpatory provision contained in the Certificate of Incorporation of ATP Tour, Inc. and as authorized by 8 *Del. C.* § 102(b)(7), it shall not find the Defendant Directors personally liable for a breach of the duty of care if it finds that the Directors acted in good faith and did not otherwise violate the fiduciary duty of loyalty.

---

[57] *Stone ex rel. AmSouth Bancorp v. Ritter*, 911 A.2d 362, 369 (Del. 2006).

[58] *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984); *In re Tyson Foods Consol. Shareholder Litig..* C.A. No. 1106-N, slip. Op. at 59-60 (Del. Ch. Feb. 6, 2007).

[59] *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 192 (Del. Ch. 2005).

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 58**

*Breach of Fiduciary Duty: Duty of Due Care*

*Relevant Circumstances*

Your judgment about whether a fiduciary exercised the requisite amount of care with respect to an alleged act, omission or failure of oversight, should take into account all relevant considerations and circumstances including, but not limited to:

(1)     The precise role the Director Defendant(s) played within the corporation at the time of the alleged act, omission or failure of oversight;

(2)     The policies of the board of directors and committees of the board at the time of the alleged act, omission or failure of oversight;

(3)     The reliability and confidence entitled to be placed in other directors, officers, employees, experts and other persons;

(4)     The material information reasonably available to the Director Defendant(s) at the time of the alleged act, omission or failure of oversight;

(5)     The consideration given to such material information by the Director Defendant(s) at the time of the alleged act, omission or failure of oversight; and

(6)     Other relevant circumstances.[60]

**<u>Defendants' Objection</u>**

Defendants object to Plaintiffs' Proposed Jury Instruction 58 on the grounds that is confusing and incomplete.

---

[60] ABA Section of Litigation, Model Jury Instructions Business Torts Litigation, 4th Edition (2005)

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 59**

*Breach of Fiduciary Duty*

*The Business Judgment Rule*

The ATP Director Defendants are entitled to an initial presumption that they acted with sound business judgment in their official duties.[61] This presumption includes an assumption that the officers and directors acted on an informed basis.

To be entitled to this presumption:

1.     the ATP Director Defendants must not have an undisclosed personal financial interest in the transaction that is the subject of the directors' or officers' business judgment;

2.     the ATP Director Defendants must be informed about the subject of the business judgment to the extent the directors or officers reasonably believe to be appropriate under the circumstances;

3.     the ATP Director Defendants must reasonably believe that their business judgment is in the best interest of the corporation;

4.     the business decision challenged must not have required the affirmative vote of an interested director[62]; and

5.     there must not be evidence of "fraud, bad faith, or self-dealing in the usual sense of personal profit or betterment" on the part of one or more of the directors.[63]

Plaintiffs have rebutted this presumption if they prove that the officers or directors of the ATP Tour, Inc. did not exercise the proper business judgment for one or more of the following reasons:

---

[61] *Emerald Partners v. Berlin*, 787 A.2d 85, 90 (Del. 2001); *Smith v. Van Gorkum*, 488 A.2d 858, 872 (Del. 1985).

[62] *In re Ply Gem Indus. S'holders Litig.*, 2001 Del. Ch. LEXIS 84, at *27 n.33 (Del.Ch. June 26, 2001).

[63] *Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 720 (Del. 1971).

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

(a)      that an officer or director had an undisclosed personal financial interest in the transaction that is the subject of the officer's or director's business judgment;

(b)      that the officer or director was not informed about the subject of the business judgment to the extent the officer or director reasonably believed to be appropriate under the circumstances;

(c)      that the officer or director did not rationally believe that such business judgment was in the best interest of the corporation;

(d)      that no business judgment was in fact exercised;

(e)      that an interested director affirmatively voted for the challenged business decision; or

(f)      that there is otherwise evidence of fraud, bad faith, or self-dealing on the part of one or more of the directors.

If Plaintiffs rebut this presumption by showing one of the above, Defendants must then prove that the transaction was "entirely fair" to the corporation and its members.[64]  If Defendants fail to prove that the transaction was entirely fair to the corporation and its members, then Plaintiffs have demonstrated that Defendants have breached their fiduciary duties.

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 59 on the grounds that it is unnecessarily confusing to the extent that it states Plaintiffs' burden to rebut the presumption of the business judgment rule in both negative and affirmative terms.  This construction risks suggesting to the jurors that it is Defendants' burden to prove entitlement to the presumption of the business judgment rule rather than Plaintiffs' burden to rebut the presumption.  Defendants

---

[64] *Emerald Partners*, 787 A.2d 91; *Walt Disney I*, 907 A.2d at 747.

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

further object to this instruction on the grounds that it misstates the law to the extent that it suggests that any undisclosed personal financial interest in the subject transaction does not entitle a director to the presumption of the business judgment rule.  Defendants additionally object to including an instruction on "fraud, bad faith, or self-dealing in the usual sense of personal profit or betterment" because it is not relevant to the facts and issues to be tried.  Moreover, Defendants object to this instruction to the extent it suggests that evidence of "fraud, bad faith, or self-dealing" on the part of any director necessarily rebuts the presumption of the business judgment rule.  Defendants further object to this instruction on the grounds that it misstates the law to the extent it suggests that an interested director whose vote is not required to implement an action nevertheless breaches a fiduciary duty by voting for implementation of that action.

June 2, 2008

**Jury Instruction 60**

*Breach of Fiduciary Duty – Entire Fairness Standard*

*Causation – Generally*

If the Business Judgment Rule does not apply, the burden then shifts to the ATP Directors to prove by a preponderance of the evidence that the ATP Directors' adoption and implementation of the Brave New World plan was entirely fair to the ATP and its membership. The requirement of "entire fairness" is unflinching in its demand that where a director stands on both sides of a transaction, he has the burden of establishing "the most scrupulous inherent fairness of the transaction" and that he acted in "utmost good faith." [65]

In determining whether the ATP Directors' adoption and implementation of the Brave New World plan was "entirely fair," you must consider the ATP Directors' actions as a whole. Further, you must determine fairness to ATP and its membership as a whole, rather than fairness with regard to individual members. In determining whether the action as a whole was entirely fair to the ATP and its membership as a whole, you should consider: [66]

1.    How the action was initiated;

2.    How the action was structured;

3.    How the action was disclosed to members;

4.    How the action was negotiated;

5.    How the approval of the directors was obtained. [67]

If, after consideration of these questions, you find that Defendants have not proven that the Brave New World was "entirely fair" to the ATP and its members, you must find for

---

[65] *Weinberger v. Uop, Inc.*, 457 A.2d 701, 710 (Del. 1983).

[66] *Nixon v. Blackwell*, 626 A.2d 1366, 1376 (Del. 1993).

[67] *Weinberger v. UOP, Inc.*, 457 A.2d 701, 711 (Del. 1983).

110

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

Plaintiffs and against Defendants on Plaintiffs' claims of breach of fiduciary duty. Alternatively, if Defendants meet their burden of proving the Brave New World was "entirely fair" to the ATP and its members, you must find for Defendants and against Plaintiffs on these claims.[68]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 60 on the grounds that it overstates Defendants' burden with respect to interested transactions and breaches of the duty of due care. Defendants further object on the grounds that this instruction ignores the requirement that Plaintiffs must prove injury in order to prevail on their claims of breach of fiduciary duty. Defendants further object that the itemized list in Plaintiffs' Proposed Instruction is not relevant to the facts and issues to be tried and refer to Defendants' Proposed Instruction 48 as a more appropriate articulation of the relevant standards.

---

[68] *Delaware Open MRI Radiology Assoc., P.A. v. Kessler*, 898 A.2d 290, 311 (Del. Ch. 2006).

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 61**

*Breach of Fiduciary Duty*

*Causation – Generally*

If you find that any ATP Director Defendant breached his fiduciary duties of loyalty, good faith, or due care or good faith to Plaintiffs, you must then decide whether that breach proximately caused any losses claimed by Plaintiffs.

I shall now instruct you on the law and burden of proof regarding proximate cause.[69]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 61 on the grounds that it implies that a fiduciary duty includes a separate duty of good faith when, in fact, good faith is a component of the duty of loyalty.

---

[69] ABA Section of Litigation, Model Jury Instructions Business Torts Litigation, 4th Edition (2005)

6267/20504-015 Current/11275801v1                                   06/02/2008 10:18 PM

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 62**

*Breach of Fiduciary Duty*

*Elements of Causation and Burden of Proof*

To find a Defendant liable for breach of the fiduciary duties of loyalty, good faith, and due care, the breach must have caused Plaintiffs some damage. A Director Defendant's breach is the cause of damage when (1) Plaintiffs have sustained or will sustain a loss of some type, (2) Defendant's act or omission was the cause-in-fact of the loss sustained, and (3) Defendant's act or omission was the legal cause of the loss sustained.[70]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 62 on the grounds that it is confusing to the extent that it fails to instruct the jury that Plaintiffs bear the burden of proving causation.

---

[70] ABA Section of Litigation, Model Jury Instructions Business Torts Litigation, 4th Edition (2005).

June 2, 2008

**Jury Instruction 63**

*Breach of Fiduciary Duty*

*Existence of Damages*

If Plaintiffs prove that they have suffered or will suffer injury as a result of Defendants' breaches of the fiduciary duties of loyalty, good faith, and due care, then they are entitled to recover damages.

**<u>Defendants' Objection</u>**

Defendants object to Plaintiffs' Proposed Jury Instruction 63 on the grounds that it implies that a fiduciary duty includes a separate duty of good faith when, in fact, good faith is a component of the duty of loyalty.  Defendants additionally object to this instruction on the grounds that it fails to explain that if Defendants' actions, even if wrongful, do not cause an injury to Plaintiffs then there can be no liability for breach of fiduciary duty and they must find for Defendants on these claims.

114

June 2, 2008

## Jury Instruction 64

*Breach of Fiduciary Duty*

*Award of Damages*

You may award Plaintiffs damages designed to compensate them for their actual losses caused by the ATP Director Defendants' wrongful conduct. Plaintiffs may be compensated for damage to present or future business interests, third-party contractual relationships, or any other losses suffered by Plaintiffs as a direct result of the Director Defendants' act(s).[71]

## Defendants' Objection

Defendants object to Plaintiffs' Proposed Jury Instruction 64 on the grounds that it implies that a fiduciary duty includes a separate duty of good faith when, in fact, good faith is a component of the duty of loyalty. Defendants further object to this instruction to the extent that it suggests Plaintiffs are entitled to compensatory damages for anything other than their "out-of-pocket" actual losses caused by a breach of Defendants' fiduciary duty. *Strassburger v. Earley*, 752 A.2d 557, 579 (Del. Ch. 2000).

---

[71] *E.g., Strassburger v. Earley*, 752 A.2d 557, 579 (Del. Ch. 2000).

June 2, 2008

## Jury Instruction 65

*Breach of Fiduciary Duty - Duties of Loyalty and Good Faith*

*Award of Additional Damages*

If you find that the Director Defendants have breached their fiduciary duties of loyalty and good faith, you may also, in addition to compensatory damages, award damages that would put Plaintiffs in the same financial position they would have occupied prior to any illegal transaction that breached Defendants' fiduciary duties. Such damages are appropriate where evidence demonstrates that the board of directors was motivated by interests other than those of the shareholders, including personal financial benefit.[72]

## Defendants' Objection

Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried. Defendants object to Plaintiffs' Proposed Jury Instruction 65 on the grounds that it implies that a fiduciary duty includes a separate duty of good faith when, in fact, good faith is a component of the duty of loyalty. Defendants further object to this instruction on the grounds that it misstates the law to the extent that it suggests rescissory damages are appropriate where there is no showing of "fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching." *Weinberger v. UOP, Inc.*, 457 A.2d 701, 714 (Del. 1983) (citing *Cole v. National Cash Credit Assoc.*, Del.Ch., 156 A. 183, 187 (1931)); *see also Strassburger v. Earley*, 752 A.2d 557, 581 (Del. Ch. 2000) ("In order to be equitably appropriate, rescissory damages must redress an adjudicated breach of the duty of loyalty, specifically, cases that involve self-dealing or where the board puts it conflicting personal interests ahead of the interests of the shareholders."); *Ryan v. Tad's Enterprises, Inc.*,

---

[72] *Weinberger v. UOP, Inc.*, 457 A.2d 701, 714 (Del. 1983) (citing *Cole v. National Cash Credit Association*, Del.Ch., 156 A. 183, 187 (1931)); *Strassburger v. Earley*, 752 A.2d 557, 559 (Del. Ch. 2000); *Cinerama, Inc.*, 663 A.2d at 1144, 1149; *Ryan v. Tad's Enterprises, Inc.*, 709 A.2d 682, *698 (Del.Ch. 1996).

June 2, 2008

709 A.2d 682, 698 (Del. Ch. 1996) ("[R]escissory damages would be most appropriate where it is shown that the defendant fiduciaries unjustly enriched themselves by exercising their fiduciary authority deliberately to extract a personal financial benefit at the expense of the corporation's shareholders."); *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1134, 1146 (Del. Ch.), *aff'd*, 663 A.2d 1156 (Del. 1995) (holding rescissory damages may only be awarded against a fiduciary who becomes unjustly enriched as a result of his wrongdoing).

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 66**

*Intentional Interference with Contractual Relationship*

*General Elements*

One who intentionally and improperly induces or otherwise intentionally causes a third party not to perform pursuant to a contract with another party is responsible to that other party for the loss suffered as a result of the breach of contract.

You must determine whether or not Defendants' conduct was improper. In doing so, you may consider the following factors:

(1)     the nature of Defendants' conduct;

(2)     Defendants' motives;

(3)     Plaintiffs' interests;

(4)     the expectations of the parties involved;

(5)     the relations between the parties involved;

(6)     the interest that Defendants sought to advance;

(7)     whether Defendants' acts were done for the purposes of causing interference or whether they were merely incidental to another purpose;

(8)     the proximity or remoteness of Defendants' conduct to the interference; and

(9)     society's interest in protecting business competition as well as its interest in protecting the individual against interference with the pursuit of gain.

Each of these factors may carry a different weight with you depending on the facts proven, but the overriding question is whether the conduct of such Defendant(s) has been fair and reasonable under the circumstances.

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

If you find from a consideration of all evidence that Defendant(s) interfered with Plaintiffs' existing contracts, then your verdict should be for Plaintiffs. If you find from a consideration of all the evidence that Defendant(s) have not interfered with Plaintiffs' existing contracts, then your verdict should be for Defendants on this claim.[73]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 66 on the grounds that it fails to instruct the jury as to the specific elements Plaintiffs must prove in order to succeed on this claim.

---

[73] Delaware Pattern Jury Instruction 12.7 (adapted)

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 67**

*Intentional Interference with Contractual Relationship*

*Award of Damages*

If you find that Defendants intentionally interfered with Plaintiffs' contractual relationships, then Plaintiffs are entitled to be fairly and adequately compensated for:

(1)     the monetary loss of the contractual benefits suffered by Plaintiffs;

(2)     all other losses suffered by Plaintiffs as a direct result of Defendants' act(s); and

(3)     the harm to Plaintiffs' reputation suffered by Plaintiffs as a result of Defendants' act(s).[74]

**<u>Defendants' Objection</u>**

Defendants object to Plaintiffs' Proposed Jury Instruction 67 on the grounds that includes an instruction on "harm to Plaintiffs' reputation" because this element of damages is not relevant to the facts and issues to be tried.

---

[74] Delaware Pattern Jury Instruction 12.18 (adapted)

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

**Jury Instruction 68**

*Intentional Interference with Prospective Business Relationships*

*General Elements*

One who intentionally and improperly induces or otherwise intentionally prevents another from performing a contract with a third party or makes the performance of the contract more costly is responsible to the other party for the loss suffered as a result of the prevention or interference with the contract. Similarly, one who purposely and improperly induces or otherwise purposely causes a third party not to enter into or continue a prospective contractual relation with another is responsible to that other party for the loss suffered as a result of the prevention or interference with the contractual relationship.

You must determine whether or not Defendants' conduct was improper. In doing so, you may consider the following factors:

(1)    the nature of Defendants' conduct;

(2)    Defendants' motives;

(3)    Plaintiffs' interests;

(4)    the expectations of the parties involved;

(5)    the relations between the parties involved;

(6)    the interest that Defendants sought to advance;

(7)    whether Defendants' acts were done for the purposes of causing interference or whether they were merely incidental to another purpose;

(8)    the proximity or remoteness of Defendants' conduct to the interference; and

(9)    society's interest in protecting business competition as well as its interest in protecting the individual against interference with the pursuit of gain.

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

Each of these factors may carry a different weight with you depending on the facts proven but the overriding question is whether the conduct of such Defendant(s) has been fair and reasonable under the circumstances.

If you find from a consideration of all evidence that Defendant(s) intentionally interfered with Plaintiffs' prospective contracts or business relations, then your verdict should be for Plaintiffs.  If you find from a consideration of all the evidence that Defendant(s) have not interfered with Plaintiffs' prospective contracts or business relations, then your verdict should be for Defendant(s) on this claim.[75]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 68 on the grounds that it fails to instruct the jury as to the specific elements Plaintiffs must prove in order to succeed on this claim.

---

[75] Delaware Pattern Jury Instruction 12.7 (adapted)

June 2, 2008

**Jury Instruction 69**

*Intentional Interference with Prospective Business Relationships*

*Award of Damages*

If you find that Defendants intentionally interfered with Plaintiffs' prospective business relationships, then Plaintiffs are entitled to be fairly and adequately compensated for:

(1)     the monetary loss of the contractual benefits suffered by Plaintiffs;

(2)     all other losses suffered by Plaintiffs as a direct result of Defendants' act(s); and

(3)     the harm to Plaintiffs' reputation suffered by Plaintiffs as a result of Defendants' act(s).[76]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 69 on the grounds that includes an instruction on "harm to Plaintiffs' reputation" because this element of damages is not relevant to the facts and issues to be tried.

---

[76] Delaware Pattern Jury Instruction 12.18 (adapted)

6267/20504-015 Current/11275801v1                                              06/02/2008 10:18 PM

June 2, 2008

**Jury Instruction 70**

*Conversion*

*General Elements*

Plaintiffs allege that Defendants converted Plaintiffs' property rights in the Hamburg Membership and its associated rights, including, but not limited to, the right to operate a viable tournament, the right to a calendar week, and the right to top-tier status. To prevail, Plaintiffs must show that Defendants wrongful exercised dominion over the property of Plaintiffs, either in denial of Plaintiffs' rights or inconsistent with Plaintiffs' rights.

If you find from a consideration of all evidence that Defendants wrongfully exercised dominion over the Hamburg Membership and/or any of its associated rights, then your verdict should be for Plaintiffs. If you find from a consideration of all the evidence that Defendants have not wrongfully exercised dominion over the Hamburg Membership and/or any of its associated rights, then your verdict should be for Defendants on this claim.[77]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 70 on the grounds that it fails to instruct the jury as to the specific elements Plaintiffs must prove in order to succeed on this claim. Defendants additionally object to this instruction's list of purported of "associated rights" as an argumentative recitation of Plaintiffs' allegations that is unnecessary in this instruction and confusing to the jury. Defendants further object to this instruction's incomplete statement of the law regarding conversion of intangible property.

---

[77] *Drug, Inc. v. Hunt*, 168 A.87, 93 (Del. 1933); *Data Mgmt. Int'l, Inc. v. Saraga*, No. 05C-05-108, 2007 WL 2142848, at *3 (Del. Super. July 25, 2007); *Resource Ventures, Inc. v. Resources Management Intern., Inc.*, 42 F. Supp. 2d 423, 439 (D. Del. 1999) (applying Delaware law).

06/02/2008 10:18 PM

June 2, 2008

**Jury Instruction 71**

*Conversion*

*Award of Damages*

If you find that Defendants converted Plaintiffs' property rights in the Hamburg Membership and/or its associated rights, then Plaintiffs are entitled to be fairly and adequately compensated for the damage to their property rights.

The proper measure of damages for a conversion of property is the value of the property at the time of the conversion, plus interest. [78]

Defendants' financial condition must not be considered in assessing compensatory damages.

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 71 on the grounds that Plaintiffs' description of any purported "associated rights" is argumentative, inaccurate, and confusing. Defendants further object to the inclusion of the last sentence of this instruction as irrelevant, unnecessary and likely to cause jury confusion.

---

[78] *Dionisi v. DeCampli*, No. 9425, 1995 WL 398536, 18 (Del. Ch. June 28, 1995); *Ward v. Chancey*, No. 1994-06-028, 1994 WL 1547782 (Del. Ct. Com. P. Oct. 31, 1994); *Fintak v. Ridenour*, No. 88C-AP-7, 88C-OC-18, 1991 WL 113625, *2 (Del. Super. May 29, 1991).

June 2, 2008

**Jury Instruction 72**

*Conversion*

*Award of Punitive Damages*

If you decide to award compensatory damages to Plaintiffs for conversion, you must determine whether Defendants are also liable to Plaintiffs for punitive damages.

Punitive damages are different from compensatory damages. Compensatory damages are awarded to compensate Plaintiffs for the injury suffered. Punitive damages, on the other hand, are awarded in addition to compensatory damages.

You may award punitive damages to punish a party for outrageous conduct and to deter a party, and others like him or her, from engaging in similar conduct in the future. To award punitive damages, you must find by a preponderance of the evidence that Defendants acted intentionally or recklessly in converting Plaintiffs' property. Punitive damages cannot be awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.

Intentional conduct means it is the person's conscious object to engage in conduct of that nature. Reckless conduct is a conscious indifference that amounts to an "I don't care" attitude. Reckless conduct occurs when a person, with no intent to cause harm, performs an act so unreasonable that he or she knows or should know that there is an eminent likelihood of harm that can result. Each requires that the defendant foresee that his or her conduct threatens a particular harm to another.

The law provides no fixed standards for the amount of punitive damages.

In determining any award of punitive damages, you may consider the nature of Defendants' conduct and the degree to which the conduct was reprehensible. Finally, you may

126

June 2, 2008

assess an amount of damages that will deter Defendants and others like them from similar conduct in the future. You may consider Defendants' financial conditions when evaluating deterrence. Any award of punitive damages must bear a reasonable relationship to Plaintiffs' compensatory damages. If you find that Plaintiffs are entitled to an award of punitive damages, state the amount of punitive damages separately on the verdict form.[79]

**Defendants' Objection**

Defendants object to Plaintiffs' Proposed Jury Instruction 72 on the grounds that it fails to instruct the jury that in order for punitive damages to be assessed, Defendants' actions must have been intentional and outrageous and reckless in their disregard for the rights of others or the result of evil motive. Defendants additionally object to this instruction's omission of a proper explanation of the purpose of punitive damages on the grounds that such an omission is unreasonably confusing. Defendants further object to this instruction on the grounds that it misstates the law with regard to what factors a jury is required to examine in assessing punitive damages: a jury <u>must</u> consider (1) the reprehensibility or outrageousness of Defendants' conduct; and (2) the amount of punitive damages that will deter Defendants and others like them from similar conduct in the future.

---

[79] Delaware Pattern Jury Instruction 22.27 (adapted); *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003); *BMW of North American, Inc. v. Gore*, 517 U.S. 559, 575 (1996); *Wilhelm v. Ryan*, 2006 Del. LEXIS 399, at *13-14 (Del. Jul. 18, 2006); *Gannett Co. v. Kanaga*, 750 A.2d 1174, 1190 (Del. 2000); *Devaney v. Nationwide Mut. Auto Ins. Co.*, 679 A.2d 71, 76-77 (Del. 1996); *Jardel Co. v. Hughes*, 523 A.2d 518, 527-31 (Del. 1987); *Ellers Diesel Repair & Service v. McCullough*, No. 0026-03-90, 1991 WL 1092494, 1 (Del. Com. Pl. April 25, 1991); *Jones v. Del. Cmty. Corp. for Individual Dignity*, 2004 Del. Super. LEXIS 133, at *14-15, *aff'd, Del. Cmty. Corp. for Individual Dignity v. Jones*, 2005 Del. LEXIS 152 (Del. Apr. 12, 2005) (ORDER).

**Jury Instruction 73**

*Deliberation and Verdict*

How you conduct your deliberations is up to you. But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are the judges of the facts, not me. Your sole interest is to seek the truth from the evidence in this case. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

REDACTED VERSION – PUBLICLY FILED

June 2, 2008

That concludes the part of my instructions explaining the rules for considering the testimony and evidence. Now let me finish up by explaining how you may communicate questions or messages to the court.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer. The question will be given to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages are normally sent to me through the foreperson, who by custom of this court is juror Number 1.

One more thing about messages. Do not ever write down or tell anyone else how you stand on your votes. For example, do not write down or tell anyone else that you are split 6-2, or 4-4, or whatever your vote happens to be. That should stay secret until you are finished.

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in favor of either party. You must decide the case yourselves based on the evidence presented.

## Defendants' Objection

Defendants object to Plaintiffs' Proposed Jury Instruction 73 on the grounds that Plaintiffs have cited no authority for this instruction. Defendants believe that the matters covered are more appropriately addressed by the Court.

INDS02 HCOHEN 978642v3

6267/20504-015 Current/11275801v1                                                                06/02/2008 10:18 PM

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 8(a)(2)

**EXHIBIT 8(a)(2) TO FINAL PRETRIAL ORDER**

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

Defendants ATP Tour, Inc., Etienne de Villiers, Charles Pasarell, Graham Pearce, Jacco Eltingh, Perry Rogers, and Iggy Jovanovic respectfully submit the following proposed jury instructions.

Defendants reserve their right to modify any of their proposed instructions to reflect the outcomes of any decisions by the Court on the pending or anticipated motions or the evidence submitted at trial, or to seek to provide further justification for their instructions or to make any more detailed objections to Plaintiffs' proposed instructions.

Subject to those qualifications, Defendants' proposed instructions are set forth below:

**Plaintiffs' General Objections:**

Plaintiffs hereby state their general objections. Plaintiffs' Specific Objections are provided herein to each of Defendants' proposed Jury Instructions. Unless otherwise stated, these General Objections are incorporated into each Specific Objection as if fully set forth therein. Pursuant to Fed.R.Civ.P. 51(b)(1), (b)(2) & (c), Plaintiffs reserve the right to make these and any and all appropriate objections at such time as the Court finalizes its proposed instructions.

*First*, the quick look doctrine is applicable in this matter. *See, e.g. Law v. NCAA*, 134 F.3d 1010, 1019-20. Plaintiffs object to Defendants' Jury Instructions to the extent they are inconsistent with the application of the quick look doctrine.

*Second*, "pro-competitive justifications" may be considered as part of the applicable analysis only to the extent they tend to show, on balance, "the challenged restraint enhances competition." *NCAA v. Board of Regents*, 468 U.S. 85, 104 (1984). Plaintiffs object to Defendants' Jury Instructions to the extent they state implicitly or explicitly that any other justification, including pure profit motivations, constitute a "pro-competitive justification."

*Third*, Plaintiffs' object to Defendants' proposed jury instructions to the extent they fail to include any and all instructions included in Plaintiffs' proposed jury instructions.

*Fourth*, Plaintiffs' object to Defendants' proposed jury instructions to the extent they purport to set forth any defense or affirmative defense to Plaintiffs' claims that has not previously been identified and disclosed or that has otherwise been waived by Defendants.

*Fifth*, Defendants changed these proposed jury instructions on the evening of June 2,

REDACTED VERSION – PUBLICLY FILED

2008. Plaintiffs reserve any and all rights relating thereto, and reserve all objections relating thereto.

# TABLE OF CONTENTS

PRELIMINARY JURY INSTRUCTIONS ................................................................................1

    INTRODUCTION ........................................................................................1

    THE PARTIES AND THEIR CONTENTIONS ............................................1

    DUTIES OF THE JURY ..............................................................................1

    EVIDENCE...................................................................................................2

    PUBLICITY – REMINDER.........................................................................3

    CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING
        TESTIMONY ......................................................................................3

    SUMMARY OF APPLICABLE LAW ..........................................................4

    BURDEN OF PROOF ..................................................................................8

    CONDUCT OF THE JURY .........................................................................8

    COURSE OF THE TRIAL .........................................................................10

    TRIAL SCHEDULE...................................................................................11

COURT'S FINAL INSTRUCTIONS TO THE JURY........................................................12

    EVIDENCE DEFINED .............................................................................13

    DIRECT AND CIRCUMSTANTIAL EVIDENCE ...................................14

    CONSIDERATION OF EVIDENCE.........................................................14

    STATEMENTS OF COUNSEL ................................................................15

    CREDIBILITY OF WITNESSES .............................................................15

    EXPERT TESTIMONY .............................................................................16

    NUMBER OF WITNESSES .....................................................................16

    BURDEN OF PROOF; PREPONDERANCE OF THE EVIDENCE.............17

    CORPORATIONS......................................................................................18

    DELIBERATION AND VERDICT ...........................................................19

Instruction 1: Sherman Act Section 1 ..............................................................................21

Instruction 2: Single Entity or Enterprise Defense ...................................................................23

Instruction 3: Agreement ...........................................................................................................27

Instruction 4: Unreasonable Restraint of Trade .......................................................................30

Instruction 5: Nature of Professional Sports Leagues...............................................................32

Instruction 6: Rule of Reason – Overview ................................................................................34

Instruction 7: Rule of Reason – Proof of Relevant Market ......................................................35

Instruction 8: Relevant Market – Necessity of Proof................................................................39

Instruction 9: Rule of Reason – Proof of Competitive Harm ....................................................40

Instruction 10: Rule of Reason – Evidence of Competitive Benefits ...........................................44

Instruction 11: Rule of Reason – Balancing the Competitive Effects ..........................................46

Instruction 12: Horizontal Price Fixing:  Elements ...................................................................47

Instruction 13: Good Intent Not a Defense ................................................................................50

Instruction 14: Reasonableness of Prices No Excuse .................................................................51

Instruction 15: Evidence of Competition ...................................................................................52

Instruction 16: Allocation of Customers or Suppliers ................................................................53

Instruction 17: Allocation of Territories ...................................................................................55

Instruction 18: Allocation of Product Markets ..........................................................................57

Instruction 19: Agreement to Limit Production..........................................................................59

Instruction 20: Group Boycott ..................................................................................................61

Instruction 21: Monopolization:  Elements................................................................................63

Instruction 22: Monopoly Power Defined .................................................................................65

Instruction 23: Monopolization:  Relevant Market - General.....................................................66

Instruction 24: Existence of Monopoly Power – Indirect Proof.................................67

Instruction 25: Existence of Monopoly Power – Direct Proof ................................70

Instruction 26: Willful Acquisition or Maintenance of Monopoly Power...................72

Instruction 27: Attempted Monopolization - Elements ........................................74

Instruction 28: Specific Intent..............................................................................76

Instruction 29: Dangerous Probability of Success ...............................................78

Instruction 30: Conspiracy to Monopolize – Elements...........................................79

Instruction 31: Injury and Causation....................................................................81

Instruction 32: Antitrust Damages – Introduction and Purpose..............................84

Instruction 33: Speculation Not Permitted.............................................................86

Instruction 34: Causation and Disaggregation......................................................87

Instruction 35: Mitigation ....................................................................................88

Instruction 36: Trebling of Damages ....................................................................89

Instruction 37: Breach of Fiduciary Duty – General Elements................................90

Instruction 38: Explanation of Fiduciary Duty ......................................................93

Instruction 39: Corporate Fiduciary Duties ..........................................................94

Instruction 40: Duty of Due Care...........................................................................96

Instruction 41: "Under Similar Circumstances" Defined ......................................98

Instruction 42: "In a Like Position" Defined .........................................................99

Instruction 43: Sense of Balance and Fairness ....................................................100

Instruction 44: Custom, Practice and Procedures ...............................................102

Instruction 45: Reliance on Information Prepared by Others .................................103

Instruction 46: Business Judgment Rule.................................................................................104

Instruction 47: Conflicting Member Interests.........................................................................107

Instruction 48: Entire Fairness Standard................................................................................109

Instruction 49: Duty of Loyalty .............................................................................................112

Instruction 50: Duty of Good Faith........................................................................................118

Instruction 51: Positive Law ..................................................................................................119

Instruction 52: Fiduciary Duty: Causation – Generally .......................................................121

Instruction 53: Elements of Causation and Burden of Proof ................................................122

Instruction 54: Existence of Damage .....................................................................................123

Instruction 55: Cause-in-Fact ................................................................................................124

Instruction 56: Legal Cause ...................................................................................................125

Instruction 57: "Foreseeable" Defined...................................................................................126

Instruction 58: Breach of Fiduciary Duty – Waiver .............................................................127

Instruction 59: Breach of Fiduciary Duty – Acquiescence ...................................................129

Instruction 60: Breach of Fiduciary Duty – Equitable Estoppel ...........................................130

Instruction 61: Tortious Interference with Contract: Elements ............................................131

Instruction 62: Breach of Contract.........................................................................................133

Instruction 63: Interference Must Be Intentional..................................................................134

Instruction 64: Justification for Interference.........................................................................136

Instruction 65: Causation .......................................................................................................138

Instruction 66: Nonliability of Contractual Parties...............................................................139

Instruction 67: Tortious Interference with Prospective Contract...........................................140

Instruction 68:  Tortious Interference with Contract and Prospective Contract:
          Damages....................................................................................................142

Instruction 69:  Conversion – Elements...................................................................143

Instruction 70:  Conversion – Damages...................................................................145

Instruction 71:  Conversion – Punitive Damages ....................................................146

Instruction 72:  State Law Claims – Damages – Mitigation.....................................148

# PRELIMINARY JURY INSTRUCTIONS[1]

## INTRODUCTION

Members of the jury: now that you have been sworn, I am now going to give you some preliminary instructions to guide you in your participation in the trial.

## THE PARTIES AND THEIR CONTENTIONS

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

The parties in this case are the plaintiffs, Deutscher Tennis Bund (or "DTB"), Rothenbaum Sport GmbH (or "RSG"), and Qatar Tennis Federation (or "QTF") (together, the "Plaintiffs"), and the defendants, ATP Tour, Inc. (or "ATP"), and six of its directors, Etienne de Villiers, Charles Pasarell, Graham Pearce, Jacco Eltingh, Perry Rogers, and Iggy Jovanovic (together, the "Defendants").

In this case, Plaintiffs allege that Defendants violated Sections 1 and 2 of the Sherman Act, breached their duties of loyalty, good faith and due care as directors of a Delaware corporation, tortiously interfered with Plaintiffs' existing contracts and prospective contracts, and committed the tort of conversion. Defendants deny each of these allegations. I will explain the elements of each of these claims in detail for you after describing your role as jurors.

## DUTIES OF THE JURY

So, let me begin with those general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply to those facts to the law as I will give it to

---

[1] Source:  Preliminary Jury Instructions – Civil (GMS)

you both during these preliminary instructions and at the close of the evidence. You must follow that law whether you agree with it or not. Again, of course, you are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Also, do not let anything that I may say or do during the course of the trial influence you. Nothing that I may say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.

## EVIDENCE

The evidence from which you will find the facts will consist of the testimony of witnesses (the testimony of witnesses consist of the answers of the witnesses to questions posed by the attorneys or the court -- you may not ask questions). Evidence will also consist of documents and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you. I will list them for you now:

1.      Statements, arguments, and questions by lawyers are not evidence.

2.      Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

3.    Testimony that the court has excluded or told you to disregard is not evidence and must not be considered.

4.    Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. As a general rule, the law makes no distinction between these two types of evidence, but simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.

## PUBLICITY – REMINDER[2]

You must disregard any and all reports about this trial or about events discussed during the trial which you may have read, seen or heard through the news media or from others outside the courtroom. Such matters are not facts in evidence in this case because they are not relevant, competent or material to the issues which have been developed in this courtroom.  You must not permit such matters to influence your judgment in arriving at a true verdict in this case.

## CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on

---

[2] L. Sand, J. Siffert, S. Reiss, J. Sexton & J. Thorpe, Modern Federal Jury Instructions ¶ 71.01, Instr. 71-13 (1992).

3

the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable. This instruction applies to the testimony of all witnesses, including expert witnesses.

## SUMMARY OF APPLICABLE LAW

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision. But in order to help you follow the evidence, I will now give you a brief summary of the elements which Plaintiffs must prove in order to prevail on each of their claims:

- Plaintiffs' first claim is that Defendants agreed to a contract, conspiracy or combination in restraint of trade. In order to prevail on this claim, Plaintiffs must prove: (1) the existence of an agreement between or among at least two separate entities; (2) that the agreement unreasonably restrains or will unreasonably restrain trade in a relevant market; that is to say that the agreement had anticompetitive effects and that such effects substantially outweighed any pro-competitive benefits of the agreement; (3) that the agreement was both the factual and legal cause of the injury Plaintiffs claim to have suffered; and (4) that the Plaintiffs' injury is the type of injury the antitrust laws were meant to prevent.

- Plaintiffs' second claim is that Defendants unlawfully monopolized certain alleged markets. To prevail on this claim, Plaintiffs must prove: (1) the existence of a valid

4

antitrust market; (2) that ATP possessed monopoly power in that market; (3) that Defendants willfully acquired or maintained monopoly power in that market by engaging in anticompetitive conduct; (4) that Plaintiffs were injured in their business or property because of Defendants' anticompetitive conduct; and (5) that the injury is the type of injury the antitrust laws were meant to prevent.

- Plaintiffs' third claim is that Defendants attempted to monopolize certain alleged markets. In order to prevail on this claim, Plaintiffs must prove: (1) the existence of a valid antitrust market; (2) that Defendants engaged in anticompetitive conduct; (3) that Defendants had a specific intent to achieve monopoly power in a valid antitrust market; (4) that there was a dangerous probability that Defendants would achieve their goal of monopoly power in that market; (5) that Plaintiffs were injured in their business and property by Defendants' anticompetitive conduct; and (6) that the injury was the type of injury the antitrust laws were meant to prevent.

- Plaintiffs' fourth claim is that Defendants conspired to monopolize certain alleged markets. In order to prevail on this claim, Plaintiffs must prove: (1) the existence of a valid antitrust market; (2) that an agreement or mutual understanding existed between two or more persons to obtain or maintain monopoly power in a relevant market; (3) that the Defendants voluntarily and intentionally became a party to that agreement or mutual understanding; (4) that the Defendants specifically intended that the parties to the agreement would obtain or maintain monopoly power in the a valid antitrust market; (5) that the defendant committed an overt act in furtherance of the conspiracy; (6) that Plaintiffs were injured in their business or property because of the conspiracy to monopolize; and (7) that the injury was the type of injury that the antitrust laws were

meant to prevent.

- Plaintiffs also allege that the ATP Directors breached their separate fiduciary duties of loyalty and due care. In order to prevail on these claims, Plaintiffs must prove: (1) that the ATP Directors breached a fiduciary duty owed to the ATP and its membership as a whole; and (2) that the breach of fiduciary duty was the cause of some damage to Plaintiffs.

- Plaintiffs' eighth claim is that Defendants intentionally interfered with Plaintiffs' contracts or prospective contracts. In order to prevail on this claim, Plaintiffs must prove: (1) the existence of a contract or prospective contract between Plaintiffs and some third party; (2) that Defendants knew of the contract or prospective contract; (3) that the contract or prospective contract was breached or terminated; (4) that Defendants committed an intentional act that was a significant factor in causing the breach or termination of the contract or prospective contract; (5) that Defendants acted without justification; and (6) that Plaintiffs were injured by the alleged interference.

- Plaintiffs' ninth claim is that Defendants converted Plaintiffs' ATP membership. In order to prevail on this claim, Plaintiffs must prove: (1) that Plaintiffs have a property right that is the proper subject of a conversion claim; (2) that Defendants wrongfully exercised dominion over that property right, as opposed to merely diminishing its value; and (3) Plaintiffs suffered damages as a result of Defendants' wrongful conduct.

**Plaintiffs' Objections:**

Plaintiffs object to Defendants' proposed instruction as it misstates the law and will cause jury confusion by impermissibly parsing the elements of Plaintiffs' claim.

*First*, this Instruction misstates the elements of Plaintiffs' Sherman Act §1 claim. Per the express provisions of the Sherman Act §§ 1 & 7, 15 U.S.C. §§1 & 7, Plaintiffs' Sherman Act, §1 claim has four elements: (1) the existence of a contract, combination or conspiracy between or

among at least two separate entities; (2) that the contract, combination or conspiracy unreasonably restrains trade; (3) that the restraint affects interstate commerce; and (4) that the restraint caused plaintiff to suffer an injury to their business or property. *See also* Model Instruction, A-3.

*Second*, this instruction misstates the elements of Plaintiffs' Monopolization claim. The elements are, as set forth by the Model Instructions, (1) that the alleged market is an antitrust market; (2) that the defendant(s) possess monopoly power in that market; (3) that the defendant(s) willfully acquired or maintained monopoly power; (4) that the defendant(s)' conduct occurred in or affected interstate (or foreign) commerce; and (5) that the plaintiff was injured in its business or property because of the defendant(s)' anticompetitive conduct. *See Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 124 S.Ct. 872, 878-79; Model Instruction, C-2.

*Third*, this instruction misstates the elements of Plaintiffs' Monopolization claim. The elements, as established by the United States Supreme Court are as follows: (1) that defendant(s) engaged in anticompetitive conduct; (2) that defendant had a specific intent to achieve monopoly power in a relevant market; (3) that there was a dangerous probability that defendant would achieve its goal of monopoly in the relevant market; (4) that defendant(s)' conduct occurred in or affected interstate (or foreign) commerce; and that plaintiff was injured in its business or property by defendant(s)' anticompetitive conduct. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993); Model Instruction, C-84.

*Fourth*, this instruction misstates the elements of Plaintiffs' Conspiracy to Monopolization claim. The elements, as established by the United States Supreme Court are as follows: (1) that an agreement or mutual understanding between two or more persons to obtain or maintain monopoly power in a segment of commerce alleged; (2) that the defendant knowingly - that is voluntarily and intentionally - became a party to that agreement or mutual understanding; (3) that the defendant specifically intended that the parties to the agreement would obtain or maintain monopoly power in that segment of commerce; (4) that defendant committed an overt act in furtherance of the conspiracy; that defendant(s)' activities occurred in or affected interstate (or foreign) commerce; and (6) that plaintiff was injured in its business or property because of the conspiracy to monopolize. *See* Model Instruction, C-100 and citations set forth therein.

*Fifth*, this instruction misstates the elements of Plaintiffs' Breach of Fiduciary Duty of Loyalty claims. By grouping each of the fiduciary duties (loyalty and due care) together, and not distinguishing among them, Defendants state that Plaintiffs must prove that Defendants' breach of fiduciary duties caused injury to Defendants.   This is not true as it relates to the duty of loyalty. Pursuant to well-settled Delaware law, a breach of the duty of loyalty claim does not require proof of "injury or damage to Plaintiffs." *Universal Studios Inc. v. Viacom, Inc.*, 705 A.2d 579, 594 (Del. Ch. 1997). Rather, "injury is not required to prove the breach." *Id.* at 594.

*Sixth*, this instruction incorrectly uses the phrase membership "as a whole" to describe the object of Defendants' duties pursuant to Plaintiffs' Breach of Fiduciary Duty of Loyalty claims. Delaware courts, rejecting this proposition, have held that fiduciary duties are owed to the membership, as well as to subclasses or groups of members. *Gilbert v. El Paso Co.*, No. CIV A. Nos. 7075, 7079, 7078, 1988 WL 124325, at *9 (Del. Ch. Nov. 21, 1988), aff'd 575 A.2d 1131

("it cannot be concluded (as defendants seems to suggest, that the directors can never owe a duty to a particular shareholder subclass or group. Manifestly that cannot be so."). This instruction, as written, incorrectly implies that the Directors owe duties to the membership as a whole, but not to subclasses or groups of membership.

   *Seventh*, Plaintiffs object to the elements of tortious inference with contract and tortious interference with prospective relations as stated in this instruction. Tortious interference with contract, as defined in the source upon which Defendants' rely in subsequent model instructions, occurs when a defendant: "intentionally and improperly induces or otherwise intentionally causes a third party not to perform an existing contract with another party" and "loss [is] suffered as a result of the breach of contract." Del. P.J.I. Civ. § 12.7 (2000). Similarly, tortious interference with prospective business relationships occurs when a defendant: "purposely and improperly induces or otherwise purposely causes a third party not to enter into or continue a prospective contractual relation with another" and "loss [is]suffered as a result of the prevention or interference with the prospective contractual relationship." *Id.*

## BURDEN OF PROOF

   As I told you during the voir dire, this is a civil case. Here Plaintiffs have the burden of proving their case by what is called a preponderance of the evidence. That means Plaintiffs have to produce evidence which, considered in the light of all the facts, leads you to believe that what Plaintiffs claim is more likely true than not. To put it differently, if you were to put Plaintiffs' and Defendants' evidence on opposite sides of a scale, the evidence supporting Plaintiffs would have to make the scale tip to their side. If the scale is equal or tips to Defendants' side, then Plaintiffs fail to meet this burden, and the verdict must be for the Defendants. Plaintiffs must also prove their damages by a preponderance of the evidence.

   Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That requirement does not apply to a civil case; therefore, you should put it out of your mind.

## CONDUCT OF THE JURY

   Now, a few words about your conduct as jurors.

8

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you nor you with them. In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided. If anyone should try to talk to you about it, bring it to the court's attention promptly.

Second, do not read or listen to anything touching on this case in any way.

Third, do not try to do any research or make any investigation about the case on your own. Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

During the trial, I will permit you to take notes. A word of caution is in order. There is always a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

So, if you do take notes, leave them in your seat at the end of the day, and my Deputy will collect them and return them to your seat the next day. And, remember that they are for your

9

own personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

## COURSE OF THE TRIAL

This trial, like most jury trials, comes in seven stages or phases. We have already been through the first phase, which was to select you as jurors. The remaining stages are:

A.    These preliminary instructions to you;

B.    Opening statements which are intended to explain to you what each side intends to prove and are offered to help you follow the evidence. The lawyers are not required to make opening statements at this time or they may defer this opening until it is their turn to present evidence.

C.    The presentation of the evidence which will include live witnesses and may also include previously recorded testimony, as well as documents and things;

D.    My final instructions on the law to you;

E.    The closing arguments of the lawyers which will be offered to help you make your determination; and, finally,

F.    Your deliberations where you will evaluate and discuss the evidence among yourselves and determine the outcome of the case.

Please keep in mind that evidence is often introduced somewhat piecemeal. So, as the evidence comes in, you as jurors need to keep an open mind. We will begin shortly, but first I want to outline the anticipated schedule of the trial.

REDACTED VERSION – PUBLICLY FILED

## TRIAL SCHEDULE[3]

Though you have heard me say this during the voir dire, I want to again outline the schedule I expect to maintain during the course of this trial.

This case is expected to take 10 days to try. We will normally begin the day at 9:00 A.M. promptly. We will go until 1:00 P.M. and, after a one hour break for lunch, from 2:00 p.m. to 4:30 P.M. There will be a fifteen minute break at 11:00 A.M. and another fifteen minute break at 3:15 P.M. The only significant exception to this schedule may occur when the case is submitted to you for your deliberations. On that day, the proceedings might last beyond 5:00 P.M. We will post a copy of this schedule for the your convenience in the jury deliberation room.

---

[3] Defendants reserve their right to amend this instruction pending the resolution of Defendants' motion to bifurcate the liability and damages portions of the trial.

11

## COURT'S FINAL INSTRUCTIONS TO THE JURY[4]

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read. You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

I will explain the positions of the parties and the law you will apply in this case. Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, by a preponderance of the evidence, Defendants are liable.

---

[4] Source:  Miscellaneous Jury Instructions (GMS)

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

## EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers

wanted you to see. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

You have heard the terms direct and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## STATEMENTS OF COUNSEL

A further word about statements and arguments of counsel. The attorney's statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent with the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

## CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

15

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial. You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

## EXPERT TESTIMONY

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

## NUMBER OF WITNESSES

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses

16

who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

## BURDEN OF PROOF; PREPONDERANCE OF THE EVIDENCE

This is a civil case. Plaintiffs have the burden of proving each element of their claims and separately proving their damages by what is called a preponderance of the evidence. Proof by a preponderance of the evidence means proof that something is more likely true than not. It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not.

Preponderance of the evidence does not depend on the number of witnesses. If the evidence as to a particular element or issue is evenly balanced, the party has not proved the element by a preponderance of the evidence and you must find against that party. In determining whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who called them and all exhibits received into evidence regardless of who produced them.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt. That burden does not apply in a civil case and you should therefore put it out of your mind in considering whether or not Plaintiffs have met their burden of proof on various issues.  If Plaintiffs fail to meet their burden on any claim, you must render a verdict for Defendants on that claim.

**Plaintiffs' Objections:**

Plaintiffs object to Defendants' proposed instruction as it misstates the law and will cause jury confusion.

*First*, Plaintiffs enter the concept of elements of claims into this burden instruction. This creates the substantial likelihood of jury confusion. Additionally, this concept is repeatedly dealt with in other, appropriate instructions.

*Second*, this instruction as written misstates the law and creates the possibility of jury confusion because under either a quick look or a full rule of reason analysis the Defendants (rather than Plaintiffs) carry the burden of proof on the issue of purported procompetitive effects.

*Third*, Defendants carry the burden of proof on their affirmative defenses, including any failure to mitigate damages defense.

Defendants' instruction addresses these concerns, better states the law and should be utilized.

## CORPORATIONS[5]

A corporation is a person under the law. A corporation acts only through its agents. A corporation's agents includes its directors, officers, employees, or others acting on its behalf. A corporation is not capable under the law of conspiring with its own agents or with its unincorporated divisions or its wholly-owned subsidiaries. In other words, a decision of the Board of Directors or of the management of a corporation does not constitute an agreement with a party outside of the corporation; this is how a corporation takes action. Through its agents, however, a corporation may be capable of conspiring with other persons or independent corporations who are not part of the corporation.

A corporation is entitled to the same fair trial as a private individual. The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence. All persons, including corporations, are equal before the law.

---

[5] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-10 (2005)

**Plaintiffs' Objections:**

Plaintiffs object to Defendants' proposed instruction as it misstates the law and will cause jury confusion.

*First*, this instruction presumes that the "corporation" is a single entitle for purposes of an antitrust analysis and in doing so implies that the ATP is, likewise, a single entity. Accordingly, Plaintiffs incorporate herein all of their objections to Defendants' proposed instruction 2. This instruction is not applicable to joint ventures, sports leagues or sports tours.

*Second*, this instruction does not recognize that a corporation may conspire with corporate officers or employees who act in their own interests, outside of the corporation's interests, and who stand to benefit personally from the conspiracy.

## DELIBERATION AND VERDICT

How you conduct your deliberations is up to you. But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are the judges of the facts, not me. Your sole interest is to seek the truth from the evidence in this case. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom, your foreperson will give

the form to my Deputy Clerk and your verdict shall be announced.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

That concludes the part of my instructions explaining the rules for considering the testimony and evidence. Now let me finish up by explaining how you may communicate questions or messages to the court.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer. The question will be given to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages are normally sent to me through the foreperson, who by custom of this court is juror Number 1.

One more thing about messages. Do not ever write down or tell anyone else how you stand on your votes. For example, do not write down or tell anyone else that you are split 6-2, or 4-4, or whatever your vote happens to be. That should stay secret until you are finished.

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in favor of either party. You must decide the case yourselves based on the evidence presented.

## Instruction 1: Sherman Act Section 1

Plaintiffs challenge Defendants' conduct under Section 1 of the Sherman Act. Section 1 prohibits contracts, combinations and conspiracies that unreasonably restrain trade. To establish a violation of Section 1 of the Sherman Act, Plaintiffs must prove the following:

**First,** the existence of a contract, combination or conspiracy between or among at least two separate entities;

**Second,** that the contract, combination or conspiracy unreasonably restrains or will unreasonably restrain trade in a relevant market;

**Third,** that the contract, combination or conspiracy was both a "but for" and a proximate cause of the injury that Plaintiffs claim to have suffered to its business or property; and

**Fourth,** that the injury constitutes "antitrust injury" – that is, the type of harm that the antitrust laws were intended to prevent.

**Plaintiffs' Objections:**

Plaintiffs object to Defendants' proposed instruction as it misstates the law and will cause jury confusion by impermissibly parsing the elements of Plaintiffs' claim.

*First*, per the express provisions of the Sherman Act §§ 1 & 7, 15 U.S.C. §§1 & 7, Plaintiffs' Sherman Act, §1 claim has four elements: (1) the existence of a contract, combination or conspiracy between or among at least two separate entities; (2) that the contract, combination or conspiracy unreasonably restrains trade; (3) that the restraint affects interstate commerce; and (4) that the restraint caused plaintiff to suffer an injury to their business or property. *See also* ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION A-2 (2005) (hereinafter the "Model Instructions"). There is no dispute among the parties that Defendants' actions affect interstate commerce. Accordingly, Plaintiffs' corresponding instruction, which is directly based on the model instructions minus element 3, appropriately states the law.

*Second*, the instruction impermissibly injects the concept of antitrust standing into the elements of a Sherman Act § 1 violation. By doing so Defendants again misstate the law and create a significant danger of jury confusion. Plaintiffs contend that they have demonstrated antitrust standing as a matter of law. To the extent the Court disagrees, however, this concept is appropriately addressed via independent competitive harm and damage instructions such as those included in Plaintiffs' proposed instructions, the Model Instructions, and Defendants'

Instructions, below.

*Third*, the instruction misstates the causation elements of Plaintiffs' Section one claim. Even if this instruction were proper, and it is not on numerous grounds, it impermissibly divides causation into both a "but for" and an independent "proximate cause" requirement. This misstates the law and further compounds the danger of jury confusion.

In contrast, Plaintiffs proposed instruction 15, which is substantially identical to that in the Model Instructions accurately states the law, is simpler and more direct and greatly reduces the danger of jury confusion.

## Instruction 2: Single Entity or Enterprise Defense[6]

First, as a threshold matter, in order to satisfy the element of an agreement, there must be at least two separate persons or corporations who have reached an agreement or understanding in order to find a violation of Section One. The internal decisions of a unified business enterprise do not give rise to claims under Section One of the Sherman Act. A decision agreed to by a Board of Directors on behalf of a unified business enterprise does not constitute an agreement between separate actors. You are instructed that the directors of ATP, acting in their capacity as directors, are not separate entities capable of conspiring with ATP.

Furthermore, where separate persons or corporations are commonly controlled or substantially integrated in their operations, they may be considered a "single entity" or "single enterprise" under the antitrust laws. No combination or conspiracy is possible under the law between corporations that are commonly controlled or substantially integrated, and that regularly conduct their business affairs in such a manner as to constitute, in effect, a single business entity or enterprise.[7] The law permits, and in fact encourages, cooperation inside an integrated business enterprise to better facilitate competition between that enterprise and other producers.[8]

Participants in such an enterprise may agree on all core functions of the integrated entity, including what products are produced, how, when and where to produce the products, who to sell the products to, how much of the products should be produced, and at what price the products are

---

[6] *Copperweld v. Independence Tube*, 467 U.S. 752 (1984); *Toscano v. Professional Golfers Ass'n*, 258 F.3d 978, (9th Cir. 2001); ; *Seabury v. PGA*, 878 F. Supp. 771 (D. Md. 1994).

[7] *Texaco v. Dagher*, 547 U.S. 1, 6 (2006); *Copperweld v. Independence Tube*, 467 U.S. 752 (1984); *HealthAmerica Penn., Inc. v. Susquehanna Health Sys.*, 278 F. Supp. 2d 423, 435 (M.D. Pa. 2003).

[8] *Chicago Prof'l Sports v. NBA*, 95 F.3d 593, 598 (7th Cir. 1996); *Am. Needle v. New Orleans Saints*, 496 F. Supp. 2d 941, 943 (N.D. Ill. 2007).

sold.[9]  Although relevant to your consideration, it is not necessary for members of such an integrated enterprise to share common corporate ownership.[10]  In determining whether a membership organization constitutes a single business entity or enterprise, the most important consideration is whether the organization's members primarily compete with one another for customers of their own product, or whether the organization's members compete with outside producers of different but competing products.

An issue you will be called upon to decide is whether the ATP and its members function as a single business entity or single enterprise with respect to operating and participating in the ATP Tour, including with respect to the categorization of tournament members, the creation of an annual calendar, the setting of ranking points to be awarded for performance in different ATP events, and the adoption of rules pertaining to when and where player members shall play. Plaintiffs contend that the ATP is an independent business actor that competes with its member tournaments in various alleged product markets.  Defendants contend that the ATP and its members function is a single economic enterprise for the purpose of producing the ATP brand of professional tennis.

In considering this issue, it is important to understand that business organizations may be treated differently for different purposes.  For example, it is common for a single corporation to own or control a number of subsidiary corporations.  For certain purposes, such as their responsibility on contracts, the subsidiary corporations may be treated as separate business entities; while for other purposes, for example tax purposes, the whole family of corporations

---

[9] *Texaco v. Dagher*, 547 U.S. 1, 6 (2006).

[10] *Williams v. I.B. Fischer Nevada*, 794 F. Supp. 1026, 1032 (D. Nev. 2003), *aff'd* 999 F.2d 445 (9th Cir. 1993).

may be treated as a single unit. You must consider whether any challenged conduct involving ATP and its members was undertaken as a single business entity or enterprise, or whether it represented actions taken by one or more separate, independent actors.[11]

**Plaintiffs' Objections:**

Defendants proposed instruction misstates the law and creates a significant risk of jury confusion.

*First*, this instruction misstates the law as it applies sports leagues. The vast majority of courts that have considered §1 claims in the sports context do not treat sports leagues as single entities. *See, e.g., Fraser v. Major League Soccer, L.L.C.*, 284 F.3d 47, 59 (1st Cir. 2002); *St. Louis Convention & Visitors Comm'n v. National Football League*, 154 F.3d 851 (8th Cir. 1998); *Sullivan v. National Football League*, 34 F.3d 1091, (1st Cir. 1994); *Los Angeles Memorial Coliseum Commission v. National Football League*, 726 F.2d 1381 (9th Cir.), *cert. denied*, 469 U.S. 990 (1984); *North American Soccer League v. National Football League*, 670 F.2d 1249, 1256-58 (2d. Cir.), *cert. denied*, 459 U.S. 1074 (1982); *McNeil v. National Football League*, 790 F. Supp. 871 (D. Minn. 1992).

In making the determination, uniformly, that sports leagues are not single entities, Courts have relied on a number of *facts* in consistently determining its non-single entity status, including the following: its member teams are separately owned and operated; its member clubs do not share expenses, capital expenditures, profits or losses with any other member; each club is managed independently; profits vary widely from team to team, and teams do not exchange or share their accounting books or records; and members compete in the acquisition of coaches, management personnel, and players. *See McNeil*, 790 F.Supp. at 879 n.10 (citing, *inter alia, Los Angeles Memorial Coliseum Comm'n*, 726 F.2d at 1389-90; *North American Soccer League*, 670 F.2d at 1252). This legal framework is not discussed or set forth in this instruction.

*Second*, this instruction misstates the law or attempts to apply inapplicable law relating to joint ventures. Defendants improperly cite *Texaco v. Dagher*, 547 U.S. 1, 6 (2006) for the proposition that § 1 of the Sherman Act does not apply to joint ventures. *Dagher* merely held that certain "core" activities of a joint venture are not *per se* unlawful. The Court took no position, however, regarding the application of § 1 of the Sherman Act to joint ventures under a Rule of Reason analysis. *Id.* at 1280 n.2. Moreover, the ATP is not analogous to a "joint

---

[11] *Chicago Prof'l Sports v. NBA*, 95 F.3d 593, 600 (7th Cir. 1996) ("[W]e do not rule out the possibility that an organization such as the NBA is best understood as one firm when selling broadcast rights to a network in competition with a thousand other producers of entertainment, but is best understood as a joint venture when curtailing competition for players who have few other market opportunities."); *see also Continental v. GTE Sylvania*, 433 U.S. 36, 52 n. 19 (1977) ("The primary concern of antitrust law" is "interbrand," not "intrabrand," competition.).

venture," in which competitors "pool their capital and share the risks of loss as well as the opportunities for profit." *Arizona v. Maricopa County Med. Soc.*, 457 U.S. 332, 356 (1982).

*Third*, this instruction is unnecessary because only one legal conclusion can be drawn from the evidence, which is that the ATP is not a single entity. *See Los Angeles Memorial Coliseum Commission*, 726 F.2d 1249 (upholding grant of directed verdict to plaintiffs on NFL's claim that it was a single economic entity for purposes of a § 1 analysis); *Chicago Prof'l Sports v. NBA*, 95 F.3d 593, 598 (7th Cir. 1996) (leagues should not be considered single entities where they are "curtailing competition for players who have few other market opportunities." *Id.* at 600 (emphasis added).

*Fourth*, this instruction is unnecessary because, as set forth by the model instructions, the concept of single entity is, under the law, not an independent affirmative defense or an independent element of Plaintiffs' claim, but rather an element of whether a contract, combination or conspiracy does, in fact exist. As set forth in the model instructions, and Plaintiffs' proposed instruction 15, Plaintiffs carry the burden of demonstrating that an alleged contract, combination or conspiracy exists which, by definition requires an "agreement by two or more persons to accomplish some unlawful purpose or to accomplish a lawful purpose by unlawful means." This legal concept is properly captured by Plaintiffs' proposed instruction 23, which is substantially identical to the Model Instruction, B-2, and, in part, by Defendants' instruction 3, set forth below. By elevating this concept to that of an independent, initial element of Plaintiffs' claim, Defendants misstate the law and create a substantial risk of jury confusion.

### Instruction 3: Agreement[12]

If you find that there were two or more separate entities involved, you must determine what contract, combination or conspiracy to which those entities agreed. To establish the existence of a contract, combination or conspiracy, the evidence need not show that its participants entered into any formal or written agreement; that they met together; or that they directly stated what their object or purpose was, or the details of it, or the means by which they would accomplish their purpose. The agreement itself may have been entirely unspoken. What the evidence must show to prove that a contract, combination or conspiracy existed is that the entities involved in some way came to an agreement to accomplish a common purpose. It is the agreement to act together that constitutes the conspiracy. Whether the agreement succeeds or fails does not matter.

A contract, combination or conspiracy may be formed without all parties coming to an agreement at the same time, such as where competitors, without previous agreement, separately accept invitations to participate in a plan to restrain trade. The agreement may be shown if the proof establishes that the parties knowingly worked together to accomplish a common purpose. It is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement.

Direct proof of an agreement may not be available. A contract, combination or conspiracy may be disclosed by the circumstances or by the acts of the members. Therefore, you may infer the existence of an agreement from what you find the alleged members actually did, as

---

[12] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-2 (2005).

well as from the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not establish the existence of a contract, combination or conspiracy unless the evidence tends to exclude the possibility that the persons were acting independently. If they acted similarly but independently of one another, without any agreement among them, then there would not be a contract, combination or conspiracy.

It is not necessary that the evidence show that all of the means or methods claimed by the plaintiffs were agreed upon to carry out the alleged contract, combination or conspiracy; nor that all of the means or methods that were agreed upon were actually used or put into operation; nor that all the persons alleged to be members of the contract, combination or conspiracy actually were members. What the evidence must show is that the alleged contract, combination or conspiracy of two or more persons existed, that one or more of the means or methods alleged was used to carry out its purpose, and that the defendant knowingly became a member of the contract, combination or conspiracy.

In determining whether an agreement has been proved, you must view the evidence as a whole and not piecemeal. In considering the evidence, you first should determine whether or not the alleged contract, combination or conspiracy existed. If you conclude that it did exist, you should next determine whether each defendant knowingly entered into that contract, combination or conspiracy with the intent to further its purposes.

**Plaintiffs' Objections:**

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion.

*First*, as set forth above, the jury need not find that there were "two or more separate entities involved", only that any Defendant and/or the Defendants entered into a "contract, combination or conspiracy." The concept of multiple entities is succinctly and correctly captured by the Model Instructions definition of conspiracy, which is included in Model Instruction, B-2,

28

REDACTED VERSION – PUBLICLY FILED

and Plaintiffs' proposed instruction 23, but excluded in Defendants' proposed instruction. This exclusion, in addition to the inclusion of instruction 2, above, misstates the law and creates a significant risk of additional jury confusion.

*Second*, Model Instruction B-2, and Plaintiffs' proposed instruction 23, appropriately contain a description of the alleged conspiracy to restrain trade. Defendants' proposed instruction inappropriately excludes this description, thereby creating a significant risk of jury confusion as to the nature of the alleged contract, combination or conspiracy and any Defendants' anticompetitive actions relating thereto.

## Instruction 4:  Unreasonable Restraint of Trade[13]

As common sense would tell you, and as I have told you, the antitrust laws do not prohibit every business agreement which affects trade or every agreement which may restrain or influence competition.  The law prohibits only unreasonable restraints of trade.  Your task is to determine whether any agreement among the Defendants and any separate entity or entities is an unreasonable restraint of trade.  As I will instruct you in more detail below, in order to arrive at your conclusion, you are to consider all of the circumstances surrounding the agreement, including, among other things:

- the nature of the industry involved;

- any facts that are unique to the particular industry involved;

- the nature of the alleged agreement and restraint, and its actual and probable effect;

- the history of the alleged restraint; and

- the reasons for adopting the particular practice which is alleged to be a restraint.

**<u>Plaintiffs' Objections:</u>**

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion.

*First*, this instruction is redundant and unnecessary.  The concepts contained therein are, can and should be included in instructions on the Rule of Reason and Proof of Competitive Harm.  No such instruction is included in the Model Instructions, Plaintiffs' believe, because of the danger it creates of jury confusion.

*Second*, this instruction misstates the law.  The Court and jury should also consider numerous other factors including, *inter alia*, whether the anticompetitive consequences of the contract, combination or conspiracy (as opposed to the "agreement") are apparent, whether individual competitors lose their freedom to compete; whether input prices are lower than they

---

[13] L. Sand, J. Siffert, S. Reiss & N. Batterman, <u>Modern Federal Jury Instructions</u> ¶ 79.04 (1997); *NCAA v. Board of Regents*, 468 U.S. 85, 100-04, 110, 113-14 (1984); *Continental T.V. v. GTE Sylvania, Inc.*, 433 U.S. 36 (1977).

would otherwise be; whether output prices are higher than they would otherwise be; and whether output is lower than it would otherwise be; whether prices and output are unresponsive to consumer preferences; and whether the plan eliminates competitors from the market. *See NCAA v. Board of Regents*, 468 U.S. 85, 106-08 (1984).

## Instruction 5:  Nature of Professional Sports Leagues

In considering the nature of the industry involved here, courts have recognized that certain agreements among the members of an organization or of a joint venture, including professional sports organizations, are permissible because they can lead to the creation of new or better products and services.[14]  Even in instances when a venture is not viewed as a single enterprise, so long as the venture does not unreasonably restrain competition, such a joint venture or organization of entities is permitted to adopt rules and practices – agreements among venture participants – that are reasonable and that further the economic self-interest of its  members in the same manner as any business entity.[15]

Accordingly, in assessing the reasonableness of any challenged agreements entered into by ATP, you should consider the nature of the business of professional tennis, the purpose of the ATP's rules and Bylaws, and the effect of those rules in operation on competition in any relevant market.

**Plaintiffs' Objections:**

Plaintiffs object to this instruction as it misstates the law, creates an unnecessary risk of jury confusion and is redundant.

*First*, the appropriate test of is not whether an "agreement" creates a new or better product or service or whether it is "reasonable."  Rather, the test, if one presumes a full rule of reason analysis is appropriate, is whether the challenged contract, combination or conspiracy is anticompetitive, and if so, whether, *inter alia*, it has pro-competitive justifications.  *See NCAA v. Board of Regents*, 468 U.S. 85 (1984); *Law v. NCAA*, 134 F.3d 1010 (10th Cir. 1998).

---

[14] *Chicago Prof'l Sports v. NBA*, 95 F.3d 593, 600 (7th Cir. 1996); *Am. Needle v. New Orleans Saints*, 496 F. Supp. 2d 941, 944 (N.D. Ill. 2007); *Lokomotiv Yaroslavl v. NHL*, 06 CV 9421, slip op. at 86 (S.D.N.Y. Nov. 15, 2006); *Seabury v. PGA*, 878 F. Supp. 771 (D. Md. 1994); *see also Ky. Speedway v. NASCAR*, 2008 WL 113987,*1 (E.D.Ky. 2008); *Madison Square Garden v. NHL, 2007 WL 3254421 (S.D.N.Y. 2007)*.

[15] *Texaco v. Dagher*, 547 U.S. 1, 6 (2006).

Procompetitive behavior, in the realm of sports leagues, are those that "preserve the essential character and integrity of the game of tennis as it had always been played and preserving competition, by attempting to conduct the game in an orderly fashion."    *Gunter Harz Sports, Inc. v. United States Tennis Ass'n.*, 511 F.Supp. 1103, 1116-18 (D.Neb. 1981); *Board of Regents*, 468 U.S. at 101-02 (pro-competitive rules relate "such matters as the size of the field, the number of layers on a team, the extent to which physical violence is to be encouraged or proscribed . . . .").    The creation of a new product or service, however, without more, does not justify anticompetitive behavior by a sports league any more than it would justify anticompetitive behavior in any other endeavor.    If the anticompetitive effects are greater than any procompetitive justifications, or if the procompetitive justifications could have been reached via less anticompetitive means, then the challenged conduct is still illegal, regardless of any purported "reasonableness" or the creation of a new or "better" product.

  *Second*, this instruction, yet again, misstates the law or attempts to apply inapplicable law relating to joint ventures.  Defendants improperly cite *Texaco v. Dagher*, 547 U.S. 1, 6 (2006) for the proposition that § 1 of the Sherman Act does not apply to joint ventures.  *Dagher* merely held that certain "core" activities of a joint venture are not *per se* unlawful.    The Court took no position, however, regarding the application of § 1 of the Sherman Act to joint ventures under a Rule of Reason analysis.  *Id.* at 1280 n.2.  The applicable law, as it relates to the Rule of Reason, is contained in the Model Instructions as copied and applied by Plaintiffs.

  *Third*, this instruction creates a substantial risk of jury confusion by improperly stating or implying that the appropriate analysis is one of whether a purported "new or better product or service" was created by a sports league or whether the sports league's conduct was "reasonable." The proper analysis is set forth by the quick look doctrine or the rule of reason, which are properly set forth in Plaintiffs' proposed jury instructions nos. 16 & 17.

## Instruction 6: Rule of Reason - Overview[16]

In determining whether any agreement among the Defendants and any separate entity or entities is an unreasonable restraint of trade, you must first determine whether Plaintiffs have proven that the challenged restraints have resulted in or are likely to result in a substantial harm to competition in a relevant product and geographic market. If you find that Plaintiffs have proven that the challenged restraints result in a substantial harm to competition in a relevant market, then you must consider whether the restraints produce countervailing competitive benefits. If you find that it does, then you must balance the competitive harm against the competitive benefit. The challenged restraints are illegal under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighs the competitive benefit. I will now review each step of the analysis in more detail.

### Plaintiffs' Objections:

Plaintiffs' object to this instruction as it is incomplete, thereby creating a substantial likelihood of jury confusion. Model Instruction No. A-4, and Plaintiffs' proposed instruction 16, appropriately contain a description of the restraints at issue. Such a description will assist the jury and should be included.

---

[16] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION A-4 (2005).

### Instruction 7: Rule of Reason – Proof of Relevant Market[17]

As I mentioned, Plaintiffs must show that the harm to competition occurred in an identified market, known as a "relevant market." There are two aspects to a relevant market. The first aspect is known as a relevant product market. The second aspect is known as the relevant geographic market. It is Plaintiffs' burden to prove the existence of a relevant market.

**Relevant Product Market**

The basic idea of a relevant product market is that it includes all products that are reasonable substitutes for each other from a buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes. For example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material – such as aluminum foil, cellophane, or even plastic containers – to be reasonable alternatives, then all those products would be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you should consider whether a small but significant permanent increase in the price of one product would result in a substantial number of consumers switching from that product to another. Generally speaking, a small but permanent increase in price is approximately a five percent increase in price not due to external cost factors. If you find that such switching would occur, then you

---

[17] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-7—C-14 (2005).

should conclude that the products are in the same product market.

In evaluating whether various products are reasonably interchangeable or are reasonable substitutes for each other, you may also consider: (1) consumers' views on whether the products are interchangeable; (2) the relationship between the price of one product and sales of another; (3) the presence or absence of specialized vendors; (4) the perceptions of either industry or the public as to whether the products are in separate markets; (5) the views of Plaintiffs and Defendants regarding who their respective competitors are; and (6) the existence or absence of different customer groups or distribution channels.

In this case, Plaintiffs define the relevant product markets as the market for the production of top-tier men's professional tennis, and the relevant submarkets within that market as the market for player services for top-tier men's professional tennis, the market for hosting top-tier men's professional tennis, and the market for live top-tier men's professional tennis.  By contrast, Defendants assert that Plaintiffs have failed to prove a proper relevant product market because Defendants claim that Plaintiffs' alleged product markets do not include all reasonably interchangeable products or substitutes.  If you find that Plaintiffs have proven a relevant product market or markets that includes all reasonably interchangeable products or substitutes, then you should continue to evaluate the remainder of Plaintiffs' claim with respect to that market or those markets.  However, if you find that Plaintiffs have failed to prove such a market, then you must find in Defendants' favor on this claim.

**Relevant Geographic Market**

For each relevant product market you determine that Plaintiffs have proven, Plaintiffs must also prove a relevant geographic market.  The relevant geographic market for a given relevant product market is the area in which the defendant faces competition from other firms

that compete in that relevant product market and to which customers can reasonably turn for purchases. When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one area have substantial effects on prices or sales in another area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or even smaller. The relevant geographic market for one relevant product market may be larger or smaller than that for a different relevant product market.

Plaintiffs have the burden of proving the relevant geographic market by a preponderance of the evidence. In this case, Plaintiffs claim that the relevant geographic market for each of these markets is global. By contrast, Defendants assert that Plaintiffs have failed to prove a proper geographic market. In determining whether Plaintiffs have met their burden and proven that their proposed geographic market is proper, you may consider several factors, including:

- The geographic area in which the relevant products are sold and where customers for the relevant products are located;

- The geographic area to which customers turn for supply of the relevant products or have seriously considered turning; and

- The geographic areas that suppliers of the relevant products view as potential sources of competition.

**Plaintiffs' Objections:**

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion.

*First*, the instruction misstates the applicable markets and improperly deemphasizes each of the applicable "submarkets," each one of which can form the basis of an independent antitrust injury. *See Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962); Model Instructions, C-10 to C-11, note 5 (because the identical criteria are typically used to define both market and submarkets, and because anticompetitive behavior and injury can occur in either, "the term

'submarket' can confuse the jury and should not be used."). Further, the relevant markets include not just product markets, but also service markets, such as the critical market (identified in the instruction as an unnamed "submarket") for player services. This instruction would lead a jury to believe, however, that such a market does not and cannot exist. Additionally, it fails to identify other relevant markets such as the markets for ATP "memberships" or "sanctions"; for broadcasters; for sponsorships or for live fans.

*Second*, the instruction fails to identify all factors that contribute to geographic market definitions. *See* Model Instructions, C-13 to C-14.

*Third*, this instruction will create jury confusion and misstates the law as it fails to appropriately introduce the concept of market power. *See* Model Instruction, C-6; Plaintiffs' corresponding instruction.

## Instruction 8:  Relevant Market – Necessity of Proof[18]

If, after considering all the evidence, you find that Plaintiffs have proven by a preponderance of the evidence both a relevant product market and a relevant geographic market, then you must find that Plaintiffs have met the relevant market requirement and you must consider the remaining elements of this claim.

If you find that Plaintiffs have failed to prove by a preponderance of the evidence either a relevant product market or a relevant geographic market, then you must find for Defendants and against Plaintiffs on their antitrust claims.

**Plaintiffs' Objection:**

Plaintiffs object to this instruction as it is redundant and unnecessary and will create jury confusion.  Additionally, the instruction misstates the law and will create jury confusion as it fails to account for service markets.

---

[18] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-15 (2005).

### Instruction 9:  Rule of Reason – Proof of Competitive Harm[19]

In order to prove that the challenged restraint(s) are unreasonable, Plaintiffs first must demonstrate that the restraint(s) have resulted or are likely to result in a substantial harm to competition.  Although it may be relevant to the inquiry, harm that occurs merely to the individual business of Plaintiffs is not sufficient, by itself, to demonstrate harm to competition generally.  That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.

If you find that Plaintiffs have proven the existence of a relevant market, then you must determine whether Plaintiffs have also proven that the challenged restraint(s) have or are likely to have a substantial harmful effect on competition in that market.  The restraint must be substantial.  If the restraint has only a slight or insubstantial adverse impact on competition, it is not unreasonable or unlawful, and you must enter a verdict for Defendants on Plaintiffs' Section 1 claim.

A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits to consumers of competition, such as lower prices, increased output, and higher product quality.  If the challenged conduct has not resulted in or is not likely to result in higher prices paid by consumers, lower prices paid to suppliers, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm and you should find that the challenged conduct was reasonable.  The fact that one person has been selected over another to make a product available

---

[19] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION A-6 (2005).

to consumers does not mean that there has been an effect on competition.[20]

In determining whether the challenged restraints have produced or is likely to produce competitive harm, you may look at the following factors:  the effect of the restraint on prices, output, product quality, and service; the purpose and nature of the restraint; the nature and structure of the relevant market, both before and after the restraint was imposed; the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed; and whether the defendant(s) possess "market power."

The last factor mentioned, market power, has been defined as an ability to raise prices above those that would be charged in a competitive market for a sustained period of time.  A firm that possesses market power generally can charge higher prices for the same goods or services that a firm in the same market that does not possess market power.  The ability to charge higher prices for better products or services, however, is not market power.  An important factor in determining whether Defendants possess market power is Defendants' market share; that is, its percentage of the products or services sold in the relevant market by all competitors.  Other factors that you may consider in determining whether Defendants have market power in a relevant product market and relevant geographic market include the existence of barriers to entry; the existence of actual and potential competitors in the market; whether an increase in the price charged by Defendants would result in customers substituting other products for Defendants' products; and whether a decrease in the price paid by Defendants would result in suppliers selling their services to other purchasers.  If Defendants do not possess a substantial market share, it is less likely that they possess market power.  If Defendants do not possess this

---

[20] See *Mid-South Grizzlies v. NFL*, 720 F.2d 772, 786-87 (3d Cir. 1983); *NHLPA v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 720 (6th Cir. 2003); *Kentucky Speedway, LLC v. NASCAR, Inc.*, 2008 U.S. Dist. LEXIS 1076, *16-21 (E.D. Ky. Jan. 7, 2008).

REDACTED VERSION – PUBLICLY FILED

kind of power, then it is less likely that the challenged restraints have resulted or will result in a substantial harmful effect on competition in the market.

You may also consider Plaintiffs' own statements and actions with respect to the challenged restraints.  For example, Plaintiffs' prior support for conduct or activity they now challenge as anticompetitive or an expression of a desire to enjoy the benefits of such conduct or activity in the future should weigh against a finding that the alleged restraint had or would have anticompetitive effects.

**Plaintiffs' Objections:**

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion.

*First*, the instruction misstates the law and creates a substantial risk of jury confusion by failing to account for Defendants' monopsony in important input markets such as those for player services. In such markets anticompetitive effects will be demonstrated, *inter alia*, by a decrease in the price paid by cartel members (on account of their monopsony power). *See, e.g., Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219 (1948); Defendants' Instruction No. 25.

*Second*, the instruction creates a substantial likelihood of jury confusion by overemphasizing the importance of "substantial" harm via the inclusion of the additional language, above and beyond that included in the Model Instructions, that "[t]he restraint must be substantial. If the restraint has only a slight or insubstantial adverse impact on competition, it is not unreasonable or unlawful, and you must enter a verdict for Defendants on Plaintiffs' Section 1 claim." The language of the Model Instruction should be utilized on this point.

*Third*, the instruction misstates the relevant factors of the case relating to market power. Plaintiffs' list set forth in the Plaintiffs' corresponding instruction accurately sets forth these factors.

*Fourth*, the instruction misstates the law by indicating that "Plaintiffs' own statements and actions with respect to the challenged restraints" are a relevant factor relating to "competitive harm." This language is not included in the Model Instruction and is not relevant to the concept of competitive harm in any regard. At most it could relate, as an affirmative defense on liability only if Defendants was equally or more responsible in the formation of the conspiracy, which has never been so much as alleged by Defendants. *See* Model Instructions, F-50; *Blackburn v. Sweeney*, 53 F.3d 825, 829 (7th Cir. 1995); *Colombia Nitrogen Co. v. Royster Co.*, 451 F.2d 3, 15-16 (4th Cir. 1971). Accordingly, this language is inappropriate in a liability instruction as a matter of law.

## Instruction 10:  Rule of Reason – Evidence of Competitive Benefits[21]

If you find that Plaintiffs have proven that the challenged restraints resulted in substantial harm to competition in a relevant market, then you next must determine whether the restraints also benefit or will benefit competition in other ways, such as by increased product quality and consistency; improved efficiency; greater predictability; increased marketing; increased promotion and greater availability of consumer information; expanded product availability; increased investment; or generally, by permitting the parties who have agreed to the challenged restraint to be more effective competitors in a relevant market.  You may also take into account the view of the parties or market participants of the benefits or utilities, if any, of the challenged restraints.  You must also consider whether the challenged restraint resulted in, or will result in, a decrease in "free rider" behavior in the marketplace.

"Free rider" behavior is a term that refers to an imperfection in markets which allows one business to take advantage of and benefit from the investment of another.  For example, if two parties sell the same brand or a similar type of product in the same geographic area, and one invests heavily in marketing, the other may benefit from increased sales without the corresponding cost.  The party with reduced costs may then be able to sell the product for a lower cost than the party that invested in marketing, and unfairly reap the benefit of the first party's efforts.  Such a result may ultimately reduce the incentive of either party to market the product, with the net result being a loss of information for consumers.  An agreement that restrains competition between suppliers of the same brand or a similar type of a product may be

---

[21] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION A-10 (2005).

justified if the purpose of that agreement is to avoid or regulate "free rider" behavior.[22]

If you find that the challenged restraints do result in competitive benefits, then you also must consider whether the restraints were reasonably necessary to achieve the benefits. If Plaintiffs prove that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraints.

## Plaintiffs' Objections:

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion.

*First*, the instruction misstates the law. The assertion of "free-riding" as a pro-competitive justification requires proof that consumers will be harmed because the incentive to produce a service or product will be lost. *See* Phillip E. Areeda, Antitrust Law, Vol. III, ¶ 1613(b) (1989); *Toys "R" Us v. Fed. Trade Comm'n.*, 221 F.3d 928 (7th Cir. 2000)(explaining that concept of free-riding is tied to incentive and consumer welfare).

*Second*, even if free riding is an appropriate pro-competitive justification, which fact is expressly denied, the instruction creates a substantial likelihood of jury confusion by dedicating two pages of inappropriate legal and economic argument to the concept of "free riding." Defendants can make these points via trial. As set forth in the Model Instruction, however, the jury instruction should be limited to listing Defendants' purported pro-competitive justifications, rather than arguing as to the economic theories that underlie them.

*Third*, the instruction's list of purported pro-competitive benefits is inappropriate as a matter of law.

---

[22] *Continental TV, Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977).

**Instruction 11:  Rule of Reason – Balancing the Competitive Effects**[23]

If you find that the challenged restraint(s) were reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint(s).  If the competitive harm substantially outweighs the competitive benefits, then the challenged restraint(s) are unreasonable.  If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraint(s) are not unreasonable.   In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors.

---

[23]  ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION A-12 (2005).

46

### Instruction 12:  Horizontal Price Fixing:  Elements[24]

Plaintiffs claim that they were injured because Defendants conspired to fix the prices in the market for player services.

A business has the right to determine on its own what price it will charge for consumers or pay for products or services.  Under the Sherman Act it may be illegal for horizontal competitors, regardless of their size or amount of sales, to agree to the prices to be paid for competing input services.

An agreement can violate this rule even if there is not an agreement on the exact price paid.  For example, it potentially may be illegal for horizontal competitors to agree on a range within which prices will fall.

It may also be illegal for competitors to agree on a plan or scheme that will tend to stabilize prices.

You are instructed that the ATP Directors , acting within their capacity as directors of ATP, are not separate entities capable of agreeing or conspiring with Defendant ATP for the purposes of this claim.  To prevail against Defendants on a price-fixing claim, Plaintiffs must prove, by a preponderance of the evidence:

**First**, that there is a relevant product market for player services that exists within a relevant geographic market;

**Second**, that two or more separate entities that are horizontal competitors agreed to fix the prices to be paid for player services;

**Third**, that this agreement had an anticompetitive effect on the market for player

_____

[24] Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried.  In the event that the Court determines to give such an instruction over Defendants' objection, Defendants propose this wording for the instruction.

services; and

**Fourth**, that Plaintiffs were injured by that anticompetitive effect on the market for player services.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular defendant, then you must find for that particular defendant and against Plaintiffs on Plaintiffs' price-fixing claim against that specific Defendant. If you find that the evidence is sufficient to prove all four elements as to a particular defendant, then you must consider whether the agreement to fix prices had any procompetitive benefits and, if so, whether the agreement at issue was reasonably necessary to achieve those benefits. If you find that there are procompetitive benefits and that the agreement at issue was reasonably necessary to achieve those benefits, you must then determine whether the anticompetitive effects substantially outweigh those procompetitive benefits. If the anticompetitive effects do substantially outweigh any procompetitive benefits, then you must find for Plaintiffs and against that particular defendant on Plaintiffs' price fixing claim.[25]

**Plaintiffs' Objections:**

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion. This instruction misstates the elements of Plaintiffs' horizontal price fixing claim. The elements are, in actuality, (1) that an agreement to fix the prices of player services exists; that the defendant(s) knowingly, that is voluntarily and intentionally - became a party to that agreement; (3) that such an agreement occurred in or affected interstate commerce; and (4) that the agreement caused plaintiff to suffer an injury to its business or property. Model Instruction, B-19 to B-20. There is no dispute among the parties that Defendants' actions affect interstate commerce. Accordingly, Plaintiffs' corresponding instruction, which is substantially identical to the model instructions, minus element 3, more appropriately states the law.

---

[25] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-19 (2005).

REDACTED VERSION – PUBLICLY FILED

REDACTED VERSION – PUBLICLY FILED

**Instruction 13:  Good Intent Not a Defense**[26]

If you find that any of the Defendants entered into an agreement or conspiracy to fix

prices, it is not a defense that a defendant acted with good motives or thought its conduct was

legal.[27]

---

[26] Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried.  In the event that the Court determines to give such an instruction over Defendants' objection, Defendants propose this wording for the instruction.

[27] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-26 (2005).

REDACTED VERSION – PUBLICLY FILED

**Instruction 14:  Reasonableness of Prices No Excuse[28]**

The Sherman Act makes agreements among competitors to fix prices unlawful, regardless of whether the prices that are fixed are reasonable.  Therefore, if you find that a price-fixing conspiracy existed, it does not matter whether the prices agreed upon were high or low or reasonable or unreasonable.[29]

---

[28] Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried.  In the event that the Court determines to give such an instruction over Defendants' objection, Defendants propose this wording for the instruction.

[29] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-27 (2005).

51

REDACTED VERSION – PUBLICLY FILED

**Instruction 15:  Evidence of Competition[30]**

Evidence that Defendants actually engaged in price competition with each other in some manner has been admitted to assist you in deciding whether they entered into an agreement to fix prices.  If you find that Defendants agreed to fix, limit, or stabilize the price paid for player services, however, it is no defense that Defendants actually competed in some respects with each other or that they did not eliminate all competition between them.  Similarly, a price-fixing agreement is unlawful even if it did not extend to all services sold or purchased by Defendants or did not affect all of their customers.[31]

---

[30] Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried.  In the event that the Court determines to give such an instruction over Defendants' objection, Defendants propose this wording for the instruction.

[31] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-28 (2005).

### Instruction 16:  Allocation of Customers or Suppliers[32]

Plaintiff claims that Defendants have violated the Sherman Act by agreeing to allocate player services and customers for whom they otherwise would have competed.  To "allocate" means to divide up.

A business has the right to determine on its own from whom it will purchase supplies and to whom it will sell its products.  The Sherman Act, however, prohibits agreements between two or more horizontal competitors not to compete with each other for the business of particular suppliers or customers.  Supplier allocation exists, for example, where two or more horizontal competitors agree that they will not buy or try to buy from each other's existing suppliers.  Customer allocation exists, for example, where two or more horizontal competitors agree that they will not sell or try to sell to each other's existing customers.

You are instructed that the ATP Directors, acting within their capacity as directors of ATP, are not separate entities capable of agreeing or conspiring with Defendant ATP for the purposes of this claim.  To prevail on this claim against a defendant, Plaintiff must prove as to that defendant each of the following elements by a preponderance of the evidence:

**First,** the existence of a relevant product market and a relevant geographic market;

**Second,** that two or more entities that are horizontal competitors agreed that they would divide up the suppliers or customers in that relevant product market between or among themselves;

**Third**, that this agreement had an anticompetitive effect on the relevant product market that was divided up;

---

[32] Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried.  In the event that the Court determines to give such an instruction over Defendants' objection, Defendants propose this wording for the instruction.

**Fourth,** that Plaintiffs were injured by that anticompetitive effect on the market for suppliers or customers.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular defendant, then you must find for that particular defendant and against Plaintiffs on Plaintiffs' allocation of suppliers or customers claim against that specific Defendant.  If you find that the evidence is sufficient to prove all four elements as to a particular defendant, then you must consider whether the agreement to divide up suppliers or customers had any procompetitive benefits and, if so, whether the agreement at issue was reasonably necessary to achieve those benefits.  If you find that there are procompetitive benefits and that the agreement at issue was reasonably necessary to achieve those benefits, you must then determine whether the anticompetitive effects substantially outweigh those procompetitive benefits.    If the anticompetitive effects do substantially outweigh any procompetitive benefits, then you must find for Plaintiffs and against that particular defendant on Plaintiffs' allocation of suppliers or customers claim.[33]

**Plaintiffs' Objections:**

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion.  This instruction misstates the elements of Plaintiffs' allocation of customers or suppliers claim.  The elements are, in actuality, (1) that the defendant and one or more other persons agree to allocate relevant markets; (2) that such an agreement occurred in or affected interstate commerce; and (3) that the agreement caused plaintiff to suffer an injury to its business or property.  Model Instruction, B-39.  There is no dispute among the parties that Defendants' actions affect interstate commerce.  Accordingly, Plaintiffs' corresponding instruction, which is substantially identical to the model instructions, minus element 2, appropriately states the law and should be utilized.

---

[33] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-39 (2005).

## Instruction 17: Allocation of Territories[34]

Plaintiffs claim that Defendants have violated the Sherman Act by conspiring to allocate territories or geographical areas in which they would otherwise have competed for the purchase of player services and calendar positions and the sale of sponsorships and broadcast rights.

A business has the right to determine on its own where it will sell its products. The Sherman Act, however, prohibits agreements between two or more horizontal competitors not to compete with each other in a particular geographic area. Territorial allocation exists, for example, where two or more competitors agree that they will each confine their sales efforts to a different geographic area.

You are instructed that the ATP Directors, acting within their capacity as directors of ATP, are not separate entities capable of agreeing or conspiring with Defendant ATP for the purposes of this claim. To prevail on this claim against a defendant, Plaintiffs must prove as to that defendant each of the following elements by a preponderance of the evidence:

**First,** the existence of a relevant product market and a relevant geographic market;

**Second,** that two or more entities that are horizontal competitors agreed that they would divide up that relevant geographic market between or among themselves;

**Third,** that this agreement had an anticompetitive effect on the relevant product market that was divided up;

**Fourth,** that Plaintiffs were injured by that anticompetitive effect on the markets for the purchase of player services and calendar positions and for the sale of sponsorships and broadcast rights.

---

[34] Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried. In the event that the Court determines to give such an instruction over Defendants' objection, Defendants propose this wording for the instruction.

If you find that the evidence is insufficient to prove any one or more of these elements as

to a particular defendant, then you must find for that particular defendant and against Plaintiffs

on Plaintiffs' allocation of territories claim against that specific Defendant.  If you find that the

evidence is sufficient to prove all four elements as to a particular defendant, then you must

consider whether the agreement to divide up territories had any procompetitive benefits and, if

so, whether the agreement at issue was reasonably necessary to achieve those benefits.  If you

find that there are procompetitive benefits and that the agreement at issue was reasonably

necessary to achieve those benefits, you must then determine whether the anticompetitive effects

substantially outweigh those procompetitive benefits.    If the anticompetitive effects do

substantially outweigh any procompetitive benefits, then you must find for Plaintiffs and against

that particular defendant on Plaintiffs' allocation of territories claim.[35]

**Plaintiffs' Objections:**

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion.  This instruction misstates the elements of Plaintiffs' allocation of customers or suppliers claim.  The elements are, in actuality, (1) that the defendant and one or more other persons agree to allocate territories; (2) that such an agreement occurred in or affected interstate commerce; and (3) that the agreement caused plaintiff to suffer an injury to its business or property.  Model Instruction, B-42.  There is no dispute among the parties that Defendants' actions affect interstate commerce.  Accordingly, Plaintiffs' corresponding instruction, which is substantially identical to the model instructions, minus element 2, appropriately states the law and should be utilized.

---

[35] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-42 (2005).

## Instruction 18:  Allocation of Product Markets[36]

Plaintiffs claim that Defendants have violated the Sherman Act by conspiring to allocate product or service markets in which they would otherwise have competed.

A business has the right to determine on its own what products it will produce.  The Sherman Act, however, prohibits agreements between two or more horizontal competitors not to compete with each other in the manufacture or sale of a particular product.

You are instructed that the ATP Directors, acting within their capacity as directors of ATP, are not separate entities capable of agreeing or conspiring with Defendant ATP for the purposes of this claim.  To prevail on this claim against a defendant, Plaintiffs must prove as to that defendant each of the following elements by a preponderance of the evidence:

**First,** the existence of a relevant product market and a relevant geographic market;

**Second,** that two or more entities that are horizontal competitors agreed that they would divide up the relevant product market between or among themselves;

**Third**, that this agreement had an anticompetitive effect on the relevant product market that was divided up;

**Fourth,** that Plaintiffs were injured by that anticompetitive effect on the market for suppliers or customers.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular defendant, then you must find for that particular defendant and against Plaintiffs on Plaintiffs' allocation of product markets claim against that specific Defendant.  If you find that the evidence is sufficient to prove all four elements as to a particular defendant, then you

---

[36] Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried.  In the event that the Court determines to give such an instruction over Defendants' objection, Defendants propose this wording for the instruction.

must consider whether the agreement to divide up product markets had any procompetitive benefits and, if so, whether the agreement at issue was reasonably necessary to achieve those benefits. If you find that there are procompetitive benefits and that the agreement at issue was reasonably necessary to achieve those benefits, you must then determine whether the anticompetitive effects substantially outweigh those procompetitive benefits. If the anticompetitive effects do substantially outweigh any procompetitive benefits, then you must find for Plaintiffs and against that particular defendant on Plaintiffs' allocation of product markets claim.[37]

**Plaintiffs' Objections:**

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion. This instruction misstates the elements of Plaintiffs' allocation of customers or suppliers claim. The elements are, in actuality, (1) that the defendant and one or more other persons agree to allocate product or service input or output markets; (2) that such an agreement occurred in or affected interstate commerce; and (3) that the agreement caused plaintiff to suffer an injury to its business or property. Model Instruction, B-46. There is no dispute among the parties that Defendants' actions affect interstate commerce. Accordingly, Plaintiffs' corresponding instruction, which is substantially identical to the model instructions, minus element 2, appropriately states the law and should be utilized.

---

[37] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-45 (2005).

### Instruction 19:  Agreement to Limit Production[38]

Plaintiffs claim that Defendants have violated the Sherman Act by conspiring to limit production of top-tier professional men's tennis tournaments.

A business has the right to determine on its own how much of its product it will produce. The Sherman Act, however, prohibits any agreement among two or more horizontal competitors that limits how much of a product one or more of them will produce.

An agreement to limit production is an agreement between two or more competitors to limit the output of one or more of them or to limit the availability of their product.

You are instructed that the ATP Directors, acting within their capacity as directors of ATP, are not separate entities capable of agreeing or conspiring with Defendant ATP for the purposes of this claim.  To prevail on this claim against a defendant, Plaintiffs must prove as to that defendant each of the following elements by a preponderance of the evidence:

**First**, that there is a relevant product market for "top tier men's professional tennis" that exists within a relevant geographic market;

**Second**, that one or more entities that are horizontal competitors agreed that they would cap the production of top-tier men's professional tennis;

**Third**, that this agreement had an anticompetitive effect on the market for top-tier men's professional tennis;

**Fourth,** that Plaintiffs were injured by that anticompetitive effect on the market for top-tier men's professional tennis.

If you find that the evidence is insufficient to prove any one or more of these elements as

---

[38] Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried.  In the event that the Court determines to give such an instruction over Defendants' objection, Defendants propose this wording for the instruction.

to a particular defendant, then you must find for that particular defendant and against Plaintiffs on Plaintiffs' agreement to limit production claim against that specific defendant. If you find that the evidence is sufficient to prove all four elements as to a particular defendant, then you must consider whether the agreement to limit production had any procompetitive benefits and, if so, whether the agreement at issue was reasonably necessary to achieve those benefits. If you find that there are procompetitive benefits and that the agreement at issue was reasonably necessary to achieve those benefits, you must then determine whether the anticompetitive effects substantially outweigh those procompetitive benefits.    If the anticompetitive effects do substantially outweigh any procompetitive benefits, then you must find for Plaintiffs and against that particular defendant on Plaintiffs' agreement to limit production claim.[39]

## Plaintiffs' Objections:

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion.

*First*, this instruction misstates the elements of Plaintiffs' allocation of customers or suppliers claim. The elements are, in actuality, (1) that the defendants and one or more other persons agreed to limit output; (2) that such an agreement occurred in or affected interstate commerce; and (3) that the agreement caused plaintiff to suffer an injury to its business or property. Model Instruction, B-48. There is no dispute among the parties that Defendants' actions affect interstate commerce. Accordingly, Plaintiffs' corresponding instruction, which is substantially identical to the model instructions, minus element 2, more appropriately states the law.

*Second*, this instruction misstates the nature of Defendants' agreement(s) to limit production.

---

[39] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-48 (2005).

### Instruction 20:  Group Boycott[40]

Plaintiffs have alleged that Defendants have violated the Sherman Act by agreeing not deal with Plaintiffs except under discriminatory terms, specifically with regard to player services, ATP membership rights, and calendar dates.

A business has the right to deal, or refuse to deal, with whomever it likes as long as it makes that decision on its own.  The Sherman Act, however, prohibits two or more separate businesses from making an effort to disadvantage a competitor by agreeing with each other not to deal with the competitor except under certain discriminatory terms, when those same persons or businesses did deal or offer to deal other persons without being subject to the same discriminatory terms.  This situation is sometimes referred to as a "group boycott."

You are instructed that the ATP Directors, acting within their capacity as directors of ATP, are not separate entities capable of agreeing or conspiring with Defendant ATP for the purposes of this claim.  To prevail on this claim against a defendant, Plaintiffs must prove as to that defendant each of the following elements by a preponderance of the evidence:

**First**, that there are relevant markets for player services, ATP membership rights, and calendar dates, each of which exist within a  relevant geographic market;

**Second,** that the defendant and one or more entities that are horizontal competitors in one or more of those relevant markets agreed not to deal with Plaintiffs in a relevant market;

**Third,** that the refusal to deal with Plaintiffs disadvantaged Plaintiffs by denying Plaintiffs access to a supply of product, a facility, or a market or a service necessary for Plaintiffs to compete effectively;

---

[40] Defendants object to including an instruction on this issue because it is not relevant to the facts and issues to be tried.  In the event that the Court determines to give such an instruction over Defendants' objection, Defendants propose this wording for the instruction.

**Fourth,** that this agreement had an anticompetitive effect on the relevant market in question;

**Fifth,** that Plaintiffs were injured by that anticompetitive effect of the defendant's refusal to deal.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular defendant, then you must find for that particular defendant and against Plaintiffs on Plaintiffs' group boycott claim against that specific defendant. If you find that the evidence is sufficient to prove all five elements as to a particular defendant, then you must consider whether the group boycott had any procompetitive benefits and, if so, whether the agreement at issue was reasonably necessary to achieve those benefits. If you find that there are procompetitive benefits and that the agreement at issue was reasonably necessary to achieve those benefits, you must then determine whether the anticompetitive effects substantially outweigh those procompetitive benefits. If the anticompetitive effects do substantially outweigh any procompetitive benefits, then you must find for Plaintiffs and against that particular defendant on Plaintiffs' group boycott claim.[41]

---

[41] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-54 (2005).

## Instruction 21: Monopolization: Elements[42]

Plaintiffs allege that they were injured by defendants' unlawful monopolization of the markets for men's professional tennis tournaments, men's professional tennis players' services, broadcasting men's professional tennis events, fans of live men's professional tennis, and sponsoring men's professional tennis events. To prevail on this claim, Plaintiffs must prove each of the following elements by a preponderance of the evidence:

**First**, the existence of a relevant product market and relevant geographic market;

**Second**, that ATP possessed monopoly power in that market;

**Third**, that the Defendants "willfully" acquired or maintained monopoly power in that market by engaging in anticompetitive conduct;

**Fourth**, that Plaintiffs were injured in their business or property because of the Defendants' anticompetitive conduct;

**Fifth**, that the injury constitutes "antitrust injury" – that is, the type of harm that the antitrust laws were intended to prevent.

If you find that Plaintiffs have failed to prove any of these elements, then you must find for Defendants and against Plaintiffs on this claim. If you find that Plaintiffs have proved each of these elements by a preponderance of the evidence, then you must find for Plaintiffs and against Defendants on this claim.

**Plaintiffs' Objections:**

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion. This instruction misstates the elements of Plaintiffs' Monopolization claim. The elements are, as set forth by the Model Instructions, (1) that the alleged market is an antitrust market; (2) that the defendant(s) possess monopoly power in that market; (3) that the

---

[42] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-2 (2005).

REDACTED VERSION – PUBLICLY FILED

defendant(s) willfully acquired or maintained monopoly power; (4) that the defendant(s)' conduct occurred in or affected interstate (or foreign) commerce; and (5) that the plaintiff was injured in its business or property because of the defendant(s)' anticompetitive conduct. Model Instruction, C-2.

*Second*, the instruction impermissibly injects the concept of antitrust standing into the elements of a Sherman Act § 1 violation. By doing so Defendants again misstate the law and create a significant danger of jury confusion. Plaintiffs contend that they have demonstrated antitrust standing as a matter of law. To the extent the Court disagrees, however, this concept is appropriately addressed via independent competitive harm and damage instructions such as those included in Plaintiffs' proposed instructions, the Model Instructions, and Defendants' Instructions, below.

*Third*, the instruction creates the substantial likelihood of jury confusion by inserting the concepts of geographic and product markets into this instruction. These concepts are appropriately covered by appropriate instruction(s) on market definitions.

There is no dispute among the parties that Defendants' actions affect interstate commerce. Accordingly, Plaintiffs' corresponding instruction, which is substantially identical to the model instructions, minus element 4, appropriately states the law and should be utilized.

## Instruction 22: Monopoly Power Defined[43]

Monopoly power is the power to control prices and exclude competition in a relevant antitrust market. More precisely, a firm is a monopolist if it can profitably raise the prices it charges consumers substantially above the competitive level for a significant period of time or if it can profitably lower the prices it pays to its suppliers below the competitive level for a significant period of time. To prove its monopolization claim, one of the elements plaintiffs must prove is that defendants have monopoly power in a relevant antitrust market. However, monopoly power, in and of itself, is not unlawful.

I will provide further instructions about how you may determine whether plaintiffs have met their burden of proving monopoly power in a relevant market.

**Plaintiffs' Objections:**

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion by failing to account for Defendants' monopolistic control takes the form of a monopsony in important input markets such as those for player services. In such markets anticompetitive effects will be demonstrated, *inter alia*, by a decrease in the price paid by cartel members (on account of their monopsony power) rather than an increase in prices charged. *See, e.g., Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219 (1948); Defendants' Instruction No. 25.

---

[43] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-4 (2005).

REDACTED VERSION – PUBLICLY FILED

## Instruction 23:  Monopolization:  Relevant Market - General[44]

Plaintiffs must prove by a preponderance of the evidence that the defendants had monopoly power in a relevant market.  Defining the relevant market is essential because you are required to make a judgment about whether defendants have monopoly power in a properly defined economic market.  To make this judgment, you must be able to determine what, if any, economic forces restrain Defendants' freedom to set the prices paid to players or to restrict the demand for player services or Defendants' freedom to set the prices charged to sponsors, broadcasters and fans or to restrict supply to those consumers. The most likely and most important restraining force will be actual and potential competition from other firms and their products.  This includes all firms and products that act as restraints on defendants' power to set prices as they please.  All the firms and products that exert this restraining force are considered to be within what is called the relevant market.

There are two aspects you must consider in determining whether plaintiff has met its burden to prove the relevant market by a preponderance of the evidence.  The first is the relevant product market; the second is the relevant geographic market.

**Plaintiffs' Objections:**

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion by failing to identify all the product or services in question.  Plaintiffs' proposed instruction does so and should be utilized.

---

[44]  ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-6 (2005).

**Instruction 24:  Existence of Monopoly Power – Indirect Proof[45]**

If you find that Plaintiffs have proven a relevant market, then you should determine whether Defendants have monopoly power in that market.  As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market. Plaintiffs have attempted to use evidence of the structure of the market to show that Defendants have monopoly power.  The evidence presented by the parties includes evidence of Defendants' market share, barriers to entry, entry and exit by other companies, and the number and size of other competitors.  If this evidence establishes that Defendants have the power to control prices and exclude competition in the relevant antitrust market, then you may conclude that Defendants have monopoly power in the market.

**Market Share**

The first factor that you should consider is Defendants' market share.  Based on the evidence that you have heard about Defendants' market share, you should determine the Defendants' market share as a percentage of total industry sales.

A market share above 50 percent may be sufficient to support an inference that Defendants have monopoly power, but in considering whether defendant has monopoly power it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors.  Along with defendants' market share, these factors should inform you as to whether defendants have monopoly power.  The likelihood that a company has monopoly power is stronger the higher that company's share is above 50 percent.

---

[45] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-16 (2005).

A market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has monopoly power. However, if you find that the other evidence demonstrates that Defendants do, in fact, have monopoly power despite having a market share below 50 percent, you may conclude that defendants have monopoly power.

**Barriers to Entry**

You may also consider whether there are barriers to entry into the relevant market. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. Barriers to entry might include intellectual property rights (such as patents or trade secrets), specialized marketing practices, and the reputation of the companies already participating in the market (or the brand name recognition of their products).

Evidence of low or no entry barriers may be evidence that Defendants do not have monopoly power, regardless of Defendants' market share, because new competitors could enter easily if Defendants attempted to raise prices for a substantial period of time. By contrast, evidence of high barriers to entry, along with high market share, may support an inference that Defendants have monopoly power.

**Entry and Exit by Other Companies**

The history of entry and exit in the relevant market may be helpful to consider. Entry of new competitors or expansion of existing competitors may be evidence that Defendants lack monopoly power. On the other hand, departures from the market, or the failure of firms to enter the market, particularly if prices and profit margins are relatively high, may support an inference that Defendants have monopoly power.

**Number and Size of Competitors**

You may consider whether Defendants' competitors are capable of effectively

competing.  In other words, you should consider whether the financial strength, market shares and number of competitors act as a check on Defendants' ability to price its products.   If Defendants' competitors are vigorous or have large or increasing market shares, this may be evidence that Defendants lack monopoly power.   On the other hand, if you determine that Defendants' competitors are weak or have small or declining market shares, this may support an inference that Defendants have monopoly power.

**Conclusion**

If you find that Defendants have monopoly power in the relevant market, then you must consider the remaining elements of this claim.   If you find that Defendants do not have monopoly power, then you must find for Defendants and against Plaintiffs on this claim.

**Plaintiffs' Objections:**

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion by failing to identify all appropriate indicia of market share or barriers to entry. Plaintiffs' proposed instruction does so and should be utilized.

## Instruction 25:  Existence of Monopoly Power – Direct Proof[46]

If you find that Plaintiffs have proven a relevant market, then you should determine whether Defendants have monopoly power in that market.  As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market. More precisely, a firm is a monopolist if it can profitably lower and maintain the prices it pays for its inputs substantially below the competitive level for a significant period of time, or if it can profitably raise and maintain the prices it charges for its outputs substantially above the competitive level for a significant period of time.

Plaintiffs have the burden of proving that Defendants have the ability to profitably lower and maintain these input prices substantially below the competitive level for a significant period of time.  Plaintiffs also have the burden of proving that Defendants have the ability to profitably raise and maintain these output prices substantially above the competitive level for a significant period of time.  Plaintiffs must prove that Defendants have the power to do so by themselves – that is, without the assistance of, and despite competition from, any existing or potential competitors.

If Defendants attempted to maintain these prices above or below competitive levels, but would lose so much business to other competitors that the price increase would become unprofitable and would have to be withdrawn, then Defendants do not have monopoly power.

Similarly, Plaintiffs must prove that Defendants have the ability to exclude competition. For example, if Defendants attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could expand their sales and

---

[46]  ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-23 (2005).

70

take so much business that the price increase would become unprofitable and would have to be withdrawn, then Defendants do not have monopoly power.

An ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power. However, the ability to earn high profit margins or a high rate of return does not necessarily mean that Defendants have monopoly power. Other factors may enable a company without monopoly power to sell at higher prices or earn higher profit margins than its competitors, such as the ability to offer superior products or services, the ability to maintain an efficient business operation, superior advertising or marketing, or unique structure of the industry. Evidence that Defendant would lose a substantial amount of sales if it raised prices substantially, or that the Defendants' profit margins were similar to or low compared to its competitors, erratic, and/or decreasing, might be evidence that the Defendants do not have monopoly power.

If you find that Plaintiffs have proven that Defendants have monopoly power in the relevant market, then you must consider the remaining elements of this claim. If you find that Defendants do not have monopoly power, then you must find for Defendants and against the Plaintiffs on this claim.

**Plaintiffs' Objections:**

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion by failing to fully address issues relating to input markets. Plaintiffs' proposed instruction does so and should be utilized.

71

## Instruction 26:  Willful Acquisition or Maintenance of Monopoly Power[47]

The next element Plaintiffs must prove is that Defendants willfully acquired or maintained monopoly power through anticompetitive acts or practices.  Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers within the relevant market.  Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition.  In addition, you should distinguish the acquisition or maintenance of monopoly power through anticompetitive acts from the acquisition or maintenance of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, which is not unlawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws.  A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws.  A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine.  This is because all companies have a desire to increase their profits and increase their market share.  These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals – or the achievement of these goals – unlawful, as long as a company does not use anticompetitive means to achieve these goals.

---

[47]  ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-26 (2005).

In determining whether Defendants' conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

The acts or practices that result in the acquisition or maintenance of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. They must represent conduct that has made it very difficult or impossible for competitors to compete and that was taken for no legitimate business reason. You may not find that a company willfully acquired or maintained monopoly power if it has acquired or maintained that power solely through the exercise of superior foresight and skill; or because of natural advantages such as unique access to raw materials or markets; or because of organizational efficiency or insight; or because of economic or technological efficiency.

If you find that Plaintiffs have proven by a preponderance of the evidence that Defendants willfully acquired or maintained monopoly power through anticompetitive acts, then you must consider whether Plaintiffs have proved the remaining elements of this claim. If, however, you find that Plaintiffs did not prove this element by a preponderance of the evidence, then you must find for Defendants and against Plaintiffs on this claim.

**Plaintiffs' Objections:**

Plaintiffs' object to this instruction as creates a substantial risk of jury confusion as it fails to include appropriate and useful examples contained in the Model Instruction. Plaintiffs' proposed instruction does so and should be utilized.

## Instruction 27:  Attempted Monopolization - Elements[48]

Plaintiffs allege that they were injured by the Defendants' unlawful attempt to monopolize certain relevant product markets and geographic markets.  To prevail on their claim of attempted monopolization, Plaintiffs must prove each of the following elements by a preponderance of the evidence:

**First**, the existence of a relevant product market and geographic market;

**Second,** that Defendants engaged in anticompetitive conduct;

**Third,** that Defendants had a specific intent to achieve monopoly power in a relevant product market and geographic market;

**Fourth,** that there was a dangerous probability that Defendants would achieve their goal of monopoly power in the relevant product market and geographic market;

**Fifth**, that Plaintiffs were injured in their business or property by Defendants' anticompetitive conduct; and

**Sixth,** that the injury constitutes "antitrust injury" – that is, the type of harm that the antitrust laws were intended to prevent.

The specific elements of this claim will be described further below.  If you find that the evidence is insufficient to prove any one or more of these elements, then you must find for Defendants and against Plaintiffs on Plaintiffs' claim of attempted monopolization.  If you find that the evidence is sufficient to prove all six elements as to Defendants, then you must find for Plaintiffs and against Defendants on Plaintiffs' claim of attempted monopolization.

**Plaintiffs' Objections:**

---

[48]  ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-84 (2005).

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion.

*First*, this instruction misstates the elements of Plaintiffs' Monopolization claim. The elements, as established by the United States Supreme Court are as follows: (1) that defendant(s) engaged in anticompetitive conduct; (2) that defendant had a specific intent to achieve monopoly power in a relevant market; (3) that there was a dangerous probability that defendant would achieve its goal of monopoly in the relevant market; (4) that defendant(s)' conduct occurred in or affected interstate (or foreign) commerce; and that plaintiff was injured in its business or property by defendant(s)' anticompetitive conduct. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993); Model Instruction, C-84.

*Second*, the instruction impermissibly injects the concept of antitrust standing into the specific elements of a Sherman Act § 2 violation. By doing so Defendants again misstate the law and create a significant danger of jury confusion. Plaintiffs contend that they have demonstrated antitrust standing as a matter of law. To the extent the Court disagrees, however, this concept is appropriately addressed via independent competitive harm and damage instructions such as those included in Plaintiffs' proposed instructions, the Model Instructions, and Defendants' Instructions.

*Third*, the instruction creates the substantial likelihood of jury confusion by inserting the concepts of geographic and product markets into this instruction. These concepts are appropriately covered by appropriate instruction(s) on market definitions.

*Fourth*, the term "Defendants" should reflect both the singular and plural.

There is no dispute among the parties that Defendants' actions affect interstate commerce. Accordingly, Plaintiffs' corresponding instruction, which is substantially identical to the model instructions, minus element 4, appropriately states the law and should be utilized.

### Instruction 28: Specific Intent[49]

Plaintiffs must prove that Defendants had a specific intent to monopolize a relevant market. To do so, Plaintiffs must first prove that the markets they are talking about are relevant markets for antitrust purposes. Plaintiffs must then prove that Defendants had a specific intent to monopolize those markets. The Court has instructed you on the relevant market(s), and the Court will next discuss specific intent. If Plaintiffs prove both that a market is a relevant market and that Defendants had a specific intent to monopolize that market, you must find that Plaintiffs have proven this element of their attempted monopolization claim and you should consider the other elements of the claim. If you find that Plaintiffs fail to prove either of these points, then you must find for Defendants on Plaintiffs' attempted monopolization claim.

If you find that Plaintiffs have proven a relevant market, you must then decide whether Defendants had the specific intent to monopolize that market. In other words, you must decide if the evidence shows that Defendants acted with the conscious aim of acquiring the power to control prices and to exclude or destroy competition in the relevant markets.

There are several ways in which Plaintiffs may prove that Defendants had the specific intent to monopolize. There may be evidence of direct statements of defendants' intent to obtain a monopoly in the relevant market. Such proof of specific intent may be established by documents prepared by responsible officers or employees of ATP or the directors at or about the time of the conduct in question or by testimony concerning statements made by such persons. You must be careful, however, to distinguish between a defendant's intent to compete aggressively (which is lawful), which may be accompanied by aggressive language, and a true

---

[49] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-90 (2005).

intent to acquire monopoly power using anticompetitive means.

Even if you decide that the evidence does not prove directly that Defendants actually intended to obtain a monopoly, specific intent may be inferred from what Defendants did. For example, if the evidence shows that the natural and probable consequences of Defendants' conduct in the relevant market was to give Defendants control over prices and to exclude or destroy competition, and that this was plainly foreseeable by defendants, then you may (but are not required to) infer that Defendants specifically intended to acquire monopoly power.

**Plaintiffs' Objections:**

Plaintiffs' object to this instruction as it creates a substantial risk of jury confusion by failing to identify the relevant markets, as set forth in the Model Instruction. Plaintiffs' proposed instruction does so and should be utilized.

## Instruction 29:  Dangerous Probability of Success[50]

If you find that defendant ATP had the specific intent to achieve a monopoly and engaged in significant anticompetitive conduct, you also must determine if the evidence shows the next element of attempt to monopolize: namely, that there was a dangerous probability that ATP would actually succeed in achieving monopoly power if it continued to engage in the same or similar conduct.

In determining whether there was a dangerous probability that ATP would acquire the ability to control price in the market, you should consider such factors as:

**First**, ATP's market share;

**Second**, the trend in ATP's market share;

**Third**, whether the barriers to entry into the market made it difficult for competitors to enter the market; and

**Fourth**, the likely effect of any anticompetitive conduct on ATP's share of the market.

Again, the purpose of looking at these and other factors is to determine whether there was a dangerous probability that ATP would ultimately acquire monopoly power.  A dangerous probability of success need not mean that success was nearly certain, but it does mean that there was a substantial and real likelihood that ATP would ultimately acquire market power.

---

[50] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-95 (2005).

### Instruction 30:  Conspiracy to Monopolize – Elements[51]

The complaint alleges a conspiracy to monopolize in violation of Section 2 of the Sherman Act, which declares unlawful every conspiracy to monopolize interstate or foreign commerce.

To prevail against a defendant on their claim of conspiracy to monopolize, Plaintiffs must prove by a preponderance of the evidence as to that defendant each of the following elements:

**First,** the existence of a relevant product market and relevant geographic market;

**Second,** that an agreement or mutual understanding existed between two or more persons to obtain or maintain monopoly power in a relevant product market and geographic market;

**Third,** that the defendant knowingly – that is, voluntarily and intentionally – became a party to that agreement or mutual understanding;

**Fourth,** that the defendant specifically intended that the parties to the agreement would obtain or maintain monopoly power in a relevant product market and geographic market;

**Fifth,** that the defendant committed an overt act in furtherance of the conspiracy;

**Sixth,** that Plaintiffs were injured in their business or property because of the conspiracy to monopolize; and

**Seventh,** that the injury constitutes "antitrust injury" – that is, the type of harm that the antitrust laws were intended to prevent.

If you find that the evidence is insufficient to prove any one or more of these elements as to a defendant, then you must find for that defendant and against Plaintiffs on Plaintiffs' conspiracy to monopolize claim.  If you find that the evidence is sufficient to prove each element

---

[51]  ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION C-100 (2005).

79

as to a defendant, then you must find for Plaintiffs and against that defendant on Plaintiffs' conspiracy to monopolize claim.

**Plaintiffs' Objections:**

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion.

*First*, this instruction misstates the elements of Plaintiffs' Conspiracy to Monopolization claim. The elements, as established by the United States Supreme Court are as follows: (1) that an agreement or mutual understanding between two or more persons to obtain or maintain monopoly power in a segment of commerce alleged; (2) that the defendant knowingly - that is voluntarily and intentionally - became a party to that agreement or mutual understanding; (3) that the defendant specifically intended that the parties to the agreement would obtain or maintain monopoly power in that segment of commerce; (4) that defendant committed an overt act in furtherance of the conspiracy; that defendant(s)' activities occurred in or affected interstate (or foreign) commerce; and (6) that plaintiff was injured in its business or property because of the conspiracy to monopolize. *See* Model Instruction, C-100 and citations set forth therein.

*Second*, the instruction impermissibly injects the concept of antitrust standing into the specific elements of a conspiracy to monopolize claim. By doing so Defendants again misstate the law and create a significant danger of jury confusion. Plaintiffs contend that they have demonstrated antitrust standing as a matter of law. To the extent the Court disagrees, however, this concept is appropriately addressed via independent competitive harm and damage instructions such as those included in Plaintiffs' proposed instructions, the Model Instructions, and Defendants' Instructions.

*Third*, the instruction creates the substantial likelihood of jury confusion by inserting the concepts of geographic and product markets into this instruction. These concepts are appropriately covered by appropriate instruction(s) on market definitions.

There is no dispute among the parties that Defendants' actions affect interstate commerce. Accordingly, Plaintiffs' corresponding instruction, which is substantially identical to the Model Instruction, minus element 5, appropriately states the law.

### Instruction 31: Injury and Causation[52]

If you find that Defendants have violated §§ 1 or 2 of the Sherman Act as alleged by Plaintiffs, then you must decide if Plaintiffs are entitled to recover damages from Defendants.

Plaintiffs are entitled to recover damages for an injury to their business or property if they can establish three elements of injury and causation:

**First**, that Plaintiffs were in fact injured as a result of Defendants' alleged violation of the antitrust laws;

**Second**, that Defendants' alleged illegal conduct was a material cause of Plaintiffs' injury; and

**Third**, that Plaintiffs' injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact." For Plaintiffs to establish that they are entitled to recover damages, they must prove by a preponderance of the evidence that they were injured as a result of Defendants' alleged violation of the antitrust laws.

Plaintiffs must also offer evidence that establishes as a matter of fact and with a fair degree of certainty that Defendants' alleged illegal conduct was a material cause of Plaintiffs' injury. This means that Plaintiffs must have proved that some damage occurred to them as a result of Defendants' alleged antitrust violation, and not some other cause. However, if you find that Plaintiffs' injury was caused primarily by something other than the alleged antitrust violation, then you must find that Plaintiffs have failed to prove that they are entitled to recover damages from Defendants.

---

[52] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION F-2 (2005).

Finally, Plaintiffs must establish that their injury is the type of injury that the antitrust laws were intended to prevent.  This is sometimes referred to as "antitrust injury."  If Plaintiffs' injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then Plaintiffs' injuries are antitrust injuries.  On the other hand, if Plaintiffs' injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Plaintiffs' injuries are not antitrust injuries and Plaintiffs may not recover damages for those injuries under the antitrust laws.[53]  You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against – such as where a competitor offers better products or services or where a competitor is more efficient and can charge lower prices and still earn a profit – and the antitrust laws do not permit a plaintiff to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.  You should also consider whether Plaintiffs are in fact seeking protection from competition and whether they have been willing to take or have taken any steps to compete against Defendants.

However, if Plaintiffs can establish that they were in fact injured by Defendants' conduct, that Defendants' conduct was a material cause of Plaintiffs' injury, and that Plaintiffs' injury was the type that the antitrust laws were designed to prevent, you may then consider the amount of Plaintiffs' damages.  It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that plaintiffs have established that they were, in fact, injured.

**Plaintiffs' Objections:**

---

[53] *See Mid-South Grizzlies v. NFL*, 720 F.2d 772, 786-87 (3d Cir. 1983); *NHLPA v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 720 (6th Cir. 2003); *Kentucky Speedway, LLC v. NASCAR, Inc.*, 2008 U.S. Dist. LEXIS 1076, *16-21 (E.D. Ky. Jan. 7, 2008).

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion.

*First,* this instruction misstates the law by omitting that "proving the fact of damage does not require plaintiff to prove the dollar value of its injury. It requires only that plaintiff prove that it was in fact injured by defendant's alleged antitrust violation." Model Instruction, F-2 9 (citations omitted).

*Second*, this instruction misstates the law by omitting the legal reality that "Plaintiff is not required to prove that defendant's alleged antitrust violation was the sole cause of its injury; nor need plaintiff eliminate other causes of injury. It is enough if plaintiff has proved that the alleged antitrust violation was a material cause of its injury." Model Instruction, F-2.

*Third*, the instruction impermissibly injects "[y]ou should also consider whether Plaintiffs are in fact seeking protection from competition and whether they have been willing to take or have taken any steps to compete against Defendants." This language is not included in the Model Instruction, is incorrect legally and creates a substantial likelihood of jury confusion. The Plaintiffs are consumers in some of the relevant markets, for example, not competitors. Accordingly, whether they have competed with Defendant(s) in these markets is irrelevant. Further, this language misstates the law by implying that Plaintiffs' own efforts to compete or purported anticompetitive actions, if any, are, without more, a relevant factor relating to injury and causation. They are not as a matter of law. This language is not relevant to the concept of injury and causation in any regard. At most it could relate, as an affirmative defense on liability, only if Plaintiffs were equally or more responsible in the formation of a relevant conspiracy. *See* Model Instructions, F-50; *Blackburn v. Sweeney*, 53 F.3d 825, 829 (7th Cir. 1995); *Colombia Nitrogen Co. v. Royster Co.*, 451 F.2d 3, 15-16 (4th Cir. 1971). Defendants have never so much as alleged that Plaintiffs participated in the Brave New World and any arguments in this regard have been waived. Further, it is undisputed that Plaintiffs have not and are not a party to or otherwise involved in any contract, combination or conspiracy at issue in this litigation, *i.e.*, the "Brave New World." Accordingly, this language is inappropriate in a liability and causation instruction as a matter of law.

*Fourth,* the term "Defendants" should reflect both the singular and plural.

Plaintiffs' proposed instruction, which is substantially identical to the Model Instruction, appropriately states the law and should be utilized.

### Instruction 32:  Antitrust Damages – Introduction and Purpose[54]

If you find that Defendants violated the antitrust laws and that this violation caused injury to Plaintiffs, then you must determine the amount of damages, if any, Plaintiffs are entitled to recover.  The law provides that Plaintiffs should be fairly compensated for all damages to their business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.  Damages must not, however, be duplicative.  Plaintiffs are entitled to recover only once for any damages they suffer.  In other words, if you award Plaintiffs damages under one of their claims to compensate for a particular injury, you cannot award them additional damages for that same injury even if you find in their favor on a different claim.

The purpose of awarding damages in an antitrust action is to put an injured plaintiff in as near as possible the position in which it would have been if the alleged antitrust violation had not occurred.  Accordingly, your damages award cannot provide Plaintiffs with the benefit of any conduct you have found to be in violation of the antitrust laws.  In other words, you cannot compensate Plaintiffs with an award of damages that is based upon the value Plaintiffs claim to have lost as a result of not being able to participate in conduct you have found to be in violation of the antitrust laws.  The law does not permit you to award damages to punish a wrongdoer – what we sometimes refer to as punitive damages – or to deter Defendants from particular conduct in the future, or to provide a windfall to someone who has been the victim of an antitrust violation.  You are also not permitted to award to Plaintiffs an amount for attorneys fees or the costs of maintaining this lawsuit.  Antitrust damages are compensatory only.  In other words, they are designed to compensate a plaintiff for the particular injuries it suffered as a result of the

---

[54] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION F-12 (2005).

alleged violation of the law.

**<u>Plaintiffs' Objections</u>:**

Plaintiffs' object to this instruction as it misstates the law and creates a substantial risk of jury confusion.

*First*, this instruction contains unnecessary language and misstates the law applicable to "duplicate injuries."

*Second*, the instruction impermissibly injects "[a]ccordingly, your damages award cannot provide Plaintiffs with the benefit of any conduct you have found to be in violation of the antitrust laws. In other words, you cannot compensate Plaintiffs with an award of damages that is based upon the value Plaintiffs claim to have lost as a result of not being able to participate in conduct you have found to be in violation of the antitrust laws.." This language is not included in the Model Instruction, is incorrect legally and creates a substantial likelihood of jury confusion. The Plaintiffs are not claiming any damages for not being able to participate in ongoing anticompetitive conduct. Regardless, the appropriate statement of the law is that "if a plaintiff is a party to an unlawful conspiracy but not an equal participant, you must consider the benefits and the losses that plaintiff realized as a result of that conspiracy, and you may award damages only for that amount by which the losses exceeded the benefits." Model Instructions, F-50; *Blackburn v. Sweeney*, 53 F.3d 825, 829 (7th Cir. 1995); *Colombia Nitrogen Co. v. Royster Co.*, 451 F.2d 3, 15-16 (4th Cir. 1971).

Defendants have never so much as alleged that Plaintiffs have participated in the Brave New World and any arguments in this regard have been waived. Further, it is undisputed that Plaintiffs have not and are not a party to or otherwise involved in any contract, combination or conspiracy at issue in this litigation, *i.e.*, the "Brave New World." Accordingly, this language is inappropriate in a liability and causation instruction as a matter of law. Even if this defense had not been waived and had some factual support, which fact is expressly denied, it would appropriately be the subject of a separate and distinct instruction, as recognized by the Model Instructions.

Plaintiffs' proposed instruction, which is substantially identical to the Model Instruction, appropriately states the law and should be utilized.

## Instruction 33:  Speculation Not Permitted[55]

Damages may not be based on guesswork or speculation.  If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages.  If the amount of damages attributable to an antitrust violation cannot be separated from the amount of harm caused by factors other than the antitrust violation except through guesswork or speculation, then you may not award damages.

You are permitted to make reasonable estimates in calculating damages.  It may be difficult for you to determine the precise amount of damage suffered by Plaintiffs.  If Plaintiffs establish with reasonable probability the existence of injury proximately caused by Defendants' antitrust violation, you are permitted to make a just and reasonable estimate of the damages.  So long as there is a reasonable basis in the evidence for a damages award, Plaintiffs should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty.  The amount of damages must, however, be based on reasonable, non-speculative assumptions and estimates.  Plaintiffs must prove the reasonableness of each of the assumptions upon which the damages calculation is based.  If you find that Plaintiffs have failed to carry their burden of providing a reasonable basis for determining damages, then your verdict must be for Defendants.  If you find that Plaintiffs have provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

---

[55]  ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION F-15 (2005).

### Instruction 34: Causation and Disaggregation[56]

If you find that Defendants violated the antitrust laws and that Plaintiffs were injured by that violation, Plaintiffs are entitled to recover for such injury that was the direct and proximate result of the unlawful acts of Defendants. Plaintiffs are not entitled to recover for injury that resulted from other causes.

Plaintiffs bear the burden of showing that their injuries were caused by Defendants' alleged antitrust violation. If you find that Plaintiffs' alleged injuries were caused by factors other than Defendants' alleged antitrust violation, then you must return a verdict for Defendants. If you find that Plaintiffs' alleged injuries were caused in part by Defendants' alleged antitrust violation and in part by other factors, then you may award damages only for that portion of Plaintiffs alleged injuries that were caused by Defendants' alleged antitrust violation. Plaintiffs bear the burden of proving damages with reasonable certainty, including apportioning damages between lawful and unlawful causes. If you find that there is no reasonable basis to apportion Plaintiffs' alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all. If you find that Plaintiffs have proven with reasonable certainty the amount of damage caused by Defendants' alleged antitrust violation, then you must return a verdict for the Plaintiffs.

---

[56] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION F-18 (2005).

## Instruction 35: Mitigation[57]

Plaintiffs may not recover damages for any portion of their injury that they could have avoided through the exercise of reasonable care and prudence. Plaintiffs are not entitled to increase any damages through inaction. The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss. If Plaintiffs failed to take reasonable steps available to them, and the failure to take those steps results in greater harm to Plaintiffs than they would have suffered had they taken those steps, Plaintiffs may not recover any damages for that part of the injury it could have avoided.

Defendants have the burden of proof on this issue. Defendants must prove by a preponderance of the evidence that Plaintiffs acted unreasonably in failing to take specific steps to minimize or limit their losses, that the failure to take those specific steps resulted in their losses being greater than they would have been if they had taken such steps, and the amount by which Plaintiffs' loss would have been reduced had Plaintiffs taken those steps.

In determining whether Plaintiffs failed to take reasonable measures to limit its damages, you must remember that the law does not require Plaintiffs to have taken every conceivable step that might have reduced its damages. The evidence must show that Plaintiffs failed to take commercially reasonable measures that were open to it. Commercially reasonable measures mean those measures that a prudent businessperson in Plaintiffs' position would likely have adopted, given the circumstances as they appeared at that time. Plaintiffs should be given wide latitude in deciding how to handle the situation, so long as what Plaintiffs did was not unreasonable in light of the existing circumstances.

---

[57] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION F-47 (2005).

**Plaintiffs' Objection:**

Defendants have never so much as alleged that Plaintiffs failed to mitigate their damages and any arguments in this regard have been waived.

### Instruction 36:  Trebling of Damages[58]

You may have heard or read that in antitrust cases such as this, damages are trebled, or multiplied by three.  You are not to try to do this yourself.  This is the job of the Court.  In calculating damages, you are only to try to determine actual or single damages.

---

[58] ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION F-52 (2005).

89

### Instruction 37:  Breach of Fiduciary Duty – General Elements[59]

For Plaintiffs to prevail on their claims for breach of fiduciary duty, Plaintiffs must prove each of the following elements by a preponderance of the evidence:

**First,** that Defendants owed Plaintiffs a fiduciary duty;

**Second,** that Defendants breached the fiduciary duty owed to Plaintiffs; and

**Third,** that Defendants' breach of fiduciary duty was the proximate cause of some injury or damage to Plaintiffs.[60]

I will go over each of these elements more specifically in the following instructions.

If after you consider all of the evidence you find that Plaintiffs have proven each of these elements in accordance with the legal requirements as I describe them to you, then your verdict must be for the Plaintiffs and you will consider the amount of money damages to be awarded to

---

[59] Defendants provide instructions on Counts V, VI and VII (the "Fiduciary Duty Claims") without waiver of their position that the Fiduciary Duty Claims cannot be tried before a jury because (1) they are traditionally equitable in nature and (2) Plaintiffs have not sought damages on their Fiduciary Duty Claims. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989). "Actions for breach of fiduciary duty, historically speaking, are almost uniformly actions 'in equity' – carrying with them no right to a trial by jury." *In re Hechinger Inv. Co. of Del.*, 327 B.R. 537, 544 (D. Del. 2005) (quoting *In re Evangelist*, 760 F.2d 27, 29 (1st Cir. 1985); *see also Dardovitch v. Haltzman*, 190 F.3d 125, 134 n. 1 (3d Cir. 1999) (affirming denial of jury trial for breach of fiduciary duty claim against trustee for self-dealing); *Cantor v. Perelman*, 2006 WL 318666, *9 (D. Del. 2006) (finding claims seeking both legal and equitable relief should be "judged equitable").   Here, Plaintiffs seek only injunctive – *i.e.* equitable – relief on their Fiduciary Duty Claims.  In both their Original and First Amended Complaints, Plaintiffs pray for damages only with respect to their Antitrust and Tortious Interference claims.  Likewise, in both fact and expert discovery, Plaintiffs have not identified or claimed any damages with respect to any alleged breach of fiduciary duty.

[60] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 329, 4TH EDITION (2005).

Plaintiffs by following the instructions that I will give you relating to damages.

If, on the other hand, you find that Plaintiffs have not proven one or more of these elements, then your verdict must be for the Defendants.

**Plaintiffs' Objections:**

Plaintiffs object to Defendants' proposed instruction as it misstates the law and will cause jury confusion by failing to articulate the elements of Plaintiffs' claim.

*First*, in this, the opening instruction related breaches of fiduciary duty, Defendants have failed to distinguish between each of the breaches of fiduciary duty (loyalty and due care). For the sake of clarity alone, it is important to identify for the jury, at the outset, each of the fiduciary duties that are at issue in this lawsuit.

*Second*, by grouping each of the fiduciary duties (loyalty and due care) together, and not distinguishing among them, Defendants have misstated the elements of Plaintiffs' breach of duty of loyalty claim. Specifically, Defendants state that Plaintiffs must prove that Defendants' breach of fiduciary duties caused injury to Defendants. This is not true as it relates to the duty of loyalty. Pursuant to well-settled Delaware law, a breach of the duty of loyalty claim does not require proof of "injury or damage to Plaintiffs." *Universal Studios Inc. v. Viacom, Inc.*, 705 A.2d 579, 594 (Del. Ch. 1997). Rather, "injury is not required to prove the breach." *Id.* at 594. Defendants' reliance on the ABA Model Instructions is misplaced to the extent it ignores this feature of Delaware law. Plaintiffs object to Instruction 37 and each instruction hereafter which fails to recognize that proof of injury is not required in order for Plaintiff to prevail on its duty of loyalty claim under Delaware law.

In contrast, Plaintiffs' corresponding instruction distinguishes between Defendants' particular breaches of fiduciary duty in a manner that will clarify issues for the jury and state the law of the state of Delaware accurately as to the fiduciary duty of loyalty.

*Finally*, Plaintiffs object to Defendants' allegation, in Defendants' footnote 59, that Plaintiffs' fiduciary duty claims should not be tried to a jury. This allegation is factually and legally incorrect. As an initial matter, Plaintiffs do seek damages for their injuries caused by the ATP's implementation of the Plan. Under the applicable notice pleading standard, there is no reasonable doubt that Plaintiffs allege damages and seek recompense for their injuries resulting from the Director Defendants' breaches of their fiduciary duties (pursuant to Counts V, VI, and VII of the Amended Complaint for breaches of the fiduciary duties of loyalty, due care, and good faith). Moreover, this lawsuit involves fiduciary duty claims and legal claims, both of which seek damages that are compensatory and legal in nature. Courts have held that claims for damages for breach of fiduciary duty other than for restitution are required to be tried to a jury. *Pereira v. Farace*, 413 F.3d 330, 340-41 (2d Cir. 2005); *cf Cantor v. Perelman*, No. Civ.A. 97-586-KAJ, 2006 WL 318666, at *7 & n.7 (D. Del.) (construing *Pereira*, and refusing to permit fiduciary duty claims to be tried to a jury because, unlike this matter, no additional legal claims were asserted). This is precisely the situation presented on our facts. For these reasons, and

REDACTED VERSION – PUBLICLY FILED

those stated in Plaintiffs' Response to Defendants' Motion to Bifurcate, Plaintiffs object to Defendants' improper and incorrect allegation.

## Instruction 38:  Explanation of Fiduciary Duty[61]

A fiduciary relationship exists between two persons when one of them is under a duty to act for the benefit of the other upon matters within the scope of the relationship.  The duties that arise under such a relationship are the duty of due care and the duty of loyalty.

It is for you to determine whether a fiduciary relationship existed between Defendants and Plaintiffs at the time of the alleged misconduct.  If you determine that relationship did exist, you must next determine the scope of the fiduciary relationship and whether one or more of the duties listed above arose within the scope of the relationship.  If the alleged misconduct was outside the scope of the relationship, then you must find for the Defendants on this claim.  If you find the existence of a fiduciary relationship and that the alleged misconduct was within the scope of one or more of the fiduciary duties listed above, then you should consider whether the Defendants breached their fiduciary duties.

**Plaintiffs' Objections:**

Plaintiffs also object to the extent this instruction fails to recognize and articulate to the jury the fiduciary duty of good faith.

---

[61] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 330, 4TH EDITION (2005).

93

## Instruction 39: Corporate Fiduciary Duties[62]

The business and affairs of a corporation are managed by a Board of Directors.[63]  As directors and/or officers of ATP, the ATP Directors (including defendants Etienne de Villiers, Charles Pasarell, Graham Pearce, Jacco Eltingh, Perry Rogers and Iggy Jovanovic) owed fiduciary duties to that corporation and to its membership as a whole.  This means that the ATP Directors were required to discharge the duties of their respective positions in good faith and with that degree of diligence, care, loyalty, and skill that ordinarily prudent persons would exercise under similar circumstances in like positions.

The ATP Directors owed these fiduciary duties to the corporation and to the entire body or specific classes of members generally, as opposed to specific individual members.  As a result, it is not a breach of the ATP Directors' fiduciary duties if the actions they take adversely affect the interests of a particular subgroup of ATP members so long as the result furthers an overriding corporate or member interest.[64]

In this case, Plaintiffs allege that the ATP Directors breached their duties of due care and loyalty in approving the implementation of the Brave New World plan.  I shall now give you general instructions on the law concerning the duties of due care and loyalty.

---

[62] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 342, 4TH EDITION (2005).

[63] 8 *Del. C.* § 141(a).

[64] *Gilbert v. El Paso Co.*, 1988 WL 124325, at *9 (Del. Ch. Nov. 21, 1988), aff'd 575 A.2d 1131 (Del. 1990); *Kors v. Carey*, 158 A.2d 136, 143 (Del. Ch. 1960).

**Plaintiffs' Objections:**

This instruction fails to make key distinctions of law and fact, and thereby risks misleading the jury in important aspects.

Plaintiffs object to this instruction's reference to fiduciary duties applying to the ATP's membership "as a whole." This is an incorrect statement of law. Delaware courts, rejecting this proposition, have expressly held that fiduciary duties are owed to subclasses or groups of members. *Gilbert v. El Paso Co.*, No. CIV A. Nos. 7075, 7079, 7078, 1988 WL 124325, at *9 (Del. Ch. Nov. 21, 1988), aff'd 575 A.2d 1131 ("it cannot be concluded (as defendants seems to suggest) that the directors can never owe a duty to a particular shareholder subclass or group. Manifestly that cannot be so."). Where, as here, Defendants have acted in a manner that damages every tournament that is not a member in a Masters 100, Plaintiffs are entitled to an instruction that does not mislead the jury on this critical point. Plaintiffs' corresponding instruction, which references the two most general categories of ATP membership -- tournaments and players – has less of a tendency to mislead and confuse the jury.

## Instruction 40:  Duty of Due Care[65]

As officers and/or directors of ATP, the ATP Directors have a duty to perform their functions in good faith, in a manner they reasonably believe to be in the best interest of ATP, and with the care that ordinarily prudent persons would reasonably be expected to exercise in a like position under similar circumstances.  This duty is called the duty of due care.  This duty is met if the ATP Directors informed themselves of all material information reasonably available to them prior to making a business decision.  A director breaches his duty of due care when he acts with gross negligence.   To prove gross negligence, it is Plaintiffs' burden to show that the director acted with reckless indifference to or a deliberate disregard of the whole body of members or show that the director's actions were outside the bounds of reason.

However, you may not hold the ATP Directors personally liable for any violation of the fiduciary duty of due care if you find that the Directors acted in good faith.[66]

### Plaintiffs' Objections:

*First*, this instruction misstates the law as it relates to the object of the Director Defendants' duty of due care.  The second line of the instruction claims that the Defendants have a duty to act in the best interests of the ATP.  This is only partially correct.  As explained above, the Directors also owe a duty of due care to the members and to particular subclasses of members.  *Gilbert v. El Paso Co.*, No. CIV A. Nos. 7075, 7079, 7078, 1988 WL 124325, at *9 (Del. Ch. Nov. 21, 1988), aff'd 575 A.2d 1131.  Plaintiffs' corresponding instruction, which also lists "members" as the object of the Defendants' duties of due care, more accurately and completely states the object of the Defendants' duties of due care.

*Second*, Plaintiffs object to the term "whole body" of members as used in the penultimate line of this instruction.   As explained above, this is an incorrect statement of law.  Delaware

---

[65]   ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 345, 4TH EDITION (2005); *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 192 (Del. Ch. 2005).

[66] *Stone ex rel. AmSouth Bancorp v. Ritter*, 911 A.2d 362, 367 (Del. 2006) (A section 102(b)(7) "provision can exculpate directors from monetary liability for a breach of the duty of care, but not for conduct that is not in good faith or a breach of the duty of loyalty.")

courts, rejecting this proposition, have expressly held that fiduciary duties are owed to subclasses or groups of members. *Gilbert v. El Paso Co.*, No. CIV A. Nos. 7075, 7079, 7078, 1988 WL 124325, at *9 (Del. Ch. Nov. 21, 1988), aff'd 575 A.2d 1131 ("it cannot be concluded (as defendants seems to suggest, that the directors can never owe a duty to a particular shareholder subclass or group. Manifestly that cannot be so."). Where, as here, Defendants have acted in a manner that damages every tournament that is not a member in a Masters 100, Plaintiffs are entitled to an instruction that does not mislead the jury on this critical point.

*Third*, as you know, Perry Rogers is no longer a director of the ATP. Plaintiffs will make this fact clear at trial. In order to avoid confusion during deliberations, we ask that this instruction, and all subsequent instructions, be revised so that it does not imply – as it does now – that each listed officer and/or director currently holds that position. A simple way to clarify the instruction would be to make the first sentence past tense, e.g., "the ATP Directors also had a duty . . . ."

*Fourth*, Defendants have confused the jury by overemphasizing Plaintiffs' burden of proof in an instruction that is intended to be definitional. The purpose of this instruction is to inform the jury what constitutes a Defendants' duties are, and what constitutes a breach of the duty of due care. Defendants should not be permitted to obfuscate this purpose by implying, by the third sentence, that the "duty is met." Similarly, Defendants should not be permitted to inject issues of proof into the definition of "gross negligence" when a simpler instruction, such as Plaintiffs' corresponding instruction, states the definition clearly, simply, and without bias.

## Instruction 41: "Under Similar Circumstances" Defined[67]

An officer or director has a duty to perform requisite functions with the care that an ordinarily prudent person would reasonably be expected to exercise in a like position and under similar circumstances.

The phrase "under similar circumstances" means that the nature and extent of the functions and obligations of an officer or director will vary depending upon such factors as the nature of the business, the urgency and magnitude of a problem, and the corporation's size and complexity. In deciding whether the ATP Directors have acted with the care that an ordinarily prudent person would reasonably be expected to exercise in a like position, you should take these circumstances into account.

---

[67] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 347, 4TH EDITION (2005).

### Instruction 42: "In a Like Position" Defined[68]

For purposes of analyzing the duty of due care, you are to assess an officer's or director's performance as of the time of the alleged breach of fiduciary duty. You are not to use the benefit of hindsight in evaluating a director's or officer's performance.

**Plaintiffs' Objections:**

In order to avoid confusion, Plaintiffs suggest revising the instruction to include the full instruction identified by the cited authority and, in any event, to include a reference to the time of Defendants' alleged breach(es).

---

[68] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 348, 4TH EDITION (2005).

## Instruction 43: Sense of Balance and Fairness[69]

The standards set forth in the duty of due care should be applied with balance, fairness, and a realistic sense of what may reasonably be expected in given circumstances from a corporation's officers and directors. Your judgment about whether a given officer or director exercised the requisite care should take into account all relevant circumstances. These may include:

1.    the reliability of, and confidence to be placed in, other directors, officers, employees, experts, and other persons and committees of the board;

2.    the state of the corporation's business at the time of the alleged act, omission, or failure of oversight;

3.    the state of the economy or areas of the economy at the time of the alleged act, omission, or failure of oversight;

4.    the complexity and scale of the corporation at the time of the alleged act, omission, or failure of oversight;

5.    the precise role the officer or director played within the corporation at the time of the alleged act, omission, or failure of oversight;

6.    the policies of the board of directors and committees of the board at the time of the alleged act, omission, or failure of oversight; and

7.    other relevant circumstances.

**Plaintiffs' Objections:**

*First*, Plaintiffs object to this instruction to the extent it deviates in substance from those set forth in the model instructions relied on by Defendants. Defendants have removed from the

---

[69] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 351, 4TH EDITION (2005).

instructions key factors that are to be considered in evaluating the duty of due care. For example, Defendants have delete reference to "whether the problem that developed because of the claimed act . . . was reasonably foreseeable at the time of the alleged act;" "whether the magnitude of the problem that developed was reasonably foreseeable at the time of the alleged act"; and "the policies of regulatory authorities at the time of the alleged act." Each of these factors is critical to Plaintiffs' case, critical to the jury's deliberations under applicable law, and must be included.

*Second*, Defendants have also reordered the instructions, as compared to the model instructions, in an apparent attempt to emphasize factors Defendants believe favor their position. For example, the first factor identified in Defendants' instruction is the eighth factor listed in the model instruction. In the interests of fairness, and in order to avoid bias, Plaintiffs propose that the instruction be tendered in the same order that it exists in the model instructions relied on by Defendants.

REDACTED VERSION – PUBLICLY FILED

**Instruction 44:  Custom, Practice and Procedures**[70]

In determining whether an officer or director of a corporation breached the requisite duty of due care, it is proper for you to consider the custom, practice, and procedures of similar corporations.

---

[70] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 353, 4TH EDITION (2005).

102

## Instruction 45: Reliance on Information Prepared by Others[71]

In performing their duties, an officer or director is entitled to rely in good faith upon the records of the corporation and upon information, opinions, reports or statements presented to the corporation by any of the corporation's officers, employees, or any other person regarding matters that the officer or director reasonably believes are within that person's professional or expert competence or who has been selected with reasonable care by or on behalf of the corporation.

### Plaintiffs' Objections:

Plaintiffs object because this instruction, as written, incorrectly implies that an officer or director who relies upon records of the corporation has acted in good faith. This is an incorrect implication and not what the Delaware statute cited by Defendants intends. 8 Del. C. § 141(e) (2008) ("shall be protected in relying in good faith . . ."). Rather, the statute requires that a director rely on records <u>and</u> that such reliance be in good faith. To avoid confusion on this point, Plaintiffs suggest that the instruction be revised to read, in pertinent part, "an officer or director who acts in good faith is entitled to rely upon the records . . . ."

---

[71] 8 Del. C. § 141(e) (2008).

## Instruction 46: Business Judgment Rule[72]

The ATP Directors are entitled to a presumption that they acted with sound business judgment in their official capacities. This presumption includes an assumption that the ATP Directors acted on an informed basis.

In order to rebut this presumption, it is the Plaintiffs' burden to prove by a preponderance of the evidence that:

1.    the ATP Directors did not reasonably believe that their judgment was in the best interest of the corporation; or

2.    the ATP Directors failed to become informed about the subject of the business judgment to the extent the directors or officers reasonably believe to be appropriate under the circumstances; or

3.    the ATP Director(s) whose vote(s) was or were necessary to approve an action had a material interest in the action that was the subject of the directors' or officers' business judgment and either (a) controlled or dominated the board as a whole or (b) the interest was undisclosed and a reasonable board member would have regarded the existence of the material interest as a significant fact in the evaluation of the proposed action.[73]

If Plaintiffs fail to meet their burden to rebut the business judgment rule by a preponderance of the evidence, you must find for the ATP Directors and against Plaintiffs on Plaintiffs' claims of breach of fiduciary duty. If Plaintiffs succeed in proving any of the above elements by a preponderance of the evidence, the burden then shifts to the ATP Directors to

---

[72] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 349, 4TH EDITION (2005).

[73] *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 362 (Del. 1993); *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1134, 1151 (Del. Ch. 1994).

prove by a preponderance of the evidence that the challenged actions were "entirely fair" to the corporation and its membership.[74]

**Plaintiffs' Objections:**

*First*, Plaintiffs object because this instruction fails to present a balanced explanation of the business judgment rule. Consistent with the model on which Defendants rely, the jury should first be instructed about whether Defendants are entitled to the presumption. ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 349, 4TH EDITION (2005). This sequence of presentation would allow the jury to accurately and completely understand the meaning of the rule before applying it. Then, after the jury understands the presumption, the jury should be informed by the instruction as to what Plaintiffs must prove in order to rebut this presumption. This two phased approach to explaining the business judgment rule is adopted in the model instruction on which Defendants rely. *Id.* It is also adopted in Plaintiffs' corresponding instruction, which more clearly and accurately presents this information to the jury. Because a two-phased explanation would better assist the jury in understanding the issues and avoiding confusion, it should be employed.

*Second*, Plaintiffs object because the instruction fails to acknowledge that, even in the absence of bad faith, gross negligence or irrationality, the entire fairness standard applies, not the business judgment rule, when the board action that is challenged required the affirmative vote of an interested director. *Mills Acquisition Co. v. MacMillan, Inc.*, 559 A.2d 1261, 1279 (Del. 1989). To avoid jury confusion, this instruction must indicate that the business judgment rule does not apply if the Brave New World required the vote of an interested director. Plaintiffs' corresponding instruction accurately states the law on this point.

---

[74] *Emerald Partners v. Berlin*, 787 A.2d 85, 91 (Del. 2001).

*Third*, regardless of the above, Plaintiffs object because Defendants have again reorganized the factors, as compared to the model instruction relied upon, to be considered in assessing the business judgment rule so that the "undisclosed financial interest" element is emphasized less.    ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 349, 4TH EDITION (2005).    For example, in the model instruction on which Defendants rely, that factor is listed first; in Defendants' proposed instruction, it is listed last.    Defendants cannot manipulate the factors in a manner that they believe favors their case.    That is especially true where, as here, it is undisputed that the Brave New World could not have been adopted had it not been for the affirmative vote of self-interest director Pasarell.

*Fourth*, Plaintiffs object to Defendants' enumerated paragraph 3 because it misstates Delaware law.  A plaintiff is not required to show that a material interest in the transaction or the conditions that Defendants list thereafter in order to rebut the business judgment rule.    See Plaintiffs' corresponding instruction. Moreover, this instruction unnecessarily and confusingly deviates from the model instruction upon which Defendants rely.

### Instruction 47:  Conflicting Member Interests

Directors sometimes must resolve conflicting member interests.  When a director's decisions resolve conflicting member interests, the fact that the director arguably himself is in a class that benefits from the director's actions does not take the decision outside the protection of the business judgment rule.  Directors may take whatever action that, in their proper exercise of business judgment, will best serve the interests of the corporation and its membership as a whole. In certain cases, such action may adversely affect the interests of a particular member group or even benefit a particular member group to which a director belongs.  Nonetheless, there is no breach of fiduciary duty if the result furthers an overriding corporate interest.[75]

**Plaintiffs' Objections:**

*First,* Plaintiffs object to this instruction because it misstates Delaware law.  Contrary to this instruction, a decision is not protected by the business judgment rule simply because it resolves conflicting interests.  *E.g., In re Staples, Inc. Shareholders Litig.,* 792 A.2d 934, 950 (Del. Ch. 2001); *Solomon v. Armstrong,* 747 A.2d 1098, 1118 (Del. Ch. 1999).  Instead, the decision – even if it appears to resolve conflicting interests – must satisfy the elements of the business judgment rule, as set out in the previous instruction, in order to gain protection. Because the second sentence of this instruction may be confusing to the jury on this point, it should be revised or stricken.

*Second,* Plaintiffs object to the use of the term "as a whole" as it relates to members.  As explained above, this is an incorrect statement of law.  Delaware courts, rejecting this proposition, have expressly held that fiduciary duties are owed to subclasses or groups of members. *Gilbert v. El Paso Co.,* No. CIV A. Nos. 7075, 7079, 7078, 1988 WL 124325, at *9 (Del. Ch. Nov. 21, 1988), aff'd 575 A.2d 1131 ("it cannot be concluded (as defendants seems to suggest, that the directors can never owe a duty to a particular shareholder subclass or group. Manifestly that cannot be so.").  Where, as here, Defendants have acted in a manner that damages every tournament that is not a member in a Masters 100, Plaintiffs are entitled to an instruction that does not mislead the jury on this critical point.

*Third,* Plaintiffs object to this entire instruction, including, but not limited to, the final sentence of the instruction, because it is overbroad and risks misleading the jury.    Under

---

[75] *In re Staples, Inc. Shareholders Litig.,* 792 A.2d 934, 950 (Del. Ch. 2001); *Solomon v. Armstrong,* 747 A.2d 1098, 1118 (Del. Ch. 1999); *Gilbert v. El Paso,* 1988 WL 124325, at *9-10 (Del. Ch. Nov. 21, 1988), aff'd 575 A.2d 1131 (Del. 1990).

Delaware law, even in the absence of bad faith, gross negligence or irrationality, the entire fairness standard applies, not the business judgment rule, when the board action that is challenged required the affirmative vote of an interested director. *Mills Acquisition Co. v. MacMillan, Inc.*, 559 A.2d 1261, 1279 (Del. 1989). To state that the business judgment rule protects Defendants so long as they "resolve" conflicting interests and/or further "overriding corporate interests" is incorrect. Where the affirmative vote of an interested director is required, the jury must apply the entire fairness standard – which a subsequent instruction will describe. Defendants cannot avoid the application of the more exacting entire fairness standard by employing the language used here.

REDACTED VERSION – PUBLICLY FILED

### Instruction 48:  Entire Fairness Standard

If Plaintiffs meet their burden of rebutting the business judgment rule by a preponderance of the evidence, the burden then shifts to the ATP Directors to prove by a preponderance of the evidence that the ATP Directors' adoption and implementation of the Brave New World plan was "entirely fair" to the corporation and its membership.

In determining whether the ATP Directors' adoption and implementation of the Brave New World plan was "entirely fair," you must consider the ATP Directors' actions as a whole. Further, you must determine fairness to ATP and its membership as a whole, rather than fairness with regard to individual members.  In determining whether the action as a whole was entirely fair to the ATP and its membership as a whole, you should consider:[76]

1.  How the action was initiated;

2.  How the action was structured;

3.  How the action was considered or negotiated;

4.  How the directors addressed interests of different constituencies of the members; and

5.  How the approval of the directors was obtained.[77]

If after consideration of these questions it is determined that the action as a whole was entirely fair to the corporation and its members, you must find for Defendants and against Plaintiffs on Plaintiffs' claims of breach of fiduciary duty.[78]  If, however, you find that the action as a whole was not entirely fair to the corporation and its members, you must consider as to each ATP Director individually whether Plaintiffs have proven by a preponderance of the evidence

---

[76] *Nixon v. Blackwell*, 626 A.2d 1366, 1376 (Del. 1993).

[77] *Weinberger v. UOP, Inc.*, 457 A.2d 701, 711 (Del. 1983).

[78] *Delaware Open MRI Radiology Assoc., P.A. v. Kessler*,  898 A.2d 290, 311 (Del. Ch. 2006).

that the individual director's action(s) caused injury to Plaintiffs.[79]

**Plaintiffs' Objections:**

*First,* Plaintiffs object because the instruction fails to define what it means to be "entirely fair." Under Delaware law, this is an exacting standard – and Defendants should not be permitted to avoid that aspect of the law. Accordingly, Plaintiffs insist that the language of the following Delaware Supreme Court, articulating this standard, is included at the beginning of the instruction:

> Where directors of a Delaware corporation are on both sides of a transaction, they are required to demonstrate their utmost good faith and the most scrupulous inherent fairness of the bargain. The requirement of fairness is unflinching in its demand that where one stands on both sides of a transaction, he has the burden of establishing its entire fairness, sufficient to pass the test of careful scrutiny. *Weinberger v. Uop, Inc.*, 457 A.2d 701, 710 (Del. 1983).

*Second,* Plaintiffs object to this instruction because Defendants have selectively revised the *Weinberger* factors to their benefit. Under *Weinberger,* issues of how a transaction is "initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and stockholders were obtained" are to be considered in assessing entire fairness. *Id.* at 710. Defendants have manipulated this standard to their benefit by eliminating any mention of disclosure to directors or stockholder (in this case, player and tournament members). Defendants have also added a factor – regarding resolution of conflicting member interests – which is not an articulated factor from *Weinberger* and, in any event, is already encompassed by the preceding instruction regarding how the action was "considered or negotiated." Plaintiffs object to these manipulations of the *Weinberger* standard.

*Third,* Plaintiffs object to use of the term "as a whole" as it relates to members. As explained above, this is an incorrect statement of law. Delaware courts, rejecting this proposition, have expressly held that fiduciary duties are owed to subclasses or groups of members. *Gilbert v. El Paso Co.*, No. CIV A. Nos. 7075, 7079, 7078, 1988 WL 124325, at *9 (Del. Ch. Nov. 21, 1988), aff'd 575 A.2d 1131 ("it cannot be concluded (as defendants seems to suggest, that the directors can never owe a duty to a particular shareholder subclass or group. Manifestly that cannot be so."). Where, as here, Defendants have acted in a manner that damages every tournament that is not a member in a Masters 1000, Plaintiffs are entitled to an instruction that does not mislead the jury on this critical point.

*Fourth,* Plaintiffs object that the end of the instruction indicates only what the jury should do if it finds in favor of the Defendants. The jury is also entitled to know that if it finds in favor

---

[79] *In re Emerging Commc'ns, Inc. S'holder Litig.*, 2004 WL 1305745, at *38 (Del. Ch. June 4, 2004) ("[T]he liability of the directors must be determined on an individual basis because the nature of their breach of duty (if any), and whether they are exculpated [under their charter's Section 102(b)(7) provision] from liability for that breach, can vary for each director.").

of Plaintiffs, it should enter a verdict against the Defendants or a particular Defendant.  In the interest of fairness, and to prevent inclusion of a bias in favor of Defendants, the instruction should be revised to also mention the possibility that Plaintiffs may prevail.  Moreover, there is no need for an injury instruction in an instruction relating to the entire fairness standard; this only confuses the jury and the issues before the jury.

## Instruction 49:  Duty of Loyalty[80]

The ATP Directors owe a duty of loyalty to ATP.  The duty of loyalty means that the ATP Directors may not put their own personal interests ahead of those of ATP in carrying out their duties as directors.  The ATP Directors are required to exercise the utmost good faith in furthering the interests of ATP and conserving its property.

One way in which a director may breach the duty of loyalty is by engaging in an "interested action" that is not "entirely fair" to the corporation.  An "interested action" is a transaction or corporate policy through which a director accrues some benefit.  I will next explain two different types of "interested actions."

The duty of loyalty can also be breached where a director violates the subsidiary element of the duty of good faith, which I will explain in greater detail later.

---

[80] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 343, 4TH EDITION (2005).

**Plaintiffs' Objections:**

*First*, as stated above, Plaintiffs object to the extent this instruction states that the fiduciary duty of loyalty is owed to the ATP but not its members. Delaware courts, rejecting this proposition, have expressly held that fiduciary duties are owed to subclasses or groups of members, as well as the membership itself. *Gilbert v. El Paso Co.*, No. CIV A. Nos. 7075, 7079, 7078, 1988 WL 124325, at *9 (Del. Ch. Nov. 21, 1988), aff'd 575 A.2d 1131 ("it cannot be concluded (as defendants seems to suggest, that the directors can never owe a duty to a particular shareholder subclass or group. Manifestly that cannot be so."). Where, as here, Defendants have acted in a manner that damages every tournament that is not a member in a Masters 100, Plaintiffs are entitled to an instruction that does not mislead the jury on this critical point.

*Second*, Defendants object that this instruction, and the duty of good faith and self-dealing instructions hereafter, are listed sequentially after the instructions of the business judgment rule and the entire fairness standard. It makes no sense to define the duty of due care prior to the business judgment rule – but not the other duties – since the business judgment rule applies equally to both. The jury is entitled to a definition of each of the fiduciary duties before it is instructed on the business judgment rule and the entire fairness standard. Plaintiffs cannot agree to the sequence of these instructions.

*Third*, Plaintiffs believe that a proper instruction would explain that the duty of good faith requires "undivided and unqualified loyalty" to the ATP and its members. The instruction should also state that the duty extends to dealing with the ATP and its members, as well as dealings with others. *Stone ex rel. AmSouth Bancorp. V. Ritter*, 911 A.2d 362, 420 (Del. 2006); *Revlon Inc. v MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 182 (Del. 1986). Plaintiffs' corresponding instruction properly accounts for these principles of law, and Defendants' instruction should be revised accordingly.

113

### Instruction 50:  Interested Action – Self-Dealing

An "interested action" may in some cases involve "self-dealing," whereby the interested director sits on both sides of a transaction.[81]  For example, self-dealing may exist where a director has a financial interest in a company being purchased by the company on whose board he sits.[82]  In cases involving a director's "self-dealing," if the director's interest is disclosed to the disinterested directors or the members of the corporation, and the transaction is subsequently approved, the transaction is presumed to be valid under the business judgment rule.

In the case of "self-dealing," the disinterested directors or members of the corporation include all directors or members who do not share the self-dealing director's particular interest.  If there is more than one director engaged in self-dealing, but each director has a different interest in the action in question, each self-dealing director must disclose his particular interest to the directors or members of the corporation who do not share his particular interest, and the action must be subsequently approved in order for the business judgment rule's presumption of validity to apply.

If you find that an ATP Director engaged in self-dealing, but disclosed his interest to the disinterested directors or members of the corporation, who then approved the transaction, the business judgment rule applies and you must find for Defendants and against Plaintiffs on Plaintiffs' fiduciary duty claims relating to that particular ATP Director's actions.  If, however, you find that the "self-dealing" ATP Director's interest was undisclosed to the disinterested directors or the members of the corporation, the "self-dealing" ATP Director must prove by a preponderance of the evidence that the action in question was "entirely fair" to the corporation.

---

[81] *Cinerama, Inc.  v. Technicolor, Inc.*, 663 A.2d 1156, 1169 (Del. 1995).

[82] *Harbor Finance Partners v. Huizenga*, 751 A.2d 879, 887 n.20 (Del. Ch. 1999).

114

REDACTED VERSION – PUBLICLY FILED

**Plaintiffs' Objections:**

Plaintiffs object to this entire instruction as it misstates the law and misleads the jury into believing, falsely, that if the directors told each other about their interests, and then voted for the Brave New World anyway, the directors did not breach their duty of loyalty. The Delaware Supreme Court, refining the language of *Aronson,* has determined that director self-interest exists "whenever divided loyalties are present, or a director has received, or is entitled to receive, a personal financial benefit from the challenged transaction which is not equally shared by the stockholders." *Rales v. Blasband,* 634 A.2d 927, 933 (Del.1993) (internal emphasis omitted). Moreover, the instruction fails to define what is required for ratification of a self-interested transaction. Finally, the instruction confuses the jury by implying that lack of self-interest means that the jury "must find for Defendants and against Plaintiffs on Plaintiffs' fiduciary duty claims relating to that director's actions." This is an overbroad and patently false statement. A lack of self-interest does not preclude the jury from finding that that director or all directors violated their duties of due care and good faith, as well as other manners by which they could violate the duty of loyalty.

**Instruction 51: Interested Action – Material Interest**

This is not to suggest that a corporate officer or director may never act in his or her own interest. If a director has an interest in a bargained-for transaction but is not engaged in "self-dealing," the presumption of validity of the business judgment rule applies unless the director's interest is found to be "material."[83] In order to be considered "material," the interest in question must be substantial, as opposed to merely incidental.[84] To determine whether the interest in question was "material," you must look to the interested director's actual circumstances to determine whether the director was in fact or would likely be affected by the interest in question.[85] For example, if a director's interest would exist regardless of whether the action in question was or was not taken, the interest cannot be considered material.[86]

The existence of and materiality of a director conflict of interest is measured at the time of the approval of the challenged action. You may consider evidence of the director's overall net worth in determining whether his alleged interest is material.[87]

If you find that an ATP Director had an interest in a particular action, but that the ATP Director's interest was not material, the business judgment rule applies and you must find for Defendants and against Plaintiffs on Plaintiffs' fiduciary duty claims relating to that particular ATP Director's actions.

If, however, you find that an ATP Director had a material interest in a particular action,

---

[83] *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 362 (Del. 1993).

[84] *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1169 (Del. 1993).

[85] *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1134, 1151 (Del. Ch. 1994).

[86] *Orman v. Cullman*, 794 A.2d 5, 29-30 (Del. Ch. 2002).

[87] *Goodwin v. Live Entertainment, Inc.*, 1999 WL 64265, at *26 (Del. Ch. Jan. 25, 1999)

you must then determine whether that ATP Director either (a) controlled or dominated the board as a whole *or* (b) failed to disclose his interest to the board <u>and</u> that a reasonable board member would have regarded the existence of the ATP Director's material interest as a significant fact in the evaluation of the proposed action. In determining whether the disinterested directors were controlled or dominated by the interested director, the plaintiff bears the burden of proving a lack of independence on the part of a majority of the disinterested directors.[88]

If Plaintiffs prove by a preponderance of the evidence that any ATP Director with a material interest in a particular action either (a) controlled or dominated the board as a whole or (b) did not disclose his interest <u>and</u> the disinterested directors would have regarded this interest as a significant fact in evaluating the proposed action, the burden shifts to the Defendants to prove by a preponderance of the evidence that the action in question was entirely fair to the corporation. If, however, Plaintiffs fail to prove (a) or (b) above as to any ATP Director with a material interest, the business judgment rule applies and you must find for Defendants and against Plaintiffs on Plaintiffs' breach of fiduciary duty claims relating to that particular ATP Director's actions.

**Plaintiffs' Objections:**

Plaintiffs objection that this instruction misstates the law regarding materiality, is unnecessary, and confuses the jury. Specifically, the instruction confuses the jury by implying that lack of a material interest means that the jury "must find for Defendants and against Plaintiffs on Plaintiffs' fiduciary duty claims relating to that director's actions." This is an overbroad and patently false statement. A lack of self-interest does not preclude the jury from finding that that director or all directors violated their duties of due care and good faith, as well as other manners by which they could violate the duty of loyalty.

---

[88] *Telxon Corp. v. Meyerson*, 802 A.2d 257, 264 (Del. 2002).

117

### Instruction 52:  Duty of Good Faith

A director may violate the duty of loyalty by violating the duty of good faith by intentionally acting with a purpose other than that of advancing the best interests of the corporation, or acting with the intent to violate applicable positive law.[89]

**Plaintiffs' Objections:**

*First*, Plaintiffs object because this instruction does not state that the Defendants owe a duty of good faith to the ATP and its members.  Indeed, this instruction is difficult to read and would be hard for a jury to comprehend.  To avoid jury confusion, this fact that a duty of good faith is owed should be articulated at the outset (see Plaintiffs' corresponding instruction 54 for example).

*Second*, Plaintiffs object because this instruction fails to identify the element of "subject bad faith," or "actual intent to do harm," which constitutes "class, quintessential bad faith" under Delaware law.  Pursuant to the authorities relied upon by Defendants, this method of violating the duty of good faith must be included in the instruction (see Plaintiffs' corresponding instruction for example).  *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006); *In re Walt Disney Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006).

---

[89] *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006); *In re Walt Disney Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006).

### Instruction 53:  Positive Law

"Positive law" means a statute or regulation.  Violation of a contract, agreement, tradition or custom is not a violation of "positive law."  Here, Plaintiffs allege that the ATP Directors violated "positive law" by violating the antitrust laws.  To find that the ATP Directors violated "positive law," you must first find a violation of the antitrust laws.  If you find for Defendants and against Plaintiffs on Plaintiffs' antitrust claims, then you must also find for Defendants and against Plaintiffs on Plaintiffs' claim that the ATP Directors intentionally violated positive law.  If you find that there was a violation of the antitrust laws, you must then determine whether the ATP Directors intentionally caused ATP to violate the antitrust laws.  In determining whether a violation is intentional, you may consider whether the ATP Directors acted with the intent or purpose of furthering the purposes of ATP or for the benefit of ATP's membership as a whole.  If Plaintiffs fail to prove by a preponderance of the evidence that the ATP Directors intentionally violated the antitrust laws, then you must find that the ATP Directors did not breach their duty of loyalty by intentionally violating positive law.[90]

### Plaintiffs' Objections:

*First*, Plaintiffs object to this instruction because it incorrectly limits the definition of positive law to "statute and regulation," and does not include the purposes behind statutes or regulation.  In *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 364 (3d Cir. 1993), the very case cited by Defendants, the court clearly articulated that "the countours of positive law are broad enough to include not just specific rules or prohibitions but also the stated purposes behind these rules and prohibitions.  Where the 'positive law' is a stated purpose behind a statute or regulation, to thwart the purpose is to 'violate positive law.'"  Accordingly, this instruction, to the extent it is necessary at all, must be revised to stated that if Defendants violated the purpose behind the antitrust laws of the United States, even if they did not violate the laws themselves, they have violated positive law.

*Second*, Plaintiffs object because Defendants have, in effect, limited the term "positive law" so that it only applies to antitrust violations.  This instruction should also state that if Defendants violated the substance or purpose of a non-profit corporation as defined by statute, or

---

[90] *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 364 (3d Cir. 1993).

any other statutes, then Defendants have violated positive law. The jury should not be misled into thinking that antitrust laws are the only positive laws Defendants are alleged to have violated.

*Third*, Plaintiffs object because the second half of the instruction, discussing intent to violate antitrust laws, has no relevance to the definition of "positive law." Moreover, even if this information was relevant, Defendants have not defined intent correctly. By way of example, the instruction should state that if Defendants knew that their acts would violate positive law, but nonetheless went forward with those actions, Defendants acted with intent. It is well settled that mere benefit to a corporation does not excuse an intent to violate positive law.

120

REDACTED VERSION – PUBLICLY FILED

**Instruction 54:  Fiduciary Duty:  Causation – Generally**[91]

If you find that any ATP Director Defendant breached a fiduciary duty to the Plaintiffs, you should then decide whether that breach proximately caused any losses claimed by the Plaintiffs.

I shall now instruct you on the law and burden of proof regarding proximate cause.

---

[91] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 360, 4TH EDITION (2005).

121

REDACTED VERSION – PUBLICLY FILED

**Instruction 55:  Elements of Causation and Burden of Proof[92]**

To find a defendant liable for breach of a fiduciary duty, the breach must have caused Plaintiffs some damage.  A Director Defendant's breach is the cause of damage only when (1) the Plaintiffs have sustained or will sustain a loss of some type, (2) the Director Defendant's act or omission was the cause-in-fact of the loss sustained, and (3) the Director Defendant's act or omission was the legal cause of the loss sustained.  Plaintiffs bear the burden of proving all three of these elements.

---

[92] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 361, 4TH EDITION (2005).

### Instruction 56:  Existence of Damage[93]

An act, even if wrongful, may or may not cause an injury and if it causes no injury, there can be no liability.  Consequently, Plaintiffs must prove that they have suffered or will suffer such injury to recover damages.  Otherwise there can be no liability for breach of a fiduciary duty, and you must find for the Defendants.

---

[93] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 362, 4TH EDITION (2005).

REDACTED VERSION – PUBLICLY FILED

## Instruction 57: Cause-in-Fact[94]

To prove that a breach of fiduciary duty was the cause-in-fact of the Plaintiffs' injury, the Plaintiffs must establish not only that they suffered some loss, but also that such loss could have been avoided if the ATP Directors had performed their fiduciary duties as required.

You must weigh the evidence presented by both sides and decide whether Plaintiffs have met their burden of proving that the loss could have been prevented if the ATP Directors had performed their duties properly. If the ATP Directors could not have prevented the losses, then they are not liable for those losses.

---

[94] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 363, 4TH EDITION (2005).

**Instruction 58:  Legal Cause**[95]

If you find that Plaintiffs have proved the existence of damages and cause-in-fact, then you must decide whether Plaintiffs have proved that the ATP Directors' acts or omissions were the "legal cause" of Plaintiffs' injuries or losses.  The issue you must decide under this element is whether the relationship between the ATP Directors' acts or omissions and the losses sustained by Plaintiffs is sufficiently close to attribute the losses to the ATP Directors.  Plaintiffs must prove two things to show legal cause:  (1) that the ATP Directors' acts or omissions were substantial factors in bringing about the loss, and (2) that the likelihood of injury would have been foreseeable to persons in the ATP Directors' positions under similar circumstances.

You must weigh the evidence and decide whether the ATP Directors' acts or omissions were substantial factors in bringing about the losses and, if so, whether the losses sustained were reasonably foreseeable to persons in the ATP Directors' positions.  If you find that Plaintiffs have not proven both elements, there can be no liability for any losses that may have been sustained by Plaintiffs, and you must find for the Defendants.

---

[95] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 364, 4TH EDITION (2005).

REDACTED VERSION – PUBLICLY FILED

## Instruction 59: "Foreseeable" Defined[96]

Something is said to be foreseeable when it can be seen or known in advance; in other words, when it is reasonable to anticipate that something is a likely result of an act, omission, or failure of oversight.  The law requires you to consider foreseeability because a person is not responsible for a consequence that is merely possible.  A person is responsible only for a consequence that is probable according to ordinary and usual experience.

Plaintiffs have no objection to this instruction.

However, Plaintiffs object that there are no subsequent instructions related to damages for breach of fiduciary duty.  The jury must be advised as to the factors to consider in assessing damages. (See Plaintiffs' corresponding instructions.)

---

[96] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 365, 4TH EDITION (2005).

## Instruction 60:  Breach of Fiduciary Duty – Waiver

If you find that the Director Defendants have committed a breach of fiduciary duty, you may consider whether Plaintiffs have waived their right to recover for any injury they have suffered.  In this context, "waiver" means the voluntary and intentional relinquishment of a known right.[97]  In other words, a member of a corporation cannot complain of a corporate action with which it has agreed or concurred with full knowledge of all the facts.[98]  If you find by a preponderance of the evidence that Plaintiffs agreed to or concurred with any action(s) of any Director Defendant(s), with knowledge of the facts relating to the interest of the Director Defendant(s) in the action, you must find for the Director Defendant(s) on any breach of fiduciary duty claim based on this action.

**Plaintiffs' Objections:**

Plaintiffs object to this instruction because it does not accurately explain the requirements for waiver under Delaware law. For example, it ignores that "Delaware courts will enforce a principal's decision to waive or otherwise modify the implied fiduciary duty of loyalty only if such an intent is clearly and unambiguously expressed in the language of [a] contract." *Estate of Carpenter v. Dinneen*, 2007 WL 1114082, 7 (Del.Ch.) (Del.Ch.,2007).

Plaintiffs also inappropriately define this defense in the fiduciary duty context.  For example, Plaintiffs did not waive the existence of Defendants' fiduciary duties -- the right they would have – even if they consented to some elements of the result.

Plaintiffs further object to this instruction to the extent it implies that if Plaintiffs agreed with "any action(s) of any Director Defendant(s) . . . you must find for the Director Defendant(s) on any breach of fiduciary duty claim." This is patently overbroad and plainly wrong.  Even if Plaintiffs agreed with certain of Defendants' actions (which they did not), that would not preclude them from recovering for breaches of duty that lead to other injuries.

Plaintiffs object that this and the following instructions regarding acquiescence and equitable estoppel were not provided until the eve of this submission – and even then not

---

[97] *Forsythe v. ESC Fund Mgt. Co.*, 2007 WL 2982247, at *16 (Del. Ch. Oct. 9, 2007).

[98] *Werner v. Miller Tech. Mgt., L.P.*, 831 A.2d 318, 334 (Del. Ch. 2003); *Boxer v. Husky Oil Co.*, 1983 WL 17937, at *7 (Del Ch. June 28, 1983).

REDACTED VERSION – PUBLICLY FILED

redlined so that Plaintiffs could notice that these three instructions had been added. Plaintiffs reserve all right to amend and supplement their objections thereto.

### Instruction 61:  Breach of Fiduciary Duty – Acquiescence

Another way a plaintiff may forfeit its right to recovery for a breach of fiduciary duty is through acquiescence in the complained-of action.  A plaintiff acquiesces to otherwise wrongful conduct if he or she has full knowledge of his or her rights and the material facts and (1) remains inactive for a considerable time; (2) freely does what amounts to recognition of the complained-of act; or (3) acts in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved.[99]  For example, if Plaintiffs had full knowledge of a Director Defendant's interest in a particular action and accepted the benefits of that action, Plaintiffs may not now receive damages for a breach of the Director Defendant's fiduciary duty stemming from that action.[100]

**Plaintiffs' Objections:**

Plaintiffs object to this instruction to the extent it implies that if Plaintiffs acquiesced in any of Defendants' actions that Plaintiffs cannot win.  This is patently overbroad and plainly wrong.  Even if Plaintiffs agreed with certain of Defendants' actions (which they did not), that would not preclude them from recovering for breaches of duty that lead to other injuries.  Plaintiffs also object to this extent this instruction misstates the law.

Plaintiffs object that this instruction was not provided until the eve of this submission – and even then not redlined so that Plaintiffs could notice that this instruction had been added.  Plaintiffs reserve all right to amend and supplement their objections thereto.

---

[99] *Bakerman v. Sidney Frank Importing Co., Inc.*, 2006 WL 3927242, at *17 (Del. Ch. Oct. 16, 2006); *Nevins v. Bryan*, 885 A.2d 233, 246 (Del. Ch. 2005).

[100] *Continental Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1240 (Del. Ch. Jan. 10, 2000).

### Instruction 62:  Breach of Fiduciary Duty – Equitable Estoppel

Plaintiffs may also be barred from recovering for a defendant's breach of fiduciary duty by the doctrine of equitable estoppel.  This rule requires dismissal of a party's claim where the party's conduct intentionally or unintentionally leads another, who is relying on the conduct, to change a position or act to his or her detriment.  The party claiming estoppel must demonstrate by clear and convincing evidence that (1) they lacked knowledge or the means of obtaining knowledge of the truth of the facts in question; (2) they reasonably relied on the conduct of the party against whom estoppel is claimed; and (3) they suffered a prejudicial change of position as a result of their reliance.[101]  For example, equitable estoppel would bar the claim of a member of a corporation who, with knowledge of the facts, requests that the directors of a corporation take a particular action but who later opposes the action once it has been taken.[102]

**Plaintiffs' Objections:**

Plaintiffs object to this instruction to the extent it implies that if Plaintiffs to any of Defendants' actions that Plaintiffs cannot win.  This is patently overbroad and plainly wrong. Even if Plaintiffs agreed with certain of Defendants' actions (which they did not), that would not preclude them from recovering for breaches of duty that lead to other injuries.  Plaintiffs also object to this extent this instruction misstates the law.

Plaintiffs object that this instruction was not provided until the eve of this submission – and even then not redlined so that Plaintiffs could notice that this instruction had been added. Plaintiffs reserve all right to amend and supplement their objections thereto.

---

[101] *Nevins v. Bryan*, 885 A.2d 233, 249 (Del. Ch. 2005).

[102] *Id.* (noting equitable estoppel has been applied in the corporate context where a stockholder with knowledge of the facts consents or acquiesces in the acts of directors or other corporate officers).

## Instruction 63: Tortious Interference with Contract: Elements[103]

One who intentionally and improperly induces or otherwise intentionally causes a third party not to perform an existing contract with another party is responsible to that other party for the loss suffered as a result of the breach of contract.[104]

In order to prove a claim for tortious interference with an existing contract, Plaintiffs must prove:

**First,** the existence of a contract between Plaintiffs and some third party;

**Second,** that Defendants knew of the contract;

**Third,** that the contract was breached;

**Fourth,** Defendants committed an intentional act that was a significant factor in causing the breach of the contract;

**Fifth,** Defendants acted without justification; and

**Sixth,** Plaintiffs were injured by the alleged interference.[105]

If you find from a consideration of all the evidence that Defendants interfered with Plaintiffs' existing contracts, then your verdict should be for Plaintiffs. If you find from a consideration of all the evidence that Defendants have not interfered with Plaintiffs' existing contracts, then your verdict should be for Defendants on this claim.

**Plaintiffs' Objections:**

Plaintiffs object to this instruction to the extent it deviates from the model instruction

---

[103] DEL. P.J.I. CIV. § 12.7 (2000); *Aspen Advisors LLC v. UA Theatre Co.*, 861 A.2d 1251 (Del. 2002); *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983 (Del. Ch. 1987).

[104] *McHugh v. Bd. of Ed. of Milford School Dist.*, 100 F. Supp. 2d 231, 246 (D. Del. 2000).

[105] *AeroGlobal Capital Management, LLC v. Cirrus Industries, Inc.*, 871 A.2d 428, 437 (Del. 2005); *McHugh v. Bd. of Ed. of Milford School Dist.*, 100 F. Supp. 2d 246 (D. Del. 2000).

131

REDACTED VERSION – PUBLICLY FILED

relied upon by Plaintiffs and Defendants. DEL. P.J.I. CIV. § 12.7 (2000). The model instruction clearly and succinctly articulates the elements of a claim for tortious interference under Delaware law, and also identifies factors by which the jury can determine if Defendants' conduct is improper. There is no need for additional instructions on this point. Moreover, these instructions do not assist the trier of fact, but only serve to distract the trier from the simple task of determining whether a Director Defendant "intentionally and improperly induces or otherwise intentionally causes a third party not to perform an existing contract with another party [such that he or she] is responsible to that other party for the loss suffered as a result of the breach of contract." For these reasons, Plaintiffs proposed that Plaintiffs' corresponding instruction should be presented to the jury in lieu of Defendants numerous instructions.

## Instruction 64:  Breach of Contract[106]

Plaintiffs must prove by a preponderance of the evidence that Defendants caused a breach of contract between Plaintiffs and some third party.  A "breach of contract" is the failure, without legal excuse, to perform any promise which forms the whole or part of a contract.  Accordingly, Plaintiffs must prove by a preponderance of the evidence that some third party failed to perform some or all of its obligations under an existing contract.

If you find that Plaintiffs have not proven a breach of contract by a preponderance of the evidence, you must find for Defendants and against Plaintiffs on Plaintiffs' intentional interference with contract claim.

### Plaintiffs' Objections:

Plaintiffs object to this instruction to the extent it deviates from the model instruction relied upon by Plaintiffs and Defendants.  DEL. P.J.I. CIV. § 12.7 (2000).  The model instruction clearly and succinctly articulates the elements of a claim for tortious interference under Delaware law, and also identifies factors by which the jury can determine if Defendants' conduct is improper.  There is no need for additional instructions on this point.  Moreover, these instructions do not assist the trier of fact, but only serve to distract the trier from the simple task of determining whether a Director Defendant "intentionally and improperly induces or otherwise intentionally causes a third party not to perform an existing contract with another party [such that he or she] is responsible to that other party for the loss suffered as a result of the breach of contract." For these reasons, Plaintiffs proposed that Plaintiffs' corresponding instruction should be presented to the jury in lieu of Defendants numerous instructions.

---

[106] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 24-25 4TH EDITION (2005).

## Instruction 65:  Interference Must Be Intentional[107]

Plaintiffs must prove that Defendants acted intentionally to interfere with Plaintiffs' existing or prospective contracts.  In order for Plaintiffs to prevail on this claim, the interference must be intentional.  In other words, Plaintiffs must prove that the primary purpose of Defendants' conduct was to interfere with existing and prospective contracts between Plaintiffs and some third party or parties.

If you find that the Defendants' conduct was not intentional, then you must find for the Defendants on Plaintiffs' intentional interference with contract and prospective contract claims.

**Plaintiffs' Objections:**

*First,* Plaintiffs object to this instruction to the extent it deviates from the model instruction relied upon by Plaintiffs and Defendants.  DEL. P.J.I. CIV. § 12.7 (2000).  The model instruction clearly and succinctly articulates the elements of a claim for tortious interference under Delaware law, and also identifies factors by which the jury can determine if Defendants' conduct is improper.  There is no need for additional instructions on this point.  Moreover, these instructions do not assist the trier of fact, but only serve to distract the trier from the simple task of determining whether a Director Defendant "intentionally and improperly induces or otherwise intentionally causes a third party not to perform an existing contract with another party [such that he or she] is responsible to that other party for the loss suffered as a result of the breach of contract."  For these reasons, Plaintiffs proposed that Plaintiffs' corresponding instruction should be presented to the jury in lieu of Defendants numerous instructions.

*Second,* Plaintiffs also object because, to the extent this instruction is even considered, Defendants have manipulated this instruction in a manner that unfairly favors their position over Plaintiffs'.  The model instruction on which Defendants rely does not state that the purpose of Defendant's conduct must have been "primary[ily]" to interfere with Plaintiffs' contracts.  ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 17, 4TH EDITION (2005).  Moreover, this "primary" purpose standard is not an element of Delaware law.  Rather, where Defendants were cognizant of Plaintiffs' contracts and acted with a knowledge and intent to induce breach, even if they also had some other purposes in doing so, Defendants have acted intentionally.  The instruction, as written, confuses the jury on this point and must be revised to properly state the law.

---

[107] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 17, 4TH EDITION (2005).

REDACTED VERSION – PUBLICLY FILED

## Instruction 66:  Justification for Interference

In order to determine whether Defendants wrongfully interfered with Plaintiffs' existing or prospective contracts, you must determine whether or not Defendants' conduct was improper or without "justification."  In this context, "justification" has a specific meaning.  The law provides that a party may be entitled to interfere with another's business expectancy to protect its own economic interest.[108]

In determining whether Defendants' conduct was improper or without "justification," you may consider the following factors:

(1)      the nature of Defendants' conduct;

(2)      Defendants' motive;

(3)      the interests of the party with which the Defendants' conduct allegedly interferes;

(4)      the interest that Defendants sought to advance;

(5)      the expectations of the parties involved;

(6)      the relations between the parties involved;

(7)      whether Defendants' acts were done for the purpose of causing the interference or whether they were merely incidental to another purpose;

(8)      the proximity or remoteness of Defendants' conduct to the interference; and

(9)      society's interest in protecting the freedom of action of the actor and the contractual interests of the other.[109]

Each of these factors may carry a different weight with you depending on the facts proven but

---

[108] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 40, 4TH EDITION (2005).

[109] DEL. P.J.I. CIV. § 12.7 (2000); *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 993 (Del. Ch. 1987).

the overriding question is whether the conduct of the Defendants has been fair and reasonable under the circumstances.

## Plaintiffs' Objections:

*First*, Plaintiffs object to this instruction to the extent it deviates from the model instruction relied upon by Plaintiffs and Defendants. DEL. P.J.I. CIV. § 12.7 (2000). The model instruction clearly and succinctly articulates the elements of a claim for tortious interference under Delaware law, and also identifies factors by which the jury can determine if Defendants' conduct is improper. There is no need for additional instructions on this point. Moreover, these instructions do not assist the trier of fact, but only serve to distract the trier from the simple task of determining whether a Director Defendant "intentionally and improperly induces or otherwise intentionally causes a third party not to perform an existing contract with another party [such that he or she] is responsible to that other party for the loss suffered as a result of the breach of contract." While Plaintiffs agree that the factors relevant to impropriety of Defendants' conduct should be included in this instructions, they should be included as suggested by the Delaware model rules – in the initial instruction.

*Second*, Plaintiffs object to Defendants' statement that a party is justified who acts to protect his "own economic interest." This is a misleading statement, since it suggests that desire for profit justifies intentional interference with another party's contracts. That is not true as a matter of Delaware law. *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 993 (Del. Ch. 1987). Moreover, the very instruction Defendants' cite goes on to clarify that a defendant "act[s] improperly in pursuit of defendants' own prospective advantage, not yet realized." ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 40, 4TH EDITION (2005). This instruction must be revised to state that Defendants' pursuit of a prospective advantage or profit, not yet realized, is improper.

## Instruction 67: Causation[110]

Plaintiffs must also prove causation – that is, that Defendants actively and affirmatively took steps to induce a breach of contract or termination of a prospective contract, and that Defendants' conduct caused the breach or termination.  In this respect, to "cause" the breach means that, had it not been for Defendants' acts, the contracts would have been performed or the prospective contracts would have been entered.

**Plaintiffs' Objections:**

Plaintiffs object to this instruction to the extent it deviates from the model instruction relied upon by Plaintiffs and Defendants.  DEL. P.J.I. CIV. § 12.7 (2000).  The model instruction clearly and succinctly articulates the elements of a claim for tortious interference under Delaware law, and also identifies factors by which the jury can determine if Defendants' conduct is improper.  There is no need for additional instructions on this point.  Moreover, these instructions do not assist the trier of fact, but only serve to distract the trier from the simple task of determining whether a Director Defendant "intentionally and improperly induces or otherwise intentionally causes a third party not to perform an existing contract with another party [such that he or she] is responsible to that other party for the loss suffered as a result of the breach of contract." For these reasons, Plaintiffs proposed that Plaintiffs' corresponding instruction should be presented to the jury in lieu of Defendants numerous instructions.

---

[110] ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 26, 4TH EDITION (2005).

**Instruction 68:  Nonliability of Contractual Parties**

Plaintiffs cannot prevail on their claims of intentional interference with contract against Defendants if Defendants were parties to the contract with Plaintiffs.  A defendant may not be held liable for inducing his or her own breach of contract.[111]    Directors and officers of a corporation may not be held liable for inducing the corporation to breach its own contract unless the director or officer acts outside the scope of their agency in so doing.[112]

---

[111] *Wallace v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999) ("[A]n entity cannot be liable for interfering with the performance of its own contract."); ABA SECTION OF LITIGATION, MODEL JURY INSTRUCTIONS BUSINESS TORTS LITIGATION 29, 4TH EDITION (2005).

[112] *Int'l Ass'n of Heat and Frost Insulators and Asbestos Workers Local Union 42 v. Absolute Environmental Serv., Inc.*, 814 F. Supp. 392, 400 (D. Del. 1993); *Goldman v. Pogo.com, Inc.*, 2002 WL 1358760, *8 (Del. Ch. 2002).

139

**Instruction 69:  Tortious Interference with Prospective Contract**

One who purposely and improperly induces or otherwise purposely causes a third party not to enter into or continue a prospective contractual relation with another is responsible to that other party for the loss suffered as a result of the prevention or interference with the prospective contractual relationship.[113]

In order to prove a claim for tortious interference with prospective contract, Plaintiffs must prove:

**First,** the existence of a valid business relationship or expectancy between Plaintiffs and some third party;

**Second,** that Defendants knew of the relationship or expectancy;

**Third,** that the relationship or expectancy was breached or terminated;

**Fourth,** that Defendants committed an intentional and wrongful act that induced or caused the breach or termination of the relationship or expectancy;

**Fifth,** that Defendants acted without justification; and

**Sixth,** that Plaintiffs were injured by the alleged interference.[114]

If you find from a consideration of all the evidence that Defendants intentionally interfered with Plaintiffs' prospective contracts, then your verdict should be for Plaintiffs.  If you find from a consideration of all the evidence that Defendants have not interfered with Plaintiffs' prospective contracts, then your verdict should be for Defendants on this claim.

---

[113] DEL. P.J.I. CIV. § 12.7 (2000).

[114] *Commerce National Ins. Serv., Inc. v. Buchler*, 120 Fed. Appx. 414, 418 (3d Cir. 2004); *McHugh v. Bd. of Ed. of Milford School Dist.*, 100 F. Supp. 2d 231, 247 (D. Del. 2000).

**Plaintiffs' Objections:**

Plaintiffs object to this instruction to the extent it deviates from the model instruction relied upon by Plaintiffs and Defendants. DEL. P.J.I. CIV. § 12.7 (2000). The model instruction clearly and succinctly articulates the elements of a claim for tortious interference under Delaware law, and also identifies factors by which the jury can determine if Defendants' conduct is improper. There is no need for additional instructions on this point. Moreover, these instructions do not assist the trier of fact, but only serve to distract the trier from the simple task of determining whether a Director Defendant "intentionally and improperly induces or otherwise intentionally causes a third party not to perform an existing contract with another party [such that he or she] is responsible to that other party for the loss suffered as a result of the breach of contract." For these reasons, Plaintiffs proposed that Plaintiffs' corresponding instruction should be presented to the jury in lieu of this instruction and the numerous other instructions submitted by Defendants.

### Instruction 70: Tortious Interference with Contract and Prospective Contract: Damages[115]

If you find that the Defendants intentionally interfered with Plaintiffs' existing contracts, then Plaintiffs are entitled to be fairly and adequately compensated for:

1.    the monetary loss of the contractual benefits suffered by Plaintiffs; and

2.    all other losses suffered by Plaintiffs as a direct result of Defendants' improper interference.

**Plaintiffs' Objections:**

*First*, Plaintiffs object that this instruction does not identify harm to Plaintiffs' reputation as a component of damages for which Plaintiffs are entitled to be compensated. Again, this factor is identified in the model instruction and more accurately reflects the damages available to Plaintiffs in the event tortious interference is proven. (See Plaintiffs' corresponding instruction.) By failing to identify this aspect of damages, Defendants are unfairly prejudicing Plaintiffs' ability to be compensated for its injuries.

*Second*, Plaintiffs object that Defendants have proposed one damage instruction for two separate and distinct causes of action – tortious interference with contracts and prospective contracts. The elements of liability on these claims are distinct and unique, as are the damages that may be assessed. Defendants' proposed jury instruction may unfairly and unnecessarily confuse the jury on this point. Plaintiffs' corresponding instructions, which separate damage instructions for these distinct claims, would be better suited here.

---

[115] Del. P.J.I. Civ. § 22.18 (2000).

### Instruction 71: Conversion – Elements

Plaintiffs allege that Defendants converted Plaintiffs' property rights in the Hamburg ATP Membership. Conversion is the intentional act of dominion or control wrongfully exerted over the property of another in denial of or inconsistent with the owner's right to possession or control. [116] Conversion may only apply where the act of dominion or control so seriously interferes with the owner's right to possession or control that the actor has fully extinguished the value of the property.[117]

Traditionally, conversion claims are used to recover the value of a physical piece of property that is stolen or destroyed by another.[118] Physical property is also known as "tangible" property, or property that is capable of being touched. A plaintiff may also maintain an action for conversion of "intangible" property, or property that is incapable of being touched, but only where the intangible property relations are merged into a document and that document is itself converted.[119] A document itself is tangible property, but in certain cases it may also embody a personal obligation or the title to a separate good. For example, promissory notes, bonds, bills of exchange, stock share certificates, warehouse receipts, insurance policies and savings bank books are all both property in and of themselves and also representative of a person's interest in other

---

[116] *Arnold v. Soc'y for Savings Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996).

[117] Restatement (Second) of Torts § 222A (1965).

[118] *Res. Ventures Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 439 (D. Del. 1999).

[119] *Peirson v. Clemens, Inc.*, 2005 U.S. Dist. LEXIS 4587, *7-8 (D. Del. 2005); *Acierno v. Preit-Rubin, Inc.*, 1999 F.R.D. 157, 165 (D. Del. 2001); *Res. Ventures Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 439 (D. Del. 1999); *Carlton Investments v. TLC Beatrice Int'l Holdings, Inc.*, 1995 WL 694397, *16 (Del. Ch. 1995); *see also In re Wal-Mart Wage and Hour Employment Practices Litig.*, 490 F.Supp.2d 1091, 1101 (D. Nev. 2007).

property.[120]  In this case, Plaintiffs claim that Defendants have converted their ATP Tournament membership rights.

To prevail on their conversion claim, Plaintiffs must prove:

**First,** that Plaintiffs have a property right that is the proper subject of a conversion claim;

**Second,** that Defendants wrongfully and intentionally exerted full dominion over that property right; and

**Third,** Plaintiffs suffered damages as a result of Defendants' wrongful conduct.[121]

If you find from a consideration of all the evidence that Plaintiffs have failed to prove any of these three elements, then you must find for Defendants and against Plaintiffs on Plaintiffs' conversion claim.  If you find from a consideration of all the evidence that Plaintiffs have proven these three elements, then you must find for Plaintiffs and against Defendants on Plaintiffs' conversion claim.

**<u>Plaintiffs' Objections:</u>**

Plaintiffs object to this instruction because it misstates the law regarding conversion of intangible property rights and provided unhelpful, confusing information to the jury.  It is of no consequence to the jury's deliberations, for example, whether intangible property rights are "traditionally" protected.  The jurors need only be instructed on the current law of Delaware: that intangible property rights are the subject of conversion claims.  Moreover, Defendants' description of types of documents in which intangible property rights may exist is not a statement of Delaware law at all, but a statement of Nevada law, which does not apply here; it is also potentially confusing, since it may be interpreted, incorrectly, as an exhaustive list.

---

[120] *In re Wal-Mart Wage and Hour Employment Practices Litig.*, 490 F.Supp.2d 1091, 1102-03 (D. Nev. 2007); *Restatement (Second) of Torts* § 242 (1965).

[121] *Arnold v. Soc'y for Savings Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996).

### Instruction 72: Conversion – Damages[122]

If you find that Defendants converted Plaintiffs' property rights in the Hamburg ATP

Membership, then Plaintiffs are entitled to be fairly compensated for the value of the property at

the time of conversion, plus interest

**Plaintiffs' Objections:**

Plaintiffs object that this instruction does not distinguish between the Hamburg Membership and its associated rights. Defendants must recognize the possibility that the jury will find that Defendants converted one aspect of the Hamburg Membership (the right to a week, for instance) without converting other aspects of that membership. This instruction, as worded, confuses the jury on this point, and should be revised to be consistent with Plaintiffs' corresponding instruction.

---

[122] Defendants object to including an instruction on this issue because in Plaintiffs' First Amended Complaint, they sought only injunctive – *i.e.* equitable – relief on their Conversion claim. In the event that the Court determines to give such an instruction over Defendants' objection, Defendants propose this wording for the instruction.

145

## Instruction 73:  Conversion – Punitive Damages[123]

If you decide to award compensatory damages to Plaintiffs for conversion, you must determine whether Defendants are also liable to Plaintiffs for punitive damages.

Punitive damages are different from compensatory damages.  Compensatory damages are awarded to compensate a plaintiff for the injury suffered.  Punitive damages, on the other hand, are awarded in addition to compensatory damages for the purpose of punishing the person doing the wrongful act and to discourage such persons and others from similar wrongful conduct in the future.

You may award punitive damages to punish a party for outrageous conduct and to deter a party, and others like him or her, from engaging in similar conduct in the future.  To award punitive damages, you must find by a preponderance of the evidence that Defendants' actions were intentional and outrageous and were reckless in their disregard for the rights of others or the result of evil motive.[124]  Punitive damages cannot be awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.

Intentional conduct means it is the person's conscious object to engage in conduct of that nature.  Reckless conduct refers to conscious indifference that amounts to an "I don't care" attitude.  Reckless conduct occurs when a person, with no intent to cause harm, performs an act so unreasonable and dangerous that he or she knows or should know that there is an imminent likelihood of harm that can result.  Each requires that the defendant foresee that his or her conduct threatens a particular harm to another.

The law provides no fixed standards for the amount of punitive damages but leaves the

---

[123] DEL. P.J.I. CIV. § 22.27 (2000).

[124] *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 529 (Del. 1987).

146

amount to your sound discretion, exercised without passion or prejudice. In determining any award of punitive damages, you must consider the following: (1) the reprehensibility or outrageousness of Defendants' conduct; and (2) the amount of punitive damages that will deter Defendants and others like them from similar conduct in the future. You may consider Defendants' financial condition for this purpose only. Defendants' financial condition must not be considered in assessing compensatory damages. Any award of punitive damages must bear a reasonable relation to Plaintiffs' compensatory or nominal damages. If you find that Plaintiffs are entitled to an award of punitive damages, you must state the amount of punitive damages separately on the verdict form.

**Plaintiffs' Objections:**

This instruction does not deviate, substantively, from Plaintiffs' corresponding instruction regarding punitive damages. Other than small differences in wording, Plaintiffs have no objection to this instruction.

REDACTED VERSION – PUBLICLY FILED

**Instruction 74:  State Law Claims – Damages – Mitigation**[125]

Even if you find that any or all of the Defendants are liable to the Plaintiffs for their conduct, and that Plaintiffs have suffered some damage as a result of that conduct, under the law, Plaintiffs are obligated to take all reasonable steps to minimize their losses.  Plaintiffs cannot recover damages which they could have avoided through the expenditure of reasonable effort and the use of reasonable precautions.  If you find that Plaintiffs failed to take reasonable steps to mitigate their damages, then you must take that into account in deciding whether to award them any damages in this case – and if so, in what amount.

---

[125] *Brzoska v. Olson*, 668 A.2d 1355, 1367 (Del. 1995); *Lynch v. Vickers Energy Corp.*, 429 A.2d 497, 504 (Del. 1981); *Nash v. Hoopes*, 332 A.2d 411, 414 (Del. Super. 1975).

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 8(b)(1)

REDACTED VERSION – PUBLICLY FILED

## EXHIBIT 8(b)(1) TO PRETRIAL ORDER

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM (SHERMAN ACT § 1)

WE, THE JURY, unanimously find as follows:

1.    Do you find by a preponderance of the evidence that any Defendant(s) entered into contract(s), combination(s) or conspiracy(ies)?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

          Question 1     Yes_____          No_____

2.    Do you find by a preponderance of the evidence that any Defendant(s)' actions had a harmful effect on competition in the relevant market(s) and that this harm outweighs any beneficial effects of any necessary actions, if any, taken by Defendant(s)? (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 3 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

          Question 2     Yes_____          No_____

3.    Do you find by a preponderance of the evidence that any of the Defendant(s)' actions caused injury to the Plaintiffs? (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 4 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

          Question 3     Yes_____          No_____

4.    What is the total amount of damages that would fairly compensate Plaintiffs for this injury?

          Amount: _____

REDACTED VERSION – PUBLICLY FILED

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____        Jury Foreperson: _____

REDACTED VERSION – PUBLICLY FILED

**PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM**
**(SHERMAN ACT § 2 - MONOPOLIZATION)**

WE, THE JURY, unanimously find as follows:

1.    Do you find by a preponderance of the evidence that the ATP Tour, Inc. had monopoly power in a relevant market and that any Defendant(s) willfully maintained that power through exclusionary conduct without legitimate reasons for engaging in such conduct? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 2 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

        Question 1    Yes_____        No_____

2.    Do you find by a preponderance of the evidence that any Defendant(s)' actions caused injury to the Plaintiffs? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 3 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

        Question 2    Yes_____        No_____

3.    What is the total amount of damages that would fairly compensate Plaintiffs for this injury?

        Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____    Jury Foreperson: _____

DB02:6867895.1    066145.1001

REDACTED VERSION – PUBLICLY FILED

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
### (SHERMAN ACT § 2 - ATTEMPTED MONOPOLIZATION)

WE, THE JURY, unanimously find as follows:

1.     Do you find by a preponderance of the evidence that any or all of the Defendant(s) engaged in anticompetitive conduct? (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

                Question 1     Yes_____          No_____

2.     Do you find by a preponderance of the evidence that any or all of the Defendant(s) had an intent to achieve monopoly power in a relevant market and that there is a dangerous probability that the Defendants would achieve their goal of monopoly power in the relevant market?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 3 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

                Question 2     Yes_____          No_____

3.     Do you find by a preponderance of the evidence that any or all of the Defendant(s)' actions caused injury to the Plaintiffs. (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 4 below.  If "no," please sign the jury verdict form and return it to the U.S. Marshall.)

                Question 3     Yes_____          No_____

4.     What is the total amount of damages that would fairly compensate Plaintiffs for this injury?

REDACTED VERSION – PUBLICLY FILED

Amount: _____


**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____    Jury Foreperson: _____

**PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM**
**(SHERMAN ACT § 2 - CONSPIRACY TO MONOPOLIZE)**

WE, THE JURY, unanimously find as follows:

1.    Do you find by a preponderance of the evidence that any or all of the

Defendant(s) entered into an agreement or mutual understanding to obtain or maintain

monopoly power in a relevant market?  (A "yes" answer to this question is a finding for

Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 2

below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

    Question 1    Yes_____            No_____

2.    Do you find by a preponderance of the evidence that any or all of the

Defendant(s) knowingly became parties to that agreement or mutual understanding;

intended that the parties to the agreement or mutual understanding would obtain or

maintain monopoly power in a relevant market; and took an overt act in furtherance of that

agreement or mutual understanding?  (A "yes" answer to this question is a finding for

Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 3

below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

    Question 2    Yes_____            No_____

3.    Do you find by a preponderance of the evidence that any or all of the

Defendant(s)' actions caused injury to the Plaintiffs? (A "yes" answer to this question is a

finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to

question 4 below.  If "no," please sign the jury verdict form and return it to the U.S.

Marshall.)

    Question 3    Yes_____            No_____

4.    What is the total amount of damages that would fairly compensate Plaintiffs

6

for this injury?

        Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____    Jury Foreperson: _____

**PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
(BREACH OF FIDUCIARY DUTY OF LOYALTY – ETIENNE DE VILLIERS)**

WE, THE JURY, unanimously find as follows:

1.      Do you find by a preponderance of the evidence that Etienne de Villiers used his position of trust and confidence to further his private interests or to violate positive law?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Etienne de Villiers.  If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 1      Yes_____            No_____

2.      What is the total amount of damages that would fairly compensate Plaintiffs for this injury?

Amount:  _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____       Jury Foreperson: _____

REDACTED VERSION – PUBLICLY FILED

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
### (BREACH OF FIDUCIARY DUTY OF DUE CARE – ETIENNE DE VILLIERS)

WE, THE JURY, unanimously find as follows:

1.      Do you find by a preponderance of the evidence that Etienne de Villiers failed to use that amount of care which ordinarily careful and prudent persons would use in similar circumstances or failed to obtain and/or consider all material information reasonably available in making decisions as a member of the ATP Board of Directors?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Etienne de Villiers. If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 1     Yes_____          No_____

2.      Do you find by a preponderance of the evidence that Etienne de Villiers was recklessly indifferent to the membership of the ATP, deliberately disregarded the membership of the ATP, or otherwise committed actions which are outside the bounds of reason in making decisions as a member of the ATP Board of Directors?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Etienne de Villiers.  If "yes" proceed to question 3 below.  If "no", please sign this jury verdict form and return it to the U.S. Marshall).

Question 2     Yes_____          No_____

3.      Do you find by a preponderance of the evidence that Etienne de Villiers' actions caused injury to the Plaintiffs? (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Etienne de Villiers.  If "yes" proceed to question 4 below.  If "no", please sign the jury verdict form and return it to the U.S. Marshall).

Question 3     Yes_____          No_____

9

4.     What is the total amount of damages that would fairly compensate Plaintiffs

for this injury?

Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____     Jury Foreperson: _____

10

REDACTED VERSION – PUBLICLY FILED

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
### (BREACH OF FIDUCIARY DUTY OF GOOD FAITH – ETIENNE DE VILLIERS)

WE, THE JURY, unanimously find as follows:

1.     Do you find by a preponderance of the evidence that Etienne de Villiers acted with an actual intent to do harm, with a conscious disregard for his responsibilities as an ATP Board member, or with the intent to violate applicable positive law?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Etienne de Villiers.  If "yes" proceed to question 2 below.  If "no", please sign this jury verdict form and return it to the U.S. Marshall).

Question 1     Yes_____          No_____

2.     Do you find by a preponderance of the evidence that Etienne de Villiers' actions caused injury to the Plaintiffs? (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Etienne de Villiers.  If "yes" proceed to question 3 below.  If "no", please sign the jury verdict form and return it to the U.S. Marshall).

Question 2     Yes_____          No_____

3.     What is the total amount of damages that would fairly compensate Plaintiffs for this injury?

Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____          Jury Foreperson: _____

REDACTED VERSION – PUBLICLY FILED

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
### (BREACH OF FIDUCIARY DUTY OF LOYALTY – CHARLES PASARELL)

WE, THE JURY, unanimously find as follows:

1.    Do you find by a preponderance of the evidence that Charles Pasarell used his position of trust and confidence to further his private interests or to violate positive law?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Charles Pasarell.  If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 1    Yes_____          No_____

2.    What is the total amount of damages that would fairly compensate Plaintiffs for this injury?

Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____     Jury Foreperson: _____

REDACTED VERSION – PUBLICLY FILED

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
## (BREACH OF FIDUCIARY DUTY OF DUE CARE – CHARLES PASARELL)

WE, THE JURY, unanimously find as follows:

1.     Do you find by a preponderance of the evidence that Charles Pasarell failed to

use that amount of care which ordinarily careful and prudent persons would use in similar

circumstances or failed to obtain and/or consider all material information reasonably available in

making decisions as a member of the ATP Board of Directors?  (A "yes" answer to this

question is a finding for Plaintiffs.  A "no" answer is a finding for Charles Pasarell.  If

"yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it

to the U.S. Marshall.)

Question 1     Yes_____          No_____

2.     Do you find by a preponderance of the evidence that Charles Pasarell was

recklessly indifferent to the membership of the ATP, deliberately disregarded the membership of

the ATP, or otherwise committed actions which are outside the bounds of reason in making

decisions as a member of the ATP Board of Directors?  (A "yes" answer to this question is a

finding for Plaintiffs.  A "no" answer is a finding for Charles Pasarell.  If "yes" proceed to

question 3 below.  If "no", please sign this jury verdict form and return it to the U.S.

Marshall).

Question 2     Yes_____          No_____

3.     Do you find by a preponderance of the evidence that Charles Pasarell's

actions caused injury to the Plaintiffs? (A "yes" answer to this question is a finding for

Plaintiffs.  A "no" answer is a finding for Charles Pasarell.  If "yes" proceed to question 4

below.  If "no", please sign the jury verdict form and return it to the U.S. Marshall).

Question 3     Yes_____          No_____

13

4.      What is the total amount of damages that would fairly compensate Plaintiffs

for this injury?

Amount:  _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____        Jury Foreperson: _____

REDACTED VERSION – PUBLICLY FILED

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
## (BREACH OF FIDUCIARY DUTY OF GOOD FAITH – CHARLES PASARELL)

WE, THE JURY, unanimously find as follows:

1.      Do you find by a preponderance of the evidence that Charles Pasarell acted with an actual intent to do harm, with a conscious disregard for his responsibilities as an ATP Board member, or with the intent to violate applicable positive law?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Charles Pasarell.  If "yes" proceed to question 2 below.  If "no", please sign this jury verdict form and return it to the U.S. Marshall).

                Question 1     Yes_____          No_____

2.      Do you find by a preponderance of the evidence that Charles Pasarell's actions caused injury to the Plaintiffs? (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Charles Pasarell.  If "yes" proceed to question 3 below.  If "no", please sign the jury verdict form and return it to the U.S. Marshall).

                Question 2     Yes_____          No_____

3.      What is the total amount of damages that would fairly compensate Plaintiffs for this injury?

                Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____        Jury Foreperson: _____

REDACTED VERSION – PUBLICLY FILED

### PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
### (BREACH OF FIDUCIARY DUTY OF LOYALTY – GRAHAM PEARCE)

WE, THE JURY, unanimously find as follows:

1.     Do you find by a preponderance of the evidence that Graham Pearce used his

position of trust and confidence to further his private interests or to violate positive law?  (A

"yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for

Graham Pearce.  If "yes," proceed to question 2 below.  If "no," please sign this jury

verdict form and return it to the U.S. Marshall.)

              Question 1     Yes_____              No_____

2.     What is the total amount of damages that would fairly compensate Plaintiffs

for this injury?

              Amount:  _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN
THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS
READY TO RENDER A VERDICT.**

Date: _____     Jury Foreperson: _____

16

REDACTED VERSION – PUBLICLY FILED

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
### (BREACH OF FIDUCIARY DUTY OF DUE CARE – GRAHAM PEARCE)

WE, THE JURY, unanimously find as follows:

1.     Do you find by a preponderance of the evidence that Graham Pearce failed to use that amount of care which ordinarily careful and prudent persons would use in similar circumstances or failed to obtain and/or consider all material information reasonably available in making decisions as a member of the ATP Board of Directors?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Graham Pearce.  If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 1     Yes_____          No_____

2.     Do you find by a preponderance of the evidence that Graham Pearce was recklessly indifferent to the membership of the ATP, deliberately disregarded the membership of the ATP, or otherwise committed actions which are outside the bounds of reason in making decisions as a member of the ATP Board of Directors?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Graham Pearce.  If "yes" proceed to question 3 below.  If "no", please sign this jury verdict form and return it to the U.S. Marshall).

Question 2     Yes_____          No_____

3.     Do you find by a preponderance of the evidence that Graham Pearce's actions caused injury to the Plaintiffs? (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Graham Pearce.  If "yes" proceed to question 4 below.  If "no," please sign the jury verdict form and return it to the U.S. Marshall).

Question 3     Yes_____          No_____

17

REDACTED VERSION – PUBLICLY FILED

4.     What is the total amount of damages that would fairly compensate Plaintiffs for this injury?

Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____     Jury Foreperson: _____

18

### PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
### (BREACH OF FIDUCIARY DUTY OF GOOD FAITH – GRAHAM PEARCE)

WE, THE JURY, unanimously find as follows:

1.    Do you find by a preponderance of the evidence that Graham Pearce acted

with an actual intent to do harm, with a conscious disregard for his responsibilities as an ATP

Board member, or with the intent to violate applicable positive law? (A "yes" answer to this

question is a finding for Plaintiffs.  A "no" answer is a finding for Graham Pearce.  If "yes"

proceed to question 2 below.  If "no", please sign this jury verdict form and return it to the

U.S. Marshall).

    Question 1    Yes_____        No_____

2.    Do you find by a preponderance of the evidence that Graham Pearce's

actions caused injury to the Plaintiffs? (A "yes" answer to this question is a finding for

Plaintiffs.  A "no" answer is a finding for Graham Pearce.  If "yes" proceed to question 3

below.  If "no", please sign the jury verdict form and return it to the U.S. Marshall).

    Question 2    Yes_____        No_____

3.    What is the total amount of damages that would fairly compensate Plaintiffs

for this injury?

    Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN
THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS
READY TO RENDER A VERDICT.**

Date: _____    Jury Foreperson: _____

REDACTED VERSION – PUBLICLY FILED

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
### (BREACH OF FIDUCIARY DUTY OF LOYALTY – JACCO ELTINGH)

WE, THE JURY, unanimously find as follows:

1.    Do you find by a preponderance of the evidence that Jacco Eltingh used his position of trust and confidence to further his private interests or to violate positive law? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Jacco Eltingh. If "yes," proceed to question 2 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 1    Yes_____            No_____

2.    What is the total amount of damages that would fairly compensate Plaintiffs for this injury?

Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____    Jury Foreperson: _____

DB02:6867895.1                                                                                                    066145.1001

REDACTED VERSION – PUBLICLY FILED

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
## (BREACH OF FIDUCIARY DUTY OF DUE CARE – JACCO ELTINGH)

WE, THE JURY, unanimously find as follows:

1.      Do you find by a preponderance of the evidence that Jacco Eltingh failed to use that amount of care which ordinarily careful and prudent persons would use in similar circumstances or failed to obtain and/or consider all material information reasonably available in making decisions as a member of the ATP Board of Directors?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Jacco Eltingh.  If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 1     Yes_____          No_____

2.      Do you find by a preponderance of the evidence that Jacco Eltingh was recklessly indifferent to the membership of the ATP, deliberately disregarded the membership of the ATP, or otherwise committed actions which are outside the bounds of reason in making decisions as a member of the ATP Board of Directors?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Jacco Eltingh.  If "yes" proceed to question 3 below.  If "no", please sign this jury verdict form and return it to the U.S. Marshall).

Question 2     Yes_____          No_____

3.      Do you find by a preponderance of the evidence that Jacco Eltingh's actions caused injury to the Plaintiffs? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Jacco Eltingh.  If "yes" proceed to question 4 below.  If "no", please sign the jury verdict form and return it to the U.S. Marshall).

Question 3     Yes_____          No_____

066145.1001

4.      What is the total amount of damages that would fairly compensate Plaintiffs

for this injury?

Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN
THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS
READY TO RENDER A VERDICT.**

Date: _____     Jury Foreperson: _____

066145.1001

REDACTED VERSION – PUBLICLY FILED

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
## (BREACH OF FIDUCIARY DUTY OF GOOD FAITH – JACCO ELTINGH)

WE, THE JURY, unanimously find as follows:

1.      Do you find by a preponderance of the evidence that Jacco Eltingh acted with an actual intent to do harm, with a conscious disregard for his responsibilities as an ATP Board member, or with the intent to violate applicable positive law?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Jacco Eltingh.  If "yes" proceed to question 2 below.  If "no", please sign this jury verdict form and return it to the U.S. Marshall).

                Question 1      Yes_____          No_____

2.      Do you find by a preponderance of the evidence that Jacco Eltingh actions caused injury to the Plaintiffs? (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Jacco Eltingh.  If "yes" proceed to question 3 below.  If "no", please sign the jury verdict form and return it to the U.S. Marshall).

                Question 2      Yes_____          No_____

3.      What is the total amount of damages that would fairly compensate Plaintiffs for this injury?

                Amount:  _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____          Jury Foreperson: _____

23

REDACTED VERSION – PUBLICLY FILED

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
### (BREACH OF FIDUCIARY DUTY OF LOYALTY – PERRY ROGERS)

WE, THE JURY, unanimously find as follows:

1.      Do you find by a preponderance of the evidence that Perry Rogers used his position of trust and confidence to further his private interests or to violate positive law?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Perry Rogers.  If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

                Question 1     Yes_____          No_____

2.      What is the total amount of damages that would fairly compensate Plaintiffs for this injury?

                Amount:  _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____     Jury Foreperson: _____

REDACTED VERSION – PUBLICLY FILED

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
### (BREACH OF FIDUCIARY DUTY OF DUE CARE – PERRY ROGERS)

WE, THE JURY, unanimously find as follows:

1.     Do you find by a preponderance of the evidence that Perry Rogers failed to use that amount of care which ordinarily careful and prudent persons would use in similar circumstances or failed to obtain and/or consider all material information reasonably available in making decisions as a member of the ATP Board of Directors?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Perry Rogers.  If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 1     Yes_____          No_____

2.     Do you find by a preponderance of the evidence that Perry Rogers was recklessly indifferent to the membership of the ATP, deliberately disregarded the membership of the ATP, or otherwise committed actions which are outside the bounds of reason in making decisions as a member of the ATP Board of Directors?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Perry Rogers.  If "yes" proceed to question 3 below.  If "no", please sign this jury verdict form and return it to the U.S. Marshall).

Question 2     Yes_____          No_____

3.     Do you find by a preponderance of the evidence that Perry Rogers' actions caused injury to the Plaintiffs? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Perry Rogers.  If "yes" proceed to question 4 below.  If "no", please sign the jury verdict form and return it to the U.S. Marshall.)

Question 3     Yes_____          No_____

DB02:6867895.1                                                                                              066145.1001

REDACTED VERSION – PUBLICLY FILED

4.     What is the total amount of damages that would fairly compensate Plaintiffs for this injury?

Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____     Jury Foreperson: _____

26

REDACTED VERSION – PUBLICLY FILED

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
### (BREACH OF FIDUCIARY DUTY OF GOOD FAITH – PERRY ROGERS)

WE, THE JURY, unanimously find as follows:

1. Do you find by a preponderance of the evidence that Perry Rogers acted with an actual intent to do harm, with a conscious disregard for his responsibilities as an ATP Board member, or with the intent to violate applicable positive law?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Perry Rogers.  If "yes" proceed to question 2 below.  If "no", please sign this jury verdict form and return it to the U.S. Marshall).

   Question 1 Yes_____   No_____

2. Do you find by a preponderance of the evidence that Perry Rogers' actions caused injury to the Plaintiffs? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Perry Rogers.  If "yes" proceed to question 3 below.  If "no", please sign the jury verdict form and return it to the U.S. Marshall).

   Question 2 Yes_____   No_____

3. What is the total amount of damages that would fairly compensate Plaintiffs for this injury?

   Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____  Jury Foreperson: _____

DB02:6867895.1   066145.1001

REDACTED VERSION – PUBLICLY FILED

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
### (BREACH OF FIDUCIARY DUTY OF LOYALTY – IGGY JOVANOVIC)

WE, THE JURY, unanimously find as follows:

1.      Do you find by a preponderance of the evidence that Iggy Jovanovic used his position of trust and confidence to further his private interests or to violate positive law?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Iggy Jovanovic.  If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

> Question 1    Yes_____            No_____

2.      What is the total amount of damages that would fairly compensate Plaintiffs for this injury?

> Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____    Jury Foreperson: _____

28

REDACTED VERSION – PUBLICLY FILED

**PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
(BREACH OF FIDUCIARY DUTY OF DUE CARE – IGGY JOVANOVIC)**

WE, THE JURY, unanimously find as follows:

1.      Do you find by a preponderance of the evidence that Iggy Jovanovic failed to use that amount of care which ordinarily careful and prudent persons would use in similar circumstances or failed to obtain and/or consider all material information reasonably available in making decisions as a member of the ATP Board of Directors?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Iggy Jovanovic.  If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

                Question 1     Yes_____          No_____

2.      Do you find by a preponderance of the evidence that Iggy Jovanovic was recklessly indifferent to the membership of the ATP, deliberately disregarded the membership of the ATP, or otherwise committed actions which are outside the bounds of reason in making decisions as a member of the ATP Board of Directors?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Iggy Jovanovic.  If "yes" proceed to question 3 below.  If "no", please sign this jury verdict form and return it to the U.S. Marshall).

                Question 2     Yes_____          No_____

3.      Do you find by a preponderance of the evidence that Iggy Jovanovic's actions caused injury to the Plaintiffs? (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Iggy Jovanovic.  If "yes" proceed to question 4 below.  If "no", please sign the jury verdict form and return it to the U.S. Marshall).

                Question 3     Yes_____          No_____

29

4.      What is the total amount of damages that would fairly compensate Plaintiffs

for this injury?

            Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____      Jury Foreperson: _____

DB02:6867895.1                                                                        066145.1001

REDACTED VERSION – PUBLICLY FILED

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
### (BREACH OF FIDUCIARY DUTY OF GOOD FAITH – IGGY JOVANOVIC)

WE, THE JURY, unanimously find as follows:

1.      Do you find by a preponderance of the evidence that Iggy Jovanovic acted with an actual intent to do harm, with a conscious disregard for his responsibilities as an ATP Board member, or with the intent to violate applicable positive law?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Iggy Jovanovic.  If "yes" proceed to question 2 below.  If "no", please sign this jury verdict form and return it to the U.S. Marshall).

        Question 1     Yes_____          No_____

2.      Do you find by a preponderance of the evidence that Iggy Jovanovic's actions caused injury to the Plaintiffs? (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Iggy Jovanovic.  If "yes" proceed to question 3 below.  If "no", please sign the jury verdict form and return it to the U.S. Marshall).

        Question 2     Yes_____          No_____

3.      What is the total amount of damages that would fairly compensate Plaintiffs for this injury?

        Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____     Jury Foreperson: _____

DB02:6867895.1                                                          066145.1001

REDACTED VERSION – PUBLICLY FILED

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
## (TORTIOUS INTERFERENCE WITH CONTRACT)

1.      Do you find by a preponderance of the evidence that any contract(s) existed

between the Plaintiffs and third party(ies).  (A "yes" answer to this question is a finding for

Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes" proceed to question 2

below.  If "no", please sign this jury verdict form and return it to the U.S. Marshall).

Question 1    Yes_____            No_____

2.      Do you find by a preponderance of the evidence that Defendants knew about

Plaintiffs' contract(s) with any third party(ies) and committed intentional acts that were

significant factors in causing a breach of the contracts without justification. (A "yes" answer to

this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If

"yes" proceed to question 3 below.  If "no", please sign the jury verdict form and return it

to the U.S. Marshall).

Question 2    Yes_____            No_____

3.      Do you find by a preponderance of the evidence that the Defendants' actions

caused injury to the Plaintiffs. (A "yes" answer to this question is a finding for Plaintiffs.

A "no" answer is a finding for Defendants.  If "yes" proceed to question 4below.  If "no",

please sign the jury verdict form and return it to the U.S. Marshall).

Question 3    Yes_____            No_____

4.      What is the total amount of damages that would fairly compensate Plaintiffs

for this injury?

Amount: _____

DB02:6867895.1                                                                    066145.1001

REDACTED VERSION – PUBLICLY FILED

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____     Jury Foreperson: _____

REDACTED VERSION – PUBLICLY FILED

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
### (TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS)

1.    Do you find by a preponderance of the evidence that a reasonable probability of business opportunities existed between the Plaintiffs and any third party(ies).  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes" proceed to question 2 below.  If "no", please sign this jury verdict form and return it to the U.S. Marshall).

        Question 1    Yes_____        No_____

2.    Do you find by a preponderance of the evidence that Defendants intentionally interfered this/these business opportunity(ies).  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes" proceed to question 3 below.  If "no", please sign the jury verdict form and return it to the U.S. Marshall).

        Question 2    Yes_____        No_____

3.    Do you find by a preponderance of the evidence that the Defendants' actions caused injury to the Plaintiffs.  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes" proceed to question 4 below.  If "no", please sign the jury verdict form and return it to the U.S. Marshall).

        Question 3    Yes_____        No_____

4.    What is the total amount of damages that would fairly compensate Plaintiffs for this injury?

        Amount: _____

        066145.1001

REDACTED VERSION – PUBLICLY FILED

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____          Jury Foreperson: _____

35

REDACTED VERSION – PUBLICLY FILED

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM
### (CONVERSION)

1.     Do you find by a preponderance of the evidence that Plaintiffs had property rights in the Hamburg Membership. (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes" proceed to question 2 below. If "no", please sign this jury verdict form and return it to the U.S. Marshall).

     Question 1   Yes_____       No_____

2.     Do you find by a preponderance of the evidence that Defendant(s) have exercised dominion over any of Plaintiffs' property rights in a manner that was wrongful and in denial of or inconsistent with Plaintiffs' rights. (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes" proceed to question 3 below. If "no", please sign this jury verdict form and return it to the U.S. Marshall).

     Question 2   Yes_____       No_____

3.     Do you find by a preponderance of the evidence that the Defendant(s)' actions caused injury to the Plaintiffs. (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes" proceed to questions 4 and 5 below. If "no", please sign the jury verdict form and return it to the U.S. Marshall).

     Question 3   Yes_____       No_____

4.     What is the total amount of damages that would fairly compensate Plaintiffs for this injury?

     Amount: _____

5.     What is the total amount of punitive damages that should be assessed?

     Amount: _____

REDACTED VERSION – PUBLICLY FILED

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____     Jury Foreperson: _____

INDS02 HCOHEN 970543v2

DB02:6867895.1                                                                          066145.1001

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 8(b)(2)

REDACTED VERSION – PUBLICLY FILED

## EXHIBIT 8(b)(2) TO FINAL PRETRIAL ORDER

## DEFENDANTS' PROPOSED SPECIAL VERDICT FORM (SHERMAN ACT §1)

WE, THE JURY, unanimously find as follows:

1.    Have Plaintiffs proven by a preponderance of the evidence that ATP Tour, Inc. and its member tournaments conduct their business affairs in such a manner as to constitute, in effect, separate business entities or enterprises?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 1    Yes_____            No_____

2.    Have Plaintiffs proven by a preponderance of the evidence that any Defendant(s) entered into contract(s), combination(s) or conspiracy(ies) with any separate entity or entities?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 3 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 2    Yes_____            No_____

If you answered "Yes," please specify to which Defendant(s) this answer applies:_____

3.    Have Plaintiffs proven by a preponderance of the evidence the existence of a relevant product market within a relevant geographic market?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 4 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 3    Yes_____          No_____

4.      Have Plaintiffs proven by a preponderance of the evidence that any contract, combination or conspiracy that you found in question 2 had a harmful effect on competition in the relevant product and geographic market(s)?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 5 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 4    Yes_____          No_____

If you answered "Yes," please specify to which Defendant(s) this answer

applies, and for each Defendant listed, the associated relevant product

market(s):_____

5.      Do you find by a preponderance of the evidence that any contract, combination or conspiracy for which you answered "Yes" to question 4 had procompetitive benefits?  (A "yes" answer to this question is a finding for Defendants.  A "no" answer is a finding for Plaintiffs.  If "yes," proceed to question 6 below.  If "no," proceed to question 8 below.)

Question 5    Yes_____          No_____

6.      Do you find by a preponderance of the evidence that any contract, combination or conspiracy for which you answered "Yes" to question 5 was reasonably necessary to achieve the procompetitive benefits you found?  (A "yes" answer to this question is a finding for Defendants.  A "no" answer is a finding for Plaintiffs.  If "yes," proceed to question 7 below.  If "no," proceed to question 8 below.)

Question 6    Yes_____          No_____

2

7.    Have Plaintiffs proven by a preponderance of the evidence that the harmful effect on competition of any contract, combination or conspiracy for which you answered "Yes" to question 6 substantially outweighs the procompetitive benefits you found?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 8 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 7    Yes_____         No_____

If you answered "Yes," please specify to which Defendant(s) this answer applies, and for each Defendant listed, the associated relevant product market(s):_____

8.    Do you find by a preponderance of the evidence that the contract(s), combination(s) or conspiracy(ies) Defendant(s) entered was or were a material cause of any injury to the Plaintiffs in their business or property? (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 9 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 8    Yes_____         No_____

9.    For any injury you found in response to question 8, do you find by a preponderance of the evidence that any such injury to Plaintiffs was caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 10 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

3

Question 9     Yes_____          No_____

10.     For any injury for which you answered "Yes" to Question 9, do you find by a preponderance of the evidence that Plaintiffs took all reasonable steps available to minimize their losses?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 11 below and do not answer question 12.   If "no," please proceed to question 12 below and do not answer question 11.)

Question 10   Yes_____          No_____

11.     For any injury for which you answered "Yes" to question 10, what is the total amount of damages that would fairly compensate Plaintiffs for this injury based on the evidence available to you?  Write your answer in the line labeled "Amount" below.

12.     For any injury for which you answered "No" to question 10, what is the total amount of damages that would fairly compensate Plaintiffs for this injury if they had taken all reasonable steps to mitigate their damages?  Write your answer in the line labeled "Amount" below.

Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____          Jury Foreperson: _____

DB02:6867540.1                                                                                    066145.1001

## DEFENDANTS' PROPOSED SPECIAL VERDICT FORM
### (SHERMAN ACT §2 - MONOPOLIZATION)

WE, THE JURY, unanimously find as follows:

1.      Have Plaintiffs proven by a preponderance of the evidence the existence of any relevant product market(s) within any relevant geographic market(s)?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

            Question 1    Yes_____          No_____

2.      Have Plaintiffs proven by a preponderance of the evidence that ATP Tour, Inc. had monopoly power in any market for which you answered "Yes" to Question 1?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 3 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

            Question 2    Yes_____          No_____

If you answered "Yes," please specify to which relevant product market(s) this answer applies, and for each relevant product market please list the associated relevant geographic market:_____

3.      For each relevant product market you listed in your answer to question 2, have Plaintiffs proven by a preponderance of the evidence that ATP Tour, Inc., willfully acquired or maintained monopoly power through exclusionary conduct without legitimate reasons for engaging in such conduct?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 4 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 3    Yes_____         No_____

If you answered "Yes," please specify to which relevant product market your

answer applies:_____

4.    Have Plaintiffs proven by a preponderance of the evidence that the conduct

for which you answered "Yes" to question 3 caused injury to the Plaintiffs in their business

or property?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is

a finding for Defendants.  If "yes," proceed to question 5 below.  If "no," please sign this

jury verdict form and return it to the U.S. Marshall.)

Question 4    Yes_____         No_____

5.    For any injury you found in response to question 4, do you find by a

preponderance of the evidence that any such injury to Plaintiffs was caused by a reduction

in competition, acts that would lead to a reduction in competition, or acts that would otherwise

harm consumers?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no"

answer is a finding for Defendants.  If "yes," proceed to question 6 below.  If "no," please

sign this jury verdict form and return it to the U.S. Marshall.)

Question 5    Yes_____         No_____

6.    For any injury for which you answered "Yes" to question 5, do you find by a

preponderance of the evidence that Plaintiffs took all reasonable steps available to

minimize their losses?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no"

answer is a finding for Defendants.  If "yes," proceed to question 7 below and do not

answer question 8.  If "no," please proceed to question 8 below and do not answer question

7.)

Question 6    Yes_____         No_____

6

7.      For any injury for which you answered "Yes" to question 6, what is the total amount of damages that would fairly compensate Plaintiffs for this injury based on the evidence available to you?  Write your answer in the line labeled "Amount" below.

8.      For any injury for which you answered "No" to question 6, what is the total amount of damages that would fairly compensate Plaintiffs for this injury if they had taken all reasonable steps to mitigate their damages?  Write your answer in the line labeled "Amount" below.

Amount: _____


**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____     Jury Foreperson: _____

### DEFENDANTS' PROPOSED SPECIAL VERDICT FORM
### (SHERMAN ACT §2 - ATTEMPTED MONOPOLIZATION)

WE, THE JURY, unanimously find as follows:

1.    Have Plaintiffs proven by a preponderance of the evidence the existence of a relevant product market within a relevant geographic market?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 1    Yes_____            No_____

2.    Have Plaintiffs proven by a preponderance of the evidence that any Defendant(s) engaged in anticompetitive conduct with an intent to achieve monopoly power in a relevant product market within a relevant geographic market for which you answered "Yes" to Question 1?  (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants.  If "yes," proceed to question 3 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 2    Yes_____            No_____

If you answered "Yes," please specify to which Defendant(s) this answer

applies:_____

3.    Have Plaintiffs proven by a preponderance of the evidence that there is a dangerous probability that Defendants for whom you answered "Yes" to question 2 would achieve their goal of monopoly power in any relevant product market?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 4 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

8

Question 3    Yes_____           No_____

If you answered "Yes," please specify to which Defendant(s) this answer

applies and, for each Defendant listed, the associated relevant product

market(s):_____

4.    Have Plaintiffs proven by a preponderance of the evidence that the actions of

any Defendant(s) for whom you answered "Yes" to question 3 caused injury to the

Plaintiffs in their business or property?  (A "yes" answer to this question is a finding for

Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 5

below.  If "no," please sign the jury verdict form and return it to the U.S. Marshall.)

Question 4    Yes_____           No_____

5.    For any injury you found in response to question 4, do you find by a

preponderance of the evidence that any such injury to Plaintiffs was caused by  a reduction

in competition, acts that would lead to a reduction in competition, or acts that would otherwise

harm consumers?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no"

answer is a finding for Defendants.  If "yes," proceed to question 6 below.  If "no," please

sign this jury verdict form and return it to the U.S. Marshall.)

Question 5    Yes_____           No_____

6.    For any injury for which you answered "Yes" to question 5, do you find by a

preponderance of the evidence that Plaintiffs took all reasonable steps available to

minimize their losses? (A "yes" answer to this question is a finding for Plaintiffs.  A "no"

answer is a finding for Defendants.  If "yes," proceed to question 7 below and do not

answer question 8.  If "no," please proceed to question 8 below and do not answer question

7.)

9

Question 6    Yes_____          No_____

7.    For any injury for which you answered "Yes" to question 6, what is the total amount of damages that would fairly compensate Plaintiffs for this injury based on the evidence available to you?  Write your answer in the line labeled "Amount" below.

8.    For any injury for which you answered "No" to question 6, what is the total amount of damages that would fairly compensate Plaintiffs for this injury if they had taken all reasonable steps to mitigate their damages?  Write your answer in the line labeled "Amount" below.

Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____    Jury Foreperson: _____

DB02:6867540.1                                                    066145.1001

## DEFENDANTS' PROPOSED SPECIAL VERDICT FORM
## (SHERMAN ACT §2 - CONSPIRACY TO MONOPOLIZE)

WE, THE JURY, unanimously find as follows:

1.    Have Plaintiffs proven by a preponderance of the evidence the existence of a relevant product market within a relevant geographic market?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 1    Yes_____         No_____

2.    Have Plaintiffs proven by a preponderance of the evidence that any Defendant(s) entered into an agreement or mutual understanding to obtain or maintain monopoly power in a relevant market within a relevant geographic market?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 3 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 2    Yes_____         No_____

If you answered "Yes," please specify to which Defendant(s) this answer applies:_____

3.    Have Plaintiffs proven by a preponderance of the evidence that any Defendant(s) for whom you answered "Yes" to question 2 knowingly became parties to that agreement or mutual understanding?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 4 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 3    Yes_____         No_____

11

If you answered "Yes," please specify to which Defendant(s) this answer applies:_____

4.     Have Plaintiffs proven by a preponderance of the evidence that any Defendant(s) for whom you answered "Yes" for question 3 intended that the parties to the agreement or mutual understanding would obtain or maintain monopoly power in any relevant product market within a relevant geographic market you specified in your answer to question 2? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 5 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 4     Yes_____          No_____

If you answered "Yes," please specify to which Defendant(s) this answer applies:_____

5.     Have Plaintiffs proven by a preponderance of the evidence that any or all of the Defendant(s) for whom you answered "Yes" to question 4 took an overt act in furtherance of that agreement or mutual understanding? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 6 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 5     Yes_____          No_____

If you answered "Yes," please specify to which Defendant(s) this answer applies, and for each Defendant listed, the associated relevant product market(s):_____

6.     Do you find by a preponderance of the evidence that the anticompetitive

12

actions of any Defendant(s) for whom you answered "Yes" to Question 5 caused injury to the Plaintiffs in their business or property? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 7 below. If "no," please sign the jury verdict form and return it to the U.S. Marshall.)

Question 6    Yes_____         No_____

7.    For any injury you found in response to question 6, do you find by a preponderance of the evidence that any such injury to Plaintiffs was caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 8 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 7    Yes_____         No_____

8.    For any injury for which you answered "Yes" to question 7, do you find by a preponderance of the evidence that Plaintiffs took all reasonable steps available to minimize their losses? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 9 below and do not answer question 10. If "no," please proceed to question 10 below and do not answer question 9.)

Question 8    Yes_____         No_____

9.    For any injury for which you answered "Yes" to question 8, what is the total amount of damages that would fairly compensate Plaintiffs for this injury based on the evidence available to you? Write your answer in the line labeled "Amount" below.

10.    For any injury for which you answered "No" to question 8, what is the total

13

amount of damages that would fairly compensate Plaintiffs for this injury if they had taken

all reasonable steps to mitigate their damages?   Write your answer in the line labeled

"Amount" below.

Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____          Jury Foreperson: _____

## DEFENDANTS' PROPOSED SPECIAL VERDICT FORM
## (BREACH OF FIDUCIARY DUTY OF DUE CARE – DIRECTOR DEFENDANTS)

WE, THE JURY, unanimously find as follows:

1.     Have Plaintiffs proven by a preponderance of the evidence that Etienne de Villiers, Charles Pasarell, Graham Pearce, Jacco Eltingh, Perry Rogers, or Iggy Jovanovic ("Director Defendants") failed to use that amount of care which ordinarily careful and prudent persons would use in a like position under similar circumstances or failed to obtain and/or consider the material information reasonably available in making decisions as a member of the ATP Board of Directors?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for the Director Defendant(s).  If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 1     Yes_____          No_____

If you answered "Yes," please specify to which Director Defendant(s) this answer applies:_____

2.     Have Plaintiffs proven by a preponderance of the evidence that any Director Defendant(s) for whom you answered "Yes" to Question 1 was or were recklessly indifferent to the membership of the ATP, deliberately disregarded the membership of the ATP, or otherwise committed actions which are outside the bounds of reason in making decisions as a member of the ATP Board of Directors?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for the Director Defendants.  If "yes" proceed to question 3 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall).

Question 2     Yes_____          No_____

If you answered "Yes," please specify to which Director Defendant(s) this

15

answer applies:_____

3.    Have the Director Defendants proven by a preponderance of the evidence that any action(s) of any Director Defendants for whom you answered "Yes" to question 2 was or were entirely fair to ATP Tour, Inc. and its membership?  (A "yes" answer to this question is a finding for the Director Defendants.  A "no" answer is a finding for Plaintiffs. If "yes," please sign this jury verdict form and return it to the U.S. Marshall.  If "no," please proceed to question 4 below.)

    Question 3  Yes_____    No_____

    If you answered "No," please specify to which Director Defendant(s) this answer applies:_____

4.    Have Plaintiffs proven by a preponderance of the evidence that any action(s) of any Director Defendants for whom you answered "No" to question 3 was or were the cause-in-fact of any injury to Plaintiffs?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for the Director Defendant(s).  If "yes," proceed to question 5 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

    Question 4  Yes_____    No_____

    If you answered "Yes," please specify to which Director Defendant(s) this answer applies:_____

5.    Have Plaintiffs proven by a preponderance of the evidence that any action(s) for which you answered "Yes" to question 4 was or were the legal cause of any injury to Plaintiffs?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for the Director Defendant(s).  If "yes," proceed to question 6 below.  If "no,"

16

please sign this jury verdict form and return it to the U.S. Marshall.)

Question 5    Yes_____         No_____

If you answered "Yes," please specify to which Director Defendant(s) this

answer applies:_____

6.    For any injury for which you answered "Yes" to question 5, do you find by a

preponderance of the evidence that Plaintiffs agreed to or concurred with the action(s) with

knowledge of the facts relating to the alleged breach of fiduciary duty of the Director

Defendant(s) in the action?  (A "yes" answer to this question is a finding for the Director

Defendant(s).  A "no" answer is a finding for Plaintiffs.  If "yes," please sign this jury verdict

form and return it to the U.S. Marshall.  If "no," proceed to question 7 below.)

Question 6    Yes_____         No_____

If you answered "No," please specify to which Director Defendant(s) this

answer applies:_____

7.    For any injury for which you answered "No" to question 6, do you find by a

preponderance of the evidence that Plaintiffs had full knowledge of their rights and the

material facts and either (1) remained inactive for a considerable time; or (2) freely did what

amounted to recognition of the complained-of act; or (3) acted in a manner inconsistent with

their subsequent repudiation, which led the Director Defendants to believe the act had been

approved?  (A "yes" answer to this question is a finding for the Director Defendant(s).  A "no"

answer is a finding for Plaintiffs.  If "yes," please sign this jury verdict form and return it to

the U.S. Marshall.  If "no," proceed to question 8 below.)

Question 7    Yes_____         No_____

If you answered "No," please specify to which Director Defendant(s) this

17

answer applies:_____

8.     For any injury for which you answered "No" to question 7, do you find by clear and convincing evidence that Plaintiffs took any action(s) on which the Director Defendant(s) reasonably relied in changing their position or acting to their own detriment? (A "yes" answer to this question is a finding for the Director Defendant(s). A "no" answer is a finding for Plaintiffs. If "yes," please sign this jury verdict form and return it to the U.S. Marshall. If "no," proceed to question 9 below.)

Question 8     Yes_____          No_____

If you answered "No," please specify to which Director Defendant(s) this answer applies:_____

9.     For any injury for which you answered "No" to question 8, do you find by a preponderance of the evidence that Plaintiffs took all reasonable steps available to minimize their losses? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 10 below and do not answer question 11. If "no," proceed to question 11 below and do not answer question 10.)

Question 9     Yes_____          No_____

10.     For any injury for which you answered "Yes" to question 9, what is the total amount of damages that would fairly compensate Plaintiffs for this injury based on the evidence available to you? Write your answer in the line labeled "Amount" below.

11.     For any injury for which you answered "No" to question 9, what is the total amount of damages that would fairly compensate Plaintiffs for this injury if they had taken all reasonable steps to mitigate their damages? Write your answer in the line labeled "Amount" below.

18

Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____      Jury Foreperson: _____

DB02:6867540.1                                                          066145.1001

## DEFENDANTS' PROPOSED SPECIAL VERDICT FORM
### (BREACH OF FIDUCIARY DUTY OF LOYALTY AND GOOD FAITH – DIRECTOR DEFENDANTS)

WE, THE JURY, unanimously find as follows:

**I.      Duty of Loyalty: "Interested Action"**

1.      Have Plaintiffs proven by a preponderance of the evidence that Etienne de Villiers, Charles Pasarell, Graham Pearce, Jacco Eltingh, Perry Rogers, or Iggy Jovanovic ("Director Defendants") used their position of trust and confidence to further their private interests at the expense of ATP Tour, Inc. through any "interested action(s)"? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for the Director Defendants. If "yes," complete Section I.A., beginning with question 2, and Section I.B., beginning with question 5. If "no," proceed to the Section II, beginning with question 8 below.)

Question 1      Yes_____          No_____

If you answered "Yes," please specify to which Director Defendant(s) this answer applies:_____

**I.A.    Self-Dealing Action(s)**

2.      Have Plaintiffs proven by a preponderance of the evidence for any action for which you answered "Yes" to question 1 that the interested Director Defendant(s) sat on both sides of the interested action(s)? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for the Director Defendants. If "yes," proceed to question 3 below. If no, proceed to Section I.B., beginning at question 5 below.)

Question 2      Yes_____          No_____

If you answered "Yes," please specify to which Director Defendant(s) this

20

June 2, 2008

answer applies:_____

3.    Have Plaintiffs proven by a preponderance of the evidence that any Director Defendant(s) for whom you answered "Yes" to question 2 failed to disclose his interest to the disinterested directors who approved the action(s)?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for the Director Defendants.  If "yes," proceed to Section I.B., beginning at question 5 below.  If "yes," you must also complete Section I.C. at question 7 below.  If "no," proceed to question 4 below.)

Question 3    Yes_____          No_____

If you answered "Yes," please specify to which Director Defendant(s) this answer applies:_____

4.    Have Plaintiffs proven by a preponderance of the evidence that any Director Defendant(s) for whom you answered "No" to question 3 dominated or otherwise controlled the disinterested directors who approved the action(s)?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for the Director Defendants.  Whether your answer is "yes" or "no," proceed to Section I.B., beginning at question 5 below.  If you answered "yes," however, you must also complete Section I.C. at question 7 below.)

Question 4    Yes_____          No_____

If you answered "Yes," please specify to which Director Defendant(s) this answer applies:_____

**I.B.    Other Interested Action(s)**

5.    Have Plaintiffs proven by a preponderance of the evidence that any Director Defendant(s) for whom you answered "Yes" to question 1 and "No" to question 2 had a

material interest in any action(s)? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for the Director Defendants. If "yes," proceed to question 6 below. If "no," proceed to Section II, beginning at question 8 below.)

> Question 5    Yes_____        No_____
>
> If you answered "Yes," please specify to which Director Defendant(s) this answer applies:_____

6.     Have Plaintiffs proven by a preponderance of the evidence that any Director Defendant(s) for whom you answered "Yes" to question 5 either (a) controlled or dominated the disinterested directors; or (b) failed to disclose his interest to the board <u>and</u> a reasonable board member would have regarded the existence of the ATP Director's material interest as a significant fact in the evaluation of the proposed action? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for the Director Defendants. If "yes," proceed to Section I.C. at question 7 below. If "no," proceed to Section II at question 8 below.)

> Question 6    Yes_____        No_____
>
> If you answered "Yes," please specify to which Director Defendant(s) this answer applies:_____

**I.C.    Entire Fairness**

7.     If you answered "Yes" to question 3, question 4 or question 6 above, have the Defendants proven by a preponderance of the evidence that any interested action(s) of any Director Defendant(s) was or were "entirely fair" to ATP and its membership as a whole? (A "no" answer to this question is a finding for the Plaintiffs. A "yes" answer is a finding for the Director Defendant(s). Whether you answer "yes" or "no," you must

22

proceed to Section II at question 8 below. If "no," you must also complete Section III

beginning at question 9 below.)

Question 7    Yes_____         No_____

If you answered "No," please specify to which Director Defendant(s) this

answer applies:_____

## II.    Duty of Loyalty: Violation of Positive Law

8.    Have Plaintiffs proven by a preponderance of the evidence that any Director

Defendant(s) in approving the adoption or implementation of the Brave New World did so

with the intent to cause ATP to violate applicable positive law? (A "yes" answer to this

question is a finding for Plaintiffs. A "no" answer is a finding for the Director

Defendant(s). If "yes," proceed to Section III beginning at question 9 below. If you

answered "no" to question 7 above, you must also proceed to Section III. If you answered

"yes" to question 7 and "no" to question 8, please sign this jury verdict form and return it

to the U.S. Marshall.)

Question 8    Yes_____         No_____

If you answered "Yes," please specify to which Director Defendant(s) this

answer applies:_____

## III.    Duty of Loyalty: Damages

9.    Have Plaintiffs proven by a preponderance of the evidence that any action(s)

for which you answered "No" to question 7 or "Yes" to question 8 was or were the cause-

in-fact of any injury to Plaintiffs? (A "yes" answer to this question is a finding for

Plaintiffs. A "no" answer is a finding for the Director Defendant(s). If you answered

"yes," proceed to question 10 below. If you answered "no," please sign this jury verdict

23

form and return it to the U.S. Marshall.)

       Question 9    Yes_____        No_____

       If you answered "Yes," please specify to which Director Defendant(s) this answer applies:_____

10.      Have Plaintiffs proven by a preponderance of the evidence that any action(s) for which you answered "Yes" to question 9 was or were the legal cause of any injury to Plaintiffs? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for the Director Defendant(s). If "yes," proceed to question 11 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

       Question 10    Yes_____        No_____

       If you answered "Yes," please specify to which Director Defendant(s) this answer applies:_____

11.      For any injury for which you answered "Yes" to question 10, do you find by a preponderance of the evidence that Plaintiffs agreed to or concurred with the action(s) with knowledge of the facts relating to the alleged breach of fiduciary duty of the Director Defendant(s) in the action? (A "yes" answer to this question is a finding for the Director Defendant(s). A "no" answer is a finding for Plaintiffs. If "yes," please sign this jury verdict form and return it to the U.S. Marshall. If "no," proceed to question 12 below.)

       Question 11    Yes_____        No_____

       If you answered "No," please specify to which Director Defendant(s) this answer applies:_____

12.      For any injury for which you answered "No" to question 11, do you find by a preponderance of the evidence that Plaintiffs had full knowledge of their rights and the

24

       

material facts and either (1) remained inactive for a considerable time; or (2) freely did what amounted to recognition of the complained-of act; or (3) acted in a manner inconsistent with their subsequent repudiation, which led the Director Defendants to believe the act had been approved? (A "yes" answer to this question is a finding for the Director Defendant(s). A "no" answer is a finding for Plaintiffs. If "yes," please sign this jury verdict form and return it to the U.S. Marshal. If "no," proceed to question 13 below.)

> Question 12   Yes_____          No_____
>
> If you answered "No," please specify to which Director Defendant(s) this answer applies:_____

13.    For any injury for which you answered "No" to question 12, do you find by clear and convincing evidence that Plaintiffs took any action(s) on which the Director Defendant(s) reasonably relied in changing their position or acting to their own detriment? (A "yes" answer to this question is a finding for the Director Defendant(s). A "no" answer is a finding for Plaintiffs. If "yes," please sign this jury verdict form and return it to the U.S. Marshal. If "no," proceed to question 14 below.)

> Question 13   Yes_____          No_____
>
> If you answered "No," please specify to which Director Defendant(s) this answer applies:_____

14.    For any injury for which you answered "Yes" to question 13, do you find by a preponderance of the evidence that Plaintiffs took all reasonable steps available to minimize their losses? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 15 below and do not answer question 16. If "no," please proceed to question 16 below and do not answer

25

June 2, 2008

question 15.)

        Question 14   Yes_____         No_____

15.     For any injury for which you answered "Yes" to question 14, what is the total amount of damages that would fairly compensate Plaintiffs for this injury based on the evidence available to you?  Write your answer in the line labeled "Amount" below.

16.     For any injury for which you answered "No" to question 14, what is the total amount of damages that would fairly compensate Plaintiffs for this injury if they had taken all reasonable steps to mitigate their damages?  Write your answer in the line labeled "Amount" below.

        Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____    Jury Foreperson: _____

26

## DEFENDANTS' PROPOSED SPECIAL VERDICT FORM
## (TORTIOUS INTERFERENCE WITH CONTRACT)

1.    Have Plaintiffs proven by a preponderance of the evidence that any contract(s) existed between the Plaintiffs and any third party(ies)? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes" proceed to question 2 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall).

Question 1    Yes_____         No_____

2.    Have Plaintiffs proven by a preponderance of the evidence that Defendants knew about Plaintiffs' contract(s) with any third party or parties? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes" proceed to question 3 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall).

Question 2    Yes_____         No_____

3.    Have Plaintiffs proven by a preponderance of the evidence that any contract(s) for which you answered "Yes" to question 2 were breached by any third party(ies)? (A "yes" answer to this question is a finding for Plaintiffs? A "no" answer is a finding for Defendants. If "yes" proceed to question 4 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall).

Question 3    Yes_____         No_____

4.    Have Plaintiffs proven by a preponderance of the evidence that Defendants committed intentional acts that were significant factors in causing any breaches for which you answered "Yes" to question 3? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes" proceed to question 5 below. If "no,"

27

please sign this jury verdict form and return it to the U.S. Marshall).

> Question 4     Yes_____          No_____

5.      Have Plaintiffs proven by a preponderance of the evidence that the conduct

for which you answered "Yes" to question 4 was improper or without justification?  (A "yes"

answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for

Defendants.  If "yes" proceed to question 6 below.  If "no," please sign the jury verdict

form and return it to the U.S. Marshall).

> Question 5     Yes_____          No_____

6.      Have Plaintiffs proven by a preponderance of the evidence that the conduct

for which you answered "Yes" to question 5 caused injury to the Plaintiffs?  (A "yes"

answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for

Defendants.  If "yes" proceed to question 7 below.  If "no," please sign the jury verdict

form and return it to the U.S. Marshall).

> Question 6     Yes_____          No_____

7.      For any injury for which you answered "Yes" to question 6, do you find by a

preponderance of the evidence that Plaintiffs took all reasonable steps available to

minimize their losses?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no"

answer is a finding for Defendants.  If "yes," proceed to question 8 below and do not

answer question 9.  If "no," please proceed to question 9 below and do not answer question

8.)

> Question 7     Yes_____          No_____

8.      For any injury for which you answered "Yes" to question 7, what is the total

amount of damages that would fairly compensate Plaintiffs for this injury based on the

066145.1001

evidence available to you?  Write your answer in the line labeled "Amount" below.

9.      For any injury for which you answered "No" to question 7, what is the total

amount of damages that would fairly compensate Plaintiffs for this injury if they had taken

all reasonable steps to mitigate their damages?  Write your answer in the line labeled

"Amount" below.

Amount: _____


**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN
THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS
READY TO RENDER A VERDICT.**

Date: _____        Jury Foreperson: _____

DB02:6867540.1                                           066145.1001

## DEFENDANTS' PROPOSED SPECIAL VERDICT FORM
## (TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS)

1.    Have Plaintiffs proven by a preponderance of the evidence that a valid business relationship or expectancy existed between the Plaintiffs and any third party or parties? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes" proceed to question 2 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall).

Question 1    Yes_____        No_____

2.    Have Plaintiffs proven by a preponderance of the evidence that Defendants knew of any valid business relationship or expectancy for which you answered "yes" to question 1? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes" proceed to question 3 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall).

Question 2    Yes_____        No_____

3.    Have Plaintiffs proven by a preponderance of the evidence that Defendants committed any intentional and wrongful act(s) that induced or caused a breach or termination of any relationship or expectancy for which you answered "Yes" to question 2? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes" proceed to question 4 below. If "no," please sign the jury verdict form and return it to the U.S. Marshall).

Question 3    Yes_____        No_____

4.    Have Plaintiffs proven by a preponderance of the evidence that the conduct for which you answered "Yes" to question 3 was improper or without justification? (A "yes"

30

answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes" proceed to question 5 below. If "no," please sign the jury verdict form and return it to the U.S. Marshall).

Question 4     Yes_____          No_____

5. Have Plaintiffs proven by a preponderance of the evidence that the conduct for which you answered "Yes" to question 4 caused injury to the Plaintiffs. (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes" proceed to question 6 below. If "no," please sign the jury verdict form and return it to the U.S. Marshall).

Question 5     Yes_____          No_____

6. For any injury for which you answered "Yes" to question 5, do you find by a preponderance of the evidence that Plaintiffs took all reasonable steps available to minimize their losses? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 7 below and do not answer question 8. If "no," please proceed to question 8 below and do not answer question 7.)

Question 6     Yes_____          No_____

7. For any injury for which you answered "Yes" to question 6, what is the total amount of damages that would fairly compensate Plaintiffs for this injury based on the evidence available to you? Write your answer in the line labeled "Amount" below.

8. For any injury for which you answered "No" to question 6, what is the total amount of damages that would fairly compensate Plaintiffs for this injury if they had taken all reasonable steps to mitigate their damages? Write your answer in the line labeled

31

June 2, 2008

"Amount" below.

Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____    Jury Foreperson: _____

32

## DEFENDANTS' PROPOSED SPECIAL VERDICT FORM
## (CONVERSION)

1.    Have Plaintiffs proven by a preponderance of the evidence that they possessed property rights in the Hamburg Membership? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes" proceed to question 2 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall).

Question 1    Yes_____    No_____

2.    Have Plaintiffs proven by a preponderance of the evidence that the Hamburg Membership is a proper subject of a conversion claim? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes" proceed to question 3 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall).

Question 2    Yes_____    No_____

3.    Have Plaintiffs proven by a preponderance of the evidence that Defendants have exercised full dominion over any of Plaintiffs' property rights in the Hamburg Membership in a manner that was wrongful and in denial of or inconsistent with Plaintiffs' rights? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes" proceed to question 4 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall).

Question 3    Yes_____    No_____

4.    Have Plaintiffs proven by a preponderance of the evidence that the the action(s) for which you answered "Yes" to question 3 caused injury to the Plaintiffs? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for

33

Defendants. If "yes" proceed to questions 5 and 8 below. If "no," please sign the jury verdict form and return it to the U.S. Marshall).

Question 4    Yes_____    No_____

5.    For any injury for which you answered "Yes" to question 4, do you find by a preponderance of the evidence that Plaintiffs took all reasonable steps available to minimize their losses? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 6 below and do not answer question 7. If "no," please proceed to question 7 below and do not answer question 6.)

Question 5    Yes_____    No_____

6.    For any injury for which you answered "Yes" to question 5, what is the total amount of damages that would fairly compensate Plaintiffs for this injury based on the evidence available to you? Write your answer in the line labeled "Amount" below.

7.    For any injury for which you answered "No" to question 5, what is the total amount of damages that would fairly compensate Plaintiffs for this injury if they had taken all reasonable steps to mitigate their damages? Write your answer in the line labeled "Amount" below.

Amount: _____

8.    For any Defendants actions for which you answered "Yes" to question 4, have Plaintiffs proven by a preponderance of the evidence that the action(s) was or were intentional and outrageous and were reckless in their disregard for the rights of others or the result of evil motive. (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 9 below. If "no," please

sign this jury verdict form and return it to the U.S. Marshall.)

> Question 8     Yes_____          No_____

9.     For any actions of the Defendants for which you answered "Yes" to question

8, what is the total amount of punitive damages that should be assessed?

> Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____          Jury Foreperson: _____

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 9(a)

REDACTED VERSION – PUBLICLY FILED

## EXHIBIT 9 TO FINAL PRETRIAL ORDER

### Plaintiffs' Proposed *Voir Dire*

I.  **General introduction.**

    A.    I am going to ask you, as a group, a number of questions. There are no right or wrong answers to these questions; we are just interested in hearing your opinions.

    B.    I may ask you to raise your hand if you have had certain experiences. If you do raise your hand, please keep your hands in the air long enough that I can see and write down every person who raised his or her hand. That way, I will be able to come back and ask follow up questions, if necessary. If you raised your hand in response to a question and it seems as if I did not notice, please raise your hand again to let me know. That way, I will be sure to not miss anyone.

II.  **Potential bias resulting from familiarity with counsel.**

    A.    I'm going to ask all of the attorneys and their assistants to stand. Please raise your hand if you recognize any of the people who are standing in the courtroom.

        1.    [Follow up with each venire-person who raises his or her hand.]

    B.    Please raise your hand if you have ever had any contact with any of the following law firms:

        1.    Young, Conaway, Stargatt & Taylor

        2.    Barnes & Thornburg

        3.    Ashby & Geddes

        4.    Proskauer Rose

            a.    [Follow up with each venire-person who raises his or her hand.]

            b.    Please tell me about any contact you have had with _____.

            c.    How have those contacts affected your opinions of _____?

III.  **Potential bias resulting from acquaintances among jurors.**

    A.    Please take a look around the courtroom at the other people who have been called as potential jurors in this case. If you see anyone you recognize, please raise your hand.

    B.    Who do you recognize?

    C.       How do you know him/her?

    D.       How might it affect you if both of you end up on this jury?

          1.     Do you think _____'s opinions would be likely to influence your opinions?

          2.     Do you think your opinions would be likely to influence _____'s opinions?

**IV.    Potential bias resulting from familiarity with the parties.**

    A.       This case involves a dispute between several business entities and individuals. We want to determine how familiar you are with the entities involved in this case.

    B.       Please raise your hand if, before today, you had ever heard of:

          1.     Deutscher Tennis Bund

          2.     German Tennis Federation

          3.     Rothenbaum Sport GmbH

          4.     Qatar Tennis Federation

          5.     ATP Tour, Inc.

          6.     Etienne de Villiers

          7.     Charles Pasarell

          8.     Graham Pearce

          9.     Jacco Eltingh

         10.    Perry Rogers

         11.    Iggy Jovanovic

               a.     [Follow up with each venire-person who raises his or her hand]

               b.     How have you heard of _____?

               c.     What is your impression of _____?

**V.     Potential bias resulting from ethnic prejudices.**

A.     This case involves a lawsuit brought by a German organization and a Qatari organization. Different people sometimes have different opinions about foreign organizations bringing lawsuits in U.S. courts. Please raise your hand if you believe that foreign businesses and organizations should **not** be allowed to bring lawsuits in United States courts.

    1.     What experiences have you had to lead you to that belief?

B.     Please raise your hand if you have ever had a dispute or a negative experience with a foreign-owned company or organization.

    1.     What dispute or negative experience did you have?

C.     Please raise your hand if you are familiar with the country called Qatar.

    1.     What kinds of things do you know about Qatar?

D.     Qatar is an Arab emirate. It is bordered by Saudi Arabia and is a peninsula in the Arabian Gulf. Oil and gas reserves are the mainstay of the Qatari economy.

    1.     Please raise your hand if there is any reason at all that it might be difficult for you, as a juror, to fairly evaluate evidence in a lawsuit brought by a Qatari organization.

E.     Please raise your hand if, all else being equal, you would be more likely to believe the testimony of an American witness than the testimony of a Qatari witness.

F.     Please raise your hand if, as a juror, you would be inclined to distrust an organization that is based in a middle Eastern Arabic country with large oil and gas reserves.

G.     Please raise your hand if there is any reason at all that it might be difficult for you, as a juror, to fairly evaluate evidence in a lawsuit brought by a German organization.

H.     Please raise your hand if, all else being equal, you would be more likely to believe the testimony of an American witness than the testimony of a German witness.

I.     Please raise your hand if, in general, you believe that US companies and organizations are usually more trustworthy than foreign companies and organizations.

    1.     What experiences have you had to lead you to that belief?

3

**VI.    Potential bias resulting from connections to other relevant companies or persons.**

    A.    In this case, there may be evidence relating to many companies or persons in addition to the companies or persons who are parties to the lawsuit. We want to determine whether you have any connections to those companies or persons.

    B.    Please raise your hand if you, or anyone close to you, has ever worked for or had any extensive contact with any of the following companies or persons:

        1.    Evington Finance Corporation

        2.    New Sports Entertainment, Ltd.

        3.    Ion Tiriac

        4.    Ray Moore

        5.    IMG

        6.    Mercedes or Daimler-Chrysler

        7.    South African Airways

        8.    Tennis Properties Ltd.

        9.    ATP Properties

        10.    United States Tennis Association

        11.    AEG

        12.    Lawn and Tennis Association

        13.    ATP Media

            a.    [Follow up with each venire-person]

            b.    Please tell us about your connection to _____.

            c.    What are your impressions of _____.

**VII.   Potential bias resulting from familiarity with witnesses.**

    A.    This case will involve a number of witnesses. Please raise your hand if you recognize any of the following names:

    B.    [Read from witness list]

    C.    [Follow up with each venire person who raises his or her hand.]

**VIII.  Potential bias resulting from prior jury experience.**

A.    I know that some of you may have served on a jury before and it is important for us to know about that.  Please raise your hand if you have served on a jury before.

1.    What type of case was it?

2.    What was the case all about?

3.    How long did the trial last?

4.    Were any of the lawyers in the courtroom today involved in that case?

5.    What was the outcome?

6.    How long did the jury deliberate?

7.    Were you the foreperson of the jury?

8.    How did being on a jury affect your ideas about the legal system?

9.    How do you think that past jury experience might affect you if you are selected as a juror in this case?

B.    Please raise your hand if you have been called for jury duty before, and sat in a courtroom for questioning like this, but never actually got selected for a jury.

1.    How many times have you sat through a jury selection process like this one?

2.    How has that experience affected your feelings about the legal system?

C.    Please raise your hand if you have been called for a jury, seated on the jury, but then removed from the jury before a verdict was ever reached -- maybe because you became ill, maybe because a family emergency came up, or maybe for some other reason.

1.    [Follow up with each person who raises his or her hand regarding the circumstances surrounding his or her dismissal from a jury.]

**IX.  Potential bias resulting from prior litigation experiences.**

A.    How many of you have ever sued another person or sued a company?  Please raise your hands and keep them up for a minute.  If you have sued another person but prefer not to talk about the specifics in front of other jurors, we can talk to you about it privately if you prefer.  But it's important for you to raise your hand at this time to let me know if you have ever sued somebody else.

1.    When did you file a lawsuit?

2.    What type of case was it?

3.    Were any of the lawyers in the courtroom today involved in that case?

4.    What made you decide to sue, rather than resolve it some other way?

5.    Was there a trial?

    a.    Did you testify?

    b.    Were you present for the trial?

6.    What was the result?

7.    How did you feel about the outcome?

8.    How did that experience affect your ideas about our legal system?

9.    How might that experience affect you in being a juror on this case?

B.    Raise your hand if you have ever been sued by somebody else.  If you have been sued but prefer not to talk about the specifics in front of other jurors, we can talk to you about it privately if you prefer.  But it's important for you to raise your hand at this time to let me know if you have ever been sued by somebody else.

1.    When were you sued?

2.    What type of case was it?

3.    Why do you think the other party sued you, rather than working it out some other way?

4.    Was there a trial?

    a.    Did you testify?

    b.    Were you present for the trial?

5.    What was the result?

6.    How did you feel about the outcome?

7.    How did that experience affect your ideas about our legal system?

8.    How might that experience affect you in being a juror on this case?

C.  Raise your hand if you have a close friend or family member who has ever sued somebody.  If you have a close friend or family member who has sued somebody, but prefer not to talk about the specifics in front of other jurors, we can talk to you about it privately if you prefer.  But it's important for you to raise your hand at this time to let me know if you have a close friend or family member who has sued somebody.

1.  When?

2.  What type of case?

3.  Were any of the lawyers in the courtroom today involved?

4.  What was the result?

5.  How did you feel about the outcome?

6.  How did that experience affect your ideas about our legal system?

7.  How might that experience affect you in being a juror on this case?

D.  Raise your hand if you have been a witness in a lawsuit.  If you have been a witness but prefer not to talk about the specifics in front of other jurors, we can talk to you about it privately if you prefer.  But it's important for you to raise your hand at this time to let me know if you have ever been a witness.

1.  When were you a witness?

2.  What type of case was it?

3.  Did you testify at a trial?

4.  How did that experience affect your ideas about our legal system?

X.  **Potential bias resulting from connections to and experiences with professional sports.**

A.  Raise your hand if you have ever worked as a professional or semi-professional athlete.

1.  What sport?

2.  When?

3.  Who was your employer?

B.  Raise your hand if your spouse or any of your close relatives or friends have ever worked as a professional or semi-professional athlete.

    1.     What sport?

    2.     When?

    3.     Who was his/her employer?

C.     Raise your hand if your employment or your spouse's employment in any way involves working with professional athletes or professional athletic associations.

    1.     Who?

    2.     What sport?

    3.     What is the nature of the employment?

D.     Raise your hand if you consider yourself a fan of men's professional tennis.

    a.     [Follow up with each venire-person who raises his or her hand.]

    b.     Please tell me about how closely you follow men's professional tennis.

    c.     How familiar are you with the ATP's calendar of events?

    d.     How familiar are you with the business relationships between ATP players and the ATP tournaments?

    e.     How familiar are you with the relationship between the ATP tournaments and the ATP Tour itself?

E.     Raise your hand if you consider yourself a fan of women's professional tennis.

    a.     [Follow up with each venire-person who raises his or her hand.]

    b.     Please tell me about how closely you follow women's professional tennis.

    c.     How familiar are you with the WTA's calendar of events?

    d.     How familiar are you with the business relationships between WTA players and the WTA tournaments?

    e.     How familiar are you with the relationship between the WTA tournaments and the WTA Tour itself?

F.     Raise your hand if you consider yourself a serious fan of NASCAR, the PGA or LPGA Tour, the NFL, Major League Baseball, or soccer.

    a.     [Follow up with each venire-person who raises his or her hand.]

  b.  Tell me what specific sports you follow.

  c.  How familiar are you with the calendar or schedule of events for [particular sport]?

  d.  Do you pay attention to the contractual relationships between players and teams (i.e. Michael Jordan's contract with the Chicago Bulls) in [particular sport]?

  e.  Do you pay attention to the contractual relationships between the [particular sport] league and its members (i.e. contracts between the MLB and a baseball team)?

## XI. Potential bias related to government regulation of competition.

  A.  Raise your hand if you believe that this country's economy would be a lot better off if the legislature and the courts would never get involved in trying to regulate the free market.

    1.  What experiences have you had that have led you to that belief?

  B.  Raise your hand if you believe that the government should not try to prevent monopolies, so long as consumers are still getting what they need and want.

    1.  What experiences have you had that have led you to that belief?

## XII. Potential bias related to experiences with membership organizations.

  A.  Raise your hand if you belong to a labor union.

    1.  What union do you belong to?

    2.  Do you regularly attend union meetings?

    3.  Have you ever had a leadership role in your union?

  B.  Raise your hand if you are a member of a professional organization.

    1.  What organization do you belong to?

    2.  Do you regularly attend the organization's meetings?

    3.  Have you ever had a leadership role in that organization?

## XIII. Potential bias related to experiences with non-profit corporations.

  A.  Raise your hand if you work or have ever worked for a non-profit corporation.

    1.  Who is/was your employer?

    2.     What do/did you do?

    3.     How long have you been/were you employed?

B.     Raise your hand if your spouse or a close friend or relative of yours has ever worked for a non-profit corporation.

    1.     Who is/was their employer?

    2.     What did s/he do?

    3.     How long was s/he employed in that role?

C.     Some people think that non-profit corporations are not supposed to "make money" or "make a profit." Raise your hand if you would be suspicious of a non-profit corporation that was generating revenue.

D.     Raise your hand if you have experience with the tax implications of being a non-profit corporation.

**XIV.  Potential bias related to experiences with boards of directors.**

A.     Raise your hand if you have ever served on a board of directors of either a for-profit or a not-for-profit company.

    1.     For which company(ies) did you sit on the board?

    2.     What does that company do?

    3.     Is _____ a non-profit corporation?

    4.     How long did you serve on the board(s)?

**XV.  Potential bias related to bid processes.**

A.     Please raise your hand if you have ever had a job that required you to submit bids in order to get business.

    1.     What was your job?

    2.     When did you work at that job?

    3.     What were your responsibilities in terms of submitting bids?

    4.     Did you find the bidding process to generally be fair?

**XVI.  Additional information important for the intelligent exercise of peremptory challenges.**

    A.    Please raise your hand if you have any formal education or training in the law.

        1.    What formal education or training in the law do you have?

        2.    How has that affected your opinions of lawsuits and our legal system?

    B.    Please raise your hand if you have ever taken a college-level course in economics.

        1.    When did you take that course?

        2.    Where did you take the course?

        3.    Do you have a degree in economics?

        4.    What do you do for a living?

    C.    Please raise your hand if your spouse or any of your close relatives or friends have a degree in economics.

        1.    Who?

        2.    What does s/he do for a living?

    D.    Please raise your hand if you have ever worked for law firm or legal department.

    E.    Please raise your hand if your spouse or any of your close relatives or friends have ever worked for a law firm or legal department.

    F.    Please raise your hand if the highest level of education you have attained is a high-school diploma.

        1.    Please raise your hand if you have not received a high-school diploma.

    G.    Some people enjoy thinking about complicated things -- maybe they enjoy solving difficult puzzles, doing math problems, figuring out complicated word games, playing chess, and so forth. Lots of other people, even though they are very smart, prefer to spend their free time in other ways. The attorneys in this case are interested in which kinds of people we have here today.

        1.    Please raise your hand if you are the type of person who really enjoys thinking about complicated things just for the fun of it.

        2.    Please raise your hand if you are the type of person who would rather spend your free time in other ways.

REDACTED VERSION – PUBLICLY FILED

H.  Raise your hand if you consider yourself to be very politically liberal.

I.  Raise your hand if you consider yourself to be very conservative.

J.  Raise your hand if you have very little confidence in the US government.

K.  Raise your hand if you are fluent in any language other than English.

    1.  What language?

    2.  How did you learn that language?.

L.  Raise your hand if you have never traveled overseas.

INDS02 MBARR 970867v1

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 9(b)

## EXHIBIT 9 TO FINAL PRETRIAL ORDER

## DEFENDANT'S PROPOSED *VOIR DIRE*

### I. Preliminary Statement of the Case

The case for which you are a potential juror involves allegations under the antitrust laws of the United States and the general laws of Delaware. The Plaintiffs, who filed this lawsuit, are Deutscher Tennis Bund (German Tennis Federation), Rothenbaum Sport GMBH and the Qatar Tennis Federation. The Defendants, against whom the lawsuit was filed, are the ATP Tour, Inc. and a number of individuals involved with the ATP. ATP operates an annual circuit of men's professional tennis tournaments.  Its members are the tournaments which operate events and players who play on the circuit.  The Plaintiffs are members of the ATP.  They run professional tennis tournaments in Hamburg, Germany and Doha, Qatar. The Plaintiffs have challenged the Defendants' conduct regarding the future classification and schedule for the Hamburg tournament.  Plaintiffs allege that the Defendants' actions violated antitrust laws; breached the ATP's fiduciary duties of loyalty, due care and good faith; created tortious interference with contractual and business relationships; and converted Plaintiffs' membership rights. These are legal terms that will be defined for you if you are selected to serve on this jury. This is a civil case in which the Plaintiffs are seeking to enjoin Defendants' actions and financial damages for the injury they claim to have suffered. The Defendants deny all the claims of wrongdoing alleged by the Plaintiffs or that they did anything wrong. The Defendants respond that all the decisions being questioned were made to try to further the best interest of ATP's members, professional tennis, tennis players, tennis fans, and consumers, and the group of tournaments which include the Hamburg and Qatar events. The Defendants also claim that none of their decisions violate the federal antitrust laws or general laws of Delaware.

### II. Questions

For each of these questions please raise your hand if your answer to the question is "yes" or if it applies to you.

1. Are you personally acquainted with any officer, director, or employee of any of the following companies? [list of companies at **Appendix 1 at Exhibit __(a) to be read out loud or provided to potential jurors.**]

2. Have you or any member of your household ever worked for any of the aforementioned companies?

3. Are you related to, or personally acquainted with, any of the following attorneys, or have you ever been represented by any of those attorneys or other associates or members of the following law firms ?  [list of the law firms and attorneys involved in this litigation at **Appendix 2 at Exhibit __(b) to be read out loud or provided to potential jurors.**]

4.  Are you related to, or personally acquainted with, any of the following individuals who may be witnesses in this case? [list of the individuals who might appear as witnesses in this case at **Appendix 3 at Exhibit __ to be read out loud or provided to potential jurors.**].

5.  Do you have any personal knowledge of this case, or have you read or heard it discussed, or have any opinion regarding it?

6.  Have you or any of your immediate family ever been a plaintiff, a defendant, or a witness in a civil lawsuit?

    a.  [side bar follow up if answer to above is yes]  Please explain briefly. Was there anything about that experience that would make it difficult for you to serve fairly as a juror on this trial?

7.  Have you ever served as a juror before?

    a.  [side bar follow up if answer to above is yes]  Was a verdict reached? Were you the foreperson?  Was there anything about that experience that would make it difficult for you to serve as a juror on this trial?

8.  Do you know any of the other jurors who are in this courtroom today?

    a.  [side bar follow up if answer to above is yes]  Please explain how you know them.

9.  This case involves a lawsuit brought by a German organization and Qatari organization against an American organization. Do you have any strong opinions about foreign organizations bringing a lawsuit in a U.S. court?

    a.  [side bar follow up if answer to above is yes] What are your opinions?

10. Is there any reason that it might be difficult for you, as a juror, to be fair in a lawsuit brought by a German or Qatari organization?

11. All else being equal, would you be more likely to believe the testimony of an American witness than the testimony of a foreign witness?

12. Have you, any of your family, or close friends ever worked as a professional or semi-professional athlete?

    a.  [side bar follow up if answer to above is yes]  Please explain what sport, when, and who was the employer.

13. Are you familiar with, or do you consider yourself a fan of, tennis?  Do you follow professional tennis?  Are you familiar with the ATP's calendar of

tournaments?  Have you ever followed the results of the Hamburg or Qatar tennis tournaments or other tournaments on the ATP Tour?

14. Do you have any strong opinions about professional sports?

    a.   [side bar follow up if answer to above is yes]  Please explain.

15. This year, the summer Olympics are set to be held in China.  Do you plan on watching the Games?  Do you have any feelings about the Olympics taking place in China?

    a.   [side bar follow up if answer to above is yes]  Please explain.

16. Do you have any experience with, opinions of, or knowledge of the antitrust laws of the United States? Have you heard of the Sherman Act?

17. Do you actively participate in, or have a leadership role in any, social, civic, professional, trade, union, or other organizations?

    a.   [side bar follow up if answer to above is yes]  Please explain.

18. Have you, any of your immediate family, or close friends ever worked for a non-profit organization?

    a.   [side bar follow up if answer to above is yes] Please explain.

19. Have you or any of your immediate family members ever served as a director, board member, or officer of a corporation?

    a.   [side bar follow up if answer to above is yes] Please explain.

20. Have you ever had a job that required you to submit bids in order to get business?

    a.   [side bar follow up if answer to above is yes]  What did you do? What were your duties?

21. Do you have any training, work experience, or education in the law, or have you ever worked for a legal department or law firm?

    a.   [side bar follow up if answer to above is yes]  Please explain your background in the law.

22. Do you speak, read, or write any languages besides English?

    a.   [side bar follow up if answer to above is yes]  What languages?

23. This case will probably take about 10 days to try. Is there anyone here who would find that a hardship for health or personal reasons, or for job-related reasons? Do you have any special disability or problem that would make it difficult or impossible for you to serve as a member of the jury on this case? For example, is there anyone who has any difficulty hearing or seeing in this courtroom?

24. Do you know of any other matter which you believe should be called to the court's attention as having some bearing upon your qualifications or ability to sit as a juror, or which you think may prevent you from rendering a fair and impartial verdict based solely upon the evidence and my instructions as to the law?

REDACTED VERSION – PUBLICLY FILED

## EXHIBIT __(a) TO FINAL PRETRIAL ORDER

Appendix 1—List of Companies

1. ATP Tour, Inc.
2. Deutscher Tennis Bund (German Tennis Federation)
3. Rothenbaum Sport GmbH
4. Qatar Tennis Federation

## EXHIBIT __(b) TO FINAL PRETRIAL ORDER

### Appendix 2—List of Law Firms and Attorneys

1.  Ashby & Geddes, P.A.
2.  Young, Conaway, Stargatt & Taylor, LLP
3.  Proskauer Rose LLP
4.  Barnes & Thornburg LLP
5.  Lawrence C. Ashby
6.  Philip "Lee" Trainer, Jr.
7.  Carolyn S. Hake
8.  Tiffany Geyer Lydon
9.  C. Barr Flinn
10. Karen E. Keller
11. Bradley I. Ruskin
12. Colin A. Underwood
13. Jennifer R. Scullion
14. Jordan B. Leader
15. Julie A. Tirella
16. Evan S. Greene
17. Julian David Perlman
18. Robert D. Forbes
19. Robert D. MacGill
20. Hamish Cohen
21. Jennifer Westerhaus Adams
22. Matthew B. Barr