IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DEUTSCHER TENNIS BUND (GERMAN TENNIS FEDERATION), ROTHENBAUM SPORT GMBH, and QATAR TENNIS FEDERATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | C.A. No. 07-178-GMS |
| ATP TOUR, INC., ETIENNE DE VILLIERS, CHARLES PASARELL, GRAHAM PEARCE, JACCO ELTINGH, PERRY ROGERS, and IGGY JOVANOVIC, | ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO RELEVANT PRODUCT AND GEOGRAPHIC MARKETS**

Defendants submit this memorandum of law in support of its motion, pursuant to Rule 50 of the Federal Rules of Civil Procedure, for judgment as a matter of law as to Plaintiffs' Antitrust Claims (Counts II, III, and IV) for failure to present evidence of the relevant product and geographic markets.

**I.      Plaintiffs Have Failed To Prove A Relevant Product Market**

Plaintiffs' expert's methodology for defining the relevant product market as markets relating to the production of top-tier men's professional tennis, is unsound, unreliable, and should be rejected under *Daubert*. If Mr. Zimbalist's methodology is rejected, his testimony must be struck and Plaintiffs' antitrust claims must be dismissed.

In order to prevail on their antitrust claims, Plaintiffs must prove the existence of a relevant product and geographic market. "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co v. U.S.*, 370 U.S. 294, 325 (1962);

{00233020;v1}

*Allen-Myland, Inc. v. IBM, Corp.*, 33 F.3d 194, 207 (3d Cir. 1994). Mr. Zimbalist admitted that he was unable to do an analysis of whether or not the product in question, which he defined as top-tier men's tennis, had close substitute products that were so close that they were in direct competition with each other. (Zimbalist 1323-24). He also admitted that he did not test whether live audience attendees at top-tier men's professional tennis might have alternatives other than second-tier men's professional tennis if the price of top-tier men's professional tennis increased, he merely "considered" the relationship between top-tier men's professional tennis and top-tier women's professional tennis and the possibility that consumers would go to other products outside of the tennis industry. (Zimbalist 1330). Although this is a far from exhaustive list of the deficiencies in Mr. Zimbalist's methodology, it serves as an example of why his testimony should be stricken.

Without Mr. Zimbalist's testimony, Plaintiffs have not offered reliable evidence that their proposed "relevant markets" include all reasonably interchangeable or substitutable products and thus their § 2 Sherman Act claims should be dismissed. The other evidence at trial indicates that there are other products that must be included in the relevant product market. Plaintiffs' own witnesses have acknowledged that sponsors and fans see all sports (Pfauth 1126-27), or all forms of entertainment "in cultural and other areas" (Knapper 608), as substitutes for top-tier men's tennis.

## II.   Plaintiffs Failed To Prove A Relevant Geographic Market.

Plaintiffs' expert methodology for defining the relevant geographic markets is also unsound and unreliable and should be rejected under *Daubert*. "[T]he relevant geographic market is the area in which a potential buyer may rationally look for the goods or services he or she seeks." *Pennsylvania Dental Assn. v. Med. Serv. Assn. of Pa.*, 745 F.2d 248, 260 (3d Cir. 1984), *cert. denied*, 471 U.S. 1016 (1985); *see also Brokerage Concepts, Inc. v. U.S. Healthcare,*

*Inc.*, 140 F.3d 494, 515 (3d Cir. 1998). This geographic market must "conform to commercial reality." *Acme Mkts., Inc. v. Wharton Hardware & Supply Corp.*, 890 F. Supp. 1230, 1239 (D. N.J. 1995) (citing *Brown Shoe Co.*, 370 U.S. at 336).

Mr. Zimbalist's testimony concerning relevant geographic markets failed to meet even minimum standards of reliability or relevance. Mr. Zimbalist admitted that the only consumers he considered were "live" fans, and that he did not consider broadcasters and sponsors, <u>even though</u> he agreed that broadcasters and sponsors are consumers in the market of live top tier men's professional tennis. (Zimbalist 1348-49). Further, the evidence presented shows that the relevant geographic markets that ATP competes in vary greatly, depending on the product at issue. Mr. Zimbalist himself conceded that the relevant geographic market varies depending on the product. "If we are talking about live top-tier men's professional tennis, then the relevant geographical market is local and regional. If we are talking about the sanctioning market, it's an international market. It's a world market. If we are talking about the player services market, it is a world market." (Zimbalist 1460). However, Mr. Zimbalist admitted that although he defined the relevant geographical market as local and regional, he did not conduct any inquiry to determine what the closest ISG events would be in the same regional or local market as Hamburg. (Zimbalist 1461).

### III. Plaintiffs' Only Evidence of the Relevant Product and Geographic Market Should be Struck as a Sanction

In addition to the fact that Plaintiffs have failed to present evidence as to the relevant product and geographic markets that passes the *Daubert* standard, any evidence offered by Plaintiffs' expert Dr. Zimbalist should be stricken as a sanction. It is "gross misconduct" by Plaintiffs and their counsel to create a detailed outline for a witness to prepare for his testimony, *see In re Scrap Metal Antitrust Litig.*, 2006 WL 2850453, at * 5 (N.D. Ohio Sept. 30, 2006), and

even more so where, as here, the witness relied upon the document on the stand and the jury was not aware of it. Dr. Zimbalist's use of this outline in the first hour and a half of his testimony was prejudicial to the Defendants as the use of that script could have had the effect of "programming" his testimony to accord with the Plaintiffs' arguments. *People v. Ramos*, 141 Misc. 2d 930, 932-936 (N.Y. Sup., 1988). Additionally, the use of the script likely gave the jury the impression that Dr. Zimbalist had a better recollection of the testimony and documents in the case than he actually did, which may have caused them to attach greater weight and reliability to his testimony.

Curative instructions and cross examination will not suffice to correct the prejudice to Defendants. The likelihood that the jurors will be able to separate in their minds that testimony and evidence presented by Dr. Zimbalist when he was not testifying with a script and when he was is minimal. The jury has been indelibly effected by Dr. Zimbalist's earlier testimony. For these reasons, his testimony should be stricken.

## **CONCLUSION**

Based on the foregoing, the Court should rule as a matter of law that Plaintiffs' antitrust claims fail because of their failure to prove a relevant product or geographic market.

ASHBY & GEDDES

*/s/ Philip Trainer, Jr.*

*Of Counsel:*

PROSKAUER ROSE LLP
Bradley I. Ruskin
Colin A. Underwood
Jennifer R. Scullion
Evan S. Greene
1585 Broadway
New York, NY 10036-8299
212-969-3000

Philip Trainer, Jr. (I.D. #2788)
Tiffany Geyer Lydon (I.D. #3950)
Toni-Ann Platia (I.D. #5051)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
302-654-1888
ptrainer@ashby-geddes.com
tlydon@ashby-geddes.com
tplatia@ashby-geddes.com