IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DEUTSCHER TENNIS BUND (GERMAN  )
TENNIS FEDERATION), ROTHENBAUM )
SPORT GMBH, and QATAR TENNIS    )
FEDERATION,                     )
        Plaintiffs,             )
                                )
    vs.                     )
                                )    C.A. No. 07-178-GMS
ATP TOUR, INC., ETIENNE DE VILLIERS, )
CHARLES PASARELL, GRAHAM PEARCE, )
JACCO ELTINGH, PERRY ROGERS, and )
IGGY JOVANOVIC,                 )
                                )
        Defendants.             )

**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW FOR FAILURE TO PROVE ANTITRUST INJURY AND ANTITRUST STANDING**

Defendants submit this motion, pursuant to Rule 50 of the Federal Rules of Civil Procedure, for judgment as a matter of law dismissing Plaintiffs' antitrust claims asserting anticompetitive conduct with respect to an alleged market for "player services", on the grounds that the alleged injury suffered by Plaintiffs as a result of that conduct is not "antitrust injury" or, in the alternative, that Plaintiffs have not proven that they have antitrust standing to assert those claims.

**I.    Plaintiffs' Alleged "Restraints"**

Although Plaintiffs' antitrust theories have not always been entirely clear, it appears that the anticompetitive restraints they allege are: (1) the "channeling" of players to certain events; (2) a cap on the prize money paid to players by top-tier men's professional tennis tournaments; (3) the creation and sale of an artificially limited number of sanctions for top-tier men's professional tennis tournaments; (4) the division or allocation of calendar weeks among the ATP, the Grand Slams and the Davis Cup; and (5) the limitation of output of top-tier men's

professional tennis tournaments.[1] As to each of these alleged restraints, the "injury" claimed by Plaintiffs is not an injury arising from harm to competition. In addition, to the extent any of the purported restraints actually could causes harm to competition, Plaintiffs would not be the appropriate parties to enforce the antitrust laws with respect to those restraints.

## II. Plaintiffs Have Failed To Prove An Antitrust Injury

In order to prevail in a private antitrust action, a plaintiff must prove not only that it suffered injury as a result of anticompetitive conduct, but also that the injury constitutes "antitrust injury", *i.e.*, injury "of the type the antitrust laws were intended to prevent" and that "flows from that which makes defendants' acts unlawful". *Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 489 (1977). "In order to show an antitrust injury the plaintiff must prove that it suffered an injury that (1) is of the type the antitrust laws were intended to prevent and (2) flows from that which makes defendants' acts unlawful." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 349 (1990) (internal quotations and citation omitted). A plaintiff must prove an antitrust injury even if the alleged conduct of the defendants constitutes a *per se* violation of the antitrust laws. *See Pace Electronics, Inc. v. Canon Computer Systems, Inc.*, 213 F.3d 118, 120 (3d Cir. 2000).

Plaintiffs have failed to prove an antitrust injury because they have presented no evidence that the loss Plaintiffs allegedly have suffered or will suffer arose from conduct of ATP that reduced competition in any relevant market. *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) ("The antitrust injury requirement . . . ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior.") (emphasis in original); *Eichorn v. AT & T Corp.*, 248 F.3d 131, 140 (3d Cir. 2001) ("We have

---

[1] For purposes of the present motion only, Defendants will assume that Plaintiffs have in fact offered admissible and competent evidence supporting their alleged relevant markets.

consistently held an individual plaintiff personally aggrieved by an alleged anticompetitive agreement has not suffered an antitrust injury unless the activity has a wider impact on the competitive market."). "While a plaintiff may have individually suffered an injury as a result of defendants' actions, the antitrust laws were designed to protect market-wide anticompetitive activities." *Id.*; *see also Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989) (plaintiffs must "plead and prove a reduction of competition in the market in general and not mere injury to their own positions as competitors").

Even assuming, *arguendo*, that Plaintiffs had proved that any of the alleged restraints set forth above were actually anticompetitive — which they have not — they have failed to offer any proof that the injury they claim arises from any competition-reducing aspects of those restraints. More specifically, to the extent that ATP's player commitment rules or any supposed "cap" on prize money paid to players have any adverse effect on competition, that effect would be in the relevant market alleged by Plaintiffs, namely the market for player services for top-tier men's professional tennis tournaments. A restraint on competition in that market could not possibly adversely affect Plaintiffs. Rather, as purchasers competing for player services, they would only ***benefit*** if other tournaments sought to limit players' compensation or mobility. Players in that situation would have a greater incentive to deal with Plaintiffs, thereby making it ***easier*** for Plaintiffs to compete against those involved in the anticompetitive conduct. As the Third Circuit observed in dismissing antitrust claims for lack of antitrust injury, "the Grizzlies' exclusion from the league in no way restrained them from competing for players by forming a competitive league". *Mid-South Grizzlies v. NFL*, 720 F.2d 772, 786-87 (3d Cir. 1983) (dismissing antitrust claims where "the action complained of produced no injury to competition"); *see also NHLPA v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 720 (6th Cir.

2003); *Kentucky Speedway, LLC v. NASCAR, Inc.*, 2008 U.S. Dist. LEXIS 1076, *16-21 (E.D. Ky. Jan. 7, 2008).

Likewise, an "artificial" limitation on ATP tournament sanctions would increase the costs of those who nevertheless sought to purchase them. By raising those costs, this "anticompetitive" conduct would make it *easier* for Plaintiffs to compete against those tournaments as a non-ATP event that would not be saddled with the need to pay those higher costs.

With respect to Plaintiffs' allegation that Defendants have divided or allocated calendar weeks among themselves, the Grand Slams and the Davis Cup, "market allocation" arises when horizontal competitors agree not to pursue each other's suppliers or customers. Ignoring for the present motion the fact that the "agreements" challenged by Plaintiffs in fact *ensure* that all top-tier men's professional tennis tournaments have an opportunity to purchase the services of *all* of the top players and to sell to *all* tennis fans, broadcasters and sponsors, this claim also fails the antitrust injury test. A horizontal competitor, such as Plaintiffs purport to be, that is not part of a typical market allocation can only benefit, because it can more easily compete for the business of those suppliers or customers that are being underserved (or overcharged) by the competitors involved in the allocation.

Finally, and perhaps most obviously, any attempt by Defendants to limit their output of top-tier men's professional tennis tournaments would simply open up more opportunities for Plaintiffs to fill the void by producing their own tournament outside of the ATP.

Thus, the evidence is clear that Plaintiffs' injury (to the extent there is one) will result not from the overall, market-directed practices of ATP, but rather, from an adverse decision pertaining to internal policy made by ATP with regard to Plaintiffs. The choice by ATP to select

one member over another to be in its highest tier is not antitrust injury. *See Mid-South Grizzlies v. NFL*, 720 F.2d 772, 786-87 (3d Cir. 1983) (dismissing antitrust claims where "the action complained of produced no injury to competition"); *Kentucky Speedway, LLC v. NASCAR, Inc.*, 2008 U.S. Dist. LEXIS 1076, *16-21 (E.D. Ky. Jan. 7, 2008). In this respect, the Third Circuit's observation in *Pace Electronics, Inc. v. Canon Computer Systems, Inc.*, 213 F.3d 118 (3d Cir. 2000) is particularly apt:

> In applying the antitrust injury requirement, the Supreme Court has inquired whether the injury alleged by the plaintiff "resembles any of the potential dangers" which led the Court to label the defendants' alleged conduct violative of the antitrust laws in the first instance.

*Id.* at 120 (citation omitted).

Put another way, the restraints alleged by Plaintiffs here have an effect (at most) on *intrabrand* competition. As Dr. Walker explained (Trial Tr. 2332:5-2335:9), the primary concern of antitrust economists, and antitrust law, is *interbrand*, not *intrabrand*, competition. *Continental TV, Inc. v. GTE Sylvania*, 433 U.S. 36, 52 n.19 (1977). "A reduction in intrabrand competition is not sufficient to state an antitrust injury without some showing that 'intrabrand competition was a critical source of competitive pressure.'" *Paycom Billing Services, Inc. v. Mastercard Intern., Inc.*, 467 F.3d 283, 292 (2d Cir. 2006) (quoting *Graphic Prods. Distribs., Inc. v. Itek Corp.*, 717 F.2d 1560, 1573 (11th Cir. 1983)). Plaintiffs have offered no evidence to support a jury finding that *intrabrand* competition among ATP members is a critical source of competitive pressure.

Here, Defendants have merely shown that ATP rendered a scheduling and ranking decision with which Defendants disagree. Whatever the merits of their grievance with ATP's decision, it is clear that such internal decisions do not give rise to the sort of harm that the antitrust laws are intended to prevent.

Case 1:07-cv-00178-GMS   Document 193   Filed 08/04/2008   Page 6 of 10

### III.  Plaintiffs Lack Antitrust Standing

Even if the Court determines that Plaintiffs have proven appropriate antitrust injury, their claims should be dismissed because Plaintiffs lack antitrust standing. The class of persons who may maintain a private action under the antitrust laws is defined in Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26) and case law interpreting it. In developing the concept of antitrust standing, the Supreme Court has "focus[ed] on the nature of the plaintiff's alleged injury," asking "whether it is of the type that the antitrust statute was intended to forestall." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 538, 540 (1983) ("*AGC*"). "If the injury is not of the requisite type, even though the would-be plaintiff may have suffered an injury as a result of conduct that violated the antitrust laws, he or she has no standing to bring a private action under the antitrust laws to recover for it." *Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 181 (3d Cir. 1997). The Third Circuit has summarized the factors relevant to determining whether a plaintiff has antitrust standing:

> (1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages.

*Barton & Pittinos, Inc.*, 118 F.3d at 181 (citing *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1165-66 (3d Cir. 1993)). As the Third Circuit has held, "***[e]ven a plaintiff who can show antitrust injury may lack antitrust standing***, because the remaining AGC factors may weigh against allowing him or her to sue under the antitrust laws." *Barton & Pittinos*, 118 F.3d at 182 (emphasis added) (citing *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110 n.5 (1986) ("A showing of antitrust injury is necessary, but not always sufficient, to establish

6

standing under § 4, because a party may have suffered antitrust injury but may not be a proper party under § 4 for other reasons")). *See also 2660 Woodley Road Joint Venture v. ITT Sheraton Corp.*, 369 F.3d 732 (3d Cir. 2004) (analyzing question of antitrust standing under the five-factor test; holding that plaintiff lacked standing). We analyze the five *Barton* factors briefly below.

### A.    No Intent To Harm Or Causal Connection

Plaintiffs have offered no evidence that Defendants' decisions with respect to the adoption or implementation of the Brave New World plan were directed at harming Plaintiffs, instead of promoting the overall interest of the sport of tennis. Moreover, the evidence is clear that Plaintiffs' injury (if there was one) resulted not from the overall, market-directed, procompetitive practices of ATP, but, rather, stems from an adverse decision pertaining to internal policy made by ATP with regard to Defendants. Put another way, the alleged injury here is simply Plaintiffs' loss of their position *vis à vis* other ATP tournaments within ATP's structure.

### B.    No Antitrust Injury

For the reasons set forth in section II above, Defendants submit that Plaintiffs have not shown that they suffered antitrust injury arising out of the supposed restraints they seek to challenge in this litigation.

### C.    Plaintiffs Were Affected, At Most, Indirectly By Any Anticompetitive Conduct

The issue under this factor is whether the Defendants' conduct has had a direct effect on either the Plaintiffs or the market in which they participate. *Joint Stock Society v. UDV North America, Inc.*, 266 F.3d 164, 181 (3d Cir. 2001). Here, the alleged anticompetitive conduct relates to the alleged markets for: (a) player services for top-tier men's professional tennis

tournaments; (b) sanctions for top-tier men's professional tennis tournaments; and (c) top-tier men's professional tennis tournaments.

As for the first alleged market, the alleged anticompetitive conduct consists of supposed restrictions on the freedom of players to sell their services on the open market and to obtain competitive levels of prize money. Clearly, these alleged restrictions most directly affect the players involved and only affect Plaintiffs indirectly, if at all. Similarly, any attempt by Defendants to withhold tournament sanctions or charge excessive prices would directly affect those seeking such sanctions, but would not in any way limit or restrict Plaintiffs' ability to organize a competitive non-ATP tournament, for which no such sanction would be necessary. Finally, the purported reduction of output in the market for top-tier men's professional tennis tournaments would directly impact those who purchase the products created by those tournaments — fans, broadcaster and sponsors — but would not directly affect Plaintiffs or prevent them from offering a competitive, non-ATP product. In fact, it would make it easier for them to compete outside the ATP — as then demand might outpace supply.

### D.    More Suitable Plaintiffs Exist

Courts also examine "the proximity of the plaintiff to the allegedly harmful conduct . . . . to determine whether there is 'an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest' by bringing an enforcement action." *Joint Stock Society v. UDV North America, Inc.*, 266 F.3d 164, 182 (3d Cir. 2001) (citation omitted). The existence of such a class 'diminishes the justification for allowing a more remote party . . . to perform the office of a private attorney general.'" *Id.*

With respect to each of the purported markets that Plaintiffs have alleged are impacted by the supposed restraints, the discussion in the preceding section identifies those suppliers or consumers who would be more suitable than Plaintiffs to seek redress for any anticompetitive

8

conduct. In the case of the market for player services for top-tier men's professional tennis tournaments, the players are obviously more suitable. With respect to the market for sanctions, those who seek to join the ATP by acquiring such sanctions would be more appropriate persons to pursue claims that ATP was overcharging for those sanctions. Finally, consumers would be the appropriate parties to raise claims that Defendants were improperly limiting output of the products those consumers seek to purchase.

### E. Danger of Duplicative Recovery or Complex Damages.

Damage claims such as those advanced by Plaintiffs could, in theory, be asserted by the players, broadcasters, marketers, and providers of goods and services at tennis tournaments (each of whom would be more directly affected by the challenged conduct than are Plaintiffs). In addition, if Plaintiffs' legal position were upheld, every other tournament organizer who disagrees with an ATP decision regarding ranking or scheduling could also assert such a claim, although, in each case, the damages would be highly speculative. The presence of multiple classes of potential plaintiffs, coupled with the speculative nature of Plaintiffs' damages, counsels against finding antitrust standing, as was recognized in *Joint Stock Society*:

> Due to the speculative nature of the damages of parties in the third group [which included the plaintiffs], allowing them to sue would create a danger of duplicative damages and thus potentially "would subject defendant firms to multiple liability for the same conduct and would result in administratively complex damages proceedings."

266 F.3d at 184-85.

* * * *

As the foregoing review of the five *Barton* factors demonstrates, Plaintiffs' antitrust claims should be dismissed for lack of antitrust standing.

9

## **CONCLUSION**

For all of the foregoing reasons, the Court should rule as a matter of law that the injury alleged by Plaintiffs is not a proper antitrust injury and that Plaintiffs lack antitrust standing, and should dismiss Plaintiffs' antitrust claims in their entirety.

Dated:  August 4, 2008

*Of Counsel*:

PROSKAUER ROSE LLP
Bradley I. Ruskin
Colin A. Underwood
Jennifer R. Scullion
1585 Broadway
New York, NY 10036-8299
212-969-3000

ASHBY & GEDDES

*/s/ Philip Trainer, Jr.*
_____
Philip Trainer, Jr. (I.D. #2788)
Tiffany Geyer Lydon (I.D. #3950)
Toni-Ann Platia (I.D. #5051)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
302-654-1888
ptrainer@ashby-geddes.com
tlydon@ashby-geddes.com
tplatia@ashby-geddes.com