IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEUTSCHER TENNIS BUND (GERMAN TENNIS FEDERATION), ROTHENBAUM SPORT GMBH, and QATAR TENNIS FEDERATION,<br><br>          Plaintiffs,<br><br>vs.<br><br>ATP TOUR, INC., ETIENNE DE VILLIERS, CHARLES PASARELL, GRAHAM PEARCE, JACCO ELTINGH, PERRY ROGERS, and IGGY JOVANOVIC,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 07-178-GMS<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO PLAINTIFFS' CLAIM FOR DAMAGES FOR IMPAIRMENT OF BOOK VALUE**

Defendants submit this motion, pursuant to Rule 50 of the Federal Rules of Civil Procedure, for judgment as a matter of law dismissing that portion of Plaintiffs' claim for damages relating to impairment of the book value of the Hamburg facility, based on the failure to prove that such value belongs to them.

Plaintiffs, through the testimony of Gary Kleinrichert, have placed a value on their damages of "approximately 77 to 71 million dollars" (Trial Tr. 1739:17-20), which is based on the sum of two figures: (1) $45,598,000, the alleged "value of the Hamburg membership" (Trial Tr. 1734:14-20), and (2) $31,109,000, the alleged impairment to the book value of the capital investments made to the Hamburg facility (Trial Tr. 1736:8-14).[1] However, the inclusion of the alleged impairment of book value as part of the total value of Plaintiffs' membership is based on

---

[1] Mr. Kleinrichert concluded that if Hamburg were to operate as a 500 level tournament, the expected cash flows would be negative and "you, in effect, would need to write…the [value of the capital investments] completely off the books." Trial Tr. 1737:20 – 1738:4.

a faulty premise. In fact, the "value" alleged to have been impaired is not on the books of any Plaintiff: none of the Plaintiffs actually own the Hamburg facility. Rather, as Kleinrichert admitted, the Hamburg facility is owned by Rothenbaum Stadion GmbH ("Stadion") (Trial Tr. 1768:24-1769:1). Stadion is not a plaintiff in this action. While Kleinrichert suggested that Stadion is a subsidiary of GTF (*id.*), Plaintiffs have offered no substantive evidence of such a relationship. Accordingly, there is no record evidence upon which to award Plaintiffs any damages accruing to Stadion. Plaintiffs have thus significantly increased their damage calculation by adding the impairment of value of an asset that belongs to none of them.

Even if the facts suggested by Kleinrichert concerning the relationship between Stadion and Plaintiffs had been established, Plaintiffs cannot rely on the mere presence of a parent-subsidiary relationship to support recovery of damages allegedly suffered by the subsidiary. Just as a parent corporation is not automatically subject to suit for the conduct of its subsidiary,[2] it equally cannot bring suit on behalf of its subsidiary without first establishing its standing as the "real party in interest." In Delaware, a parent corporation is only permitted to recover for losses suffered by its subsidiary if those losses would, in any event, flow to the parent. *Sternberg v. O'Neil*, 550 A.2d 1105, 1124 (Del. 1988).

A recent decision in this district likewise refused to "ignore the organizational structure of [a parent] and its subsidiaries." *Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 604 (D. Del. 2007) (Jordan, C.J., sitting by designation) (holding that patentee could not recover lost profits of its subsidiary); *see also Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d

---

[2] In the context of antitrust litigation, a plaintiff is only permitted to bring a cause of action against a parent if "the parent dominates and controls the subsidiary to such an extent that the subsidiary is deemed to be an agent of the parent." *Mid-West Paper Products Co. v. Continental Group, Inc.*, 596 F.2d 573, 589 (3d Cir. 1979) (finding that if the plaintiff can establish facts that warrant holding the parent legally accountable for the subsidiary's activities, the plaintiff would be entitled to sue the parent for damages resulting from its purchases from the subsidiary).

1303, 1313 (Fed. Cir. 2004) (the sister corporation "relationship by itself is not sufficient to permit [the patentee] to claim [the other entity's] lost profits"). Indeed, this Court has declined to adopt "the general proposition that parents may recover the lost profits of their subsidiaries," noting that the parent "may not blur the legal distinction between itself and [its subsidiary] to recover damages that [the parent] has not directly suffered. *Novozymes A/S* 474 F. Supp. 2d at 605, n.16. By contrast, the parent corporation may bring a claim in the absence of its subsidiary where the parent "possesses all [its] rights, privileges and liabilities." *National Union Fire Ins. Co. of Pittsburgh v. Stauffer Chemical Co.*, 1991 WL 138431, at *4 n.6 (Del. Super. 1991) (citing *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 1985 WL 1189, at *1 (N.D. Ill. May 8, 1985)) (a parent corporation has standing to sue and was the real party in interest with respect to claims for damages incurred by its two subsidiaries, where the two subsidiaries dissolved and the parent corporation succeeded to the rights and liabilities of its dissolved subsidiaries).

Here, Plaintiffs have offered no competent evidence concerning the relationship of Stadion to any named Plaintiff, let alone how Stadion runs its business or handles its finances. To the extent that it appears that Stadion may be a subsidiary of GTF, as Kleinrichert suggested (Trial Tr. 1769:7), there has been no evidence adduced by Plaintiffs that any loss suffered by Stadion would flow to GTF or to any other Plaintiff. As the Court explained in *Novozymes*

> Like the corporations in *Poly-America*, Novozymes has structured itself and its subsidiaries for its own goals and purposes. Novozymes must take the burdens of that structure along with the benefits. Novozymes may not blur the legal distinction between itself and NZNA to recover damages that Novozymes has not directly suffered.

474 F. Supp. 2d at 604-05.

The legal distinction between Stadion and Plaintiffs is particularly significant in light of the fact that — as compared to the plaintiff in *Novozymes* — Plaintiffs do not even seek to recover for any out-of-pocket losses to Stadion. Rather, Plaintiffs seek to recover for a loss in

book value of certain capital assets owned by Stadion, investments that were made long ago and that have all been carried on the books for Stadion for more than 10 years (some more than 20 years) (DTX 765). As Defendants' expert Greenhalgh explained, the book value of assets in general bears little or no relation to their economic value:

> [T]he book value has nothing to do with the market value of an asset. And you can only suffer economic damages if you have lost something of economic value. So you can't even look at book value to determine whether or not a company has suffered a loss. The book value is not telling you what the economic value is. It's the wrong thing to look at.

Trial Tr. 2279:6-12. Even Kleinrichert acknowledged that book value may not represent the economic value of assets. Trial Tr. 1766:2-3. Greenhalgh also explained that the potential disparity between book value and economic value will only increase the longer the assets are held on the books: "the further time you go, there is no reason to think there would be any relationship between depreciation for tax and market value." Trial Tr. 2281:15-17. Consequently, there is no basis upon which to conclude that the supposed write-down envisioned by Kleinrichert would in any way represent an economic loss even to Stadion, let alone to any of Plaintiffs here.

For all of the foregoing reasons, the Court should rule as a matter of law that Plaintiffs have no right to damages relating to the purported impairment of the book value of the Hamburg facility.

Dated: August 4, 2008

*Of Counsel*:

PROSKAUER ROSE LLP
Bradley I. Ruskin
Colin A. Underwood
Jennifer R. Scullion
1585 Broadway
New York, NY 10036-8299
212-969-3000

ASHBY & GEDDES

*/s/ Philip Trainer, Jr.*
_____
Philip Trainer, Jr. (I.D. #2788)
Tiffany Geyer Lydon (I.D. #3950)
Toni-Ann Platia (I.D. #5051)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
302-654-1888
ptrainer@ashby-geddes.com
tlydon@ashby-geddes.com
tplatia@ashby-geddes.com