August 4, 2008

## TABLE OF CONTENTS

FINAL JURY INSTRUCTIONS ..................................................................................... 1
**Initial Jury Instruction 1** *Court's Final Instructions to the Jury* ............................... 1
**Initial Jury Instruction 2** *Evidence Defined* ............................................................ 2
**Initial Jury Instruction 3** *Direct and Circumstantial Evidence* ................................ 3
**Initial Jury Instruction 4** *Consideration of Evidence* .............................................. 4
**Initial Jury Instruction 5** *Statements of Counsel* .................................................... 5
**Initial Jury Instruction 6** *Credibility of Witnesses* .................................................. 6
**Initial Jury Instruction 7** *Expert Testimony* ........................................................... 7
**Initial Jury Instruction 7A** *Dr. Zimbalist's Testimony* ........................................... 8
**Initial Jury Instruction 8** *Number of Witnesses* ..................................................... 9
**Initial Jury Instruction 9** *Burden of Proof: Preponderance of the Evidence* ........ 10
**Initial Jury Instruction 10** *Depositions/Videos* ................................................... 11
**Initial Jury Instruction 11** *Corporations (previously from "Final Instructions")* .............. 12
**Antitrust Jury Instruction 1** *Antitrust Claims: Sherman Act Sections 1 and 2 Purpose
     of Antitrust Laws and Overview of Plaintiffs' Antitrust Claims* ................................... 13
**Antitrust Jury Instruction 2** *Antitrust Claims: Sherman Act Sections 1 and 2 Private
     Actions Under the Antitrust Laws* ............................................................................ 14
**Antitrust Jury Instruction 3** *Antitrust Claims: Sherman Act Sections 1 and 2
     Sherman Act - Purpose* .......................................................................................... 15
**Antitrust Jury Instruction 4** *Antitrust Claims: Sherman Act Section 1 - Generally* ............. 16
**Antitrust Jury Instruction 5** *Single Entity or Enterprise Defense* ........................... 17
**Antitrust Jury Instruction 6** *Unreasonable Restraint of Trade* ............................... 19
**Antitrust Jury Instruction 10** *Antitrust Claims: Sherman Act Section 1 Rule of
     Reason – Overview* ................................................................................................ 20
**Antitrust Jury Instruction 11** *Antitrust Claims: Sherman Act Section 1 Rule of
     Reason – Proof of Competitive Harm* ...................................................................... 21
**Antitrust Jury Instruction 12** *Antitrust Claims: Sherman Act Sections 1 and 2
     Relevant Market – General* ..................................................................................... 23
**Antitrust Jury Instruction 13** *Rule of Reason – Proof of Relevant Market* ........................... 24
**Antitrust Jury Instruction 14** *Relevant Market – Necessity of Proof* ................................... 26
**Antitrust Jury Instruction 15** *Antitrust Claims: Sherman Act Section 1 Rule of
     Reason – Evidence of Competitive Benefits* ............................................................ 27
**Antitrust Jury Instruction 16** *Rule of Reason – Balancing the Competitive Effects* ............ 28
**Antitrust Jury Instruction 17** Sherman Act Section 1 - Contract, Combination or
     Conspiracy Definition, Existence and Evidence ........................................................ 29
**Antitrust Jury Instruction 18** *Antitrust Claims: Sherman Act Section 2 –
     Monopolization General Elements* ........................................................................... 31
**Antitrust Jury Instruction 19** *Antitrust Claims: Sherman Act Section 2 -
     Monopolization Monopoly Power Defined* ............................................................... 32
**Antitrust Jury Instruction 20** *Antitrust Claims: Sherman Act Section 2 –
     Monopolization Existence of Monopoly Power – Indirect Proof* ................................ 33
**Antitrust Jury Instruction 21** *Monopolization: Relevant Market - General* ...................... 35
**Antitrust Jury Instruction 22** *Existence of Monopoly Power – Direct Proof* ...................... 36
**Antitrust Jury Instruction 23** *Antitrust Claims: Sherman Act Section 2 -
     Monopolization Willful Acquisition or Maintenance of Monopoly Power* ................. 37

i

August 4, 2008

**Antitrust Jury Instruction 24** *Antitrust Claims: Sherman Act Section 2 - Attempt to Monopolize General Elements* ........................................................... 39

**Antitrust Jury Instruction 25** *Specific Intent* ........................................................ 40

**Antitrust Jury Instruction 26** *Antitrust Claims: Sherman Act Section 2 - Attempt to Monopolize Danger of Success* .................................................................. 41

**Antitrust Jury Instruction 27** *Antitrust Claims: Sherman Act Section 2 - Conspiracy to Monopolize General Elements* ............................................................... 42

**Antitrust Jury Instruction 28** *Antitrust Damages: Sherman Act Sections 1 and 2 Introduction and Purposes* .......................................................................... 43

**Antitrust Jury Instruction 29** *Antitrust Injury and Causation* ............................. 44

**Antitrust Jury Instruction 30** *Antitrust Damages: Sherman Act Sections 1 and 2 Expert Testimony* ...................................................................................... 46

**Antitrust Jury Instruction 31** *Speculation Not Permitted* ..................................... 47

**Antitrust Jury Instruction 32** *Causation and Disaggregation* ............................. 48

**Antitrust Jury Instruction 33** *Mitigation* ............................................................. 49

**Antitrust Jury Instruction 34** *Trebling of Damages* ............................................. 50

**Anitrust Jury Instruction 35** ***Other Conduct*** ...................................................... 51

**Final Instruction**  *Deliberation and Verdict* ........................................................ 52

DB02:6902512.1                                                                                                    066145.1001
7642/20504-015 Current/11749835v1                                                          08/04/2008 11:37 AM

August 4, 2008

# FINAL JURY INSTRUCTIONS

## Initial Jury Instruction 1
*Court's Final Instructions to the Jury*

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read. You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

I will explain the positions of the parties and the law you will apply in this case. Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, by a preponderance of the evidence, Defendants are liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

1

August 4, 2008

**Initial Jury Instruction 2**
*Evidence Defined*

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

2

August 4, 2008

**Initial Jury Instruction 3**
*Direct and Circumstantial Evidence*

You have heard the terms direct and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

3

August 4, 2008

**Initial Jury Instruction 4**
*Consideration of Evidence*

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

4

August 4, 2008

**Initial Jury Instruction 5**
*Statements of Counsel*

A further word about statements and arguments of counsel. The attorney's statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent with the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

5

August 4, 2008

### Initial Jury Instruction 6
*Credibility of Witnesses*

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial. You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

August 4, 2008

**Initial Jury Instruction 7**
*Expert Testimony*

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

7

August 4, 2008

**Initial Jury Instruction 7A**
*Dr. Zimbalist's Testimony*

You have heard testimony in this case that Plaintiffs' expert witness Dr. Zimbalist and Plaintiffs' counsel together prepared a document that contained some of the questions he would be asked and some of the answers he expected to give. You also heard that Dr. Zimbalist took that document with him to the witness stand, that he made use of it during his testimony, and that the document itself and the fact that he had it with him while testifying were not disclosed to the Court or to Defendants' counsel. None of this should have been done. You have heard Dr. Zimbalist's testimony about that issue and it is up to you to draw your own conclusions about how that issue affects your assessment of the witness's credibility and his testimony.

.

DB02:6902512.1
7642/20504-015 Current/11749835v1

066145.1001
08/04/2008 11:37 AM

August 4, 2008

**Initial Jury Instruction 8**
*Number of Witnesses*

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

9

August 4, 2008

**Initial Jury Instruction 9**
*Burden of Proof: Preponderance of the Evidence*

This is a civil case. Plaintiffs have the burden of proving their claims and damages by what is called a preponderance of the evidence. Proof by a preponderance of the evidence means proof that something is more likely true than not. It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not.

Preponderance of the evidence does not depend on the number of witnesses. If the evidence as to a particular element or issue is evenly balanced, the party has not proved the element by a preponderance of the evidence and you must find against that party. In determining whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who called them and all exhibits received into evidence regardless of who produced them.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt. That burden does not apply in a civil case and you should therefore put it out of your mind in considering whether or not a party has met its burden of proof on various issues. If Plaintiffs fail to meet their burden on any claim, you must render a verdict for Defendants on that claim.

DB02:6902512.1
7642/20504-015 Current/11749835v1

066145.1001
08/04/2008 11:37 AM

August 4, 2008

**Initial Jury Instruction 10**
*Depositions/Videos*

During the trial of this case, certain testimony has been read to you by way of deposition or a video excerpt of such a deposition has been shown, consisting of sworn answers to questions asked of the witness in advance of the trial by one or more attorneys for the parties in the case.

The testimony of a witness who, for some reason, could not be compelled to testify from the witness stand may be presented in writing under oath, or by way of videotape, in the form of a deposition. Such testimony is entitled to the same consideration, and is to be judged as to credibility, and weighed, and otherwise considered by the jury, insofar as is possible, in the same way as if the witness had been present and had testified from the witness stand.

11

August 4, 2008

**Initial Jury Instruction 11**
*Corporations*
*(previously from "Final Instructions")*

A corporation is a person under the law. A corporation acts only through its agents. A corporation's agents includes its directors, officers, employees, or others acting on its behalf. A corporation is not capable under the law of conspiring with its own agents or with its unincorporated divisions or its wholly-owned subsidiaries. In other words, a decision of the Board of Directors or of the management of a corporation does not constitute an agreement in and of itself with a party outside of the corporation; this is how a corporation takes action. Through its agents, however, a corporation may be capable of conspiring with other persons or independent corporations who are not part of the corporation.

A corporation is entitled to the same fair trial as a private individual. The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence. All persons, including corporations, are equal before the law.

DB02:6902512.1
7642/20504-015 Current/11749835v1
066145.1001
08/04/2008 11:37 AM

August 4, 2008

**Antitrust Jury Instruction 1**
*Antitrust Claims: Sherman Act Sections 1 and 2*
*Purpose of Antitrust Laws and Overview of Plaintiffs' Antitrust Claims*

In this case, the Plaintiffs, Deutscher Tennis Bund (German Tennis Federation), Rothenbaum Sport GmbH, and the Qatar Tennis Federation (who I will refer to collectively as the "Plaintiffs"), assert that Defendants ATP Tour, Inc., Etienne de Villiers, Charles Pasarell, Graham Pearce, Jacco Eltingh, Perry Rogers, and Iggy Jovanovic (who I will refer to individually and/or collectively as the "Defendants"), violated the antitrust laws of the United States. Specifically, Plaintiffs contend that Defendants violated laws commonly known as Sections 1 and 2 of the Sherman Antitrust Act.

Defendants deny those claims.

The purposes of the antitrust laws are to preserve and advance our system of free and open competition and to secure to everyone an equal opportunity to engage in business, trade, and commerce, by preventing unreasonable restraint or monopolization of any business or industry so that the consuming public may receive better goods and services at lower cost. The law promotes the concept that free competition results in the best allocation of economic resources; but the law does not guarantee success to those who enter into business because it also recognizes that in the natural operation of our economic system, some competitors are going to lose business, or even go out of business, while others gain and prosper.

DB02:6902512.1
7642/20504-015 Current/11749835v1

066145.1001
08/04/2008 11:37 AM

August 4, 2008

**Antitrust Jury Instruction 2**
*Antitrust Claims: Sherman Act Sections 1 and 2*
*Private Actions Under the Antitrust Laws*

This type of lawsuit is known as a private antitrust civil action. Private antitrust actions are a means of enforcing the antitrust laws, because they serve to deter defendants who have violated the antitrust laws from violating the law in the future.

Plaintiffs have brought two separate antitrust claims. Plaintiffs' first claim is under Section 1 of the Sherman Act, which prohibits a person or corporation from entering into contracts, combinations and conspiracies that unreasonably restrain trade. Plaintiffs allege that Defendants entered into agreements, combinations and conspiracies to restructure men's professional tennis that unreasonably restrained trade in the market(s) for top-tier men's professional tennis, player services for top-tier men's professional tennis, and/or sanctions for top-tier men's professional tennis.

Plaintiffs' second claim is under Section 2 of the Sherman Antitrust Act, which prohibits a person or a corporation from maintaining a monopoly in any part of our country's trade or commerce. In this case, Plaintiffs allege that Defendants unlawfully gained and maintained a monopoly in the relevant market(s); conspired to gain and maintain a monopoly in the relevant market(s); and attempted to gain and maintain a monopoly in the relevant market(s).

14

August 4, 2008

**Antitrust Jury Instruction 3**
*Antitrust Claims: Sherman Act Sections 1 and 2*
*Sherman Act - Purpose*

The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

15

August 4, 2008

**Antitrust Jury Instruction 4**
*Antitrust Claims: Sherman Act Section 1 - Generally*

Plaintiffs challenge Defendants' conduct under Section 1 of the Sherman Act. Section 1 prohibits contracts, combinations and conspiracies that unreasonably restrain trade. To establish a violation of Section 1 of the Sherman Act, Plaintiffs must prove the following:

First, the existence of a contract, combination or conspiracy between or among at least two separate persons;

Second, that the contract, combination or conspiracy unreasonably restrains or will unreasonably restrain trade; and

Third, that the restraint caused the Plaintiff(s) to suffer an injury to its business or property.

16

August 4, 2008

## Antitrust Jury Instruction 5
*Single Entity or Enterprise Defense*[1]

First, as a threshold matter, in order to satisfy the element of an agreement, there must be at least two separate persons or corporations who have reached an agreement or understanding in order to find a violation of Section One. The internal decisions of a unified business enterprise do not give rise to claims under Section One of the Sherman Act. A decision agreed to by a Board of Directors on behalf of a unified business enterprise does not constitute an agreement between separate actors. You are instructed that the directors of ATP, acting in their capacity as directors, are not separate entities capable of conspiring with ATP.

Furthermore, where separate persons or corporations are commonly controlled or substantially integrated in their operations, they may be considered a "single entity" or "single enterprise" under the antitrust laws. No combination or conspiracy is possible under the law between corporations that are commonly controlled or substantially integrated, and that regularly conduct their business affairs in such a manner as to constitute, in effect, a single business entity or enterprise.[2] The law permits, and in fact encourages, cooperation inside an integrated business enterprise to better facilitate competition between that enterprise and other producers.[3]

An issue you will be called upon to decide is whether the ATP and its members function as a single business entity or single enterprise with respect to operating and participating in the ATP Tour, including with respect to the categorization of tournament members, the creation of an annual calendar, the setting of ranking points to be awarded for performance in different ATP events, and the adoption of rules pertaining to when and where player members shall play. Plaintiffs contend that the ATP is an independent business actor that competes with its member tournaments in various alleged product markets. Defendants contend that the ATP and its members function as a single economic enterprise for the purpose of producing the ATP brand of professional tennis through the ATP World Tour and for the purpose of carrying out the core functions of a global professional tennis tour.

Participants in such an enterprise may agree on all core functions of the integrated entity, including what products are produced, how, when and where to produce the products, who to sell the products to, how much of the products should be produced, and at what price the products are sold.[4] Although relevant to your consideration, it is not necessary for members of such an integrated enterprise to share common corporate ownership.[5] In determining whether, with respect to the challenged conduct, a membership organization constitutes a single business entity

---

[1] *Copperweld v. Independence Tube*, 467 U.S. 752 (1984); *Toscano v. Professional Golfers Ass'n*, 258 F.3d 978, (9th Cir. 2001); ; *Seabury v. PGA*, 878 F. Supp. 771 (D. Md. 1994).

[2] *Texaco v. Dagher*, 547 U.S. 1, 6 (2006); *Copperweld v. Independence Tube*, 467 U.S. 752 (1984); *HealthAmerica Penn., Inc. v. Susquehanna Health Sys.*, 278 F. Supp. 2d 423, 435 (M.D. Pa. 2003).

[3] *Chicago Prof'l Sports v. NBA*, 95 F.3d 593, 598 (7th Cir. 1996); *Am. Needle v. New Orleans Saints*, 496 F. Supp. 2d 941, 943 (N.D. Ill. 2007).

[4] *Texaco v. Dagher*, 547 U.S. 1, 6 (2006).

[5] *Am. Needle v. New Orleans Saints*, 496 F. Supp. 2d 941, 944 (N.D. Ill. 2007); *Williams v. I.B. Fischer Nevada*, 794 F. Supp. 1026, 1032 (D. Nev. 2003), *aff'd* 999 F.2d 445 (9th Cir. 1993).

August 4, 2008

or enterprise, the most important consideration is whether the organization's members primarily compete with one another for customers of their own product, or whether the organization's members compete with outside producers of different but competing products.[6]  Other factors you may consider are whether they share common ownership; whether they share expenses, capital expenditures, profits or losses; whether the tournaments and ATP are managed independently; and whether the coordination between ATP and its member tournaments is necessary to create the product ATP sells.

You must consider whether any challenged conduct involving ATP and its members was undertaken as a single business entity or enterprise, or whether it represented actions taken by one or more separate, independent actors.[7]

---

[6] *Chicago Prof'l Sports v. NBA*, 95 F.3d 593, 600 (7th Cir. 1996);  *see also Continental v. GTE Sylvania*, 433 U.S. 36, 52 n. 19 (1977) ("The primary concern of antitrust law" is "interbrand," not "intrabrand," competition.).

[7] *Am. Needle v. New Orleans Saints*, 496 F. Supp. 2d 941, 943 (N.D. Ill. 2007).

18

August 4, 2008

**Antitrust Jury Instruction 6**
*Unreasonable Restraint of Trade*

As common sense would tell you, and as I have told you, the antitrust laws do not prohibit every business agreement which affects trade or every agreement which may restrain or influence competition. The law prohibits only unreasonable restraints of trade. Your task is to determine whether any agreement among the Defendants and any separate entity or entities is an unreasonable restraint of trade. As I will instruct you in more detail below, in order to arrive at your conclusion, you are to consider all of the circumstances surrounding the agreement, including, among other things:

- the nature of the industry involved;

- any facts that are unique to the particular industry involved;

- the nature of the alleged agreement and restraint, and its actual and probable effect;

- the history of the alleged restraint;

- the reasons for adopting the particular practice which is alleged to be a restraint;

- whether individual competitors lose their freedom to compete;

- whether input prices are lower or output prices are higher than they otherwise would be; and

- whether prices and output are responsive to consumer preferences.

19

August 4, 2008

**Antitrust Jury Instruction 10**
*Antitrust Claims: Sherman Act Section 1*
*Rule of Reason – Overview*

Under Section 1 of the Sherman Act, a restraint of trade is illegal if it is found to be unreasonable. You must determine, therefore whether the restraints challenged here are unreasonable. The restraints alleged here are: the channeling of players to certain events via rules, regulations, bonuses and sanctions; the creation and sale of an artificially limited number of sanctions which are required if a tournament is to attract players; market divisions among the ATP and its alleged competitors; and the limitation and/or cap of output of top-tier men's professional tennis. In making this determination, you must first determine whether Plaintiffs have carried their burden to show that any challenged restraint has resulted or is likely to result in a substantial harm to competition in a relevant product and geographic market(s). If you find that Plaintiffs have carried their burden to show that any challenged restraint results in a substantial harm to competition in a relevant market(s), then you must consider whether the restraint produces countervailing competitive benefits. If you find that it does, then you must balance the competitive harm against the competitive benefit. The challenged restraint is illegal under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighs the competitive benefit. I will now review each step of the analysis in more detail.

DB02:6902512.1
7642/20504-015 Current/11749835v1

066145.1001
08/04/2008 11:37 AM

August 4, 2008

**Antitrust Jury Instruction 11**
*Antitrust Claims: Sherman Act Section 1*
*Rule of Reason – Proof of Competitive Harm*

As I mentioned, in order to prove that the challenged restraint is unreasonable, Plaintiffs have the burden of demonstrating that a restraint has resulted or is likely to result in a substantial harm to competition. Although it may be relevant to the inquiry, harm that occurs merely to the individual business of Plaintiffs is not sufficient, by itself, to demonstrate harm to competition generally. That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.

Furthermore, it is Plaintiffs' burden to show that the harm to competition occurred in an identified market, known as a "relevant market". There are two aspects to a relevant market. The first aspect is known as the relevant product market. The second aspect is known as the relevant geographic market.

If you find that Plaintiffs have carried their burden to show the existence of a relevant market(s) then you must determine whether Plaintiffs also have carried their burden to show that a challenged restraint has or is likely to have a substantial harmful effect on competition in that market. A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, and higher product quality. If the challenged conduct has not resulted in or is not likely to result in higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm and you should find that the challenged conduct was not unreasonable.

In determining whether the challenged restraint has produced or is likely to produce competitive harm, you may look at the following factors: the effect of the restraint on prices, output, product quality and service; the purpose and nature of the restraint; the nature and structure of the relevant market, both before and after the restraint was imposed; the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed; and whether the defendant(s) possesses "market power."

The last factor mentioned, market power, has been defined as an ability profitably to raise prices charged above those that would be charged in a competitive market for a sustained period of time, or to pay lower prices than would be charged in a competitive market for a sustained period of time. A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not, without more, market power. An important factor in determining whether the defendant possesses market power is the defendant's market share; that is, its percentage of the products or services bought or sold in the relevant market by all competitors. Other factors that you may consider in determining whether the Defendant(s) have market power include how ATP views itself; the testimony of individuals regarding the nature of the relevant market(s); the number of participants in the relevant market(s); whether Defendants have control over relevant input markets; the possible barriers to entry in the relevant market(s). If the Defendant(s) do not possess a substantial market share, it is less likely that they possess market power. If the

21

August 4, 2008

Defendant(s) do not possess this kind of power, then it is less likely that the challenged restraint has resulted or will result in a substantial harmful effect on competition in the market(s).

DB02:6902512.1
7642/20504-015 Current/11749835v1

066145.1001
08/04/2008 11:37 AM

August 4, 2008

**Antitrust Jury Instruction 12**
*Antitrust Claims: Sherman Act Sections 1 and 2*
*Relevant Market – General*

Plaintiffs have the burden of proving by a preponderance of the evidence that the ATP Tour had market power in a relevant market. Defining the relevant market is essential because you are required to make a judgment about whether the ATP Tour has monopoly power in a properly defined economic market. To make this judgment, you must be able to determine what, if any, economic forces restrain the ATP Tour's freedom to set prices for or restrict the input markets for player services and tournament memberships/sanctions and the output markets for sponsorships, broadcasters, and fans. The most likely and most important restraining force will be actual and potential competition from other firms and their products or services. This includes all firms and products or services that act as restraints on the ATP Tour's power to set prices as it pleases. All the firms and products or services that exert this restraining force are within what is called the relevant market.

There are two aspects you must consider in determining whether Plaintiffs have met their burden to prove the relevant market by a preponderance of the evidence. The first is the relevant product market; the second is the relevant geographic market.

23

August 4, 2008

**Antitrust Jury Instruction 13**
*Rule of Reason – Proof of Relevant Market*

As I mentioned, Plaintiffs must show that the harm to competition occurred in an identified market, known as a "relevant market." There are two aspects to a relevant market. The first aspect is known as a relevant product market. The second aspect is known as the relevant geographic market. It is Plaintiffs' burden to prove the existence of a relevant market.

### Relevant Product Market

The basic idea of a relevant product market is that it includes all products that are reasonable substitutes for each other from a buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes. For example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material – such as aluminum foil, cellophane, or even plastic containers – to be reasonable alternatives, then all those products would be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you should consider whether a small but significant permanent increase in the price of one product would result in a substantial number of consumers switching from that product to another. Generally speaking, a small but permanent increase in price is approximately a five percent increase in price not due to external cost factors. If you find that such switching would occur, then you should conclude that the products are in the same product market.

In evaluating whether various products are reasonably interchangeable or are reasonable substitutes for each other, you may also consider: (1) consumers' views on whether the products are interchangeable; (2) the relationship between the price of one product and sales of another; (3) the presence or absence of specialized vendors; (4) the perceptions of either industry or the public as to whether the products are in separate markets; (5) the views of Plaintiffs and Defendants regarding who their respective competitors are; and (6) the existence or absence of different customer groups or distribution channels.

In this case, Plaintiffs define the relevant product markets as the market for the production of top-tier men's professional tennis, the market for player services for top-tier men's professional tennis, the market for hosting top-tier men's professional tennis, and/or the market for live top-tier men's professional tennis. By contrast, Defendants assert that Plaintiffs have failed to prove a proper relevant product market because Defendants claim that Plaintiffs' alleged product markets do not include all reasonably interchangeable products or substitutes. If you find that Plaintiffs have proven a relevant product market or markets that includes all reasonably interchangeable products or substitutes, then you should continue to evaluate the remainder of Plaintiffs' claim with respect to that market or those markets. However, if you find that Plaintiffs have failed to prove such a market, then you must find in Defendants' favor on this claim.

24

August 4, 2008

### Relevant Geographic Market

For each relevant product market you determine that Plaintiffs have proven, Plaintiffs must also prove a relevant geographic market. The relevant geographic market for a given relevant product market is the area in which the defendant faces competition from other firms that compete in that relevant product market and to which customers can reasonably turn for purchases. When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one area have substantial effects on prices or sales in another area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or even smaller. The relevant geographic market for one relevant product market may be larger or smaller than that for a different relevant product market.

Plaintiffs have the burden of proving the relevant geographic market by a preponderance of the evidence. In this case, Plaintiffs claim that the relevant geographic market for each of these markets is global. By contrast, Defendants assert that Plaintiffs have failed to prove a proper geographic market. In determining whether Plaintiffs have met their burden and proven that their proposed geographic market is proper, you may consider several factors, including:

- The geographic area in which the relevant products are sold and where customers for the relevant products are located;

- The geographic area to which customers turn for supply of the relevant products or have seriously considered turning; and

- The geographic areas that suppliers of the relevant products view as potential sources of competition.

DB02:6902512.1
7642/20504-015 Current/11749835v1

066145.1001
08/04/2008 11:37 AM

August 4, 2008

**Antitrust Jury Instruction 14**
*Relevant Market – Necessity of Proof*

If, after considering all the evidence, you find that Plaintiffs have proven by a preponderance of the evidence both a relevant product market and a relevant geographic market, then you must find that Plaintiffs have met the relevant market requirement and you must consider the remaining elements of this claim.

If you find that Plaintiffs have failed to prove by a preponderance of the evidence either a relevant product market or a relevant geographic market, then you must find for Defendants and against Plaintiffs on their antitrust claims.

26

August 4, 2008

**Antitrust Jury Instruction 15**
*Antitrust Claims: Sherman Act Section 1*
*Rule of Reason – Evidence of Competitive Benefits*

If you find that Plaintiffs have proved that the challenged restraint resulted in substantial harm to competition in a relevant market, then you next must determine whether the restraint also benefits competition in other ways. In this case, Defendants contend that the challenged restraint benefits competition the following way(s): increased product quality and consistency; improved efficiency; greater predictability; increased marketing; increased promotion and greater availability of consumer information; expanded product availability; increased investment. If you find that Defendants have proven that the challenged restraint does result in competitive benefits, then you also must consider whether the restraint was reasonably necessary to achieve the benefits. If Plaintiffs prove that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraint.

27

August 4, 2008

**Antitrust Jury Instruction 16**
*Rule of Reason – Balancing the Competitive Effects*

If you find that the challenged restraint(s) were reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint(s). If the competitive harm substantially outweighs the competitive benefits, then the challenged restraint(s) are unreasonable. If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraint(s) are not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors.

DB02:6902512.1
7642/20504-015 Current/11749835v1

066145.1001
08/04/2008 11:37 AM

August 4, 2008

**Antitrust Jury Instruction 17**
Sherman Act Section 1 - Contract, Combination or Conspiracy
Definition, Existence and Evidence

Plaintiffs allege that Defendants participated in a conspiracy to restrain trade by agreeing to (i) control players services for top-tier men's professional tennis tournaments by requiring those players to participate in all of the ATP's favored tournaments in order to meaningfully participate in the Tour, thereby precluding the non-favored ATP tournaments, and all non-ATP tournaments, from competing for those players in an open market; and (ii) limit the number of top-tier men's professional tennis tournaments while excluding all others from competition, thereby deriving cartel-related, monopoly profits.

A conspiracy is an agreement by two or more persons to accomplish some unlawful purpose or to accomplish a lawful purpose by unlawful means.

Plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

First, that the alleged conspiracy existed; and

Second, that Defendant(s) knowingly became a member of that conspiracy; knowingly means voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

A conspiracy is a kind of "partnership" in which each person found to be a member of the conspiracy is liable for all acts and statements of the other members made during the existence of and in furtherance of the conspiracy. To create such a relationship, two or more persons must enter into an agreement that they will act together for some unlawful purpose or to achieve a lawful purpose by unlawful means.

To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement; that they met together; or that they directly stated what their object or purpose was, or the details of it, or the means by which they would accomplish their purpose. The agreement itself may have been entirely unspoken. What the evidence must show to prove that a conspiracy existed is that the alleged members of the conspiracy in some way came to an agreement to accomplish a common purpose. It is the agreement to act together that constitutes the conspiracy. Whether the agreement succeeds or fails does not matter.

A conspiracy may be formed without all parties coming to an agreement at the same time, such as where competitors, without previous agreement, separately accept invitations to participate in a plan to restrain trade. The agreement may be shown if the proof establishes that the parties knowingly worked together to accomplish a common purpose. It is not essential that all persons acted exactly alike, nor it is necessary that they all possessed the same motive for entering the agreement.

Direct proof of an agreement may not be available. A conspiracy may be disclosed by the circumstances or by the acts of the members. Therefore, you may infer the existence of an

29

August 4, 2008

agreement from what you find the alleged members actually did, as well as from the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not establish the existence of a conspiracy unless the evidence tends to exclude the possibility that the persons were acting independently. If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

It is not necessary that the evidence show that all of the means or methods claimed by Plaintiffs were agreed upon to carry out the alleged conspiracy; nor that all of the means or methods that were agreed upon were actually used or put into operation; nor that all the persons alleged to be members of the conspiracy actually were members. What the evidence must show is that the alleged conspiracy of two or more persons existed, that one or more of the means or methods alleged was used to carry out its purpose, and that Defendant(s) knowingly became a member of the conspiracy.

In determining whether an agreement has been proved, you must view the evidence as a whole and not piecemeal. In considering the evidence, you first should determine whether or not the alleged conspiracy existed. If you conclude that the conspiracy did exist, you should next determine whether the each defendant knowingly became a member of that conspiracy with the intent to further its purposes.[8]

---

[8]    ABA SECTION OF ANTITRUST LAW, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 EDITION B-2 (2005).

August 4, 2008

**Antitrust Jury Instruction 18**
*Antitrust Claims: Sherman Act Section 2 – Monopolization*
*General Elements*

Plaintiffs allege that they were injured by the Defendants' unlawful monopolization of the markets for top-tier men's professional tennis; player services for top-tier men's professional tennis; and sanctions for top-tier men's professional tennis tournaments. To prevail on this claim, Plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

**First**, that the alleged market is a valid antitrust market;

**Second**, that the ATP Tour possessed monopoly power in that market;

**Third**, that the Defendants "willfully" acquired or maintained monopoly power in that market by engaging in anticompetitive conduct; and

**Fourth**, that the Plaintiffs were injured in their business or property because of the Defendants' anticompetitive conduct.

If you find that Plaintiffs have failed to prove any of these elements as to any Defendant, then you must find for that Defendant and against Plaintiffs on this claim. If you find that Plaintiffs have proved each of these elements by a preponderance of the evidence, then you must find for Plaintiffs and against Defendants on this claim.

31

August 4, 2008

**Antitrust Jury Instruction 19**
*Antitrust Claims: Sherman Act Section 2 - Monopolization*
*Monopoly Power Defined*

Monopoly power is the power to control prices and exclude competition in a relevant antitrust market. More precisely, a firm is a monopoly if it can profitably raise prices substantially above the competitive level for a significant period of time. To prove their monopolization claim, one of the elements Plaintiffs must prove is that the ATP Tour has monopoly power in a relevant antitrust market. However, monopoly ownership, in and of itself, is not unlawful.

I will provide further instructions about how you may determine whether Plaintiffs have met their burden of proving monopoly power in a relevant market.

32

August 4, 2008

**Antitrust Jury Instruction 20**
*Antitrust Claims: Sherman Act Section 2 – Monopolization*
*Existence of Monopoly Power – Indirect Proof*

If you find that Plaintiffs have proven a relevant market, then you should determine whether the ATP Tour has monopoly power in that market. As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market. Plaintiffs have attempted to use evidence of the structure of the market to show that the ATP Tour has monopoly power. The evidence presented by the parties includes evidence of the ATP Tour's market share, alleged barriers to entry, and the number and size of other competitors. If this evidence establishes that the ATP Tour has the power to control prices and exclude competition in the relevant antitrust market(s), then you may conclude that the ATP Tour has monopoly power in that market(s).

**Market Share**

The first factor that you should consider is the ATP Tour's market share. Based on the evidence that you have heard about the ATP Tour's market share, you should determine the ATP Tour's market share as a percentage of total industry sales and other aspects of the relevant market(s).

A market share above 50 percent may be sufficient to support an inference that Defendants have monopoly power, but in considering whether defendant has monopoly power it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors. Along with defendants' market share, these factors should inform you as to whether defendants have monopoly power. The likelihood that a company has monopoly power is stronger the higher that company's share is above 50 percent.

A market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has monopoly power. However, if you find that the other evidence demonstrates that Defendants do, in fact, have monopoly power despite having a market share below 50 percent, you may conclude that defendants have monopoly power.

**Barriers to Entry**

You may also consider whether there are barriers to entry into the relevant market(s). Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. Barriers to entry might include rules and regulations, controls over necessary inputs, specialized marketing practices, and the reputation of the entities already participating in the market (or the brand name recognition of their products or services).

Evidence of low or no entry barriers may be evidence that the ATP Tour does not have monopoly power, regardless of the ATP Tour's market share, because new competitors could enter easily if defendant attempted to raise prices for a substantial period of time. By contrast, evidence of high barriers to entry along with high market share may support an inference that defendant has monopoly power.

33

August 4, 2008

### Number and Size of Competitors

You may consider whether the ATP Tour's competitors are capable of effectively competing. In other words, you should consider whether the financial strength, market shares and number of competitors act as a check on the ATP Tour's ability to price its products or services. If the ATP Tour's competitors are vigorous or have large or increasing market shares, this may be evidence that the ATP Tour lacks monopoly power. On the other hand, if you determine that the ATP Tour's competitors are weak or have small or declining market shares, this may support an inference that defendant has monopoly power.

### Conclusion

If you find that the ATP Tour has monopoly power in the relevant market(s), then you must consider the remaining elements of this claim. If you find that the ATP Tour does not have monopoly power, then you must find for the ATP Tour and against the Plaintiffs on this claim.

34

August 4, 2008

**Antitrust Jury Instruction 21**
*Monopolization: Relevant Market - General*

Plaintiffs must prove by a preponderance of the evidence that the defendants had monopoly power in a relevant market. Defining the relevant market is essential because you are required to make a judgment about whether defendants have monopoly power in a properly defined economic market. To make this judgment, you must be able to determine what, if any, economic forces restrain Defendants' freedom to restrict the supply of player services, restrict the supply of sanctions, set the prices paid to players or to restrict the demand for player services and/or Defendants' freedom to set the prices charged to sponsors, broadcasters and fans or to restrict supply to those consumers. The most likely and most important restraining force will be actual and potential competition from other firms and their products. This includes all firms and products that act as restraints on defendants' power to set prices as they please. All the firms and products that exert this restraining force are considered to be within what is called the relevant market.

There are two aspects you must consider in determining whether plaintiff has met its burden to prove the relevant market by a preponderance of the evidence. The first is the relevant product market; the second is the relevant geographic market.

35

August 4, 2008

**Antitrust Jury Instruction 22**
*Existence of Monopoly Power – Direct Proof*

If you find that Plaintiffs have proven a relevant market, then you should determine whether Defendants have monopoly power in that market. As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market. More precisely, a firm is a monopolist if it can profitably lower and maintain the prices it pays for its inputs substantially below the competitive level for a significant period of time, or if it can profitably raise and maintain the prices it charges for its outputs substantially above the competitive level for a significant period of time.

Plaintiffs have the burden of proving that Defendants have the ability to profitably lower and maintain these input prices substantially below the competitive level for a significant period of time. Plaintiffs also have the burden of proving that Defendants have the ability to profitably raise and maintain these output prices substantially above the competitive level for a significant period of time. Plaintiffs must prove that Defendants have the power to do so by themselves – that is, without the assistance of, and despite competition from, any existing or potential competitors.

If Defendants attempted to maintain these prices above or below competitive levels, but would lose so much business to other competitors that the price increase would become unprofitable and would have to be withdrawn, then Defendants do not have monopoly power.

Similarly, Plaintiffs must prove that Defendants have the ability to exclude competition. For example, if Defendants attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could expand their sales and take so much business that the price increase would become unprofitable and would have to be withdrawn, then Defendants do not have monopoly power.

An ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power. However, the ability to earn high profit margins or a high rate of return does not necessarily mean that Defendants have monopoly power. Other factors may enable a company without monopoly power to sell at higher prices or earn higher profit margins than its competitors, such as the ability to offer superior products or services, the ability to maintain an efficient business operation, superior advertising or marketing, or unique structure of the industry. Evidence that Defendant would lose a substantial amount of sales if it raised prices substantially, or that the Defendants' profit margins were similar to or low compared to its competitors, erratic, and/or decreasing, might be evidence that the Defendants do not have monopoly power.

If you find that Plaintiffs have proven that Defendants have monopoly power in the relevant market, then you must consider the remaining elements of this claim. If you find that Defendants do not have monopoly power, then you must find for Defendants and against the Plaintiffs on this claim.

DB02:6902512.1
7642/20504-015 Current/11749835v1

August 4, 2008

**Antitrust Jury Instruction 23**
*Antitrust Claims: Sherman Act Section 2 - Monopolization*
*Willful Acquisition or Maintenance of Monopoly Power*

The next element Plaintiffs must prove is that the ATP Tour willfully acquired or maintained monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers within the relevant market(s). Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. In addition, you should distinguish the acquisition or maintenance of monopoly power through anticompetitive acts from the acquisition or maintenance of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, which is not lawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals – or the achievement of these goals – unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether the ATP Tour's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

For example, suppose there are five firms that make printers for home computers and that these printers comprised a relevant product market. Suppose also that Firm A developed a more efficient manufacturing process that allowed it to sell profitably at a lower price than its competitors. If Firm A grew its market share and achieved monopoly power by selling profitably at a lower price, it would not be unlawful for Firm A to achieve monopoly power in this way. Developing more efficient processes and developing the ability to sell profitably at lower prices is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct even if it has a negative effect on competitors.

Similarly, in the same example, suppose Firm B developed and patented a revolutionary new printer and consumers so preferred Firm B's printer that Firm B achieved monopoly power. It would not be unlawful for Firm B to achieve monopoly power in this way. Firm B "built a better mousetrap," which is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct.

37

August 4, 2008

By contrast, in the same example, suppose not only that Firm C makes printers, but also that Firm C is the world's only manufacturer of computers and that there are barriers to entry in the computer market such that no other firm will be able to enter that market. Suppose also that Firm C altered its computers in such a way that only Firm C's printers would work with its computers, and that the alteration does not improve the design of Firm C's computers or provide any benefits to competition or consumers - the only effect of the alteration is to exclude competing printer makers from the marketplace. If Firm C thereby prevented its printer competitors from competing and achieved monopoly power, it would be unlawful for Firm C to achieve monopoly power in the printer market in this way.

As these examples show, the acts or practices that result in the acquisition or maintenance of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. They must represent conduct that has made it very difficult or impossible for competitors to compete and that was not taken for legitimate business reasons. You may not find that a company willfully acquired or maintained monopoly power if it has acquired or maintained that power solely through the exercise of superior foresight and skill; or because of natural advantages such as unique geographic access to raw materials or markets; or because of economic or technological efficiency, including efficiency resulting from scientific research; or by obtaining a lawful patent; or because changes in cost or taste have driven out all but one supplier.

If you find that Plaintiffs have proven by a preponderance of the evidence that the ATP Tour willfully acquired or maintained monopoly power through anticompetitive acts, then you must consider whether the Plaintiffs have proved the remaining elements of this claim. If, however, you find that Plaintiffs did not prove this element by a preponderance of the evidence, then you must find for Defendants and against Plaintiffs on this claim.

38

August 4, 2008

**Antitrust Jury Instruction 24**
*Antitrust Claims: Sherman Act Section 2 - Attempt to Monopolize*
*General Elements*

Plaintiffs allege that they were injured by Defendants' unlawful attempt to monopolize the markets for top-tier men's professional tennis; player services for top-tier men's professional tennis; and sanctions for top-tier men's professional tennis tournaments. To prevail on its claim of attempted monopolization, Plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

**First**, that Defendants engaged in anticompetitive conduct.

**Second**, that Defendants had a specific intent to achieve monopoly power in a relevant market;

**Third**, that there was a dangerous probability that Defendants would achieve their goal of monopoly power in the relevant market; and

**Fourth**, that Plaintiffs were injured in their business or property by Defendants' anticompetitive conduct.

If you find that the evidence is insufficient to prove any one or more of these elements against any specific Defendant, then you must find for Defendants and against Plaintiffs on Plaintiffs' claim of attempted monopolization. If you find that the evidence is sufficient to prove all four elements as to a Defendant, then you must find for Plaintiffs and against that Defendant on Plaintiffs' claim of attempted monopolization.

DB02:6902512.1
7642/20504-015 Current/11749835v1

066145.1001
08/04/2008 11:37 AM

August 4, 2008

## Antitrust Jury Instruction 25
*Specific Intent*

Plaintiffs must prove that Defendants had a specific intent to monopolize a relevant market. To do so, Plaintiffs must first prove that the markets they are talking about are relevant markets for antitrust purposes. These markets include the market for top-tier men's professional tennis; player services for top-tier men's professional tennis; and sanctions for top-tier men's professional tennis tournaments. Plaintiffs must then prove that Defendants had a specific intent to monopolize those markets. The Court has instructed you on the relevant market(s), and the Court will next discuss specific intent. If Plaintiffs prove both that a market is a relevant market and that Defendants had a specific intent to monopolize that market, you must find that Plaintiffs have proven this element of their attempted monopolization claim and you should consider the other elements of the claim. If you find that Plaintiffs fail to prove either of these points, then you must find for Defendants on Plaintiffs' attempted monopolization claim.

If you find that Plaintiffs have proven a relevant market, you must then decide whether Defendants had the specific intent to monopolize that market. In other words, you must decide if the evidence shows that Defendants acted with the conscious aim of acquiring the power to control prices and to exclude or destroy competition in the relevant markets.

There are several ways in which Plaintiffs may prove that Defendants had the specific intent to monopolize. There may be evidence of direct statements of defendants' intent to obtain a monopoly in the relevant market. Such proof of specific intent may be established by documents prepared by responsible officers or employees of ATP or the directors at or about the time of the conduct in question or by testimony concerning statements made by such persons. You must be careful, however, to distinguish between a defendant's intent to compete aggressively (which is lawful), which may be accompanied by aggressive language, and a true intent to acquire monopoly power using anticompetitive means.

Even if you decide that the evidence does not prove directly that Defendants actually intended to obtain a monopoly, specific intent may be inferred from what Defendants did. For example, if the evidence shows that the natural and probable consequences of Defendants' conduct in the relevant market was to give Defendants control over prices and to exclude or destroy competition, and that this was plainly foreseeable by defendants, then you may (but are not required to) infer that Defendants specifically intended to acquire monopoly power.

DB02:6902512.1
7642/20504-015 Current/11749835v1

066145.1001
08/04/2008 11:37 AM

August 4, 2008

**Antitrust Jury Instruction 26**
*Antitrust Claims: Sherman Act Section 2 - Attempt to Monopolize*
*Danger of Success*

If you find that Defendants had the specific intent to achieve a monopoly and engaged in significant anticompetitive conduct, you also must determine if the evidence shows the next element of attempt to monopolize: namely, that there was a dangerous probability that Defendant(s) would succeed in achieving monopoly power if they continued to engage in the same or similar conduct.

In determining whether there was a dangerous probability that defendants would acquire the ability to control price in the market(s), you should consider such factors as:

**First**, the ATP Tour, Inc.'s market share;

**Second**, whether the barriers to entry into the market(s) made it difficult for competitors to enter the market(s); and

**Third**, the likely effect of any anticompetitive conduct on the ATP Tour, Inc.'s share of the market(s).

Again, the purpose of looking at these and other factors is to determine whether there was a dangerous probability that Defendant(s) would ultimately acquire monopoly power. A dangerous probability of success need not mean that success was nearly certain, but it does mean that there was a substantial and real likelihood that Defendant(s) would ultimately acquire monopoly power.

41

August 4, 2008

**Antitrust Jury Instruction 27**
*Antitrust Claims: Sherman Act Section 2 - Conspiracy to Monopolize*
*General Elements*

Plaintiffs allege a conspiracy to monopolize in violation of Section 2 of the Sherman Act, which declares unlawful every conspiracy to monopolize interstate or foreign commerce.

To prevail against Defendant(s) on their claim of conspiracy to monopolize, Plaintiffs have the burden of proving by a preponderance of the evidence as to Defendant(s) each of the following elements:

**First**, that an agreement or mutual understanding between two or more persons to obtain or maintain monopoly power in the market(s) for top-tier men's professional tennis, player services for top-tier men's professional tennis, and sanctions for top-tier men's professional tennis tournaments;

**Second**, that Defendant(s) knowingly - that is, voluntarily and intentionally - became a party to that agreement or mutual understanding;

**Third**, that Defendant(s) specifically intended that the parties to the agreement would obtain or maintain monopoly power in the market(s) for top-tier men's professional tennis, player services for top-tier men's professional tennis, and sanctions for top-tier men's professional tennis tournaments;

**Fourth**, that Defendant(s) committed an overt act in furtherance of the conspiracy;

**Fifth**, that Defendant's (or Defendants') activities occurred in or affected interstate or foreign commerce; and

**Sixth**, that Plaintiffs were injured in their business or property because of the conspiracy to monopolize.

If you find that the evidence is sufficient to prove each element as to a Defendant, then you must find for Plaintiffs and against that Defendant on Plaintiffs' conspiracy to monopolize claim. If you find that the evidence is sufficient to prove each element as to a defendant, then you must find for Plaintiffs and against that defendant on Plaintiffs' conspiracy to monopolize claim.

42

August 4, 2008

**Antitrust Jury Instruction 28**
*Antitrust Damages: Sherman Act Sections 1 and 2*
*Introduction and Purposes*

If you find that Defendant(s) violated section 1 or Section 2 of the Sherman Act and that this violation caused injury to Plaintiffs, then you must determine the amount of damages, if any, that Plaintiffs are entitled to recover. The law provides that Plaintiffs should be fairly compensated for all damages to their business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

The purpose of awarding damages in an antitrust case is to put injured plaintiffs as near as possible in the position in which they would have been if the alleged antitrust violation had not occurred. The law does not permit you to award damages to punish a wrongdoer - what we sometimes refer to as punitive damages - or to deter defendants from particular conduct in the future or to provide a windfall to someone who has been the victim of an antitrust violation. You are also not permitted to award to plaintiffs an amount for attorney fees or the costs of maintaining the lawsuit. Antitrust damages are compensatory only. In other words, they are designed to compensate plaintiffs for the particular injuries they suffered as a result of the alleged violation of the law.

DB02:6902512.1
7642/20504-015 Current/11749835v1

066145.1001
08/04/2008 11:37 AM

August 4, 2008

## Antitrust Jury Instruction 29
*Antitrust Injury and Causation*

If you find that Defendants have violated §§ 1 or 2 of the Sherman Act as alleged by Plaintiffs, then you must decide if Plaintiffs are entitled to recover damages from Defendants.

Plaintiffs are entitled to recover damages for an injury to their business or property if they can establish three elements of injury and causation:

**First**, that Plaintiffs were in fact injured as a result of Defendants' alleged violation of the antitrust laws;

**Second**, that Defendants' alleged illegal conduct was a material cause of Plaintiffs' injury; and

**Third**, that Plaintiffs' injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact." For Plaintiffs to establish that they are entitled to recover damages, they must prove by a preponderance of the evidence that they were injured as a result of Defendants' alleged violation of the antitrust laws. Proving the fact of damage does not require Plaintiffs to prove the dollar value of their injury. It requires only that Plaintiffs prove that they were in fact injured by Defendants' alleged antitrust violation. If you find that Plaintiffs have established that they were in fact injured, you may then consider the amount of Plaintiffs damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded established that it was in fact injured.

Plaintiffs must also offer evidence that establishes as a matter of fact and with a fair degree of certainty that Defendants' alleged illegal conduct was a material cause of Plaintiffs' injury. This means that Plaintiffs must have proved that some damage occurred to them as a result of Defendants' alleged antitrust violation, and not some other cause. Plaintiffs are not required to prove that Defendants' alleged antitrust violation was the sole cause of its injury; nor need Plaintiffs eliminate all other possible causes of injury. It is enough if Plaintiffs have proved that the alleged antitrust violation was a material cause of its injury. However, if you find that Plaintiffs' injury was caused primarily by something other than the alleged antitrust violation, then you must find that Plaintiffs have failed to prove that they are entitled to recover damages from Defendants.

Finally, Plaintiffs must establish that their injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If Plaintiffs' injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then Plaintiffs' injuries are antitrust injuries. On the other hand, if Plaintiffs' injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Plaintiffs' injuries are not antitrust injuries and Plaintiffs may not recover damages for those injuries under the antitrust laws. You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against – such as where a competitor offers

44

August 4, 2008

better products or services or where a competitor is more efficient and can charge lower prices and still earn a profit – and the antitrust laws do not permit a plaintiff to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

However, if Plaintiffs can establish that they were in fact injured by Defendants' conduct, that Defendants' conduct was a material cause of Plaintiffs' injury, and that Plaintiffs' injury was the type that the antitrust laws were designed to prevent, then Plaintiff is entitled to recover damages for the injury to its business or property.

45

August 4, 2008

**Antitrust Jury Instruction 30**
*Antitrust Damages: Sherman Act Sections 1 and 2*
*Expert Testimony*

You have heard testimony from Plaintiffs' expert, Gary Kleinrichert, and Defendants' expert, Peter Greenhalgh, regarding the amount of damages to which Plaintiffs claim they are entitled and the proper measure of damages. If you find that any of the pertinent underlying assumptions made by one of these experts in preparing a damage report are not reasonable or are not proven by a preponderance of the evidence, or if you find that one expert's conclusions depend on comparing things which have not been proven to be comparable, then you should consider this in determining the weight -- if any -- you will give these assumptions and the effect they have on Plaintiffs' damages claim.

46

August 4, 2008

## Antitrust Jury Instruction 31
*Speculation Not Permitted*

Damages may not be based on guesswork or speculation. If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages. If the amount of damages attributable to an antitrust violation cannot be separated from the amount of harm caused by factors other than the antitrust violation except through guesswork or speculation, then you may not award damages.

You are permitted to make reasonable estimates in calculating damages. It may be difficult for you to determine the precise amount of damage suffered by Plaintiffs. If Plaintiffs establish with reasonable probability the existence of injury proximately caused by Defendants' antitrust violation, you are permitted to make a just and reasonable estimate of the damages. So long as there is a reasonable basis in the evidence for a damages award, Plaintiffs should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty. The amount of damages must, however, be based on reasonable, non-speculative assumptions and estimates. Plaintiffs must prove the reasonableness of each of the assumptions upon which the damages calculation is based. If you find that Plaintiffs have failed to carry their burden of providing a reasonable basis for determining damages, then your verdict must be for Defendants. If you find that Plaintiffs have provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

DB02:6902512.1
7642/20504-015 Current/11749835v1

066145.1001
08/04/2008 11:37 AM

August 4, 2008

**Antitrust Jury Instruction 32**
*Causation and Disaggregation*

If you find that Defendants violated the antitrust laws and that Plaintiffs were injured by that violation, Plaintiffs are entitled to recover for such injury that was the direct and proximate result of the unlawful acts of Defendants. Plaintiffs are not entitled to recover for injury that resulted from other causes.

Plaintiffs bear the burden of showing that their injuries were caused by Defendants' alleged antitrust violation. If you find that Plaintiffs' alleged injuries were caused by factors other than Defendants' alleged antitrust violation, then you must return a verdict for Defendants. If you find that Plaintiffs' alleged injuries were caused in part by Defendants' alleged antitrust violation and in part by other factors, then you may award damages only for that portion of Plaintiffs alleged injuries that were caused by Defendants' alleged antitrust violation. Plaintiffs bear the burden of proving damages with reasonable certainty, including apportioning damages between lawful and unlawful causes. If you find that there is no reasonable basis to apportion Plaintiffs' alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all. If you find that Plaintiffs have proven with reasonable certainty the amount of damage caused by Defendants' alleged antitrust violation, then you must return a verdict for the Plaintiffs.

48

August 4, 2008

**Antitrust Jury Instruction 33**
*Mitigation*

Plaintiffs may not recover damages for any portion of their injury that they could have avoided through the exercise of reasonable care and prudence. Plaintiffs are not entitled to increase any damages through inaction. The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss. If Plaintiffs failed to take reasonable steps available to them, and the failure to take those steps results in greater harm to Plaintiffs than they would have suffered had they taken those steps, Plaintiffs may not recover any damages for that part of the injury it could have avoided.

Defendants have the burden of proof on this issue. Defendants must prove by a preponderance of the evidence that Plaintiffs acted unreasonably in failing to take specific steps to minimize or limit their losses, that the failure to take those specific steps resulted in their losses being greater than they would have been if they had taken such steps, and the amount by which Plaintiffs' loss would have been reduced had Plaintiffs taken those steps.

In determining whether Plaintiffs failed to take reasonable measures to limit its damages, you must remember that the law does not require Plaintiffs to have taken every conceivable step that might have reduced its damages. The evidence must show that Plaintiffs failed to take commercially reasonable measures that were open to it. Commercially reasonable measures mean those measures that a prudent businessperson in Plaintiffs' position would likely have adopted, given the circumstances as they appeared at that time. Plaintiffs should be given wide latitude in deciding how to handle the situation, so long as what Plaintiffs did was not unreasonable in light of the existing circumstances.

49

August 4, 2008

**Antitrust Jury Instruction 34**
*Trebling of Damages*

You may have heard or read that in antitrust cases such as this, damages are trebled, or multiplied by three. You are not to try to do this yourself. This is the job of the Court. In calculating damages, you are only to try to determine actual or single damages.

50

August 4, 2008

**Anitrust Jury Instruction 35**
*Other Conduct*

You have heard evidence in this case concerning the ISL transaction, the 1999 TPL Agreement, the decision to approve the 2002 agreement with Indian Wells, the decision to approve a transfer fee concerning the sale of IMG's share of Indian Wells membership, the development by the Women's Tennis Association of a Roadmap 2010 plan and Mr. Jovanovic's relationship with Tennis Canada and the Abu Dhabi Tourism Authority.

The legality of these agreements is not, in and of itself, at issue in this lawsuit  You may consider these things, however, as they relate to Plaintiffs' antitrust claims concerning the Brave New World.

DB02:6902512.1
7642/20504-015 Current/11749835v1

066145.1001
08/04/2008 11:37 AM

August 4, 2008

## Final Instruction
*Deliberation and Verdict*

How you conduct your deliberations is up to you. But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror. The first thing you should do is select a foreperson.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are the judges of the facts, not me. Your sole interest is to seek the truth from the evidence in this case. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

That concludes the part of my instructions explaining the rules for considering the testimony and evidence. Now let me finish up by explaining how you may communicate questions or messages to the court.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer. The question will be given to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages are normally sent to me through the foreperson.

One more thing about messages. Do not ever write down or tell anyone else how you stand on your votes. For example, do not write down or tell anyone else that you are split 6-2, or 4-4, or whatever your vote happens to be. That should stay secret until you are finished.

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in favor of either party. You must decide the case yourselves based on the evidence presented.

52

## SHERMAN ACT § 1

WE, THE JURY, unanimously find as follows:

1.    Have Plaintiffs proven by a preponderance of the evidence that any Defendant(s) entered into contract(s), combination(s) or conspiracy(ies) with any separate entity or entities?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

    Question 1    Yes_____        No_____

                      (for Plaintiffs)        (for Defendants)

    If you answered "Yes," please specify all parties to each such agreement:_____

2.    Have Plaintiffs proven by a preponderance of the evidence the existence of a relevant product market within a relevant geographic market?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 3 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

    Question 2    Yes_____        No_____

                      (for Plaintiffs)        (for Defendants)

    If you answered "Yes," please specify each relevant product market and the associated geographic market:_____

3.    Have Plaintiffs proven by a preponderance of the evidence that any contract,

combination or conspiracy that you found in question 1 had a harmful effect on competition in a relevant product and geographic market(s)?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 4 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 3    Yes_____         No_____
              (for Plaintiffs)        (for Defendants)

If you answered "Yes," please specify to which Defendant(s) this answer applies, and for each Defendant listed, the associated relevant product and geographic market(s):_____

4.    Do you find by a preponderance of the evidence that any contract, combination or conspiracy for which you answered "Yes" to question 3 had procompetitive benefits?  (A "yes" answer to this question is a finding for Defendants.  A "no" answer is a finding for Plaintiffs.  If "yes," proceed to question 5 below.  If "no," proceed to question 8 below.)

Question 4    Yes_____         No_____
              (for Defendants)        (for Plaintiffs)

5.    Do you find by a preponderance of the evidence that any contract, combination or conspiracy for which you answered "Yes" to question 4 was reasonably necessary to achieve the procompetitive benefits you found?  (A "yes" answer to this question is a finding for Defendants.  A "no" answer is a finding for Plaintiffs.  If "yes,"

2

proceed to question 6 below.  If "no," proceed to question 8 below.)

Question 5    Yes_____          No_____

(for Defendants)     (for Plaintiffs)

6.    Have Plaintiffs proven by a preponderance of the evidence that the harmful

effect on competition of any contract, combination or conspiracy for which you answered

"Yes" to question 5 substantially outweighs the procompetitive benefits you found?  (A

"yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for

Defendants.  If "yes," proceed to question 7 below.  If "no," please sign this jury verdict

form and return it to the U.S. Marshall.)

Question 6    Yes_____          No_____

(for Plaintiffs)     (for Defendants)

If you answered "Yes," please specify to which Defendant(s) this answer

applies, and for each Defendant listed, the associated relevant product and

geographic market(s):_____ _____ _____ _____ _____

7.    Do you find by a preponderance of the evidence that the contract(s),

combination(s) or conspiracy(ies) Defendant(s) entered was or were a material cause of any

injury to the Plaintiffs in their business or property? (A "yes" answer to this question is a

finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to

question 8 below.  If "no," please sign this jury verdict form and return it to the U.S.

Marshall.)

3

Question 7    Yes_____          No_____

                    (for Plaintiffs)        (for Defendants)


8.      For any injury you found in response to question 7, do you find by a preponderance of the evidence that any such injury to Plaintiffs was caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 10 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 8    Yes_____          No_____

                    (for Plaintiffs)        (for Defendants)


9.      For any injury for which you answered "Yes" to Question 9, do you find by a preponderance of the evidence that Plaintiffs failed to take all reasonable steps available to minimize their losses? (A "yes" answer to this question is a finding for Defendants. A "no" answer is a finding for Plaintiffs. If "no," proceed to question 10 below and do not answer question 11. If "yes," please proceed to question 11 below and do not answer question 10.)

Question 9    Yes_____          No_____

                    (for Defendants)        (for Plaintiffs)


10.     For any injury for which you answered "No" to question 9, what is the total amount of damages that would fairly compensate Plaintiffs for this injury based on the

evidence available to you?  Write your answer in the line labeled "Amount" below.

11.     For any injury for which you answered "Yes" to question 9, what is the total amount of damages that would fairly compensate Plaintiffs for this injury if they had taken all reasonable steps to mitigate their damages?  Write your answer in the line labeled "Amount" below.

Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____    Jury Foreperson: _____

DB02:6991572.1
7642/20504-015 Current/11749861v1

066145.1001
08/04/2008 11:17 AM

## SHERMAN ACT § 2 – MONOPOLIZATION

WE, THE JURY, unanimously find as follows:

1. Have Plaintiffs proven by a preponderance of the evidence the existence of any relevant product market(s) within any relevant geographic market(s)? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 2 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

   Question 1 Yes_____  No_____

     (for Plaintiffs)  (for Defendants)

   If you answered "Yes," please specify each relevant product market and the associated geographic market:_____

2. Have Plaintiffs proven by a preponderance of the evidence that ATP Tour, Inc. had monopoly power in any market for which you answered "Yes" to Question 1? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 3 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

   Question 2 Yes_____  No_____

     (for Plaintiffs)  (for Defendants)

   If you answered "Yes," please specify to which relevant product and geographic market(s) this answer applies:_____

DB02:6991572.1
7642/20504-015 Current/11749861v1
066145.1001
08/04/2008 11:17 AM

3.    For each relevant product market you listed in your answer to question 2, have Plaintiffs proven by a preponderance of the evidence that ATP Tour, Inc., willfully acquired or maintained monopoly power through exclusionary conduct without legitimate reasons for engaging in such conduct?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 4 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 3    Yes_____         No_____

(for Plaintiffs)         (for Defendants)

If you answered "Yes," please specify to which relevant product and geographic market your answer applies: _____

4.    Have Plaintiffs proven by a preponderance of the evidence that the conduct for which you answered "Yes" to question 3 caused injury to the Plaintiffs in their business or property?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 5 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 4    Yes_____         No_____

(for Plaintiffs)         (for Defendants)

5.    For any injury you found in response to question 4, do you find by a preponderance of the evidence that any such injury to Plaintiffs was caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no"

answer is a finding for Defendants.  If "yes," proceed to question 6 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 5    Yes_____        No_____
              (for Plaintiffs)       (for Defendants)

6.    For any injury for which you answered "Yes" to Question 9, do you find by a preponderance of the evidence that Plaintiffs failed to take all reasonable steps available to minimize their losses?  (A "yes" answer to this question is a finding for Defendants.  A "no" answer is a finding for Plaintiffs.  If "no," proceed to question 7 below and do not answer question 8.  If "yes," please proceed to question 8 below and do not answer question 7.)

Question 6    Yes_____        No_____
              (for Defendants)       (for Plaintiffs)

7.    For any injury for which you answered "No" to question 6, what is the total amount of damages that would fairly compensate Plaintiffs for this injury based on the evidence available to you?  Write your answer in the line labeled "Amount" below.

8.    For any injury for which you answered "Yes" to question 6, what is the total amount of damages that would fairly compensate Plaintiffs for this injury if they had taken all reasonable steps to mitigate their damages?  Write your answer in the line labeled "Amount" below.

Amount: _____

8

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____ ____ _____ _____      Jury Foreperson: ____ _____ _____ _____

9

## SHERMAN ACT § 2 - ATTEMPTED MONOPOLIZATION

WE, THE JURY, unanimously find as follows:

1.      Have Plaintiffs proven by a preponderance of the evidence the existence of a relevant product market within a relevant geographic market?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 1    Yes__ _____         No__ _____

                  (for Plaintiffs)       (for Defendants)

If you answered "Yes," please specify each relevant product market and the associated geographic market:_____ __ _____ _____ _____ _____

2.      Have Plaintiffs proven by a preponderance of the evidence that any Defendant(s) engaged in anticompetitive conduct with an intent to achieve monopoly power in a relevant product market within a relevant geographic market for which you answered "Yes" to Question 1?  (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants.  If "yes," proceed to question 3 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 2    Yes_____         No__ _____

                  (for Plaintiffs)       (for Defendants)

If you answered "Yes," please specify to which Defendant(s) this answer applies, and for each Defendant the associated product and geographic market(s):_____ __ _____ _____ _____ _____ _____ ___

10

3.     Have Plaintiffs proven by a preponderance of the evidence that there is a dangerous probability that Defendants for whom you answered "Yes" to question 2 would achieve their goal of monopoly power in any relevant product market? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 4 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 3     Yes_____        No_____

                  (for Plaintiffs)        (for Defendants)

If you answered "Yes," please specify to which Defendant(s) this answer applies and, for each Defendant the associated product and geographic market(s):_____

4.     Have Plaintiffs proven by a preponderance of the evidence that the actions of any Defendant(s) for whom you answered "Yes" to question 3 caused injury to the Plaintiffs in their business or property? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 5 below. If "no," please sign the jury verdict form and return it to the U.S. Marshall.)

Question 4     Yes_____        No_____

                  (for Plaintiffs)        (for Defendants)

5.     For any injury you found in response to question 4, do you find by a preponderance of the evidence that any such injury to Plaintiffs was caused by a reduction

11

in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 6 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 5    Yes_____  ____    No__  _____
                   (for Plaintiffs)        (for Defendants)

6.    For any injury for which you answered "Yes" to Question 9, do you find by a preponderance of the evidence that Plaintiffs failed to take all reasonable steps available to minimize their losses? (A "yes" answer to this question is a finding for Defendants. A "no" answer is a finding for Plaintiffs. If "no," proceed to question 7 below and do not answer question 8. If "yes," please proceed to question 8 below and do not answer question 7.)

Question 6    Yes_____  __    No_____  ____
                   (for Defendants)        (for Plaintiffs)

7.    For any injury for which you answered "No" to question 6, what is the total amount of damages that would fairly compensate Plaintiffs for this injury based on the evidence available to you? Write your answer in the line labeled "Amount" below.

8.    For any injury for which you answered "Yes" to question 6, what is the total amount of damages that would fairly compensate Plaintiffs for this injury if they had taken all reasonable steps to mitigate their damages? Write your answer in the line labeled "Amount" below.

12

Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____    Jury Foreperson: _____

13

## SHERMAN ACT § 2 - CONSPIRACY TO MONOPOLIZE

WE, THE JURY, unanimously find as follows:

1.    Have Plaintiffs proven by a preponderance of the evidence the existence of a relevant product market within a relevant geographic market?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 2 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

> Question 1   Yes_____     No_____
>
>              (for Plaintiffs)    (for Defendants)
>
> If you answered "Yes," please specify each relevant product market and the associated geographic market:_____

2.    Have Plaintiffs proven by a preponderance of the evidence that any Defendant(s) entered into an agreement or mutual understanding to obtain or maintain monopoly power in a relevant market within a relevant geographic market?  (A "yes" answer to this question is a finding for Plaintiffs.  A "no" answer is a finding for Defendants.  If "yes," proceed to question 3 below.  If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

> Question 2   Yes_____     No_____
>
>              (for Plaintiffs)    (for Defendants)
>
> If you answered "Yes," please specify to which Defendant(s) this answer applies, and for each Defendant the associated product and geographic market(s):_____

3.    Have Plaintiffs proven by a preponderance of the evidence that any Defendant(s) for whom you answered "Yes" to question 2 knowingly became parties to that agreement or mutual understanding? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 4 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 3    Yes_____        No_____

(for Plaintiffs)        (for Defendants)

If you answered "Yes," please specify to which Defendant(s) this answer applies:_____

4.    Have Plaintiffs proven by a preponderance of the evidence that any Defendant(s) for whom you answered "Yes" for question 3 intended that the parties to the agreement or mutual understanding would obtain or maintain monopoly power in any relevant product market within a relevant geographic market you specified in your answer to question 2? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 5 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 4    Yes_____        No_____

(for Plaintiffs)        (for Defendants)

If you answered "Yes," please specify to which Defendant(s) this answer applies, and for each Defendant the associated product and geographic market(s):_____

15

5.    Have Plaintiffs proven by a preponderance of the evidence that any or all of the Defendant(s) for whom you answered "Yes" to question 4 took an overt act in furtherance of that agreement or mutual understanding? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 6 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

> Question 5    Yes_____        No_____
>
> (for Plaintiffs)        (for Defendants)
>
> If you answered "Yes," please specify to which Defendant(s) this answer applies, and for each Defendant listed, the associated relevant product market(s):_____ _____ _____ _____

6.    Do you find by a preponderance of the evidence that the anticompetitive actions of any Defendant(s) for whom you answered "Yes" to Question 5 caused injury to the Plaintiffs in their business or property? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 7 below. If "no," please sign the jury verdict form and return it to the U.S. Marshall.)

> Question 6    Yes_____        No_____
>
> (for Plaintiffs)        (for Defendants)

7.    For any injury you found in response to question 6, do you find by a preponderance of the evidence that any such injury to Plaintiffs was caused by a reduction

16

in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers? (A "yes" answer to this question is a finding for Plaintiffs. A "no" answer is a finding for Defendants. If "yes," proceed to question 8 below. If "no," please sign this jury verdict form and return it to the U.S. Marshall.)

Question 7    Yes_____    No_____
              (for Plaintiffs)    (for Defendants)

8.    For any injury for which you answered "Yes" to Question 9, do you find by a preponderance of the evidence that Plaintiffs failed to take all reasonable steps available to minimize their losses? (A "yes" answer to this question is a finding for Defendants. A "no" answer is a finding for Plaintiffs. If "no," proceed to question 9 below and do not answer question 10. If "yes," please proceed to question 10 below and do not answer question 9.)

Question 8    Yes_____    No_____
              (for Defendants)    (for Plaintiffs)

9.    For any injury for which you answered "No" to question 8, what is the total amount of damages that would fairly compensate Plaintiffs for this injury based on the evidence available to you? Write your answer in the line labeled "Amount" below.

10.    For any injury for which you answered "Yes" to question 8, what is the total amount of damages that would fairly compensate Plaintiffs for this injury if they had taken all reasonable steps to mitigate their damages? Write your answer in the line labeled "Amount" below.

17

Amount: _____

**WHEN THE JURY HAS REACHED A VERDICT, THE FOREPERSON MUST SIGN THIS VERDICT FORM AND SIGNAL THE U.S. MARSHALL THAT THE JURY IS READY TO RENDER A VERDICT.**

Date: _____     Jury Foreperson: _____

DB02:6991572.1
7642/20504-015 Current/11749861v1

066145.1001
08/04/2008 11:17 AM