IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DEUTSCHER TENNIS BUND et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-178 |
| | ) | |
| ATP TOUR, INC. et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

**I. INTRODUCTION**

On March 28, 2007, plaintiff Deutscher Tennis Bund filed the complaint in the above captioned action against ATP Tour, Inc. and a number of its directors and officers (collectively, the "ATP"). The first four counts in the complaint were antitrust claims for violations of the Sherman Act, three counts were state law claims for breach of fiduciary duty, and one count was a state law claim for tortious interference. (*See* D.I. 1.) Qatar Tennis Federation (collectively with Deutscher Tennis Bund, "DTB") later was joined as a co-plaintiff, and DTB amended the complaint to include an additional state law claim for conversion. (*See* D.I. 45.) After a 10-day trial, the court granted ATP's motions for judgment as a matter of law as to the state law claims. (Tr. at 2366-67.) A jury then found for ATP on the Sherman Act claims on August 5, 2008. Pending before the court is ATP's Motion for Attorneys' Fees, Costs, and Expenses pursuant to Rule 54 of the Federal Rules of Civil Procedure requesting $17,720,124.11 in attorney's fees and other costs. (D.I. 203.) ATP later filed a supplemental motion increasing the amount of fees requested to $17,865,504.51. (*See* D.I. 212.) For the reasons that follow, the court will deny both motions.

## II. BACKGROUND

Rule 54(d)(2) of the Federal Rules of Civil Procedure states, in pertinent part:

> (A) Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.
>
> (B) Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must:
>
> **********
>
> (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;

Fed. R. Civ. P. 54(d). In its motion, ATP asserts Article 23 of the Amended and Restated Bylaws of ATP Tour, Inc. ("ATP Tour Bylaws") as the sole basis for their claim for attorney's fees. Article 23 states, in part:[1]

> In the event that (I) any Claiming Party initiates or asserts any Claim . . . against the League or any member or owners (including any Claim purportedly filed on behalf of the League or any member), and (ii) the Claiming Party . . . does not obtain a judgment on the merits that substantially achieves, in substance and amount, the full remedy sought, then each Claiming Party shall be obligated jointly and severally to reimburse the League and any such member or Owners for all fees, costs and expenses of every kind and description (including, but not limited to, all reasonable attorneys' fees and other litigation expenses) . . . that the parties may incur in connection with such Claim.

(*See* D.I. 203 at Ex. A.) This provision was a relatively recent addition to the ATP Tour Bylaws at the time the complaint in this matter was filed. Specifically, it appears that on August 26-30, 2006, the ATP Board of Directors discussed several proposed amendments to the ATP Tour Bylaws and Rulebook relating to legal disputes between the ATP and its members. The board then approved

---

[1] ATP did not attach the entirety of the bylaws or even the entirety of Article 23 to its motions for attorney's fees.

amendments to the ATP Bylaws "governing law, venue and attorney's fees for litigation between ATP and its members." (D.I. 220, Ex. E at 4.) The arbitration rule and litigation bylaw were formally approved by the ATP Tour Board by a 7-0 vote on October 22, 2006.[2] (D.I. 220, Ex. F at 2.) The litigation provisions ultimately were adopted as Article 23 of the ATP Tour Bylaws. Prior to 2006, it appears that the ATP Tour Bylaws included only twenty-two articles, none of which included a fee-shifting provision.

ATP asserts that Article 23, as part of the ATP Tour Bylaws, was and is binding on DTB as members of the ATP Tour. (*See* D.I. 213.) DTB asserts a number of grounds for denying ATP's motion in whole, and argues in the alternative that there a number of material factual issues that must be resolved before the court can determine a reasonable amount for attorney's fees. (*See* D.I. 220.)

### III. DISCUSSION

Rule 54(d) of the Federal Rules of Civil Procedure gives district courts the discretion to award attorney's fees in appropriate cases. Under the American rule, prevailing parties generally are not entitled to attorney's fees, and the court must exercise its informed discretion when examining motions for attorney's fees. *E.g.*, *Deisler v. McCormack Aggregates, Co.*, 54 F.3d 1074, 1087 (3d Cir. 1995). One exception to the general rule that attorney's fees cannot be recovered is that a court may exercise its discretion and award attorney's fees when there is a contractual basis for the awarding of attorney's fees. *See, e.g.*, *In re Fleming Companies, Inc.*, 316 B.R. 809, 815-16 (D. Del. 2004). In their briefs supporting their motion for fees, DTB asserts that Article 23 fits within this exception. Given the facts of this case, the court does not believe that the contractual exception to the American rule can be read so broadly as to encompass Article 23.

---

[2] It is unclear whether Article 23 became effective on this date.

ATP cites only two cases in which a contract formed the basis for fee-shifting. In the first case, *Merola v. Atlantic Richfield Company*, 493 F.2d 292 (3d Cir. 1974), the court awarded attorney's fees to the plaintiff pursuant to a settlement agreement. During the settlement negotiations, the defendant in *Merona* had explicitly agreed to pay the plaintiffs' reasonable attorney's fees, and both parties explicitly conceded the existence of an enforceable contract for attorney's fees. *See id.* at 297 ("In the instant case, the parties question neither the existence of an agreement authorizing counsel fees nor the authority of the Court to aware fees pursuant thereto.") Furthermore, *Merona* was part of a broader series of cases decided during the mid-1970s in which the Third Circuit refined the standards for determining the fees that *plaintiff's* attorneys can receive in class action and other equitable fund cases. *See id.*; *Lindy Bros. Builders Inc. of Phila. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973); *Grunin v. International House of Pancakes*, 513 F.2d 114 (3d. Cir. 1975); *Lindy Bros. Builders Inc. of Phila. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 120 (3d Cir. 1976). *Merona* did not confront the question of a defendant seeking attorney's fees from a plaintiff who pursued a case to trial, and where the existence of liability for (rather than the amount of) attorney's fees was disputed.

The other case cited by ATP was a Delaware state case in which the court held that the plaintiff in a breach of contract action was entitled to attorney's fees under a provision in the employment contract that the defendant had breached. *See Mahani v. EDIX Media Group, Inc.*, 935 A.2d 242 (Del. 2007). This case is distinguishable on two grounds. First, as in *Merona*, the party seeking attorney's fees in *Mahani* was the plaintiff in the underlying dispute. Second, the fee-shifting provision in *Mahani* was part of the contract *directly at issue* in an action for breach of

contract.[3]

The court recognizes that bylaws, as internal documents governing a corporation, are binding on a corporation's board and members in most settings. But the ATP cites no case in which a court held that a board-adopted corporate bylaw can form the basis for the recovery of attorney's fees from members who sue the corporation, much less in actions where the bylaws are not directly at issue in the dispute. Additionally, it is not surprising that ATP has not cited any cases where a court awarded attorney's fees based on a bylaw adopted only *after* the plaintiff became a member of a corporation, or where a court awarded attorney's fees to a defendant in an antitrust case.

Furthermore, allowing antitrust defendants to collect attorneys fees in this case would be contrary both to longstanding Third Circuit precedent and to the policies underlying federal antitrust laws. As the Third Circuit stated in *Byram Concretetanks, Inc. v. Warren Concerte Prods. Co.*:

> [I]n the absence of specific legislative authorization attorneys' fees may not be awarded to defendants in private anti-trust litigation. Our conclusion is based on policy considerations reflected in the Clayton Act. It is well known that a primary objective of the private treble damage suit is to provide a means for enforcement of the anti-trust laws in addition to Government prosecutions. The incentive which the prospect of treble damages provides for instituting private antitrust actions would be dampened by the threat of assessment of defendant's attorneys' fees and other costs as a penalty for failure. We thus agree with the second ground for the court's decision in

---

[3] ATP also cites *L&W Ins., Inc. v. Harrington*, another state breach of contract case in which a party attempted to recover attorney's fees pursuant to an employment contract that was directly at issue. In *L&W Ins.*, the employee successfully defended against the employer's preliminary injunction action, and the court then *denied* the employee-defendant's motion for attorney's fees. ATP cites this case for Delaware Chancery Court's statement in dicta that "[t]he prevailing party's 'contractual right to the payment of money . . . cannot be 'forgiven' in whole or in part by a court out of compassion' for the nonprevailing party." *See id.* The court finds this case inapposite both because the basis for the fees sought in *L&W Ins.* was the contract directly at issue in a breach of contract dispute, and because the court's decision in the instant case is based not on "compassion" for DTB, but on its finding that Article 23 is not an appropriate basis for the award of attorney's fees.

> Gillam: '... free access to the courts must neither be denied nor penalized.' Where it has been thought that the cost of instituting a lawsuit is not a sufficient deterrent against vexatious or oppressive litigation, Congress has enacted provisions allowing the courts in exceptional cases to award attorneys' fees and other extraordinary costs to the prevailing party.

374 F.2d 649, 651 (3d Cir. 1967) (internal citations omitted). The fact that the Sherman Act, like the Clayton Act, includes treble damages and fee-shifting provisions in favor of successful plaintiffs, but no parallel protections for successful defendants, is a strong indication that Congress wished to encourage private enforcement of antitrust laws. *See, e.g.*, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 587 (2007) ("[T]he fact that the Sherman Act authorizes the recovery of treble damages and attorney's fees for successful plaintiffs indicates that Congress intended to encourage, rather than discourage, private enforcement of the law."). As another court citing *Byram* has stated, "this Court is unaware of *any* case in which a successful defendant has been awarded attorneys' fees in a private antitrust action." *Juneau Square Corp. v. First Wis. Nat'l Bank*, 435 F. Supp. 1307, 1327 (E.D. Wis. 1977) (emphasis added). Even now, more than thirty years after *Juneau* and more than forty years after *Byram*, ATP still can cite to no case in which defendants were permitted to recover attorney's fees from plaintiffs in a private antitrust action, much less any case that allows such defendants to recover attorney's fees on the basis of a corporate bylaw such as Article 23.

ATP contends that *Byram* and similar cases "merely hold that, because the antitrust statutes do not provide for fee-shifting to defendants, courts may not use their *inherent* powers to fill the gap. ... Here, inherent powers are irrelevant because Article 23.3 provides an independent, agreed basis for fees." (D.I. 222 at 8.) As an initial matter, the court disagrees with ATP that the district court's well-established power to exercise its discretion in awarding or denying attorneys fees under Rule 54 is rendered "irrelevant" simply because the association's board adopted a bylaw purporting to

shift such fees to unsuccessful litigants. Furthermore, it is plain from DTB's vigorous opposition to this motion that Article 23 is far from an "agreed" basis for such fee-shifting. Most important, however, the court recognizes the sound policy that underlies the *Byram* court's refusal to grant defendants accused of violating of federal antitrust laws the power to shift fees to plaintiffs who have in good faith brought an action to vindicate those laws. It is noteworthy that at no point during the pendency of this litigation did the ATP contend that DTB's suit was frivolous or filed in bad faith. The significant costs associated with bringing and prosecuting an antitrust case are well-known. Allowing corporate antitrust defendants to adopt bylaws that would impose attorney's fees on members who unsuccessfully - but without bad faith - file an antitrust suit would likely have a chilling effect on the filing of meritorious actions. Permitting corporations accused of anticompetitive conduct to enforce bylaws with such potent deterrent potential would be antithetical to the purposes of the Sherman Act.[4]

Whether to grant a motion for attorney's fees is a matter of discretion for the district court, and the moving party must meet a heavy burden to overcome the presumption against the awarding of attorney's fees. The ATP has not met that burden in this case. The presence of Article 23 in the

---

[4] In the instant case, the timing of the adoption of Article 23 gives the court further reason for pause. Article 23 appears to have been first proposed at an August 2006 meeting of the ATP Tour Board of Directors, and was not formally adopted until late October of 2006, less than five months before the complaint in this case was filed. (See D.I. 220, Ex. E at 4; *id.*, Ex. F at 2.) Since the evidence at trial indicated that the changes to the ATP Tour that led to this suit were being discussed throughout the summer and fall of 2006, the court cannot ignore the possibility that Article 23 was adopted specifically to deter ATP members from challenging those changes. Even if the court were not to deny ATP's motion outright as it does today, that possibility and a number of other material factual issues would need to be resolved before the court could determine whether the bylaw provides a "contractual" basis for awarding attorneys fees to ATP. *See* Fed. R. Civ. P. 54(d)(2)(iv). Furthermore, even if ATP could establish that the bylaw established such a "contractual" basis for the fees, the court would require additional submissions from the parties before it could fashion a reasonable award.

ATP Tour Bylaws is sole basis upon which ATP claims that DTB is liable for attorney's fees. There is no allegation that DTB's antitrust lawsuit was frivolous or filed in bad faith.[5] Under these circumstances, the court will not exercise its discretion to award attorney's fees pursuant to Rule 54 on the basis of Article 23.[6]

## IV.  CONCLUSION

For the reasons stated above, the court will deny ATP's motions for attorney's fees under Rule 54 (D.I. 203, D.I. 212).

Dated: October 19, 2009

CHIEF UNITED STATES DISTRICT JUDGE

---

[5] The court recognizes that not all of the claims asserted by DTB were antitrust claims. Specifically, DTB's amended complaint also included three state law claims for breach of fiduciary duty, a claim for tortious interference, and a claim for conversion, all of which the court dismissed as a matter of law at trial. (*See* Tr. at 2366-67.) The state law claims all related to the anticompetitive actions alleged in the four Sherman Act claims and were both incidental to and inextricably factually intertwined with the Sherman Act claims on which the parties exerted the vast majority of their energy. Even before the court granted ATP's motion for judgment as a matter of law on the non-Sherman Act claims, issues relating to the four Sherman Act claims predominated, as is evident from the parties' trial briefs, the pretrial order, and the evidence presented at the trial itself. This ruling does not reach those cases where the state law claims are not dominated by antitrust claims or where the state law claims have an independent factual basis.

[6] The court's ruling is limited to these facts. The court does not reach DTB's argument that ATP waived its ability to recover attorney's fees by failing to specifically plead them.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DEUTSCHER TENNIS BUND et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-178 |
| | ) | |
| ATP TOUR, INC. et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. ATP's Motion for Attorney Fees, Costs, and Expenses (D.I. 203) is DENIED.

2. ATP's Supplemental Motion for Attorney Fees, Costs, and Expenses (D.I. 212) is DENIED.

Dated: October 19, 2009

CHIEF, UNITED STATES DISTRICT JUDGE