IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEUTSCHER TENNIS BUND (GERMAN TENNIS FEDERATION), ROTHENBAUM SPORT GMBH, and QATAR TENNIS FEDERATION,<br><br>     Plaintiffs,<br><br>  v.<br><br>ATP TOUR, INC., ETIENNE DE VILLIERS, CHARLES PASARELL, GRAHAM PEARCE, JACCO ELTINGH, PERRY ROGERS, and IGGY JOVANOVIC,<br><br>     Defendants. | C.A. No. 07-178-GMS |

**BRIEF IN SUPPORT OF ATP TOUR, INC.'S PETITION FOR CERTIFICATION OF QUESTIONS TO DELAWARE SUPREME COURT**

               ASHBY & GEDDES
               Lawrence C. Ashby (#468)
               Philip Trainer, Jr. (# 2788)
               Carolyn S. Hake (#3839)
               Toni-Ann Platia (#5051)
               500 Delaware Avenue, 8th Floor
               P. O. Box 1150
               Wilmington, DE  19899
               (302) 654-1888
               lashby@ashby-geddes.com
               ptrainer @ashby-geddes.com
               chake@ashby-geddes.com
               tplatia@ashby-geddes.com

               *Attorneys for ATP Tour, Inc.*

*Of Counsel*:

Bradley I. Ruskin
Jennifer R. Scullion
Jordan B. Leader
Robert D. Forbes
PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036

Dated:  August 31, 2012

{00666293;v1 }

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

FACTS RELEVANT TO PROPOSED CERTIFICATION .........................................................2

I. The Parties ...............................................................................................................2

II. Article 23.3 of ATP's Bylaws..................................................................................2

III. The Federations' Claims and ATP's Successful Defense........................................3

PROCEDURAL HISTORY...........................................................................................................5

ARGUMENT.................................................................................................................................5

I. Certification of the Open Questions of Delaware Law Is Appropriate ...................5

    A. The Certified Questions Present Original Questions of Delaware Corporate Law ..............................................................................................6

    B. Resolution of the Certified Questions Will Have a Broad Impact on Delaware Corporate Governance...................................................................7

    C. Determination of the Certified Questions Would Provide the Most Efficient Method to Resolution of This Litigation ...................................9

II. The Certified Questions Meet Delaware's Standards for Certification.............................10

    A. Important and Urgent Reasons Require an Immediate Determination of The Certified Questions ...................................................................................11

    B. There Are No Disputed Issues of Fact Material to the Questions to be Certified .............................................................................................................11

CONCLUSION................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A.W. Financial Services, S.A. v. Empire Resources, Inc.*,
   2009 WL 212412 (S.D.N.Y. Jan. 29, 2009) ........................................................................... 10

*Deutscher Tennis Bund v. ATP Tour, Inc.*,
   610 F.3d 820 (3d Cir. 2010) ............................................................................................... 3, 4

*Fiat Motors of N. Am., Inc. v. City of Wilmington*,
   619 F. Supp. 29 (D. Del. 1985) ...................................................................................... 6, 7, 10

*In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*,
   692 F. Supp. 2d 370 (S.D.N.Y. 2010) ................................................................................. 8, 10

*Lehman Bros. v. Schein*,
   416 U.S. 386 (1974) ................................................................................................................ 5

*Shaw v. Agri-Mark*,
   50 F.3d 117 (2d Cir. 1995) ...................................................................................................... 8

**STATE CASES**

*Boilermakers Local 154 Retirement Fund v. Chevron Corp.*,
   C.A. 7220-CS (Del. Ch.) .......................................................................................................... 9

*CA, Inc. v. AFSCME Employees Pension Plan*,
   953 A.2d 227 (Del. 2008) ........................................................................................................ 8

*IClub Investment Partnership v. FedEx Corp.*,
   C.A. No. 7238-CS (Del. Ch.) ................................................................................................... 9

*Rales v. Blasband*,
   626 A.2d 1364 (Del. 1993) ............................................................................................ 8, 10, 11

**OTHER AUTHORITIES**

Ct. Rule 41 ...........................................................................................................................................1

Ct. Rule 41 (a)(ii) ...............................................................................................................................10

Ct. Rule 41(b) ...............................................................................................................................10, 11

Ct. Rule 41(b)(i) ..................................................................................................................................11

Federal Rules of Civil Procedure
    Rule 54 ............................................................................................................................................5

**PRELIMINARY STATEMENT**

Defendant ATP Tour, Inc. ("ATP") respectfully requests that this Court certify the following questions of law (the "Certified Questions") to the Delaware Supreme Court in accordance with Del. Supr. Ct. Rule 41 and Del. Const. Art. IV, § 11 (a):

1. May the Board of a Delaware non-stock corporation lawfully adopt a bylaw (i) that applies in the event that a member brings a claim against another member, a member sues the corporation, or the corporation sues a member (ii) pursuant to which the claimant is obliged to pay the reasonable legal fees and other costs and expenses of the party against which the claim is made in the event that the claimant fails to substantially achieve, in substance and amount, the full remedy sought?

2. May such a bylaw be lawfully enforced against a member that obtains no relief at all on its claims against the corporation, even if the bylaw might be unenforceable in a different situation where the member obtains some relief?

3. Is such a bylaw rendered unenforceable as a matter of law if one or more Board members subjectively intended the adoption of the bylaw to deter legal challenges by members to other potential corporate action then under consideration?

4. Is such a bylaw enforceable against a member if it was adopted after the member had joined the corporation, but where the member had agreed to be bound by the corporation's rules "that may be adopted and/or amended from time to time" by the corporation's Board, and where the member was a member at the time that it commenced the lawsuit against the corporation?

These proposed Certified Questions are matters of first impression in the Delaware courts and their answers will have a broad impact on Delaware corporate governance. Answers to these Certified Questions will provide the most efficient path to resolution of this dispute. The Certified Questions are designed to give clear direction as to what factual issues, if any, remain to be discovered and tried in order to determine whether ATP may recover its legal fees and costs against each of the Plaintiffs – the German Tennis Federation and also the separate Qatar Tennis Federation. Absent certification, the parties would be forced to undertake discovery from former ATP directors scattered across the globe and evidentiary hearings on factual issues that

may not be relevant to the legal issue to be determined. The Court, the parties, and other Delaware corporations and their members would benefit greatly from the Delaware Supreme Court's resolution of the Certified Questions.

## FACTS RELEVANT TO PROPOSED CERTIFICATION

### I.     The Parties

ATP Tour, Inc. ("ATP") is a not-for-profit Delaware non-stock corporation. ATP's members are men's professional tennis players and tournaments. ATP operates the ATP World Tour (the "Tour"), which is comprised of more than 60 member tournaments in 30 countries, plus a season-ending championship event.

ATP is governed by a seven-member board of directors (the "Board"). Three of the Directors are elected by the tournament members, like Plaintiffs Deutscher Tennis Bund ("DTB") and Qatar Tennis Federation ("QTF") (together, the "Federations"). Three Directors are elected by player members. The seventh Board member is ATP's Chairman/President.

The Federations together operate an ATP tournament in Hamburg, Germany.[1] The QTF also separately operates an additional ATP tournament in Doha, Qatar. DTB and QTF joined ATP in 1990 and 1993, respectively. Each of the Federations remains a member of ATP today.

### II.    Article 23.3 of ATP's Bylaws

As a condition of their membership in ATP, each of the Federations entered written agreements pursuant to which they agreed to be bound by ATP's Bylaws, as amended from time to time. One such amendment was the addition of Article 23 to the Bylaws in 2006. Article 23 was proposed in August 2006 and formally enacted by the requisite vote of the Board that October. The Federations were given timely notice of Article 23's enactment.

---

[1] An additional plaintiff, Rothenbaum Sports GmbH ("RSG"), is wholly owned by DTB and QTF. The relief sought against the Federations is also sought against RSG.

Article 23 of the Bylaws addresses a number of issues concerning litigation involving ATP. Among other things, Article 23 provides for reimbursement of reasonable legal fees, costs, and expenses with respect to unsuccessful claims initiated among ATP's members or between ATP and its members or Tournament Owners. Article 23.3(a) provides:

> In the event that (i) any [current or prior member or Owner or anyone on their behalf ("Claiming Party")] initiates or asserts any [claim or counterclaim ("Claim")] or joins, offers substantial assistance to or has a direct financial interest in any Claim against the League or any member or Owners (including any Claim purportedly filed on behalf of the League or any member), and (ii) the Claiming Party (or the third party that received substantial assistance from the Claiming Party or in whose Claim the Claiming Party had a direct financial interest) <u>does not obtain a judgment on the merits that substantially achieves, in substance and amount, the full remedy sought</u>, then each Claiming Party shall be obligated jointly and severally to reimburse the League and any such member or Owners for <u>all fees, costs and expenses of every kind and description</u> (including, but not limited to, all reasonable attorneys' fees and other litigation expenses) (collectively, "Litigation Costs") that the parties may incur in connection with such Claim.

(emphasis added). A parallel provision in Article 23.3(b) requires ATP to reimburse fees, costs, and expenses if it sues a member, but "does not obtain a judgment on the merits that substantially achieves, in substance and amount, the full remedy sought."

### III. The Federations' Claims and ATP's Successful Defense

In 2007, the ATP Board took a number of votes to modify the Tour format and rules under a comprehensive strategy known as the "Brave New World" plan (the "Plan"). Those votes were the culmination of nearly two years of planning and thousands of hours of research, analysis and discussion. As noted by the Third Circuit:

> The [P]lan was developed to make the ATP Tour more competitive with other spectator sports and entertainment products by improving the quality and consistency of its top-tier events. The modifications to the tour calendar, increase of investment, higher payments to players, and expanded geographic reach were all designed to improve the Tour.

*Deutscher Tennis Bund v. ATP Tour, Inc.*, 610 F.3d 820, 833 (3d Cir. 2010).

{00666293;v1 } 3

In connection with the Plan, ATP requested applications from members seeking positions in the rebranded Tour's highest tier of events. After reviewing applications from Hamburg and others, the Board did not accept Hamburg for the Tour's highest tier. It did, however, vote to place Hamburg in the second-highest tier within the Tour. To do so, the Board also voted to move the Hamburg event from the spring into the summer portion of the Tour calendar.

ATP also reviewed applications from the QTF and others for a spot in ATP's second-highest tier in the Tour's Asia swing. ATP ultimately did not select the QTF for such a spot and, instead, selected the Dubai tournament for that spot.

ATP implemented these changes in accordance with the Bylaws.

Dissatisfied with ATP's decisions, the Federations sued ATP and six of the seven individual ATP Directors. The Federations alleged a host of legal theories, including federal antitrust claims under sections 1 and 2 of the Sherman Act and Delaware state law claims for conversion, tortious interference with contract, and breach of fiduciary duty. The Federations sought $80 million in compensatory damages, plus trebled damages under the federal antitrust laws, punitive damages under Delaware state law, injunctive relief to prevent the implementation of the Plan, and attorneys' fees and costs.

ATP defeated each of the Federations' claims at trial on the merits (including dismissal of most theories before submission to the jury).[2] The Federations obtained no relief against anyone on any claim or theory. The Court entered judgment on October 3, 2008 (D.I. 199), the Third Circuit affirmed the judgment in its entirety (610 F.3d 820), and the Supreme Court denied the Federations' petition for certiorari. 131 S.Ct. 658 (2010).

---

[2] In addition to challenging ATP's decision with respect to the Hamburg Tournament, the Federations at trial also put in issue ATP's treatment of the Qatar Tournament.

**PROCEDURAL HISTORY**

On October 17, 2008, ATP timely moved under Fed. R. Civ. P. 54 to recover its legal fees, costs and expenses pursuant to Article 23.3(a). On February 20, 2009, the Court denied ATP's motion on the ground that a contract-based award of attorneys' fees to a prevailing antitrust defendant would be contrary to the underlying policy of the federal antitrust laws. Mem. Op. at 6 (D.I. 238). The Court declined to award ATP any of the fees, costs, and expenses that it incurred in simultaneously defending against the Federations' state law claims, reasoning that the federal and state claims were "inextricably intertwined." *Id.* at 8. Although not central to its holding, the Court also questioned whether ATP's members could be bound by Article 23.3, which was passed after they became members. *Id.* at 5. The Court further questioned the timing of Article 23's adoption and whether it was intended to deter legal challenges to the Brave New World Plan. *Id.* at 7 n.4.

ATP appealed the Court's ruling to the Third Circuit Court of Appeals. On May 11, 2012, the Third Circuit vacated the Court's order and remanded for further proceedings. The Third Circuit held that the constitutional issue of federal preemption was not ripe for decision because there had been no threshold determination of whether Article 23.3 is valid and enforceable under Delaware law. 2012 U.S. App. LEXIS 9591, *6-7. The Third Circuit noted a number of open questions and remanded for a determination of "whether Article 23.3 of ATP's by-laws creates an enforceable obligation under state law…." *Id.* at *8-9.

**ARGUMENT**

**I.    Certification of the Open Questions of Delaware Law Is Appropriate**

The Court has discretion to certify questions of Delaware law to the Delaware Supreme Court. *Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974) (recognizing that while the certification procedure is not obligatory, it does "in the long run save time, energy, and resources

and helps build a cooperative judicial federalism"). Importantly, this court has recognized that certification to "obtain[] a definitive interpretation of state law" is particularly appropriate where, as here, "'a federal constitutional question' – *i.e.* the preemption issue noted by the Third Circuit – "might be mooted thereby.'" *Fiat Motors of N. Am., Inc. v. City of Wilmington*, 619 F. Supp. 29, 33 n.6 (D. Del. 1985) (quoting *Clay v. Sun Ins. Office Ltd.*, 363 U.S. 207, 212 (1960)). When presented with unsettled state law issues with broad impact on state policy, "certification is clearly appropriate and possibly incumbent upon district courts…." *Id.* at 34.

The proposed Certified Questions are matters of first impression in the Delaware courts and their answers will have a broad impact on Delaware corporate governance. Moreover, answers to these Certified Questions would shape the issues to be determined by this Court, potentially eliminate or substantially lessen the need for any further development of the factual record, and provide the most efficient path to resolution of this dispute.

    A.    <u>The Certified Questions Present Original Questions of Delaware Corporate Law</u>

In the four years since ATP filed its motion for attorneys' fees, the parties have exhaustively researched and briefed to this Court and the Third Circuit the issues presented in the Certified Questions. As the parties, this Court, and the Third Circuit have all separately acknowledged, there is no Delaware authority definitively addressing the validity and enforceability of a bylaw such as Article 23.3.

Specifically, the Third Circuit noted in its ruling a number of unsettled questions of Delaware law that might affect the validity of Article 23.3:

> [W]e are aware of no case in which a Delaware court has addressed the legal validity of a by-law – adopted as an internal dispute was brewing – that requires an organization's member to pay potentially large fees to the organization if the member files suit against the organization and loses.
>
> The District Court recognized that determining whether Article 23.3 provides a basis for fee-shifting might require analysis of the possibility

> that it was adopted specifically to deter members from suing the organization. We concur. We also believe that other aspects of the by-law itself, and the circumstances of its adoption, might lead Delaware courts to refuse to enforce it.

2012 U.S. App. LEXIS 9591 at *8-9. The Third Circuit also noted that it is an open question as to whether Article 23.3's requirement that a successful plaintiff who does not obtain a "judgment on the merits that substantially achieves, in substance and amount, the full remedy sought" is enforceable, notwithstanding the fact that, here, the Federations obtained no relief on any of their claims. *Id.* at *9 n.4.

The Federations conceded in their opposition to ATP's motion for fees before this Court that "Delaware statutory and case law is silent" as to whether a "new [Bylaw] provision imposing attorneys' fees obligations is subject to [] member consent requirements under Delaware law, particularly when the provision is injected in the midst of anticipated litigation by a member." Opp. Br. at 16-17 (D.I. 220) (emphasis added). Indeed, the Federations themselves argued "that the corporate law and policy issue here is significant enough that it could warrant referral to the Delaware Supreme Court." *Id.*

### B. Resolution of the Certified Questions Will Have a Broad Impact on Delaware Corporate Governance

The enforceability of fee-shifting bylaws is an issue that may affect potentially every Delaware membership corporation. Answers to the Certified Questions will provide certainty regarding how and to what extent Delaware corporations may protect themselves and their members against the potentially crippling impact of intra-organizational litigation through fee-shifting bylaws. Certainty is necessary if these bylaws are to have the beneficial effect of encouraging extra-judicial resolution of such disputes.

Obtaining answers to novel legal questions that will have a broad impact within Delaware is a primary purpose of allowing certification to the Delaware Supreme Court, particularly in the

corporate context. *See Shaw v. Agri-Mark*, 50 F.3d 117, 120 (2d Cir. 1995) (certifying questions regarding right to inspect corporate records because "the answers to these important questions of Delaware law will guide other courts seeking to apply Delaware law to Delaware corporations"); *In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*, 692 F. Supp. 2d 370, 371 (S.D.N.Y. 2010) (certifying question regarding double derivative suit standing that raised "important and unresolved issues of Delaware corporate law"); *see also CA, Inc. v. AFSCME Employees Pension Plan*, 953 A.2d 227 (Del. 2008) (answering certified questions regarding enforceability of proposed bylaw); *Rales v. Blasband*, 626 A.2d 1364, 1366 (Del. 1993) (answering certified question regarding pleading standard for demand futility in derivative suit). As current Delaware Supreme Court Justice Henry DuPont Ridgely explained in a recent article:

> Even though Delaware is the home of 63% of Fortune 500 companies, 55% of the U.S. firms on the New York Stock Exchange and the NASDAQ, and 80% of the U.S. IPOs since 2003, actions concerning the internal affairs of those corporations are not always litigated in the Delaware courts. When other courts are confronted with these cases, the internal affairs doctrine requires them to apply Delaware law. Therefore, if another jurisdiction is faced with a significant and unanswered question of Delaware corporation law, it makes sense for counsel to suggest consideration of a certification of the question to the Delaware Supreme Court. Otherwise, it is a missed opportunity.
>
> \*\*\*
>
> Missed opportunities have several consequences. First, they frustrate courts and litigants, as they try to 'guess' what conclusions [Delaware's] highest court would reach in the case. Second, these missed opportunities create uncertainty in the business community, as directors and officers attempt to fulfill their duties as fiduciaries of a corporation and to properly structure transactions. Third, depending upon the determination of the local court, parties may be wrongfully required to incur the expense of litigation, settlement, or even personal judgments against them. If courts used the certification process in appropriate circumstances, these unfortunate consequences could be avoided or, at least, correctly resolved at an earlier time.

*Avoiding the Thickets of Guesswork: The Delaware Supreme Court and Certified Questions of Corporate Law*, Hon. Henry DuPont Ridgely, 63 SMU L. Rev. 1127, 1133, 1135 (Fall 2010).

Moreover, the legal issues presented in the Certified Questions are likely to recur. In response to the rising cost of litigation, corporations increasingly have incorporated dispute resolution rules and procedures into their governing documents. *See, e.g., IClub Investment Partnership v. FedEx Corp.*, C.A. No. 7238-CS (Del. Ch.) (challenging forum selection bylaw); *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, C.A. 7220-CS (Del. Ch.) (same). Certainty with respect to the permissible scope of fee-shifting bylaws would provide critical guidance to Delaware membership corporations in considering how to address disputes with and between their members.

  C. <u>Determination of the Certified Questions Would Provide the Most Efficient Method to Resolution of This Litigation</u>

In addition to the purely legal questions posed by the Certified Questions, this Court and the Third Circuit identified unresolved issues of fact surrounding the adoption of Article 23.3. The Certified Questions are designed to give the Court and the parties answers as to which, if any, of these factual issues must be discovered and tried. Absent certification, the parties risk undertaking expensive and intrusive discovery, motions, and evidentiary hearings on factual issues that may not be relevant to the legal issue to be determined.

For example, the Federations suggest that Article 23.3 may be unenforceable if it was adopted with the intent to deter lawsuits concerning the Plan. ATP does not believe that such intent, even if it is proven, is legally relevant to the enforceability of Article 23.3. Undertaking discovery regarding the board members' subjective intent in adopting Article 23.3 would be incredibly difficult and expensive. The decision to adopt Article 23.3 was made six years ago, and the board members who voted to approve Article 23.3 have all left ATP and are scattered

throughout the world. Moreover, such discovery likely would touch on issues of attorney-client privilege. The scope of discovery on this issue is certain to be a highly contentious issue that may result in discovery motions. Depending on the Delaware Supreme Court's answers to the Certified Questions, however, it may not be necessary to resolve this or other factual issues at all.

It is in the Court's and the parties' interest to answer the questions of Delaware law as decisively as possible – particularly where doing so may avoid unnecessary investment of time and money in factual disputes ultimately determined to be legally irrelevant and, therefore, immaterial. The context of this dispute, which is *about* the recovery of legal fees, only underscores the importance of efficiency and avoiding costly discovery if possible. This consideration has often led District Courts to certify threshold issues that raise novel questions of Delaware law. *See, e.g., In re Merrill Lynch.*, 692 F. Supp. at 373 (certifying question regarding standing); *A.W. Financial Services, S.A. v. Empire Resources, Inc.*, 2009 WL 212412, at *7-9 (S.D.N.Y. Jan. 29, 2009) (certifying questions regarding whether Delaware recognizes certain claims and whether certain defendants had immunity from claims); *Fiat Motors*, 619 F. Supp. at 36 (certifying question regarding statutory immunity). Moreover, the certification process may position this litigation for settlement without further proceedings before this Court.

## II.     The Certified Questions Meet Delaware's Standards for Certification

The Delaware Supreme Court is authorized to hear and determine questions of Delaware law certified by Federal District Courts arising in any case prior to final judgment if (1) there is an important and urgent reason for an immediate determination of such question by the Delaware Supreme Court and (2) the certifying court has not decided the issue in the case. Del. Supr. Ct. Rule 41 (a)(ii); Del. Const. Art IV., § 11(a); *see e.g., Rales v. Blasband*, 634 A.2d 927, 930 (Del. 1993) (deciding question certified from the District Court for the District of Delaware following remand by Third Circuit). Rule 41(b) provides a non-exhaustive list of examples of when

certification to the Delaware Supreme Court is appropriate. Specifically, Rule 41(b) provides that certification is appropriate when the questions to be certified are of first instance in Delaware. Del. Supr. Ct. Rule 41(b)(i). A certification may not be accepted if facts material to the issues certified are in dispute. Del. Supr. Ct. Rule 41(b).

      A.    <u>Important and Urgent Reasons Require an Immediate Determination of The Certified Questions</u>

Where, as here, the issues to be certified are matters of first impression affecting Delaware corporate law, they will be deemed "important and urgent." *See Rales*, 626 A.2d at 1366 ("The question certified is one involving the corporation law of the State of Delaware. The issue presented is apparently one of first impression. Thus, there appear to exist important and urgent reasons for an immediate determination by this Court of the substantive rights implicated by the question certified."). As explained above, the Certified Questions easily meet this standard.

Contributing to the importance and urgency of certification here is the fact that after defeating every one of the claims and arguments at trial as to both DTB and QTF, ATP has waited four years without reimbursement from either of the Federations for the fees and costs incurred in that successful defense. Without answers to the Certified Questions, ATP (and, by extension, its members) face the prospect of further expansive fees and costs in discovering and trying factual issues that may ultimately prove irrelevant to whether Article 23.3 is enforceable.

      B.    <u>There Are No Disputed Issues of Fact Material to the Questions to be Certified</u>

There are no disputed issues of fact material to the Certified Questions proposed by ATP. Although this Court and the Third Circuit identified open factual issues concerning how and why Article 23.3 was adopted, answers to the Certified Questions will identify which of these factual issues, if any, are material to Article 23.3's validity and enforceability. Only by knowing the

applicable legal standard can the parties and the Court determine what, if any, material factual issues are left to be resolved.

## **CONCLUSION**

For the reasons stated above, ATP respectfully requests that the Court submit the Certified Questions to the Delaware Supreme Court for determination.

*Of Counsel:*

Bradley I. Ruskin
Jennifer R. Scullion
Jordan B. Leader
Robert D. Forbes
PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036-8299
(212) 969-3000
bruskin@proskauer.com
jscullion@proskauer.com
jleader@proskauer.com
rforbes@proskauer.com

Dated:  August 31, 2012

ASHBY & GEDDES

/s/ *Philip Trainer, Jr.*
_____
Lawrence C. Ashby (#468)
Philip Trainer, Jr. (#2788)
Carolyn S. Hake (#3839)
Toni-Ann Platia (#5051)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
lashby@ashby-geddes.com
ptrainer@ashby-geddes.com
chake@ashby-geddes.com
tplatia@ashby-geddes.com

*Attorneys for ATP Tour, Inc.*