**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DEUTSCHER TENNIS BUND (GERMAN TENNIS FEDERATION) et al.,<br><br>                                   Plaintiffs,<br><br>        v.<br><br>ATP TOUR, INC. et al.,<br><br>                                   Defendants. | )<br>)<br>)<br>)<br>)<br>)      C.A. No. 07-178-GMS<br>)<br>)<br>)<br>) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION TO CERTIFY QUESTION TO DELAWARE SUPREME COURT**

BARNES & THORNBURG LLP

David M. Powlen (No. 4978)
Kevin G. Collins (No. 5149)
1000 N. West Street, Suite 1200
Wilmington, DE 19801
(302) 888-4536

Robert D. MacGill
Hamish S. Cohen
Matthew B. Barr
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
(317) 236-1313

*Attorneys for Deutscher Tennis Bund (the German Tennis Federation), the Rothenbaum Sport GmbH, and the Qatar Tennis Federation*

# TABLE OF CONTENTS

**Page**

TABLE OF CITATIONS ........................................................................................... ii

I.  Summary of Argument And Introduction ................................................................1

II.  Statement Of Additional Facts And Procedural History Relevant To Certification .................2

III.  Argument:  Certification Is Not Appropriate ........................................................5

  A.   Certification is only appropriate where there exist important and urgent reasons
  for an immediate determination by the Delaware Supreme Court of the questions certified .....5

  B.  ATP cannot meet its burden because numerous dispositive issues remain independent
  of the Certified Questions ........................................................................6

  C.  ATP's Certified Questions Do Not Appropriately State The Issues Presented .................17

IV.  Conclusion ...........................................................................................20

## TABLE OF CITATIONS

**Page**

### FEDERAL CASES

*Abramovitz v. Lynch*, 2007 WL 1959164 (D.V.I. 2007)................................................14

*Bensen v. American Ultramar Ltd.,* No. 92 Civ. 4420, 1997 WL 317343 (S.D.N.Y. June 12, 1997) ................................................................................................10, 11, 12

*In re America Casualty Co.*, 851 F.2d 794 (6th Cir. 1988) ........................................11

*Cable Marine, Inc. v. M/V Trust Me II*, 632 F.2d 1344 (5th Cir. 1980) ......................14

*Chrysler First Diversified Credit, Inc. v. Robertson*, 1989 WL 95366 (E.D. Pa. 1989) ...............14

*Cohn v. Taco Bell Corp.*, 1995 WL 493453 (N.D. Ill. 1995) ......................................11

*Consumers Time Credit, Inc. v. Remark Corp.*, 259 F. Supp. 135 (E.D. Pa. 1966) ...............14, 15

*Engel v. Teleprompter Corp.*, 732 F.2d 1238 (5th Cir. 1984) .......................................12

*Gregg v. U.S. Industrial*, 715 F.2d 1522 (11th Cir. 1983)...........................................17

*In re Hechinger Investment Co. of Del.*, 280 B.R. 90 (D.Del. 2002) .........................5, 6

*In re Magic Marker Sec. Litigation*, 472 F. Supp. 436 (D.C.Pa. 1979).........................6

*Maidmore Realty Co., Inc. v. Maidmore Realty Co., Inc.,* 478 F.2d 840, 843 *(3d Cir. 1973)*...............................................................................................10, 11, 13

*Manchester Gardens, Inc. v. Great W. Life Assur. Co.*, 205 F.2d 872 (D.C. Cir. 1953)...............14

*Merola v. Atlantic Richfield Co.*, 493 F.2d 292 (3d. Cir. 1974) .....................................15

*Morrison v. Amway Corp.*, 49 F. Supp. 2d 529 (S.D.Tex. 1998) ................................20

*Morrison v. Amway Corp.*, 517 F.3d 248 (5th Cir. 2008)............................................20

*Perry v. Stewart Title Co.*, 756 F.2d 1197 (5th Cir. 1985) .........................................14

*Private One of New York, LLC v. JMRL Sales & Services, Inc.*, 471 F. Supp. 2d 216 (E.D.N.Y. 2007)................................................................................10, 12

*Transportes Aereos Pegaso, S.A. v. Bell Helicopter Textron, Inc.,*

Civil Action No. 08-959, 2009 WL 2059084 ............................................................5

*United Industrial v. Simon-Hartley, Ltd.*, 91 F.3d 762 (5th Cir. 1996) ...................11, 13

*United States ex rel. A.V. DeBlasio Construction, Inc. v. Mountain States Construction Co.*, 588 F.2d 259 (9th Cir. 1978) ..........................................................................14

*United States ex rel. C.J.C., Inc. v. W. States Mechanic Contractors, Inc.*, 834 F.2d 1533 (10th Cir. 1987) ................................................................................................17

*W. Casualty & Sur. Co. v. Southwest Bell Telegraph Co.*, 396 F.2d 351 (8th Cir. 1968) .......11, 13

### STATE CASES

*Dousman v. Kobus*, 2002 WL 1335621 (Del.Ch. June 6, 2002) ..................................11

*Kramer v. America Pac. Corp.*, 1998 WL 442766 (Del. Super. 1998) .........................13

*Marshall v. First National Bank*, 622 S.W.2d 558 (Tenn. Ct. App. 1981) ...................13

*McKenney v. Diamond State Loan Association*, 18 A. 905 (Del. Sup. 1889) ................7

*North River Insurance Co. v. Hoechst Celanese Corp.*, 645 A.2d 569 (Del. 1994) ......................5

*Stockman v. Downs*, 573 So. 2d 835 (Fla. 1991) .......................................................13

*U.S. v. Anderson*, 669 A.2d 73 (Del. 1995) ..............................................................6

*Waggoner v. Laster*, 581 A.2d 1127 (Del. 1990) ......................................................8

### FEDERAL STATUTES

Fed. R. Civ. P. 9(g) .................................................................................................9-14

Fed. R. Civ. P. 54(d) ...............................................................................................9-14

### STATE STATUTES

Ar. St. § 4-33-613 ....................................................................................................19

11B V.S.A. § 6.23 .....................................................................................................18

Ca. Corp. § 5351 ......................................................................................................19

Del. St. Ct. R. 41 .............................................................................................. passim

iii

Hi. St. §414D-86 ....................................................................................................................19

Mo. St. § 355.197..................................................................................................................19

N.C.G.S.A. § 5A-6-23 ..........................................................................................................19

## OTHER AUTHORITIES

ABA Model Nonprofit Corporation Act....................................................................................18

## I.      Summary Of Argument And Introduction.

The Court should deny Defendants' Motion to Certify Question (the "Motion") because the questions Defendants seek to certify are not determinative of the outcome of the pending attorney-fee dispute.   Defendants' Motion for Attorneys' Fees is improper and unjust for a multitude of reasons that do not require resolution of the proposed "Certified Questions."  Even if the Delaware Supreme Court finds that ATP's Bylaw 23.3(a) is generally enforceable in response to Defendants' Certified Questions, ATP would still not be entitled to attorneys' fees for a number of dispositive reasons:

*First,* ATP cannot enforce Bylaw 23.3(a), because it presented its Bylaws that did not contain the attorneys' fee provision to Plaintiffs subsequent to the alleged passage of Bylaw 23.3(a).   Once this occurred, the German Tennis Federation and the Qatar Tennis Federation (collectively, the "Federations") had an absolute right to treat the Bylaws handed to them as the controlling Bylaws of the ATP.

*Second*, ATP is estopped from enforcing Bylaw 23.3 in this matter under established Delaware corporate law.

*Third*,  Defendants waived their purported right to seek attorneys fees because they never pled them under Federal Rule of Civil Procedure 9(g) as required by long-standing and controlling Third Circuit precedent; and

*Fourth*, this Court could and should deny Defendants' Rule 54 Motion, regardless of the Delaware Supreme Court's answer, because an award of fees to Defendants would be inequitable and unreasonable under the specific circumstances of this case.

Accordingly, while the question of whether Bylaw 23.3(a) could ever be enforceable given the manner in which it was passed and the ATP's Board Members subjective intent may be

an interesting question of first impression under Delaware law, its resolution will not be determinative of this action. As such, ATP has not and cannot meet its Rule 41 burden. Certification is not appropriate.

## II.     Statement Of Additional Facts And Procedural History Relevant To Certification.

ATP's Statement of Facts does not set forth the undisputed facts regarding the creation and alleged passage of Bylaw 23.3(a) or the provision of Bylaws and corporate governance information by ATP to its members.  These facts are undisputed and relevant to the certification issue.  Briefly stated and as set forth in the Federations' Memorandum in Opposition to ATP Tour, Inc.'s Motion for Attorneys' Fees, Costs and Expenses, which the Federations incorporate by reference:

Each summer, the ATP sends its tournament members "a CD-Rom covering information that we know you will find useful" that includes the ATP's current Bylaws and Articles of Incorporation.  The cover letter indicated that the CD-ROM was "updated … including comprehensive information about the ATP and should be a practical reference as it includes in-depth information on the ATP's organization, financial composition and historical data."  The Bylaws provided by ATP pursuant to this custom on May 26, 2006 did not contain any Bylaw Article 23, generally; Bylaw 23.3(a), specifically; or any other fee-shifting or attorney's fee provision.

On August 26, 2006, the ATP Board of Directors in a private and confidential meeting, via a 6 to 1 vote, approved a motion to amend the ATP Bylaws.  Subsequently, on October 22, 2006, the ATP Board approved the addition of and specific language of new Section 7.07 in the ATP Official Rulebook and the new Article 23 in the ATP Bylaws.  The Confidential Meeting Minutes were not provided to ATP membership, and it does not appear that any version of the

amended ATP Bylaws was shared with the ATP's membership at that time.  Rather, on or about November 27, 2007, the ATP sent its membership a "Summary of Meetings of the ATP Board of Directors, November 12, 14, 15 2006, Shanghai, China" which stated "[t]he Board confirmed the final language of new Article 23 of the ATP Bylaws, attached, regarding legal action among ATP and its members."  Article 23 was attached thereto.

On June 1, 2007 the ATP again provided "an updated CD-Rom including comprehensive information about the ATP and should be a practical reference as it includes in-depth information on the ATP's organization, financial composition and historical data."  The CD-Rom again included, *inter alia*, the ATP Articles of Incorporation and Bylaws.  The Bylaws provided *on June 1, 2007* by the ATP to its tournament members, including the Federations – six weeks after the filing of this litigation and three weeks after the filing of the ATP's Answer – did not contain any Bylaw Article 23, generally; Bylaw 23.3(a), specifically; or any other fee-shifting or attorney's fee provision.

On June 26, 2008 – less than four weeks prior to the trial of this matter – the ATP again circulated a CD-Rom with its Articles of Incorporation and By-laws.  This version contained Bylaw 23.

On March 28, 2007, the German Tennis Federation filed its Complaint, and on May 4, 2007, the ATP filed its Answer.  The Complaint did not state any claim for breach of contract based on the Bylaws.  The Answer sought no affirmative relief and was completely silent as to any request for attorneys' fees in relation to Bylaw 23.3 or otherwise.  The ATP and Messrs. Etienne de Villiers and Charles Pasarell also filed an Answer to the Monte Carlo tournament's Complaint on May 4, 2007.  This Answer also sought no affirmative relief and was silent as to any request for attorneys' fees.

3

The ATP served their Rule 26(A)(1) [sic] Initial Disclosures on May 4, 2007 and Amended Rule 26(A)(1) [sic] Initial Disclosures on May 25, 2007.  These Initial Disclosures indicated that the ATP sought no affirmative relief and, again were silent as to any request for fees stating simply, "Disclosure 1(C) is not applicable to Defendants."  The Defendants did not supplement their Initial disclosures again prior to trial.  Defendants' final pretrial materials exchanged by the parties in May, 2007 and filed with the Court in June of 2007 similarly made no indication that Defendants would seek any affirmative relief or would seek or request an award of attorneys' fees.

The GTF and QTF filed an Amended Complaint on November 7, 2007.  The Amended Complaint also did not substantively invoke the Bylaws or assert breach of contract claims based thereon.  As such, neither Federation ever alleged any breach of contract claim based on any alleged breach of the ATP's Bylaws.

On December 6, 2007 the ATP and each individual Director defendant – Mr. de Villiers, Mr. Pasarell, Mr. Iggy Jovanovic, Mr. Graham Pearce, Mr. Jacco Eltingh and Mr. Perry Rogers – filed a separate, independent Answer to the Amended Complaint.  Each Answer reserved "the right to assert additional defenses that [the defendant] learns of through discovery or other investigation" but not one Answer sought any affirmative relief.  Not one sought or requested an award of attorneys' fees.  Not one so much as mentioned Bylaw 23.3(a).

From July 11, 2007 to January 12, 2008 over thirty fact depositions were taken in this matter.  Bylaw 23.3(a) was not discussed in a response to a single question asked in any one of these depositions.  No ATP Officer or Director testified that the ATP was seeking attorneys' fees, though not surprisingly, this was not a focus of discovery as it had not been put at issue by any of the defendants' pleadings.

4

The trial of this matter concluded on August 5, 2008 and on October 3, 2008 the Court entered Judgment. Thereafter, on October 17, 2008 the ATP filed its Rule 54(d) Motion for Attorneys' Fees seeking $17,720,124.11 in fees, costs and expenses. This figure reflects the alleged fees, costs and expenses incurred not just by the ATP, but also by the Director Defendants. This Motion was supplemented on November 7, 2008 and the Defendants now collectively seek $17,865,504.51 in fees, costs and expenses. The October 17, 2008 Motion was the first filing in which the ATP sought – or indicated that it might seek – fees from this Court.

**III.    Argument: Certification Is Not Appropriate.**

    **A.    Certification is only appropriate where there exist important and urgent reasons for an immediate determination by the Delaware Supreme Court of the questions certified.**

A United States District Court "may certify a question to the Supreme Court of Delaware where the certifying court has not decided the matter, and where there is an 'important and urgent reason for an immediate determination' by the Supreme Court. *Transportes Aereos Pegaso, S.A. v. Bell Helicopter Textron, Inc.*, Civil Action No. 08-959, 2009 WL 2059084, *4 (D.Del. July 10, 2009) (quoting Del.Sup.Ct. R. 41(a)(ii) ("Rule 41")). It is not sufficient that the question be an "interesting," novel or undecided one. *See In re Hechinger Investment Co. of Del.*, 280 B.R. 90, 94 (D.Del. 2002) (an interesting question of first impression in Delaware was not "important and urgent" where the litigation would persist regardless of the Supreme Court's response thereto); *citing North River Ins. Co. v. Hoechst Celanese Corp.*, 645 A.2d 569 (Del. 1994) (finding no "important and urgent reason for immediate determination by this Court" under Rule 41, because "it would not terminate the litigation as there are numerous parties and policies that remain" even if the Court granted the petition.). Accordingly, Rule 41 certification is not appropriate where certification will not "materially advance the ultimate termination of the

litigation" because there will remain overlapping or related claims based on the same set of facts against a party or parties to the litigation. *Hechinger Inv. Co.*, 280 B.R. at 94 (*citing In re Magic Marker Sec. Litig.*, 472 F.Supp. 436 (D.C.Pa. 1979); *see also U.S. v. Anderson*, 669 A.2d 73, 79 (Del. 1995) ("this Court should answer certified questions when the answer may be determinative of the outcome in the underlying litigation in the certifying court….").

ATP cannot meet this standard. If the questions Defendants posit are answered in their favor, they will not have materially advanced this litigation or be determinative as to its outcome as a multitude of issues will persist, all of which are dispositive, have already been briefed and can be resolved now by this Court. ATP does not even argue that it can meet this standard. Rather, it argues that the proposed Certified Questions "are matters of first impression"; may have "a broad impact"; and might "potentially eliminate or substantially lessen the need for any further development of the factual record" while creating a more "efficient path to resolution." Even if these contentions are correct – and most are disputed – they do not meet the "important *and* urgent" standard. Certification is not appropriate.

**B.    ATP cannot meet its burden because numerous dispositive issues remain independent of the Certified Questions.**

ATP's proposed Certified Questions will not substantively advance this litigation (unless, ironically, the Delaware Supreme Court were to answer them so as to find Bylaw 23.3(a) invalid) because even if Bylaw 23.3(a) is found to be validly passed, it is not enforceable under the circumstances of this case for four, independent and dispositive reasons.

*First*, ATP cannot enforce Bylaw 23.3(a) because it presented Bylaws to Plaintiffs that did not contain the attorneys' fee provision subsequent to the alleged passage of Bylaw 23.3(a). Accordingly, the Federations had an absolute right to treat the bylaws handed to them as all the bylaws of the ATP.

6

The resolution of this issue does not require a resort to certified questions.  Rather, it was answered over 120 years ago by the Delaware courts: while it is generally presumed that the members of a corporation have notice of the corporation's bylaws, "[a] member may rebut the presumption by proof that the corporation itself gave to the members bylaws other than those in force."  8 Fletcher Cyc. Corp. § 4196.  A member, therefore has "the right to treat the bylaws handed to him on his becoming a member of the company as all the bylaws such company had, without further notice to the former …"  *McKenney v. Diamond State Loan Ass'n.*, 18 A. 905 (Del. Sup. 1889).  In other words, where a corporation gives a copy of its bylaws to its members and represents that those are the corporations' actual and complete bylaws, the member has an affirmative right to rely upon those bylaws and the corporation may not, without further notice, enforce the bylaws not provided against that member.  *Id.*  (Holding that because of member's right, corporation could not enforce written-notice, membership withdrawal provisions against the member who had been provided a copy of the corporation's bylaws sans those provisions).

It is undisputed that both before and after the filing of the Federations' Complaints, ATP provided "comprehensive" copies of its Bylaws to the Federations, which did not include Bylaw 23.3(a) or any other fee-shifting provisions.  Under long-standing Delaware law, the Federations have the affirmative right to treat these bylaws as being those of the ATP in effect and, pursuant to long-standing Delaware law, ATP may not enforce contrary bylaws, including Bylaw 23.3(a) against the Federations.

*Second*, ATP is estopped from enforcing Bylaw 23.3 in this matter under established Delaware corporate law. Even if one rejects *McKenney's* long-standing holding and accepts, *arguendo*, that the Federations did not have an affirmative right to rely upon the June 1, 2007 bylaws provided by the ATP, the Defendants still, at best, provided confusing and inconsistent

information regarding the ATP's Bylaws.   The Federations relied upon this information and conduct and suffered a prejudicial change of position resulting therefrom.   Accordingly, the Defendants are estopped from enforcing Bylaw 23.3(a) against the Federations.

An equitable estoppel arises "when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment."   *Waggoner v. Laster*, 581 A.2d 1127, 1136 (Del. 1990) (quotations and citations omitted).   The elements of such estoppel are as follows: the party claiming estoppel (i) lacked knowledge or the means of obtaining knowledge of the truth of the facts in question; (ii) relied on the conduct of the party against whom estoppel is claimed; and (iii) suffered a prejudicial change of position as a result of his reliance.   *Id*.

As to these elements, the provision to stockholders (or members) of confusing and inconsistent information regarding the existence and effect of a bylaw provision establishes a lack of knowledge by those shareholders (or members) under Delaware law as to the terms and effect of the bylaw at issue, reliance thereon and a prejudicial change of position relating thereto. *See Dousman v. Kobus*, 2002 WL 1335621, * 5-6 (Del.Ch. June 6, 2002).   In *Dousman*, the shareholder-plaintiffs were current or former board members with access to and actual possession of the company's correct bylaws.   The Court held, regardless, that the plaintiffs lacked the means to learn of the relevant bylaw because (a) they had not been given accurate information regarding the bylaw at issue; and (b) the corporation's conduct had previously been inconsistent with the bylaw at issue.   *Id*. at *6.

Similarly here, the Federations were not provided accurate information.   Further, the ATP's historic conduct (in not seeking attorneys' fees in other litigation and in only seeking to pass attorney fee provisions previously via the vote and participation of its members); conduct in

this litigation (by not pleading or seeking costs or fees in any pleading); and ongoing business conduct (circulating "updated" and "comprehensive" bylaws not containing attorneys' fee provisions) is inconsistent with the Bylaw at issue.   Because of the ATP's conduct, the Federations, therefore, lacked knowledge as to the truth of whether Bylaw 23.3(a) existed or otherwise was applicable as those terms are defined by Delaware law.

Further, the Federations relied upon the ATP's conduct.   The Federations, reasonably and substantively conducted all discovery in this matter; drafted all their substantive pleadings; prepared their pretrial order and exhibits thereto, including witness lists, exhibits and jury instructions; and prepared for the trial of this matter in the belief that attorneys' fees were not at issue from the ATP's standpoint.

Finally, the Federations suffered a prejudicial change in position.   By relying on the ATP's conduct, the Federations changed their litigation strategy and analysis to their detriment. Accordingly, the ATP, whether intentionally or otherwise, lead the Federations (and all its members) to believe that there was no Bylaw Article 23, as of June 1, 2007.   The Federations relied upon this conduct, thereby altering their positions to their detriment.   The ATP is, therefore, estopped from enforcing Bylaw 23.3(a) under existing and established Delaware law. Again, this issue has been briefed and is ripe for adjudication without reference to any Certified Question.

*Third*, ATP waived its right to seek attorneys' fees because it never pled them Federal Rule of Civil Procedure 9(g) as required pursuant to long-standing and controlling Third Circuit precedent.   While claims for attorneys' fees can be made under some circumstances pursuant to Federal Rule of Civil Procedure 54(d)(2)(A), "[t]his motion requirement 'does not, however, apply to fees recoverable as an element of damages, as when sought under the terms of a

contract." *Private One of New York, LLC v. JMRL Sales & Services, Inc.* 471 F.Supp.2d 216, 224 (E.D.N.Y. 2007) (citing Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 54(d)(2)." "Such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury." Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 54(d)(2).

"Indeed, several Circuits, including the Third, Fourth, Fifth, Sixth and Eighth, have held that attorneys' fees are 'special damages' as defined in Fed.R.Civ.P. 9(g) and must be 'specifically stated.' *Private One of New York*, 471 F.Supp.2d at 224 (citing *Bensen v. American Ultramar Ltd.*, No. 92 Civ. 4420, 1997 WL 317343, at *11 (S.D.N.Y. June 12, 1997). This is the law in this Circuit. *See Maidmore Realty Co., Inc. v. Maidmore Realty Co., Inc.*, 474 F.2d 840, 843 (3d Cir. 1973) (attorneys' fees are special damages). Accordingly, a "failure to request items of special damage in pleadings results in a waiver of the right to those damages." *Bensen*, 1997 SL 317343, at *10.

A Rule 54 motion cannot revive an attorneys' fees claim waived by failure to plead it as required by Rule 9(g). *Maidmore*, 478 F.2d 840, is controlling. There, a foreclosing bank, which *had* pleaded a claim for "'court costs of *this action*, *including* a reasonable attorney's fee,'" then sought post-judgment an award of additional fees incurred in earlier collection efforts, citing a contract provision entitling it to fees. *Id.* at 843 (emphasis added by Court). The Third Circuit decisively affirmed the district's court's limiting the fee award to what the bank had specifically stated in its pleading:

> Claims for attorney fees are items of special damage which must be specifically pleaded under Federal Rule of Civil Procedure 9(g). *In the absence of allegations that the pleader is entitled to attorneys' fees, therefore, such fees cannot be awarded*. In the present case, National did not claim attorney's fees for collection services allegedly rendered over the five year period prior to the filing of its complaint. If attorney's fees per se are special damages which must be specifically pleaded, "special" attorney's fees, such as pre-foreclosure fees and costs, are *a fortiori* special damages which must be pleaded.

*Id.* (emphasis added) (citing *W. Cas. & Sur. Co. v. Sw. Bell Tel. Co.*, 396 F.2d 351, 356 (8th Cir. 1968)); *accord, e.g., In re Am. Cas. Co.*, 851 F.2d 794, 802 (6th Cir. 1988) (attorneys' fees are "in the nature of special damages and so should be specifically pleaded if they are to be claimed" (citing *Maidmore* and *Western Casualty*)); *United Indus. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 764 (5th Cir. 1996) ("Our sister circuits routinely classify attorney's fees as special damages that must be specifically pleaded" (citing *Maidmore*, *Western Casualty* and *American Casualty*)).

*Maidmore*'s holding that attorneys' fees are "special damages" required by Rule 9(g) to be specifically pleaded fits hand-in-glove with Rule 54(d)'s text and commentary.  As amended in 1993, the Rule on which ATP rests its belated, post-judgment claim explicitly provides that attorneys' fees cannot be sought if "the substantive law requires those fees to be proved at trial as an element of damages."  FED. R. CIV. P. 54(d)(2)(A).  As the amendment's drafters elaborated, the Rule thus does not apply "to fees recoverable as an element of damages, *as when sought under the terms of a contract*; such damages are typically to be claimed in a pleading and may involve issues to be resolved by a jury."  FED. R. CIV. P. 54 Advisory Comm. Note (1993) (emphasis added); *see Cohn v. Taco Bell Corp.*, 1995 WL 493453 at *5 (N.D. Ill. 1995) ("This Court agrees with Plaintiffs that the Committee Notes to Rule 54(d)(2) suggest that Defendant's claims for attorneys' fees based on Section 15.5 of the Franchise Agreement must be claimed in the pleading, rather than merely presented by motion fourteen days after the judgment").

This is true where a defendant subsequently, as here, seeks attorney's fees pursuant to a contract upon defeating a plaintiffs' claim.  *Bensen* is particularly illustrative on this point.  In *Bensen*, the defendant did not raise a request for attorneys' fees in their answers, but did so after trial pursuant to Rule 54.  1997 WL 317343 at *10.  The district court denied the defendants' motion, concluding that a request for attorneys' fees are special damages and that the defendants'

failure to raise any attorneys' fee claims in their pleadings constituted a waiver of their right to do so. *Id*. at *10-11. The court held that this was especially so given defendants' failure to forewarn plaintiff of their attorneys' fee claims in any of their responsive pleadings. *Id*. The facts of this case are substantially identical.

Further, pursuant to Rule 54, courts have allowed defendants to seek fees absent a counterclaim under "limited" circumstances where, for example, the fees were awarded pursuant to a contract; the contract was never in dispute; all of the elements justifying the relief were established before the district court; the plaintiff himself had sought a fee award under the applicable contractual provision; and there was no prejudice to the plaintiff. *Id*. (citing *Engel v. Teleprompter Corp.*, 732 F.2d 1238, 1240-42 (5th Cir. 1984)). In other words, fees have been permitted to a prevailing defendant who did not bring a counterclaim only where "the interpretation of the [attorneys' fee] clause and its enforceability under law were not in issue" and "[o]nly the identity of the prevailing party had to be established before that party's right to [attorney's fees] became manifest." *Engel*, 732 F.2d at 1242; *Private One of New York*, 471 F.Supp.2d at 225. Only under these circumstances "and in the absence of any prejudice to the plaintiff" a court may entertain a fee application pursuant to Rule 54(c). *Id*.

These requirements were not met in this litigation. As set forth above and as established by the pleadings: the contract here (Bylaw 23.3(a)) is in dispute as is its enforceability and validity under Delaware law; the elements justifying relief were never raised previously before this Court; and the plaintiffs themselves did not seek attorneys' fees under Bylaw 23.3(a) and, in fact, brought no claims premised on the ATP's Bylaws.

Further, the Federations were prejudiced. Rule 9(g)'s pleading requirements are grounded in elemental principles of notice and fairness. These principles are cogently explained

in *Kramer v. Am. Pac. Corp.*, 1998 WL 442766 at *1-2 (Del. Super. 1998), which enforced

Delaware's substantially similar specific pleading rule even though the fee claim there was

grounded in California law (which arguably did not require specific pleading):

> On the underlying issue, definitive notice pleading versus potential post-trial
> ambush, the best policy is clear. . . . [T]he Supreme Court of Florida stated the
> policy succinctly and well – the better view is "a claim for attorney's fees,
> whether based on statute or contract, must be pled."
>
>> The fundamental concern is one of notice. Modern pleading requirements
>> serve to notify the opposing party of the claims alleged and prevent unfair
>> surprise. . . . Raising entitlement to attorney's fees only after judgment
>> fails to serve either of these objectives. The existence or non-existence of
>> a motion for attorney's fees may play an important role in decisions
>> affecting the case. For example, the potential that one may be required to
>> pay the opposing party's attorney fees may often be determinative in a
>> decision whether to pursue a claim, dismiss it, or settle. A party should
>> not have to speculate throughout the entire course of the action about what
>> claims ultimately may be alleged against him.

1998 WL 442766 at *3 (quoting *Stockman v. Downs*, 573 So. 2d 835, 837-38 (Fla. 1991)

(omitting citations)); *see Marshall v. First Nat'l Bank*, 622 S.W.2d 558, 560-61 (Tenn. Ct. App.

1981) (enforcing state analogue of Rule 9(g) (citing *Maidmore* and *Western Casualty*); in

"complex litigation, the attorney's fees are apt to be substantial and it seems only fair to require

[a party] to put the [opponent] on notice as to any claim for attorneys' fees").

　In sum, the failure to plead a claim for attorneys' fees "'constitutes a waiver of the

claim.'" *Kramer*, 1998 WL 442766 at *3 (internal quotations omitted)); *accord United Indus. v.

Simon-Hartley, Ltd*., 91 F.3d 762, 764 (5th Cir. 1996) ("Our sister circuits routinely classify

attorney's fees as special damages that must be specifically pleaded" (citing *Maidmore*)).

Simply put, there is "nothing inappropriate with requiring a party to put its adversary on notice

that attorneys' fees are at issue in a timely fashion or waive that claim." *Id.* at 765. Defendants'

13

failure to do so prejudiced the Federations.  As such, because of their failure to plead attorneys'
fees as required by Rule 9(g), their attorney's fee claims are now barred.

*Fourth*, this Court could and should deny ATP's Rule 54 Motion, again regardless of the
Delaware Supreme Court's answer, because an award of fees to the ATP would be inequitable
and unreasonable under the specific circumstances of this case.

Under Federal cases, the decision whether to award fees based a contractual provision
rests in a district court's discretion.  While a court "does not possess the same degree of equitable
discretion to deny [attorney] fees [provided by contract] that it has when applying a statute
allowing for a discretionary award," it is established that "a court in its sound discretion may
decline to award attorney's fees authorized by a contractual provision when it believes that such
an award would be inequitable and unreasonable."  *Perry v. Stewart Title Co.*, 756 F.2d 1197,
1211 (5th Cir. 1985) (quoting *Cable Marine, Inc. v. M/V Trust Me II*, 632 F.2d 1344, 1345 (5th
Cir. 1980) (*per curiam*)).  Every Circuit to address this issue agrees.  *See United States ex rel.
C.J.C., Inc. v. W. States Mech. Contractors, Inc.*, 834 F.2d 1533, 1549 (10th Cir. 1987); *Gregg v.
U.S. Indus.*, 715 F.2d 1522, 1542 (11th Cir. 1983); *United States ex rel. A.V. DeBlasio Constr.,
Inc. v. Mountain States Constr. Co.*, 588 F.2d 259, 263 (9th Cir. 1978); *Manchester Gardens,
Inc. v. Great W. Life Assur. Co.*, 205 F.2d 872, 878 (D.C. Cir. 1953).

District courts in this Circuit have followed this rule.  *See Chrysler First Diversified
Credit, Inc. v. Robertson*, 1989 WL 95366 at *2 (E.D. Pa. 1989) ("enforcement of agreements
providing for attorneys fees is in the equitable discretion of the courts"); *see also Abramovitz v.
Lynch*, 2007 WL 1959164 at *1 (D.V.I. 2007) (declining to make "unreasonable awards"
otherwise required by contractual fee-shifting provision); *Consumers Time Credit, Inc. v.*

*Remark Corp.*, 259 F. Supp. 135, 137 (E.D. Pa. 1966) ("court, in the exercise of its discretion, can refuse to award" contractually authorized attorneys fees).[1]

In sum, Federal decisions, including by district courts in this Circuit, show that whether to award fees under a contractual fee-shifting provision lies in the sound discretion of the district court and that the court may refuse to do so where an award of fees would be inequitable and unreasonable.

An award of attorneys' fees to Defendants' would be inequitable and unreasonable in this matter.  This Court previously and correctly found:

- There is no issue that the Federations' action was filed in good faith and was not frivolous.  *See* October 19, 2009 Order (the "Opinion") at 7 ("At no point during the pendency of this litigation did the ATP contend that [the Federations'] suit was frivolous or filed in bad faith"); 8 ("There is no allegation that the Federations' antitrust lawsuit was frivolous or filed in bad faith").

- The circumstances of Article 23's adoption created serious questions about whether its enforcement was permissible or equitable.  *See Id*. at 7 n.4 ('the timing of the adoption of Article 23" – i.e., "less than five months before the complaint in this case was filed," during the period "that the changes to the ATP Tour that led to this suit were being discussed" – "gives the court further reason for pause"); *id.* ("the court cannot ignore the

---

[1] ATP previously argued that the Third Circuit held more than 35 years ago that a party is *entitled* to an award of its reasonable fees "whenever the parties have entered into an enforceable agreement providing for same."  *See Merola v. Atlantic Richfield Co.*, 493 F.2d 292, 297 (3d. Cir. 1974).  The *Merola* Court continued: "[h]owever, it is well-recognized that counsel fees *may* be awarded whenever the parties have entered into an enforceable agreement providing for same."  493 F.2d at 297 (emphasis added).  Further, *Merola*'s next sentence reveals there was no dispute in that case that an award was authorized:  "In the instant case, the parties question neither the existence of an agreement authorizing counsel fees nor the authority of the Court to award fees pursuant thereto."  *Id.*  The only fee issue in *Merola* was the award amount.

possibility that Article 23 was adopted specifically to deter ATP members from challenging those changes").

- The fee claim was not even at issue in the suit, and was first raised by ATP after judgment. *Id*. at 5 (ATP "cites no case in which a court held that a board-adopted bylaw can form the basis for the recovery of attorney's fees from members who sue the corporation, much less in actions where the bylaws are not directly at issue in the dispute"); *Id*. at 4-5 & n.3 (distinguishing the "only two cases" ATP cited for its claim in part because the fee-shifting provisions there were "part of the contract *directly at issue* in an action for breach of contract") (original emphasis).  In fact, as set forth above, Defendants' fee claims are barred pursuant to Rule 9(g) even under the line of cases that have permitted defendants to seek fees under some circumstances because even those cases require that the fee-shifting provisions be part of the contract directly at issue.

- ATP had not shown that its new bylaw in fact established a "contractual" ground to award it attorneys' fees.  *See Id*. at 7 n.4 ("a number of material fact issues," including the possibility that Article 23 was adopted to deter members from challenging ATP's Brave New World, "would need to be resolved before the court could determine whether the bylaw provides a 'contractual' basis for awarding attorneys fees to ATP"); *see also Id*. at 3 & n.2 ("It is unclear whether Article 23 became effective on" the date ATP's board voted to approve it").

- ATP also had not shown that Plaintiffs had "agreed" to the supposedly "contractual" fee-shifting provision.  *See Id*. at 7 (Article 23 was "far from an agreed basis for fee shifting"); *Id*. at 5 (Article 23 was "adopted only *after* [DTB] became a member of [the] corporation") (original emphasis).

16

Based on these findings – already made by this Court – the Court should exercise its discretion and find that an award of attorneys' fees to Defendants is inequitable and unreasonable under the circumstances of this case. This analysis, like those set forth above, does not require resolution of and would not be materially advanced by an answer by the Delaware Supreme Court to the Defendants' Certified Questions.

### C. ATP's Certified Questions Do Not Appropriately State The Issues Presented.

As recognized by the Third Circuit and as set forth in the Federations' prior briefing, significant questions exist regarding the enforceability of Bylaw 23.3's fee shifting provisions. The Court need not reach these issues, as the ATP's attorneys' fee request should be denied for the reasons set forth above. Regardless, the ATP now recognizes issues exist even as to the basic enforceability of Bylaw 23.3(a) and hopes that, in an effort to re-shape the landscape of its ill-fated fee petition, this Court will certify the ATP's own benignly-stated questions to the Delaware Supreme Court asking, for instance, whether a bylaw may be enforced against a member where the bylaw was adopted after the member joined the corporation. In effect, ATP is trying to re-write Bylaw 23.3(a) through the submission of artful questions to the Delaware Supreme Court and to change Bylaw 23.3(a) from the binary Bylaw actually drafted to one that might be enforced against members who obtained no relief whatsoever.

Accordingly, the ATP's questions, as drafted, are not appropriate. The question presented should be whether Bylaw 23.3 *as actually drafted and passed* is enforceable, as asked by the Third Circuit expressing considerable doubt in relation thereto given, in particular, the full recover "in substance and amount" requirement.

This question, not directly asked by Defendants, raises two additional questions not asked by Defendants, but central to the resolution of this question:

*First*, may a non-profit, membership corporation pass a bylaw that creates potential fees and liabilities for its members without their agreement, consent or knowing acceptance?

Bylaw 23.3(a) is a "fee-shifting" provision that creates potential fees and liabilities for ATP members to the ATP of a type and magnitude never before contemplated by the ATP Bylaws, the ATP or its membership. The GTF and QTF never agreed, consented or knowingly accepted these potential fees and liabilities. Accordingly, as a matter of nonprofit corporate governance, the ATP may not impose $17.8 million of fees upon the GTF and QTF.

While shareholders rarely obligate themselves to make payments to business corporations, members of mutual benefit corporations often agree to pay certain fees in exchange for membership rights, benefits and services provided by the nonprofit corporation. *See, e.g.*, ABA Model Nonprofit Corporation Act (the "Act"), §6.13, Official Comment (1987). In this instance, the Plaintiffs agreed to pay membership fees to the ATP, a 501(c)(6) corporation, in return for the ATP's good faith efforts to promote men's professional tennis and their place therein.

The attorneys' fees are not such reasonable membership fees paid in exchange for rights, benefits and services. Rather, they are a new category of potential liability significantly different in type and magnitude than that previously agreed to by the Federations, or the ATP's membership generally. This question – the question of when such fees are reasonable has not been addressed by any Delaware court or the Delaware Legislature. Those who have addressed this issue, however, have determined that new categories, types or magnitudes of fees may not be imposed unilaterally by a nonprofit upon a member without that member's agreement, consent or knowing acceptance. *Id.*; *see also e.g.*, 11B V.S.A. § 6.23 ("… an article or bylaw provision or a resolution adopted by the board authorizing or imposing dues, assessments or fees does not, of

itself, create liability."); Mo. St. §k355.197 (same); N.C.G.S.A. § 5A-6-23 (same); Hi. St. §414D-86 (same); Ca. Corp. § 5351 (same); Ar. St. § 4-33-613 (same).  If the Delaware Supreme Court were to consider this issue, the Federations submit that it would adopt the well-reasoned logic of the Act and Delaware's sister states.

The Federations agreed to pay reasonable membership dues to the ATP in return for the benefits of belonging to such an organization.   *See* Bylaws §§ 7.2 - 7.4.  In other words, the Federations agreed, consented or knowingly accepted that they would pay reasonable membership dues, as determined by the ATP, for the benefit of belonging to a nonprofit corporation that would, supposedly, promote their common business interest while not to engage in the business of men's professional tennis (or any other business of a type ordinarily carried on for profit) itself.

Even if one accepts, for the sake of argument, that the ATP has acted appropriately as a 501(c)(6) corporation in promoting the Federations' common business interests in return for the payment of annual membership fees, which fact the Federations deny, the Federations have received nothing additional of value that would justify the subsequent, additional imposition of potential legal liabilities that purportedly total $17.8 million in this litigation.

*Second* is a related question: is a non-profit membership corporation's Bylaw affecting its members' substantive and procedural rights enforceable when it contains an illusory promise?

In its question 3, ATP acknowledges the reality – stated as a concern by this Court in its Opinion – that its Board members "subjectively intended the adoption of the bylaw to deter legal challenges by members to other potential corporate action then under consideration."   ATP, however, did not mean to deter just any abstract legal challenges; it hoped to deter antitrust challenges in which its challenging members would already receive their legal costs and fees

19

pursuant to the Sherman Act if they were successful.   As such, Bylaw 23.3 is not actually reciprocal.   Rather, it is illusory: it provided the "members" who might bring "legal challenges" absolutely nothing they would not already receive under their percolating Sherman Act claims.

This point is driven home by ATP's prior reliance on *Morrison v. Amway Corp.*, 49 F.Supp.2d 529 (S.D.Tex. 1998).   ATP stated, on page 22 of its Brief of Appellants before the Third Circuit, for instance, that "[b]asic corporate governance would be impossible if, as the District Court suggested, members and shareholders were bound only to the bylaws and rules in place when they first became members of shareholders."   ATP supported this proposition with a *see, e.g.*, citation to *Morrison* with the parenthetic ("enforcing arbitration clause added to membership rules after member had joined and had agreed to be bound by amendments to rules enacted 'from time to time.'").   *Morrison*, however, was overruled and vacated by the Fifth Circuit in *Morrison v. Amway Corp.*, 517 F.3d 248 (5th Cir. 2008) ("*Morrison II*").   In *Morrison II*, the Fifth Circuit held that an amendment to membership rules compelling arbitration, even where the members had agreed to be bound by amendments enacted "from time to time" was not enforceable.   Rather, the amendment was illusory because the corporation – just like the ATP – reserved the right to unilaterally change its rules (or in this case its Bylaws) unilaterally.

Accordingly, if Certified Questions are submitted, and they should not be pursuant to Rule 41 – the ATP's proposed questions are not appropriate.   The Federations' questions set forth above should be those submitted for review and potential answer.

## IV.   Conclusion.

For the foregoing reasons and each of them, the German Tennis Federation and the Qatar Tennis Federation respectfully request that the Court deny ATP's Motion to Certify Questions and deny ATP's Motion for Attorneys' Fees.

Respectfully submitted,

BARNES & THORNBURG LLP

*/s/ Kevin G. Collins*

David M. Powlen (No. 4978)
Kevin G. Collins (No. 5149)
1000 N. West Street, Suite 1200
Wilmington, DE 19801
(302) 888-4536
david.powlen@btlaw.com
kevin.collins@btlaw.com

Robert D. MacGill
Hamish S. Cohen
Matthew B. Barr
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana  46204
(317) 236-1313

*Attorneys for Deutscher Tennis Bund (the German Tennis Federation), the Rothenbaum Sport GmbH, and the Qatar Tennis Federation*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been served this 21st day of September, 2012, via the Court's electronic filing system on all counsel of record.

*/s/ Kevin G. Collins*
Kevin G. Collins (No. 5149)

22